Louie J. Yanza
McKEOWN • VERNIER • PRICE • MAHER
A Joint Venture of McKEOWN PRICE, LLP
and VERNIER & MAHER, LLP
115 Hesler Place
Ground Floor • Governor Joseph
 Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendant
AIG TECHNICAL SERVICES, INC.

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC. and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **DEFENDANT AIG TECHNICAL SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

It is the position of Defendant AIG TECHNICAL SERVICES, INC. ("AIGTS") in its Memorandum of Points and Authorities that, AIGTS is the wrong party, and that the Plaintiff should have named American Home Assurance Company ("AHAC") as a defendant since AHAC is the surety on the bond.[1] Therefore, the Plaintiff's action against the Defendants should be dismissed and granted in the Defendant AIGTS' favor.

---

[1] Defendant AIGTS withdraws its argument that the Plaintiff's Complaint was filed outside the statute of limitations, as there may be an issue of fact. Defendant AIGTS reserves the right to raise this issue again.

1

In their Opposition Memorandum, the Plaintiff RHINO BUILDERS attempts to argue that there is "a factual issue as to whether AIG[TS] and American Home Assurance Company (hereinafter referred to as "AHAC") operate as the same company." Opposition Memorandum, p. 9. To dispose of the Plaintiff's contentions, a close examination of the Opposition Memorandum reveals that the Plaintiff has presented no governing law to support its position or competent evidence whatsoever to suggest that AIGTS is or could possibly be the surety.

Nowhere in the Plaintiff's Opposition Memorandum does the Plaintiff disagree or dispute that:

1. Its attorneys, the law office of Carlsmith Ball, LLP, wrote a letter on October 22, 2001 <u>to AHAC</u> notifying AHAC of its intent to file its claim against AHAC and BIOGENESIS for BIOGENESIS' failure to pay for alleged labor provided and materials supplied. Declaration of Bruce Kahn, ¶s 1-3; Exhibit "A";

2. That the Plaintiff submitted its proof of claim specifically addressing the bonding company as "American Home Assurance Company, 121 Spear Street, San Francisco, California 94105." *Id*; and

3. That Defendant AIGTS is not the surety, or has ever been a surety, and has never been a surety for Defendant BIOGENESIS. Declaration of Bruce Kahn, ¶s 6 and 7.

With the pleadings, and without no facts in dispute, the legal issue for this Court to resolve is whether AIGTS was the surety of BIOGENESIS for the underlying contract in question.

Hence, nothing in the Plaintiff's Opposition Memorandum in any way poses an obstacle to the entry of dismissal in favor of Defendant AIGTS in this matter.

## I. DEFENDANT AIGTS IS NOT THE PROPER PARTY AND SHOULD ACCORDINGLY BE DISMISSED.

It cannot be disputed that AIGTS is not a surety, nor has ever acted as a surety. In fact, there is no dispute AHAC is the named surety in the performance bond posted with the United States. See, Second Declaration of Bruce Kahn, Exhibit "B". In its attempt to save its case, the Plaintiff argues that AIGTS and AHAC are the same company to raise a factual issue. What the Plaintiff apparently does not understand is that AIGTS is the adjusting company and that for the Plaintiff to recover under the Bond, the Miller Act requires the Plaintiff to name the surety AHAC as a defendant. The Miller Act states in pertinent part:

> Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d-1 . . . shall have the right to sue on such payment bond for the amount, or the balance thereof . . .

40 USC §2710b(a).

In other words, the person, whose labor and supplies go into public projects, would have to sue the person issuing the bond. In this case, AHAC. The policy is "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his supplies of labor and materials." _Taylor Construction, Inc. v. ABT Service Corporation, Inc._, 163 F.3d 1119, 1122 (9th Cir. 1998) (quoting _United States ex. rel. Sherman v. Carter_, 353 U.S. 210, 217 (1957).

Guam's statutory definition of a surety could not be clearer. This definition specifically includes AHAC because AHAC, "at the request of [Biogenesis], and for the purpose of securing to him a benefit, becomes responsible for the performance by [Biogenesis] of some act in favor of [the United States]." 18 GCA §32101. Plaintiff RHINO BUILDERS fails to even address these plain federal and local statutory provisions

3

in its Opposition Memorandum. Instead, the Plaintiff would have the Court ignore the statutory provisions and engages in hair splitting analysis designed to demonstrate and conjure up issues, which are not genuine issues, so that dismissal may be denied.

The fact of the matter is that all the parties, including Plaintiff RHINO BUILDERS, was well aware AHAC is the surety for the bond on the underlying contract. BIOGENESIS was required to post the payment bond, Bond No. 20-80-88, dated October 6, 1999, with the United States, specifically naming AHAC as the surety, before the contract could be awarded:

> Before any contract for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":
>
> * * *
>
> (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. . .

40 USC §270a(a)(2). See also, Second Declaration of Bruce Kahn, Exhibit "B".

It is inconceivable that the purported subcontractor, Plaintiff RHINO BUILDERS, would have no notice of who the surety was, yet allegedly begin work on a federal project. Indeed, Plaintiff RHINO BUILDERS knew full well AHAC was the surety, at least by October 22, 2001, that AHAC was the surety. See, Declaration of Bruce Kahn Exhibits "A" and "B"; and Second Declaration of Bruce Kahn, Exhibit "A".

4

Most importantly, other than alleging AIGTS as the surety, AIGTS has no liability in fact or in law. Simply being a claims adjuster for AHAC imposes no liability to the Plaintiff RHINO BUILDERS.[2]

A case on point is <u>National Union Fire Insurance Company of Pittsburgh, P.A. v. Gemma E. Braga and Nanbo Insurance Underwriters</u>, Civil Action No. CV1221-95. In that case, Judge Siguenza (now Associate Justice Siquenza) dismissed the plaintiff's claim against the insurer's agent. A copy of the Court's Decision and Order is attached to the Declaration of Louie J. Yanza in Support of Defendant AIGTS' Motion to Dismiss as Exhibit "A" and incorporated herein by this reference.

## CONCLUSION

Defendant AIGTS' motion for dismissal and for summary judgment should be granted and Defendant AIGTS should be dismissed from the above-entitled action.

Dated this 6th day of September, 2002.

                              **McKEOWN • VERNIER • PRICE • MAHER**
                              Attorneys for Defendant
                              **AIG TECHNICAL SERVICES, INC.**



By: _____
       LOUIE J. YANZA

---

[2] Indeed, nowhere in the Complaint does the Plaintiff RHINO BUILDERS allege that credit or monies were given personally to AIGTS; that AIGTS has entered into a contract or agreed to payout RHINO BUILDERS' claims; nor has the Plaintiff RHINO BUILDERS made any allegation or prove that AIGTS' actions were wrongful in nature. See, 18 GCA §20402.