THEODORE S. CHRISTOPHER
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932-8973
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorneys for Plaintiff Rhino Builders, Inc.

FILED
DISTRICT COURT OF GUAM
SEP 10 2002
MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT

OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **AMENDED COMPLAINT** |

COMES NOW, Plaintiff RHINO BUILDERS, INC. (hereinafter "Plaintiff"), by and through its attorneys the Law Office of Antonio L. Cortés, and hereby files its Amended Complaint against Defendant BIOGENESIS PACIFIC, INC. (hereinafter "Defendant Contractor") and Defendants AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE CO. (hereinafter "Defendants Surety"), and alleges and avers as follows:

ORIGINAL

1. Plaintiff is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Waianae, County of Honolulu, State of Hawaii. Plaintiff is engaged in the business of roofing installation and repairs.

2. At all times relevant to this claim Plaintiff was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

3. To the best of Plaintiff's knowledge, Defendant Contractor is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Kailua, County of Honolulu, State of Hawaii.

4. To the best of Plaintiff's knowledge, Defendant Contractor is also a corporation organized and existing under the laws of the Territory of Guam, with its principal office and place of business located in Dededo, Guam.

5. To the best of Plaintiff's knowledge, Defendants Surety are corporations duly authorized to engage in the business of executing surety bonds in the State of New York, with their principal office and place of business located at the City of New York, State of New York.

6. This action arises, and the court has jurisdiction, under the Miller Act, United States Code, Title 40, Sections 270a through 270 d.

7. To the best of Plaintiff's knowledge, on or before May 2000, Defendant Contractor entered into a contract in writing with the United States of

America to furnish the materials and perform the labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in the contract, for a consideration of $4,926,657 for the period from May 15, 2000 to September 29, 2001. The contract was designated Navy Contract No. N62766-99-D-0425. Navy Contract No. N62766-99-D-0425 has been continued and remains in effect.

8. To the best of Plaintiff's knowledge, at the time Defendant Contractor entered into and began performance under such contract with the United States of America, Defendant Contractor was not licensed to do business in the Territory of Guam.

9. To the best of Plaintiff's knowledge, Defendant Contractor did not become licensed to do business in the Territory of Guam until January 2, 2001.

10. To the best of Plaintiff's knowledge, on October 6, 1999 pursuant to the terms of Contract No. N62766-D-0425, Defendant Contractor, as principal, and Defendants Surety, as surety, executed and delivered to the United States their bond, Bond No. 20-80-88, conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in Navy Contract No. N62766-99-D-0425.

11. On or before May 2000, use Plaintiff entered into an oral subcontract with Defendant Contractor whereby use Plaintiff agreed to perform such contract work as the U.S. Navy might assign to Defendant Contractor on individual

task orders under the U.S. Navy Contract No. N62766-99-D-0425, between Defendant Contractor and the United States of America.

12. Under the terms of the oral subcontract between Defendant Contractor and use Plaintiff, Defendant Contractor agreed to pay all of use Plaintiff's actual costs of performance plus fifty percent (50%) of Defendant Contractor's profit upon completion of each task order under Contract No. N62766-99-D-0425. A copy of a letter from Defendant Contractor to use Plaintiff reiterating the terms of the oral subcontract between Defendant Contractor and use Plaintiff is attached hereto as Exhibit "A," and incorporated by reference.

13. The oral subcontract between Defendant Contractor and use Plaintiff was necessary initially only because the contract award date for Contract No. N62766-99-D-0425 had not afforded Defendant Contractor sufficient time to establish a written subcontract with use Plaintiff.

14. Both Defendant Contractor and use Plaintiff agreed that the oral subcontract between Defendant Contractor and use Plaintiff would later be reduced to writing to conform to accepted federal government contract practice.

15. Defendant Contractor later refused to enter into a formal written subcontract with use Plaintiff.

16. Plaintiff then entered into the performance of its oral subcontract and furnished labor and equipment in the prosecution of the work provided for in the contract between Defendant Contractor and the United States of America.

17. Plaintiff performed labor and provided materials as agreed under the oral subcontract as follows: Plaintiff provided all of the needed labor, materials, equipment, facilities, financing and bonding to Defendant Contractor in the prosecution of the work provided for in Contract No. N62766-99-D-0425. The reasonable and agreed value of Plaintiff's actual costs for such performance under the oral subcontract was and is $310,975, none of which has been paid by Defendant Contractor to date, leaving a balance due of $310,975.

18. In addition to Plaintiff's actual costs, Defendant Contractor agreed to pay Plaintiff a fifty percent (50%) share of Defendant Contractor's profit under Contract No. N62766-99-D-0425. The reasonable and agreed fifty percent (50%) share of Defendant Contractor's profit therefore was and is $770,906, none of which has been paid by Defendant Contractor to date, leaving a balance due of $770,906.

19. Notwithstanding Plaintiff's several demands for payment, such balances have not been paid and there is now justly due and owing to use Plaintiff the sum of $1,081,881, the same being the reasonable value of use Plaintiff's performance under the oral subcontract between Defendant Contractor and use Plaintiff.

20. Defendant Contractor breached its contract with Plaintiff in that it failed and refused to pay Plaintiff the moneys due it for labor performed and equipment furnished, as above set forth, and Plaintiff was then forced to terminate its performance of the contract.

21. The date on which the last labor was performed and equipment supplied to Defendant Contractor by Plaintiff was March 20, 2001. A period of more than 90 days has elapsed since such date, and Plaintiff has not been paid anything for the labor performed and equipment furnished.

22. All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

23. This court also has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

24. A true and correct copy of Bond No. 20-80-88, which was in full force and effect at all times relevant herein, is attached hereto as Exhibit "B" and incorporated herein by reference as if set forth fully.

25. In or about October 2001, Plaintiff contacted Defendant American Home Assurance Co. (hereinafter "AHAC") to initiate the claims process and AHAC referred Plaintiff to Defendant AIG Technical Services, Inc. (hereinafter "AIG") to handle Plaintiff's claim against AHAC.

26. On or about October 22, 2001, Plaintiff sent AHAC the original of the letter and enclosure attached hereto as Exhibit "C" and incorporated herein by reference as if set forth fully.

27. On or about October 30, 2001, AIG responded to the letter to AHAC by providing Plaintiff with its claim form. A true and correct copy of AIG's response is attached hereto as Exhibit "D" and incorporated herein by reference as if set forth fully.

28. As required by AHAC, on or about January 9, 2002, Plaintiff then sent AIG the Proof of Claim form attached hereto as Exhibit "E" and incorporated herein by reference as if set forth fully.

29. On or about February 21, 2002, AIG denied Plaintiff's claim as untimely. A true and correct copy of AIG's denial of Plaintiff's claim on the bond is attached hereto as Exhibit "F" and incorporated herein by reference as if set forth fully.

30. At the time when AIG denied the claim, it knew that Plaintiff had continued to furnish and supply materials to Defendant Contractor for work on the project until on or after March 20, 2001.

31. Upon information and belief, AHAC and AIG are owned by the same company and operate either as the same company or as a joint venture.

32. At the time when AIG denied the clam, it knew that Defendant Contractor's failure to pay Plaintiff had required Plaintiff to reduce its staff; that Defendant Contractor had concealed certain financial records from Plaintiff; that all of this had prevented Plaintiff, despite the exercise of all due diligence, from determining the amount of Defendant Contractor's obligation until shortly before January 9, 2002; that this caused the delay in the filing of this lawsuit; and that Plaintiff could not determine whether to file this lawsuit until it determined the amount of Defendant Contractor's obligation.

33. If AHAC did not authorize AIG's denial of the claim, then AIG is liable for breach of implied warranty of authority.

34. Whether or not AHAC authorized AIG's denial of the claim, that denial was wrongful because the claim was timely, subjecting AIG to liability under 18 G.C.A. § 20402(3).

35. Both AHAC and AIG owed and continue to owe Plaintiff a duty of good faith and fair dealing arising out of the bond as well as a general tort duty of ordinary care.

36. AHAC acted in bad faith and breached these duties by referring Plaintiff to AIG.

37. AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC, by denying the claim, by moving to dismiss this action because it was not brought against AHAC, and by citing the November 20, 1995, Decision and Order in <u>National Union Fire Insurance Co. of Pittsburgh, Pa. v. Braga</u>, Superior Court of Guam Civil Case No. CV1221-95, as a case on point even though it is distinguishable and even though the subsequent decision in <u>Albert H. Wohlers and Co. v. Bartgis</u>, 969 P.2d 949, 959 (Nev. 1998), allows the court to hold AIG liable for <u>policy-based contractual claims</u> as well as for bad faith in these circumstances. See also <u>Farr v. Transamerica Occidental Life Insurance Co. of California</u>, 699 P.2d 376, 386 (Ariz. App. 1984) (bad faith liability); <u>Delos v. Farmers Insurance Group Inc.</u>, 155 Cal Rptr. 843, 849 (App. 1979) (same); and see <u>Continental Insurance Co. v. Bayless and Roberts Inc.</u>, 608 P.2d 281, 287 (Alaska 1980) (tort liability).

8

Case 1:02-cv-00008   Document 48   Filed 09/10/2002   Page 8 of 20

38. By reason of Defendants' bad faith and breaches of their duties, Plaintiff has been damaged in amounts to be determined at trial.

39. Defendants' acts and omissions have been willful and oppressive, entitling Plaintiff to exemplary and punitive damages.

## Count I
## Miller Act

40. Plaintiff re-alleges paragraphs 1 through 39 herein as if set forth fully.

41. Defendants' acts and omissions entitle Plaintiff to recovery against all Defendants under the Miller Act.

## Count II
## Breach of Duties of Good Faith and
## Fair Dealing and Ordinary Care

42. Plaintiff re-alleges paragraphs 1 through 41 herein as if set forth fully.

43. Defendants' acts and omissions entitle Plaintiff to recovery against AIG and AHAC for breach of the duty of good faith and fair dealing arising out of the bond and the general tort duty of ordinary care.

## Count III
## 18 G.C.A. § 20402(3) and Breach of
## Implied Warranty of Authority

44. Plaintiff re-alleges paragraphs 1 through 43 herein as if set forth fully.

9

45. Defendants' acts and omissions entitle Plaintiff to recovery against AIG for breach of the implied warranty of authority to the extent that AHAC did not authorize denial of the claim, and also to recovery against AIG under 18 G.C.A. § 20402(3).

WHEREFORE, the United States of America on behalf and to the use of Plaintiff most respectfully prays this honorable Court to render judgment against all Defendants as follows:

1. For the sum of $1,081,881, together with interest from March 20, 2001;

2. For punitive and exemplary damages, in an amount to be determined by this honorable Court;

3. For costs of this action; and

4. For further relief as the Court may deem just and proper.

DATED: September 10, 2002 in Hagåtña, Guam.

LAW OFFICE OF ANTONIO L. CORTÉS
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
THEODORE S. CHRISTOPHER



**BioGenesis Pacific, Inc.**
A Nader Hawaiian Company

Eugene O'Connell
Rhino Builders, Inc.
790 North Marine Drive
Box 959
Tumon, Guam 96911

January 2, 2001

RE: Invoices 1313, 1288

Dear Mr. O'Connell

We are in receipt of your correspondence concerning your Guam subcontract with our company. Your subcontract was subject to a verbal agreement which provided that 50% of the net profits would be determined after all actual costs to both BioGenesis Pacific, Inc. (BPI) and Rhino. In return, you represented that Rhino was capable and would front all the needed facilities, personnel, financing and bonding through the term of each task order. Furthermore, Rhino was consistently given clear and specific instructions not to cause any task orders to be accepted from the Navy unless Rhino was certain that each specific task order would result in a profit or break even at worst under our said agreement. If there was any doubt, Rhino was not to cause any task order to be accepted. BPI relied upon Rhino for the acceptance of each task order.

BPI has been disappointed by Rhino's affirmative and specific actions to repudiate and breach its subcontract with BPI. This had been especially damaging since upon Rhino's urgings BPI had wholly relied upon Rhino's management and facilities on Guam. You ordered all work stopped midway during performance of task orders that caused BPI to default on its general contract with the Navy incurring liquidated damages. Next, without notice or warning, you ordered all equipment to be shutdown, including equipment owned by BPI located at your facilities. And then, you even attempted to evict BPI from the office facilities without proper legal notice. That you have perniciously breached your subcontract with BPI causing much damage it clear.

For these reasons, your invoices are unacceptable as well as premature. I am shocked over your actions for it seems obvious that you intended to cause BPI to fail with the Navy allowing Rhino to succeed in the Navy roofing contract? While I hope this is not the case, BPI has to first determine the actual costs after completion of the all task orders. Secondly, BPI must determine Rhino's performance on its subcontracting. Then BPI must determine fair damages incurred by Rhino's breaches.

As BPI yet looks forward to an amicable relationship, any misunderstandings must be settled and matters handled fairly.

Very truly yours,

Gerald Lam

Bond No. 20-80-88

| PERFORMANCE BOND | DATE BOND EXECUTED (Must be same or later than date of contract) | OMB No.: 9000-0045 |
|---|---|---|
| (See instructions on reverse) | October 6, 1999 | |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

**PRINCIPAL** (Legal name and business address)

BIOGENESIS PACIFIC, INC.
1604 Ulualana Place
Kailua, Hawaii 96734

**TYPE OF ORGANIZATION ("X" one)**

☐ INDIVIDUAL  ☐ PARTNERSHIP
☐ JOINT VENTURE  ☒ CORPORATION

**STATE OF INCORPORATION**
Hawaii

**SURETY(IES)** (Name(s) and business address(es))

AMERICAN HOME ASSURANCE COMPANY
121 Spear Street
San Francisco, California 94105

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| | 500 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/29/99 | N62766-99-D-0425 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| SIGNATURE(S) | 1. BIOGENESIS PACIFIC, INC. By [signature] (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. GERALD N.C. LAM President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| | NAME & ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC. New York | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. By [signature] | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Swan Lee, Attorney in Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition unusable



Bond No. 20-80-88

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) October 6, 1999 | OMB No.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| BIOGENESIS PACIFIC, INC.<br>1604 Ulualana Place<br>Kailua, Hawaii 96734 | ☐ INDIVIDUAL  ☐ PARTNERSHIP<br>☐ JOINT VENTURE  ☒ CORPORATION<br>STATE OF INCORPORATION<br>Hawaii |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY<br>121 Spear Street<br>San Francisco, California 94105 | MILLION(S) | THOUSAND(S)<br>250 | HUNDRED(S)<br>000 | CENTS<br>00 |
| | CONTRACT DATE<br>09/29/99 | CONTRACT NO.<br>N62766-99-D-0425 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| SIGNATURE(S) | 1. BIOGENESIS PACIFIC, INC.<br>By [signature] (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. Gerald N.C. Lam<br>President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| Surety A | NAME & ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC.<br>New York | LIABILITY LIMIT<br>$ | |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. By [signature] | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Swan Lee, Attorney in Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

October 22, 2001

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

American Home Assurance Company
121 Spear Street
San Francisco, California 94105

Re:   Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on Contract No. N62766-99-D-0425

Dear Sirs:

On behalf of our client, Rhino Builders, Inc., we are forwarding this enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its rights under the Miller Act. Contrary to your understanding, BioGenesis Pacific, Inc. is the prime contractor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc. provided all labor and materials supporting its claim pursuant to an oral subcontract between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and forward any and all future communications to my attention at the above address.

**EXHIBIT C**

Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

*Terry E. Thomason*
Terry E. Thomason

Enclosures

cc: Rhino Builders, Inc.

1433798.1



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000
Direct Dial: (212) 458-1282

October 30, 2001

<u>VIA REGULAR MAIL</u>

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

| Re: | | |
|---|---|---|
| | **Principal:** | BioGenesis Pacific, Inc. |
| | **Bond No.:** | 000-20-80-88 |
| | **Claim No.:** | 388-005037-001-0001 |
| | **Project:** | Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations |
| | **Surety:** | American Home Assurance Co. |
| | **Claimant:** | Rhino Builders, Inc. |

Dear Mr. or Ms. Thomasen:

This will acknowledge receipt of your client's claim in the amount of $245,664.43 for labor and/or materials furnished in connection with the above referenced project.

You will please find enclosed a Proof of Claim form for your client's use in documenting their claim against the above bond. This form should be completed in as much detail as possible, and include the last date that their company either performed the work or supplied materials claimed for on the above project. The Proof of Claim form should then be photocopied twice (to make three sets). Separate copies of documentation supporting the claim should be annexed to each form. Documentation supporting the claim in this instance would include copies of any subcontracts, signed purchase orders, signed invoices, signed delivery tickets, etc. Upon completion, two (2) of these forms in original (signed and notarized by an authorized representative of your client's company), with copies of supporting documentation annexed to each, should be returned to my attention (the third form is for your own records).

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Truly yours,

Mark Titherington

Enc.

cc: BioGenesis Pacific, Inc.

**EXHIBIT D**

1

# AIG   AIG Technical Services, In
175 Water Street
New York, NY 10038
212.770.7000

## Proof of Claim : Construction Contract

AIG Technical Services, Inc.

State of __Territory of Guam__

Bond Number: 000-20-80-88
Claim Number: 388-005037-001-0001

County of _____

I, __Michael O'Connell__, the __CEO__ of __Rhino Builders, Inc.__
   (Name of Affiant)              (Position in Firm)         (Name of Claimant)

of __87-1610 Ulehawa Road, Waianae, HI 96792__ on behalf of said firm, hereby state under oath th
        (Address)

said firm between the dates of __May 2000__ and __December 2000__ furnished, so

and delivered __roofing installation & repairs & materials__ to __BioGenesis Pacific, Inc.__ for
                   (describes services or material)              (Name of contractor or subcontractor if any)

construction of __Contract No. N62766-99-D-0425__ in accordance with an __oral__ Subcontract
described in Prime  (Identify Contract)
Contractor letter  Purchase order. Dated __January 2, 2001__, a copy of which is attached hereto, for the agreed
price of __$1,081,881.80__, none of which has been paid except __$0__ and leaving a statement
balance due of __$1,081,881.80__. Attached hereto are __1__ Invoices, __NA__ delivery tickets

showing the deliveries or progress estimates furnished __BioGenesis Pacific, Inc.__
                                                              (Contractor)

and the amount due to claimant therefore; that said firm served notice of said balance due it by Registered Mail dated :
_____ on Surety, __Dec. 20, 2001__ on Contractor, __NA__ on Owner, (copie
attached), that there is no just credit nor offset due against said balance and that said firm made no assignment of any
part of said balance except to __NA__
and that there are no liens or encumbrances against said balance except that of __NA__
_____ ; that said firm has paid in full for all labor and materi
furnished and supplied it for said job except the claims of the persons or firms whose names and addresses and amounts
due to them are as follows:

__NA__

The foregoing information is furnished to the surety in support of affiant's claim and it is understood that the furnishing
this from or the acceptance and/or retention thereof by the surety does not constitute a waiver or any of the terms of the
Surety's bond nor of any defenses the Surety may have, nor admission of liability thereunder.
Any person who knowingly files a statement of claim containing any false or misleading information is subject to crimir
or civil penalties.

Sworn to and subscribed before me
this __9th__ day of __January__ 20 __02__

Notary Public, State of Hawaii
Signed: My commission expires: 6/24/02        (Affiant's Signature) _____

[Notary stamp: MICHIKO SHIM... STATE OF HAWAII]

EXHIBIT E



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-2901

February 21, 2002

VIA REGULAR MAIL

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen, Esq.

Re: Principal: BioGenesis Pacific, Inc.
    Bond No.: 000-20-80-88
    Claim No.: 388-005037-001-0001
    Claimant: Rhino Builders, Inc. ("Rhino")
    Project: Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations
    Surety: American Home Assurance Co.

Dear Mr. Thomasen:

The above referenced surety has reviewed the Proof of Claim and supporting documentation (collectively, the "Proof of Claim") which you submitted on or about January 9, 2002 in support of your client's claim against the referenced bond. The Proof of Claim has been reviewed in connection with the relevant bond language, your client's purported Miller Act Notice dated October 22, 2001, and the federal Miller Act, 40 U.S.C. § 270a et seq. which governs claims against payment bonds issued for federal projects such as the above.

Section 270b(b) of the Miller Act, among other things, expressly states that a payment bond claimant is time barred from bringing suit to enforce its claim unless such an action is brought within one year of the day on which the last of the labor was performed or material was provided by them.

I note that the sworn affidavit of Michael O'Connell, identified as claimant's chief executive officer, included in the Proof of Claim, admits and conclusively establishes that the last day claimant performed labor or provided material on the above project was on or before December 31, 2000. In order to have been timely, suit to enforce the claim would have had to have been commenced within one year of that date. As such, the above referenced claim appears to be time barred by the statute of limitations contained in 40 U.S.C. § 270b(b). Accordingly, the claim must be denied.

If you have any other documents or information you believe would be helpful for the Surety to review please feel free to provide them to the undersigned.

A Member Company of
American International Group, Inc.

**EXHIBIT F**



AIG Technical Services, Inc.
175 Water Street
New York, NY 10038
212.770.7000

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc.: BioGenesis Pacific, Inc.

2

# United States District Court

DISTRICT OF _____GUAM_____

UNITED STATE OF AMERICA FOR USE AND
BENEFIT OF RHINO BUILDERS, INC.

        Plaintiff,

        V.

BIOGENESIS PACIFIC, INC.,
AIG TECHNICAL SERVICES, INC., and
AMERICAN HOME ASSURANCE CO.,

        Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 02-00008

TO: (Name and address of defendant)
    AMERICAN HOME ASSURANCE CO.
    121 Spear Street
    San Francisco, California 94105

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)
    Theodore S. Christopher, Esq.
    Law Office of Antonio L. Cortes
    233 Julale Center
    424 West O'Brien Drive
    P.O. Box BV
    Hagatna, Guam 96932-8973

an answer to the amended complaint which is herewith served upon you, within __Twenty (20)__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

ACKNOWLEDGED RECEIPT
By: _[signature]_
Date: 09/11/02

SEP 10 2002

MARY L.M. MORAN
CLERK

/s/ Rosita S. San Nicolas
(BY) DEPUTY CLERK

DATE