ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **PLAINTIFF'S JOINDER IN MOTION TO MODIFY SCHEDULING ORDER AND DISCOVERY PLAN** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**ORIGINAL**

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Plaintiff")most respectfully submits the following points and authorities supporting its joinder in the May 12, 2003 motion of Biogenesis Pacific, Inc ("BPI") to modify scheduling order and discovery plan.

## PROCEDURAL BACKGROUND

Plaintiff's Complaint was prepared by Plaintiff's former attorney, the law firm of Carlsmith Ball LLP ("Carlsmith"), which filed it on March 20, 2002, but did not serve. The Complaint named two defendants – Biogenesis Pacific, Inc. ("BPI") and AIG Technical Services ("AIG"). The undersigned was retained by Plaintiff on May 10, 2002. Plaintiff served BPI on June 14, 2002. After failing to find AIG in Guam, Plaintiff served it on June 19, 2003 pursuant to 18 G.C.A. §7103(2). After obtaining sufficient continuances to allow AIG to retain counsel who could participate in the preparation of a Scheduling Order, Plaintiff's counsel took the lead in preparing the Proposed Scheduling Order and Discovery Plan issued by the Court on August 19, 2002. BPI moved to dismiss the Complaint on July 17, 2002. AIG did so on July 17, 2002, on the ground that it was not the surety for the Contract at issue and therefore was not a proper defendant. Upon review of the then-available correspondence between Carlsmith and AIG and AHAC,[1] and Plaintiff filed an Amended Complaint on September 10, 2002 naming both as defendants. BPI and

---

[1] American Home Assurance Corporation.

AIG withdrew their motions to dismiss, and BPI answered and filed Third Party Complaints against Michael O'Connell and Michael Danforth on September 24, 2002. AIG and AHAC answered on October 2, 2002. The Third-Party Defendants had both answered January 10, 2003, and obtained the stipulation of the other parties to request revision of the Scheduling Order to account for their late entry into the action. The Court approved the Revised Scheduling Order on March 24, 2002, which ordered discovery to be completed by April 28, 2003.

Discovery had previously commenced with Plaintiff serving the first round of requests on October 25, 2002. Most parties soon served and responded to written discovery and cooperated in scheduling a first round of depositions in Hawaii in late February 2003, where three key witnesses residing there were then deposed – BPI's President Gerald Lam, Rhino's President Michael O'Connell, and Third-Party Defendant Michael Danforth, a federal contract administration consultant. The parties then cooperated in arranging second round of depositions in Guam, and between April 3, 2003 and April 11, 2003 they deposed Alfred Garthe III, a 49% shareholder and former officer of Plaintiff who is now employed by BPI to perform the work BPI had previously subcontracted Plaintiff to perform, Plaintiff's accountant, Eugene O'Connell, and Defendant's project manager, Richard Avilla.

During the period when Eugene O'Connell was in Guam for his April 10, deposition, counsel became aware of evidence that Carlsmith, when it prepared the initial Complaint, may have had an attorney-client relationship with an entity

3

affiliated with or owned by AIG, AHAC, or another entity owning or owned by or affiliated with AIG and/or AHAC, and may actually have been contacted by that entity, or by AIG and/or AHAC through that entity, and asked or instructed to discontinue its representation of Plaintiff in this action.

### SUMMARY OF PLAINTIFF'S POSITION

Plaintiff, like BPI, believes that the interests of justice require further discovery prior to the deadline for the preparation of dispositive motions, and that BPI's motion to modify scheduling order and discovery plan is fair in the present circumstances. Since the existing scheduling order was issued on March 13, 2003, the parties have engaged in substantial efforts to discover facts and analyze the effect of those facts upon their positions. The facts so discovered, in Plaintiff's view, are more complex than anticipated when the current scheduling order was prepared, involving inter-island communications between several persons affiliated with several parties, changes of affiliation of key witnesses from one party to another at times that have so far been difficult to pin down, a struggle between Plaintiff's shareholders and the shareholders of BPI for control and ownership of Plaintiff, and complex facts regarding the performance of a complex government contract. Discovery and client communications have also been more difficult than they would have been had all parties or all witnesses been available on Guam. Accordingly, Plaintiff believes that BPI is justified in requesting the additional time reflected in its proposed revised scheduling order, and that all parties and the interests of justice would be ill served if

4

Plaintiff and BPI are not allowed more time to obtain accurate facts for trial and dispositive motions. Further, counsel for BPI and Plaintiff have had a number of exploratory discussions regarding settlement, and the undersigned believes that, should the motion be granted, settlement between BPI and Plaintiff will become more likely than trial, which Plaintiff also believes would best serve the interests of justice and judicial economy.

## STANDARDS GOVERNING THE MOTION

Moore's Federal Practice provides the following general standards for the consideration of motions for enlargement of time.

> When a party requests an extension before the time period has elapsed, pursuant to Rule 6(b)(1), the district court usually will be liberal in granting the request. Rule 6(b) allows the court to enlarge time periods in its discretion "for cause shown." What cause must be shown is not specifically set out in Rule 6(b) but some justification for the enlargement seems to be required. The court generally will find that cause has been shown and grant the extension unless the moving party has been negligent, shown bad faith, or abused the privilege of extensions.

1 Moore's Federal Practice, 3d ed. § 6.06[2].

More specifically, Rule 16 itself provides that any modification of a scheduling order made pursuant to Rule 16 must be supported by "a showing of good cause and by leave of the district judge, or when allowed by local rule, by a magistrate judge." F. R. Civ. Proc. Rule 16(b).

The 1983 comment to that rule provides, in pertinent part, that

> . . . the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the

5

party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than the "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

## GOOD CAUSE EXISTS FOR THE REQUESTED EXTENSION

### A. Neither BPI nor Plaintiff Have Been Negligent or Shown Bad Faith During Discovery, which Nonetheless Remains Incomplete.

Plaintiff agrees with BPI's conclusion that its proposed modification of the current scheduling order and discovery plan will further the interests of justice by enabling the parties to ascertain critically-important facts and use them to properly make any dispositive motions and properly prepare their cases for trial. As seen from the text of part 2.d. of the proposed revised order, the parties have been diligent in conducting discovery.

Notwithstanding that diligence, the following circumstances, among others, have materially hindered the ability of all counsel to discover what they need to resolve this case: (a) deposed witnesses have not been able to provide complete testimony regarding a March 20, 2001 truck rental transaction that may prove critical to Defendants' asserted statute of limitations defenses;[2] (b) until April 11, 2003, counsel for neither side could draw a sensible conclusion as to whether Mr. Avilla,

---

[2] On this point, Plaintiff agrees with BPI that discovery needs to be extended to allow the parties to depose Mr. George Allen, a former employee of Plaintiff. Plaintiff does not agree that its interrogatory responses naming Mr. Allen and others as witnesses to the March 2001 Isuzu truck rental were in any way less than completely candid and accurate. It is true, but it is no party's fault, that Mr. Allen's testimony is needed before either Plaintiff or BPI can competently prepare the statute of limitations issue for trial or dispositive motion.

6

who was one of the major players in this litigation, who had physical possession of much of the critical documentation, was, during the relevant times, an employee of BPI or an employee of Plaintiff; (c) officers of Plaintiff have had difficulty assembling their proof and providing it to counsel for production due to the disruption in Plaintiff's operations, the disordering of Plaintiff's records,[3] and Plaintiff's loss of control of some of its records associated with BPI's hiring of Plaintiff's officers and key employees,[4] including its Vice President and 49% shareholder;[5] (d) BPI has yet to produce, pending agreement on a protective order, some documents requested by Plaintiff and needed to understand the scope of its claims; and (e) during a period of time critical to this case, BPI, through its President, asserted control over the actions of Plaintiff and actually took control of documentary evidence belonging to Plaintiff that Plaintiff needs to determine and prove its damages.[6] To be sure, few of these circumstances, taken separately, presents insurmountable problems. But given the logistical challenges presented by clients and witnesses in Hawaii and the fact that discovery closed scant more than three months after pleadings closed, a reasonable extension would seem in the interests of justice to provide for follow up discovery.

As noted in BPI's motion, Plaintiff has recently produced numerous invoices, receipts, checks and other such detailed support for its earlier documentary

---

[3] Deposition of Hermenia Redolozo ("Redolozo Deposition") at 40:25 – 41:12.
[4] February 20, 2003 Deposition of Michael O'Connell ("O'Connell Deposition"), at 214:12-18.
[5] *cf* Deposition of Alfred Garthe III ("Garthe Deposition") at 86:24 – 87:24 *and* Deposition of Michael Danforth ("Danforth Deposition") at 91:24-94:4 *with* Redolozo Deposition, at 40:25 – 41:12.

7

submissions, and BPI reasonably desires to conduct further discovery regarding these recent submissions. Contrary to what one might be inclined to suspect from some of BPI's remarks in paragraphs 4 and 5 of its motion, however, that production, though late in discovery, was not "belated."[7] Plaintiff does agree with BPI, however, that the parties need and should have the opportunity to make further inquiries into these documents so they can better move toward resolution of their disputes in a just manner, whether by settlement, motion, or trial. Although largely composed of invoices, receipts, and check records, this last production includes what appears to be draft corporate documents for a Guam corporation called Rhino Builders Guam, Inc. that Plaintiff had never seen at the time it deposed Mr. Garthe, and thus could not ask him about. In addition, because of the volume of this documentation, it would be cumbersome to introduce it all at trial. Plaintiff hopes that, by giving the parties additional time to make further inquiries regarding this necessarily voluminous documentation, the parties will be willing and able to make stipulations that will streamline trial of the issue these documents relate to – what Plaintiff actually spent on the Roofing Contract at issue in this action.

Finally, Plaintiff believes the interests of justice would be best served if it is allowed the opportunity to discover whether or not, as was first suggested to the

---

[6] O'Connell Deposition, at 214:12.
[7] Some of this documentation could not have been supplied during initial disclosure because Plaintiff had to retrieve it from a hard disk on a computer belonging to Plaintiff that agents of BPI is said by one witness to have erased while in control of that computer, preventing Plaintiff from producing these documents as early as it would have preferred.

8

undersigned April 10, 2003, AIG, or AHAC, or one of their affiliates was involved in or provoked the decision by the Carlsmith firm to withdraw as counsel for Plaintiff.

**B.     No Party has Abused the Privilege of Extensions.**

Plaintiff believes that the parties' failure to complete discovery by April 28, 2003 was in no way due to abuse of the privilege of extensions. Rather, Plaintiff submits that circumstances show it to be better characterized as due to their failure to understand the complexity of the facts in time to request a longer period for pretrial discovery at the outset. The record is replete with evidence that the parties have acted diligently and cooperatively in their pursuit of the facts they need to discover to prepare for trial, but have nonetheless failed to complete that effort.

## LENGTH OF REQUESTED CONTINUANCE

Plaintiff believes that the 90-day continuance BPI originally desired would, in ideal circumstances, more appropriately fit the needs of this case. For the reasons BPI states in its motion, however, Plaintiff joins in the requested 180-day continuance as an acceptable alternative to the harm it would suffer if no continuance is granted.

## RULE 16.5 STATEMENT

Plaintiff submits that in the circumstances described above, a general revision of the Scheduling Order according to the terms requested by BPI would best serve the interests of justice. Should the Court grant a modification of the Scheduling

---

Some of this documentation appeared duplicative in content of other records produced much

Order but deem that only specified events of discovery are appropriate to its management of this case, Plaintiff submits the following specific needs for continued discovery that it requests the Court to approve:

    Written discovery directed to AIG and AHAC regarding the relationship of the Carlsmith firm to them and their corporate affiliates to be served in June 2003.

    Deposition of an appropriate officer of AIG or AHAC in July or August 2003 regarding the relationship of the Carlsmith firm to them and their corporate affiliates.

    The deposition of the Carlsmith firm in July or August 2003 regarding any contact that may have been made with that firm by AIG or AHAC or any related entity regarding its former representation of Plaintiff, and regarding whether or not it represents or has represented AIG or AHAC or any related entity.

    The deposition of Mr. George Allen, at a time convenient to all parties in July or August 2003, regarding the March 20, 2001 truck rental transaction and any other knowledge he may have of relevance to this matter.

    A continuation of the deposition of Alfred Garthe III regarding the draft corporate documents discovered by Plaintiff after his deposition.

    Discovery as is required by BPI, AHAC, or AIG regarding documents provided by Plaintiff to date.

---

earlier.

An opportunity for all parties to produce additional documents prior to June 30, 2003.

An extension of the time to bring discovery motions, as requested by BPI, or at least until August 30, 2003.

### DISCLOSURE OF ADDITIONAL INFORMATION
### BEARING ON THIS MOTION

In order to not be later perceived to have concealed information until after this motion is decided, Plaintiff and its attorney disclose the following two circumstances. First, Plaintiff believes, on the basis of what has been revealed in discovery, that a just result in this case may require an amendment to its claims, and Plaintiff is currently studying whether it has an adequate basis to move for amendment of the Complaint under the applicable standards, as enunciated by the United States Court of Appeals in Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604, 608 (9th Cir. 1992). Counsel has diligently endeavored to complete that study in time to make such a motion, if any, along with this brief, but has been unable to complete his study in time to do so.

Second, in the event BPI's motion to modify scheduling order is denied, Plaintiff's counsel will move for a much more modest modification in order to allow him to travel away from Guam on his honeymoon between June 7 and June 19, 2003, during which time there currently is a June 9, 2003 deadline for the filing of dispositive motions, a deadline from which counsel would seek relief for that personal reason if BPI's motion is denied.

11

For the foregoing reasons, Plaintiff most respectfully joins in BPI's motion to modify scheduling order and discovery plan.

Respectfully submitted this 22nd day of May 2003.

_____
Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.