ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **POINTS AND AUTHORITIES SUPPORTING MOTION FOR LEAVE TO AMEND COMPLAINT TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**ORIGINAL**

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Plaintiff") most respectfully presents the following points and authorities supporting its motion for leave to amend its complaint to conform to facts ascertained during discovery.

## THE MOTION IS BASED ON FACTS NOT KNOWN ON THE LAST DAY TO AMEND PLEADINGS

The additional allegations in the Proposed Second Amended Complaint arise from facts that came to light during the discovery period. Some of them were not possible for Plaintiff to obtain until quite recently.

The first set of such facts concerns the tactics employed by Biogenesis Pacific, Inc. ("BPI") to assert control over Plaintiff in a manner that would prevent it from realizing the benefit of the alleged subcontract agreement, and to intimidate Plaintiff from asserting its right to its share of the profits from the Navy Contract or timely moving to prevent BPI from taking over its Guam facilities, equipment, materials, and employees. It was only through the depositions of BPI's Mr. Lam (February 19, 2003) and BPI's Mr. Garthe (April 3-4, 2003) that Plaintiff was able to learn that, while Mr. Garthe was still the head of Plaintiff's Guam operations, Mr. Lam approached Mr. Garthe and convinced him that he was going to help him "protect" his 49% share of Plaintiff's stock by means of Mr. Garthe's assigning that stock to Mr. Lam[1] without consideration,[2] and that Mr. Lam convinced Mr. Garthe

---

[1] Transcript of deposition of Alfred Garthe III ("Garthe Deposition") at 60:21-23.

that this assignment would benefit Plaintiff,[3] and that, post assignment, Mr. Lam would assist Mr. Garthe to start his own roofing company in Guam.[4] (Instead, Mr. Lam used the shares to intimidate Plaintiff and to procure Mr. Garthe's assistance in taking control of Plaintiff's facilities, equipment, materials, and employees in Guam)[5].

There was no way for Plaintiff to discover the foregoing information regarding the assignment transaction between Mr. Garthe and Mr. Lam without deposing them because they are both officers and employees of Defendant BPI and kept that information to themselves until forced to disclose it during discovery.

The second set of alleged facts in the Proposed Second Amended Complaint arises out of evidence revealed to counsel during the presence in Guam of Plaintiff's accountant, Eugene O'Connell, for his April 10, 2003 deposition by Defendants. Although Mr. O'Connell actually learned of this evidence prior to Plaintiff's filing of its First Amended Complaint, the following circumstances would make it unfair to consider that allegations based upon this evidence would have, with due diligence, been added to this action when the First Amended Complaint was filed. First, Mr. O'Connell is not legally trained or sophisticated, and was not able to appreciate that this was the sort of fact that needed to be communicated to counsel for inclusion in the First Amended Complaint. Second, Plaintiff's prior counsel

---

[2] Garthe Deposition, 62:9 – 63:3.
[3] Garthe Deposition, 93:10-16; Transcript of Deposition of Gerald N.Y.C. Lam, at 94:12 - 98:7.
[4] Garthe Deposition, 63:9-17.

3

affirmatively, though subtly, concealed this information from Plaintiff's present counsel, successfully diverting him from discovering the evidence revealed to him in April 10, 2003, essentially by affirmatively indicating that any such evidence would be contrary to fact.[6]

The third set of alleged facts appearing for the first time in the proposed Second Amended Complaint arises out of the deposition testimony of Mr. Michael Danforth (February 21, 2003). Mr. Danforth testified that when, after having engaged in substantial negotiations on Plaintiff's behalf to reduce the oral subcontract agreement to writing, as BPI had agreed to do from the outset, Mr. Lam finally refused to participate any more in that process or sign the written subcontract agreement. Mr. Danforth testified that, in response, he asked Mr. Lam why that was so, and Mr. Lam, an attorney, replied that BPI had at all times had a prior written partnering agreement with another company, Allstar/SAB, that prohibited BPI from subcontracting the subject work to Plaintiff.[7] Although it is believed that Mr. Danforth may have relayed this conversation to Plaintiff's Michael O'Connell, Mr. O'Connell, who is unsophisticated in legal matters, did not relay it to counsel, who therefore did not learn of it until Mr. Danforth was deposed. Further, BPI's alleged prior commitment to All Star/SAB naturally appears nowhere in the voluminous correspondence between Plaintiff and BPI concerning the performance and existence

---

[5] Transcript of Deposition of Michael Lamar Danforth ("Danforth Deposition") at 91:24-94:4, and at 95:13-17.
[6] Declaration of Counsel, ¶¶ 2 and 3.

4

of the oral subcontract and the negotiations to agree to terms of a written subcontract. Thus, Plaintiff believes that justice would be best served to not consider the late pleading of the fraud cause of action to be due to a lack of diligence by either Plaintiff or its attorney.

In sum, the first set of new facts could not possibly have been discovered by the amendment cutoff date, some effort was made by prior counsel to conceal the second set of new facts from Plaintiff's current counsel, and the third set of new facts remained undiscovered by counsel until depositions despite adequate diligence by Plaintiff and current counsel.

## LEGAL ANALYSIS

In many cases, leave to amend should be simply and freely given pursuant to F. R. Civ. P. 15(a). Considered alone, Rule 15 affirmatively encourages leave to amend. See, Schlacter Jones v. General Telephone of California, 936 F.2d 435, 443 (9th Cir. 1991). "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Farias v. Bexar Cty. Bd. of Tr. for M.H.M.R. Serv., 925 F.2d 866, 874 (5th Cir. 1991), citing, Carson v. Polley, 689 F.2d 562, 583-85 (5th Cir. 1982) (abuse of discretion to deny leave to amend complaint even though claim was not presented as promptly as possible). Moreover, "Rule 15's policy of favoring amendments should

---

[7] Danforth Deposition, 95:9 – 96 20.

be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Furthermore, leave to amend may be made at any stage of the litigation. Nguyen v. U.S., 792 F.2d 1500, 1503 (9th Cir. 1986); Galindo v. Stoody Co., 793 F. 2d 1502 (9th Cir 1985) (cause remanded for new trial because of need to amend pleadings *after trial* to conform to proof).

Where the time to amend under a scheduling order has passed, however, the burden upon a moving party becomes greater. Here, because the time set for amendments to the pleadings has passed, Plaintiff must meet the Rule 16(b) requirement that "the scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge . . . .'" Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604, 608 (9th Cir. 1992); Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987).

Here, the deadline for amending pleadings passed on October 28, 2002, only one month after BPI and AIG had answered, before discovery had commenced, and before Third-Party Defendants had answered. Plaintiff was diligent in amending the Carlsmith Complaint prior to that date to the extent its knowledge allowed it to do so. At that time, however, it was impossible to know of the first set of facts, all critical to Plaintiff's added Counts IV and V. In such circumstances, Plaintiff believes it is most appropriate for the Court to exercise its broad discretion to extend deadlines set in the Scheduling Order that could not have been met despite the diligence of the parties and counsel. Here, where BPI is proposing an extension of

6

discovery, where much of the evidence supporting the amendments has already been discovered during the brief period of discovery already taken, and where trial is not immediately pending, BPI should not be prejudiced by the requested amendment. Further, allowing amendment now will work to avert future issues regarding post-trial amendment of the pleadings to conform to the facts proven at trial.

In the case of Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604, 608 (9th Cir. 1992), the United States Court of Appeals indicated that the District Court's broad discretion over motions to amend pleadings after the scheduled time set for doing should be exercised to grant such motions if the need for the amendment is not caused by the moving party's "carelessness" or lack of diligence. 975 F. 2d at 609. The Court further ruled that "although the existence of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *id*. In this case, the need to amend the complaint arose out of the discovery of information during formal discovery that could not have been timely discovered and other information that was discovered late, but not through a lack of diligence. In the Johnson case, leave was denied because the moving party *ignored* the evidence received during discovery and a direct communication from the opposing party *who affirmatively provided the* information, both *before the date to amend*, yet appears to have not sought to amend his complaint until seven or more months later, after the date to add parties. Here, Plaintiff has shown diligence by bringing this motion very

7

soon after discovering information *not provided by* an opposing party, but withheld until discovery compelled its disclosure, and that could not have been discovered by Plaintiff prior to the last date to amend the complaint pursuant to the Scheduling Order.

For the foregoing reasons, Plaintiff Rhino Builders Inc. believes that the current circumstances warrant the granting of Plaintiff's Motion for Leave to Amend Complaint, and therefore most respectfully requests this honorable Court to grant it leave to file a Second Amended Complaint in the form of Exhibit "1" to its Motion to Amend Complaint filed herewith, and to modify the current Scheduling Order as necessary to do so.

Respectfully submitted this 29th day of May 2003.

_____
Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.