Arthur B. Clark, Esq.
Janalynn M. Cruz, Esq.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96911
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for Defendant
Biogenesis Pacific, Inc.

# DISTRICT COURT OF GUAM

# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br>Plaintiff, <br>vs. <br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY <br>Defendants. | CIVIL CASE NO. 02-00008 <br><br>**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY** |
| BIOGENESIS PACIFIC INC., <br>Counter-Plaintiff, <br>vs. <br>RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br>Counter-Defendants. | |
| AMERICAN HOME ASSURANCE COMPANY, <br>Cross-Claimant, <br>vs. <br>BIOGENESIS PACIFIC INC., <br>Cross-Claim Defendant. | |

DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY
B030625.327-0001.CT (Opposition to Motion to Amend).wpd                               1

Case 1:02-cv-00008    Document 152    Filed 06/27/2003    Page 1 of 10

ORIGINAL

Plaintiff Rhino Builders, Inc. ("Plaintiff" or "Rhino") filed its Complaint on March 20, 2002, and amended the Complaint on September 10, 2002. The Court issued its Scheduling Order on August 20, 2002 setting a deadline of October 28, 2002 for all motions to amend the pleadings. Plaintiff has belatedly filed its motion for leave to amend the Complaint seven months after the Court's deadline to file such a motion. Plaintiff alleges that facts ascertained during discovery form the basis for two new distinct causes of action against Defendant Biogenesis. In fact, Plaintiffs' so-called "newly discovered facts" are anything but.

The facts of which Plaintiff claims to have learned during the course of discovery are facts that were known to Plaintiff as early as December 2000 – fifteen months before Plaintiff filed the Complaint. Accordingly, Plaintiff should have included the claims it now seeks to add in the original Complaint or in the first amended Complaint. In addition, the Scheduling Order was revised on three separate occasions, first on October 3, 2002, then on March 12, 2003, and again on June 4, 2003. Plaintiff stipulated to the first two revisions and consented to the deadlines of the third revision. In any of the three instances, Plaintiff could have requested that the deadline to amend the Complaint also be revised, but did not do so. Leave to amend the Complaint is simply not warranted. Plaintiff has failed to demonstrate good cause to extend the current deadline to amend pleadings.

Because Plaintiff's motion to amend the complaint is made after the deadline set by the Scheduling Order, Plaintiff is required to demonstrate good cause for seeking modification of the scheduling order deadline under Fed. R. Civ. Proc. 16(b). *See Johnson v. Mammoth Recreations*, Inc. 975 F.2d 604, 607 (9th Cir. 1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled."). The good cause standard of Rule 16(b) requires a showing that despite a party's diligent efforts, the scheduling order deadlines cannot be met. *See id.* at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

Plaintiff's first new claim (Count IV) centers around an alleged attempt by BioGenesis to take over Rhino Builders, Inc.'s facilities, equipment, materials, and employees in Guam. *See* Proposed Second Amended Complaint Count IV. Plaintiff claims that it only learned of the alleged

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

2

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 2 of 10

take-over attempt during the depositions of BioGenesis, by and through Mr. Gerald Lam, its president, and Mr. Alfred Garthe III. *See* Plaintiff's Points and Authorities Supporting Motion for Leave to Amend Complaint to Conform to Facts Ascertained During Discovery ("Plaintiff's Motion") at p. 2. Plaintiff further states that "[t]here was no way for Plaintiff to discover the foregoing information regarding the assignment transaction between Mr. Garthe and Mr. Lam without deposing them because they are both officers and employees of Defendant BPI and kept that information to themselves until forced to disclose it during discovery." *See* Plaintiff's Motion at p. 3. This is just not true. Neither the deposition of Mr. Garthe nor Mr. Lam revealed anything that was not already known to Plaintiff years earlier.

Plaintiff's CEO Michael O'Connell has been alleging that BioGenesis has attempted to usurp Rhino's equipment and employees as early as December 2000, as established through the deposition of Michael Danforth. Mr. Danforth testified as follows:

> A. And it was -- it occurred sometime in December, middle of December [2000].
>
> Q. Okay.
>
> A. And it was a phone call that I made to Gerald Lam, and I made that phone call because **Mike O'Connell came in** -- I walked into Rhino's office this morning finishing up a proposal on another project. **And he came to me and says, "Do you know that BioGenesis hired my employees and are using my equipment?"** And I said, "No. What are you talking about?..."

Deposition of Michael Danforth at p. 95:9-19 (emphasis added).[1] In addition, Plaintiff wrote a letter dated July 11, 2001 to Mr. Garthe advising him to "retrieve Rhino Builders property held by Bio-Genesis, Inc. and to cease all dealings with Mr. Gerald Lam of Bio-Genesis." *See* July 11, 2001 letter attached to the Declaration of Janalynn M. Cruz ("Decl. of Janalynn Cruz"), filed herewith.

---

[1] All excerpts from the Depositions of Michael Danforth, Michael O'Connell, and Gerald Lam are attached to the Declaration of Janalynn M. Cruz, filed herewith.

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd     3

Case 1:02-cv-00008     Document 152     Filed 06/27/2003     Page 3 of 10

Concerning Plaintiff's allegations that it only found out through recent depositions that Mr. Garthe had attempted to assign his shares in Rhino to Mr. Lam, this is also simply not true. This attempted transfer was also known to Plaintiff as early as December 2000.

At the deposition of Rhino, by and through its CEO Mr. Michael O'Connell, Michael O'Connell testified that at a meeting in early December 2000, attended by him, Mr. Lam and Mr. Danforth (the "December 2000 meeting"), Mr. Lam told Michael O'Connell that Mr. Garthe had transferred his shares in Rhino to Mr. Lam. Michael O'Connell testified:

> Then I met with him on December 8th, 2000. When Gerry -- I'm sorry.
>
> When Gerry -- Gerry came, he sat down with me and Mike Danforth.
>
> . . . .
>
> He put down he own my company, stock certificates. He put down three
> papers that he own my company, that he own 49 percent of the company.

Deposition of Michael O'Connell, February 20, 2003, at pp. 140:16-18, 141:8-10. Plaintiff admits that it knew of the attempted transfer of shares since December 2000.

The fact that Plaintiff knew of the transfer of shares as early as December 2000 is corroborated by the deposition testimony of Michael Danforth. At Mr. Danforth's February 21, 2003 Deposition, he testified that at the December 2000 meeting Mr. Lam produced two documents "one being an exchange of shares or an assignment of shares from Al Garthe to Gerald Lam of Rhino Builders or Rhino Roofing d/b/a Rhino Builders; and the other, . . . a letter written by Al Garthe to Michael O'Connell telling him to accept the first letter." Deposition of Michael Danforth at p. 93:5-12. Mr. Danforth then testified that "[t]he letters were handed to Michael O'Connell, and he read them." *See id.* at 93:15-16.

Moreover, documents prepared and produced by Plaintiff in response to BioGenesis's First Request for Production of Documents also show that Plaintiff knew since December 2000 of the attempted transfer of Mr. Garthe's ownership interest in Rhino to Mr. Lam. First, minutes from Rhino's December 27, 2000 Special Board of Directors Meeting indicate that Mr. Garthe's transfer of shares to Mr. Lam was discussed and determined to be in violation of Rhino's Stock Acquisition Agreement. *See* December 27, 2000 Board Minutes attached to the Decl. of Janalynn Cruz. Second, a letter from

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

4

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 4 of 10

Michael O'Connell to Mr. Lam dated December 29, 2000 sets forth the outcome of the December 27 Special Board meeting. *See* December 29, 2000 letter attached to the Decl. of Janalynn Cruz. Both documents clearly illustrate Plaintiff's knowledge of the attempted transfer of shares from Mr. Garthe to Mr. Lam. Plaintiff's claim that it had no knowledge of such transfer until the depositions of Mr. Lam and Mr. Garthe is simply a misrepresentation.

Plaintiff's second new claim (Count V) centers around an existing partnering agreement between BioGenesis and Allstar/SAB that allegedly prohibited BioGenesis from entering into subcontracts. Again, Plaintiff maintains that it only "discovered" this alleged fact at the deposition of Mr. Danforth. What Mr. Danforth's deposition testimony shows, however, is that Plaintiff knew of the partnering agreement more than one year prior to initiating this lawsuit. Mr. Danforth testified as follows:

> A. .... There was one other thing that I participated in, and that was a phone call.
> 
> Q. Okay.
> 
> A. And it was -- it occurred sometime in December, middle of December [2000].
> 
> Q. Okay.
> 
> A. And it was a phone call that I made to Gerald Lam, and I made that phone call because Mike O'Connell came in -- I walked into Rhino's office this morning finishing up a proposal on another project. And he came to me and says, "Do you know that BioGenesis hired my employees and are using my equipment?" And I said, "No. What are you talking about?" I said, "Well, let's just call Gerry." So, I dialed Gerry, had him on speaker; ***
> 
> A. *** And we never had a hard conversation complete -- there was never really any pertinent information exchanged after that except at the end of that conversation, Gerald -- because I kept pressing. I kept saying, "Well, there's a subcontract agreement that you and I reviewed

DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

5

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 5 of 10

|  |  |
|---|---|
| 1 | and commented on. It's in Michael's hands. Why haven't you talked to |
| 2 | him to complete it? Why haven't you discussed this?" And he finally |
| 3 | said, "Well, I can't. I've got an agreement with All Star/SAB. I can't |
| 4 | sign another agreement." |

Deposition of Michael Danforth at pp. 95:6-20, 96:10-20. It is clear from the deposition of Mr. Danforth that both he and Plaintiff's CEO Michael O'Connell knew of BioGenesis's partnering agreement with Allstar/SAB in December 2000. Plaintiff apparently admits this in its moving papers, but seeks to distance itself from direct knowledge of the matter by claiming that Michael O'Connell learned of the matter second-hand. *See* Plaintiff's Motion at p. 4 ("Although it is believed that Mr. Danforth may have relayed this conversation to Plaintiff's Michael O'Connell, Mr. O'Connell, who is unsophisticated in legal matters, did not relay it to counsel, who therefore did not learn of it until Mr. Danforth was deposed.") Plaintiff's statement that Mr. Danforth relayed the context of his conversation with Mr. Lam to Michael O'Connell directly contradicts Mr. Danforth's deposition testimony that Mr. O'Connell participated in the phone conversation by speaker phone.

Moreover, earlier knowledge of the Allstar/SAB agreement may even be imputed on Plaintiff as early as October 2000, when Plaintiff hired Mr. Danforth as a consultant for the purpose, among others, of drafting a subcontract agreement between BioGenesis and Plaintiff. Plaintiff's CEO Michael O'Connell specifically advised BioGenesis that Mr. Danforth was Rhino's point-of-contact and had all authority to negotiate a subcontract agreement, thus appearing to have been Rhino's agent. *See* Deposition of Michael O'Connell, February 20, 2003, at pp. 91:18-25, 94:19-25; Deposition of Michael Danforth, at pp. 26:21-25, 27:1-18; Deposition of Michael O'Connell, Mar.13, 2003, at pp. 274:5-25, 275:13-25; Deposition of Gerald Lam, at p. 72:5-10; November 14, 2000 email from Michael O'Connell to Gerald Lam attached to the Decl. of Janalynn Cruz.

It is clear that Mr. Danforth knew or had reason to know about the Allstar/SAB partnering agreement as early as October 2000, since Mr. Danforth assisted Mr. Lam in the drafting of the partnering agreement on behalf of Allstar/SAB. *See* Deposition of Gerald Lam, at pp. 156:24-25, 157:1-4; Deposition of Michael Danforth, at pp. 126:14-25, 127:1-20. With respect to knowledge of the partnering agreement, Mr. Danforth testified as follows:

DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY
B030625.327-0001.CT (Opposition to Motion to Amend).wpd          6

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 6 of 10

> Q. What was your reaction to hearing him say that he had a contract with All Star/SAB?
>
> A. I hung up the phone. I ended the conversation immediately.
>
> Q. Well, I guess what I'm asking is: What did you think of that -- that comment?
>
> A. It actually made me feel a fool because it -- it reminded me that my original efforts with All Star in generating a technical proposal for that contract, that there was one in place; and I hadn't even thought about it until this time until it was mentioned, had not remembered it, had not thought about it. And then when it came out, I felt a total fool because of the efforts that, if I had remembered, I would have advised Rhino, "There's already agreement in place. What are you doing?"

Deposition of Michael Danforth at pp. 124:17-25, 125:1-7. As the testimony of Mr. Danforth indicates, Mr. Danforth knew of the partnering agreement between BioGenesis and AllStar/SAB but failed to disclose that fact to Plaintiff when first hired by Plaintiff.[2] To the extent that it may be argued that Mr. Danforth was duly designated Rhino's agent, then his knowledge about the partnering agreement can be imputed to Plaintiff as of the date that Rhino hired Mr. Danforth, or October 2000.

Plaintiff has failed to demonstrate good cause for its late motion to amend. The above record establishes that Plaintiff knew, more than one year prior to initiating this lawsuit in March 2002 and almost two years prior to the October 28, 2002 deadline to amend pleadings, of the transfer of Rhino shares from Mr. Garthe to Mr. Lam and of the partnering agreement between BioGenesis and

---

[2] Mr. Danforth did reveal during his deposition testimony that he informed Rhino representatives in October 2000, including Michael O'Connell, that he had assisted in the preparation of AllStar/SAB's portion of BioGenesis's bid proposal for the Navy Contract. *See* Deposition of Michael Danforth, at pp. 31:11-25, 32:1-4.

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

7

Case 1:02-cv-00008    Document 152    Filed 06/27/2003    Page 7 of 10

AllStar/SAB.[3] Plaintiff gives no reason for not including these claims in the original Complaint. Instead, Plaintiff moves to amend the pleadings by disingenuously asserting that it only discovered the aforementioned facts at depositions held in February 2003. Waiting more than 29 months after learning of the aforementioned facts does not constitute diligence. See *Johnson*, 975 F.2d at 609 ("Failing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence.").

What Plaintiff characterizes as Rhino's lack of knowledge of the aforementioned facts can be more properly characterized as Plaintiff's counsel's lack of knowledge of the aforementioned facts. Plaintiff's moving papers admit as much, but seek clemency based on the allegation that Michael O'Connell is unsophisticated. Counsel's late discovery of facts does not constitute good cause especially since Plaintiff itself had knowledge of the facts that form the basis of Plaintiff's new claims, and Plaintiff's counsel had months to discuss the details of his case with his client before the deadline to amend the Complaint expired. Plaintiff has not demonstrated that it diligently worked to meet the deadline to amend the pleadings imposed by the Scheduling Order. Accordingly, Plaintiff's motion must be denied.

Additionally, "belated claims that change the character of litigation are not favored." *Dilmar v. Federated Mut. Ins. Co.*, 986 F. Supp 959, 981 (D.S.C. 1997). When Plaintiff initially filed this suit it was a collection action under the Miller Act (codified at 40 U.S.C. § 270a et seq). Plaintiff's proposed amendments add claims against BioGenesis for fraud and bad faith thereby altering Plaintiff's case against BioGenesis from one based on federal law to one implicating territorial law. Moreover, Plaintiff's new claims will likely result in the need for additional extensive discovery. Although the discovery deadlines were extended by the June 4, 2003 Revised Scheduling Order, it was anticipated

---

[3] Even if Plaintiff's assertion that it only found out about the transfer of shares from Mr. Garthe to Mr. Lam and the partnering agreement between BioGenesis and AllStar/SAB at the deposition of Mr. Lam and Mr. Danforth, respectively, is accepted as true, no reason is given for Plaintiff's 3 month delay in filing this Motion. Mr. Lam and Mr. Danforth's depositions were taken on February 19 and 21, 2003. Rule 15(a), which governs amendments of pleadings, requires that motions to amend the complaint should be made "as soon as the necessity for altering the pleading becomes apparent." Waiting more than 3 months after "discovering" these new facts can hardly be considered seeking leave of court as soon as the necessity for amending the pleading becomes apparent.

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

8

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 8 of 10

that additional discovery would mainly consist of the continued depositions of Mr. Eugene O'Connell and Michael O'Connell and the deposition of George Allen. Discovery related to Plaintiff's new claims may likely require additional written discovery covering the areas of Plaintiff's new claims, the continued depositions of Mr. Lam, Mr. Danforth and Mr. Garthe, and the depositions of other third parties from Allstar/SAB, all of which were not contemplated when the discovery deadlines were extended by this Court.

Allowing Plaintiff to add the two new claims for fraud and bad faith would change the nature of these proceedings resulting in protracted discovery relating to issues not fully addressed in earlier discovery. Accordingly, leave to amend is not warranted. *See Isaac v. Harvard Univ.*, 769 F.2d 817, 829 (1st Cir. 1985) (affirming denial of motion to amend based upon lower court's findings that the new claims would "very materially change the nature of the complaint" and that "[t]he mere intervention of new counsel does not justify calling upon the defendant to respond to so stale a claim"); *Mercantile Trust Co. v. Inland Marine Products Corp.*, 542 F.2d 1010, 1013 (8th Cir. 1976) (affirming denial of motion to amend where late amendment would add new theories of defense which "would necessarily reopen much of discovery"); *Dilmar,* 986 F. Supp. at 981 (denying motion to amend where permitting joinder would require the court to continue the trial and reopen discovery).

Finally, leave to amend the Complaint to add the fourth claim should be denied because Plaintiff's proposed fourth claim is futile. *See* 3 Moore's Federal Practice § 15.15[3] (3rd ed. 2002) ("Courts will not grant leave to amend, however, when the proposed amendment is legally insufficient and it would be futile to grant leave to amend"). In its proposed Fourth Count, Plaintiff alleges that BioGenesis breached its obligation to Plaintiff to refrain from engaging in tactics intended to deprive Plaintiff of the benefit of the alleged oral subcontract by "secretly negotiating with Plaintiff's 49% shareholder, Alfred Garthe III, to acquire his shares so that it could intimidate Plaintiff into quiescence with respect to its takeover of Plaintiff's Guam facilities, equipment, materials, and employees, including Alfred Garthe III. *See* Proposed Second Amended Complaint at ¶¶ 50-52.

Even assuming Plaintiff's facts as true and in the light most favorable to Plaintiff, the acts complained of do not create a cause of action and would ultimately be dismissed for failing to state one. First, as stated above, the attempted transfer of shares was discussed and invalidated by Rhino's

**DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY**
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

9

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 9 of 10

board of directors. *See* December 27, 2000 Board Minutes attached to the Decl. of Janalynn Cruz. Mr. Lam acknowledged in his deposition that he accepted the action of the board and had no intention of asserting his shareholder rights in Rhino. *See* Deposition of Gerald Lam, at pp. 103:3-16; 111:17-25; 112:1-11.

Second, even if the transfer was recognized by Rhino's board, the facts as alleged by Rhino is that Mr. Lam would have owned a <u>minority</u> interest in Rhino. Michael O'Connell claims to still own a majority interest in Rhino, thus Mr. Lam would not have had any control over the decisions of the corporation and, as a minority shareholder, would not have been able to "intimidate" anyone.

Third, any corporate "quiescence" to the transfer of corporate facilities, equipment, materials and employees to another entity would necessarily need to be approved through board action. If Mr. Lam was able to acquire an interest in Rhino and was able to convince the corporation to approve by resolution the transfer of facilities, equipment, materials, and employees, such could only have been accomplished through formalized action by the board, i.e., it would have been the official act of the corporation. There is simply no cause of action stated.

Based on the above, BioGenesis respectfully requests that the Court DENY Plaintiff's Motion to Amend Complaint.

Dated this 27th day of June, 2003.

CALVO AND CLARK, LLP
Attorneys At Law
Attorneys for Defendant
Biogenesis Pacific, Inc.

By: _____
JANALYNN M. CRUZ

DEFENDANT BIOGENESIS PACIFIC, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY
B030625.327-0001.CT (Opposition to Motion to Amend).wpd

10

Case 1:02-cv-00008   Document 152   Filed 06/27/2003   Page 10 of 10