ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.



FILED
DISTRICT COURT OF GUAM
JUL - 3 2003
MARY L. M. MORAN
CLERK OF COURT

153

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **PLAINTIFF'S REPLY RE: MOTION FOR LEAVE TO AMEND COMPLAINT TO CONFORM TO FACTS ASCERTAINED DURING DISCOVERY** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

ORIGINAL

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Rhino") most respectfully presents the following points and authorities in reply to Defendant Biogenesis Pacific Inc.'s ("BPI") June 27, 2003 Opposition to Plaintiff's motion for leave to amend its complaint to conform to facts ascertained during discovery.

I.   **The Judicial Decisions Cited by BPI Are Inapposite to the Procedural Posture of This Case.**

To persuade the Court to deny leave to amend in this case, BPI cites three decisions in which leave to amend was denied.[1] All of those decisions, however, addressed circumstances markedly different from those before the Court now.

In the first of BPI's cases, Mercantile Trust Co. v. Inland Marine Products Corp., 542 F.2d 1010 (8th Cir. 1976), the moving party had been slow to initiate discovery,[2] waiting to do so until trial was close,[3] and the opposing parties had had to obtain an order compelling the moving party to respond to their discovery.[4] In addition, the motion to amend was not made until just one month before trial was

---

[1]   Defendant Biogenesis Pacific Inc.'s Opposition to Plaintiff's Motion for Leave to Amend Complaint to Conform to Facts Ascertained During Discovery ("BPI's Opposition"), at 8 to 9. BPI, like Rhino, also cites Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604 (9th Cir. 1992), the leading case on this issue. The Johnson decision also addresses inapposite circumstances, as set forth in Rhino's May 29, 2003 Points and Authorities, at 7-8.
[2]   542 F.2d, at 1011.
[3]   542 F.2d, at 1011 - 1012.
[4]   542 F.2d, at 1012.

2

scheduled to commence.[5] In these circumstances, a Court might reasonably suspect that the motion to amend was largely or primarily an effort to delay trial. In any case, the moving party had clearly been unduly lacking in diligence.

In BPI's second case, <u>Isaac .v Harvard University</u>, 769 F.2d 817 (1st Cir. 1985), the motion to amend was not brought until four years after the complaint was filed.[6] There was no newly-discovered evidence to support the motion,[7] dispositive motions had already been heard and decided,[8] the moving party provided no explanation whatever for its delay in seeking to amend,[9] and the Court found that the amendments "very materially change the nature of the complaint." 769 F. 2d, at 829.

In the third case, <u>Dilmar v. Federated Mutual Insurance Co.</u>, 986 F. Supp. 959 (D.S.C. 1997), discovery had closed,[10] the proposed amendment joined a new party who would be entitled to discovery,[11] the new allegation greatly changed the character of the action,[12] no discovery related to the new claim had been conducted,[13] the case against the existing parties "was set for trial,"[14] and the case against the new party was "at 'square one.'"[15]

---

[5]     542 F.2d, at 1012.
[6]     769 F. 2d, at 828.
[7]     769 F. 2d, at 829.
[8]     769 F. 2d, at 818.
[9]     769 F. 2d, at 829.
[10]     986 F. Supp., at 981.
[11]     986 F. Supp., at 979.
[12]     986 F. Supp., at 981.
[13]     986 F. Supp., at 981.
[14]     986 F. Supp., at 981.
[15]     986 F. Supp., at 981.

In this case, Rhino took the lead in preparing the scheduling order, made voluminous pretrial disclosures, and was the first party to initiate discovery, doing so well prior to the close of the pleadings. Rhino has been highly cooperative in providing discovery, allowing Defendants to depose *each* of its two 30(b)(6) designees, Michael and Eugene O'Connell, *well past* the seven-hour/one-day limitation of F.R. Civ. Proc. Rule 30(d)(2). As detailed below, Rhino *did* base its proposed amended complaint on evidence that *was* discovered for the first time in depositions of BPI's personnel in late February and Early April 2003, and moved to amend shortly after that new information was discovered. Trial in this case will be in March 2004. Discovery is open and will remain open through October 2003. The amendments add no additional parties whose joinder will require a change in the trial date.

Finally, the amendments to the complaint are closely related to prior allegations, and should not require a change in the current discovery cutoff date. There are two causes of action added to the proposed amended complaint: (1) BPI's bad faith prevention of Rhino's ability to receive the benefits of the oral subcontract, the breach of which has been alleged since the outset; and (2) BPI's fraud in leading Rhino to believe that BPI *could* enter into the oral subcontract, the breach of which has been alleged since the outset. Accordingly, the factual basis of the new causes of action have been within the scope of the discovery taken thus far, and months remain to continue discovery.

4

### III. Courts Addressing Situations Such as This One Normally Grant Leave to Amend.

Courts addressing motions to amend in such circumstances, as opposed to the circumstances at issue in BPI's authority, normally exercise their discretion by granting leave to amend.

For example, in Stewart v. Coyne Textile Services, 212 F.R.D. 494 (S.D.W. Va. 2003), the moving party had previously amended her complaint *twice* before the scheduling order deadline, which had passed before the motion for leave to file a third amended complaint. The Court therefore considered that motion under the "good cause" standard set by Rule 16(b). The Court found that "Plaintiff has satisfied the good cause standard" of that Rule simply because, as here, "neither party has had a full opportunity to obtain all desired discovery in this case [as] supported by the parties January 8, 2003 agreed order to extend discovery." 212 F. R. D., at 497. Accordingly, and because, as here, the amendments did not "dramatically change the substance of the case," and the moving party had not displayed a lack of diligence, the Court found that "Justice requires that Plaintiff be allowed to amend her Complaint." 212 F. R. D., at 498.

Similarly, in Inge v. Rock Financial Corporation, 281 F.3d 613 (6th Cir. 2002), the moving party had previously amended her complaint *twice* before the scheduling order deadline. Then, after the scheduling order deadline to amend pleadings, her complaint was dismissed, on Defendant's motion, due to a pleading

5

defect. She made motion to amend promptly thereafter to cure that defect. The motion to amend was not based on any new information obtained during discovery. The Court of Appeals, explicitly joining the Second, Eighth, Ninth, and Eleventh Circuits in construing the "good cause" requirement of Rule 16(b) to depend upon the moving party's diligence, found that "good cause" to alter the scheduling order and amend the complaint existed because the moving party had moved to amend promptly after the District Court had made her award of the defects in the complaint by dismissing it. 281 F. 3d at 625-626.

In <u>Topps Company, Inc. v. Cadbury Stani S.A.I.C.</u>, 2002 WL 31014833 (S.D.N.Y. 2002), the moving party had filed its third amended complaint in February 2002, and had moved to amend again in June 2002, nearly three years after the initial complaint had been filed. The moving party had justified the delay in discovering the new material on the circumstance that depositions had to be taken in Argentina, and had moved to amend shortly after discovering the new evidence. The Court allowed the amendment, even though it added new parties.

In the following additional four cases, leave to amend was requested in circumstances more like those of this case, and less like those of the cases cited by BPI: <u>Senich v. American-Republican, Inc.</u>, 215 F.R.D. 40 (D. Conn. 2003); <u>Fabio v. Credit Bureau of Hutchinson, Inc.</u>, 210 F.R.D. 688 (D. Minn. 2002); <u>Scheidecker v. Arvig Enterprises, Inc.</u>, 193 F.R.D. 630 (D. Minn. 2000); <u>Datastrip International Ltd.</u>

6

v. Intacta Technologies, Inc., 253 F. Supp. 1308 (N.D. Ga. 2003).[16] In all of these cases, leave to amend was granted.

### III. BPI Does Not Accurately Characterize the Evidentiary Basis of Rhino's Good Cause.

Although BPI is correct to argue, as Plaintiff explicitly called to the attention of all in its moving papers, that *some* of the information on which this motion is based was available to Plaintiff's officers but not passed on to counsel, it remains a fact that the primary evidence on which this motion is based *was known to neither Plaintiff nor its attorneys* until the depositions of Gerald Lam and Alfred Garthe III were taken in February and April 2003.

As set forth in Rhino's moving papers, BPI was able to conceal, and Rhino was therefore unable to obtain, until discovery, "the tactics employed by Biogenesis Pacific, Inc. ("BPI") to assert control over Plaintiff in a manner that would prevent it from realizing the benefit of the alleged subcontract agreement."[17] BPI's opposition, however, incorrectly characterizes Rhino's motion as being based on a claim that "it only learned of the alleged takeover attempt during the depositions of

---

[16] In the Datastrip case, the Court considered the fact that, if leave to amend were not granted, the Plaintiff might simply bring another action. Rhino might well succeed in bringing the Fraud and Bad Faith Prevention claims in a separate action, especially if the Court were to find that these claims were *not* related to Rhino's existing claims. Rhino believes, however, that these claims are very closely related to Rhino's existing claims, and that judicial economy would be best served by trying them together.
[17] Plaintiff's Points and Authorities, filed May 29, 2003, at 2.

7

Biogenesis . . . ."[18] BPI then correctly states that the takeover attempt, as opposed to the tactics BPI used to effect it, was well known to Rhino prior to its initial complaint. That makes it seem like Rhino already knew of the *new* evidence upon which it based this motion, which is certainly not so.[19]

The other two sets of evidence upon which this motion was based were known somewhat to Rhino, but not to counsel, prior to the date to amend pleadings, as clearly set forth in Rhino's moving papers. As also set forth in Rhino's moving papers, however, Rhino believes that there is good reason to consider that these *additional* sets of evidence also lend support to this motion. See Plaintiff's Points and Authorities, filed May 29, 2003, at 3-4.

### IV. The Newly-Discovered Evidence Strengthened Rhino's Case for the Newly-Alleged Bad Faith and Fraud Causes of Action.

Had the facts been other than as recently discovered – had, for example, Mr. Garthe approached BPI, said he needed money, and offered to sell his Rhino

---

[18] BPI's Opposition, at 2-3.
[19] As set forth in Rhino's May 29, 2003 Points and Authorities, at 2-3, among the evidence that BPI successfully concealed from Rhino until the Lam and Garthe depositions was evidence tending to show that Lam contacted Garthe to purchase his interest in Rhino, that Lam persuaded Mr. Garthe to transfer the shares to him for no consideration whatever, that Lam promised Garthe to transfer the shares back to him after Rhino had lost its rights under the subcontract, and that Lam had led Garthe to believe that he might assist Garthe to start a new corporation that Garthe, rather than Michael O'Connell, controlled, apparently so that Garthe could take over Rhino's rights under the subcontract. Rhino did *not* assert that it first learned of the take-over attempt through discovery, and carefully avoided any appearance of such an assertion by including that matter in parentheses in the first complete sentence of page 3 of the Points and Authorities.

8

shares BPI for a fair sum, and had BPI attempted to acquire 49% or 50%[20] of Rhino in that manner, the case for bad faith against BPI would be substantially weaker than it now appears to be, and BPI would no doubt argue it to be untenable. Upon learning of the manner in which BPI *did* attempt to acquire that stake in Rhino, the cause of action became substantially viable, and for the first time "worth," in terms of the interests of justice as well as the cost to Rhino, a motion to amend.

The same is true of the newly-alleged fraud claim. It may be true that Michael O'Connell (as opposed to Rhino's present counsel) had pre-2003 knowledge that BPI took the position, when explaining to Mr. Danforth its refusal to sign the subcontract, that its subcontract with Rhino could never have been honored because BPI had a prior conflicting commitment to Allstar/SAB. However, to prevail on its fraud claim, Rhino would have to have a substantial amount of evidence from which it could impute an *intent* of BPI to defraud Rhino in the manner alleged in the proposed amendment. The newly-discovered evidence of how BPI negotiated with Mr. Garthe when attempting to acquire control of Rhino through acquisition of Garthe's shares *does provide new evidentiary support for the intent element* of Rhino's fraud claim that was not available to Rhino at any earlier time. The new

---

[20] In an apparent effort to diminish the importance of the new evidence, BPI argues that it only purported to acquire a "<u>minority</u> interest in Rhino." BPI's Opposition, at 10 [emphasis is BPI's]. Mr. Lam and Mr. Garthe claimed to Rhino, however, that the interest Mr. Lam purported to acquire was a 50% interest. Transcript of Deposition of Gerald N.Y.C. Lam, at 103:21 ("But he did assign his rights and everything to me . . ."); Exhibit 10 to Deposition of Alfred Garthe III ("This letter is to advise you; Gerald N.Y.C. Lam, that I

9

evidence of *how* BPI induced Garthe to part with his shares supports the allegation that BPI intended all along to deprive Rhino of the benefits of the subcontract after having obtained its services in getting the contract work started at Rhino's expense.

V. **Plaintiff's Change of Counsel has Unusual Relevance to this Case and to this Motion.**

In apparent reference to the circumstance that Rhino had to seek new counsel in this matter after its prior attorney refused to continue representing it, BPI quotes <u>Isaac v. Harvard</u>, *supra*, to support its contention that "leave to amend is not warranted [because] . . . '[t]he mere intervention of new counsel does not justify calling upon the defendant to respond to a stale claim.'"[21] First, Rhino did not base its motion to amend on its unfortunate need to find new counsel. Second, just because a change of counsel did not suffice to cure the fact that Mr. Isaac's motion to amend did not otherwise have merit, one should not jump to the conclusion that the change of counsel in this case does not lend support to this motion. There is no indication that Mr. Isaac changed attorneys because his prior attorney represented an entity so closely affiliated with Harvard that his prior attorney could not continue to represent him against Harvard, which might have reasonably given rise to a finding that he *was* entitled to some consideration from that circumstance. When prior counsel is affiliated with an apposing party, it is hardly fair or just to bind the unfortunate client to prior counsel's strategic choices.

---

Alfred Garthe III am entitled to 50% Stock in Rhino Roofing and Repairs, Inc., also known as Rhino Builders, Inc. . . . [*etc.*]").

10

## CONCLUSION

For the foregoing reasons, Plaintiff Rhino Builders Inc. believes that the current circumstances warrant the granting of Plaintiff's Motion for Leave to Amend Complaint, and therefore most respectfully requests this honorable Court to grant it leave to file a Second Amended Complaint in the form of Exhibit "1" to its Motion to Amend Complaint filed herewith, and to modify the current Scheduling Order as necessary to do so.

Respectfully submitted this 3rd day of July 2003.

_____
Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.

---

[21] Opposing Brief at 9, quoting Isaac v. Harvard, 769 F. 2d 817, 829 (1st Cir. 1985).