ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **DECLARATION OF COUNSEL** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**ORIGINAL**

Case 1:02-cv-00008   Document 157   Filed 07/03/2003   Page 1 of 6

I, Antonio L. Cortes, duly declare and say:

1. I am an attorney licensed to practice law in Guam, and have been since October 21, 1997. I have personal knowledge of the matters stated herein, except those stated on information and belief, and as to those matters I believe them to be true. If called upon to do so, I could and would competently so testify.

2. Attached hereto as Exhibit 1 is a true and correct copy of page 103 of the transcript of the deposition of Gerald N.Y.C. Lam in the above-captioned matter, taken February 19, 2003.

3. Attached hereto as Exhibit 2 is a true and correct copy of pages 78 and 79 of the transcript of the deposition of Alfred Garthe III in the above-captioned matter, taken April 3-4, 2003.

4. Attached hereto as Exhibit 3 is a true and correct copy of Exhibit 10 to the transcript of the deposition Alfred Garthe III in the above-captioned matter, taken April 3-4, 2003.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of July 2003.

_____
ANTONIO L. CORTÉS

```
14:52  1  was totally incorrect.
14:52  2          The effect is that after that meeting,
14:52  3  shortly thereafter, I got a -- a fax notice from
14:52  4  Mr. O'Connell -- this was sent to him personally as a
14:52  5  shareholder under Hawaii Revised Statutes.  It was
14:52  6  notice, and he sent back to me personally -- I remember
14:52  7  getting a fax -- I can't remember if it was from him or
14:52  8  his company; but whatever it was, it said that Rhino or
14:52  9  he, something like that, doesn't recognize the validity,
14:52 10  or something like that, of the stock transfer or
14:53 11  assignment of stock and, therefore, they don't recognize
14:53 12  it and there will be no shareholder meeting.
14:53 13          So, with that, I just left it.  It wasn't my
14:53 14  intent to acquire Rhino or any problems of the like.  It
14:53 15  was only my intent to help out; and if they didn't want
14:53 16  it, they didn't want it, period.
14:53 17     Q.   So -- and after that, what further dealings
14:53 18  did you have with Mr. Garthe, if any, about this stock?
14:53 19     A.   After that -- well, I told Mr. Garthe that
14:53 20  Rhino didn't recognize the validity of the assignment,
14:53 21  and I told him that. But he did assign his rights and
14:54 22  everything to me, but Rhino didn't recognize that.  And
14:54 23  so, it was between he and Rhino on that matter and --
14:54 24     Q.   It was between him and Rhino?
14:54 25     A.   Yes.  I wasn't going to take the effort to --
```

BY MR. CORTES: (Continuing)

Q. Do you recognize Exhibit 10?

A. Yes, I do.

Q. Who prepared this document?

A. Myself and Warren Nobles. Warren Nobles helped me.

Q. So how many Section 8A contracts did Rhino get before the BioGenesis, the time of the BioGenesis contract? Let's say before the split. Was Rhino able to get some Section 8A contracts?

A. Yes.

Q. Did you make money on some of those?

A. Yes. Did Rhino make money them?

Q. Yes.

A. Yes.

Q. And you personally made money on them as well; correct?

A. Yeah.

Q. So why in here do you put that you're entitled to 50 percent stock in Rhino Roofing and Repairs instead of just 49?

A. Because when we started, Rhino was 50-50. The conversation that I had with Mike is that we were always going to be 50-50.

Q. But you never got Michael to sign such an agreement?

A. No. We were pretty close friends.

Q. If you were the 51 percent owner, could you have

Alfred Garthe III: April 03 and 04, 2003

EXHIBIT 2

```
 1      gotten Section 8A contracts?
 2          A.   No.
 3               (Plaintiff's Exhibit 11 was marked for
 4      identification.)
 5          Q.   Do you recognize Exhibit 11?
 6          A.   Yes.
 7          Q.   Is that your signature on Page 3?
 8          A.   Yes, it is.
 9          Q.   On the third sentence it says:  First and foremost
10      I'm still owner of 49 percent of stock and claim 50 percent.
11      Is that a correct statement?  Did you own 49 percent of the
12      stock and claim 50 percent on July 12th, 2001?
13          A.   Yes.
14          Q.   Now on the second bullet point there it says:  Any
15      vehicles that are titled to Rhino in Guam are in my authority
16      to use.  What vehicles would those be?
17          A.   I was using a Rhino vehicle, pickup truck.
18          Q.   What were you using it for?
19          A.   For work and for personal use.
20          Q.   And you were working for BioGenesis at that ti
21          A.   July 2001, July 12.  I think so.
22          Q.   And you were working in Guam at that time; corr
23          A.   Yes.
24          Q.   Did BioGenesis in July of 2001 have any other work
25      besides the Navy contract that it was doing in Guam?
```

Alfred Garthe III: April 03 and 04, 2003



# Rhino Roofing and Repairs Inc

Thursday, November 30, 2000

## Letter of Intent



PLAINTIFF'S DEPOSITION EXHIBIT 12

To Gerald N.Y.C. Lam
Attorney at Law
1604 Ulalana Place
Kailua, Hawaii 96934

Dear Gerald;

This letter is to advise you; Gerald N.Y.C. Lam, that I Alfred Garthe III am entitled to 50% Stock in Rhino Roofing and Repairs Inc. also known as Rhino Builders Inc. The books show I own 49% of the shares. This is because of the agreement I have with Michael O'Connell. Michael had to own 51% of the share hold for Rhino to qualify for Section 8A Status. The additional percentage that Michael owns was for the purpose of 8A status only. We were to be equal partners in all respects of this corporation.

## EXECUTION

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of November 2000.

_____
ALFRED GARTHE III, Vice President

**TERRITORY OF GUAM** )
) ss:
**CITY OF AGANA** )

On this 30th day of November, 2000, before me, a Notary Public, in and for the Territory of Guam, personally appeared ALFRED GARTHE III, known to me to be the person whose name is subscribed to the foregoing CERTIFICATE OF TRANSFER OF STOCK, and he acknowledged to me that he executed the same.

IN WITNES WHEREOF, I have hereunto set my hand and official seal on this 30th day of November, 2000

_____
Notary Public

**EXHIBIT 3**

DANNY T. REYES
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: June 08 2003
P. O. Box 5757 Hagatna, Guam 96932