ANTONIO L. CORTES
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932-8973
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorneys for Plaintiff Rhino Builders, Inc.



FILED
DISTRICT COURT OF GUAM
JUL 15 2003
MARY L. M. MORAN
CLERK OF COURT

159

IN THE DISTRICT COURT

OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **SECOND AMENDED COMPLAINT** |

COMES NOW, Plaintiff RHINO BUILDERS, INC. (hereinafter

"Plaintiff"), by and through its attorneys the Law Office of Antonio L. Cortés, and

hereby files its Amended Complaint against Defendant BIOGENESIS PACIFIC,

INC. (hereinafter "Defendant Contractor") and Defendants AIG TECHNICAL

SERVICES, INC. and AMERICAN HOME ASSURANCE CO. (hereinafter

"Defendants Surety"), and alleges and avers as follows:

ORIGINAL

1.      Plaintiff is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Waianae, County of Honolulu, State of Hawaii. Plaintiff is engaged in the business of roofing installation and repairs.

2.      At all times relevant to this claim Plaintiff was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

3.      To the best of Plaintiff's knowledge, Defendant Contractor is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Kailua, County of Honolulu, State of Hawaii.

4.      To the best of Plaintiff's knowledge, Defendant Contractor is also a corporation organized and existing under the laws of the Territory of Guam, with its principal office and place of business located in Dededo, Guam.

5.      To the best of Plaintiff's knowledge, Defendants Surety are corporations duly authorized to engage in the business of executing surety bonds in the State of New York, with their principal office and place of business located at the City of New York, State of New York.

6.      This action arises, and the court has jurisdiction, under the Miller Act, United States Code, Title 40, Sections 270a through 270d.

7.      To the best of Plaintiff's knowledge, on or before May 2000, Defendant Contractor entered into a contract in writing with the United States of

2

America to furnish the materials and perform the labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in the contract, for a consideration of $4,926,657 for the period from May 15, 2000 to September 29, 2001. The contract was designated Navy Contract No. N62766-99-D-0425. Navy Contract No. N62766-99-D-0425 has been continued and remains in effect.

8. To the best of Plaintiff's knowledge, at the time Defendant Contractor entered into and began performance under such contract with the United States of America, Defendant Contractor was not licensed to do business in the Territory of Guam.

9. To the best of Plaintiff's knowledge, Defendant Contractor did not become licensed to do business in the Territory of Guam until January 2, 2001.

10. To the best of Plaintiff's knowledge, on October 6, 1999 pursuant to the terms of Contract No. N62766-D-0425, Defendant Contractor, as principal, and Defendants Surety, as surety, executed and delivered to the United States their bond, Bond No. 20-80-88, conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in Navy Contract No. N62766-99-D-0425.

11. On or before May 2000, use Plaintiff entered into an oral subcontract with Defendant Contractor whereby use Plaintiff agreed to perform such contract work as the U.S. Navy might assign to Defendant Contractor on individual

task orders under the U.S. Navy Contract No. N62766-99-D-0425, between Defendant Contractor and the United States of America.

12. Under the terms of the oral subcontract between Defendant Contractor and use Plaintiff, Defendant Contractor agreed to pay all of use Plaintiff's actual costs of performance plus fifty percent (50%) of Defendant Contractor's profit upon completion of each task order under Contract No. N62766-99-D-0425. A copy of a letter from Defendant Contractor to use Plaintiff reiterating the terms of the oral subcontract between Defendant Contractor and use Plaintiff is attached to Plaintiff's First Amended Complaint as Exhibit "A," and incorporated by reference.

13. The oral subcontract between Defendant Contractor and use Plaintiff was necessary initially only because the contract award date for Contract No. N62766-99-D-0425 had not afforded Defendant Contractor sufficient time to establish a written subcontract with use Plaintiff.

14. Both Defendant Contractor and use Plaintiff agreed that the oral subcontract between Defendant Contractor and use Plaintiff would later be reduced to writing to conform to accepted federal government contract practice.

15. Defendant Contractor later refused to enter into a formal written subcontract with use Plaintiff.

16. Plaintiff then entered into the performance of its oral subcontract and furnished labor and equipment in the prosecution of the work provided for in the contract between Defendant Contractor and the United States of America.

4

17.  Plaintiff performed labor and provided materials as agreed under the oral subcontract as follows: Plaintiff provided all of the needed labor, materials, equipment, facilities, financing and bonding to Defendant Contractor in the prosecution of the work provided for in Contract No. N62766-99-D-0425. The reasonable and agreed value of Plaintiff's actual costs for such performance under the oral subcontract was and is not less than $239,694.47, no more than $25,000.00 of which has been paid by Defendant Contractor to date, leaving a balance due of not less than $214,694.47.

18.  In addition to Plaintiff's actual costs, Defendant Contractor agreed to pay Plaintiff a fifty percent (50%) share of Defendant Contractor's profit under Contract No. N62766-99-D-0425. Plaintiff is informed and believes that the reasonable and agreed fifty percent (50%) share of Defendant Contractor's profit therefore was and is an unknown sum in excess of $1.05 million, none of which has been paid by Defendant Contractor to date, leaving a balance due that exceeds $1.05 million.

19.  Notwithstanding Plaintiff's several demands for payment, such balances have not been paid and there is now justly due and owing to use Plaintiff an amount exceeding $1,264,694.47, the same being the reasonable value of use Plaintiff's performance under the oral subcontract between Defendant Contractor and use Plaintiff.

20.  Defendant Contractor breached its contract with Plaintiff in that it failed and refused to pay Plaintiff the moneys due it for labor performed and

5

equipment furnished, as above set forth, and Plaintiff was then forced to terminate its performance of the contract.

21. The date on which the last labor was performed and equipment supplied to Defendant Contractor by Plaintiff was not earlier than March 20, 2001. A period of more than 90 days has elapsed since such date, and Plaintiff has not been paid anything for the labor performed and equipment furnished.

22. All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

23. This court also has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

24. A true and correct copy of Bond No. 20-80-88, which was in full force and effect at all times relevant herein, is attached to Plaintiff's First Amended Complaint as Exhibit "B" and incorporated herein by reference as if set forth fully.

25. In or about October 2001, Plaintiff contacted Defendant American Home Assurance Co. (hereinafter "AHAC") to initiate the claims process and AHAC referred Plaintiff to Defendant AIG Technical Services, Inc. (hereinafter "AIG") to handle Plaintiff's claim against AHAC.

26. On or about October 22, 2001, Plaintiff sent AHAC the original of the letter and enclosure attached to Plaintiff's First Amended Complaint as Exhibit "C" and incorporated herein by reference as if set forth fully.

27. On or about October 30, 2001, AIG responded to the letter to AHAC by providing Plaintiff with its claim form. A true and correct copy of AIG's

6

response is attached to Plaintiff's First Amended Complaint as Exhibit "D" and incorporated herein by reference as if set forth fully.

28. As required by AHAC, on or about January 9, 2002, Plaintiff then sent AIG the Proof of Claim form attached to Plaintiff's First Amended Complaint as Exhibit "E" and incorporated herein by reference as if set forth fully.

29. On or about February 21, 2002, AIG denied Plaintiff's claim as untimely. A true and correct copy of AIG's denial of Plaintiff's claim on the bond is attached h to Plaintiff's First Amended Complaint as Exhibit "F" and incorporated herein by reference as if set forth fully.

30. At the time when AIG denied the claim, it knew that Plaintiff had continued to furnish and supply materials to Defendant Contractor for work on the project until on or after March 20, 2001.

31. Upon information and belief, AHAC and AIG are owned by the same company and operate either as the same company or as a joint venture.

32. At the time when AIG denied the clam, it knew that Defendant Contractor's failure to pay Plaintiff had required Plaintiff to reduce its staff; that Defendant Contractor had concealed certain financial records from Plaintiff; that all of this had prevented Plaintiff, despite the exercise of all due diligence, from determining the amount of Defendant Contractor's obligation until shortly before January 9, 2002; that this caused the delay in the filing of this lawsuit; and that Plaintiff could not determine whether to file this lawsuit until it determined the amount of Defendant Contractor's obligation.

7

33. If AHAC did not authorize AIG's denial of the claim, then AIG is liable for breach of implied warranty of authority.

34. Whether or not AHAC authorized AIG's denial of the claim, that denial was wrongful because the claim was timely, subjecting AIG to liability under 18 G.C.A. § 20402(3).

35. Both AHAC and AIG owed and continue to owe Plaintiff a duty of good faith and fair dealing arising out of the bond as well as a general tort duty of ordinary care.

36. AHAC acted in bad faith and breached these duties by referring Plaintiff to AIG.

37. AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC, by denying the claim, by moving to dismiss this action because it was not brought against AHAC, and by citing the November 20, 1995, Decision and Order in National Union Fire Insurance Co. of Pittsburgh, Pa. v. Braga, Superior Court of Guam Civil Case No. CV1221-95, as a case on point even though it is distinguishable and even though the subsequent decision in Albert H. Wohlers and Co. v. Bartgis, 969 P.2d 949, 959 (Nev. 1998), allows the court to hold AIG liable for policy-based contractual claims as well as for bad faith in these circumstances. See also Farr v. Transamerica Occidental Life Insurance Co. of California, 699 P.2d 376, 386 (Ariz. App. 1984) (bad faith liability); Delos v. Farmers Insurance Group Inc., 155 Cal Rptr. 843, 849 (App. 1979) (same);

and see <u>Continental Insurance Co. v. Bayless and Roberts Inc.</u>, 608 P.2d 281, 287 (Alaska 1980) (tort liability).

38. Upon information and belief, approximately two or three weeks before this action was filed by Plaintiff's former counsel of record, an entity connected with Defendants Surety and/or an attorney representing Defendants Surety, contacted Plaintiff's former counsel and communicated to it that it should withdraw from its former representation of Plaintiff for conflict-of-interest reasons, adding materially to Plaintiff's expense, risk, and difficulty in pursuing its claims in this action. On information and belief, that entity represented to Plaintiff's former counsel that it was sufficiently connected to Defendants Surety that Plaintiff's former counsel did withdraw from its former representation of Plaintiff in this action.

39. By reason of Defendants' bad faith and breaches of their duties, Plaintiff has been damaged in amounts to be determined at trial.

40. Defendants' acts and omissions have been willful and oppressive, entitling Plaintiff to exemplary and punitive damages.

Count I
Miller Act

41. Plaintiff re-alleges paragraphs 1 through 40 herein as if set forth fully.

42. Defendants' acts and omissions entitle Plaintiff to recovery against all Defendants under the Miller Act.

///

### Count II
### Breach of Duties of Good Faith and
### Fair Dealing and Ordinary Care

43. Plaintiff re-alleges paragraphs 1 through 42 herein as if set forth fully.

44. Defendants' acts and omissions entitle Plaintiff to recovery against AIG and AHAC for breach of the duty of good faith and fair dealing arising out of the bond and the general tort duty of ordinary care.

### Count III
### 18 G.C.A. § 20402(3) and Breach of
### Implied Warranty of Authority

45. Plaintiff re-alleges paragraphs 1 through 44 herein as if set forth fully.

46. Defendants' acts and omissions entitle Plaintiff to recovery against AIG for breach of the implied warranty of authority to the extent that AHAC did not authorize denial of the claim, and also to recovery against AIG under 18 G.C.A. § 20402(3).

### Count IV
### Bad Faith Prevention of Plaintiff's
### Ability to Realize Benefits of Subcontract Agreement

47. Plaintiff re-alleges paragraphs 1 through 46 herein as if set forth fully.

48. Plaintiff relied upon the existence of the subcontract in supplying performance of Navy Contract No. N62766-99-D-0425 on behalf of Defendant Contractor that Defendant Contractor was unable to provide on its own behalf.

49. Plaintiff was able to provide that performance because it had the business license, facilities, equipment, materials, and employees in Guam needed to do so, whereas Defendant Contractor had no business license, facilities, equipment, materials, or employees in Guam needed to perform Navy Contract No. N62766-99-D-0425.

50. Defendant Contractor had an obligation to Plaintiff to refrain from tactics intended to deprive Plaintiff of the benefit of the oral subcontract agreement in order to appropriate those benefits unto itself.

51. In or around November 2000, Defendant Contractor breached that obligation by secretly negotiating with the head of Plaintiff's Guam operations, Alfred Garthe III, to convert Plaintiff's Guam assets, including its Guam facilities, equipment, materials, and employees, to Defendant Contractor's own use, and to thereby deprive Plaintiff of the profits it was entitled to realize under its subcontract with Defendant Contractor.

52. In or around November 2000, Defendant Contractor breached that obligation by secretly negotiating with Plaintiff's 49% shareholder, Alfred Garthe III, to acquire his shares so that it could intimidate Plaintiff into quiescence with respect to its takeover of Plaintiff's Guam facilities, equipment, materials, and employees, including Alfred Garthe III.

53. Plaintiff also violated that obligation by denying the existence of the subcontract agreement at times when doing so would facilitate its efforts to take

11

back Plaintiff's right to half of the profits realized from Navy Contract No. N62766-99-D-0425.

54. These actions by Defendant Contractor prevented Plaintiff from being able to perform its duties under the subcontract agreement and effectively stopped it from doing so.

55. These actions by Defendant Contractor were intended to, and did, deprive Plaintiff of one half of the profits realized by Defendant Contractor on Navy Contract No. N62766-99-D-0425, which Plaintiff believes substantially exceeds $2.1 million.

56. Plaintiff has suffered injury from those actions in an amount to be proven at trial to exceed $1,264,694.47.

57. Because these actions by Defendant Contractor were the product of its malice and bad faith toward Plaintiff, and because the complained-of tactics of Defendant Contractor were completely outside the scope of the subcontract agreement, Plaintiff is entitled to exemplary damages in an amount to be determined at trial.

### Count III
### Fraud

58. Plaintiff re-alleges paragraphs 1 through 57 herein as if set forth fully.

59. In or around September 1999, Defendant Contractor contacted Plaintiff and proposed that, because Defendant Contractor had no business license,

12

facilities, equipment, materials, and employees on Guam with which it could perform Navy Contract No. N62766-99-D-0425, and because Plaintiff had such license, facilities, equipment, materials, and employees on Guam, that it would subcontract performance of Navy Contract No. N62766-99-D-0425 to Plaintiff on the terms described above.

60. At the time Defendant Contractor made that proposal to Plaintiff, it intended not to honor any agreement to compensate Plaintiff for providing the performance of Navy Contract No. N62766-99-D-0425 that Defendant Contractor was unable to provide.

61. Defendant Contractor concealed from Plaintiff, from the very outset, that it intended not to honor its agreement to reimburse Plaintiff its actual costs of performance and that it intended not to honor its agreement to pay Plaintiff half of Defendant Contractor's profit realized from Navy Contract No. N62766-99-D-0425.

62. Because Defendant Contractor concealed from Plaintiff that it intended not to reimburse Plaintiff its actual costs of performance and that it intended not to pay Plaintiff half of its profits, Plaintiff believed that, if it used its business license, facilities, equipment, materials, and employees on Guam to perform Navy Contract No. N62766-99-D-0425, it would realize one half of the profits therefrom, net of its cost of performance.

63. In reliance upon Defendant Contractor's representations that it would reimburse Plaintiff's costs of performance and half of Defendant Contractor's profits realized from Navy Contract No. N62766-99-D-0425, Plaintiff did use its

13

license, facilities, equipment, materials, and employees on Guam to perform Navy Contract No. N62766-99-D-0425 until Defendant Contractor prevented it from doing so.

64. Plaintiff's reliance upon Defendant Contractor's representations that it would reimburse Plaintiff its actual costs of performance and pay Plaintiff half of Defendant Contractor's profit realized from Navy Contract No. N62766-99-D-0425 have injured Plaintiff in the following ways:

    a. Plaintiff has expended over $214,634,47 to perform Navy Contract No. N62766-99-D-0425;

    b. Plaintiff has been deprived of over $1.05 million as its share of the profits from Navy Contract No. N62766-99-D-0425;

    c. Plaintiff was damaged in the amount of $198,000 in lost profits due to a loss of credit and bonding directly caused by Defendant Contractor's failure to reimburse Plaintiff for its performance of Navy Contract No. N62766-99-D-0425; and

    d. Plaintiff was damaged in an amount exceeding $4.5 million because it became unable to perform other federal contracts due to a loss of credit and bonding directly caused by Defendant Contractor's failure to reimburse Plaintiff for its performance of Navy Contract No. N62766-99-D-0425.

65. Plaintiff is entitled to judgment against Defendant Contractor in all those amounts and is entitled to judgment against AIG and/or AHAC for the amounts described in parts "a" and "b" of the foregoing paragraph 60.

66. Plaintiff is entitled to an award of exemplary or punitive damages against Defendant Contractor for its fraud.

WHEREFORE, the United States of America on behalf and to the use of Plaintiff most respectfully prays this honorable Court to render judgment against all Defendants as follows:

1. For Counts I, II, III, and IV, Plaintiff prays for judgment in an amount to be proven at trial to be not less than $1,264,694.47, together with interest from March 20, 2001;

2. For Count V, Plaintiff prays for judgment in an amount to be proven at trial to be not less than $5,764,634.47;

3. For punitive and exemplary damages, in an amount to be determined by this honorable Court;

4. For costs of this action; and

/ / /

/ / /

/ / /

/ / /

/ / /

5.  For further relief as this honorable Court may deem just and proper.

DATED: May 26, 2003 in Hagåtña, Guam.

LAW OFFICE OF ANTONIO L. CORTÉS<br>
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
Antonio L. Cortes