1  Arthur B. Clark, Esq.
   Janalynn M. Cruz, Esq.
2  CALVO AND CLARK, LLP
   Attorneys at Law
3  655 South Marine Drive, Suite 202
   Tamuning, Guam 96911
4  Telephone:   (671) 646-9355
   Facsimile:   (671) 646-9403
5
   Attorneys for Defendant and
6  Counter-Plaintiff Biogenesis Pacific, Inc.



7
                    DISTRICT COURT OF GUAM
8
                       TERRITORY OF GUAM
9

10  UNITED STATES OF AMERICA FOR USE       )   CIVIL CASE NO. 02-00008
    AND BENEFIT OF RHINO BUILDERS, INC.,   )
11                                         )
                          Plaintiff,       )
12         vs.                             )   **ANSWER TO SECOND AMENDED**
                                           )   **COMPLAINT AND COUNTERCLAIM**
13  BIOGENESIS PACIFIC, INC.,              )
    AIG TECHNICAL SERVICES, INC., and      )
14  AMERICAN HOME ASSURANCE                )
    COMPANY                                )
15                        Defendants.      )
                                           )
16  ─────────────────────────────────────  )
    BIOGENESIS PACIFIC INC.,               )
17                                         )
                       Counter-Plaintiff,  )
18                                         )
           vs.                             )
19                                         )
    RHINO BUILDERS, INC., MICHAEL          )
20  O'CONNELL, MICHAEL DANFORTH,           )
    AND JOHN DOES 1-10,                    )
21                                         )
                       Counter-Defendants. )
22  ─────────────────────────────────────  )
    AMERICAN HOME ASSURANCE                )
23  COMPANY,                               )
                                           )
24                     Cross-Claimant,     )
                                           )
25         vs.                             )
                                           )
26  BIOGENESIS PACIFIC INC.,               )
                                           )
27                  Cross-Claim Defendant. )
                                           )
28  ─────────────────────────────────────

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

**ORIGINAL**

1

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 1 of 15

COMES NOW, Defendant Biogenesis Pacific, Inc. ("Biogenesis"), by and through its counsel Calvo and Clark, LLP, and answers the Second Amended Complaint as follows:

1. As to paragraph 1, 3, 9 of the Complaint, Biogenesis admits said allegations.

2. As to paragraphs 2, 5, 23, 25-29, 31, 33-38 of the Complaint, Biogenesis having insufficient information or belief regarding said allegations denies said allegations.

3. As to paragraph 4, 6, 8, 11-13, 14, 16-22, 30, 32, 39, 40, 42, 44, 46, 48-57, 59-66, of the Complaint, Biogenesis denies said allegations.

4. As to paragraph 7 of the Complaint, Biogenesis admits that it entered into a contract in writing with the United States of America to furnish materials and perform labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in Navy Contract No. N62766-99-D-0425, and that such contract has been continued and remains in effect. Biogenesis denies all other allegations contained in paragraph 7.

5. As to paragraph 10, Biogenesis admits that it, as principal, and Defendant American Home Assurance Company, as surety, executed and delivered to the United States their bond, Bond No. 20-80-88 for Navy Contract No. N62766-99-D-0425. Biogenesis denies all other allegations of this paragraph.

6. As to paragraph 15, the allegation contained therein is vague and ambiguous as it refers to a "later" refusal to enter into a formal written subcontract with Plaintiff. Biogenesis admits that it refused to enter into a formal written subcontract with Plaintiff. To the extent that Plaintiff's paragraph 15 implies that there was an "earlier" agreement to do so, Plaintiff denies this allegation.

7. As to paragraph 24, the allegation contained therein is vague and ambiguous as it refers to "all times relevant herein." Biogenesis admits that Bond No. 20-80-88 was in full force and effect at all times relevant to Biogenesis' performance of its obligations under Navy Contract No. N62766-99-D-0425. To the extent that Plaintiff's paragraph 24 implies that said bond was in full force and effect at all times relevant to Plaintiff's causes of actions, Biogenesis having insufficient information or belief regarding the said allegation, denies the same.

8. As to paragraph 41, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 40.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

2

Case 1:02-cv-00008    Document 165    Filed 07/30/2003    Page 2 of 15

9. As to paragraph 43, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 42.

10. As to paragraph 45, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 44.

11. As to paragraph 47, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 46.

12. As to paragraph 58, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 57.

13. As to all other paragraphs and allegations not herein specifically admitted, Biogenesis herein generally and specifically denies said allegations.

## AFFIRMATIVE DEFENSES

Plaintiff's claims against Defendants are barred by the following affirmative defenses: lack of subject matter jurisdiction; debt not due; statute of limitations; failure to satisfy the conditions of the Miller Act; unclean hands; lack of privity of contract; laches; set-off; bad faith; fraud and misrepresentation; estoppel; failure to mitigate; failure to plead fraud with particularity; if an oral contract existed, breach of contract; statute of frauds; duress.

WHEREFORE, Defendant Biogenesis Pacific, Inc. prays that Plaintiff takes nothing by its Complaint.

## COUNTERCLAIM OF BIOGENESIS PACIFIC INC. AGAINST RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10 (Collectively "Counter-Defendants")

COMES NOW Defendant and Counter-Plaintiff Biogenesis Pacific, Inc. ("Biogenesis"), by and through its attorney of record Calvo and Clark, LLP, and for its counterclaim herein alleges as follow:

1. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367.

2. To the best of Biogenesis' knowledge, Plaintiff and Counter-Defendant Rhino Builders, Inc. ("Rhino") is and at all times relevant herein was a Hawaii corporation licensed and authorized to transact business in Guam.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

3

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 3 of 15

3. To the best of Biogenesis' knowledge, Counter-Defendant Michael O'Connell is, and at all times relevant herein was, a resident of Hawaii.

4. To the best of Biogenesis' knowledge, Counter-Defendant Michael Danforth is, and at all times relevant herein was, a resident of Hawaii.

5. To the best of Biogenesis' knowledge, Counter-Defendants Does are individuals or entities who acted in concert with Counter-Defendants to cause and bring harm and damages to Biogenesis. The exact identities of Counter-Defendants Does are unknown at this time but will be incorporated into the Counterclaim in the future as their identities are made known.

6. Biogenesis is, and at all times relevant herein was, a Hawaii corporation. Biogenesis became licensed and was authorized to transact business in Guam on or around January 2001.

7. On or about September 29, 1999, Biogenesis was awarded Navy Contract No. N62766-99-D-0425 (the "Contract") by the United States of America through the Department of the Navy (the "Navy"). Pursuant to the Contract, Biogenesis was to furnish materials and perform the labor for the installation and repair of U.S. Navy housing roofing in various locations on Guam. The Contract was for a term of one base year plus four option years. A copy of the letter from the Navy to Biogenesis informing Biogenesis that it was selected is attached as Exhibit "A" and incorporated herein by reference.

8. Counter-Defendant Michael Danforth ("Mr. Danforth") and George Allen were directly and significantly involved in the preparation and submittal of Biogenesis' bid for the Contract. Mr. Danforth and Mr. Allen had access to Biogenesis' internal financial data and company data.

9. On or about September 29, 1999, Rhino was informed by the Navy's Contracting Officer that Biogenesis was selected to receive the Contract award. A copy of the letter from the Navy to Rhino informing Rhino that Biogenesis was selected is attached as Exhibit "B" and incorporated herein by reference.

10. Around September 1999, Counter-Defendant Michael O'Connell, chief executive officer of Rhino ("Mr. O'Connell"), approached Biogenesis, and attempted to solicit work under the Contract. Mr. O'Connell represented that Rhino had bonding, surety, project insurance, project plans,

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

4

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 4 of 15

trained and licensed personnel, specific work plans, building materials, and financing already available and in place.

11. Biogenesis informed Mr. O'Connell that Biogenesis would consider sub-contracting work to Rhino upon Rhino satisfying certain conditions precedent, namely, submittal and approval by Biogenesis of the proper certificates of insurance, project payment and performance bonding, project safety, accident and quality control plans, financial assurances, a detailed work plan for each proposed delivery order and specific pricing breakdown and total. Biogenesis further informed Mr. O'Connell that if Rhino was subcontracted, Rhino would have to provide and finance all of its project costs and materials and Biogenesis would not have to pay Rhino unless Rhino completed the work, the Navy quality assurance officer and contract officer signed off on the work, and Biogenesis was paid.

12. In order to allow Rhino to attend the initial site visit with the Navy so that Rhino could prepare a subcontract proposal, Biogenesis needed to have a representative available on Guam to sign documents required by the Navy to allow Rhino on the project sites. Mr. O'Connell informed Biogenesis that Rhino's Guam operations manager Mr. Richard Avilla ("Mr. Avilla") would be available as an individual for hire by Biogenesis for this purpose.

13. On or about Feburary 2000, at Mr. O'Connell's and Rhino's suggestion, Biogenesis agreed to submit, and did submit, Mr. Avilla's name to the Navy as Biogenesis' representative, provided that Mr. Avilla would remain an employee of Rhino until Biogenesis was ready to mobilize on Guam and to formulate delivery orders under the Contract, at which time Biogenesis would formally hire Mr. Avilla and reimburse Rhino for a portion of Mr. Avilla's salary. At the time that Mr. Avilla's name was submitted to the Navy as Biogenesis' representative, Mr. Avilla was an employee of Rhino and remained as such through November 2000.

14. On or around February 2000, Biogenesis allowed Rhino to enter the project site at its own risk and cost for the limited purpose of investigating potential delivery orders under the Contract in order to provide specific proposals to Biogenesis.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

5

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 5 of 15

## Fraud

15. From May through September 2000, unbeknownst to Biogenesis, without prior authorization from Biogenesis and without satisfying the above-said conditions precedent, Rhino and Mr. O'Connell caused Mr. Avilla to accept eighteen (18) delivery orders under the Contract from the Navy on behalf of Biogenesis by falsely communicating to Mr. Avilla that Biogenesis had entered into a subcontract with Rhino to perform work under the Contract and that Biogenesis had authorized Mr. Avilla to begin accepting delivery orders under the Contract and to begin assigning them to Rhino.

16. At the time Mr. O'Connell and Rhino made these representations to Mr. Avilla, Mr. O'Connell and Rhino knew them to be false.

17. Mr. O'Connell and Rhino knew that prior to September 2000, Mr. Avilla had never received any direct instructions from Biogenesis concerning the Contract and that in fact, Mr. Avilla had never even spoken to anyone at Biogenesis, and that because of Mr. O'Connell's position as the Chief Executive Officer at Rhino and Rhino's relationship with Mr. Avilla as his employer, Mr. Avilla would accept as true Mr. O'Connell's false representations concerning the formation of a subcontract between Biogenesis and Rhino and concerning instructions from Biogenesis to accept delivery orders from the Navy and to assign them to Rhino.

18. At the time Mr. O'Connell and Rhino first caused Mr. Avilla to accept the delivery orders and Rhino started work on said delivery orders, Biogenesis had not yet mobilized any workforce nor hired any employees on Guam because of a pending bid protest against the awarding of the Contract.

19. Mr. O'Connell and Rhino made the above-said false representations to Mr. Avilla for the purpose of defrauding and forcing Biogenesis into a subcontract agreement with Rhino. By having Mr. Avilla accept the delivery orders on Biogenesis' behalf and by having Rhino begin work on the Contract at a time when Biogenesis had not mobilized any employees on Guam nor made any arrangements to commence work on the Contract because of a pending bid protest, Mr. O'Connell and Rhino knew and intended that Biogenesis would become immediately obligated to complete performance of the accepted delivery orders by the deadline imposed by the Navy, otherwise Biogenesis would likely face the termination of the Contract by the Navy for Biogenesis' default.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

6

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 6 of 15

20. By having Mr. Avilla accept the delivery orders on Biogenesis' behalf and by having Rhino begin work on the Contract at a time when Biogenesis had not mobilized any employees on Guam nor made any arrangements to commence work on the Contract because of a pending bid protest, Mr. O'Connell and Rhino knew and intended that Biogenesis would likely only be able to complete the delivery orders and avoid termination of the Contract for default by allowing Rhino to complete the work, thus defrauding and forcing Biogenesis into allowing Rhino to perform work on certain delivery orders already commenced.

21. Despite accepting the delivery orders as early as May 2000, Rhino and Mr. O'Connell never informed Biogenesis that Rhino had caused said delivery orders to be accepted from the Navy under the Contract or that Rhino had commenced work on said delivery orders.

22. Biogenesis did not first discover that work had commenced on the Contract until September 2000, when Biogenesis was contacted by certain suppliers of materials for the delivery orders requesting payment for said materials.

23. In response to these inquiries from materials suppliers, Biogenesis spoke to Mr. Avilla for the very first time in September 2000 and was told by Mr. Avilla that he had accepted the delivery orders on Biogenesis' behalf because he was instructed to do so by Mr. O'Connell, who represented to Mr. Avilla that Rhino had entered into a subcontract agreement with Biogenesis.

24. As a result of the fraudulent acts of Mr. O'Connell and Rhino, Biogenesis had no choice but to allow Rhino to complete certain delivery orders in order to avoid defaulting on the Contract. Biogenesis agreed to allow Rhino to complete Delivery Order Nos. 1, 2 and 7 and paid Rhino $25,000 for materials and supplies allegedly purchased by Rhino to complete said delivery orders. Delivery Order Nos. 1, 2 and 7 are attached as Exhibit "C," "D" and "E," respectively and incorporated herein by reference.

25. Biogenesis also continued to negotiate with Rhino to see whether it could agree to a subcontract agreement, but because of Rhino's repeated bad faith and tortious conduct, Biogenesis refused to enter into a formal subcontract agreement with Rhino.

26. All work on the remaining fifteen (15) delivery orders were commenced and completed by Biogenesis.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

7

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 7 of 15

## Tortious Interference with Contract

27. In or about September 2000, Mr. O'Connell requested of Mr. Avilla that Mr. Avilla fail to show up at scheduled meetings with the Navy related to the delivery orders and to stop all work on the above-said delivery orders in order to cause Biogenesis to breach the Contract, to suffer liquidated damages because of delays in performance of delivery orders accepted under the Contract, and to interfere with Biogenesis' rights under the Contract so that Biogenesis would fail under the Contract and Rhino would be awarded the Contract.

28. On or about September 2000, Mr. O'Connell told Mr. Alfred Garthe ("Mr. Garthe"), an employee of Rhino, to stop all work on the above-said delivery orders in order to cause Biogenesis to breach the Contract, to suffer liquidated damages because of delays in performance of delivery orders accepted under the Contract, and to interfere with Biogenesis' rights under the Contract so that Biogenesis would fail under the Contract and Rhino would be awarded the Contract.

29. On or about October or November 2000, Mr. Danforth, Rhino's representative, contacted Biogenesis and advised it that Rhino had caused delivery orders to be accepted from the Navy and that Rhino had allowed its workers to commence work on said delivery orders.

30. Rhino and Mr. Danforth informed Biogenesis that because Biogenesis did not have a subcontract with Rhino, Rhino would have its workers cease work on the accepted delivery orders causing Biogenesis to suffer liquidated damages under the Contract unless Biogenesis executed a written exclusive five year subcontract with Rhino.

31. After Biogenesis refused to execute the subcontract, Rhino caused its workers to cease working on the delivery orders in order to further bring about Biogenesis' breach of the Contract and the Navy's termination of the Contract.

32. Rhino and Mr. Danforth, informed Biogenesis that liens would be placed on the project unless Biogenesis paid Rhino $25,000. Biogenesis paid Rhino $25,000 for the materials and supplies Rhino allegedly purchased for the project and requested a full accounting of all supplies ordered for the project. Rhino and Mr. Danforth never provided Biogenesis with such an accounting.

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

8

Case 1:02-cv-00008    Document 165    Filed 07/30/2003    Page 8 of 15

## FIRST CAUSE OF ACTION
## FRAUD

33. Biogenesis realleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

34. In doing all things alleged above, Rhino and Mr. O'Connell falsely represented to Biogenesis' authorized manager, Mr. Avilla, that Biogenesis had subcontracted with Rhino to perform the Contract and to accept delivery orders under the Contract when in fact Biogenesis had yet to enter into a subcontract agreement with Rhino and had not authorized the acceptance of delivery orders.

35. In doing all things alleged above, Rhino and Mr. O'Connell caused Mr. Avilla to rely on Rhino and Mr. O'Connell's false representations in order to induce Mr. Avilla to accept delivery orders in the name of Biogenesis and to assign them to Rhino, all without the consent of Biogenesis.

36. In doing all things alleged above, Rhino and Mr. O'Connell's fraudulent acts forced Biogenesis to allow Rhino to complete work on delivery orders 1, 2, and 7 causing Biogenesis damages in an amount to be proven at trial of not less than $25,000.

37. In doing all things alleged above, Rhino and Mr. O'Connell acted maliciously and willfully and with the intent of defrauding and forcing Biogenesis into a subcontract agreement with Rhino in order to avoid a default of the Contract, and Biogenesis is, therefore, entitled to compensatory damages, and exemplary or punitive damages in an additional sum to be proven at trial.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

38. Biogenesis realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

39. In doing all things alleged above, Counter-Defendants caused Biogenesis to suffer liquidated damages under the Contract in an amount not less than $3,820.00, and Biogenesis is therefore entitled to compensatory damages in said amount.

40. In doing all the things alleged above, Counter-Defendants acted maliciously and willfully and for the purpose of causing Biogenesis to breach the Contract in order for Rhino to take

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

9

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 9 of 15

over the Contract, and Biogenesis is, therefore, entitled to exemplary or punitive damages in an additional sum to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Biogenesis respectfully requests judgment as follows:

1. Exemplary or punitive damages against Counter-Defendants Rhino Builders, Inc. and Michael O'Connell for fraud in an amount of $7,029,328.94 or such other amount as may be proven at trial;

2. Damages for tortious interference of contract against all Counter-Defendants in an amount to be proven at trial to be not less than $3,820.00;

3. Damages for fraud against Counter-Defendants Rhino Builders, Inc. and Michael O'Connell in an amount to be proven at trial to be not less than $43,854.20;

4. Exemplary or punitive damages for tortious interference with contract against all Counter-Defendants in an amount to be proven at trial;

5. Reasonable attorneys' fees and costs;

6. Such other and further relief as the Court deems just and proper.

Dated this 30th day of July, 2003.

CALVO AND CLARK, LLP
Attorneys At Law
Attorneys for Defendant Biogenesis Pacific, Inc.

By: _____
JANALYNN M. CRUZ

ANSWER TO SECOND AMENDED
COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
B030730.327-0001.CT (Answer Second Amended Complaint).wpd

10

Case 1:02-cv-00008   Document 165   Filed 07/30/2003   Page 10 of 15



**DEPARTMENT OF THE NAVY**
U.S. NAVY PUBLIC WORKS CENTER
PSC 455, BOX 195
FPO AP 96540-2937
OFFICER IN CHARGE OF CONSTRUCTION
PSC 455, BOX 173
FPO AP 96540-2200

IN REPLY REFER TO:
Code 42CK/JT

2 9 SEP 1999

BioGenesis Pacific, Inc.
Attn: Mr. Gerald N.Y.C. Lam
Corporate & Programs Control
1604 Uluslana Place
Kailua, Hawaii 96734

N62766-99-D-0425, INDEFINITE DELIVERY / INDEFINITE QUANTITY CONTRACT FOR ROOFING SYSTEM INSTALLATION AND REPAIR, GUAM;   SBA # 0951-99-902195

Congratulations! Your firm is hereby given notice of award of this contract for the Minimum Guaranteed amount of $100,000.00 and a Base Year Not-to-Exceed total of $2,983,439.00 in accordance with Line Items 0001 through 0024AH of NAVFAC Specification 41-99-0425. The duplicate original of the awarded contract is forwarded with this letter as enclosure (1). The date of award is shown in Block 31C of the award Document.

Within 10 days of receipt of this notice, submit to the Officer in Charge of Construction, Marianas, originals of the Performance and Payment Bonds and Certificate of Insurance. Enclosures (2) and (3) are the bond forms for your use. The date of award shown in Block 31C of the Award Document must be indicated on your submitted bonds.

Please contact Mr. Joe Camacho at (671) 339-7400 as soon as possible to arrange a pre-construction meeting. The purpose of this meeting is to review various regulations and contract administrative procedures. You may not proceed with the work until the Contracting Officer has issued a Notice to Proceed upon receipt and approval of Performance and Payment Bonds and Certificate of Insurance.

Please acknowledge receipt below and return to the Officer in Charge of Construction, immediately.

JAMES B. POWERS
Contracting Officer

The above Notice of Award received this

1 Day of October 1999

By: _(signature)_

GERALD LAM  President
(Type or Print Name & Official Title)

Enclosures:
(1) Award Document (SF 1442) with schedule
(2) Standard Form 25 (Rev 1-90) (2 cys)
(3) Standard Form 25A (Rev 1-90) (2 cys)

Duplicate Original and all enclosures will follow in the mail.

Jean Tarlton
(671) 339-7077

5-pages Total

"SAFETY FIRST"

**EXHIBIT "A"**



**DEPARTMENT OF THE NAVY**
U.S. NAVY PUBLIC WORKS CENTER
PSC 455, BOX 195
FPO AP 96540-2937
OFFICER IN CHARGE OF CONSTRUCTION
PSC 455, BOX 175
FPO AP 96540-2300

IN REPLY REFER TO:

42CK

29 SEP 1999

Rhino Roofing and Repairs, Inc., dba            Phone: (808) 668-8878
RHINO BUILDERS                                   Fax: (808) 668-7024
Attn: Michael N. O'Connell, President
790 N. Marine Drive – Box 959
Tumon, Guam 96911

SUBJ: SOLICITATION N62766-99-R-0425, INDEFINITE DELIVERY INDEFINITE QUANTITY CONTRACT FOR ROOFING SYSTEMS INSTALLATION AND REPAIR, GUAM

Thank you for submitting a proposal in response to our Request for Proposal (RFP) for the above Solicitation. We appreciate the time and effort of your company in preparing an offer for this project.

The Government selected the firm BIOGENESIS PACIFIC INC., PROGRAMS & CONTROL DIVISION, 1604 Uluslanu Place, Kailua, Hawaii, to receive the contract award. The successful offer, considering base year and four option years, was $14,991,963.50. The Government Estimate was $20,167,114.00.

Your technical proposal was rated *Highly Acceptable*; however, your proposal did not represent the best value to the Government.

We wish you success in your future endeavors, and we hope you will continue to submit bids and proposals on our projects that are in the area of your expertise. Should you desire a debriefing, please notify this office in writing within three (3) days of receiving this letter. You may fax a written request to Julia Taitano at (671) 339-4248 / 7023.

JAMES B. POWERS
Contracting Officer

"SAFETY FIRST"

**EXHIBIT "B"**

# ORDER FOR SUPPLIES OR SERVICES
*(Contractor must submit four copies of invoice.)*

Form Approved OMB No. 0701-0182 Expires Aug 31, 1992

PAGE 1 OF 1

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0187), Washington, DC 20503. Please DO NOT RETURN your form to either of these addresses. Send your completed form to the procurement official identified in Item 6.

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER | 4. REQUISITION/PURCH REQUEST NO. | 5. CERTIFIED FOR NATIONAL DEFENSE UNDER DMS REG 1 |
|---|---|---|---|---|
| N62766-99-D-0425 | 0001 | 5/15/00 | | DO |

| 6. ISSUED BY | CODE C2766 | 7. ADMINISTERED BY (if other than 6) | CODE | 8. DELIVERY FOB |
|---|---|---|---|---|
| Officer in Charge of Construction<br>NAVFACENGCOM Contracts, Marianas<br>PSC 455, Box 175<br>FPO AP 96540-2200 | | | | [X] DEST.<br>[ ] OTHER (See Schedule if other) |

| 9. CONTRACTOR | CODE | FACILITY CODE | 10. DELIVER TO FOB POINT (Date) | 11. MARK IF BUSINESS IS |
|---|---|---|---|---|
| NAME AND ADDRESS: BioGenesis Pacific, Inc.<br>Corporate & Programs Control<br>1604 Ulualana Place<br>Kailua, HI 96734<br>(TEL: 637-9426 Richard Avilla)<br>• 8(a) Contractor | | | 15 JUN 2000<br>12. DISCOUNT TERMS<br>NET 30<br>13. MAIL INVOICES TO<br>SEE BLOCK 6 | [ ] SMALL<br>[ ] SMALL DISADVANTA<br>[ ] WOMEN-OWNED |

| 14. SHIP TO | CODE | 15. PAYMENT WILL MADE BY | CODE | MARK ALL PACKAGES AND PAPERS WITH CONTRACT OR ORDER NUMBER |
|---|---|---|---|---|
| | | Defense Finance & Accounting Service<br>Operating Location Oakland, Code FPV<br>P. O. Box 23870<br>Oakland, CA 94623-3870 | | |

| 16. TYPE OF ORDER | DELIVERY [X] | This delivery order is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract. |
|---|---|---|
| | PURCHASE | Reference your _____. Furnish the following on terms specified herein. ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME. |

BioGenesis / NAME OF CONTRACTOR — *Richard Avilla* SIGNATURE — Richard Avilla TYPED NAME AND TITLE Operation Manager — 5/16 DATE SIGNED

[ ] If this box is marked, supplier must sign Acceptance and return the following number of copies.

### ACCOUNTING AND APPROPRIATION DATA

| 17. ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB-ALLOT | AUTH'N ACCT'G ACTY | TRANS TYPE | PROPERTY ACCT ACTY | COUNTRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804.70FA | 250 | 61755 | 0 | 045924 | 2D | COM109 | | 61755046M71Q | $12,129.10 |

| 18. ITEM | 19. SCHEDULE OF SUPPLIES/SERVICE | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | W/R 31973, COMNAVMAR | | | | |
| 0001 | Roof Repairs at BQ1 through BQ20, COMNAVMAR, Guam | | | | |
| 0002AD | Reseal Construction Joints | 4,080 | LF | $ 0.98 | $ 3,998.40 |
| 0002AE | Replace Expansion Joint Assembly, To 2" Space, Stainless Steel | 140 | LF | $ 13.26 | $ 1,856.40 |
| 0015AA | Miscellaneous Items: Waterblast Roof Surface in Accordance with Section 07672 | 4,080 | SF | $ 0.15 | $ 612.00 |
| 0017AA | Seal Joints and Penetrations 6" Wide | 4,080 | LF | $ 0.56 | $ 2,284.80 |
| 0021AA | Re-secure Metal Flashing (Spot Repair) | 850 | SF | $ 3.69 | $ 3,136.50 |
| 0022AA | Trim/Dispose Tree Branches Obstructing Roofing Operation | 100 | LF | $ 2.41 | $ 241.00 |

*If quantity accepted by the Government is same as quantity ordered, indicate X. If different, enter actual quantity accepted below quantity ordered and encircle.

| 24. UNITED STATES OF AMERICA | | 25. TOTAL |
|---|---|---|
| *L A Guzman* BY: L. A. GUZMAN | Contracting Officer, Tel: 339-5120<br>guzmana@pwcguam.navy.mil | $ 12,129.10 |
| | | 29. DIFFERENCES |

| 26. QUANTITY IN COLUMN 20 HAS BEEN [ ] INSPECTED [ ] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED | 27. SHIP NO. [ ] PARTIAL [ ] FINAL | 28. D. O. VOUCHER NO. | 30. INITIALS |
|---|---|---|---|
| | 31. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR |
| DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | | 34. CHECK NUMBER |
| 36. I certify this account is correct and proper for payment. | | | 35. BILL OF LADING NO. |
| DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER | | | |
| 37. RECEIVED AT | 38. RECEIVED BY | 39. DATE RECEIVED | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |

DD Form 1155 (BPT), MAY 90 — Previous editions are obsolete — S/N 0102-LF-011-4

# EXHIBIT "C"

# ORDER FOR SUPPLIES OR SERVICES
*(Contractor must submit four copies of invoices.)*

| Form Approved OMB No. 0701-0187 Expires Aug 31, 1992 | PAGE 1 OF 3 |

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0187), Washington, DC 20503. Please DO NOT RETURN your form to either of these addresses. Send your completed form to the procurement official identified in Item 6.

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER | 4. REQUISITION/PURCH REQUEST NO. | 5. CERTIFIED FOR NATIONAL DEFENSE UNDER DMS REG 1 |
|---|---|---|---|---|
| N62766-99-D-0425 | 0002 | 29JUNE2000 | W/R 31036 | DO |

| 6. ISSUED BY | CODE C2766 | 7. ADMINISTERED BY (if other than 6) CODE | 8. DELIVERY FOB |
|---|---|---|---|
| Officer in Charge of Construction<br>NAVFACENGCOM Contracts, Marianas<br>PSC 455, Box 175<br>FPO AP 96540-2200 | | | ☐ DEST<br>☐ OTHER<br>*(See Schedule if other)* |

| 9. CONTRACTOR | CODE | FACILITY CODE | 10. DELIVER TO FOB POINT (Date) | 11. MARK IF BUSINESS IS |
|---|---|---|---|---|
| NAME AND ADDRESS | BioGenesis Pacific, Inc.<br>Corporate & Programs Control<br>1604 Ulualana Place<br>Kailua, HI 96734<br>(TEL: 637-9426 Richard Avilla) | | 03 AUGUST 2000<br>12. DISCOUNT TERMS<br><br>13. MAIL INVOICES TO<br>**SEE BLOCK 6** | ☐ SMALL<br>☐ SMALL DISADVANTA<br>☐ WOMEN-OWNED |

| 14. SHIP TO | CODE | 15. PAYMENT WILL MADE BY CODE | MARK ALL PACKAGES AND PAPERS WITH CONTRACT OR ORDER NUMBER |
|---|---|---|---|
| | | Defense Finance & Accounting Service<br>Operating Location Oakland, Code FPV<br>P. O. Box 23870<br>Oakland, CA 94623-3870 | |

| 16. TYPE OF ORDER | DELIVERY X | This delivery order is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract. |
|---|---|---|
| | PURCHASE | Reference your _____ furnish the following on terms specified herein.<br>ACCEPTANCE THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME. |

| BioGenesis | *Richard Avilla* | Operations Manager | 6-30-00 |
|---|---|---|---|
| NAME OF CONTRACTOR | SIGNATURE | TYPED NAME AND TITLE | DATE SIGNED |

☐ If this box is marked, supplier must sign Acceptance and return the following number of copies.

## ACCOUNTING AND APPROPRIATION DATA

| ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB-ALLOT | AUTH'N ACCTG ACTY | TRANS TYPE | PROPERTY ACCT ACTY | COUN-TRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804.70FA | 250 | 61755 | 0 | 045924 | 2D | COM118 | | 61755046M59Q | $26,445.10 |

| 18. ITEM | 19. SCHEDULE OF SUPPLIES/SERVICE | 20. QUANTITY ORDERED/ ACCEPTED | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 0001 | Roof Repairs to Bldg. 4433, Racquetball Court at Polaris Pt., COMNAVMAR, Guam | | | | |
| 0002AC | Repair Concrete Roof Deck Surface Per Section 03930 and 07920: Grout Depressed Areas | 790 | SF | $6.99 | $5,522.10 |
| 0005AC | Install Roof Insulation in Accordance with Section 08220: Tapered Insulation 1/16, 1/8, ¼ Per Ft. | 6,300 | BF | $1.89 | $11,907.00 |
| 0013AA | Install Roofing System Accessories: Treated Wood Cants, Nailers and Fasteners for Line Item 0006 Through 0012 Above | 400 | LF | $2.74 | $1,096.00 |
| 0015AA | Miscellaneous Items: Water blast Roof Surface in Accordance with Section 07572 | 2,200 | SF | $0.15 | $330.00 |
| 0017AC | Fluid Applied Roofing Membrane in Accordance with Section 07540: 60 Mils Thick Roof Membrane | 2,200 | SF | $3.45 | $7,590.00 |
| | Attached is Statement of Work dated 30 May 2000 | | | | |

| "If quantity accepted by the Government is same as quantity ordered, indicate X. If different, enter actual quantity accepted below quantity ordered and encircle | 24. UNITED STATES OF AMERICA | 25. TOTAL $26,445.10 |
|---|---|---|
| | BY: BRIAN M. GILLIGAN (671) 339-2365<br>Contracting Officer gilliganb@pwcguam.navy.mil | 26. DIFFERENCES |

| 26. QUANTITY IN COLUMN 20 HAS BEEN<br>☐ INSPECTED ☐ RECEIVED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED | 27. SHIP NO.<br>☐ PARTIAL<br>☐ FINAL | 28. D.O. VOUCHER NO. | 29. INITIALS |
|---|---|---|---|
| | 31. PAYMENT<br>☐ COMPLETE<br>☐ PARTIAL<br>☐ FINAL | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR |
| DATE SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | | 34. CHECK NUMBER |
| 36. I certify this account is correct and proper for payment. | | | 35. BILL OF LADING NO. |
| DATE SIGNATURE AND TITLE OF CERTIFYING OFFICER | | | |
| 37. RECEIVED AT | 38. RECEIVED BY | 39. DATE RECEIVED | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |

DD Form 1155 (EPT), MAY 90     Previous editions are obsolete     S/N 0102-LF-011-4700

# EXHIBIT "D"

Case 1:02-cv-00008    Document 165    Filed 07/30/2003    Page 14 of 15

# ORDER FOR SUPPLIES OR SERVICES
*(Contractor must submit four copies of invoice.)*

Form Approved OMB No. 0701-0187 Expires Aug 31, 1992

PAGE 1 OF 1

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0187), Washington, DC 20503. Please DO NOT RETURN your form to either of these addresses. Send your completed form to the procurement official identified in item 6.

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER | 4. REQUISITION/PURCH REQUEST NO. | 5. CERTIFIED FOR NATIONAL DEFENSE UNDER DMS REG 1 |
|---|---|---|---|---|
| N62766-99-D-0425 | 0007 | 21 AUG 2000 | W/R 31029 | DO |

**6. ISSUED BY** CODE C2766
Officer in Charge of Construction
NAVFACENGCOM Contracts, Marianas
PSC 455, Box 175
FPO AP 96540-2200

**7. ADMINISTERED BY (If other than 6)** CODE

**8. DELIVERY FOB**
[X] DEST
[ ] OTHER *(See Schedule if other)*

**9. CONTRACTOR** CODE   FACILITY CODE

NAME AND ADDRESS:
BioGenesis Pacific, Inc.
Corporate & Programs Control
1604 Ulualana Place
Kailua, HI 96734
(Tel: 632-7653 Richard Avilla)
Email: rhinogum@ite.net

**10. DELIVER TO FOB POINT (Date)** 20 SEP 2000

**11. MARK IF BUSINESS IS**
[ ] SMALL
[ ] SMALL DISADVANTA
[ ] WOMEN-OWNED

**12. DISCOUNT TERMS**

**13. MAIL INVOICES TO** SEE BLOCK 6

**14. SHIP TO** CODE

**15. PAYMENT WILL MADE BY** CODE
Defense Finance & Accounting Service
Operating Location Oakland, Code FPV
P. O. Box 23870
Oakland, CA 94623-3870

MARK ALL PACKAGES AND PAPERS WITH CONTRACT OR ORDER NUMBER

**16. TYPE OF ORDER**
[X] DELIVERY — This delivery order is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract.
[ ] PURCHASE — Reference your _____ ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

| BioGenesis Pacific, Inc. | *Richard Avilla* (signature) | Richard Avilla, Operations Manager | 5-25-00 |
|---|---|---|---|
| NAME OF CONTRACTOR | SIGNATURE | TYPED NAME AND TITLE | DATE SIGNED |

[ ] If this box is marked, supplier must sign Acceptance and return the following number of copies.

## ACCOUNTING AND APPROPRIATION DATA

| 17. ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB-ALLOT | AUTH'N ACCT'G ACT'Y | TRANS TYPE | PROPERTY ACCT ACT'Y | COUN-TRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804 70FA | 250 | 61755 | 0 | 045924 | 2D | COM129 | | 61755046M11Q | $5,280.00 |

| 18. ITEM | 19. SCHEDULE OF SUPPLIES/SERVICE | 20. QUANTITY ORDERED/ACCEPTED | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 0001 | Roof repair at Bldg. 631, DRMO southeast corner of office spaces | | | | |
| 0001AA | Demolish and dispose roofing system per Sections 02220, 13281, and 13282: Single or multi-ply membrane without insulation. | 500 | SF | $.51 | $255.00 |
| 0002AC | Repair concrete roof deck surface per Section 03930 and 07920: Grout depressed areas | 500 | SF | $6.99 | $3,495.00 |
| 0015AA | Miscellaneous items: Waterblast roof surface in accordance with Section 07572 | 500 | SF | $.15 | $75.00 |
| 0017AB | Fluid applied roofing membrane in accordance with Section 07540: 45 mils thick roof membrane | 500 | SF | $2.91 | $1,455.00 |

*If quantity accepted by the Government is same as quantity ordered, indicate X. If different, enter actual quantity accepted below quantity ordered and encircle.*

**24. UNITED STATES OF AMERICA**
BY: *John M. Mendiol* (signature)
JOHANNA G. MENDIOLA   TEL: (671) 339-8098
Contracting Officer   mendiolj@pwcguam.navy.mil

**25. TOTAL** $5,280.00
**29. DIFFERENCES**

| 26. QUANTITY IN COLUMN 20 HAS BEEN [ ] INSPECTED [ ] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED | 27. SHIP NO. [ ] PARTIAL [ ] FINAL | 28. D. O. VOUCHER NO. | 30. INITIALS |
|---|---|---|---|
| | 31. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR |
| DATE   SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | | 34. CHECK NUMBER |
| 35. I certify this account is correct and proper for payment. | | | 35. BILL OF LADING NO. |
| DATE   SIGNATURE AND TITLE OF CERTIFYING OFFICER | | | |
| 37. RECEIVED AT | 38. RECEIVED BY | 39. DATE RECEIVED | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |

DD Form 1155 (6PT), MAY 90   Previous editions are obsolete   S/N 0102-LF-011-4700

# EXHIBIT "E"