1  James Lawhn
   OLIVER LAU LAWHN OGAWA & NAKAMURA
2  707 Richard Street, Suite 600
   Honolulu, Hawaii 96813
3  Telephone No.: (808) 533-3999
   Facsimile No.: (808) 533-0144
4
   Stephen D. Tom
5  WHITE & TOM
   820 Mililani Street, Suite 711
6  Honolulu, Hawaii 96813-2972
   Telephone No.: 808 547 5151
7  Facsimile No.: 808 599 4517

8  Louie J. Yanza
   VERNIER & MAHER, LLP
9  115 Hesler Place, Ground Floor
   Governor Joseph Flores Building
10 Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
   AMERICAN HOME ASSURANCE COMPANY
13
                  UNITED STATES DISTRICT COURT OF GUAM
14
   UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
15 AND BENEFIT OF RHINO BUILDERS, INC., )
                                        )
16            Plaintiff,                )
          vs.                           )
                                        ) FRCP RULE 37(a)(2) CERTIFICATE OF
17                                      ) COMPLIANCE
   BIOGENESIS    PACIFIC,   INC.,   AIG )
18 TECHNICAL   SERVICES,    INC.    and )
   AMERICAN     HOME     ASSURANCE      )
19 COMPANY,                             )
                                        )
20            Defendants.               )
                                        )
21 BIOGENESIS PACIFIC, INC.,            )
                                        )
22            Counterclaimant,          )
          vs.                           )
23                                      )
   RHINO    BUILDERS,    INC.,  MICHAEL )
24 O'CONNELL, MICHAEL DANFORTH, AND )
   JOHN DOES 1-10,                      )
25                                      )
              Counter-Defendant.        )
   _____)

                                  1

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) ) |
| | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| | ) |
| Cross-Claim | ) |
| Defendant. | ) |
| | ) |

Pursuant to FRCP Rule 37(a)(2), I, LOUIE J. YANZA, hereby certify:

1.    I am an attorney licensed to practice law within Guam and before the U.S. District Court of Guam.

2.    I am the attorney for the moving parties in this matter.

3.    Prior to filing this Certificate, I have attempted to confer, in good faith, with the opposing counsel, Antonio L. Cortes, Esq., to resolve this matter without filing a Motion to Compel.

4.    On several occasions, Mr. Cortes asserted that he would disclose some requested information regarding the receipt and bank account records of his client, RHINO BUILDERS, INC.

5.    Attached hereto as Exhibit "A" is a true and correct copy of Antonio L. Cortes' September 22, 2003 letter to Messrs. Sinforoso Tolentino and Terry Thomason.

6.    Attached hereto as Exhibit "B" is a true and correct copy of my September 22, 2003 letter to Mr. Cortes.

2

1

7. Attached hereto as Exhibit "C" is a true and correct copy of my

2 September 15, 2003 letter to Mr. Cortes.

3 8. Attached hereto as Exhibit "D" is a true and correct copy of my

4 October 8, 2003 letter to Mr. Cortes.

5 9. Attached hereto as Exhibit "E" is a true and correct copy of my

6 October 20, 2003 letter to Mr. Cortes.

7 10. The October 20, 2003 letter sets out my position on the dispute

8 regarding the attorney work product privilege, and the relevant

9 points and authorities pursuant to the obligation imposed by Rule

10 37(a)(2) of the Federal Rules.

11 11. I advised Mr. Cortes to discuss this matter at his convenience.

12 12. Attached hereto as Exhibit "F" is a true and correct copy of Mr.

13 Cortes' October 23, 2003 letter responding to my October 20, 2003

14 letter.

15 13. Attached hereto as Exhibit "G" is a true and correct copy of my

16 October 24, 2003 letter to Mr. Cortes.

17 14. Mr. Cortes and I have telephonically discussed the pending

18 discovery dispute regarding the attorney work product and other

19 miscellaneous discovery.

20 15. Mr. Cortes and I have differing opinions on the attorney work

21 product waiver.

22

23

24

25

3

16.     I certify to the Court that these facts are true, under penalty of perjury, and if called as a witness to testify on this matter, I could and would completely testify to each of these facts.

Dated this 28th day of October, 2003.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY**


BY: _____
        LOUIE J. YANZA

4

# ANTONIO L. CORTÉS

Attorney at Law
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932-8973

Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933
acortes@acortes.guam.net
http://www.guam.net/home/acortes

September 22, 2003

**VIA FACSIMILE [472-5487]**                    **VIA FACSIMILE [808-523-0842]**

Sinforoso Tolentino, Esq.                      Terry Thomason, Esq.
David P. Ledger, Esq.                          Carlsmith Ball LLP
Carlsmith Ball LLP                             Pacific Tower, Suite 2200
P.O. Box BF                                    1001 Bishop Street
134 West Soledad Ave.                          Honolulu, Hawaii 96813
Hagåtña, Guam 96932

Re: USA for Use and Benefit of Rhino Builders, Inc. vs.
Biogenesis Pacific, Inc. et al., District Court of Guam Civil
Case No. 02-00008, Upcoming Depositions of Carlsmith Ball.

Dear Sirs:

I understand that Carlsmith has been subpoenaed for two depositions in the referenced matter. I write to define the scope of a waiver by your former client, Rhino Builders, Inc. ("Rhino"), of the privileged nature of a certain category of communications between you and Rhino that occurred in the course of your representation of Rhino. This letter will set forth certain subjects with respect to which Rhino is waiving the attorney-client privilege, and instructs you to include in your deposition testimony all communications within that waiver, without, of course, any regard to whether or not they support Rhino's allegations in the subject matter. Importantly, *except with respect to the specific waivers of the privilege set forth below in this letter, Rhino instructs you to hold confidential all other privileged communications between Rhino and Carlsmith.*

Exhibit
A

Sinforoso Tolentino, Esq.
David P. Ledger, Esq.
Terry Thomason, Esq.
September 22, 2003
Page 2


Rhino has alleged in its Second Amended Complaint that:

1.      It is informed and believes that, approximately two or three weeks
        before this action was filed by Carlsmith Ball LLP, an entity
        connected in some fashion with AIG Technical Services, Inc or
        American Home Assurance Company, and/or an attorney
        representing one or both of them, contacted Carlsmith and
        communicated to it that it should withdraw from its former
        representation of Rhino for conflict-of-interest reasons;

2.      It is informed and believes that the entity that contacted Carlsmith
        represented to Carlsmith that it was sufficiently connected to AIG
        Technical Services, Inc or American Home Assurance Company that
        Carlsmith should withdraw from its former representation of
        Plaintiff in this action;

3.      It is informed and believes that as a result of such concerns
        Carlsmith did refuse or decline to continue to represent Rhino in this
        matter.

        Accordingly, Rhino desires Carlsmith, at the forthcoming
depositions in the referenced matter, to give a full and candid account of all
information known to it that tends to prove, disprove, correct, or more fully
explicate any of the foregoing allegations, including but not limited to disclosure
of any communications with Rhino that would otherwise be privileged.

        As a matter of logic, the following matters are included within the
scope of the waiver heretofore described: (1) the identity of any Carlsmith clients
of concern to Carlsmith in the alleged disinclination of Carlsmith to continue to
represent Rhino; (2) any conflicts or relationships with entities other than Rhino
that prompted Carlsmith to insist that Rhino find other counsel to represent it in
this matter; and (3) the identity of any Carlsmith clients that Carlsmith indicated to
Rhino might be the source of any reason to discontinue its prior representation of
Rhino.

Sinforoso Tolentino, Esq.
David P. Ledger, Esq.
Terry Thomason, Esq.
September 22, 2003
Page 3


        *Except for the explicit waiver of the attorney-client privilege contained in this letter, Rhino does not waive the privileged nature of any of its communications with Carlsmith Ball LLP, and instructs you and the other attorneys, employees, or agents of Carlsmith not to reveal any privileged matter not included in the foregoing waiver.*

        *Any documents provided by Carlsmith Ball LLP pursuant to any subpoena duces tecum must be redacted to preserve the confidentiality of any privileged communications not within the explicit waiver as defined by this letter.*

                              Sincerely,

                              Antonio L. Cortés

cc:   Mr. Eugene O'Connell
       Arthur B. Clark, Esq.
       Louie J. Yanza, Esq.
       Fredrick J. Kerley, Esq.
       Dana Gutierrez, Esq.



# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

---

September 22, 2003

<u>**VIA FACSIMILE – 477 1933**</u>

Antonio L. Cortes, Esq.
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

RE:    **USA FOR THE USE AND BENEFIT OF RHINO BUILDERS, INC. v. BIOGENESIS
       PACIFIC, INC., ET AL.; DISTRICT COURT OF GUAM, CIVIL ACTION NO. 02-00008**

Dear Mr. Cortes:

In review of your September 22, 2003 letter to Messrs. Sinforoso M. Tolentino, David P. Ledger and Terry Thomason, I wish to discuss with you the extent of your client's waiver of its privileged communications with Carlsmith Ball, LLP ("Carlsmith Ball"). In your letter you stated:

> Accordingly, Rhino desires Carlsmith, at the forthcoming depositions in the referenced matter, to give a full and candid account of all information known to it that tends to prove, disprove, correct, or more fully explicate any of the foregoing allegations, including but not limited to disclosure of any communications with Rhino that would otherwise be privileged.

> As a matter of logic, the following matters are included within the scope of the waiver heretofore described: (1) the identity of any Carlsmith clients of concern to Carlsmith in the alleged disinclination of Carlsmith to continue to represent Rhino; (2) any conflicts or relationships with entities other than Rhino that prompted Carlsmith to insist that Rhino find other counsel to represent it in this matter; and (3) the identity of any Carlsmith clients that Carlsmith indicated to Rhino might be the source of any reason to discontinue its prior representation of Rhino.

**Exhibit**
**B**

Thereafter, you specifically instruct Carlsmith Ball not to disclose any other communications or documents during the depositions of Carlsmith Ball on September 23 and 24, 2003.

Contrary to your letter, Rhino Builders has made further waivers of its privileged communications with Carlsmith Ball. As you know, Rhino Builders made the following allegations in the Second Amended Complaint:

> 25. In or about October 2001, Plaintiff contacted Defendant American Home Assurance Company (hereinafter "AHAC") to initiate the claims process and AHAC referred Plaintiff to Defendant AIG Technical Services, Inc. (hereinafter "AIG") to handle Plaintiff's claim against AHAC.
>
> 26. On or about October 22, 2001, Plaintiff sent AHAC the original of the letter and enclosure attached to Plaintiff's First Amended Complaint as Exhibit "C" and incorporated herein by reference as if set forth fully.
>
> 27. On or about October 30, 2001, AIG responded to the letter to AHAC by providing Plaintiff with its claim form. A true and correct copy of AIG's response is attached to Plaintiff's First Amended Complaint as Exhibit "D" and incorporated herein by reference as if set forth fully.
>
> 28. As required by AHAC, on or about January 9, 2002, Plaintiff then sent AIG the Proof of Claim form attached to Plaintiff's First Amended Complaint as Exhibit "E" and incorporated herein by reference as if set forth fully.
>
> 29. On or about February 21, 2002, AIG denied Plaintiff's claim as untimely. A true and correct copy of AIG's denial of Plaintiff's claim on the bond is attached [sic] to Plaintiff's First Amended Complaint as Exhibit "F" and incorporated herein by reference as if set forth fully.
>
> * * *
>
> 37. AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC, by denying the claim, by moving to dismiss this action because it was not brought against AHAC, . . .

In addition to waiving privileged communications on Carlsmith Ball's withdrawal, your client has waived communications regarding Carlsmith Ball's filing of the Complaint against AIG Technical Services, Inc. ("AIGTS"). The Second Amended Complaint alleges AIGTS induced Carlsmith Ball to name AIGTS as a defendant, rather than American Home Assurance Company ("American Home"). We are entitled to question Carlsmith Ball on the facts and circumstances surrounding Carlsmith Ball's initiation of the claims process against American Home. Therefore, we will question Carlsmith Ball on: (1) the state of mind of Carlsmith Ball when it initiated the claims process against American Home in October 2001 to the time Carlsmith Ball filed the

Complaint against AIGTS; and (2) Carlsmith Ball's withdrawal because an alleged American International Group entity communicated to Carlsmith Ball that it should terminate its representation of Rhino Builders. Naturally we are also seeking documents supporting your client's claims.

Lastly, we intend to also question Carlsmith Ball why, after the Complaint was filed, the Complaint was not served on AIGTS. Neither was the Defendant disclosed of the filing of the Complaint.

Please reconsider your letter and advise Carlsmith Ball that we are also entitled to question Carlsmith Ball on the facts and circumstances surrounding Rhino Builders' claims. I am confident the District Court will compel disclosure since the allegations in the Second Amended Complaint specifically places Carlsmith Ball's state of mind at issue.

Should you have any questions or comments, please feel free to contact me.

Very truly yours,

**VERNIER & MAHER, LLP**

Louie J. Yanza

cc:     Sinforoso M. Tolentino, Esq.
        David P. Ledger, Esq.
        Terry Thomason, Esq.
        Ms. Janalynn M. Cruz
        Ms. Catherine M. Bejerana
        James Lawhn, Esq.
        Stephen D. Tom, Esq.

Confirmation Report - Memory Send

Time      : Sep-22-03  16:37
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

| | | |
|---|---|---|
| Job number | : | 823 |
| Date | : | Sep-22 16:34 |
| To | : | 4771933 |
| Document pages | : | 04 |
| Start time | : | Sep-22 16:34 |
| End time | : | Sep-22 16:37 |
| Pages sent | : | 04 |
| Status | : | OK |
| Job number | : 823 | *** SEND SUCCESSFUL *** |

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

**TO:  Mr. Antonio L. Cortes – 477 1933**

**FROM: Louie J. Yanza          DATE: September 22, 2003**

**RE:  United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008**

**V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET: 4**

**IMPORTANT NOTE:** This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

**DOCUMENTS/COMMENTS:**

1.     Letter from Louie J. Yanza dated September 22, 2003.

**IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.**

Confirmation Report — Memory Send

Time : Sep-22-03 16:39
Tel line : +6714725487
Name : Vernier & Maher, LLP

Job number : 826

Date : Sep-22 16:36

To : 4774375

Document pages : 04

Start time : Sep-22 16:38

End time : Sep-22 16:39

Pages sent : 04

Status : OK

Job number : 826          \*\*\* SEND SUCCESSFUL \*\*\*

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

| TO: | Messrs. Sinforoso M. Tolentino and David P. Ledger — 477 4375 |
|---|---|

| FROM: Louie J. Yanza | DATE: September 22, 2003 |
|---|---|

RE: United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

| V&M FILE NO.: A-0025.1 | NO. OF PAGES INCLUDING COVER SHEET: 4 |
|---|---|

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.    Letter to Mr. Antonio L. Cortes dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

# Confirmation Report - Memory Send

Job number      :  829

Date            :  Sep-22 16:43

To              :  18085230842

Document pages  :  04

Start time      :  Sep-22 16:43

End time        :  Sep-22 16:45

Pages sent      :  04

Status          :  OK

Job number   : 829          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

D. Paul Vernier, Jr.
John B. Maher

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:  Mr. Terry Thomason — (808) 523 0842

FROM: Louie J. Yanza          DATE: September 22, 2003

RE:  United States of America for the Use and Benefit of Rhino Builders, Inc. v.
Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home
Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and
Michael Danforth; American Home Assurance Company v. Biogenesis
Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1      NO. OF PAGES INCLUDING COVER SHEET:  4

IMPORTANT NOTE:  This fax is CONFIDENTIAL and may be covered by legal
professional privilege.  It must not be read, copied, disclosed or used by any person
other than the above addressee.  Unauthorized use, disclosure or copying is strictly
prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.      Letter from Louie J. Yanza dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER
AND ASK FOR Valerie.

Confirmation Report — Memory Sand

Time      : Sep-22-03  16:38
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

| | | |
|---|---|---|
| Job number | : | 825 |
| Date | : | Sep-22 16:36 |
| To | : | 6469403 |
| Document pages | : | 04 |
| Start time | : | Sep-22 16:37 |
| End time | : | Sep-22 16:38 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number  : 825          **\*\*\* SEND SUCCESSFUL \*\*\***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

116 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

# FACSIMILE TRANSMITTAL COVER SHEET

TO:  Ms. Janalynn M. Cruz – 646 9403

FROM: Louie J. Yanza          DATE: September 22, 2003

RE:  United States of America for the Use and Benefit of Rhino Builders, Inc. v.
Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home
Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and
Michael Danforth; American Home Assurance Company v. Biogenesis Pacific,
Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET: 4

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal
professional privilege. It must not be read, copied, disclosed or used by any person
other than the above addressee. Unauthorized use, disclosure, or copying is strictly
prohibited and may be unlawful.

DOCUMENTS:

1.   Letter to Mr. Antonio L. Cortes dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER
AND ASK FOR **Valeris.**

Confirmation Report — Memory Send

Time     : Sep-22-03  16:41
Tel line : +6714725487
Name     : Vernier & Maher,LLP

Job number        :  827

Date              :  Sep-22 16:37

To                :  4774366

Document pages    :  04

Start time        :  Sep-22 16:40

End time          :  Sep-22 16:41

Pages sent        :  04

Status            :  OK

Job number   : 827          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:   Ms. Catherine M. Bejerana — 477 4366

FROM: Louie J. Yanza          DATE: September 22, 2003

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v.
      Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home
      Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and
      Michael Danforth; American Home Assurance Company v. Biogenesis
      Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET: 4

IMPORTANT NOTE:  This fax is CONFIDENTIAL and may be covered by legal
professional privilege. It must not be read, copied, disclosed or used by any person
other than the above addressee. Unauthorized use, disclosure or copying is strictly
prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.     Letter to Mr. Antonio L. Cortes dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER
AND ASK FOR Valerie.

# Confirmation Report – Memory Send

Time       : Sep-22-03  16:43
Tel line   : +6714725487
Name       : Vernier & Maher,LLP

| | | |
|---|---|---|
| Job number | : | 828 |
| Date | : | Sep-22 16:37 |
| To | : | 4777009 |
| Document pages | : | 04 |
| Start time | : | Sep-22 16:41 |
| End time | : | Sep-22 16:43 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number    : 828          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam  96910-5004
Telephone:  (671) 477-7059
Facsimile:  (671) 472-5487
Email:  vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:    Mr. Frederick J. Kerley – 477 7009

FROM: Louie J. Yanza       DATE:  September 22, 2003

RE:    USA for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific,
Inc., et al.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET: 4

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal
professional privilege. It must not be read, copied, disclosed or used by any person
other than the above addressee. Unauthorized use, disclosure or copying is strictly
prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.    Letter to Mr. Antonio L. Cortes dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER
AND ASK FOR Valerie.

Confirmation Report — Memory Send

Time      : Sep-22-03  16:34
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

Job number        :   822

Date              :   Sep-22  16:32

To                :   18085330144

Document pages    :   07

Start time        :   Sep-22  16:32

End time          :   Sep-22  16:34

Pages sent        :   07

Status            :   OK

Job number     :  822          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

D. Paul Vernier, Jr.
John B. Maher

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

---

# FACSIMILE TRANSMITTAL COVER SHEET

| TO:   Mr. James Lawhn — (808) 533-0144  /  Mr. Stephen D. Tom — (808) 599-4517 |

| FROM: Louie J. Yanza          DATE: September 22, 2003 |

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

| V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET: 7 |

IMPORTANT NOTE:  This fax is CONFIDENTIAL and may be covered by legal professional privilege.  It must not be read, copied, disclosed or used by any person other than the above addressee.  Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.   Letter from Mr. Antonio L. Cortes dated September 22, 2003; and

2.   Letter from Louie J. Yanza dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

Confirmation Report — Memory Send

Time : Sep-22-03 16:57
Tel line : +6714725487
Name : Vernier & Maher,LLP

| | | |
|---|---|---|
| Job number | : | 830 |
| Date | : | Sep-22 16:54 |
| To | : | 18085994517 |
| Document pages | : | 07 |
| Start time | : | Sep-22 16:54 |
| End time | : | Sep-22 16:57 |
| Pages sent | : | 07 |
| Status | : | OK |

Job number : 830　　　　　\*\*\* SEND SUCCESSFUL \*\*\*

# VERNIER & MAHER, LLP

116 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

D. Paul Vernier. Jr.
John B. Maher

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

---

## FACSIMILE TRANSMITTAL COVER SHEET

| TO: | Mr. James Lawhn – (808) 533-0144  /  Mr. Stephen D. Tom – (808) 599-4517 |
|---|---|

| FROM: Louie J. Yanza | DATE: September 22, 2003 |
|---|---|

RE: United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

| V&M FILE NO.: A-0025.1 | NO. OF PAGES INCLUDING COVER SHEET: 7 |
|---|---|

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1. Letter from Mr. Antonio L. Cortes dated September 22, 2003; and

2. Letter from Louie J. Yanza dated September 22, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

September 15, 2003

**VIA FACSIMILE – 477 1933**

Antonio L. Cortes, Esq.
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**RE:** **USA/RHINO BUILDERS, INC. v. BIOGENESIS PACIFIC, INC., ET AL.**
**DISTRICT COURT OF GUAM, CIVIL ACTION NO. 02-00008**

Dear Mr. Cortes:

I have reviewed your client's responses to Defendants American Home Assurance Company ("American Home") and AIG Technical Services, Inc.'s ("AIGTS") Second Set of Interrogatories and Second Request for Production of Documents, wherein you refuse to provide the requested information on the grounds that said information is privileged. Pursuant to 37(a)(2), we request that you reconsider your objections and provide the requested information by Thursday, September 18, 2003. Your client has waived the attorney-client privilege by placing the attorney-client privilege at issue. Your client has alleged that it was misled to believe that AIGTS was the surety rather than American Home therefore, AIGTS was named as a defendant; and, somehow an American International Group affiliated company requested Carlsmith Ball, LLP to withdraw from representing Rhino Builders, Inc. The allegations constitute your bad faith claim against my clients. Please reconsider your position so that we may avoid the Court's involvement in this discovery matter.

Relatedly, the responses were not signed by your client pursuant to FRCP Rule 33(b)(2). Please submit signed responses.

**Exhibit**

**C**

Thank you for your kind attention to this matter.  Should you have any questions or comments, please feel free to contact me.


Best regards,

**VERNIER & MAHER, LLP**


Louie J. Yanza

cc:     James Lawhn, Esq.
        Stephen D. Tom, Esq.

\\Valerie\c\MacieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Correspondence\Cortes 091503.doc

Confirmation Report - Memory Send

Time      : Sep-15-03  16:55
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

Job number        :   695

Date              :   Sep-15 16:52

To                :   4771933

Document pages    :   03

Start time        :   Sep-15 16:53

End time          :   Sep-15 16:55

Pages sent        :   03

Status            :   OK

Job number   : 695              *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:   Mr. Antonio L. Cortes – 477 1933

FROM: Louie J. Yanza          DATE: September 15, 2003

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET:   3

IMPORTANT NOTE:   This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

   Letter from Louie J. Yanza dated September 15, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

Confirmation Report – Memory Send

Time      : Sep-15-03  16:56
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

Job number          :   696

Date                :   Sep-15 16:55

To                  :   18085330144

Document pages      :   03

Start time          :   Sep-15 16:55

End time            :   Sep-15 16:56

Pages sent          :   03

Status              :   OK

Job number    : 696        *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

| TO:   Mr. James Lawtin – (808) 533-0144   /   Mr. Stephen D. Tom – (808) 599-4517 |

| FROM: Louie J. Yanza          DATE: September 15, 2003 |

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

| V&M FILE NO.: A-0025.1       NO. OF PAGES INCLUDING COVER SHEET:   3 |

IMPORTANT NOTE:   This fax is CONFIDENTIAL and may be covered by legal professional privilege.  It must not be read, copied, disclosed or used by any person other than the above addressee.  Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

Letter to Mr. Antonio L. Cortes dated September 15, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

Confirmation Report – Memory Send

Time      : Sep-16-03  08:21
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

| | | |
|---|---|---|
| Job number | : | 701 |
| Date | : | Sep-16 08:17 |
| To | : | 18085994517 |
| Document pages | : | 03 |
| Start time | : | Sep-16 08:19 |
| End time | : | Sep-16 08:21 |
| Pages sent | : | 03 |
| Status | : | OK |

Job number   : 701          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

D. Paul Vernier, Jr.
John B. Maher

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

**TO:**  Mr. James Lawhn – (808) 533-0144  /  Mr. Stephen D. Tom – (808) 599-4517

**FROM:** Louie J. Yanza          **DATE:** September 15, 2003

**RE:**  United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

**V&M FILE NO.:** A-0025.1          **NO. OF PAGES INCLUDING COVER SHEET:** 3

IMPORTANT NOTE: This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

**DOCUMENTS/COMMENTS:**

Letter to Mr. Antonio L. Cortes dated September 15, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR **Valerie**.

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

October 8, 2003

**VIA FACSIMILE – 477 1933**

Antonio L. Cortes, Esq.
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

RE:  **USA/RHINO BUILDERS, INC. v. BIOGENESIS PACIFIC, INC., ET AL.**
     **DISTRICT COURT OF GUAM, CIVIL ACTION NO. 02-00008**

Dear Mr. Cortes:

On October 4, 2003, Stephen D. Tom sent you a memorandum, via facsimile, inquiring when you will produce certain notes taken by Michael O'Connell from his conversation with Gerald Lam, as previously requested by Mr. Tom in his July 1, 2003 letter.

I would also like to direct your attention to my client's Second Request for Production of Documents to Plaintiff Rhino Builders, Inc., specifically Request to Produce No. 7, wherein we requested:  "Please identify and produce any and all notes, memoranda, diaries, and documents memorializing all conversations and discussions you had with Messrs. Gerald Lam and Alfred Garthe, III." Said requests were propounded upon your office on July 29, 2003, and on September 15, 2003 you responded: "Subject to its general objections, Plaintiff will produce documents of this sort."

Please provide us with a timeline when you will produce said documents.

Very truly yours,

**VERNIER & MAHER, LLP**

Louie J. Yanza

cc:   Arthur B. Clark, Esq.
      James Lawhn, Esq.
      Stephen D. Tom, Esq.

Exhibit D

Confirmation Report — Memory Send

Time        : Oct-08-03   10:41
Tel line    : +6714725487
Name        : Vernier & Maher,LLP

Job number          :   138

Date                :   Oct-08 10:36

To                  :   4771933

Document pages      :   02

Start time          :   Oct-08 10:39

End time            :   Oct-08 10:41

Pages sent          :   02

Status              :   OK

Job number    : 138          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

# FACSIMILE TRANSMITTAL COVER SHEET

TO:   Mr. Antonio L. Cortes – 477 1933

FROM: Louie J. Yanza          DATE: October 8, 2003

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v.
Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home
Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and
Michael Danforth; American Home Assurance Company v. Biogenesis Pacific,
Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET:  2

IMPORTANT NOTE:   This fax is CONFIDENTIAL and may be covered by legal
professional privilege. It must not be read, copied, disclosed or used by any person other
than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited
and may be unlawful.

DOCUMENTS/COMMENTS:

1.      Letter from Louie J. Yanza dated October 8, 2.03.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER
AND ASK FOR Valerie.

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

October 20, 2003

**VIA FACSIMILE – 477 1933**

Antonio L. Cortes, Esq.
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

RE:   **USA/RHINO BUILDERS, INC. v. BIOGENESIS PACIFIC, INC., ET AL.
DISTRICT COURT OF GUAM, CIVIL ACTION NO. 02-00008**

Dear Mr. Cortes:

Pursuant to the Federal Rules of Civil Procedure, Rule 37(a)(2), I would like to confer with you, the objections made by you during the depositions of the Carlsmith Ball, LLP ("Carlsmith") attorneys.

In particular, Mr. James Lawhn and I attempted to inquire on what facts led the Carlsmith attorneys to believe that AIG Technical Services, Inc. ("AIGTS") was the surety, and the basis of Carlsmith's opinion that AIGTS was the surety, instead of American Home Assurance Company ("American Home"). You objected to the questions based on the attorney-client and the work product privileges of the Plaintiff's former attorneys, Carlsmith.

I would like to point out that you initially raised this issue after Defendant AIGTS filed a Motion to Dismiss based on Carlsmith naming AIGTS as the surety, rather than American Home. You amended the complaint and included paragraph 37 as an estoppel defense so that the parties are estopped from asserting that AIGTS is the wrong party. Although this forms a portion of your bad faith claim, it is still an estoppel defense. Since the Plaintiff claims Carlsmith was confused or misled, then obviously, the Defendants are entitled to question the Carlsmith attorneys on: (i) why they believed AIGTS was the surety; (ii) what facts led them to believe AIGTS was the surety; (iii) what discussions within Carlsmith led the attorneys to believe that AIGTS was the surety; and (iv) what actions and research they took to confirm that AIGTS was the surety. Although the answers we seek may otherwise be protected by the work product privilege, since you have placed Carlsmith's research and conclusions regarding the correct

Exhibit
**E**

corporate identity of the surety at issue by your Second Amended Complaint, any privilege has been waived, and we are entitled to question the Carlsmith attorneys on these issues.

I invite you to review the following case authority, discussing both the attorney-client privilege and work product privilege, and the waiver of such: *WLIG-TV, Inc. v. Cable Vision Systems Corporation*, 879 F.Supp. 229 (E.D. N.Y. 1994); *Walsh v. Seaboard Surety Company*, 184 F.R.D. 494 (D. Conn. 1999); and *Merritt v. Superior Court*, 9 Cal.App.3d 721 (Cal. Ct. App. 1970).

After you have had the opportunity to review the cases, I would like to discuss with you, the continued depositions of the Carlsmith attorneys regarding the above. I am optimistic we can resolve this matter without judicial involvement.

Thank you for your kind attention to this matter. Should you have any questions or comments, please feel free to contact me. May I hear from you about this matter by October 24, 2003?

Very truly yours,

**VERNIER & MAHER, LLP**

Louie J. Yanza

cc:     James Lawhn, Esq.
        Stephen D. Tom, Esq.

C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Correspondence\Cortes 102003.doc

Confirmation Report — Memory Send

Time      : Oct-20-03  14:12
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

Job number          :  314

Date                :  Oct-20 14:10

To                  :  4771933

Document pages      :  03

Start time          :  Oct-20 14:10

End time            :  Oct-20 14:12

Pages sent          :  03

Status              :  OK

Job number   : 314          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terance E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:   Mr. Antonio L. Cortes — 477 1933

FROM: Louie J. Yanza          DATE: October 20, 2003

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET:  3

IMPORTANT NOTE:   This fax is CONFIDENTIAL and may be covered by legal professional privilege:  It must not be read, copied, disclosed or used by any person other than the above addressee.  Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.    Letter from Louie J. Yanza dated October 20, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.

# ANTONIO L. CORTÉS

Attorney at Law
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932-8973

Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933
acortes@kuentos.guam.net
http://www.guam.net/home/acortes

October 23, 2003

VIA FACSIMILE [472-5487]

Louie J. Yanza, Esq.
McKeown Vernier Price & Maher
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910

Re:    USA for Use and Benefit of Rhino Builders, Inc. vs.
       Biogenesis Pacific, Inc. et al., District Court of Guam Civil
       Case No. 02-00008, your letter dated October 20, 2003.

Dear Mr. Yanza:

I have received your letter regarding the privilege issue. Let us meet soon to discuss whether a motion is really necessary.

Prior to that, however, I would appreciate your reviewing the enclosed decision, Rhone-Poulenc Rorer, Inc. v. Home Indemnity Company, 32 F. 3d 851 (1994) which is one of the leading cases dealing with the issues before us now. I transmit it to you in the hope that it will dissuade your from a waasteful motion to compel.

The briefing by the parties and the analysis by the Rhone-Poulenc Court was obviously quite thorough, and the research for that motion was

Exhibit

**F**

Louie J. Yanza, Esq.
October 23, 2003
Page 2


obviously in depth.  The issues before the Court appear to be similar to those you are raising now.  I believe that by the standards the <u>Rhone-Poulenc</u> Court determined must govern such issues, that AIG cannot compel Rhino to disclose confidential communications between Carlsmith and Rhino concerning Carlsmith's dealings with AIGTS and AHAC simply because Rhino has alleged that AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC.  Please see pages 13-14 of the enclosed on that point.

Further, I note again that Rhino's allegation that AIGTS acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC, is based upon the non-privileged communications between Carlsmith and those entities, as is clearly apparent from the complaint, and the attachment thereto of the complained-of non-privileged communications.  It is simply not the case that Rhino has waived the privileged nature of communications between it and its attorneys regarding those non-privileged communications by relying on those non-privileged communications in that fashion.  No privileged communication having been revealed in the complaint, there cannot have been an implied waiver by a disclosure of a privileged communication.  *id.*  To say that the word "inducing" invokes that attorneys' state of mind and therefore waives any privilege or work product is to say that every complaint that alleges any sort of "inducement" of the plaintiff alleging it waives the privilege with respect to that allegation.  Consequently, the <u>Rhone-Poulenc</u> Court necessarily rejected that sort of thinking.  *id.*

Finally, any waiver of the contents of communications protected by the attorney-client *privilege* (and I see none with respect to the objected-to inquiries)[1] would not require Rhino to reveal attorney *work product* relevant to those communications.  Please see pages 15-16 of the enclosed on that point.

---

[1]    On this point, I am not sure I agree with you that the objected-to questions are correctly characterized as inquiring "what facts led the Carlsmith attorneys to believe that [AIGTS] was the surety."  My impression was that the objected-to questions sought attorney thought processes in response to the communications to it by AIGTS and AHAC.  Those non-privileged communications are the "facts" that give rise to Rhino's allegations.  Its attorneys' thought processes are a different matter, unless I am mistaken.

Louie J. Yanza, Esq.
October 23, 2003
Page 3


     I note that the New England District Court cases you cite are not at odds with the Rhone-Poulenc analysis. The WLIG-TV case, in fact, actually quotes Rhone-Poulenc for the very proposition that those cases extending the "finding of a waiver of the privilege to cases in which the client's state of mind may be in issue" are of "dubious validity." Thus, I do not see how those cases can support a waiver argument based on the position that because Rhino alleged the communications by your client "induced" Rhino to sue AIGTS Rhino waived the privilege with respect to all communications regarding that issue, and all work product regarding that issue.

     Please feel free to call me to discuss these matters further, and, if AIGTS and AHAC still believe they wish to pursue a motion to compel Rhino to allow its former attorneys to reveal their thoughts, state of mind, work product, and communications with Rhino regarding their decision to name AIGTS rather than AHAC, let us get together in the very near future to meet and confer further on the issues involved.

Sincerely,

Antonio L. Cortés

cc:   James Lawhn, Esq.
      Gary Grimmer, Esq.
      Steven M. Egesdal, Esq.

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

▷

United States Court of Appeals,
Third Circuit.

RHONE-POULENC RORER INC. and Armour
Pharmaceutical Company, Petitioners,

v.

The HOME INDEMNITY COMPANY, a New
Hampshire corporation,

v.

AETNA CASUALTY & SURETY INSURANCE;
AIU Insurance Company; American Centennial
Insurance Company; Birmingham Fire Insurance
Company; First State Insurance
Company; Granite State Insurance Company;
Hartford Insurance Company; INSCO,
Limited; Insurance Company of Pennsylvania;
Lexington Insurance Company;
Manhattan Fire & Marine Insurance Company;
Motor Vehicle Casualty Company;
Old Republic Insurance Company; Pantry Pride
Inc.; Promethean Insurance,
Ltd.; Prudential Reinsurance Company; Puritan
Insurance Company; Revlon
Inc.; Twin City Insurance Company; London
Market Co.; John Barrington Hume,
as Representative of Underwriters at Lloyds;
Insurance Company of North
America; National Union Fire Insurance Company
of Pittsburgh, Pennsylvania;
All City Insurance Company; Employer's Mutual
Casualty; Gibralter Casualty
Company; Landmark Insurance Company; New
England Insurance Company; Royal
Insurance Company; Republic Insurance Company;
International Insurance
Company; Pacific Insurance Company, Ltd.;
Atlanta International Insurance
Company; Century Indemnity Company; Liberty
Mutual Insurance Company;
Transport Insurance Company; Midland Insurance
Company; Integrity Insurance
Company; Union Indemnity Insurance; Transit
Casualty Company; City Insurance
Company; Drake Insurance Company; Excess
Insurance Company; Home Insurance
Company; Pacific Employer's Insurance Company;
Royal Indemnity Company;
Zurich International Insurance Company;
Henrijean; Illinois National
Insurance Company; North Star Reinsurance
Company; and National Casualty

Insurance Company, Respondents,
and
The Honorable James McGirr Kelly, United States
District Judge for the Eastern
District of Pennsylvania, Nominal Respondent,
Morgan, Lewis & Bockius; Reed Smith Shaw &
McClay; Shanley & Fisher, P.C.;
Hughes Hubbard & Reed; Montgomery
McCracken Walker & Rhoads; Skadden Arps
Slate Meagher & Flom; and Coopers & Lybrand,
Intervenors in support of
Petitioners.
RHONE-POULENC RORER INC. and Armour
Pharmaceutical Company, Appellants,
v.
The HOME INDEMNITY COMPANY, a New
Hampshire corporation,
v.
AETNA CASUALTY & SURETY INSURANCE;
AIU Insurance Company; American Centennial
Insurance Company; Birmingham Fire Insurance
Company; Transportation
Insurance Company; First State Insurance
Company; Granite State Insurance
Company; Hartford Insurance Company; Illinois
National Insurance
Co.; INSCO, Ltd.; Insurance Company of the State
of Pennsylvania; Lexington
Insurance Company; Manhattan Fire & Marine
Insurance Company; Motor Vehicle
Casualty Company; National Union Fire Insurance
Company of Pittsburgh, PA;
New England Reinsurance Company; New
Hampshire Insurance Company; Old
Republic Insurance Company; Pacific Employers
Insurance Company; Pantry
Pride, Inc.; Promethean Insurance, Ltd.; Prudential
Reinsurance Company;
Puritan Insurance Company; Revlon, Inc.; Twin
City Insurance Company; The
London Market Companies; and John Barrington
Hume, a Representative of
Underwriters at Lloyds of London;
and
REVLON, INC.;
v.
CITY INSURANCE COMPANY; Drake Insurance
Company; Excess Insurance Company;
Henrijean; The Home Insurance Company; Pacific
Employer's Insurance Company;
Royal Indemnity Company; Zurich International
Insurance Company; Insurance

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 2

Company of North America; National Union Fire
Insurance of Pittsburgh, PA;
All City Insurance Company; Employers Mutual
Casualty Company; Gibralter
Casualty Company; Landmark Insurance Company;
New England Insurance Company;
Royal Insurance Company; Republic Insurance
Company; International Insurance
Company; Pacific Insurance Company, Ltd.;
Atlanta International Insurance
Co.; Century Indemnity Company; Liberty Mutual
Insurance Company;
Transportation Insurance Company; Midland
Insurance Company; Pacific
Insurance Company, Ltd.; Atlanta Insurance
Company Ltd.; Century Indemnity
Company; Liberty Mutual Insurance; Midland
Insurance Company; Integrity
Insurance Company; Union Indemnity Insurance
Company; Transit Casualty
Company; Royal Insurance Company; Royal
Indemnity Company; New England
Insurance Company; Insurance Company of North
America; North Star Reinsurance
Company; and National Casualty Insurance
Company, Appellees.
Morgan, Lewis & Bockius; Reed Smith Shaw &
McClay; Shanley & Fisher, P.C.;
Hughes Hubbard & Reed; Montgomery
McCracken Walker & Rhoads; Skadden Arps
Slate Meagher & Flom; and Coopers & Lybrand,
Intervenors-Appellants.

Nos. 93-1962, 93-1975.

Argued March 10, 1994.
Decided Aug. 17, 1994.

Insured blood product manufacturer filed action
seeking declaratory judgment that insurance policy
provided coverage for claims against insured
involving transmission of Human
Immunodeficiency Virus (HIV) from blood
product. The United States District Court for the
Eastern District of Pennsylvania, James McGirr
Kelly, J., ordered insured to disclose privileged
documents. Insured appealed and filed petition for
writ of mandamus to challenge order. The Court of
Appeals, McKelvie, District Judge, sitting by
designation, held that: (1) discovery order was not
appealable but did provide basis for exercise of

mandamus jurisdiction, and (2) insured did not
waive attorney- client privilege by bringing
coverage lawsuit against insurer, even though action
put insured's state of mind at issue and
attorney-client communications could be relevant to
that state of mind.

Appeal dismissed, writ of mandamus granted, and
case remanded.

West Headnotes

[1] Federal Courts €==574
170Bk574 Most Cited Cases

District court order requiring production of
allegedly privileged material was not appealable
under collateral order doctrine, in light of
opportunity for effective review after final
judgment; Court of Appeals could reverse any
adverse judgment if disclosure were to be found
erroneous, and could require new trial without use
of any improperly disclosed documents and related
evidence. 28 U.S.C.A. § 1291.

[2] Mandamus €==3(1)
250k3(1) Most Cited Cases

[2] Mandamus €==10
250k10 Most Cited Cases

Prerequisites for issuance of writ of mandamus are
that petitioners have no other adequate means to
obtain relief sought and that they have shown that
their right to writ is clear and indisputable.

[3] Mandamus €==4(4)
250k4(4) Most Cited Cases

Mandamus may be used as means of immediate
appellate review of orders compelling disclosure of
documents and information claimed to be protected
from disclosure by privilege or other interests in
confidentiality.

[4] Mandamus €==3(1)
250k3(1) Most Cited Cases

[4] Mandamus €==32
250k32 Most Cited Cases

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Court of Appeals would exercise mandamus jurisdiction to resolve issues of disclosure of materials allegedly protected under attorney-client and accountant-client privileges or protected as attorney work product, in light of lack of other adequate means to attain relief from district court's order compelling disclosure, and in light of clear errors of law by district court showing petitioners' clear and indisputable right to writ.

[5] Witnesses ☞199(1)
410k199(1) Most Cited Cases

[5] Witnesses ☞201(1)
410k201(1) Most Cited Cases

[5] Witnesses ☞219(3)
410k219(3) Most Cited Cases

Traditional elements of attorney-client privilege are that asserted holder of privilege is or sought to become client, that person to whom communication was made is member of bar or member's subordinate and is acting as lawyer in connection with communication, that client communicated fact to attorney outside presence of strangers for purpose of securing primarily either opinion of law or legal services, and not for purpose of committing crime or tort, and that privilege has been claimed and not waived by client.

[6] Witnesses ☞204(2)
410k204(2) Most Cited Cases

Documents that contain confidential communications may be protected from disclosure in discovery by attorney-client privilege, but that protection may be inapplicable to facts incorporated in communication.

[7] Witnesses ☞198(1)
410k198(1) Most Cited Cases

Privilege forbidding discovery and admission of evidence relating to communications between attorney and client is intended to ensure that client remains free from apprehension that consultations with legal adviser will be disclosed, and to encourage client to reveal to attorney confidences necessary for attorney to provide advice and representation.

[8] Witnesses ☞198(1)
410k198(1) Most Cited Cases

Attorney-client privilege serves interests of justice and, thus, is worthy of maximum legal protection.

[9] Witnesses ☞219(3)
410k219(3) Most Cited Cases

Party can waive attorney-client privilege by putting attorney's advice in issue through assertion of claim or defense based on that advice, but party does not lose privilege merely from fact that party's state of mind is put in issue in action even if attorney's advice may be relevant to matters of party's state of mind.

[10] Witnesses ☞198(1)
410k198(1) Most Cited Cases

Relevance is not standard for determining whether or not evidence is protected from disclosure by attorney-client privilege, even if evidence is vital, highly probative, directly relevant or at heart of issue, in light of purpose of privilege to encourage attorney-client communications.

[11] Witnesses ☞219(3)
410k219(3) Most Cited Cases

Insured blood product manufacturer did not waive attorney-client privilege by bringing declaratory action against insurer for coverage for underlying claims against insured, even though action put insured's state of mind at issue concerning whether it knew of transmission of Human Immunodeficiency Virus (HIV) from blood product before obtaining insurance, and even though attorney- client communications could be highly relevant to that issue; facts about insured's knowledge would be discoverable, but not legal conclusions concerning those facts.

[12] Federal Civil Procedure ☞1600(3)
170Ak1600(3) Most Cited Cases

Documents protected by attorney work product privilege would not be discoverable on issue of insured's state of mind at time of obtaining insurance, if documents were not shared with or communicated to insured client.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

**[13] Federal Civil Procedure ☞1600(3)**
170Ak1600(3) Most Cited Cases

Protection stemming from attorney work product doctrine belongs to professional, rather than to client, and efforts to obtain disclosure of opinion work product should be evaluated with particular care. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A

**854 Stephen J. Mathes (Argued), William R. Herman, Hoyle, Morris & Kerr, Philadelphia, PA, for appellants/petitioners Rhone-Poulenc Rorer Inc. and Armour Pharmaceutical Co.

Jeffrey B. Albert, Fox, Rothschild, O'Brien & Frankel, James W. Christie, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, Roy L. Reardon, James P. Barrett, Robert F. Cusumano (Argued), David J. Woll, Kevin G. Lauri, Simpson, Thatcher & Bartlett, New York City, for appellee/respondent The Home Indem. Co.

H. Marc Tepper, Margolis, Edelstein & Scherlis, Philadelphia, PA, for appellees/respondents AIU Ins. Co., Birmingham Fire Ins., Granite State Ins. Co., Illinois Nat. Ins. Co., Lexington Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh, PA, New Hampshire Ins. Co. and Landmark Ins. Co.

Joseph M. Oberlies, Connor & Weber, Philadelphia, PA, for appellee/respondent American Centennial Ins. Co.

Richard B. Marrin, Ford, Marrin, Esposito & Witmeyer, New York City, William G. Scarborough, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for appellee/respondent Transport Ins. Co.

E. Douglas Sederholm (Argued), Richard J. Bortnick, White and Williams, Philadelphia, PA, for appellees/respondents Pacific Employers Ins. Co., Century Indem. Co. and Ins. Co. of North America.

Walter A. Stewart, Manta & Welge, Philadelphia, PA, for appellees/respondents Liberty Mut. Ins. Co., Liberty Mut. Ins. and Royal Indem. Co.

Edward M. Dunham, Jr., Miller, Dunham, Doering & Munson, Philadelphia, PA, for appellee/respondent Aetna Cas. & Sur. Co.

Susan M. Danielski, Cozen & O'Connor, Philadelphia, PA, for appellees/respondents Pantry Pride Inc. and Revlon Inc.

Thomas C. Delorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for appellees/respondents Prudential Reinsurance Co. and Gibralter Cas. Co.

David F. Abernethy, Drinker, Biddle & Reath, Philadelphia, PA, for appellee/respondent International Ins. Co.

Ronald P. Schiller, Piper & Marbury, Philadelphia, PA, for appellee/respondent North Star Reinsurance Co.

Thomas M. Kittredge (Argued), Morgan, Lewis & Bockius, Philadelphia, PA, for intervenor Morgan, Lewis & Bockius.

Kerry A. Kearney, Reed Smith Shaw & McClay, Pittsburgh, PA, for intervenor Reed Smith Shaw & McClay.

Raymond M. Tierney, Jr., Susan Sharko, Shanley & Fisher, Morristown, NJ, for intervenor Shanley & Fisher.

Jeff H. Galloway, Hughes, Hubbard & Reed, New York City, for intervenor Hughes, Hubbard & Reed.

Jeremy D. Mishkin, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for intervenor Montgomery, McCracken, Walker & Rhoads.

Ed Yodowitz, Skadden Arps Slate Meagher & Flom, New York City, for intervenor Skadden Arps Slate Meagher & Flom.

Matthew J. Broderick, Dechert Price & Rhoads, Philadelphia, PA, for intervenor Coopers & Lybrand.

Before: MANSMANN, LEWIS, Circuit Judges, McKELVIE, District Judge. [FN*]

> FN* Hon. Roderick R. McKelvie, United States District Judge for the District of Delaware, sitting by designation.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 5

**\*855 McKELVIE**, District Judge.

In this insurance coverage case, the district court has ordered the insureds, their attorneys and their accountants to produce documents that would normally be protected from disclosure by the attorney client privilege, by the accountant client privilege, or as attorney work product. The documents to be produced were created before the insureds purchased coverage, and contain evaluations of the insureds' potential liability to consumers of their products.

The district court found the information in the documents relevant to matters in issue in the action in that it may tend to show whether or not the insureds expected or intended the claims for which they seek coverage. The court held the insureds had waived any right to maintain confidentiality of these documents by filing this action for coverage and by putting in issue the matter of their knowledge of facts relating to the claims.

The insureds have appealed from that order. They have also filed a petition for a writ of mandamus directing the district court to vacate and reverse the order. The six law firms and the accounting firm that have been subpoenaed to produce documents have moved to intervene and join in the insureds' requests for relief.

For the reasons set out below, we will grant the petitioners' request for relief and issue a writ of mandamus to the district court and direct it to vacate its order that these documents be produced.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. *The Parties and the Nature of the Proceedings*

Rhone-Poulenc Rorer Inc. is the successor to the Rorer Group Inc. In the fall of 1985, soon after Pantry Pride, Inc. had acquired Revlon, Inc., Rorer entered into an agreement with Pantry Pride to purchase Revlon's ethical pharmaceutical businesses, including USV and Armour Pharmaceutical Company. One of Armour's products was Factorate, a blood clotting product processed by Armour and sold principally for use by hemophiliacs.

Rorer formally acquired Armour on January 7, 1986. On April 21, 1986, Armour was named in the first of a series of lawsuits filed by individuals who claimed Factorate had infected them with the Human Immunodeficiency Virus (HIV), which is thought to be the cause of Acquired Immunodeficiency Syndrome (AIDS). To date, Armour has been joined as a defendant in more than two hundred AIDS- related cases.

Rorer had purchased a general liability insurance policy from The Home Indemnity Company on December 31, 1985, and looked to it for coverage for the claims against Armour. In addition, it sought coverage under a blanket excess policy it purchased from Pacific Employers Insurance Company on July 29, 1986. Home denied coverage for these AIDS-related claims.

In December of 1988, Rorer and Armour brought this suit in the United States District Court for the Eastern District of Pennsylvania. In the complaint, they allege they are insureds under a primary comprehensive general liability insurance policy provided by The Home Indemnity Company. They contend Home has failed and refused to honor its obligations to defend and indemnify them from liability for the AIDS-related claims. They contend the district court has subject matter jurisdiction based on diversity of citizenship of the parties under 28 U.S.C. § 1332. Rhone-Poulenc and Armour seek, among other things, a declaration that Home accepted coverage for these claims.

Home answered the complaint by denying that Rhone-Poulenc Rorer and Armour are entitled to the relief sought. In addition, it has asserted a number of affirmative defenses and has filed a counterclaim for a declaration that it does not owe a duty to indemnify or defend the plaintiffs for the claims identified in the complaint. Home has also filed a third party complaint against Pantry Pride, Inc., Revlon, Inc. and a number of insurance companies, including Pacific Employers Insurance Company. Certain of the third-party defendant insurers have filed fourth-party complaints against other insurers.

One of Home and Pacific Employers' affirmative defenses is that the claims identified in the complaint are excluded from coverage \*856 because they do not result from "occurrences."

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

The insurers agreed to indemnify and defend against claims relating to bodily injury that is caused by an occurrence. An occurrence is defined in the Home policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insureds." The insurers argue that the alleged transmission of HIV from Factorate was known when the insurance policies were purchased, that the resulting injuries were not "neither expected nor intended," and that the resulting claims are not insured.

A second affirmative defense asserted by the insurers is that Rorer and Armour wrongfully obtained the coverage by intentionally failing to disclose their knowledge of the potential for these claims. A third defense is that Armour sold the products knowing that they would create an unreasonable risk of harm to others and that the resulting claims are, therefore, uninsurable.

## B. The Discovery Sought by Home and Pacific Employers

In connection with these defenses, Home and Pacific Employers have sought discovery from the plaintiffs on what information they may have had prior to purchasing the policies that would have suggested that Armour's products might transmit the HIV virus and that Armour would be subject to claims for injuries suffered as a result of transmitting that virus.

During a September, 1992 deposition, Robert E. Cawthorn, Rhone-Poulenc Rorer's chairman and chief executive officer, testified to the investigation and analysis undertaken by Rorer in connection with its decision to purchase Armour. Cawthorn testified that at the time Rorer was negotiating to purchase Armour he and others at Rorer were aware of reports in the press that blood products might have transmitted the AIDS virus and had sought and obtained advice from counsel with regard to liabilities for claims alleging damages for transmitting the virus. He testified:

We had got the advice of outside counsel on the potential legal liabilities in this area and had learned that blood products are not considered in most states as products, per se, and are not subject to the same liability laws as regular

pharmaceutical products. We had learned that there was some precedence [sic] in terms of transmission of the hepatitis virus which these plasma products had transmitted to hemophiliacs. And that, in fact, my recollection is we were told that there had been no successful cases against the fractionaters [sic] and hepatitis because of the particular legal situation. And the opinion was that that should hold, also, for the AIDS virus.

After the deposition, Home and Pacific Employers moved for an order extending the time for completion of discovery and compelling Rhone-Poulenc and Armour to produce all evaluations of their potential liability for AIDS-related claims, including any documents confirming the advice described by Cawthorn. In response to the motion, Rhone-Poulenc and Armour produced copies of four documents, subject to an agreement with the insurers that the production would not waive any privilege with respect to any other communication.

The first of the four documents produced is the minutes of the November 26, 1985, meeting of the Board of Directors of Rorer Group Inc. During this meeting the Board considered the Armour acquisition. Those minutes show that John W. Eckman chaired the meeting, and that Cawthorn and Rorer's general counsel, Richard H. Lange, were present. Also present were representatives of the accounting firm of Coopers & Lybrand and the investment banking firm of First Boston Corporation, as were attorneys from the law firms of Hughes, Hubbard & Reed; Skadden, Arps, Slate, Meagher & Flom; and Montgomery, McCracken, Walker & Rhoads. The following summary is included in the minutes:

In response to a question by Mr. Eckman concerning Armour's product liability exposure, Mr. Lange said that Armour's products are not regarded as drug products, with associated strict liability, and that it has been necessary to prove negligence by the manufacturer as a basis for liability. In addition, many states have *857 legislation limiting liability for blood products. There have been only about six to eight AIDS contamination suits to date in the industry, none of them against Armour. Revlon has carried an umbrella excess liability policy of $60 million, and the benefits of a substantial portion of this coverage will be available for USV/Armour

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851                                                                        Page 7
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

product claims arising during the pre-acquisition period.

The second document produced by the insureds is a copy of an April 10, 1986, letter from John S. Allee, an attorney with Hughes, Hubbard & Reed, to Richard Lange, forwarding to Lange a copy of the third document produced, a memorandum by Hughes Hubbard titled "Survey of Blood Immunity Statutes and Case Law." This survey provides a state-by-state analysis of the law applicable to entities engaged in the preparation, distribution and use of human blood and blood products.

The fourth document is a copy of an April 18, 1986, letter from Allee to Lange following up on the April 10 letter and suggesting steps Lange should consider as a part of his risk assessment and reduction efforts. In producing a copy of this seven page letter, Rhone-Poulenc and Armour redacted approximately one half of the typed material on the fifth page and the entire sixth page, and reported to the insurers that the deleted material contained very general advice of a legal nature as well as Allee's mental impressions.

On receiving copies of these documents, Home and Pacific Employers continued to pursue their motion to compel, and asked the court to enter an order directing the plaintiffs to produce all documents in their possession, custody or control relating to the 1985 and early 1986 assessments of potential AIDS-related claims.

In the briefing in support of their motion, the insurers argued that these documents would disclose what information the insureds had about the AIDS-related claims at the time they obtained the coverage, the advice they received on whether those claims would be asserted, and their intent or expectation as to whether they would become obligated to pay damages as a result of those claims. Home and Pacific Employers argued that this information would be relevant to a number of issues in the litigation, including whether the AIDS-related claims fell within the definition of an "occurrence" under the policy, whether Rorer and Armour had sufficient knowledge of the probability of the AIDS-related claims so that in obtaining the coverage they had breached duties owed the insurers by failing to disclose facts relating to the risk that Armour's products transmitted the HIV

virus, and whether or not the probability of the AIDS-related claims was sufficiently clear at the time the insureds obtained the coverage that they would not be insurable as fortuitous claims.

Home and Pacific Employers argued that by filing the suit and putting these matters in issue, Rhone-Poulenc and Armour had waived any right to object to the disclosure of the requested documents on the grounds of privilege or work product. The insurers also argued Rhone-Poulenc and Armour had waived any protection from disclosure by failing to file timely objections to the initial discovery requests seeking the disclosure of these documents and by failing to identify them on a list of documents being withheld as privileged or as work product. With regard to the redacted portion of the April 18 Hughes Hubbard letter, they argued Rorer had disclosed the letter to First Boston after the acquisition and thus had waived the privilege. They further argued that by producing a portion of the letter Rhone-Poulenc and Armour had waived the privilege as to the balance of the contents, including the advice that had been redacted.

The insurers asked the district court to enter an order compelling Rhone-Poulenc and Armour to produce all evaluations or assessments of their potential liability for AIDS-related claims arising from Armour's blood products, including those in their possession and those in the possession of their present and former agents and attorneys. This request includes documents in the possession of the law firms that had advised Rorer in connection with the acquisition of Armour: Hughes, Hubbard & Reed; Skadden, Arps, Slate, Meagher & Flom; and Montgomery, McCracken, Walker & Rhoads, *858 as well as the accounting firm Coopers & Lybrand, and three law firms that have represented Armour in connection with the AIDS-related claims: Morgan, Lewis & Bockius; Shanley & Fisher; and Reed Smith Shaw & McClay.

C. *The Magistrate Judge's Orders Providing for the Production of Documents*

The district court referred the motion to a magistrate judge. By an opinion and order dated March 30, 1993, the magistrate judge found the advice in the April 18 Hughes Hubbard letter relevant to matters in issue in the litigation, including whether the underlying claims arose from

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851                                                                                                    Page 8
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

a fortuitous event or circumstance and were not the result of a known loss, and whether the injuries giving rise to the claims were not expected or intended. The magistrate judge held that as Rhone-Poulenc and Armour had brought the action and had put their own conduct and the conduct of their counsel in issue, they had waived any right to object to the disclosure of the documents based on the attorney client privilege or the work product doctrine.

In addition, the magistrate judge noted that a related rationale for a finding of waiver is that the selective use of privileged information may garble the truth. In that situation, he noted, fairness demands a party be allowed to examine the whole picture. The magistrate judge therefore ordered the redacted portions of the April 18 letter produced and scheduled further argument on the balance of the documents sought by the insurers.

The magistrate judge heard further argument from the parties on April 13, 1993. During that argument, counsel for the insurers argued that Rhone-Poulenc and Armour had wrongfully failed to disclose the existence of the assessments in response to discovery requests. At the conclusion of the argument, the magistrate judge reviewed the basis for his March 30 opinion and found that the insurers had sought production of the documents long before the end of discovery. He directed Rhone-Poulenc and Armour to produce the liability assessments sought by the insurers and also directed counsel for the insurers to prepare and submit for approval subpoenas to be delivered to the law firms and accounting firm directing them to produce the documents sought by the insurers.

By letter dated April 20, 1993, counsel for the insurers submitted to the magistrate judge copies of proposed subpoenas addressed to the six law firms and the accounting firm. On April 21 the magistrate judge entered an order approving the subpoenas and providing that any objections to the subpoenas must be presented to the district court within five days from the date of the order. Thereafter, the insurers' counsel delivered subpoenas issued by the Southern District of New York on Hughes Hubbard, Skadden Arps, and Coopers & Lybrand, at their offices in New York City and sought production of the documents at Simpson Thatcher & Bartlett's offices in New York

on May 3, 1993. They delivered subpoenas issued by the Eastern District of Pennsylvania on Morgan Lewis, and Montgomery McCracken at their offices in Philadelphia and sought production of the documents at Fox, Rothschild, O'Brien & Frankel's offices in Philadelphia on May 3, 1993. They also delivered subpoenas issued by the Eastern District of Pennsylvania on Shanley & Fisher at its offices in Morristown, New Jersey and on Reed Smith at its offices in Philadelphia and sought production of the documents at White and Williams' offices in Philadelphia on May 3, 1993. The subpoenas sought production of the following documents:

1. All documents, including, but not limited to, time billing records, that reflect the date of your retention by plaintiffs and/or the purpose of your work for plaintiffs.

2. All documents concerning actual or potential AIDS-related claims against plaintiffs or against any other company or entity which manufactured and/or distributed blood products, to the extent that such documents were received or created, or are contained in files pertaining to, your work for plaintiffs.

3. All documents that constitute, were reviewed in preparation for, or are contained in files concerning actual or potential AIDS-related claims.

*859 4. All documents concerning insurance coverage for actual or potential AIDS-related claims against plaintiffs.

5. All documents concerning (i) blood shield statutes; (ii) the nature and scope of liability arising from the manufacture and/or sale and/or use of blood products generally; and (iii) the nature and scope of liability arising from the manufacture and/or sale and/or use of Armour's blood products in particular.

6. All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacture and/or sale and/or use of Armour's blood products communicated by Rorer or any agent or representative of Rorer to persons and/or entities interested in acquiring Armour or any of its assets in 1986.

7. All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacturer and/or sale and/or use of Armour's blood products communicated by you or others to Rorer in connection with the attempted sale of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851

63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 9

Armour in 1986.

8. All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacture and/or sale and/or use of Armour's blood products communicated by Rorer or any agent or representative of Rorer to others in connection with the attempted sale of Armour in 1986.

Rhone-Poulenc and Armour did not appeal the March 30 order directing them to produce the redacted portion of the April 18 Hughes Hubbard letter. They did, however, take an appeal to the district court from the magistrate judge's April 13 order, and moved to quash the subpoenas. Skadden Arps and Morgan Lewis also moved to quash and the district court granted their motions. In addition, all seven firms served objections to the subpoenas on the grounds that they sought documents protected from disclosure as privileged and as work product and on the grounds of relevance, vagueness and oppressiveness. The presentation of these matters resulted in a clarification of the status of certain discovery requests, of Rhone-Poulenc and Armour's responses to those requests, and of agreements that had apparently been reached by the parties but had not been filed with the court. The rediscovery of this information caused counsel for the insurers to abandon the argument that Rhone-Poulenc and Armour had wrongfully failed to identify these documents in discovery or had waived objections to producing them by failing to respond to discovery requests or by failing to list the documents on a privilege log. Thereafter, the district court found that these procedural matters would not be controlling on an appeal from the magistrate judge's order, as it appeared the magistrate judge would have ordered production of the documents in any event.

D. *The District Court's Order Denying Objections to the Magistrate Judge's Order and Denying Motions to Quash*

The district court heard argument on the appeal and motions to quash on July 28, 1993. By an opinion and order dated August 6, 1993, and entered on August 9, the court found:

In accordance with [the magistrate judge's] findings, this court adjudges the subpoenas to

pertain to directly relevant information. At issue is Plaintiffs' knowledge of the liabilities associated with the acquisition of Armour. The issues put into question by this lawsuit focus around Plaintiffs' knowledge of the underlying claims and when they became aware of such claims. This court finds that the documents The Home and PEIC seek will aide in disclosing what and when Plaintiffs knew of the underlying claims. Thus, the information contained in the requested documents is directly relevant. Therefore, in this instance this court finds it necessary to invade the attorney-client privilege.

The district court denied the insureds' objections to the magistrate judge's order and the motions to quash, and reinstated Skadden Arps and Morgan Lewis' obligations to produce documents identified in the subpoenas. By that decision, the district court held: (1) in filing the action for a declaration of insurance *860 coverage, Rhone-Poulenc and Armour had put in issue the knowledge they had as to potential AIDS-related claims at the time they purchased the coverage; (2) by putting their knowledge of those matters in issue, they had waived the privilege to prevent the disclosure of attorney client and accountant client communications relevant to those matters; and (3) by putting their knowledge of these matters in issue, they had also waived the protection from disclosure of the work product of their attorneys.

Plaintiffs, their attorneys and accountants sought reargument on that decision and by an order dated October 4, 1993, the district court denied their motion.

E. *The Appeal and Petition for a Writ of Mandamus*

On October 15, 1993, Rhone-Poulenc and Armour filed petitions with this court for a stay of the August 6 order and for a writ of mandamus directing the district court to vacate and reverse the August 6 order. On October 19, 1993, Rhone-Poulenc and Armour filed a notice of appeal from that order and the court's order denying the motion for reargument.

We have entered orders staying the discovery, consolidating the proceedings on the petition and the appeal, and granting the petition to intervene filed by the six law firms and Coopers & Lybrand.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

## II. DISCUSSION

### A. Jurisdiction and Scope of Review

[1] Rhone-Poulenc and Armour urge us to find that we have jurisdiction to hear this appeal under 28 U.S.C. § 1291. Section 1291 states that the courts of appeals have jurisdiction over appeals from all final decisions of the district courts of the United States. Generally, discovery orders are not final and not reviewable under this section. However, under the collateral order doctrine a discovery order is appealable where it meets the following three criteria:

First, the order must conclusively determine the disputed question. Second, the order must resolve an important issue completely separate from the merits of the action. Third and finally, the order must be effectively unreviewable on appeal from a final judgment.

*Smith v. BIC Corp.*, 869 F.2d 194, 198 (3d Cir.1989).

Rhone-Poulenc and Armour argue that each element of this test is present here because: (1) the order they appeal from conclusively determines that they must disclose privileged communications and work product; (2) the order resolves issues totally separate from the merits of the case; and (3) the order will not be effectively reviewable after judgment, as the privilege and confidentiality for the information in the documents will be lost when they are produced.

In *Smith*, we held that the public disclosure of trade secrets is not effectively reviewable. A trade secret is valuable because it allows a business to obtain an advantage over competitors who do not know or use it. The damage suffered by a business due to public disclosure of trade secrets cannot be remedied by an appellate court because the court cannot make the information secret again. Here, however, an appellate court can remedy any damage resulting from the erroneous disclosure of documents after judgment. As the United States Court of Appeals for the Tenth Circuit recently explained:

The practical consequences of the district court's decision on the controversy between the parties can be effectively reviewed on direct appeal following a judgment on the merits. If this court determines that privileged documents were wrongly turned over to the plaintiffs and were

used to the detriment of defendants at trial, we can reverse any adverse judgment and require a new trial, forbidding any use of the improperly disclosed documents. Plaintiffs would also be forbidden to offer at trial any documents, witnesses, or other evidence obtained as a consequence of their access to privileged documents.

*Boughton v. Cotter Corporation*, 10 F.3d 746, 749 (10th Cir.1993).

As the district court's order is effectively reviewable on appeal from a final judgment, section 1291 does not give us jurisdiction to hear an appeal at this time.

*861 [2] Alternatively, the insureds argue that we should decide the matter pursuant to our authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), which provides that the federal courts may issue all writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The two prerequisites for the issuance of a writ of mandamus are that the petitioners have no other adequate means to obtain the relief sought and that they have shown that their right to the writ is clear and indisputable. *Kerr v. United States Dist. Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)

[3][4] Mandamus may properly be used as a means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 89 (3d Cir.1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1118 (3d Cir.1986); *Sporck v. Peil*, 759 F.2d 312, 314, 315 (3d Cir.1985), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230; *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3d Cir.1984). See also, *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir.1992); *In re von Bulow*, 828 F.2d 94 (2d Cir.1987). We find that the petitioners have no other adequate means to attain relief from the district court's order that compels the disclosure of privileged information and work product. In addition, we find that the district court has committed clear errors of law in ordering that information disclosed. The petitioners' right to the writ is, therefore, clear and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 11
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

indisputable. We will exercise mandamus jurisdiction to resolve the issues raised by the petitioners.

**B.** *Whether Rhone-Poulenc and Armour have Waived the Attorney Client Privilege by Filing this Suit to Establish Insurance Coverage*

Federal Rule of Civil Procedure 26(b)(1) provides:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 thus provides that relevant but privileged matters are not discoverable. As a result, it frequently occurs that a party has documents containing information relevant to matters of consequence in the action, but does not produce the documents or disclose confidential communications, and the information is not offered into evidence at trial. In this case, Home and Pacific Employers seek to discover more than just information on what facts Rorer and Armour had gathered about potential AIDS-related claims before they purchased the policies. They also seek to discover the advice counsel provided to Rorer with regard to the legal significance of those facts and documents that identify, and disclose communications relating to that advice. Those communications and the documents containing those communications would normally be protected from disclosure by the attorney client privilege.

As the claims and defenses in issue in this action arise under state law, Federal Rules of Evidence 501 and 1101(c) provide that we should apply state law in determining the extent and scope of the attorney client privilege. [FN1] The parties and intervenors agree that we should look to the privilege rules of the forum state, the Commonwealth of Pennsylvania, **862** as

establishing the privilege for the attorney client communications in issue in this case. [FN2] No one has argued, however, that there are any principles or rules of law as to the attorney client privilege unique to Pennsylvania that should control the resolution of our decision on these matters.

FN1. Rule of Evidence 501 reads: **Rule 501. General Rule**
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
Rule of Evidence 1101(c) reads:
**(c) Rule of privilege.**
The rule with respect to privileges applies at all stages of all actions, cases, and proceedings.

FN2. Pennsylvania has codified the attorney-client privilege at 42 Pa.C.S.A. § 5928 (Purdon 1982) as follows:
In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

[5] The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is, or sought to become a client; (2) the person to whom the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 12

communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services, or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir.1979) *citing United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D.Mass.1950); *see also*, 8 Wigmore, *Evidence*, § 2292, at 554 (J. McNaughton rev.1961) (1st ed. 1904).

[6] While documents may be protected from disclosure in discovery because they contain confidential communications that are privileged, that protection may be inapplicable to facts incorporated in the communication. *Upjohn Co. v. United States*, 449 U.S. 383, 395-396, 101 S.Ct. 677, 685-86, 66 L.Ed.2d 584 (1981).

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* (quoting *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962)).

[7][8] Evidentiary privileges are an exception to the general rule that relevant evidence is admissible. Privileges forbid the admission of otherwise relevant evidence when certain interests the privileges are thought to protect are regarded as more important than the interests served by the resolution of litigation based on full disclosure of all relevant facts. The privilege forbidding the discovery and admission of evidence relating to communications between attorney and client is intended to ensure that a client remains free from apprehension that consultations with a legal adviser will be disclosed. *See Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888).

*See* Wigmore, § 2290, at 543. The privilege encourages the client to reveal to the lawyer confidences necessary for the lawyer to provide advice and representation. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). *See* E. Cleary, *McCormick on Evidence*, § 87, at 314 (3d ed. 1984). As the privilege serves the interests of justice, it is worthy of maximum legal protection. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir.1992).

*863 If we intend to serve the interests of justice by encouraging consultation with counsel free from the apprehension of disclosure, then courts must work to apply the privilege in ways that are predictable and certain. "An uncertain privilege—or one which purports to be certain, but rests in widely varying applications by the courts—is little better than no privilege." *In re von Bulow*, 828 F.2d at 100.

[9] There is authority for the proposition that a party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation. For example, a client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer. *See* Wigmore, § 2327, at 638. A defendant may also waive the privilege by asserting reliance on the advice of counsel as an affirmative defense. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992), (party's claim that its tax position was reasonable because it was based on advice of counsel puts advice in issue and waives privilege); *see also*, *Hunt v. Blackburn*, 128 U.S. at 470, 9 S.Ct. at 127, (client waives privilege when she alleges as a defense that she was misled by counsel). *See generally*, E. Cleary, *McCormick on Evidence* § 93, at 343 (3d ed. 1984). In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts as an essential element of its defense that it relied upon the advice of counsel, the party waives the privilege regarding communications pertaining to that advice. *Mellon v. Beecham Group PLC*, 17 U.S.P.Q.2d 1149, 1151, 1991 WL 16494 (D.N.J.1991); *see also, e.g., W.L. Gore & Associates, Inc. v. Tetratec Corp.*, 15 U.S.P.Q.2d 1048, 1051, 1989 WL 144178 (E.D.Pa.1989) (client waived privilege by asserting reliance upon advice of counsel as an essential element of his defense).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 13

In these cases, the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication. *North River Insurance Company v. Philadelphia Reinsurance Corporation*, 797 F.Supp. 363, 370 (D.N.J.1992); *Pittston Company v. Allianz Insurance Co.*, 143 F.R.D. 66, 71 (D.N.J.1992).

Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. However, the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice. When the advice of counsel is asserted as a defense by the infringer, the patent owner may explore facts that would make it more probable than not that the infringer did not rely in good faith on that advice, including for example, what the advice was, when it was given, whether the alleged infringer's conduct suggests he had relied on the advice and whether he had knowledge of facts that would have led him to believe it would not be reasonable to rely on that advice. *See, e.g., Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed.Cir.1983).

Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege. This certainty and predictability as to the circumstances of a waiver

encourage clients to consult with counsel free *864 from the apprehension that the communications will be disclosed without their consent.

[10] Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions. *See, e.g., Byers v. Burleson*, 100 F.R.D. 436 (D.D.C.1983); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975). These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

As the attorney client privilege is intended to assure a client that he or she can consult with counsel in confidence, finding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served. Clients will face the greatest risk of disclosure for what may be the most important matters. Furthermore, because the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.

A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.

[11] It appears that one matter in issue in this case is whether or not the insureds knew, before they obtained coverage, that Armour's pharmaceutical products were causing the transmission of HIV.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

Page 14

Rhone-Poulenc has not waived the attorney client privilege by filing this lawsuit or by placing its state of mind in issue. As Rhone-Poulenc and Armour have not interjected the advice of counsel as an essential element of a claim in this case, the district court erred in affirming the magistrate judge's decision and in finding they must disclose documents relating to the AIDS-related evaluation that would otherwise be protected from disclosure by the attorney client privilege. *Accord, Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408 (D.Del.1992).

In summary, we emphasize that our holding is not meant to preclude disclosure of the knowledge the insureds possessed at the time they obtained coverage. Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer. Rather than separately review each subpoena served on the law firms, it should suffice to say that each subpoena seeks the production of both privileged and discoverable documents. Because some documents may contain both discoverable and privileged information it would be appropriate, if not too burdensome, to redact them accordingly. *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir.1984); *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir.1988). On remand the insurers may redraft the subpoenas in a manner consistent with this opinion.

C. *Whether Rhone-Poulenc and Armour have Waived the Accountant Client Privilege by Filing this Suit to Establish Insurance Coverage*

In affirming the magistrate judge's decision approving the subpoena served on Coopers & Lybrand, the district court did not speak to the accountant client privilege recognized *865 under Pennsylvania law. [FN3] On remand, the district court should determine the applicability of the accountant client privilege, and whether that privilege has been waived. If there has been a waiver, the district court should then determine the extent of that waiver. The district court should also examine the other objections to the subpoena.

FN3. Pennsylvania has codified the accountant client privilege at 63 P.S. § 9.11a (Purdon 1994) as follows:
Except by permission of the client or person or entity engaging him ... a certified public accountant ... shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed relative to and in connection with any professional services as a certified public accountant.... The information derived from or as the result of such professional services shall be deemed confidential and privileged[.]

D. *Whether Rhone-Poulenc and Armour have Waived the Attorney Client Privilege by Failing to Object to Discovery Requests and by Failing to Serve a Privilege Log*

In their motion to compel, Home and Pacific Employers also argued that Rhone- Poulenc and Armour had wrongfully failed to object to the disclosure of documents in their response to the insurers' discovery requests, and had wrongfully failed to serve a list identifying the documents they were withholding. Home and Pacific Employers sought an order from the magistrate judge finding that by failing to object and to supply a list of documents being withheld, Rhone-Poulenc and Armour had waived the protection of the attorney client privilege.

It appears from the transcript of the April 13, 1993, hearing on their motion to compel that the magistrate judge did look to the plaintiffs' failure to list privileged documents as a basis for granting the insurers' motion to extend the time for discovery. The magistrate judge did not, however, find that the insureds' failure to object and to provide a list of privileged documents was a waiver of the privilege. The failure to object was not a basis for his decision to order these documents produced.

As we noted above, in connection with the appeal to the district court from the magistrate judge's decision, Home and Pacific Employers abandoned this waiver argument after Rhone-Poulenc put on the record documents that suggest Home had agreed to defer the insureds' obligation to respond to certain discovery requests. In their briefing on the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851

Page 15

63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

petition and this appeal, Home and Pacific Employers have sought to reintroduce this issue into the case and have suggested that the magistrate judge and district court concluded that a major factor warranting expedited disclosure of these documents was the petitioners' concealment of the documents. That argument is neither consistent with the facts nor supported by the record. Therefore, we find that the magistrate judge was correct in disregarding the failure to object.

### B. The Extent of Rhone-Poulenc and Armour's Waiver of the Attorney Client Privilege by Cawthorn's Testimony and the Disclosure of the Hughes Hubbard Correspondence

Home and Pacific Employers also argued to the magistrate judge that Rhone-Poulenc and Armour had waived the protection of the privilege for the AIDS- related evaluation documents when Cawthorn testified about the investigation and when Rhone-Poulenc produced the First Hughes Hubbard report and all but a portion of the second. The magistrate judge apparently agreed, at least to the extent that he found in his March 30, 1993, memorandum opinion that in fairness the selective disclosure of privileged communications required disclosure of the whole picture and ordered the disclosure of the redacted portion of the second Hughes Hubbard letter. Rhone-Poulenc and Armour did not appeal that decision to the district court.

Neither the magistrate judge nor the district court relied on this waiver by disclosure as a basis for granting the insurers' motion to compel the production of the documents relating to the AIDS-related evaluation. As this issue was never presented to the district court, we need not address its merits.

### *866 F. Whether Rhone-Poulenc and Armour have Waived the Protection From Disclosure for Their Attorneys' Work Product

There are numerous substantive and procedural errors with the subpoenas approved by the magistrate judge. In granting the petitioners the relief they seek and in finding they are not obligated to produce the documents identified in the subpoenas, we will not address each of these issues. Two principal matters lead us to the conclusion

that the subpoenas should not have been approved or issued. First, it appears the magistrate judge and the district court's decisions to approve the subpoenas were based on their conclusion that Rhone-Poulenc and Armour's privilege to protect the disclosure of confidential attorney client communications had been waived as the insureds' state of mind was in issue in the action. As noted above, we have concluded that these decisions constituted an error of law.

[12] Second, it appears the magistrate judge and the district court had concluded that a finding that the insureds had waived the attorney client privilege necessarily meant they had also waived the protection from disclosure for the work product of the firms that had represented and advised them. For a number of reasons, one does not lead to the other. As a factual matter, if the state of mind of the insureds is in issue, papers reflecting the work product of counsel that were not shared with or communicated to the clients are not relevant. Work product that was not communicated to the client cannot affect the client's state of mind. See Thorn EMI North America, Inc. v. Micron Technology, Inc., 837 F.Supp. 616 (D.Del.1993). In approving the subpoenas and denying the motions to quash, the court failed to determine whether the documents sought were relevant to the matters in issue or were reasonably calculated to lead to the discovery of admissible evidence.

[13] More significantly, in ordering the broad range of documents produced, the magistrate judge and the district court failed to consider that the protection stemming from the work product doctrine belongs to the professional, rather than the client, and that efforts to obtain disclosure of opinion work product should be evaluated with particular care. See Fed.R.Civ.P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."); Haines v. Liggett Group Inc., 975 F.2d at 94 ("This court has accorded an attorney's work product almost absolute protection from discovery."); In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 801 n. 4 (3d Cir.1979) (right to assert the privilege belongs to the attorney).

We find the district court erred in denying the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

32 F.3d 851
63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176
(Cite as: 32 F.3d 851)

motions to quash these subpoenas. While the subpoenas may identify certain documents that are discoverable, as drafted and served they appear to seek the production of documents that are protected from disclosure as the work product of attorneys or by the attorney client privilege.

While Rhone-Poulenc and Armour's disclosure of the Hughes Hubbard reports may provide a basis for finding that certain of the documents identified by the subpoenas are discoverable, it appears that the subpoenas are generally directed to documents for which there is no basis for believing there had been or could be a waiver by the clients.

### III. CONCLUSION

We find that the district court erred in affirming the magistrate judge's decision finding Rhone-Poulenc and Armour had waived the attorney client privilege by putting their state of mind in issue, and erred in denying the motions to quash the subpoenas served on the law firms. The district court should reconsider its decision not to quash the subpoena served on the accounting firm. We will dismiss the appeal. We will issue a writ of mandamus, and direct the district court to vacate its Order of August 6, 1993, and to quash the subpoenas served on the law firms. We will remand the case for further proceedings.

32 F.3d 851, 63 USLW 2122, 30 Fed.R.Serv.3d 513, 41 Fed. R. Evid. Serv. 176

### END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

October 24, 2003

**VIA FACSIMILE – 477 1933**

Antonio L. Cortes, Esq.
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

RE:  **USA/RHINO BUILDERS, INC. v. BIOGENESIS PACIFIC, INC., ET AL.**
     **DISTRICT COURT OF GUAM, CIVIL ACTION NO. 02-00008**

Dear Mr. Cortes:

I am sure you are already in receipt of James Lawhn's October 24, 2003 email responding to your letter of October 23, 2003. Mr. Lawhn's email sets forth our basis for inquiring on what led Carlsmith Ball, LLP to name AIG Technical Services, Inc. as the surety instead of American Home Assurance Company. I enclose, for your easy reference, a copy of Mr. Lawhn's October 24, 2003 email.

If you are not persuaded by Mr. Lawhn's email, I regret to inform you that I have no other recourse than to file a Motion to Compel. I would appreciate your reconsideration on your position.

Should you have any questions or comments, please feel free to contact me.

Very truly yours,

**VERNIER & MAHER, LLP**

Louie J. Yanza

Enclosure

cc:   James Lawhn, Esq.
      Stephen D. Tom, Esq.

**Exhibit**

**G**

## Louie J. Yanza

| | |
|---|---|
| **From:** | "James Lawhn" <jlawhn@OLLON.COM> |
| **To:** | "Louie J. Yanza (E-mail)" <lyanza@ite.net> |
| **Cc:** | <acortes@kuentoscguam.net> |
| **Sent:** | Friday, October 24, 2003 7:01 AM |
| **Subject:** | Rhino v Biogenesis |

Louie/Tony

I am familiar with the Rhone decision and I do not believe it precludes the discovery we are seeking in this instance. Rhone says that when a party asserts advice of counsel as an affirmative defense, then the attorney client privilege is waived.

Rhino contends that its lawyer (Self) was misled as to the identity of the surety by some conduct of AIGTS/AHAC. Rhino itself never had any contact with AIGTS/AHAC. There is no contention that Self was told outright that AIGTS was the surety. In order for Self to have been misled, she must have relied on something said or done which caused her to make an assumption which turned out to be incorrect, and her reliance must have been justifiable under the circumstances. In order to prevail on this issue, Rhino must plead and prove that Self's assumption was reasonable/justified.

It is the element of justifiability which has been placed at issue by the affirmative claim asserted by Rhino. I believe that we are entitled to inquire into what investigation Self did or did not do to verify her assumption. This would include in-house discussions with other attorneys regarding the identity of the surety, as well as her examination of various documents and other resources available to her and which Carlsmith itself obtained and examined in connection with the withdrawal issue (SEC 10K, AIG website, Ledger's email to Granville and the response).

While I tend to agree with Tony that we are dealing with a work product issue, it seems to me that what we are asking for are "facts", not legal analysis. To what extent did she do an investigation to verify her assumption. What did she do to follow up on information which tended to show the correct identity of the surety. Did she ever ask AIGTS or anyone else who the surety was. These are factual inquiries. Rhone says that facts are discoverable, and that is what we are trying to ascertain.

Jim Lawhn

James H. Lawhn, Esq.
Oliver Lau Lawhn Ogawa & Nakamura
Attorneys At Law, A Law Corp.
600 Oceanview Center
707 Richards Street
Honolulu, HI 96813
Telephone: (808) 533-3999
Facsimile: (808) 533-0144

**CONFIDENTIAL COMMUNICATION**

**This e-mail message and any attachments are intended only for the use of the addressee named above and may contain information that is privileged and confidential. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you received this e-mail in error, please immediately notify the sender by replying to this e-mail message or by telephone, delete this e-mail from your computer, and destroy any printed copies. Thank you.**

10/24/03

Confirmation Report — Memory Send

Time      : Oct-24-03  15:06
Tel line  : +6714725487
Name      : Vernier & Maher,LLP

Job number          :   417

Date                :   Oct-24 15:03

To                  :   4771933

Document pages      :   03

Start time          :   Oct-24 15:03

End time            :   Oct-24 15:06

Pages sent          :   03

Status              :   OK

Job number    :  417          *** SEND SUCCESSFUL ***

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

## FACSIMILE TRANSMITTAL COVER SHEET

TO:   Mr. Antonio L. Cortes — 477 1933

FROM: Louie J. Yanza          DATE: October 24, 2003

RE:   United States of America for the Use and Benefit of Rhino Builders, Inc. v. Biogenesis Pacific, Inc., AIG Technical Services, Inc. and American Home Assurance Company; Biogenesis Pacific, Inc. v. Michael O'Connell and Michael Danforth; American Home Assurance Company v. Biogenesis Pacific, Inc.; U.S. District Court of Guam, Civil Case No. 02-00008

V&M FILE NO.: A-0025.1          NO. OF PAGES INCLUDING COVER SHEET:  3

IMPORTANT NOTE:  This fax is CONFIDENTIAL and may be covered by legal professional privilege. It must not be read, copied, disclosed or used by any person other than the above addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful.

DOCUMENTS/COMMENTS:

1.     Letter from Louie J. Yanza dated October 24, 2003.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE ABOVE LISTED NUMBER AND ASK FOR Valerie.