FILED
DISTRICT COURT OF GUAM

OCT 29 2003

MARY L. M. MORAN
CLERK OF COURT

223

1 James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
2 707 Richard Street, Suite 600
Honolulu, Hawaii 96813
3 Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144
4
Stephen D. Tom
5 WHITE & TOM
820 Mililani Street, Suite 711
6 Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
7 Facsimile No.: 808 599 4517

8 Louie J. Yanza
VERNIER & MAHER, LLP
9 115 Hesler Place, Ground Floor
Governor Joseph Flores Building
10 Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY
13
UNITED STATES DISTRICT COURT OF GUAM
14

| | |
|---|---|
| 15 UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) CIVIL CASE NO. 02-00008 |
| 16                    Plaintiff, | ) DEFENDANTS AIG TECHNICAL ) SERVICES, INC. AND AMERICAN HOME ) ASSURANCE COMPANY'S MOTION TO |
| 17           vs. | ) COMPEL RESPONSES TO SECOND ) REQUEST FOR PRODUCTION OF |
| 18 BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and | ) DOCUMENTS AND FOR DISCLOSURE ) OF CERTAIN PRIVILEGED |
| 19 AMERICAN HOME ASSURANCE COMPANY, | ) INFORMATION; MEMORANDUM OF ) POINTS AND AUTHORITIES |
| 20                   Defendants. | ) |
| 21 BIOGENESIS PACIFIC, INC., | ) [ORAL ARGUMENT REQUESTED] ) |
| 22           Counterclaimant, vs. | ) ) ) |
| 23 RHINO BUILDERS, INC., MICHAEL | ) ) |
| 24 O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) |
| 25                 Counter-Defendant. | ) ) |

ORIGINAL

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) |
| | ) |
| | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| | ) |
| | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| | ) |
| Cross-Claim | ) |
| Defendant. | ) |

**TO:** **Plaintiff RHINO BUILDERS, INC. and its attorney of record, Antonio L. Cortes, Esq.**

## MOTION TO COMPEL

This motion is made pursuant to FRCP Rule 37(a)(2) of the Federal Rules of Civil Procedure and is based on the accompanying Memorandum of Points and Authorities, the record of the proceedings and the papers on file herein, together with any and all arguments to be adduced at the hearing of the within entitled motion.

The Defendants AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") and AIG TECHNICAL SERVICES, INC. ("AIGTS") request an order compelling the Plaintiff RHINO BUILDERS, INC. ("RHINO") and Carlsmith Ball, LLP ("Carlsmith") law firm to provide discovery with respect to matters at issue in this litigation and with respect to which RHINO has asserted work-product and attorney-client privileges; and for the disclosure of the other miscellaneous documents from RHINO.

Dated this 28th day of October, 2003.

**VERNIER & MAHER, LLP**
Attorney for Defendants
**AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this litigation, RHINO has asserted an affirmative claim against defendants AIGTS and AMERICAN HOME, alleging in paragraph 37 of the Second Amended Complaint that AIGTS acted in bad faith by inducing RHINO to file suit against AIGTS instead of AMERICAN HOME. The foundation for this allegation rests in telephone and written communication between AIGTS and RHINO's counsel, Amy Self of Carlsmith's (Honolulu) office. According to the Affidavit of Amy Self, AIGTS "led her to believe that AHAC and AIGTS were part of the same corporation". Yanza Dec., Ex. "V". The Affidavit is conclusory and vague as to actually what was done, as well as to what Amy Self did to properly investigate and ascertain the identity of the surety. Amy Self drafted the original complaint which was filed March 20, 2002 and incorrectly named AIGTS as the surety in this Miller Act action. There is no allegation of any direct communication between RHINO and AIGTS or AMERICAN HOME, nor is there any allegation that anyone from AIGTS or AMERICAN HOME affirmatively told Amy Self that the surety was AIGTS and not AMERICAN HOME.

In this hornbook law that any reliance placed by Self upon her communication must have been reasonable or justified, and it is this element of reasonableness or justification which has been placed in issue by RHINO's claim and with respect to which AIGTS and AMERICAN HOME seek discovery. AIGTS and AMERICAN HOME seek to compel RHINO and Carlsmith to provide discovery with respect to the following areas:

1. What if any investigation Self did to identify the surety, or confirm her conclusion that AIGTS and AMERICAN HOME were part of the same corporation;

2

2.    What relevance, if any, Self gave to documentation in the files of Carlsmith showing the correct identity of the surety as well as the relationship of AIGTS and AMERICAN HOME to the AIG Group of companies, as well as what follow up investigation was done with regard to the data in these documents;

3.    What conversations Self had with her Carlsmith attorneys regarding the correct identity of the surety prior to the original complaint being filed;

4.    What consideration, if any, was given to simply calling AIGTS and seeking clarification of the identity of the surety; and

5.    What consideration, if any, was given to simply naming both AIGTS and AMERICAN HOME as the surety in the Complaint Self drafted.

At the deposition of Amy Self's supervising attorney (Thomason) testified that he always believed that the surety was AMERICAN HOME, yet when asked questions regarding communication between himself and Self, RHINO directed Thomason not to answer questions directed into these areas on the basis of work product privilege. As explained below, AIGTS and AMERICAN HOME believe that the work product privilege is: (i) inapplicable because the discovery is directed at eliciting facts, not legal impressions or conclusions; and (ii) any privilege has been waived by RHINO's placing "reasonableness/justification" for Self's conduct at issue in this litigation by seeking damages based upon her assumption or conclusion that AIGTS and AMERICAN HOME were part of the same corporation (the "at issue" exception to the work product privilege).

3

## II.   FACTUAL HISTORY

| Date | Event | Exhibit |
|------|-------|---------|
| 10-18-01 | Plaintiff's counsel (Ms. Self of Carlsmith-Hawaii) had a telephone conversation with AIGTS' Mr. Titherington asking for a Miller Act Claim form. She was advised by Mr. Titherington to send a notice of nonpayment to him at his office. | Yanza Dec., Ex. "U". |
| 10-22-01 | Plaintiff's counsel (Mr. Thomason of Carlsmith-Hawaii) sent a letter dated 10-22-01 to AMERICAN HOME's San Francisco underwriting office, with an attached a document entitled "Notice Of Claim On Bond", requesting a Miller Act Proof of Claim form. | Yanza Dec., Ex. "A". |
| 10-30-01 | Mr. Mark Titherington of AIGTS responded to Plaintiff's counsel by letter of 10-30-01 acknowledging receipt of the claim and transmitting a Proof of Claim form. | Yanza Dec., Ex. "B". |
| 01-09-02 | Plaintiff's counsel (Mr. Thomason) transmits the Proof of Claim form. The cover letter is addressed to Mr. Titherington of AMERICAN HOME. | Yanza Dec., Ex. "C". |
| 01-17-02 | AIGTS' Mr. Bruce Kahn acknowledged receipt of Plaintiff's Proof of Claim. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Yanza Dec., Ex. "D". |
| 02-21-02 | AIGTS' Mr. Kahn wrote Plaintiff's counsel advising that the Proof Of Claim states that the claim was denied due to the failure to file suit within the one-year limit prescribed by the Miller Act. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Yanza Dec., Ex. "E". |
| 03-11-02 | Plaintiff's counsel (Mr. Thomason) requests that the 02-21-02 denial be re-examined. | Yanza Dec., Ex. "F". |
| 03-19-02 | David Ledger (Carlsmith Guam) emails to Judeth Granville of AI Marine Adjusters, Inc., inquiring whether AIGTS is related to Ledger's current client AI Marine. Ledger states that AIGTS is the bonding company. | Yanza Dec., Ex. "G". |
| | Granville responds by clarifying that AMERICAN HOME is the "insurer," while AIGTS is a member company of American International Group, Inc. | |

4

| | | |
|---|---|---|
| 03-20-02 | Plaintiff files the Complaint. In the Complaint, Carlsmith named AIGTS as the Miller Act surety. | |
| | Plaintiff did not attempt service of the Complaint until June 2002. | |
| 04-09-02 | Thomason writes to RHINO that Carlsmith will be withdrawing due to a possible challenge by the surety. Thomason admits there is no conflict of interest or that the surety or an affiliated entity has not requested Carlsmith to withdraw. | Yanza Dec., Ex. "H". |
| 06-21-02 | AIGTS' Kahn advises Thomason that the claim is still denied. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Yanza Dec., Ex. "I". |
| 09-11-03 | Plaintiff responds to Defendants' Second Request for Production of Documents. | Yanza Dec., Ex. "J". |
| 09-29-03 | Plaintiff responds to Defendants' Second Set of Interrogatories. | Yanza Dec., Ex. "K". |
| 10-06-03 | Deposition of Terry E. Thomason. Mr. Cortes objects and advises Thomason not to answer based on attorney-work product privilege. | Yanza Dec., Ex. "L". |

## II. ANALYSIS

FRCP Rule 37 establishes that once a party or deponent refuses to provide discovery or provide a response, the requesting party may move the Court to compel discovery. Rule 37(a)(2) provides in pertinent part as follows:

> **Rule 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions**
>
> **(a) Motion for Order Compelling Disclosure or Discovery.** A party, upon reasonable notice to other parties and all person affected thereby, may apply for an order compelling disclosure or discovery as follows:
>
> \* \* \*
>
> **(2) Motion.**

5

**(A)** If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

**(B)** If a deponent fails to answer a question . . . the discovering party may move for an order compelling an answer,

. . .

III. **BECAUSE RHINO HAS ALLEGED IN ITS SECOND AMENDED COMPLAINT THAT ITS FORMER ATTORNEY CARLSMITH WAS INDUCED TO NAME AIGTS AS A DEFENDANT, RHINO HAS WAIVED PROTECTION OTHERWISE AFFORDED BY THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES.**

The Defendants seek disclosure of privileged information regarding only the basis for RHINO's former attorney's (Carlsmith) opinions, mental impressions, and actions undertaken to confirm who the surety is, discussions with RHINO concerning counsel and RHINO's belief that AIGTS was the surety.

RHINO has resisted the disclosure on the basis that the information is protected by attorney-client and work product privileges. Defendants assert that RHINO waived those privileges by alleging the Defendants induced the Carlsmith attorneys to name AIGTS.

When a party puts privileged matters at issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject. 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE, §2016.2 (1994).

The Ninth Circuit applies a 3-pronged test to determine whether a client has waived the privileges during litigation:

1. Assertion of the privilege as a result of some affirmative act;

2. Through the affirmative act, the asserting party places the protected information "at issue"; and

6

3. Allowing the privilege would deny the opposing party access to information vital to its defense.

*United States v. Amlani*, 169 F.3d 1189, 1195 (1999) (applying the test issued in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). This "at issue" exception to the privilege equally applies to the work product doctrine. *Walsh v. Seaboard Surety Co.*, 184 F.R.D. 494, 497 (D. Conn. 1999). Application of the test clearly shows RHINO has waived the privileges.

RHINO asserted the attorney-client and work product privileges and, at the same time, placed the privileged information at issue, when it alleged that AIGTS induced RHINO's former attorneys at Carlsmith to name AIGTS as a defendant instead of AMERICAN HOME. Second Amended Complaint, ¶37.

By making the allegations, RHINO has placed the otherwise protected information at issue. RHINO's allegations are essentially an affirmative defense, not a cause of action. After the Defendants filed their summary judgment motion to dismiss AIGTS on July 26, 2002, as AIGTS was not a surety, RHINO amended its Complaint to include the allegation that Defendants misled Plaintiff (Carlsmith) to believe AIGTS was the surety. See, Amended Complaint filed September 10, 2002 and Second Amended Complaint filed July 15, 2003. To avoid dismissal of AIGTS, RHINO is essentially claiming Defendants are estopped from dismissing AIGTS because the Defendants misled Carlsmith. RHINO's estoppel defense, which forms a portion of RHINO's bad faith claim, requires proof that:

> (1) that the party to be estopped must be apprised of the facts;
> (2) he must intend that his conduct will be acted upon, or act in such a manner that a party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
> (3) the party asserting the estoppel must be ignorant of the true state of the facts; and

7

1    (4) he must rely upon the conduct to his injury.

2    *Mobil Oil Guam, Inc. v. Lee*, 2003 Guam 15 (2003), ¶23.

3        When an estoppel defense is raised, as in this case, the attorney-client and

4    opinion work product privileges are waived because knowledge becomes the central

5    issue.    *WLIG-TV v. Cablevision Systems Corporation*, 879 F.Supp. 229 (E.D. N.Y.

6    1994).    The Plaintiff, in WLIG-TV, alleged fraudulent inducement and fraudulent

7    representations to toll a statute of limitations bar.  The WLIG-TV court reasoned that the

8    attorney's state of mind is discoverable because it is the attorney's reliance on the

9    defendant's representations, which representations led the attorney to delay in filing suit.

10   *WLIG-TV*, at 235.  The court held that because the plaintiff raised the equitable doctrine

11   of estoppel as a means of avoiding the statute of limitations, the attorney-client and work

12   product privileges were waived.

13       Also, in *Merritt v. Superior Court*, 9 Cal.App.3d 721 (Cal. Ct. App. 1970), the

14   defendants sought discovery of certain communications and the work product of the

15   plaintiff's attorney during preparation of the underlying lawsuit.  The plaintiff alleged that

16   counsel for the insurer had so confused plaintiff's counsel as to disable plaintiff from

17   settling the case within the policy limits.  The Merritt court upheld disclosure on the

18   grounds that plaintiff had placed in issue, the decisions, conclusions and mental state of

19   his attorney by alleging that his attorney's confusion led to the failure to settle.  The court

20   reasoned that since the plaintiff was necessarily forced to prove his case by reference to

21   the  mental  state  of  his  counsel,  the  defendant  was  entitled  to  inquire  into

22   communications and mental state relating to that issue.

23       Here, the Plaintiff must refer to Carlsmith's state of mind to prove that

24   AMERICAN HOME/AIGTS misled Carlsmith to believe AIGTS was the surety.  By

25   claiming Carlsmith attorneys were confused or misled, the Defendants need to question

8

the Plaintiff and its attorneys on the basis of their state of mind, why they believed AIGTS was the surety, and actions to confirm who the surety was when they drafted the Complaint, naming AIGTS as the surety, instead of AMERICAN HOME. See, *WLIG-TV*, at 235.

The privileged information is vital to Defendants' defense. Defendants' success in this action requires Defendants to show: (1) that they did not mislead Carlsmith in naming AIGTS; and, (2) that Carlsmith's reliance was unreasonable. *Lee*, at ¶25. Prejudice would result to the Defendants by their inability to test whether Plaintiff's supposed reliance was reasonable. *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D. Cal. 1976) (additional citations omitted). To permit the Plaintiff to produce evidence at trial that its attorneys were misled to believe that AIGTS was the surety, while successfully resisting disclosure of this evidence in discovery would be unfair to the Defendants. The Plaintiff may not practice trial by ambush.

Since the former Carlsmith lawyers who managed and supervised the case from the point of filing the claims through drafting and filing the complaint, will be called as witnesses to express their opinion as to who they thought was the surety, Defendants are entitled to question the attorneys on what facts constituted the basis of their opinion. See, *Walsh v. Seaboard Surety Company*, 184 F.R.D. 494 (D. Conn. 1999) (where plaintiff alleged that the surety "manipulated and controlled" the former attorney and "imposed coercive economic pressure" on him, plaintiff waived protection afforded by attorney-client and wok product privileges).

For their defense, the Defendants need information that shows Carlsmith's reliance on the Defendants' representations was unreasonable. *Lee*, at ¶25. The requested Discovery will establish what information Carlsmith acquired when communicating with AMERICAN HOME/AIGTS, and whether Carlsmith and RHINO

9

exercised due diligence in light of the wealth of information and documents pointing to who the true surety [AMERICAN HOME] was. Yanza Dec., Exs. "A - G", "M - U. Such discovery may lead to information that RHINO was advised by Carlsmith to forbear pursuing a claim against AMERICAN HOME, because (at least in Carlsmith's mind) AIGTS was the only possible surety. Discovery may also establish discussions amongst the Carlsmith attorneys about who the surety was. Ms. Amy Self, who drafted the complaint, was a new attorney and was not licensed to practice law until November 2001. Ms. Self needed supervision and direction, and the information gathered by Ms. Self relates to whether Carlsmith was reasonable in naming AIGTS instead of AMERICAN HOME. Discovery may reveal discussions among Carlsmith attorneys which show no reliance was ever placed on any alleged statements made on behalf of AMERICAN HOME, or that the Carlsmith attorneys had adequate knowledge, or means of obtaining such knowledge, about who the surety was. Discovery may reveal that the Carlsmith attorneys could (and should) have made inquiries into the American International Group's SEC 10K filing, Treasury List, and records of Hawaii Insurance Commissioner, which filing, list and records clearly show AMERICAN HOME as the surety, not AIGTS. Yanza Dec., Ex. "M". Discovery may reveal Carlsmith disregarded the Payment and Performance Bonds, which clearly shows AMERICAN HOME as the surety. Yanza Dec., Exs. "R" and "S". Indeed, in AIG's website, AIGTS is identified as a "claim company," rather than a surety. Discovery may reveal what reliance (if any) was placed on written correspondence from AIGTS, which correspondence calls the reader's attention to AMERICAN HOME as "the above referenced surety." Discovery may reveal what reliance was placed on an email from David Ledger's client stating that AMERICAN HOME was the insurer, and AIGTS was a member of the AIG Group of companies. See, Yanza Dec., Ex. "G". Given this wealth of documents in the possession of RHINO

10

and Carlsmith, Defendants should be permitted to question the Carlsmith attorneys, in particular, Amy Self, what was the basis of her opinion, which led her to believe AIGTS was the surety.

Importantly, the requested discovery cannot be obtained elsewhere. The direction, supervision, discussions, and instructions between and amongst the Carlsmith attorneys, as to the Defendants' representations and to the identity of the surety, are all within possession of the Carlsmith attorneys. There are no other avenues available to obtain the information.

The Defendants have a particularized and compelling need to ascertain whether Carlsmith's actions were reasonable. Without discovery of the attorney-client and Carlsmith's work product, the Defendants are unable to ascertain the basis and facts upon which the opinions of these witnesses are based. Since the Carlsmith lawyers will be called as witnesses by RHINO to express their opinions that they believed AMERICAN HOME was the surety, the Defendants should be able to depose these attorneys concerning the basis of their opinions. Prohibiting discovery will undoubtedly impair the Defendants' ability for effective cross-examination on a crucial issue, thereby prejudicing the Defendants' defense. See, *Bio-Rad Laboratory, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116 (N.D. Cal. 1990) (opinion work product of attorney is discoverable where attorney's opinion is at issue).

By placing Carlsmith's research and conclusions regarding the correct corporate identity of the surety "at issue" in this litigation, RHINO has waived the protection otherwise afforded by the attorney-client and work product doctrines.

The Defendants respectfully request disclosure from both RHINO and Carlsmith for the following:

11

1.    What if any investigation Self did to identify the surety, or confirm her conclusion that AIGTS and AMERICAN HOME were part of the same corporation;

2.    What relevance, if any, Self gave to documentation in the files of Carlsmith showing the correct identity of the surety as well as the relationship of AIGTS and AMERICAN HOME to the AIG Group of companies, as well as what follow up investigation was done with regard to the data in these documents;

3.    What conversations Self had with her Carlsmith attorneys regarding the correct identity of the surety prior to the original complaint being filed;

4.    What consideration, if any, was given to simply calling AIGTS and seeking clarification of the identity of the surety;

5.    What consideration, if any, was given to simply naming both AIGTS and AMERICAN HOME as the surety in the Complaint Self drafted;

6.    Production of un-redacted records, letters, memoranda, notes and documents after an in-camera inspection regarding the basis for Plaintiff and the Carlsmith attorneys' (Thomason and Self) opinion that AIGTS was the surety (see, Yanza Dec., Ex. "V");

7.    The actions and conduct of the Carlsmith attorneys and RHINO to verify and confirm whether AIGTS was the surety; and

8.    Enlargement of time to conduct the deposition of Carlsmith attorneys, Terry E. Thomason and Amy G. Self.

12

## IV. MISCELLANEOUS DISCOVERY

Defendants also request an order compelling RHINO to produce requested documents set forth in Defendants' Second Request for Production of Documents to Plaintiff, Request to Produce Nos. 6 and 7. See, Yanza Dec., Ex. "J".

With regard to Request to Produce No. 6, requesting the bank statements and cancelled checks of RHINO's three (3) bank accounts at the Bank of Hawaii, said request is relevant to RHINO's claims for damages. RHINO has asserted it had purchased items for the project without payment from BIOGENESIS. Production of said documents reveals whether RHINO had indeed purchased materials.

With regard to Request to Produce No. 7, requesting the documents memorializing conversations between Messrs. Gerald Lam and Alfred Garthe, III. The documents purport to establish or disprove the terms of the alleged subcontract.

Because RHINO has failed, without any justifiable basis, to provide discovery, the Defendants respectfully request an order dismissing RHINO's Miller claim for materials; or, in the alternative, an order compelling RHINO to produce said documents.

Rule 37(a)(4) allows for an award of expenses including attorney's fees in bringing forth a motion to compel discovery. It provides in pertinent part:

> **(4) Expenses and Sanctions.**
> **(A)** If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees . . .

The Defendants AMERICAN HOME and AIGTS respectfully request the Court to award the Defendants reasonable attorney's fees and costs for requiring the Defendants

13

to research, draft and argue the instant motion; and for the renewal of the deposition of the Carlsmith attorneys; and for costs.

## CONCLUSION

RHINO has waived the attorney client and work product privileges by claiming AIGTS "induced" Carlsmith to name AIGTS as the surety instead of AMERICAN HOME. RHINO has also failed to provide discovery supporting its claim of an alleged subcontract and discovery supporting its claim for materials. Therefore, Defendants are entitled to disclosure of the privileged information.

WHEREFORE, Defendants AMERICAN HOME and AIGTS respectfully request that an Order be entered granting the following relief:

A.  Dismissal of the Plaintiff RHINO's bad faith allegations; or, in the alternative,

B.  Compelling production and response of the following information;

    i.  What if any investigation Self did to identify the surety, or confirm her conclusion that AIGTS and AMERICAN HOME were part of the same corporation;

    ii.  What relevance, if any, Self gave to documentation in the files of Carlsmith showing the correct identity of the surety as well as the relationship of AIGTS and AMERICAN HOME to the AIG Group of companies, as well as what follow up investigation was done with regard to the data in these documents;

    iii.  What conversations Self had with her Carlsmith attorneys regarding the correct identity of the surety prior to the original complaint being filed;

    iv.  What consideration, if any, was given to simply calling AIGTS and seeking clarification of the identity of the surety;

    v.  What consideration, if any, was given to simply naming both AIGTS and AMERICAN HOME as the surety in the Complaint Self drafted;

14

vi.     Production of un-redacted records, letters, memoranda, notes and documents after an in-camera inspection regarding the basis for Plaintiff and the Carlsmith attorneys' (Self) opinion that AIGTS was the surety (Yanza Dec., Ex. "T");

vii.    The actions and conduct of the Carlsmith attorneys and RHINO to verify and confirm whether AIGTS was the surety;

viii.   Enlargement of time to conduct the deposition of Carlsmith attorneys, Terry E. Thomason and Amy G. Self;

ix.     Bank statements and cancelled checks of RHINO's three (3) bank accounts at the Bank of Hawaii from November 1, 2000 to April 30, 2001; and

x.      Notes, memoranda, diaries and documents memorializing conversations between RHINO, Gerald Lam and Alfred Garthe, III.

C.      An award of attorney's fees and costs in bringing this matter to the court's attention; and

D.      Such further relief as this court decrees just and necessary.

Respectfully submitted this 28th day of October, 2003.

VERNIER & MAHER, LLP
Attorney for Defendants
AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE
COMPANY

BY: _____
    LOUIE J. YANZA

15