ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **OPPOSITION TO MOTION TO COMPEL PRODUCTION OF PRIVILEGED MATTER** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

ORIGINAL

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Plaintiff") most respectfully submits the following opposition to the October 29, 2003 motion of Defendants American Home Assurance Co. and AIG Technical Services ("the Sureties") requesting an order requiring Plaintiff to produce certain privileged matter and attorney work product. .

Plaintiff's Opposition is on the grounds that: (1) The privileged and protected nature of the privileged matters sought by the Sureties has not been waived under applicable law; (2) that with respect to the miscellaneous discovery items for which AHAC and AIGTS seek compelled production, Plaintiff, who has already produced thousands of pages of documents, including cancelled checks and receipts, is willing to produce reasonable additional amounts of such documents once they are identified, has always so indicated, and has not been informally asked for these documents, or to meet and confer regarding any deficiency in the prior productions.

I. **THERE HAS BEEN NO WAIVER OF PRIVILEGE OR WORK PRODUCT PROTECTION UNDER APPLICABLE LAW.**

    A. **The Sureties Have Omitted to Determine What Body of Law Governs Their Motion.**

The correct analysis of the issues raised by the Sureties' motion must start at the beginning – a determination of what law governs the decision the Court must make on those issues. Rule 501 of the Federal Rules of Evidence provides, in pertinent part, that

2

> ... the privilege of a ... person ... shall be governed by the *principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.* However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person *... shall be determined in accordance with State law.*

[emphasis added] Accordingly, if the rule of decision is supplied by Guam law, the privilege of Plaintiff shall be governed by Guam law, but if the rule of decision is not supplied by Guam law, Plaintiff's privilege shall be governed by principles of the "Federal common law."[1]

It necessarily follows from this that one of the authorities relied upon by the Sureties to support their motion is not properly relied upon. That is, <u>Merritt v. Superior Court</u>, 9 Cal. App. 3d 721 (2d Dist. 1970), does not purport to set forth either the Federal common law or any portions of the California Code that have been adopted in Guam. Instead, the <u>Merritt</u> Court explicitly reasons from California Evidence Code §§ 950 through 962, none of which were adopted in Guam, and which are markedly dissimilar to the law of privilege that has been adopted in Guam. Further, the Guam Legislature not only declined to enact these sections of the California Codes, it affirmatively enacted *dissimilar* rules governing privilege. *cf.* 6 GCA §§ 501-503 *with* Cal Evid C. §§ 950 through 962. (Notably, Guam privilege law is also dissimilar to the state of the Federal common law of privilege during the

---

[1] For the sake of brevity, this brief will use the term "Federal Common Law" to mean "the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."

3

time that the Federal Rules of Evidence were being drafted. 6 GCA §§ 501-503 *with* 46 FRD 249-257 & 51 FRD 361-365.)

In sum, Guam chose not to adopt California's law governing attorney-client privilege, and a case that reasons from that law should not affect the decision this Court must make here. F.R.E. Rule 501.

### B. The Sureties' Motion Should Be Governed Guam Law, and if Not, then by the Federal Common Law.

Plaintiff's first cause of action in this case remains a claim under federal law – the Miller Act. Accordingly, Federal law will provide the rule of decision *for that cause of action*. The allegation by which the Sureties now assert that Plaintiff impliedly waived the attorney-client privilege, however, is *not* part of the Federal claim.

The Sureties' motion is based upon a particular allegation in the Complaint that was not present in the original complaint – that "AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it." Second Amended Complaint, at ¶ 37. [emphasis added]. This was not a part of the original Miller Act Complaint filed March 20, 2002. It first appeared in the portion that was added in the September 10, 2002 Amended Complaint as part of the bad faith claim added at that time. The Sureties' assertion that this allegation constituted a waiver of privilege is thus best viewed as part of a claim for which Guam law must provide the rule of decision. If so, FRE Rule 501 would appear to require that the privilege-waiver issue should be decided pursuant to Guam law.

4

As discussed below, however, the allegation that "AIG acted in bad faith and breached these duties by *inducing* Plaintiff to make its claim against it" does not constitute a waiver of the attorney-client privilege under either Guam law or the "Federal Common Law."

## C.   The Allegations at Issue.

The Sureties rely on several Court decisions, and Plaintiff will supply several others in this opposition, all of which need only be considered if the Court finds that Guam law does not dispose of this matter. To properly understand the applicability of those decisions to this motion, however, one must first pay close attention to what Plaintiff's allegations do and do not allege, considering the allegedly-offending language in the context of the other allegations relating to it. What Plaintiff actually alleges is this:

> 25. In or about October 2001, Plaintiff contacted Defendant American Home Assurance Co. (hereinafter "AHAC") to initiate the claims process and AHAC referred Plaintiff to Defendant AIG Technical Services, Inc. (hereinafter "AIG") to handle Plaintiff's claim against AHAC.
>
> 26. On or about October 22, 2001, Plaintiff sent AHAC the original of the letter and enclosure attached hereto as Exhibit "C" and incorporated herein by reference as if set forth fully.
>
> 27. On or about October 30, 2001, AIG responded to the letter to AHAC by providing Plaintiff with its claim form. A true and correct copy of AIG's response is attached hereto as Exhibit "D" and incorporated herein by reference as if set forth fully.
>
> 28. As required by AHAC, on or about January 9, 2002, Plaintiff then sent AIG the Proof of Claim form attached hereto as Exhibit "E" and incorporated herein by reference as if set forth fully.
>
> 29. On or about February 21, 2002, AIG denied Plaintiff's claim as untimely. A true and correct copy of AIG's denial of

> Plaintiff's claim on the bond is attached hereto as Exhibit "F" and incorporated herein by reference as if set forth fully.
>
> * * *
>
> 31. Upon information and belief, AHAC and AIG are owned by the same company and operate either as the same company or as a joint venture.
>
> * * *
>
> 33. If AHAC did not authorize AIG's denial of the claim, then AIG is liable for breach of implied warranty of authority.
>
> 34. Whether or not AHAC authorized AIG's denial of the claim, that denial was wrongful because the claim was timely, subjecting AIG to liability under 18 G.C.A. § 20402(3).
>
> 35. Both AHAC and AIG owed and continue to owe Plaintiff a duty of good faith and fair dealing arising out of the bond as well as a general tort duty of ordinary care.
>
> 36. AHAC acted in bad faith and breached these duties by referring Plaintiff to AIG.
>
> 37. AIG acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it, instead of AHAC, by denying the claim, by moving to dismiss this action because it was not brought against AHAC, and by citing [certain court decisions in its subsequently-withdrawn motion to dismiss].

Amended Complaint, filed September 10, 2002,[2] and Second Amended Complaint, filed July 15, 2003, at ¶¶ 25-29, 31, and 33-37.

Plaintiff submits that the first clause in paragraph 37, in this context, cannot be fairly read to mean that Plaintiff is putting the state of mind of its attorneys "at issue." The Complaint's plain language states that AIG induced "Plaintiff" to sue AIG, not Plaintiff's attorneys. *Id.*, ¶ 37. Its plain language states

---

[2] It bears noting that between the time these allegations were first made, over a year ago, and the time Plaintiff's former attorneys had to be deposed with respect to other allegations, the Sureties were quite content to proceed without the information requested in the instant motion.

6

that AIG did that "inducing" by responding to the claim Plaintiff made to AHAC, by standing in AHAC's place in the claims process, and by denying the claim. *Id.* ¶¶ 27 – 29. Further, the Complaint incorporates its Exhibit F, in which AIG further induces Plaintiff to sue it rather than AHAC by explaining to Plaintiff why AIGTS had denied the claim and instructing Plaintiff that "If you have any other documents or information you believe would be helpful for the Surety to review please feel free to provide them to [AIG]." *Id.,* ¶ 29, and Exhibit F thereto.

In sum, all the "inducements" alleged by Plaintiff are, by the explicit terms of the Complaint, the *non-privileged* communications between Plaintiff, through its attorneys, on the one hand, and AIGTS and AHAC on the other hand. Plaintiff's position therefore is, and has consistently been, that its allegations are based on non-privileged communications (as they clearly are by the Complaint's explicit terms), and that this portion of Plaintiff's Complaint has therefore not put its attorneys' thoughts at issue in any way and has not revealed its communications with its attorneys. Its allegations explicitly consist only of communications between Plaintiff's attorneys, on the one hand, and the Sureties, on the other hand. Because those communications are not privileged, including them in the complaint does not constitute a waiver of communications that are privileged, even if on the same subject.

As set forth below, neither Guam Law nor Federal common law regards the foregoing allegations as a waiver of the attorney client privilege or the attorney work product protection.

**D. There Has Been No Waiver under Guam Law.**

The Guam statute providing for waiver of the attorney-client privilege provides, in pertinent part, that

> Except as otherwise provided in 503(c) (lawyer-client privilege), ... is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, *has disclosed a significant part of the communication* or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege.

6 GCA § 502(a) [emphasis added]. Plaintiff's allegation that the Sureties' actions described in ¶¶ 25-36 of the Complaint breached its duty to honor its bond obligations in a good faith manner "by inducing Plaintiff to make its claim against" AIGTS instead of AHAC does not reveal a "significant part" of Plaintiff's communications with its attorneys regarding the identity of the surety. To the contrary, it *does not reveal any attorney-client communications at all* with respect to that subject. Accordingly, the attorney-client privilege established by 6 GCA § 503 is not waived in the only manner provided for its waiver by Guam statute.

And this statutorily-provided answer should be the final word. FRE Rule 501. Because this statute contains no provision for implied waiver where an

8

injured party alleges inducement based on a series of *non-privileged communications* between the opposing party and the injured party's attorney, no such waiver should be inserted by this honorable Court. *Inclusio unis est exclusion alterius*; *accord* Prigg v. Pennsylvania, 10 L. ed 1060, 1088 (Storey, J.) (where there is no qualification or restriction on a constitutional clause "we have no right to insert any which is not expressed and cannot be fairly implied.").

### E. Neither Has Been There Been Any Privilege Waiver under the Common Law of the United States.

Even though Plaintiff does not believe that the alleged privilege-waiving language is properly considered part of the Federal cause of action, Plaintiff does wish to point out that it believes the Sureties are mistaken insofar as they may contend that the above allegations waive the attorney-client privilege in any way.

First, Plaintiff must respond to the Federal authority supplied by the Sureties by pointing out that: (1) there are two conflicting current trends in the Federal case law regarding implied waiver; (2) that the trend recorded in the Sureties' authority is regularly criticized as erroneous by higher Courts in decisions that reflect a higher level of research and consideration; and (3) that the cases criticizing the Sureties' authority are in accord with long-standing rules of the Federal common law of privilege, while the Sureties' authority is not. Second, under the Hearn rule[3] relied upon by Sureties, which is not the rule that should be used, the Sureties motion should be denied because the Sureties cannot meet third branch, at least, of the Hearn test.

9

1.  **Cases Criticizing <u>Hearn</u>.**

Plaintiff would first call the Court's attention to <u>Rhone-Poulenc Rorer *et al.* v. Home Indemnity Company, *et al.*</u>, 32 F. 3d 851 (3d Cir. 1994). Plaintiff would point out that the research and analysis of that decision is unusually thorough. The <u>Rhone-Poulenc</u> decision starts with a review of what the attorney-client privilege is, and the function it is intended to serve in our legal system. 32 F. 3d at 862. That is, the <u>Rhone-Poulenc</u> Court began its analysis by recalling that the attorney-client privilege is *intended* to suppress relevant information in order "to serve the interests of justice by encouraging consultation with counsel free from the apprehension of disclosure." 32 F. 3d at 863. It then reviewed the state of the Federal common law regarding the waiver of the attorney-client privilege prior to the <u>Hearn</u> decision, noting that there has historically been no waiver except where the party holding the privilege asserted reliance on counsel, or advice of counsel, or having been misled by counsel as a defense, because in those cases the client has "taken the affirmative step in the litigation to place the advice of the attorney in issue." 32 F. 3d at 863. The <u>Rhone-Poulenc</u> Court then went on, however, to note that the purpose of the attorney-client privilege is improperly thwarted when a privilege waiver is extracted from the mere fact that the client's state of mind is at issue in the litigation. As stated by that Court:

---

[3]   The Sureties' Federal authority is derived from the decision of the U.S. District Court for the Eastern District of Washington in <u>Hearn v. Rhay</u>, 68 F.R.D. 574 (E.D. Wash. 1974).

10

> Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions. [citation to Hearn and another District Court case.] *These decisions are of dubious validity.* While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. *Relevance is not the standard for determining whether of not evidence should be protected from disclosure as privileged*, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

32 F 3d at 864 [emphasis added]. Accordingly, the Rhone-Poulenc Court held that "A party does not lose the privilege to protect attorney client communications from disclosure when his or her state of mind is put in issue in the action." 32 F 3d at 864. The thorough research analysis underlying the Rhone-Poulenc rule shows it to be the best exposition of the principles of Federal common law governing this motion. By that rule, Plaintiff's allegation in this case that the Sureties' actions and communications breached their duty of good faith and fair dealing by "inducing Plaintiff to make its claim against" AIG simply does not waive anything. It simply alleges that Plaintiff was induced by those acts to sue AIG.

The correctness of this analysis, and the fact that finding a waiver of the privilege every time a client makes an allegation describing his state of mind, has been recognized by academics and Courts alike. *See e.g.* Public Service Company of New Mexico v. Lyons, 10 P.3d 166, 172 (N.M. App. 2000), *citing The Perils of Privilege: Waiver and the Litigator,* 84 Mich. L.Rev. 1605, 1632-33 (1986) (waiver

11

should only be recognized where party has attempted to garble the truth by injecting privileged material itself into the case) and following the Rhone-Poulenc analysis. Other cases in the line opposing the Hearn rationale include Beneficial Franchise v. Bank One N.A., 205 F.R.D. 212, 217 (N.D. Ill. 2001) ("The impracticality of such a rule is revealed when viewed in reverse: waiver of the privilege would apply not only to assertions of affirmative defenses but also by parity of reasoning to claims raised by a plaintiff that require proof of a mental state--such as, a fraudulent inducement claim. Such a rule would exact too stiff a price for the assertion of commonly-pled claims and defenses.")[4]; and Hucko v. City of Oak Forest, 185 F.R.D. 526 (N.D. Ill 1999).

Clearly the case law is divided, and the authority cited by the Sureties is not uncontroverted. With respect to this division, Plaintiff's position is that the Rhone-Poulenc analysis, including its disapproval of Hearn, states the rule that best reflects "principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."

---

[4] Plaintiff finds this a particularly telling condemnation of the Sureties' position regarding the application of the Hearn test. Consider, for example, the form complaints for voiding written instruments entered into by fraudulent inducement at 12 A Am Jur. Pleading & Practice Forms, Fraud and Deceit, §§ 7, 8, 9, 10, 11, 12, *etc.* On the Sureties' theory, when the document was drafted by the injured party's attorney, and the fraudulent statement inducing the injured party to execute the agreement was delivered by the wrong-doer to the injured party's attorney (a notably *non-privileged communication*), all the injured party's *privileged* communications with his attorney would be waived, even though the cause of action concerned only the non-privileged communications alleged in the complaints.

12

## 2. Even under the <u>Hearn</u> Test, the Sureties' Motion Should Be Denied.

Carefully considered, the Sureties' arguments do not even meet the <u>Hearn</u> test, especially its third requirement.[5] <u>Hearn v. Rhay</u>, 68 F.R.D. 574 (E.D. Wash. 1974), was a criminal case, as was <u>U.S. v. Amlani</u>, 169 F. 3d 1189 (9th Cir. 1999), the case put forward by the Sureties to show that the Ninth Circuit has used the <u>Hearn</u> test. The Ninth Circuit has also, however, used the <u>Hearn</u> test in a civil action in circumstances that closely resemble those of this case. <u>Home Indemnity Company v. Land Powell Moss and Miller</u>, 43 F.3d 1322 (9th Cir. 1994). In that case, the Court of Appeals ruled that, where an attorney representing an insurance company defending a bad faith claim seeks privileged information about the plaintiff's and their attorneys' state of mind on the ground that the plaintiff put these matters "into issue" by bringing their bad faith claim and asserting that the underlying settlement negotiations failed because the insurance company's attorney did not timely tender the relief sought by the plaintiff, the privilege protected that information and was not waived by the institution of the bad faith claim. 43 F.3d at 1326.

---

[5] The third prong of the Hearn test requires the party asserting waiver to show that the privileged information is vital to their defense against the claim that put the information at issue. The sureties assert that they cannot defend against the allegation in ¶ 37 of the Complaint unless they can explore the "unreasonableness" of Plaintiff's counsel in relying on the Sureties' communications. Motion to Compel, filed October 29, 2003, at 9. Again, this allegation (which might be profitably reviewed on this point) does not allege anything about that Plaintiff's counsel. Again, between the time these allegations were first made in September 2002, over a year ago, and the time Plaintiff's former attorneys had to be deposed with respect to other allegations, the Sureties were quite content to proceed without the information requested in the instant motion. It is even more a stretch to consider *this*

13

In reaching that conclusion the Home Indemnity Court found that the Hearn test was not met by such a situation, which Plaintiff notes, does closely resemble the situation that is the subject of this motion.

Separately, the Home Indemnity Court addressed the attorney's claim that, when he was sued by the insurance company for contribution, the insurance company waived the privileged nature of communications governing the "reasonableness" of the amount it paid to the plaintiffs because, by seeking a contribution, it put the "reasonableness" of that amount at issue. The Home Indemnity Court also affirmed the denial of that theory of privilege waiver. The denial was on the ground that Home was able to prove reasonableness by other means. 43 F.3d at 1327. The Ninth Circuit approved the District Court's finding that it was Home's *choice* whether to justify the settlement on the basis of counsel's advice, thereby waiving the privilege on that issue, or to prove it otherwise. *Id.* Here, Plaintiff does not want to prove that it was induced to sue AIG by counsel's advice. It wants to prove that it was induced to sue AIG by AIG and AHAC's communications. It does not want to, and it has not, put the thought processes of its former attorneys at issue. Consistently with the applicable Ninth Circuit's application of the Hearn test, Plaintiff has waived nothing by making the allegations in paragraph 37 of its Complaint.

---

information to be "vital" than it was for the information held inaccessible by the Ninth Circuit Court of Appeals in the Home Indemnity case.

14

## II. THE SURETIES' MOTION TO COMPEL PRODUCTION OF MISCELANEOUS DOCUMENTS SHOULD BE DENIED AS UNRIPE.

Prior to the Sureties' motion to compel, counsel had several discussions regarding their incompatible positions on the privilege waiver issue. At not one of those discussions did the Sureties' counsel mention that it considered Plaintiff to be in default in the production of any of the Sureties' document requests.[6] Plaintiff has produced several thousands of pages of documents including myriad cancelled checks. This has been a significant burden that Plaintiff has borne without complaint despite the fact that it has not been able to obtain more than a few pages of documents from Defendants. Plaintiff is willing to search for more cancelled checks. Plaintiff believes it is too much, however, to ask Plaintiff for all the bank statements of all accounts without being more specific. Had counsel for the Sureties approached Plaintiff, prior to this motion, with the newly-asserted alleged deficiencies discussed on page 13 of the Sureties' motion, Plaintiff is confident that a production that adequately addressed the Sureties' legitimate needs could have been worked out, obviating the need for this portion of the motion. Plaintiff's counsel will endeavor to examine the subject document requests (which are not included in the moving papers) confer with the Sureties' counsel prior to the hearing of this matter and to arrange to cure any deficiencies in the voluminous document productions that Plaintiff has already made.

---

[6] This is well documented by Exhibits B, C, D, and E to the Sureties' Rule 37(a)(2) Certificate of Compliance, filed October 20, 2003.

15

For the purposes of this motion, however, Plaintiff asks that the motion be denied on the ground that Plaintiff has not had the opportunity to cure the asserted deficiencies in its document production. Dismissal of Plaintiff's case is not warranted by an alleged default in producing documents that has not been called to Plaintiff's attention prior to motion.

### III. CONCLUSION.

The privilege-waiver issue should be governed by Guam law, which does not provide for the waiver of the attorney-client privilege unless there has been a significant disclosure of privileged information by the holder of the privilege. Because there has been no such disclosure here, the Court should hold, under Guam law, that Plaintiff retains its highly-important, statutorily sanctioned, right to preserve the confidentiality of its attorney-client communications regarding the content of the allegations in its Complaint.

Should the Court determine, however, that the privilege waiver issued is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience, the motion should still be denied because that body of law, especially as applied by the United States Court of Appeals for the Ninth Circuit, holds, with only a few "dubious" exceptions, that a plaintiff may allege inducement in a complaint without waiving the privilege with respect to that allegation, even if the inducing communication was initially

16

communicated, in a non-privileged manner by the opposing party, to the plaintiff's attorney.

With respect to the remaining "miscellaneous" documents included on page 13 of the motion, the motion should be denied because Plaintiff's counsel has not had the opportunity to cure any defaults in Plaintiff's already significant production without Court supervision.

Respectfully submitted this 7th day of November 2003.

_____
Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.