1   James Lawhn
    OLIVER LAU LAWHN OGAWA & NAKAMURA
2   707 Richard Street, Suite 600
    Honolulu, Hawaii 96813
3   Telephone No.: (808) 533-3999
    Facsimile No.: (808) 533-0144
4
    Stephen D. Tom
5   WHITE & TOM
    820 Mililani Street, Suite 711
6   Honolulu, Hawaii 96813-2972
    Telephone No.: 808 547 5151
7   Facsimile No.: 808 599 4517
8   Louie J. Yanza
    VERNIER & MAHER, LLP
9   115 Hesler Place, Ground Floor
    Governor Joseph Flores Building
10  Hagåtña, Guam 96910
    Telephone No.: (671) 477-7059
11  Facsimile No.: (671) 472-5487
12  Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
    AMERICAN HOME ASSURANCE COMPANY
13
                    UNITED STATES DISTRICT COURT OF GUAM
14
    UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
15  AND BENEFIT OF RHINO BUILDERS, INC., )
                                          )
16              Plaintiff,                ) DECLARATION OF LOUIE J. YANZA IN
        vs.                               ) SUPPORT OF DEFENDANTS AIG
17                                        ) TECHNICAL SERVICES, INC. AND
    BIOGENESIS PACIFIC, INC., AIG ) AMERICAN HOME ASSURANCE
18  TECHNICAL SERVICES, INC. and ) COMPANY'S OPPOSITION TO
    AMERICAN HOME ASSURANCE ) PLAINTIFF'S MOTION TO AMEND
19  COMPANY,                              ) SCHEDULING ORDER TO EXTEND TIME
                                          ) FOR DISCOVERY MOTIONS BY FOUR
20              Defendants.               ) (4) DAYS
                                          )
21  BIOGENESIS PACIFIC, INC.,             )
                                          )
22              Counterclaimant,          )
                                          )
23        vs.                             )
                                          )
24  RHINO BUILDERS, INC., MICHAEL )
    O'CONNELL, MICHAEL DANFORTH, AND )
25  JOHN DOES 1-10,                       )
                                          )
                Counter-Defendant.        )

FILED
DISTRICT COURT OF GUAM

NOV 12 2003

MARY L. M. MORAN
CLERK OF COURT

235

ORIGINAL

1

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) |
| | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| | ) |
| Cross-Claim Defendant. | ) |
| | ) |

I, LOUIE J. YANZA, hereby declare as follows:

1. I make this declaration on personal knowledge, having personal knowledge of the facts herein contained, and am competent to testify if called upon as a witness at trial of the within entitled-action.

2. I am an individual over the age of 18. I am an attorney licensed to practice law within Guam and before the U.S. District Court of Guam.

3. I am an attorney with the law firm of VERNIER & MAHER, LLP, local counsel for Defendants AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") and AIG TECHNICAL SERVICES, INC. ("AIGTS").

4. On or after September 16, 2003, Mr. Antonio L. Cortes told me, in various telephone conversations, that the Defendants' discovery responses were insufficient.

5. On Friday, November 7, 2003, Mr. Cortes and I spoke regarding extending the deadline for filing discovery motions. I advised Mr. Cortes that I may stipulate to RHINO BUILDERS, INC.'s ("RHINO") request for an extension on the condition that any discovery motions to

2

be filed will not be filed against my clients, AIGTS and AMERICAN HOME.

6. I also conferred with off-island counsel, Stephen D. Tom, who then agreed to extend the deadline, via stipulation, so long as we conduct depositions of the principals of RHINO, Eugene and Michael O'Connell. I discussed this with Mr. Cortes on Sunday, November 9, 2003.

7. On November 10, 2003, Mr. Cortes and I spoke again regarding the extension. Mr. Cortes then imposed another condition that if we were to conduct the depositions of RHINO's principals, the Defendants were to provide Mr. Cortes with new discovery, particularly, a certificate or statement showing what the organizational structure of American International Group, Inc. is and the relationship between AMERICAN HOME and AIGTS.

8. I conferred with Mr. Tom on my discussion with Mr. Cortes on November 10, 2003, wherein we concluded that the conditions imposed by RHINO were unreasonable and we would not agree to extending the deadline to file discovery motions.

9. Attached hereto as Exhibit "A" are true and correct copies of the pertinent pages of David P. Ledger's transcript of his deposition taken on September 24, 2003, in the above-entitled case.

10. Attached hereto as Exhibit "B" are true and correct copies of the pertinent pages of Dana Gutierrez-Reyes' transcript of her deposition taken on September 26, 2003, in the above-entitled case.

3

11. Attached hereto as Exhibit "C" are true and correct copies of the pertinent pages of Donald V. Calvo's transcript of his deposition taken on October 1, 2003, in the above-entitled case.

12. Attached hereto as Exhibit "D" is a true and correct copy of Terry E. Thomason's April 9, 2002 letter, with redactions, to Michael O'Connell.

13. Attached hereto as Exhibit "E" is a true and correct copy of Sinforoso M. Tolentino's June 20, 2003 letter to Defendants' counsel and Mr. Cortes.

14. Attached hereto as Exhibit "F" is a true and correct copy of Defendants AIGTS and AMERICAN HOME's Responses to Plaintiff's Second Request for Production of Documents.

15. Attached hereto as Exhibit "G" is a true and correct copy of Defendant AMERICAN HOME's Responses to Plaintiff's Second Set of Interrogatories.

16. Attached hereto as Exhibit "H" is a true and correct copy of Defendant AIGTS' Responses to Plaintiff's Second Set of Interrogatories.

17. Attached hereto as Exhibit "I" is a true and correct copy of Defendant AIGTS' Responses to Plaintiff's First Request for Admissions.

I declare under penalty of perjury under the laws of Guam (6 GCA §4308) that the foregoing is true and correct.

Dated this 12th day of November, 2003, in Hagåtña, Guam.

LOUIE J. YANZA

4

# UNITED STATES DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC.,

                    Plaintiff,

vs.

BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY,

                    Defendants.

BIOGENESIS PACIFIC, INC.,

                    Counterclaimant,

vs.

RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10,

                    Counter-Defendant.

CIVIL CASE NO. 02-00008

📄 **COPY**

## DEPOSITION OF **DAVID P. LEDGER**

### Taken on Behalf of the Defendants

       BE IT REMEMBERED That, pursuant to the Federal Rules of Civil Procedure, the deposition of **DAVID P. LEDGER** was taken before Cecilia F. Flores, a Certified Shorthand Reporter, on Wednesday, the 24th day of September 2003, at 1:35 p.m. at the law office of Vernier & Maher, Ground Floor, 115 Hesler Place, Governor Joseph Flores Building, Hagatna, Guam.

**Exhibit**

**A**

1   company. It was a very brief conversation with Don. And I
2   think I finished up by saying, you know, let me think about
3   it and I'll get back to you. And that's been my only
4   conversation with Don Calvo.

5       Q   Well, did you think about it and talk to him later?
6       A   I did think about it, but I didn't talk to Don about
7   -- you know, the results of my thinking about it and the
8   results of what I did subsequent to that conversation --
9   those were -- because those issues involved potential
10  conflicts. My interaction with other partners in the firm
11  was limited to those partners who deal with those kinds of
12  issues.

13      Q   Okay, so let me step back here, Mr. Ledger. You
14  thought about it, you did some research, and you did come to
15  a conclusion?

16      A   I came -- yes, I did some research and I -- I'll
17  make this easy for you, and easy on me. At the time that Don
18  asked me that question, I was representing a company called
19  AI Marine Insurers, and the unique thing about that
20  particular representation was that the insured was Casamar
21  Guam and AI Marine Insurance Company was their liability
22  carrier. And when that case was assigned to me by AI Marine
23  Insurance, they specifically questioned that they, together
24  with Casamar, be identified as a Carlsmith client as opposed
25  to the typical situation where you're representing an insured

1  and an insurance company may be paying the cost of the

2  defense, but the insurance company is not your client.

3      Q    Right.

4      A    In this instance, they made a specific request that

5  we include them in our engagement letter and identify them as

6  a client, and we had done that.  So what I did after Don

7  brought this to my attention was I asked my contacts --

8      Q    Excuse me, Mr. Ledger.  So this AI Marine Insurance

9  Company was already ongoing when Don had approached you?

10     A    Correct.

11     Q    Okay.

12     A    It was ongoing for quite sometime.  So what I did

13  after Don came in and raised that -- raised that issue with

14  me, I contacted my person at AI Marine Insurance --

15     Q    Who was that?

16     A    Judith Granville, it's v-i-l-l-e at the end,

17  Granville.  Judith Granville was the person in charge of my

18  case and she's located in San Francisco.  And so I asked her

19  if AI Marine Insurance Adjusters or Company, I'm not sure, I

20  know it was AI Marine, I asked her if AI Marine Insurance was

21  an AIG company and -- and she said yes.  And then the next

22  thing that I asked her was whether or not she knew if AIG

23  Technical Services was also a company under the AIG umbrella,

24  and she also said yes to that question.  And at that point,

25  like I mentioned earlier, I basically turned over the

1  potential conflict issue and the analysis of what we should
2  or should not do to lawyers in our firm who are tasked with
3  making that determination.

4     Q    And which lawyers are those?

5     A    Primarily Jim Polish.

6     Q    Jim Polish. From where?

7     A    He's in our Los Angeles office.

8     Q    When you spoke to -- Ms. Granville?

9     A    Granville.

10    Q    Did she say anything to you to the extent that
11 Carlsmith Ball should withdraw from representing Rhino?

12    A    No, she did not.

13    Q    Did she ever raise that issue about Carlsmith Ball
14 having some conflict of interest?

15    A    No. She simply responded to the questions that I
16 posed to her. And I think the only other thing -- she said
17 yes to both of those questions that I posed to her, and then
18 she said -- she identified another entity that -- she told me
19 that AI Marine Insurance was one more step removed from AIG,
20 the parent company, and she identified the intermediary
21 company and it was AI Marine-something. And so that was the
22 chain between AI Marine Adjusters that I was working for and
23 the parent company, AIG; and that's all she said to me. And
24 I could tell from the response that she was just -- she said,
25 here's the information, you decide what you need to do.

1    Q    Did you tell Ms. Granville that Rhino Builders had

2    filed a claim against AIG Technical Services, Inc?

3    A    No, I didn't because I didn't know the names at that

4    point.  What I recall telling Ms. Granville the purpose of my

5    -- I explained to her why I was asking questions, and what I

6    told her was that a client of Carlsmith had a potential claim

7    that would name or directly involve as a Defendant and surety

8    company that may also be an AIG company.

9    Q    Okay.  And what did she say to that?

10   A    What did she say to that?

11   Q    Yes.

12   A    She didn't say anything.  I was just providing that

13   to her as background so she would understand why I was asking

14   if AI Marine Insurance was an AIG company.

15   Q    You said a potential claim against a surety.  Who,

16   in your knowledge, was the surety at that time when you spoke

17   to Ms. Granville?

18   A    I didn't know.

19   Q    But didn't Mr. Calvo tell you that it was perhaps

20   AIG Technical Services, Inc?

21   A    No, he wasn't that specific.  That's why I just

22   answered your question by saying that the only thing I knew

23   at that point was the surety -- in my mind, there was a

24   chance that the surety may have been an AIG company, and

25   that's what I was trying to figure out.

1   Q   This conversation with Ms. Granville, was it -- is

2   it Granville?

3   A   Granville.

4   Q   Was it memorialized in writing?

5   A   Actually, it was a conversation -- it was an

6   exchange of e-mails.

7   Q   Do you have those e-mails?

8   A   Do I have them with me?

9   Q   Not with you now --

10  A   No.

11  Q   -- but is it still in your computer?

12  A   Yes.  Actually, they're -- Mr. Tolentino has them.

13  The printouts.

14  Q   Okay.

15  A   I think there was -- there was one from me, one back

16  from Judy, and maybe one more.

17  Q   Okay.

18  A   I know there was the question and then there was the

19  answer.

20  Q   So the e-mail was supposed to be provided to us

21  yesterday, but that was still being, I guess, reviewed by

22  your LA office?

23  A   I'm not sure if it's the LA office that's reviewing

24  them -- reviewing the documents.  Rossi Tolentino has been

25  designated as the Guam Carlsmith attorney that is -- that's

1    been tasked with responding to the question for documents.

2      Q    Okay.

3      A    And he and other lawyers in the firm will make a
4 determination which ones can be produced. Mr. Cortes, as you
5 know, has waived his client's privilege to a certain extent;
6 and we're also analyzing the other documents in the file for
7 privileged -- content of privileged information.

8      Q    Did you tell Ms. Granville that Rhino Builders was
9 filing a claim, or just a potential client?

10      A    Just a potential client; and I didn't -- it was
11 sometime after that conversation that I first heard the name
12 Rhino Builders. And at that point I spoke to Ms. Granville,
13 I think -- and I just used the words like a Carlsmith client
14 or a lawyer in one of our other offices representing a client
15 has this potential claim that they may bring in Guam. It was
16 very, very general and very vague because I just didn't know
17 anything at the time.

18      Q    When was this conversation or this e-mail
19 correspondence?

20      A    I think the best way to put it in -- you would know
21 when we filed the Complaint, and I would say it took place
22 within 60 days, and I'm being -- I'm being very generous with
23 that.

24      Q    Sure.

25      A    It may have been within the 30 days prior to when

1    A    Okay.

2    Q    Did American Home Assurance Company, AIG Technical

3    Services, Inc. or any AIG affiliated company, to your

4    knowledge, speak to or communicate with your law firm in

5    terminating Carlsmith Ball's representation of Rhino

6    Builders?

7    A    Not to my knowledge.

8    Q    Okay.  Do you think you would know who would have

9    knowledge of that matter?

10    A    Is your question if that had happened, would I have

11    learned about it?

12    Q    No.  If it had happened, who do you think in your

13    law firm would know about it?

14    A    Oh.  Well, my best answer would be Terry Thomason

15    because the relationship with Rhino Builders, he was

16    essentially their lawyer within the firm as far as I knew.

17    Q    Have you represented Rhino Builders before?

18    A    Personally?

19    Q    Yes.

20    A    First time I heard that name was in the context of

21    this case.

22    Q    Okay.

23    A    Whether any other lawyer at Carlsmith or other than

24    Terry Thomason, I don't know, but not me.

25    Q    Going back now to Exhibit A, Mr. Ledger, Paragraph 2

1    Q    And the third one was when Mr. Tolentino had

2    approached you about your recollection of your communication

3    with Ms. Granville?

4    A    Yes, but there's -- the -- one of those needs to be

5    expanded a little bit because once Judy Granville told me

6    that AI Marine Insurance Adjusters was an AIG company under

7    the AIG umbrella, I communicated that information to the

8    people in our firm who were determining whether or not we

9    could continue to represent Rhino Builders based on a

10   potential conflict.

11          So that was the point of me getting information from

12   Judy Granville, so that I could give it to our conflicts

13   people and then let them work with that information and --

14   you know, do what they were supposed to do.

15   Q    That was Jim Polish?

16   A    Jim is the lead -- Jim is the lead conflicts

17   attorney, and he has people that help him do that conflicts

18   analysis.

19   Q    Okay.

20   A    So he may have referred my information to one of

21   those people.

22   Q    Let me step back here.

23   A    In fact, one of those people that did work on the

24   conflicts analysis is an attorney in our office in Honolulu,

25   Steven Egesdal.

1  that's when it happened.

2  Q    To the best of your recollection, would that have

3  been before the Rhino Complaint was filed or after?

4  A    Oh, long before.

5  Q    Long before?

6  A    Yes.

7        MR. YANZA:  Do you know what year?

8  A    I think we started working on the Soki Mona vs.

9  Casamar case in 2001.

10        MR. YANZA:  What part?

11  A    Boy --

12        MR. YANZA:  First half?  Second half?  The

13  Complaint was filed on March 20th, 2002.

14  A    I think it was early in 2001.

15  BY MR. CORTES:  (Continuing)

16  Q    Okay, fairly early on, about a quarter of the way

17  through the testimony here according to my notes, you said

18  "since the filing of the Rhino Complaint" or Louie asked you

19  since March 20th, 2002, has any AIG entity contacted you

20  about this case.  How about before?

21  A    Only -- well, AI Marine Insurance didn't contact me

22  about the case, I contacted them.  But to answer your

23  question, my only contact concerning any of this matter that

24  you folks are involved in has been limited to what I

25  described with respect to Judy Granville.

# UNITED STATES DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA FOR
USE AND BENEFIT OF RHINO
BUILDERS, INC.,

               Plaintiff,

    vs.

BIOGENESIS PACIFIC, INC., AIG
TECHNICAL SERVICES, INC., and
AMERICAN HOME ASSURANCE
COMPANY,

               Defendants.

BIOGENESIS PACIFIC, INC.,

               Counterclaimant,

    vs.

RHINO BUILDERS, INC., MICHAEL
O'CONNELL, MICHAEL DANFORTH,
AND JOHN DOES 1-10,

               Counter-Defendant.

**COPY**

## DEPOSITION OF DANA GUTIERREZ-REYES

Taken on Behalf of the Defendants

        BE IT REMEMBERED That, pursuant to the Federal Rules of Civil Procedure, the deposition of DANA GUTIERREZ-REYES was taken before Cecille A. Flores, a Certified Shorthand Reporter, on Friday, the 26th day of September 2003, at 1:30 p.m. in the offices of Vernier & Maher, 115 Hesler Place, Hagatna, Guam.

Flores Court Reporting
Suite 2E, Jugo Building
618 Route 8
Barrigada, Guam 96913
Tel.: (671) 734-1041 * Fax: (671) 632-2353

RECEIVED
SEP 30 ...
2:24 pm

Exhibit
B

1    A    Uh-huh.

2    Q    So if you can try to remember as much as you can.

3  So Don brings up the issue that...Hey, we may represent an

4  AIG affiliated company because AIG Technical Services, Inc.

5  sounds familiar?

6    A    Uh-huh.

7    Q    So what else was discussed?

8    A    I believe Don may have corresponded with Terry

9  Thomason at that point, but I don't remember exactly what the

10  correspondence was.

11    Q    Is this a written correspondence?

12    A    I'm not sure.  Don would -- you would have to ask

13  Don.  I just remember discussing that he had -- he was in

14  discussions with, I believe, Terry Thomason.  That's my

15  recollection.

16    Q    What was the discussions between you and Rossi

17  Tolentino know?

18    A    I believe -- same type of discussion.  Just that

19  there may be a potential conflict if we represented an

20  affiliate and that we may have to conflict out of the case.

21    Q    Has an AIG affiliated company, for example, AIG

22  Technical Services Inc. or American Home Assurance Company

23  approached you personally or communicated with you to

24  withdraw from representing Rhino Builders?

25    A    Not with me personally, no.

Dana Gutierrez-Reyes

1    Q    Do you know if any of these AIG affiliated companies
2  approached Rossi Tolentino, Donald Calvo, or Terry Thomason
3  to withdraw?

4    A    Not that I'm aware of.

5    Q    Same with David Ledger.  Do you know if anyone
6  approached David Ledger about withdrawing from representing
7  Rhino Builders?

8    A    No.

9    Q    Who made the decision to withdraw from representing
10  Rhino Builders?

11    A    The ultimate decision, I have no idea.  I don't
12  know.

13    Q    Whoever decided, decided on their own without your
14  involvement?

15    A    Yes.

16    Q    So you had no involvement with the decision to
17  withdraw?

18    A    No, I was an associate.

19    Q    In terms of drafting the Complaint, who made the
20  substantive allegations in the Complaint?  Was it you or
21  Terry Thomason or Amy Self or Donald Calvo?

22    A    I believe that Amy Self and Terry Thomason were
23  working on this.

24    Q    Have you ever written to Rhino Builders stating that
25  you will withdraw from representing them?

Dana Gutierrez-Reyes

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR ) | CIVIL CASE NO. CV02-0008 |
| USE AND BENEFIT OF RHINO ) | |
| BUILDERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BIOGENESIS PACIFIC, INC., and ) | |
| AIG TECHNICAL SERVICES INC., ) | |
| ) | |
| Defendants. ) | |

**DEPOSITION OF DONALD CALVO**

Taken on behalf of the Defendant

AIG Technical Services, Inc.

BE IT REMEMBERED That, pursuant to the Guam
Rules of Civil Procedure, the Deposition of DONALD CALVO was
taken before Cecilia F. Flores, Shorthand Reporter, on
Wednesday, the 1st day of October 2003, at 9:08 a.m. in the
Law Offices of Vernier & Maher, 115 Hesler Place, Governor
Joseph Flores Building, Hagatna, Guam 96910.

**COPY**

Cecilia F. Flores
Freelance Shorthand Reporter
Tel: (671) 632-0727 * Fax: (671) 632-5353
E-mail: flores@ite.net

---

APPEARANCES

Appearing on behalf of the plaintiff:

LAW OFFICES OF ANTONIO CORTES
233 Julale Center
424 West O'Brien Drive
Hagatna, GU 96910
By: Mr. Antonio Cortes, Esq.
Phone: (671) 477-1930

Appearing on behalf of the defendants AIG Technical Services
and American Home Assurance Company:

VERNIER & MAHER
115 Hesler Place
Ground Floor, Governor Joseph Flores Bldg.
Hagatna, GU 96910
By: Mr. Louie Yanza, Esq.
Phone: (671) 477-7059

Cecilia F. Flores
Freelance Shorthand Reporter
Tel: (671) 632-0727 * Fax: (671) 632-5353
E-mail: flores@ite.net

---

**INDEX**

| Examination | Direct | Cross | Redirect |
|---|---|---|---|
| By Mr. Yanza: | 4 | | 55 |
| By Mr. Cortes: | | 46 | |

Exhibit A: Complaint ................................. 5
Exhibit B: Letter Dated April 9, 2002............. 24
Exhibit C: Letter Dated 4/4/02 .................... 26
Exhibit D: Letter Dated 4/4/02 .................... 27
Exhibit E: Payment Bond............................. 27
Exhibit F: Performance Bond........................ 28
Exhibit G: Letter Dated August 15, 2001.......... 28
Exhibit H: Letter Dated October 22, 2001.......... 30
Exhibit I: Letter Dated October 30, 2001.......... 31
Exhibit J: Letter Dated January 9, 2002........... 31
Exhibit K: Letter Dated January 17, 2002.......... 31
Exhibit L: Letter Dated February 21, 2002......... 32
Exhibit M: Letter Dated March 11, 2002............ 32
Exhibit N: Letter Dated June 21, 2002.............. 32
Exhibit O: Letter Dated June 20, 2003.............. 32

**Exhibit**

**C**

---

Civil Case No. CV02-00008       4

1    **DONALD CALVO,**
2    called as a witness on behalf of the Defendant AIG, having
3    first been duly sworn, was examined and testified as follows:
18:01:09   4
18:01:09   5      **DIRECT EXAMINATION**
18:01:09   6   BY MR. YANZA:
18:01:12   7    Q.   Mr. Calvo, I'm Louie Yanza.
18:07:15   8    A.   Yeah, I know you.
18:07:46   9    Q.   I represent AIG Technical Services Inc. and American
18:07:52   10   Home Assurance Company in this lawsuit filed by your former
18:08:01   11   client, Rhino Builders. You know what a deposition is,
18:08:05   12   right?
18:08:06   13    A.   Yes, I do.
18:08:06   14    Q.   So I don't have to go through the stipulations?
18:08:11   15    A.   No, you don't need to.
18:08:47   16    Q.   If you want me to, I could.
18:08:59   17    A.   No, that's okay.
18:09:12   18    Q.   Okay. You are currently employed by Carlsmith Ball?
18:09:13   19    A.   That's correct.
18:09:14   20    Q.   In Guam?
18:09:15   21    A.   Uh-huh.
18:09:18   22    Q.   And you were served with a Subpoena about two weeks
18:09:21   23   ago to testify; correct?
18:09:24   24    A.   Yes, that's correct.
18:09:25   25    Q.   Don, do you know what this case is about?

Mr. Donald Calvo: October 1, 2003

Civil Case No. CV02-00008          45

17:30:29 1      A.   I would remember that; yes.

17:30:35 2      Q.   Have you ever told Rhino Builders or Michael

17:30:38 3 O'Connell or Eugene O'Connell or Alfred Garthe that you

17:30:45 4 wanted to continue representing Rhino Builders?

17:30:52 5      A.   No. Not personally; no.

17:31:01 6      Q.   Have you ever told Rhino Builders, Michael

17:31:04 7 O'Connell, Eugene O'Connell, or Alfred Garthe that Carlsmith

17:31:17 8 Ball was forced withdraw because an AIG affiliated company

17:31:29 9 told them to withdraw?

17:31:34 10      A.   No.

17:31:36 11      MR. CORTES: You can go ahead and answer this

17:31:40 12 line of questions, I guess, but if it goes on too long, I'm

17:31:57 13 going to object that, you know, he's already said he's never

17:32:04 14 spoke to them, so we could sit here all day and ask if he's

17:32:12 15 ever said this to him and that to him, but I mean, he's never

17:32:17 16 spoken to them and so -- I mean, wasting our time --

17:32:47 17      MR. YANZA: I'm covering my bases here,

17:32:50 18 Mr. Cortes. You raised it in the previous --

17:33:31 19      MR. CORTES: -- to all of our expense. He's

17:33:36 20 never spoken to them, obviously nobody -- he never spoke

17:33:41 21 to them on any subject.

17:33:44 22      MR. YANZA: Do you want to make some more

17:33:46 23 speeches?

17:33:51 24      MR. CORTES: That's an objection. I'm finished

17:33:53 25 with it.

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008          46

17:34:40 1      A.   And in answer to your question, no.

17:34:47 2      MR. YANZA: I have no further questions.

17:34:55 3      CROSS-EXAMINATION

17:35:00 4 BY MR. CORTES:

17:35:02 5      Q.   Mr. Calvo, if I may, Antonio Cortes for Rhino

17:35:16 6 Builders. A couple questions. You said, I believe, earlier

17:35:27 7 that a few days after you began helping with the filing of

17:35:33 8 this Complaint, AIG sounded familiar to you or something to

17:35:40 9 that effect; can you think carefully and elaborate for me as

17:35:56 10 much as possible why AIG would have sounded familiar to you?

17:36:02 11      A.   The only reason why I can think that it may have

17:36:06 12 sounded familiar to me is we typically have weekly meetings

17:36:20 13 and we talk about cases we're doing, and, you know, I may have

17:36:28 14 heard the name AI Marine before and AIG sounded -- It just

17:36:38 15 sounded familiar to me, so I thought it would be the prudent

17:36:44 16 thing to raise the issue with the attorney who does our

17:36:52 17 insurance work.

17:37:03 18      Q.   Well, to the best of your knowledge and belief, do

17:37:23 19 you think the name AI Marine is sufficiently similar to AIG

17:37:35 20 Technical Services? That that would have sparked your

17:37:39 21 memory, or do you think it more likely that you had actually

17:37:42 22 heard some talk of the firm or seen some document where the

17:38:05 23 firm represented an entity with the name AIG in it?

17:38:11 24      A.   No, it just sounded familiar to me.

17:38:17 25      Q.   From AI Marine or from another communication --

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008          47

17:38:23 1      A.   It could have been just in any kind of discussion

17:38:30 2 with regards to what type cases we were doing; nothing

17:38:35 3 specific. I mean, you just get a hunch that something sounds

17:38:53 4 familiar and the prudent thing to do is to raise it. There

17:39:04 5 is no specific instance or communication that led me to that

17:39:08 6 conclusion.

17:39:09 7      Q.   And I understand that, I'm just trying to delve

17:39:21 8 into as much as possible, you know, from your knowledge of

17:39:26 9 yourself, what would have -- whether AI Marine, which is not

17:39:35 10 all that similar to AIG Technical Services, because it lacks

17:39:44 11 the G, whether that would have sparked this feeling or

17:39:51 12 whether you think you may have seen another evidence of

17:39:56 13 something called AIG represented by Carlsmith?

17:40:12 14      A.   It wasn't really anything like that. It was more

17:40:18 15 of, you know, just hearing the name before and since we do

17:40:26 16 insurance work, making sure that we weren't really involved

17:40:35 17 in any cases with them.

17:40:37 18      Q.   Do you get conflicts check list circulated

17:40:47 19 throughout the office periodically?

17:40:49 20      A.   I think specifically only two of our cases that

14:54:14 21 we're handling personally.

14:54:17 22      Q.   You don't get a general list of new clients in your

14:54:24 23 firm mailbox periodically?

14:54:27 24      A.   Uhm -- we get -- I think we do get a list of new

14:54:36 25 cases; yes.

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008          48

14:54:40 1      Q.   Do you review those or --

14:54:42 2      A.   Yeah, I run through them quickly.

14:54:50 3      Q.   To the best of your recollection, you ever see any

14:55:08 4 entity called AIG on one of those lists?

14:55:15 5      A.   Not to my recollection; no.

14:55:50 6      Q.   So what about AIG sounded familiar? What part of

14:56:14 7 AIG Technical Services -- what part of that sounded familiar?

14:56:24 8      A.   I would just say the IG and, you know, it just

14:57:23 9 sounded familiar to me. I mean, there is a GIA. I mean,

14:57:36 10 theses companies all sound the same, so -- I mean, the

14:57:45 11 prudent thing would be to discuss it with maybe the attorney

14:57:55 12 in our office who does do insurance work to make sure there

14:58:00 13 is no issue.

14:58:01 14      Q.   So after your initial impression and your initial

14:58:11 15 discussion with David Ledger, up until today, have you ever

14:58:16 16 become aware that Carlsmith Ball represents an AIG related

14:58:26 17 entity?

14:58:27 18      A.   I did learn that there may be an affiliation between

14:58:38 19 AIG and AI Marine and I did not specifically remember that

14:58:47 20 the name was AI Marine.

14:58:54 21      Q.   Is it your understanding then that the reason that

14:59:01 22 Carlsmith ceased to be willing to represent Rhino in this

14:59:45 23 case was because that representation of the -- because of

14:59:55 24 Carlsmith's representation of the firm that may or may not be

14:59:58 25 AI Marine that you're --

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008    49

1   A. My recollection is there was -- From what I recall,
2 there was a conflict that existed. I don't recall the
3 specific nature of it, and the decision was that we needed to
4 withdraw.
5   Q. To the best of your knowledge, does Carlsmith still
6 represent the other party to this conflict?
7    MR. YANZA: Who's the other party?
8   A. Who are you referring to?
9 BY MR. CORTES: (Continuing)
10   Q. The one that caused the conflict? AI Marine or
11 whatever --
12    MR. YANZA: I object to that statement. That
13 caused a conflict? You're assuming facts not entered into
14 evidence, Mr. Cortes. Just ask questions; we don't have to
15 make statements.
16 BY MR. CORTES: (Continuing)
17   Q. Okay. My question is - and you needn't get so
18 defensive, I'm just asking for an answer - there was a
19 conflict that caused Rhino to be -- to cause Carlsmith to no
20 longer rest Rhino; is that correct?
21    MR. YANZA: I will object again because that was
22 not Mr. Calvo's testimony and there's no testimony so far as
23 I know that there is a conflict.
24   A. Yeah, I don't know what the nature of the conflict
25 was, if there was, but I know there was a determination we

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008    50

1 needed to withdraw and I would imagine there was potential
2 conflict; I don't know. I can't recall specifically. I
3 wasn't involved in that process again.
4 BY MR. CORTES: (Continuing)
5   Q. To the best of your knowledge, does David Ledger
6 still do work for the firm you discussed with him?
7   A. I don't know.
8   Q. What is the nature of Michelle Imata's practice,
9 aside from being managing partner?
10   A. Uhm -- In terms of what cases does she handle
11 specifically?
12   Q. Yeah. What type of law does she practice?
13   A. You know, I don't know specifically. I know she may
14 have had some experience in banking law. But aside from
15 that, I'm not sure.
16   Q. Who, to the best of your knowledge, besides David
17 Ledger, within the Carlsmith firm, works for insurance
18 companies?
19   A. I don't know. Locally, he's the only one I know
20 that does work for our firm.
21   Q. How about in Hawaii?
22   A. I don't know.
23   Q. What sort of work does Steve Ecstol do?
24   A. I believe he's in the corporate section.
25   Q. To the best of your knowledge, does Carlsmith Ball

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008    51

1 represent American Home Assurance Corporation? Company?
2   A. I don't know, Tony.
3   Q. Same question; to the best of your knowledge, does
4 Carlsmith Ball represent AIG Technical Services?
5   A. I don't know.
6   Q. Calling your attention to Exhibit H, would it be
7 fair to say that this is a demand by Carlsmith Ball --
8   A. No. Like I said, I'm not familiar with what this
9 document is.
10   Q. This document is addressed to American Home
11 Assurance Company; is that correct?
12   A. That's the name that's indicated on the -- as the
13 addressee; yes.
14   Q. And then the second paragraph, it says that Rhino
15 Builders gives notice that it tends to enforce its rights
16 under the Miller act. Is that right?
17    MR. YANZA: The document speaks for itself,
18 Tony.
19    MR. CORTES: I'm just asking if that's correct.
20 This is a preliminary question, so he can go ahead.
21   A. That's what the document says.
22 BY MR. CORTES: (Continuing)
23   Q. And then calling your attention to Exhibit I, this
24 document is on AIG Technical Services letterhead; is that
25 correct?

Mr. Donald Calvo: October 1, 2003

---

Civil Case No. CV02-00008    52

1   A. It appears that way; yes.
2   Q. And assuming that this is a response to Exhibit H --
3    MR. YANZA: Tony, you can't ask these line of
4 questions because Mr. Calvo has no knowledge of these
5 documents. He had no involvement with these documents.
6    MR. CORTES: Well, I'm just cross-examining him
7 on your testimony. These are your documents. And if I
8 recall correctly, you made a point out of the fact that the
9 bond was an AHAC bond, not an AIG bond, and I'm just
10 following up on that point.
11 BY MR. CORTES: (Continuing)
12   Q. So I'm just asking, Mr. Calvo, as an attorney, would
13 it be fair to say that if Exhibit I is a response to Exhibit
14 H, that the American Home Assurance Company has never
15 responded to Exhibit H?
16    MR. YANZA: Again, I will object to that line of
17 question because Mr. Calvo has been called as a witness to
18 this case rather than as an attorney. Are you naming him as
19 your expert?
20    MR. CORTES: I'm just cross-examining him on the
21 subject that you brought up, Mr. Yanza, which subject is -
22 and maybe you shouldn't have brought it up - and I'm going to
23 finish here, but I would just like to ask this question.
24   A. Again, this is the first time I've seen this
25 document, that I can recall, and I'm not going to go into the

Mr. Donald Calvo: October 1, 2003

Civil Case No. CV02-00008                                53

15:13:45 1   contents of it and make a determination as to what it is.
15:13:58 2   BY MR. CORTES: (Continuing)
15:13:59 3   Q.   Now, you testified earlier that you didn't recall
15:14:27 4   Carlsmith Ball trying to serve the Complaint upon AIGTS?
15:14:34 5   A.   I don't remember if we did. I don't recall.
15:14:42 6   Q.   If Carlsmith Ball represented AIGTS, wouldn't it be
15:14:53 7   unethical for them to serve AIGTS with a Complaint demanding
15:15:06 8   money of them?
15:15:08 9            MR. YANZA:  Come on, Tony, it calls for
15:15:14 10  speculation. Assuming?
15:15:15 11  A.   I can't answer that question. I don't know. I
15:15:26 12  mean, it calls for so many factors that are -- It's
15:15:43 13  speculation. I don't know.
15:15:48 14           MR. CORTES:  I don't think speculation is the
15:15:52 15  right objection. I think it is objectionable, but --
15:16:31 16  A.   It's speculation on my part. I mean, there's so
15:16:35 17  many --
15:16:36 18  BY MR. CORTES: (Continuing)
15:16:37 19  Q.   Can you answer the question?
15:16:40 20  A.   No, I can't.
15:16:41 21  Q.   Okay. How can we find out if Carlsmith Ball
15:16:47 22  represents AHAC? American Home Assurance Corp.? Is it
15:17:01 23  company or corporation? Company.
15:17:06 24  A.   I don't know. That's your job to figure out.
15:17:25 25  Q.   No, but I mean, how would Carlsmith, as a Carlsmith

Mr. Donald Calvo:  October 1, 2003

---

Civil Case No. CV02-00008                                54

15:17:25 1   attorney, would you go about finding out whether the firm
15:17:29 2   represented American Home Assurance Company?
15:17:32 3   A.   I would request a conflicts check and I guess the
15:17:38 4   administrative body of Carlsmith would run a conflicts check.
15:17:44 5   Q.   Same thing with AIG Technical Service; correct?
15:18:02 6   A.   Yeah, I would imagine it would be the same way.
15:18:08 7   Q.   Can you think of any other way other than requesting
15:18:10 8   a conflicts search?
15:18:42 9   A.   No.
15:18:44 10  Q.   Has David Ledger ever mentioned to you that he still
15:18:52 11  represents AI Marine?
15:18:56 12  A.   I don't have any recollection of that.
15:18:59 13  Q.   How about John Osborne? Has he ever mentioned to
15:19:03 14  you representing any --
15:19:05 15  A.   Not that I can recall; no.
15:19:07 16  Q.   To the best of your knowledge, is Guam Insurance
15:19:10 17  Adjusters related to AIG?
15:19:13 18  A.   I have no idea.
15:19:19 19  Q.   To the best of your knowledge, does Carlsmith Ball
15:19:22 20  represent Guam Insurance Adjusters?
15:19:27 21  A.   I'm not certain. I'm not certain.
15:19:34 22  Q.   If you had to bet on it, which way would you bet?
15:19:39 23           MR. YANZA:  That calls for speculation.
15:19:44 24           MR. CORTES:  No, I'm asking for the best of his
15:19:47 25  knowledge.

Mr. Donald Calvo:  October 1, 2003

---

Civil Case No. CV02-00008                                55

15:19:49 1   A.   To the best of my knowledge, I believe we may
15:19:56 2   represent them.
15:19:59 3   BY MR. CORTES: (Continuing)
15:20:00 4   Q.   Do you have knowledge that at one time you did
15:20:02 5   represent Guam Insurance Adjusters?
15:20:10 6   A.   Me specifically?
15:20:12 7   Q.   No, Carlsmith Ball.
15:20:18 8   A.   I'm sorry, can you repeat --
15:20:21 9   Q.   Carlsmith Ball?
15:20:23 10  A.   Can you repeat the question?
15:20:25 11  Q.   To the best of your knowledge, has Carlsmith Ball
15:20:30 12  ever represented Guam Insurance Adjusters?
15:20:34 13  A.   To the best of my knowledge, no.
15:21:14 14  Q.   So you cannot testify today that Carlsmith Ball
15:21:27 15  terminated its representation of AI Marine?
15:21:31 16  A.   No.
15:21:32 17  Q.   And to the best of your knowledge, you cannot
15:21:34 18  testify today that Carlsmith Ball terminated its
15:21:41 19  representation of any AIG related entity?
15:21:45 20  A.   No. I have no knowledge of that at all.
15:22:10 21           MR. CORTES:  That's all I have.
15:22:12 22           MR. YANZA:  Just a few more questions,
15:22:15 23  Mr. Calvo.
15:22:19 24           REDIRECT EXAMINATION
15:22:19 25  BY MR. YANZA:

Mr. Donald Calvo:  October 1, 2003

---

Civil Case No. CV02-00008                                56

15:22:22 1   Q.   Did you ever speak to Mr. John Osborne about this
15:22:28 2   case?
15:22:30 3   A.   No, I don't have any recollection of talking to John
15:22:38 4   Osborne about this case.
15:22:40 5   Q.   Did you ever raise the issue about a possible
15:22:46 6   conflict with Mr. Osborne?
15:22:46 7   A.   No, I don't recall.
15:22:48 8   Q.   Do you know who Judy Granville (phonetic) is?
15:22:56 9   A.   No, I don't.
15:22:57 10  Q.   Have you ever spoken to anyone from AI Marine
15:23:02 11  Adjusters or AI Marine?
15:23:23 12  A.   No.
15:23:27 13  Q.   After the Complaint was filed, did you attempt to
15:23:30 14  contact AIG Technical Service Inc. or American Home Assurance
15:23:36 15  Company?
15:23:39 16  A.   No.
15:23:41 17  Q.   You never wrote any letters to them after the
15:23:44 18  Complaint was filed?
15:23:46 19  A.   No. Not that I can recall; no.
15:23:51 20           MR. YANZA:  No further questions.
15:23:53 21
22           (Deposition concluded at 10:32 a.m.)
23
24
25

Mr. Donald Calvo:  October 1, 2003

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500    FAX (808) 523-0842

www.carlsmith.com

DIRECT DIAL NO.          E-MAIL TTHOMASON@CARLSMITH.COM          OUR REFERENCE NO.
(808) 523-2527                                                    053705-00001

April 9, 2002

**CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**VIA FACSIMILE & U.S. MAIL**

Mr. Michael O'Connell
President
Rhino Builders, Inc.
85-841 Farrington Highway #B
Waianae, Hawaii 96792

Re:    Status of Work and Recommendations

Dear Mr. O'Connell:

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.

**Exhibit**
D

Case 1:02-cv-00008    Document 238    Filed 11/12/2003    Page 22 of 68

Mr. Michael O'Connell
April 9, 2002
Page 2

2.    Transfer Of The Miller Act Claim.

We also have advised Rhino to transfer the BPI Miller Act claim to another firm in Guam. Our recommendation arose from the discovery of a possible challenge the surety may assert against Carlsmith's involvement in the case.

a.    Potential Challenge To Carlsmith.

This potential challenge would be based upon the rule of professional conduct for attorneys that precludes an attorney or law firm from representing one client in a matter that conflicts with the interests of another client. We are concerned that BPI's surety may claim that it is one of Carlsmith's clients and that Carlsmith cannot represent Rhino in the suit.

The potential challenge grows from the complex nature of the surety's corporate structure. In Rhino's Miller Act claim, the surety has identified itself as AIG Technical Services. AIG Technical Services is reportedly related in some manner to American International Group, Inc.

American International Group, Inc. is a very large company with one-hundred and thirty-six reported subsidiaries. For your review and information, we have enclosed a printout of the American International Group, Inc. reported list of subsidiaries as filed with the U.S. Securities and Exchange Commission.

BPI's supposed surety, AIG Technical Services is not listed among American International Group, Inc.'s subsidiaries, but it may be owned by one of the subsidiaries. In the Miller Act suit, Rhino's claim against BPI must also be asserted against AIG Technical Services as the surety for BPI. If BPI fails to pay Rhino for proven contract obligations, the surety must pay in BPI's place. Consequently, Rhino's interests and the interests of AIG Technical Services are adverse to each other.

At the time of our filing of Rhino's complaint, a company doing business in Guam under the name of A I Marine Adjusters was using the services of one of our trial attorneys in Guam. The services consisted of the defense of marine insurance claims. Although A I Marine Adjusters is also not listed on the American International Group, Inc.'s list of subsidiaries, a representative of A I Marine Adjusters told our trial attorney that A I Marine Adjusters is related in some way to American International Group.

The exact relationship among AIG Technical Services, Inc., A I Marine Adjusters and the various other companies of American International Group, Inc. remains unclear. Before an actual conflict would arise, A I Marine Adjusters and AIG Technical Services, Inc. must have shared management officials, boards of directors, or otherwise be so closely affiliated that Carlsmith would need to treat them as a single client.

We do not believe that an actual conflict has arisen. However, we are concerned that the surety could challenge Carlsmith's representation of Rhino during the suit. Such a challenge could come at any time, and Rhino should anticipate that the surety would use the challenge at the most inopportune time for Rhino to delay and increase the expenses of the suit. Even though the court may find no conflict exists, the presence of the issue could significantly increase Rhino's costs in pursuing the suit.

> b. Recommendation To Avoid The Problem.

Questions concerning whether one law firm or another may represent Rhino in this suit are completely irrelevant to Rhino's Miller Act claim. Fighting the potential conflict issue will not promote Rhino's chances of recovery, and will do nothing more than impose an unnecessary cost of litigation. Because Rhino had planned to transfer the

litigation of the case to different attorneys in Carlsmith's Guam office anyway, the transfer to another attorney (not from within Carlsmith) will not cause any significant disruption or delay. Carlsmith remains prepared to ensure all case files, evidence and other materials in Carlsmith's Honolulu office are delivered without delay to an attorney outside of Carlsmith that Rhino may select.

Under the circumstances, we recommend Rhino transfer the Miller Act claim to another Guam attorney to avoid unnecessary litigation and expense. As we have informed you, Anita Arriola is prepared to take the Miller Act claim if you elect to transfer the case to her. Ms. Arriola is a very experienced and highly qualified Guam litigation attorney. At this stage of the case, we believe transfer of the case to Ms. Arriola is in Rhino's best interests.

Mr. Michael O'Connell
April 9, 2002
Page 6

Mr. Michael O'Connell
April 9, 2002
Page 7

D.    Conclusion.

For the foregoing reasons, we recommend Rhino:

1.    Retain Anita Arriola as soon as possible to pursue Rhino's Miller

Act Claim;

Please call if you have any questions concerning the above matters.

Very truly yours,

Terry E. Thomason

TET:shl
Enclosure
1454296-1

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813    FAX (671) 477-4375
WWW.CARLSMITH.COM

DIRECT DIAL NO.
314

E-MAIL
SMT@CARLSMITH.COM

June 20, 2003

## VIA FACSIMILE [472-5487]

Louie J. Yanza, Esq.
McKeown Vernier Price & Maher
115 Hesler Place, Ground Floor
Governor Joseph Flores Bldg.
Hagåtña, Guam  96910

## VIA FACSIMILE [477-1933]

Antonio L. Cortes, Esq.
Attorney At Law
424 W. O'Brien Drive
Suite 233, Julale Center
Hagåtña, Guam  96910

Re:   United States of America for the Use and Benefit of Rhino Builders, Inc. v.
Biogenesis Pacific, Inc., et al; Biogenesis Pacific, Inc. v. Michael
O'Connell and Michael Danforth; and American Home Assurance
Company v. Biogenesis, Inc.; U.S.D.C. Civil Case No. 02-00008

Gentlemen:

As we have previously discussed, we agreed that our law firm would
respond to questions from you with respect to our withdrawal from the above-entitled
case with the understanding that (1) you would confer with each other as to the questions
asked; and (2) our response to any questions would be provided to both of you.

Louie J. Yanza, Esq.
Antonio L. Cortes, Esq.
June 20, 2003
Page 2

On or about June 10, 2003 we received the attached letter from Louie
Yanza requesting a response to the questions set forth below.  Our responses to the
questions are as follows:

- Did American Home Assurance Company ("American Home"), AIG
  Technical Services, Inc. ("AIGTS"), or an affiliated entity or agent
  request Carlsmith Ball LLP to withdraw from representing Rhino
  Builders, Inc. or was it an internal decision of the Carlsmith Ball law
  firm?

- If indeed American Home, AIGTS, or their affiliated entity or agent
  requested Carlsmith Ball to withdraw, please identify American
  Home's, AIGTS', or the affiliated entity or agent's employee who
  contacted your office, the reasons given for the request to withdraw, as
  well as the Carlsmith Ball employee or attorney who discussed the
  matter.

Neither American Home, AIGTS, nor any affiliated entity requested that
we withdraw from representing Rhino Builders, Inc.  We made the decision internally to
recommend that Rhino Builders, Inc. obtain substitute counsel after we verified that
AIGTS was a member of the American International Group of companies and that this
firm was representing affiliated companies in Guam and elsewhere.

Please contact me in writing if you have any further questions.

Very truly yours,

Sinforoso M. Tolentino

SMT:dai
3154343.1. 000901-00030

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813    FAX (671) 477-4375
WWW.CARLSMITH.COM

## FACSIMILE TRANSMISSION

UNLESS OTHERWISE INDICATED OR OBVIOUS FROM THE NATURE OF THE TRANSMITTAL, THE INFORMATION CONTAINED
IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF
THE INDIVIDUAL OR ENTITY NAMED BELOW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE
EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR OR ARE NOT SURE WHETHER IT IS PRIVILEGED, PLEASE IMMEDIATELY NOTIFY US BY COLLECT
TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE AT OUR
EXPENSE. THANK YOU.

**DATE:**        June 20, 2003

| TO:        Name            | Fax No.    | Phone No.  |
|----------------------------|------------|------------|
| Louie J. Yanza, Esq.       | 472-5487   | 477-7059   |
| Antonio L. Cortes, Esq.    | 477-1933   | 477-1933   |

**FROM:**        Sinforoso M. Tolentino

**NUMBER OF PAGES INCLUDING THIS COVER SHEET:**  3

**CASE NAME:**        Admin.
**CASE NUMBER:**        000901-00030

☐ ORIGINAL/COPY WILL BE MAILED        ☒ ORIGINAL/COPY WILL NOT BE MAILED

**MESSAGE:**

Please see attached letter.

If problems occur, please call our facsimile operator at (671) 472-6813.

James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: (808) 547-5151
Facsimile No.: (808) 599-4517

Attorneys for Defendants
AMERICAN HOME ASSURANCE COMPANY and
AIG TECHNICAL SERVICES, INC.

RECEIVED
AUG 20 2003
CALVO AND CLARK, LLP

RECEIVED
AUG 20 2003
BERMAN O'CONNOR
MANN & SHKLOV

# UNITED STATES DISTRICT COURT

# DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS |

//

//

1

Exhibit
F

BIOGENESIS PACIFIC, INC.,                    )
                                             )
                    Plaintiff,               )
                                             )
            vs.                              )
                                             )
RHINO   BUILDERS,   INC.,   MICHAEL          )
O'CONNELL, MICHAEL DANFORTH, AND             )
JOHN DOES 1-10,                              )
                                             )
                    Counter-Defendant.       )
_____
AMERICAN     HOME     ASSURANCE              )
COMPANY                                      )
                                             )
                    Cross-Claimant,          )
                                             )
            vs.                              )
                                             )
BIOGENESIS PACIFIC, INC.                     )
                                             )
                    Cross-Claim Defendant.   )

**PROPOUNDING PARTY: Plaintiff RHINO BUILDERS, INC.**

**RESPONDING PARTY:      Defendants AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY**

**SET:                            SECOND**

COMES NOW Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") AMERICAN HOME ASSURANCE COMPANY ("AHAC") through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's Second Request for Production of Documents propounded herein on July 17, 2003, as follows.

/ /

/ /

2

## RESPONSES TO SECOND REQUEST
## FOR PRODUCTION OF DOCUMENTS

**REQUEST TO PRODUCE NO. 1:**

**RESPONSE:** Objection. This request requires a response that is privileged work-product prepared in anticipation of litigation. However, without waiving said objection, Defendants respond as follows: Previously produced.

**REQUEST TO PRODUCE NO. 2:**

**RESPONSE:** Objection. This request requires a response that is privileged work-product prepared in anticipation of litigation. However, without waiving said objection, Defendants respond as follows: Previously produced.

**REQUEST TO PRODUCE NO. 3:**

**RESPONSE:** Objection. This request requires a response that is privileged work-product prepared in anticipation of litigation. Without waiving said objection, the Defendants AIGTS and AMERICAN HOME state that the documents requested have been previously provided to you. However, without waiving said objection, Defendants respond as follows: Previously produced.

**REQUEST TO PRODUCE NO. 4:**

**RESPONSE:** Objection. This request requires a response that is privileged work-product prepared in anticipation of litigation. However, without waiving said objection, Defendants respond as follows: Previously produced.

/ /

/ /

3

**REQUEST TO PRODUCE NO. 5:**

   **RESPONSE:**      Objection.    This request requires a response that is privileged work-product prepared in anticipation of litigation.  However, without waiving said objection, Defendants respond as follows:  Previously produced.

**REQUEST TO PRODUCE NO. 6:**

   **RESPONSE:**      Objection.    This request requires a response that is privileged work-product prepared in anticipation of litigation.  However, without waiving said objection, Defendants respond as follows:  Previously produced.

**REQUEST TO PRODUCE NO. 7:**

   **RESPONSE:**      Objection.    This request requires a response that is privileged work-product prepared in anticipation of litigation.  However, without waiving said objection, and without waiving the Defendants' right to bifurcate the trial, the Defendants respond as follows:  None.

**REQUEST TO PRODUCE NO. 8:**

   **RESPONSE:**      Objection.    This request requires a response that is privileged work-product prepared in anticipation of litigation.  However, without waiving said objection, and without waiving the Defendants' right to bifurcate the trial, the Defendants respond as follows:  None.

**REQUEST TO PRODUCE NO. 9:**

   **RESPONSE:**      Objection.    This request requires a response that is privileged work-product prepared in anticipation of litigation.  However, without waiving

4

said objection, and without waiving the Defendants' right to bifurcate the trial, the Defendants respond as follows: None.

**REQUEST TO PRODUCE NO. 10:**

**RESPONSE:** Objection. This request requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. However, without waiving said objection, the Defendants respond as follows: See, annual report previously produced.

Dated this 20th day of August, 2003.

VERNIER & MAHER, LLP
**Attorneys for Defendants**
**AMERICAN HOME ASSURANCE COMPANY**
**and AIG TECHNICAL SERVICES, INC.**


BY: _____
LOUIE J. YANZA

## CERTIFICATE OF SERVICE

I, LOUIE J. YANZA, hereby certify that on the 20th day of August, 2003, I caused a copy of the annexed **Defendants AIG Technical Services, Inc. and American Home Assurance Company's Responses to Plaintiff's Second Request for Production of Documents** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Monica Valle**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 20th day of August, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AMERICAN HOME ASSURANCE COMPANY and**
**AIG TECHNICAL SERVICES, INC.**

BY: _____
**LOUIE J. YANZA**

6

1  James Lawhn
   OLIVER LAU LAWHN OGAWA & NAKAMURA
2  707 Richard Street, Suite 600
   Honolulu, Hawaii 96813
3  Telephone No.: (808) 533-3999
   Facsimile No.: (808) 533-0144
4
   Stephen D. Tom
5  WHITE & TOM
   820 Mililani Street, Suite 711
6  Honolulu, Hawaii 96813-2972
   Telephone No.: (808) 547-5151
7  Facsimile No.: (808) 599-4517

8  Louie J. Yanza
   VERNIER & MAHER, LLP
9  115 Hesler Place, Ground Floor
   Governor Joseph Flores Building
10 Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 Attorneys for Defendants
   AIG TECHNICAL SERVICES, INC. and
13 AMERICAN HOME ASSURANCE COMPANY

14              UNITED STATES DISTRICT COURT

15                   DISTRICT OF GUAM

16 UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
   AND BENEFIT OF RHINO BUILDERS, INC., )
17                                    )
              Plaintiff,              )
18                                    )
          vs.                         )
19                                    ) DEFENDANT    AMERICAN    HOME
                                      ) ASSURANCE COMPANY'S RESPONSES
20 BIOGENESIS    PACIFIC,    INC.,  AIG ) TO PLAINTIFF'S SECOND SET OF
   TECHNICAL    SERVICES,    INC. and ) INTERROGATORIES
21 AMERICAN    HOME    ASSURANCE     )
   COMPANY,                           )
22                                    )
          Defendants.                 )
23 _____)

24 //

25 //

RECEIVED
SEP 16 2003
CALVO AND CLARK, LLP

RECEIVED
SEP 1 6 2003
BERMAN O'CONNOR
MANN & SHKLOV

RECEIVED

ORIGINAL

Exhibit
G

                        1

| | |
|---|---|
| BIOGENESIS PACIFIC, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) |
| Counter-Defendant. | ) |
| AMERICAN HOME ASSURANCE COMPANY | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| Cross-Claim Defendant. | ) |

**PROPOUNDING PARTY:** **Plaintiff RHINO BUILDERS, INC.**

**RESPONDING PARTY:** **Defendant AMERICAN HOME ASSURANCE COMPANY**

**SET:** **SECOND**

COMES NOW Defendant AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"), through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's Second Set of Interrogatories propounded herein on July 17, 2003.

Dated this _16_ day of September, 2003.

> **VERNIER & MAHER, LLP**
> **Attorneys for Defendants**
> **AIG TECHNICAL SERVICES, INC. and**
> **AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

2

# RESPONSES TO SECOND SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each and every contact or communication between, on the one hand, any officer, employee, control person, and attorney of any entity that would be correctly listed or identified in response to any of the interrogatories served upon AIGTS concurrently with these interrogatories ("the AIGTS interrogatories"), and, on the other hand, Carlsmith Ball LLP, regarding this litigation, at any time.

**RESPONSE**: Objection. This Interrogatory requires a response that is overly broad and burdensome, is not relevant, nor likely to lead to discovery of admissible evidence. The Defendant AMERICAN HOME further objects on the basis that the response is protected by the attorney-client privilege.

**INTERROGATORY NO. 2:**

Identify each and every shareholder of Al Marine.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant and not subject to discovery. Defendant AMERICAN HOME also objects to this Interrogatory in that it is overly broad and calls for information not within the possession of Defendant AMERICAN HOME.

**INTERROGATORY NO. 3:**

Identify each and every control person of Al Marine.

**RESPONSE**: <u>See</u>, responses to Interrogatory No. 2, *supra.*

3

**INTERROGATORY NO. 4:**

Identify each and every officer of AIGTS, AHAC, or AI Marine who either resides or works in either Hawaii or Guam.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. With regard to A.I. MARINE, Defendant AMERICAN HOME objects on the basis that the information is not in the possession of Defendant AMERICAN HOME.

**INTERROGATORY NO. 5:**

Has AI Marine had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE**: Objection, This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 6:**

Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege.

4

However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 7:**

Has AHAC had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 8:**

If AIGTS, AHAC, or AI Marine has had an attorney-client relationship with Carlsmith Ball LLP since March 2002, identify each and every Carlsmith attorney with whom AIGTS, AHAC or AI Marine communicates or has communicated in the course of that representation.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME further objects on the basis the Interrogatory is overly broad and burdensome. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

5

**INTERROGATORY NO. 9:**

For each and every entity that would correctly be identified as having some sort of relationship with Carlsmith Ball LLP in response to Interrogatory Nos. 15 and 16 in the AIGTS interrogatories, identify each and every Carlsmith attorney with whom that entity communicates or has communicated in the course of that representation.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME also objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 10:**

Identify each and every civil action in  Guam, Hawaii, or California in which Carlsmith Ball has made an appearance for AIGTS, AHAC, or Al Marine since March 2001.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

## INTERROGATORY NO. 11:

Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance, since March 2001, for any entity that would be identified in a correct response to Interrogatory Nos. 1 through 14 of the AIGTS interrogatories.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

## INTERROGATORY NO. 12:

Identify all civil actions brought since January 1998 in which a claim was made upon a surety bond issued by AHAC.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant or material and not subject to discovery, nor likely to lead to the discovery of admissible evidence. In addition, this interrogatory requires a response that is overly broad and burdensome.

## INTERROGATORY NO. 13:

For each such action, (a) state whether or not an affirmative defense was asserted based on a statute of limitations; (b) state whether AIGTS was named as a defendant; (c) state whether AHAC was named as a defendant; (d) state whether AIG

7

Claim Services, Inc. ("AIGCS"); was named as a defendant; (e) list any other entities that would be identified in a correct responses to Interrogatory Nos. 1 though 13 of the AIGTS interrogatories that was named as a defendant; (f) state whether, prior to the litigation, the claimant was directed to make its claim through AIGTS or AIGCS; (g) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on the basis of a statute of limitations; (h) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on any other basis; and (i) identify Plaintiff's counsel.

**RESPONSE**: See, response to Interrogatory No. 12, *supra*.

**INTERROGATORY NO. 14:**

Did AHAC authorize AIGTS to deny Rhino's pre-litigaiton claim, either when first submitted or during the requested reconsideration of AIGTS's first denial?

**RESPONSE**: Yes. As claims processor, AIGTS is authorized to act on AMERICAN HOME's behalf.

**INTERROGATORY NO. 15:**

State the percentage of AIGTS's voting securities owned by AIG Inc. at all times between March 2001 and the present.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery, and the information sought is not within possession of the Defendant.

8

**INTERROGATORY NO. 16:**

State each and every fact that allows Vernier & Maher to represent both AIGTS and you in this action despite the provisions of Rules 1.6 and 1.7 of the ABA Model Rules of Professional Conduct.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant, nor likely to lead to the discovery of admissible evidence, and not subject to discovery. Defendant AMERICAN HOME further objects to this Interrogatory on the basis that the responses are protected by the attorney-client privilege and the subject of confidential attorney-client communications.

**FOR OBJECTIONS:**

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

9

**VERIFICATION**

I, BRUCE KAHN, hereby declare that I am an authorized representative of AMERICAN HOME ASSURANCE COMPANY; that I have read the foregoing Defendant AMERICAN HOME ASSURANCE COMPANY's Responses to Plaintiff's Second Set of Interrogatories and know the contents thereof; that the same is true and correct upon my knowledge, information and belief.

I declare under the penalty of perjury, under the laws of Guam (6 G.C.A. §4308), that foregoing is true and correct.

Executed at New York, New York, this 18th day of August, 2003.

**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
BRUCE W. KAHN
Its Duly Authorized Representative

8

## CERTIFICATE OF SERVICE

I, LOUIE J. YANZA, hereby certify that on the 16th day of September, 2003, I caused a copy of the annexed **Defendant AMERICAN HOME ASSURANCE COMPANY's Responses to Plaintiff's Second Set of Interrogatories** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Catherine M. Bejerana**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 16th day of September, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

11

1    James Lawhn
     OLIVER LAU LAWHN OGAWA & NAKAMURA
2    707 Richard Street, Suite 600
     Honolulu, Hawaii 96813
3    Telephone No.: (808) 533-3999
     Facsimile No.: (808) 533-0144
4

5    Stephen D. Tom
     WHITE & TOM
     820 Mililani Street, Suite 711
6    Honolulu, Hawaii 96813-2972
     Telephone No.: (808) 547-5151
7    Facsimile No.: (808) 599-4517

8    Louie J. Yanza
     VERNIER & MAHER, LLP
9    115 Hesler Place, Ground Floor
     Governor Joseph Flores Building
10    Hagåtña, Guam 96910
     Telephone No.: (671) 477-7059
11    Facsimile No.: (671) 472-5487

12    Attorneys for Defendants
     AIG TECHNICAL SERVICES, INC. and
13    AMERICAN HOME ASSURANCE COMPANY

RECEIVED
SEP 16 2003
CALVO AND CLARK, LLP

14            **UNITED STATES DISTRICT COURT**

15                **DISTRICT OF GUAM**

16   UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
     AND BENEFIT OF RHINO BUILDERS, INC., )
17                             )
            Plaintiff, )
18                             )
              vs. ) **DEFENDANT AIG TECHNICAL**
19                             ) **SERVICES, INC.'S RESPONSES TO**
     BIOGENESIS PACIFIC, INC., AIG ) **PLAINTIFF'S SECOND SET OF**
20   TECHNICAL SERVICES, INC. and ) **INTERROGATORIES**
     AMERICAN HOME ASSURANCE )
21   COMPANY, )
                            )
22            Defendants. )
23   _____ )

RECEIVED

24   //

SEP 1 6 2003

25   //

RECEIVED 9/17/03

RECEIVED SEP 1 6 2003

BERMAN O'CONNOR
MANN & SHKLOV

ORIGINAL

1

Exhibit
H

|   |   |
|---|---|
| BIOGENESIS PACIFIC, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) |
| Counter-Defendant. | ) |
| AMERICAN HOME ASSURANCE COMPANY | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| Cross-Claim Defendant. | ) |

**PROPOUNDING PARTY: Plaintiff RHINO BUILDERS, INC.**

**RESPONDING PARTY:   Defendant AIG TECHNICAL SERVICES, INC.**

**SET:                          SECOND**

COMES NOW Defendant AIG TECHNICAL SERVICES, INC. ("AIGTS"), through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's Second Set of Interrogatories propounded herein on July 17, 2003.

Dated this _16th_ day of September, 2003.

> **VERNIER & MAHER, LLP**
> **Attorneys for Defendants**
> **AIG TECHNICAL SERVICES, INC. and**
> **AMERICAN HOME ASSURANCE COMPANY**

BY: ~~LOUIE J. YANZA~~

2

# RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify every member of the American International Group, Inc. ("AIG Inc.")

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant and not subject to discovery. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 2:**

Identify every parent or holding company of AIG Inc. and every entity owning 5% or more of its voting securities.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 3:**

Identify every subsidiary of each member of AIG Inc.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without

3

waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

## INTERROGATORY NO. 4:

Identify every affiliate of each member of AIG Inc.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

## INTERROGATORY NO. 5:

Identify any parent or holding company of AIGTS.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

## INTERROGATORY NO. 6:

Identify any parent or holding company of AI Marine.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and

4

burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 7:**

Identify any parent or holding company of AHAC.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 8:**

Identify the control group or control person of AIGTS.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 9:**

Identify the control group or control person of Al Marine.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery.

5

However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 10:**

Identify the control group or control person of AHAC.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 11:**

Identify every entity owning 5% or more of the voting securities of AIGTS.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 12:**

Identify every entity owning 5% or more of the voting securities of AI Marine.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without

6

waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 13:**

Identify every entity owning 5% or more of the voting securities of AHAC.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 14:**

For each entity identified in any of the foregoing Interrogatory Nos. 1 though 13 that is a partnership or a joint venture, separately identify every partner or joint venture.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Further, this interrogatory uses the terms "partnership" and "joint venture" without definitions and calls for a legal conclusion. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 15:**

List each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 though 14 that has any sort of attorney-client relationship with the law form of Carlsmith Ball LLP or any of the attorneys who are

7

members, partners, or employees, of that firm, or any attorneys working for that firm on any sort of contractual basis.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory requires a response that is protected by the attorney-client privilege. However, without waiving said objections, the Defendant AIGTS responds as follows: Defendant is without knowledge of the information sought.

**INTERROGATORY NO. 16**:

For each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 though 14, or named in any of those interrogatories, that owns any shares in AIGTS, state how many shares it owns and what percentage of AIGTS's shares that holding represents.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. However, without waiving said objections, the Defendant AIGTS responds as follows: Defendant is without knowledge of the information sought.

**INTERROGATORY NO. 17**:

Identify each and every officer, employee, control person, and attorney of AHAC, AIGTS, or any entity listed or identified in response to any of the foregoing Interrogatory Nos. 15 and 16 who has contacted, been contacted by, or communicated with Carlsmith Ball LLP regarding this litigation at any time.

**RESPONSE**: Mark Titherington, Bruce Kahn, Bill Phillips, Stephen Tom and Louie J. Yanza

8

DEFENDANT AIG TECHNICAL SERVICES, INC,'S RESPONSES
TO PLAINTIFF'S SECOND SET OF INTERROGATORIES
Rhino Builders, Inc. v. Biogenesis Pacific, Inc., et al.
U.S. District Court of Guam, Civil Action No. 02-00008

FOR OBJECTIONS:

VERNIER & MAHER, LLP
Attorneys for Defendants
AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

BY: _____
LOUIE J. YANZA

**VERIFICATION**

I, BRUCE KAHN, hereby declare that I am an authorized representative of AIG TECHNICAL SERVICES, INC.; that I have read the foregoing Defendant AIG TECHNICAL SERVICES, INC.'s Responses to Plaintiff's Second Set of Interrogatories and know the contents thereof; that the same is true and correct upon my knowledge, information and belief.

I declare under the penalty of perjury, under the laws of Guam (6 G.C.A. §4308), that foregoing is true and correct.

Executed at New York, New York, this 8th day of August, 2003.

**AIG TECHNICAL SERVICES, INC.**

BY: _____

**BRUCE KAHN**
Its Duly Authorized Representative

9

## CERTIFICATE OF SERVICE

I, LOUIE J. YANZA, hereby certify that on the _16th_ day of September, 2003, I caused a copy of the annexed **Defendant AIG Technical Services, Inc.'s Responses to Plaintiff's Second Set of Interrogatories** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Catherine M. Bejerana**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this _16_ day of September, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
**LOUIE J. YANZA**

11

1 │ James Lawhn
│ OLIVER LAU LAWHN OGAWA & NAKAMURA
2 │ 707 Richard Street, Suite 600
│ Honolulu, Hawaii 96813
3 │ Telephone No.: (808) 533-3999
│ Facsimile No.: (808) 533-0144
4 │
│ Stephen D. Tom
5 │ WHITE & TOM
│ 820 Mililani Street, Suite 711
6 │ Honolulu, Hawaii 96813-2972
│ Telephone No.: (808) 547-5151
7 │ Facsimile No.: (808) 599-4517
8 │ Louie J. Yanza
│ VERNIER & MAHER, LLP
9 │ 115 Hesler Place, Ground Floor
│ Governor Joseph Flores Building
10 │ Hagåtña, Guam 96910
│ Telephone No.: (671) 477-7059
11 │ Facsimile No.: (671) 472-5487
12 │ Attorneys for Defendants
│ AIG TECHNICAL SERVICES, INC. and
13 │ AMERICAN HOME ASSURANCE COMPANY

RECEIVED
SEP 16 2003
CALVO AND CLARK, LLP

14 │ **UNITED STATES DISTRICT COURT**

15 │ **DISTRICT OF GUAM**

16 │ UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
│ AND BENEFIT OF RHINO BUILDERS, INC., )
17 │ )
│ Plaintiff, )
18 │ )
│ )
│ vs. )
19 │ ) **DEFENDANT AIG TECHNICAL**
│ ) **SERVICES, INC.'S RESPONSES TO**
20 │ BIOGENESIS PACIFIC, INC., AIG ) **PLAINTIFF'S FIRST REQUEST FOR**
│ TECHNICAL SERVICES, INC. and ) **ADMISSIONS**
21 │ AMERICAN HOME ASSURANCE )
│ COMPANY, )
22 │ )
│ Defendants. )
23 │ _____ )

24 │ //

25 │ //

BERMAN O'CONNOR
MANN & SHKLOV

3:50 pm dw
**RECEIVED**
SEP 1 6 2003

RECEIVED SEP 1 6 2003

1

ORIGINAL

Exhibit

|  |  |
|---|---|
| BIOGENESIS PACIFIC, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) ) ) |
| Counter-Defendant. | ) |
| AMERICAN HOME ASSURANCE COMPANY | ) ) |
| Cross-Claimant, | ) ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) |
| Cross-Claim Defendant. | ) |

**PROPOUNDING PARTY: Plaintiff RHINO BUILDERS, INC.**

**RESPONDING PARTY:  Defendant AIG TECHNICAL SERVICES, INC.**

**SET:  FIRST**

COMES NOW Defendant AIG TECHNICAL SERVICES, INC. ("AIGTS"), through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's First Request for Admissions propounded herein on July 17, 2003, as follows.

/ /

/ /

2

# AIG TECHNICAL SERVICES, INC.'S RESPONSES
## TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Admit that American International Group, Inc., or an entity related to it named American International Companies, answers telephone calls made to numbers listed in the name of American Home Assurance Co. ("AHAC").

**RESPONSE:**　　　Defendants admit only Defendant AIGTS is the claims servicing division of American International Group, Inc. ("AIG"), among other things, responsible for handling claims asserted against bonds issued by AIG sureties, including AMERICAN HOME ASSURANCE COMPANY ("AHAC").

**REQUEST FOR ADMISSION NO. 2:**

Admit that American International Group, Inc., or an entity related to it named American International Companies, refers, to AIGTS, claimants who seek to make claims upon surety bonds issued by AHAC.

**RESPONSE:**　　　See, response to Request for Admission No. 1 above.

**REQUEST FOR ADMISSION NO. 3:**

Admit that, at the time AIGTS Rhino was forced to bring this action on March 20, 2002 to preserve its statute-of-limitations position based on the truck use ending a year earlier, AIGTS had been informed by Rhino that Rhino had continued to furnish and supply equipment and materials to BPI for use on the Roofing Contract until March 20, 2001, at least.

**RESPONSE:**　　　Deny.

3

**REQUEST FOR ADMISSION NO. 4:**

Admit that, at the time AIGTS Rhino was forced to bring this action on March 20, 2002 to preserve its statute-of-limitations position based on the truck use ending a year earlier, Rhino had provided AIGTS documents tending to prove that Rhino continued to furnish and supply equipment and materials to BPI for use on the Roofing Contract until March 20, 2001.

**RESPONSE:**     Deny.

**REQUEST FOR ADMISSION NO. 5:**

Admit that American International Group, Inc. owned 100% of the voting securities of AHAC between October 22, 2001 and March 20, 2002.

**RESPONSE:**     Objection. This Request for Admission requires a response that is not relevant to Plaintiff RHINO BUILDERS, INC.'s claims and thus is not relevant, nor likely to lead to discovery of admissible evidence, and not subject to discovery.

**REQUEST FOR ADMISSION NO. 6:**

Admit that American International Group, Inc. owned 100% of the voting securities of AIGTS between October 22, 2001 and March 20, 2002.

**RESPONSE:**     Objection. This Request for Admission requires a response that is not relevant to Plaintiff RHINO BUILDERS, INC.'s claims and thus is not relevant, nor likely to lead to discovery of admissible evidence, and not subject to discovery.

**REQUEST FOR ADMISSION NO. 7:**

Admit that AIGTS and AHAC are operated as a joint venture.

**RESPONSE:**     Objection. This Request for Admission uses the term "joint venture" without definition and calls for a legal conclusion.

4

1 | **REQUEST FOR ADMISSION NO. 8:**

2 | Admit that AIGTS owed Rhino a duty of good faith and fair dealing arising out of
3 | the Bond No. 20-80-88, issued October 6, 1999 by AHAC ("the Bond").

4 | **RESPONSE:** Objection. This Request for Admission calls for an admission
5 | as to a pure matter of law and is beyond the scope of Rule 36. *Reliance Insurance Co. v.*
6 | *Marathon LeTourneau Co.*, 152 F.R.D. 524 (D.C. W.Va. 1994); *English v. Cowell*, 117
7 | F.R.D. 132 (D.C. Ill. 1986); *Currie v. United States*, 111 F.R.D. 56 (M.D.N.C. 1986); *Abbot*
8 | *v. United States*, 177 F.R.D. 92 (D.C. N.Y. 1997). However, without waiving said
9 | objection, Defendant AIGTS admits it denied the Plaintiff's claim based on the sworn
10 | affidavit of an officer of the Plaintiff.

11 |

12 | **REQUEST FOR ADMISSION NO. 9:**

13 | Admit that AHAC owed Rhino a duty of good faith and fair dealing arising out of the
14 | Bond.

15 | **RESPONSE:** Objection. This Request for Admission calls for an admission
16 | as to a pure matter of law and is beyond the scope of Rule 36. *Reliance Insurance Co. v.*
17 | *Marathon LeTourneau Co.*, 152 F.R.D. 524 (D.C. W.Va. 1994); *English v. Cowell*, 117
18 | F.R.D. 132 (D.C. Ill. 1986); *Currie v. United States*, 111 F.R.D. 56 (M.D.N.C. 1986); *Abbot*
19 | *v. United States*, 177 F.R.D. 92 (D.C. N.Y. 1997). However, without waiving said
20 | objection, Defendant AIGTS admits it denied the Plaintiff's claim based on the sworn
21 | affidavit of an officer of the Plaintiff.

22 |

23 | **REQUEST FOR ADMISSION NO. 10:**

24 | Admit that AIGTS owed Rhino a duty of ordinary care with respect to Rhino's claim
25 | under the Bond.

5 .

1      **RESPONSE:**     Objection. This Request for Admission calls for an admission

2 as to a pure matter of law and is beyond the scope of Rule 36. *Reliance Insurance Co. v.*

3 *Marathon LeTourneau Co.*, 152 F.R.D. 524 (D.C. W.Va. 1994); *English v. Cowell*, 117

4 F.R.D. 132 (D.C. Ill. 1986); *Currie v. United States*, 111 F.R.D. 56 (M.D.N.C. 1986); *Abbot*

5 *v. United States*, 177 F.R.D. 92 (D.C. N.Y. 1997). However, without waiving said

6 objection, Defendant AIGTS admits it denied the Plaintiff's claim based on the sworn

7 affidavit of an officer of the Plaintiff.

8

9 **REQUEST FOR ADMISSION NO. 11:**

10      Admit that AHAC owed Rhino a duty of ordinary care with respect to Rhino's claim

11 under the bond.

12      **RESPONSE:**     Objection. This Request for Admission calls for an admission

13 as to a pure matter of law and is beyond the scope of Rule 36. *Reliance Insurance Co. v.*

14 *Marathon LeTourneau Co.*, 152 F.R.D. 524 (D.C. W.Va. 1994); *English v. Cowell*, 117

15 F.R.D. 132 (D.C. Ill. 1986); *Currie v. United States*, 111 F.R.D. 56 (M.D.N.C. 1986); *Abbot*

16 *v. United States*, 177 F.R.D. 92 (D.C. N.Y. 1997). However, without waiving said

17 objection, Defendant AIGTS admits it denied the Plaintiff's claim based on the sworn

18 affidavit of an officer of the Plaintiff.

19

20 **REQUEST FOR ADMISSION NO. 12:**

21      Admit that, during the first quarter of 2002, one of the entities identified by you in

22 your response to Interrogatory Nos. 1 through 14, served upon you herewith, and/or an

23 attorney representing one of those entities, contacted Plaintiff's former counsel and

24 communicated to it that it should withdraw from its former representation of Plaintiff for

25 conflict-of-interest or similar reasons.

6

**RESPONSE:** Deny.

Dated this 16th day of September, 2003.

VERNIER & MAHER, LLP
Attorneys for Defendant
AIG TECHNICAL SERVICES, INC.


BY: _____
LOUIE J. YANZA

7

**CERTIFICATE OF SERVICE**

I, LOUIE J. YANZA, hereby certify that on the 16th day of September, 2003, I caused a copy of the annexed **Defendant AIG Technical Services, Inc.'s Responses to Plaintiff's First Request for Admissions** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Catherine M. Bejerana**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 16th day of September, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
     LOUIE J. YANZA

8