ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933



FILED
DISTRICT COURT OF GUAM

NOV 1 4 2003

MARY L. M. MORAN
CLERK OF COURT

243

Attorney for Plaintiff Rhino Builders, Inc.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., ) ) ) | CIVIL CASE NO.02-00008 |
| Plaintiff, ) ) | **DECLARATION OF COUNSEL** |
| vs. ) ) ) | |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., ) ) ) ) | |
| Defendants. ) | |
| BIOGENESIS PACIFIC, INC., ) ) | |
| Counter-Plaintiff, ) ) | |
| vs. ) ) | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, ) ) ) ) | |
| Counter-Defendants. ) | |
| AMERICAN HOME ASSURANCE CO., ) ) | |
| Cross-Claimant, ) | |
| vs. ) ) | |
| BIOGENESIS PACIFIC, INC., ) ) | |
| Cross-Claim Defendant. ) ) | |

## ORIGINAL

I, Antonio L. Cortes, duly declare and say:

1.     I am an attorney licensed to practice law in Guam, and have been since October 21, 1997. I have personal knowledge of the matters stated herein, except those stated on information and belief, and as to those matters I believe them to be true. If called upon to do so, I could and would competently so testify.

2.     True and correct copies of the July 18, 2003 interrogatories Plaintiff served to AIGTS and AHAC are attached hereto as Exhibits 1 and 2, respectively.

3.     True and correct copies of the August 20, 2003 interrogatory response Plaintiff receive from AIGTS and AHAC are attached hereto as Exhibits 3 and 4, respectively.

4.     Exhibit 5 hereto is a true and correct copy with the only annual report pages provided to Plaintiff by AHAC or AIGTS in this action.

5.     I certify that I have personally met and conferred with Louie Yanza and discussed all aspects of this motion, and that I have also personally met and conferred with James Lawhn regarding Plaintiff's need for better responses to the subject discovery.

I declare under penalty perjury that the foregoing is true and correct.

Executed this 14th day of November 2003.

_____
ANTONIO L. CORTÉS

2

ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND ) BENEFIT OF RHINO BUILDERS, INC., )<br><br>Plaintiff, )<br>vs. )<br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL ) SERVICES, INC., and AMERICAN HOME ) ASSURANCE CO., )<br><br>Defendants. )<br>——————————————————— )<br>BIOGENESIS PACIFIC, INC., )<br><br>Counter-Plaintiff, )<br><br>vs. )<br><br>RHINO BUILDERS, INC., MICHAEL ) O'CONNELL, MICHAEL DANFORTH, and ) JOHN DOES 1-10, )<br><br>Counter-Defendants. )<br>——————————————————— )<br>AMERICAN HOME ASSURANCE CO., )<br><br>Cross-Claimant, )<br>vs. )<br><br>BIOGENESIS PACIFIC, INC., )<br><br>Cross-Claim Defendant. )<br>——————————————————— ) | CIVIL CASE NO.02-00008<br><br>**PLAINTIFF'S SECOND SET OF INTERROGATORIES TO AIG TECHNICAL SERVICES, INC.** |

TO:  Defendant AIG Technical Services, Inc. and its attorneys of record,



**EXHIBIT**
1

Vernier & Maher

Plaintiff hereby requests, pursuant to F.R.C.P. Rules 26 and 33, 28 U.S.C., that Defendant AIG Technical Services, Inc. (hereinafter "AIGTS" or "Defendant") answer the following interrogatories separately and fully in writing under oath within thirty (30) days after the date of service hereof. In answering these interrogatories, please refer to the following instructions and definitions, which are incorporated into each interrogatory by this reference.

## INSTRUCTIONS

1.     In answering these interrogatories, you must provide all requested information, not subject to a valid objection, that is known by, possessed by or available to you or any of your attorneys, agents, consultants, representatives and all others acting on your behalf.

2.     If you are unable to answer fully any of these interrogatories, then you must answer them to the fullest extent possible, specifying the reason(s) for your inability to answer the remainder and stating whatever information, knowledge or belief you have concerning the unanswerable portion.

3.     For each interrogatory, identify each person to whom the information is a matter of personal knowledge, if any.

4.     When an interrogatory requests that you state the identity of a document, set forth the following information:

2

(a)     a general description of the subject matter of the document;

(b)     the type of document (e.g., letter, memorandum, telegram, chart, tape recording, etc.);

(c)     the date of the document;

(d)     the author of the document;

(e)     the name, address and telephone number of each current custodian of each document;

(f)     the name, address and telephone number of each person to whom the document is addressed and each person to whom copies of the document were furnished; and

(g)     whether the document has been produced or provided to any person in connection with other litigation, or in any other circumstances.

If the document was, but is no longer, in your possession or subject to your control, state what disposition was made of it.

5.     If you object to an interrogatory or a part thereof as calling for information that is beyond the scope of discovery, you must, nevertheless, answer the interrogatory or part thereof to the extent that it is not objectionable.

6.     If you object to any of the following interrogatories concerning the identification or disclosure of any document on the ground that it requires information that is subject to the attorney-client privilege, or falls within the work product doctrine, and based on such objection you withhold the identification or

3

disclosure of the document or thing withheld, you must identify, with sufficient specificity to enable plaintiff to file a motion to compel production, the nature of the privilege or doctrine upon which you are relying and the information in instruction number 4 above.

## DEFINITIONS

1.    "Subsidiary" means a corporation in which a corporation has a controlling interest.

2.    "Affiliate" means a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.

3.    "Member" means what American International Group, Inc. intends it to mean when it describes American Home Assurance Co. to be one of its members in securities filings.

4.    "Person" includes both human beings and corporations or other legal entities recognized by law as having some or all of the rights and duties of a human being.

5.    "Control person" and "control group" refer to the persons with authority to make decisions on a corporation's behalf.

6.    The terms "you" and "your" refer to Defendant AIG Technical Services, Inc. and its employees, officers, control persons, agents, and attorneys.

7.    "AHAC" refers to Defendant American Home Assurance Co. and its employees, officers, control persons, agents, and attorneys.

4

8. "AI Marine" refers to any and every entity related to AHAC, AIGTS, or American International Group, Inc. whose name starts with the words "AI Marine."

9. "AIGCS" refers to AIG Claims Services, Inc., and its employees, officers, control persons, agents, and attorneys.

10. "Carlsmith Ball LLP" refers to Rhino's prior counsel in this action and any of the members, shareholders, partners, associates, contract attorneys, "of counsel" attorneys, of that law firm or any of its predecessors existing on or after January 1, 2000.

11. The terms Defendant, AIGTS, AHAC, AI Marine, and AIGCS shall include all of their respective employees, officers, control persons, agents, and attorneys.

12. "Document" and "documents" shall be used in the broadest sense and shall mean and include all written, printed, typed, recorded, computer-stored, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries of other records of meetings and conferences, summaries or other records of negotiations, diaries, diary entries, calendars, appointment books, time records, instructions, work

5

assignments, visitor records, forecasts, statistical data, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, analytical records, consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills, telephone message slips, statements, records of expenditures, invoices, lists, journals, files, printouts, compilations, tabulations, purchase orders, receipts, confirmations, checks, cancelled checks, letters of credit, envelopes or folders or similar containers, vouchers, analysis, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiches, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tape, photographs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made. "Document" or "documents" includes all copies of documents by whatever means made, except that where a document is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced.

13. "And" and "or" refer to all documents, persons, entities and subjects inclusively, and should be construed either conjunctively or disjunctively so as to produce the most possible information. References in the singular and plural should be construed either in the singular or the plural so as to produce the most possible information.

14.   "Any" refers to any and all documents, persons, entities and subjects inclusively, not to the option of responding as to some but not others.

## **INTERROGATORIES**

1.   Identify every member of the American International Group, Inc. ("AIG Inc.")

2.   Identify every parent or holding company of AIG Inc. and every entity owning 5% or more of its voting securities.

3.   Identify every subsidiary of each member of AIG Inc.

4.   Identify every affiliate of each member of AIG Inc.

5.   Identify any parent or holding company of AIGTS

6.   Identify any parent or holding company of AI Marine.

7.   Identify any parent or holding company of AHAC.

8.   Identify the control group or control person of AIGTS.

9.   Identify the control group or control person of AI Marine.

10.   Identify the control group or control person of AHAC.

11.   Identify every entity owning 5% or more of the voting securities of AIGTS.

12.   Identify every entity owning 5% or more of the voting securities of AI Marine.

13.   Identify every entity owning 5% or more of the voting securities of AHAC.

14. For each entity identified in any of the foregoing Interrogatory Nos. 1 through 13 that is a partnership or a joint venture, separately identify every partner or joint venturer.

15. List each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 through 14 that has any sort of attorney-client relationship with the law form of Carlsmith Ball LLP or any of the attorneys who are members, partners, or employees, of that firm, or any attorneys working for that firm on any sort of contractual basis.

16. For each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 through 14, or named in any of those interrogatories, that owns any shares in AIGTS, state how many shares it owns and what percentage of AIGTS's shares that holding represents.

17. Identify each and every officer, employee, control person, and attorney of AHAC, AIGTS, or any entity listed or identified in response to any of the foregoing Interrogatory Nos. 15 and 16 who has contacted, been contacted by, or communicated with Carlsmith Ball LLP regarding this litigation at any time.

DATED: July 18, 2003.

LAW OFFICE OF ANTONIO L. CORTÉS
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
Antonio L. Cortés

8

ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) ) ) CIVIL CASE NO.02-00008 |
| Plaintiff, | ) ) **PLAINTIFF'S SECOND SET OF** |
| vs. | ) **INTERROGATORIES TO** ) **AMERICAN HOME ASSURANCE** |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., | ) **CO.** ) ) ) |
| Defendants. | ) ) |
| BIOGENESIS PACIFIC, INC., | ) ) |
| Counter-Plaintiff, | ) ) |
| vs. | ) ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, | ) ) ) ) |
| Counter-Defendants. | ) ) |
| AMERICAN HOME ASSURANCE CO., | ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC., | ) ) |
| Cross-Claim Defendant. | ) ) ) |

TO:    Defendant American Home Assurance Co. and its attorneys of record,

EXHIBIT
2

Vernier & Maher

Plaintiff hereby requests, pursuant to F.R.C.P. Rules 26 and 33, 28 U.S.C., that Defendant American Home Assurance Co. (hereinafter "Defendant") answer the following interrogatories separately and fully in writing under oath within thirty (30) days after the date of service hereof. In answering these interrogatories, please refer to the following instructions and definitions, which are incorporated into each interrogatory by this reference.

## INSTRUCTIONS

1.    In answering these interrogatories, you must provide all requested information, not subject to a valid objection, that is known by, possessed by or available to you or any of your attorneys, agents, consultants, representatives and all others acting on your behalf.

2.    If you are unable to answer fully any of these interrogatories, then you must answer them to the fullest extent possible, specifying the reason(s) for your inability to answer the remainder and stating whatever information, knowledge or belief you have concerning the unanswerable portion.

3.    For each interrogatory, identify each person to whom the information is a matter of personal knowledge, if any.

4.    When an interrogatory requests that you state the identity of a document, set forth the following information:

2

(a)      a general description of the subject matter of the

document;

(b)      the type of document (e.g., letter, memorandum, telegram,

chart, tape recording, etc.);

(c)      the date of the document;

(d)      the author of the document;

(e)      the name, address and telephone number of each current

custodian of each document;

(f)      the name, address and telephone number of each person to

whom the document is addressed and each person to whom copies of the document

were furnished; and

(g)      whether the document has been produced or provided to

any person in connection with other litigation, or in any other circumstances.

If the document was, but is no longer, in your possession or subject to

your control, state what disposition was made of it.

5.      If you object to an interrogatory or a part thereof as calling for

information that is beyond the scope of discovery, you must, nevertheless, answer the

interrogatory or part thereof to the extent that it is not objectionable.

6.      If you object to any of the following interrogatories concerning

the identification or disclosure of any document on the ground that it requires

information that is subject to the attorney-client privilege, or falls within the work

product doctrine, and based on such objection you withhold the identification or

3

disclosure of the document or thing withheld, you must identify, with sufficient specificity to enable plaintiff to file a motion to compel production, the nature of the privilege or doctrine upon which you are relying and the information in instruction number 4 above.

## DEFINITIONS

      1.     "Subsidiary" means a corporation in which a corporation has a controlling interest.

      2.     "Affiliate" means a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.

      3.     "Member" means what American International Group, Inc. intends it to mean when it describes American Home Assurance Co. to be one of its members in securities filings.

      4.     "Person" includes both human beings and corporations or other legal entities recognized by law as having some or all of the rights and duties of a human being.

      5.     "Control person" and "control group" refer to the persons with authority to make decisions on a corporation's behalf.

      6.     The terms "you" and "your" refer AHAC and its employees, officers, control persons, agents, and attorneys.

      7.     "AIGTS" refers to Defendant AIG Technical Services, Inc. and its employees, officers, control persons, agents, and attorneys.

4

8.    "AI Marine" refers to any and every entity related to AHAC, AIGTS, or American International Group, Inc. whose name starts with the words "AI Marine."

9.    "AIGCS" refers to AIG Claims Services, Inc., and its employees, officers, control persons, agents, and attorneys.

10.    "Carlsmith Ball LLP" refers to Rhino's prior counsel in this action and any of the members, shareholders, partners, associates, contract attorneys, "of counsel" attorneys, of that law firm or any of its predecessors existing on or after January 1, 2000.

11.    The terms Defendant, AIGTS, AHAC, AI Marine, and AIGCS shall include all of their respective employees, officers, control persons, agents, and attorneys.

12.    "Document" and "documents" shall be used in the broadest sense and shall mean and include all written, printed, typed, recorded, computer-stored, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries of other records of meetings and conferences, summaries or other records of negotiations, diaries, diary entries, calendars, appointment books, time records, instructions, work

5

assignments, visitor records, forecasts, statistical data, financial statements, work

sheets, work papers, drafts, graphs, maps, charts, tables, analytical records,

consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters,

press releases, notes, notices, marginal notations, notebooks, telephone bills, telephone

message slips, statements, records of expenditures, invoices, lists, journals, files,

printouts, compilations, tabulations, purchase orders, receipts, confirmations, checks,

cancelled checks, letters of credit, envelopes or folders or similar containers, vouchers,

analysis, studies, surveys, transcripts of hearings, transcripts of testimony, expense

reports, microfilm, microfiches, articles, speeches, tape or disc recordings, sound

recordings, video recordings, film, tape, photographs, data compilations from which

information can be obtained (including matter used in data processing), and other

printed, written, handwritten, typewritten, recorded, stenographic, computer-generated,

computer-stored, or electronically stored matter, however and by whomever produced,

prepared, reproduced, disseminated, or made. "Document" or "documents" includes

all copies of documents by whatever means made, except that where a document is

identified or produced, identical copies thereof which do not contain any markings,

additions, or deletions different from the original need not be separately produced.

      13.    "And" and "or" refer to all documents, persons, entities and

subjects inclusively, and should be construed either conjunctively or disjunctively so

as to produce the most possible information. References in the singular and plural

should be construed either in the singular or the plural so as to produce the most

possible information.

6

14. "Any" refers to any and all documents, persons, entities and subjects inclusively, not to the option of responding as to some but not others.

## INTERROGATORIES

1. Identify each and every contact or communication between, on the one hand, any officer, employee, control person, and attorney of any entity that would be correctly listed or identified in response to any of the interrogatories served upon AIGTS concurrently with these interrogatories ("the AIGTS interrogatories"), and, on the other hand, Carlsmith Ball LLP, regarding this litigation, at any time.

2. Identify each and every shareholder of AI Marine.

3. Identify each and every control person of AI Marine

4. Identify each and every officer of AIGTS, AHAC, or AI Marine who either resides or works in either Hawaii or Guam.

5. Has AI Marine had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

6. Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

7. Has AHAC had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

8. If AIGTS, AHAC, or AI Marine has had an attorney-client relationship with Carlsmith Ball LLP since March 2002, identify each and every Carlsmith attorney with whom AIGTS, AHAC, or AI Marine communicates or has communicated in the course of that representation.

7

9. For each and every entity that would correctly be identified as having some sort of relationship with Carlsmith Ball LLP in response to Interrogatory Nos. 15 and 16 in the AIGTS interrogatories, identify each and every Carlsmith attorney with whom that entity communicates or has communicated in the course of that representation.

10. Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance for AIGTS, AHAC, or AI Marine since March 2001.

11. Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance, since March 2001, for any entity that would be identified in a correct response to Interrogatory Nos. 1 through 14 of the AIGTS interrogatories.

12. Identify all civil actions brought since January 1998 in which a claim was made upon a surety bond issued by AHAC.

13. For each such action, (a) state whether or not an affirmative defense was asserted based on a statute of limitations; (b) state whether AIGTS was named as a defendant; (c) state whether AHAC was named as a defendant; (d) state whether AIG Claim Services, Inc ("AIGCS"); was named as a defendant; (e) list any other entities that would be identified in a correct responses to Interrogatory Nos. 1 through 13 of the AIGTS interrogatories that was named as a defendant; (f) state whether, prior to the litigation, the claimant was directed to make its claim through AIGTS or AIGCS; (g) state whether, prior to the commencement of the civil action,

8

AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on the basis of a statute of limitations; (h) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on any other basis; and (i) identify Plaintiff's counsel.

      14.    Did AHAC authorize AIGTS to deny Rhino's pre-litigation claim, either when first submitted or during the requested reconsideration of AIGTS's first denial?

      15.    State the percentage of AIGTS's voting securities owned by AIG Inc. at all times between March 2001 and the present.

      16.    State each and every fact that allows Vernier & Maher to represent both AIGTS and you in this action despite the provisions of Rules 1.6 and 1.7 of the ABA Model Rules of Professional Conduct.

      DATED: July 18, 2003.

LAW OFFICE OF ANTONIO L. CORTÉS
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
      Antonio L. Cortes

9

1   James Lawhn
    OLIVER LAU LAWHN OGAWA & NAKAMURA
2   707 Richard Street, Suite 600
    Honolulu, Hawaii 96813
3   Telephone No.: (808) 533-3999
    Facsimile No.: (808) 533-0144

4
    Stephen D. Tom
5   WHITE & TOM
    820 Mililani Street, Suite 711
6   Honolulu, Hawaii 96813-2972
    Telephone No.: (808) 547-5151
7   Facsimile No.: (808) 599-4517

8   Louie J. Yanza
    VERNIER & MAHER, LLP
9   115 Hesler Place, Ground Floor
    Governor Joseph Flores Building
10  Hagåtña, Guam 96910
    Telephone No.: (671) 477-7059
11  Facsimile No.: (671) 472-5487

12  Attorneys for Defendants
    AIG TECHNICAL SERVICES, INC. and
13  AMERICAN HOME ASSURANCE COMPANY

14              UNITED STATES DISTRICT COURT

15                    DISTRICT OF GUAM

16  UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
    AND BENEFIT OF RHINO BUILDERS, INC., )
17                                       )
                Plaintiff,               )
18                                       )
                vs.                      )
19                                       ) DEFENDANT      AIG    TECHNICAL
                                         ) SERVICES, INC.'S RESPONSES TO
20  BIOGENESIS    PACIFIC,  INC.,    AIG ) PLAINTIFF'S   SECOND   SET   OF
    TECHNICAL   SERVICES,   INC.   and   ) INTERROGATORIES
21  AMERICAN     HOME    ASSURANCE       )
    COMPANY,                             )
22                                       )
                Defendants.              )
23  _____ )

24  //

25  //

                            1

| | |
|---|---|
| BIOGENESIS PACIFIC, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) |
| Counter-Defendant. | ) |
| AMERICAN HOME ASSURANCE COMPANY | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| Cross-Claim Defendant. | ) |

**PROPOUNDING PARTY: Plaintiff RHINO BUILDERS, INC.**

**RESPONDING PARTY:    Defendant AIG TECHNICAL SERVICES, INC.**

**SET:                          SECOND**

COMES NOW Defendant AIG TECHNICAL SERVICES, INC. ("AIGTS"), through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's Second Set of Interrogatories propounded herein on July 17, 2003.

Dated this _16_ day of September, 2003.

VERNIER & MAHER, LLP
Attorneys for Defendants
AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

BY: _____
LOUIE J. YANZA

2

# RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify every member of the American International Group, Inc. ("AIG Inc.")

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant and not subject to discovery. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 2:**

Identify every parent or holding company of AIG Inc. and every entity owning 5% or more of its voting securities.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 3:**

Identify every subsidiary of each member of AIG Inc.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without

3

waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 4:

Identify every affiliate of each member of AIG Inc.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 5:

Identify any parent or holding company of AIGTS.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 6:

Identify any parent or holding company of AI Marine.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and

4

burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 7:**

Identify any parent or holding company of AHAC.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 8:**

Identify the control group or control person of AIGTS.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 9:**

Identify the control group or control person of Al Marine.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery.

5

However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 10:**

Identify the control group or control person of AHAC.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory is overly broad and burdensome and not within the knowledge of Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 11:**

Identify every entity owning 5% or more of the voting securities of AIGTS.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

**INTERROGATORY NO. 12:**

Identify every entity owning 5% or more of the voting securities of Al Marine.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without

6

waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 13:

Identify every entity owning 5% or more of the voting securities of AHAC.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this interrogatory is overly broad and burdensome and not within the knowledge of the Defendant AIGTS. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 14:

For each entity identified in any of the foregoing Interrogatory Nos. 1 though 13 that is a partnership or a joint venture, separately identify every partner or joint venture.

**RESPONSE:** Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Further, this interrogatory uses the terms "partnership" and "joint venture" without definitions and calls for a legal conclusion. However, without waiving said objection, Defendant AIGTS responds as follows: Please refer to the annual report previously produced, which speaks for itself.

### INTERROGATORY NO. 15:

List each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 though 14 that has any sort of attorney-client relationship with the law form of Carlsmith Ball LLP or any of the attorneys who are

7

members, partners, or employees, of that firm, or any attorneys working for that firm on any sort of contractual basis.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Defendant AIGTS further objects on the basis that this Interrogatory requires a response that is protected by the attorney-client privilege. However, without waiving said objections, the Defendant AIGTS responds as follows: Defendant is without knowledge of the information sought.

**INTERROGATORY NO. 16:**

For each and every entity that would be identified in a correct response to any of the foregoing Interrogatory Nos. 1 though 14, or named in any of those interrogatories, that owns any shares in AIGTS, state how many shares it owns and what percentage of AIGTS's shares that holding represents.

**RESPONSE**: Objection. The interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. However, without waiving said objections, the Defendant AIGTS responds as follows: Defendant is without knowledge of the information sought.

**INTERROGATORY NO. 17:**

Identify each and every officer, employee, control person, and attorney of AHAC, AIGTS, or any entity listed or identified in response to any of the foregoing Interrogatory Nos. 15 and 16 who has contacted, been contacted by, or communicated with Carlsmith Ball LLP regarding this litigation at any time.

**RESPONSE**: Mark Titherington, Bruce Kahn, Bill Phillips, Stephen Tom and Louie J. Yanza

8

1  DEFENDANT AIG TECHNICAL SERVICES, INC,'S RESPONSES
   TO PLAINTIFF'S SECOND SET OF INTERROGATORIES
2  Rhino Builders, Inc. v. Biogenesis Pacific, Inc., et al.
   U.S. District Court of Guam, Civil Action No. 02-00008
3

4                          FOR OBJECTIONS:

5                          VERNIER & MAHER, LLP
                           Attorneys for Defendants
6                          AIG TECHNICAL SERVICES, INC. and
                           AMERICAN HOME ASSURANCE COMPANY
7

8                  BY:

9                          LOUIE J. YANZA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

**VERIFICATION**

I, BRUCE KAHN, hereby declare that I am an authorized representative of AIG TECHNICAL SERVICES, INC.; that I have read the foregoing Defendant AIG TECHNICAL SERVICES, INC.'s Responses to Plaintiff's Second Set of Interrogatories and know the contents thereof; that the same is true and correct upon my knowledge, information and belief.

I declare under the penalty of perjury, under the laws of Guam (6 G.C.A. §4308), that foregoing is true and correct.

Executed at New York, New York, this 8th day of August, 2003.

**AIG TECHNICAL SERVICES, INC.**

BY: _____
**BRUCE KAHN**
Its Duly Authorized Representative

9

**CERTIFICATE OF SERVICE**

I, LOUIE J. YANZA, hereby certify that on the 16th day of September, 2003, I caused a copy of the annexed **Defendant AIG Technical Services, Inc.'s Responses to Plaintiff's Second Set of Interrogatories** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Catherine M. Bejerana**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 16 day of September, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**


BY: _____
LOUIE J. YANZA

11

1  James Lawhn
   OLIVER LAU LAWHN OGAWA & NAKAMURA
2  707 Richard Street, Suite 600
   Honolulu, Hawaii 96813
3  Telephone No.: (808) 533-3999
   Facsimile No.: (808) 533-0144
4
   Stephen D. Tom
5  WHITE & TOM
   820 Mililani Street, Suite 711
6  Honolulu, Hawaii 96813-2972
   Telephone No.: (808) 547-5151
7  Facsimile No.: (808) 599-4517

8  Louie J. Yanza
   VERNIER & MAHER, LLP
9  115 Hesler Place, Ground Floor
   Governor Joseph Flores Building
10 Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 Attorneys for Defendants
   AIG TECHNICAL SERVICES, INC. and
13 AMERICAN HOME ASSURANCE COMPANY

14              UNITED STATES DISTRICT COURT

15                    DISTRICT OF GUAM

16 UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
   AND BENEFIT OF RHINO BUILDERS, INC., )
17                                    )
              Plaintiff,              )
18                                    )
              vs.                     )
19                                    ) DEFENDANT    AMERICAN    HOME
   BIOGENESIS    PACIFIC,    INC.,  AIG ) ASSURANCE COMPANY'S RESPONSES
20 TECHNICAL   SERVICES,    INC.  and ) TO PLAINTIFF'S SECOND SET OF
   AMERICAN     HOME    ASSURANCE    ) INTERROGATORIES
21 COMPANY,                          )
                                     )
22            Defendants.            )
                                     )
23 _____ )

24 //

25 //

| | |
|---|---|
| BIOGENESIS PACIFIC, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) ) |
| Counter-Defendant. | ) |
| AMERICAN HOME ASSURANCE COMPANY | ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) ) |
| Cross-Claim Defendant. | ) |

**PROPOUNDING PARTY:** Plaintiff RHINO BUILDERS, INC.

**RESPONDING PARTY:** Defendant AMERICAN HOME ASSURANCE COMPANY

**SET:** SECOND

COMES NOW Defendant AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"), through counsel, Vernier & Maher, LLP, by Louie J. Yanza, and hereby responds to Plaintiff's Second Set of Interrogatories propounded herein on July 17, 2003.

Dated this _16_ day of September, 2003.

> **VERNIER & MAHER, LLP**
> **Attorneys for Defendants**
> **AIG TECHNICAL SERVICES, INC. and**
> **AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

2

# RESPONSES TO SECOND SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each and every contact or communication between, on the one hand, any officer, employee, control person, and attorney of any entity that would be correctly listed or identified in response to any of the interrogatories served upon AIGTS concurrently with these interrogatories ("the AIGTS interrogatories"), and, on the other hand, Carlsmith Ball LLP, regarding this litigation, at any time.

**RESPONSE**: Objection. This Interrogatory requires a response that is overly broad and burdensome, is not relevant, nor likely to lead to discovery of admissible evidence. The Defendant AMERICAN HOME further objects on the basis that the response is protected by the attorney-client privilege.

**INTERROGATORY NO. 2:**

Identify each and every shareholder of Al Marine.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant and not subject to discovery. Defendant AMERICAN HOME also objects to this Interrogatory in that it is overly broad and calls for information not within the possession of Defendant AMERICAN HOME.

**INTERROGATORY NO. 3:**

Identify each and every control person of Al Marine.

**RESPONSE**: See, responses to Interrogatory No. 2, *supra*.

3

**INTERROGATORY NO. 4:**

Identify each and every officer of AIGTS, AHAC, or AI Marine who either resides or works in either Hawaii or Guam.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. With regard to A.I. MARINE, Defendant AMERICAN HOME objects on the basis that the information is not in the possession of Defendant AMERICAN HOME.

**INTERROGATORY NO. 5:**

Has AI Marine had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 6:**

Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege.

4

However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 7:**

Has AHAC had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

**RESPONSE:** Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 8:**

If AIGTS, AHAC, or Al Marine has had an attorney-client relationship with Carlsmith Ball LLP since March 2002, identify each and every Carlsmith attorney with whom AIGTS, AHAC or Al Marine communicates or has communicated in the course of that representation.

**RESPONSE:** Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME further objects on the basis the Interrogatory is overly broad and burdensome. However, without waiving said objection, Defendant AMERICAN HOME responds as follows: The information sought is not within the possession of the Defendant.

5

**INTERROGATORY NO. 9:**

For each and every entity that would correctly be identified as having some sort of relationship with Carlsmith Ball LLP in response to Interrogatory Nos. 15 and 16 in the AIGTS interrogatories, identify each and every Carlsmith attorney with whom that entity communicates or has communicated in the course of that representation.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME also objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 10:**

Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance for AIGTS, AHAC, or AI Marine since March 2001.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

6

**INTERROGATORY NO. 11:**

Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance, since March 2001, for any entity that would be identified in a correct response to Interrogatory Nos. 1 through 14 of the AIGTS interrogatories.

**RESPONSE:** Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery. Moreover, the response is protected by the attorney-client privilege. Defendant AMERICAN HOME objects on the basis that the Interrogatory is overly broad and burdensome, and the information sought is not within the possession of the Defendant.

**INTERROGATORY NO. 12:**

Identify all civil actions brought since January 1998 in which a claim was made upon a surety bond issued by AHAC.

**RESPONSE:** Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant or material and not subject to discovery, nor likely to lead to the discovery of admissible evidence. In addition, this interrogatory requires a response that is overly broad and burdensome.

**INTERROGATORY NO. 13:**

For each such action, (a) state whether or not an affirmative defense was asserted based on a statute of limitations; (b) state whether AIGTS was named as a defendant; (c) state whether AHAC was named as a defendant; (d) state whether AIG

7

Claim Services, Inc. ("AIGCS"); was named as a defendant; (e) list any other entities that would be identified in a correct responses to Interrogatory Nos. 1 though 13 of the AIGTS interrogatories that was named as a defendant; (f) state whether, prior to the litigation, the claimant was directed to make its claim through AIGTS or AIGCS; (g) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on the basis of a statute of limitations; (h) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on any other basis; and (i) identify Plaintiff's counsel.

**RESPONSE**: See, response to Interrogatory No. 12, *supra*.

**INTERROGATORY NO. 14:**

Did AHAC authorize AIGTS to deny Rhino's pre-litigaiton claim, either when first submitted or during the requested reconsideration of AIGTS's first denial?

**RESPONSE**: Yes. As claims processor, AIGTS is authorized to act on AMERICAN HOME's behalf.

**INTERROGATORY NO. 15:**

State the percentage of AIGTS's voting securities owned by AIG Inc. at all times between March 2001 and the present.

**RESPONSE**: Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not relevant and not subject to discovery, and the information sought is not within possession of the Defendant.

8

**INTERROGATORY NO. 16:**

State each and every fact that allows Vernier & Maher to represent both AIGTS and you in this action despite the provisions of Rules 1.6 and 1.7 of the ABA Model Rules of Professional Conduct.

**RESPONSE:** Objection. This Interrogatory requires a response that is not relevant to any of Plaintiff RHINO BUILDERS, INC.'s ("RHINO") claims and thus is not relevant, nor likely to lead to the discovery of admissible evidence, and not subject to discovery. Defendant AMERICAN HOME further objects to this Interrogatory on the basis that the responses are protected by the attorney-client privilege and the subject of confidential attorney-client communications.

FOR OBJECTIONS:

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

9

**VERIFICATION**

I, BRUCE KAHN, hereby declare that I am an authorized representative of AMERICAN HOME ASSURANCE COMPANY; that I have read the foregoing Defendant AMERICAN HOME ASSURANCE COMPANY's Responses to Plaintiff's Second Set of Interrogatories and know the contents thereof; that the same is true and correct upon my knowledge, information and belief.

I declare under the penalty of perjury, under the laws of Guam (6 G.C.A. §4308), that foregoing is true and correct.

Executed at New York, New York, this 18th day of August, 2003.

AMERICAN HOME ASSURANCE
COMPANY

BY: _Brn W Kahn_
BRUCE W. KAHN
Its Duly Authorized Representative

8

## CERTIFICATE OF SERVICE

I, LOUIE J. YANZA, hereby certify that on the 16th day of September, 2003, I caused a copy of the annexed **Defendant AMERICAN HOME ASSURANCE COMPANY's Responses to Plaintiff's Second Set of Interrogatories** to be served upon the parties hereto, by delivering and leaving a copy of same to their attorneys of record, as follows:

**Ms. Janalynn M. Cruz**
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Bldg.
655 South Marine Drive
Tamuning, Guam 96911

**Ms. Catherine M. Bejerana**
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Bldg.
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 16th day of September, 2003.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants**
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

11

The **Domestic Brokerage Group (DBG)** markets property-casualty insurance products and services through brokers to corporate buyers and commercial customers ranging from large multinationals to small businesses. DBG companies offer some of the largest capacity available in the marketplace, write a broad array of insurance products, and are leaders in many specialty and difficult-to-place classes of business. The Triple-A ratings that the DBG companies hold for insurer financial strength, combined with product innovation, superior claim handling and service excellence, are key competitive assets.

| Domestic Brokerage Group[†]<br>(in millions, except ratios) | 2001[*] | 2001[**] | 2000 |
|---|---|---|---|
| Net Premiums Written | $10,196.5 | $10,196.5 | $7,934.3 |
| Income Before Realized Capital Gains (Losses) | 1,488.4 | 2,032.4 | 1,790.7 |
| Combined Ratio | 104.42 | 98.85 | 100.54 |

[†]Excluding the results of Transatlantic's domestic operations.
[*]Including WTC losses.
[**]Excluding WTC losses.

In a rapidly changing business and economic environment, the strength of DBG's distribution network and its unmatched flexibility in product offerings allow DBG to meet the needs of customers of all sizes. As an example, DBG launched the AIG Small Business Underwriting Center during 2001 to serve one of the fastest growing segments in the domestic market. The center gives businesses with less than $10 million in revenue — and the brokers that serve them — efficient access to top-quality risk management resources and solutions.

After the terrorist attacks of September 11, an urgent need developed for both aviation insurance and property terrorism insurance. On October 4, AIG member companies introduced a co-insurance facility making available aviation war risk and hijacking liability coverage totaling $1 billion per airline. AIG member companies have also made available an acts-of-terrorism property facility, which provides up to $150 million in insurance for property damage and business interruption losses due to terrorism. The year-end renewal season brought significant new business to DBG. Industry capacity was reduced, and DBG benefited as companies sought coverage from the strongest insurers.

In 2001, **National Union** continued to build on its record of leadership in the directors and officers (D&O) and management liability marketplace, despite the competitive challenges this sector faced. National Union had good results relying on a strategy that emphasized strict underwriting controls, detailed account knowledge, pricing improvements and greater risk sharing mechanisms. With numerous downgrades and "under review" ratings for many carriers, National Union experienced an influx of new business as D&O customers sought to buy coverages from the industry's strongest company. National Union's innovative product development proved to be a competitive asset again in 2001. The company successfully introduced



Domestic Brokerage Group — Net Premiums Written
(millions of dollars)

**EXHIBIT 5**



Anheuser-Busch, the world's largest brewer, operates 12 breweries in the United States and two overseas. In one of the most competitive beverage industry categories, Anheuser-Busch's Budweiser is the world's best-selling beer, with distribution in more than 70 countries. This worldwide market presence and high corporate profile, along with significant additional operations focused on adventure park entertainment and packaging, present the brewer's key decision makers with a variety of management liability risks and exposures. Anheuser-Busch works closely with National Union to develop a management liability insurance program incorporating elements of directors and officers, fiduciary and fidelity coverages. The Clydesdales pictured above have served as the unmistakable symbol of both Anheuser-Busch and Budweiser for generations.

many new management and professional liability offerings including a comprehensive, specially tailored program – endorsed by the U.S. Chamber of Commerce – to meet the needs of small business owners. National Union also introduced enhanced management liability programs for venture capital funds and managers, as well as a package of products for small and midsize companies, which allows insureds to combine a variety of coverages into a single policy.

In the fiduciary liability area, National Union launched a new ERISA policy with expanded coverage for more types of plans including foreign and domestic pension and welfare benefit plans, qualified and non-qualified plans, cafeteria plans, fringe benefit programs, voluntary employee's beneficiary associations and others.

Counting the vast majority of the *Fortune* 500 as clients, **American Home**'s excess casualty division continued to be a leader in the commercial umbrella market with its traditional core strengths – the ability to underwrite complex exposures and superior claims expertise. The division enhanced its Web-based quote and bind system and it also expanded its family of crisis management products. Maintaining an emphasis on underwriting and pricing discipline, as well as on new business development, American Home's workers' compensation division had strong premium growth in 2001 and its Internet product and distribution strategy was a key component of its success. In a market that has experienced many insurance company failures, the division benefited from a flight to quality and established itself as a lead provider of monoline workers' compensation coverages for small and midsize businesses.

**AIG Environmental** had excellent premium growth in 2001. AIG Environmental's transaction-related business accounted for much of its success, as the trend continued among contracting parties to use environmental insurance in mergers and acquisitions, transfer of power industry assets and military base redevelopment projects. AIG Environmental experienced good growth in the pollution legal liability segment, specifically in the real estate investment trust area where large property holders are increasingly concerned about environmental exposures. Likewise, sales of secured creditor policies, which protect lenders from financial loss due to defaults accompanied by environmental contamination, continued to achieve good growth.

**Lexington** maintained its leadership position in 2001 as one of the largest providers of multi-line and specialty property-casualty programs to a wide range of businesses. While the healthcare marketplace underwent significant change during 2001, Lexington emerged as one of the industry's leading providers, offering insurance to hospital systems, long-term care and other healthcare facilities. Lexington's business benefited from an improved pricing environment for property, product liability, general casualty and transportation classes. While the September 11 terrorist attacks had an impact on many of Lexington's markets, the company was quick to respond to customer needs through the development of a property terrorism product including threat assessment services.



Lexington is a leading provider of insurance programs for the healthcare industry, specializing in professional liability and related coverages for individual practitioners and healthcare organizations across a range of disciplines. The laser vision correction surgery being performed above took place at Dartmouth-Hitchcock Medical Center, a Lexington customer for more than 25 years. Dartmouth-Hitchcock comprises Northern New England's most extensive healthcare network and is a leader in patient care, research and education. Throughout the duration of its relationship with Lexington, Dartmouth-Hitchcock has relied upon Lexington's expertise in current healthcare issues and on its ability to help manage and keep abreast of the risks that accompany medical innovation, as well as industry change.

Hartford Steam Boiler Inspection and Insurance Company (HSB) had strong growth in 2001 in its U.S. equipment breakdown insurance business. The company achieved excellent results through engineering-based risk assessment, selective underwriting, appropriate pricing strategies, and assistance to clients worldwide in loss prevention and loss reduction. Separately, HSB provides equipment breakdown coverage and other specialty insurance through reinsurance arrangements with approximately 200 property-casualty insurers. Its domestic growth strategy focuses on expanding these reinsurance relationships and offering new products and services developed in collaboration with other AIG member companies. HSB is also leveraging AIG's global network to access international markets and expand its engineering consulting business by offering equipment breakdown insurance and technical expertise through AIU and international reinsurance arrangements.

As a leading provider of captive, self-insured retention and risk financing alternatives, **AIG Risk Management (AIGRM)** was particularly well positioned in 2001 to capitalize on the increased demand for alternative risk programs that emerged throughout the marketplace. AIGRM also provides specialty risk management programs to the construction, transportation and energy industries, and to public entities. During 2001, AIGRM's construction division, in concert with the Global Energy Division, introduced a "wrap-up" program specifically designed for power plant builders and developers. AIG was among the first insurance organizations to introduce the wrap-up, or insurance package concept, more than 20 years ago as an option for controlling costs on large construction projects. Today, it has over 85 such programs in-force on some of the country's largest construction initiatives. The transportation division had strong premium growth in 2001. In a market characterized by increased pricing and reduced capacity for the airline and trucking industries, AIGRM successfully responded with creative risk management program development.

**AIG Aviation, Inc.** is the largest U.S.-based provider of aviation insurance. It offers insurance facilities to a broad client base, from commercial airlines to individually owned aircraft and nearly half of all major U.S. airports. AIG Aviation took a leading role in the post-September 11 environment, offering on behalf of the co-insurance market, coverage totaling $1 billion for war risk and hijacking. This facility enabled airlines to have the necessary insurance to maintain operations in an unprecedented environment. Over 200 airlines around the world have purchased this coverage.

The **AIG WorldSource Division** continued to establish itself as a market leader providing global programs for companies of all sizes with international operations. As the events of September 11 heightened the awareness among the global business community that people, assets and investments must be adequately protected, WorldSource proved to be a valuable resource for companies with a variety of coverage requirements. WorldSource's casualty group had strong results, particularly through innovative proprietary programs. Specialty products were a growth area for WorldSource as it was in a position to offer some of the industry's most expert capabilities and comprehensive coverages in crisis management, kidnap and ransom, malicious product tampering, trade credit and political risk — all AIG strong suits.

The **AIG Risk Finance Division**, a market leader in the design and implementation of innovative risk financing solutions, serves clients typically requiring the most advanced risk management capabilities. Drawing on the worldwide resources of AIG's insurance and financial services companies, AIG Risk Finance provides programs that feature a blend of financial, insurance and capital market strategies to enhance balance sheet strength, address solvency and liquidity concerns, and help manage strategic risks. In 2001, AIG Risk Finance benefited from the diminishing capacity and more restrictive terms in the marketplace. Many corporations opted for alternative coverage solutions to replace more conventional ones. Counterparty financial strength is a top priority in this new environment and has become a clear advantage for AIG Risk Finance.

In th    ːɛd States, the redevelopment of brownfields, or inactive industrial sites, has had the dual impact of revitalizing inner-city areas while reducing urban sprawl. Pictured above, in its early stages, is the cleanup and subsequent construction of the Los Angeles Media Tech/Taylor Yard Project, which was formerly a 241-acre temporary staging area for rail freight cars. The project's developer is AMB Property Corporation, a leading owner and operator of industrial real estate nationwide. For AMB, protection from potential liability arising from environmental conditions at the site was essential. The company turned to AIG Environmental to provide insurance on the redevelopment project, including coverage for cleanup cost overruns that could result from environmental conditions encountered during remediation and construction.

The **AIG Mergers and Acquisitions Division** works with DBG companies, American International Underwriters and AIG Global Investment Group, Inc., as well as with external distribution channels, to provide companies in the United States and abroad with insurance solutions for transaction-specific liabilities including those associated with mergers, acquisitions and divestitures. During 2001, the division structured cutting-edge insurance programs that contributed to the completion of a number of very large corporate transactions, by helping to minimize or eliminate what otherwise might have been deal-breaking exposures.

The **AIG eBusiness Risk Solutions Division (AIGeBRS)**, which serves the risk management needs of companies that conduct business on the Internet, had excellent premium growth. The division has established itself as the leader of the cyber-risk and Internet security insurance market. AIGeBRS launched several new products including a Web-based credit and risk management system, and coverages that offer identity theft and credit card fraud protection to online merchants, as well as consumers. It also extended its reach globally, offering coverages in select markets in Europe, Asia and South America. Together with Dun & Bradstreet, the division also launched an online system that facilitates real-time trading credentials and credit decisions for B2B marketplaces.

In 2001, AIG transferred the **Domestic Accident & Health Division** to DBG, positioning the division to take better advantage of cross-marketing opportunities with AIG's domestic property-casualty businesses and opening additional avenues for growth. The division has initiated a cooperative venture with the AIG Small Business Underwriting Center, included an accident insurance component in all D&O policies, and has begun to add accident coverages to programs underwritten by Lexington Insurance Company.

**AIG Reinsurance Advisors, Inc. (AIG Re)** specializes in non-traditional reinsurance and retro-cessional coverage, structuring and underwriting reinsurance products to satisfy the risk transfer, leverage and long-term financial planning objectives of reinsurance buyers worldwide. AIG Re's expertise facilitates reinsurance transactions that optimize capital usage for its clients. AIG Re works closely with AIG's financial services companies and Transatlantic to provide additional resources to its clients. The company reported increased premium volume in 2001, as reinsurance buyers placed greater emphasis on AIG Re's ability to tailor products to meet specific needs, as well as on AIG's financial strength and security.

**Starr Excess Liability Insurance Company, Ltd. (Starr Excess)**, a global leader in the excess liability market, provides coverage for large limit excess casualty and excess financial lines programs through operations in the United States, Bermuda and London. In 2001, Starr Excess had solid growth in net premiums written as a result of an improved underwriting environment, and increased its customer base among *Fortune* 2,000 companies, its target market.

**AIG Claim Services, Inc. (AIGCS)** and **AIG Technical Services, Inc. (AIGTS)**, the two claim companies for domestic operations, are dedicated to providing the highest level of service and specialized claim expertise.

AIGCS provides cost containment and claim management services to AIG clients for workers' compensation and property-casualty lines of business. These include integrated disability management, loss prevention, litigation management, investigative services and industry-specific claim management for construction, entertainment, transportation and product recall claims. In 2001, AIGCS expanded its portfolio, assuming responsibility for domestic accident and health claims and AIG employee medical benefits claims.

AIGTS is responsible for specialty claims and litigation management. Specialized claim units handle directors and officers liability, environmental, excess casualty, financial institutions, healthcare and medical malpractice, high-exposure property, professional liability, surety bond, fidelity bond and toxic tort. AIGTS claim units work with underwriters to help evaluate, develop, market and price both new products and existing accounts. The excess casualty claim group created a casualty loss mitigation unit in 2001 dedicated to identifying and evaluating opportunities for customers to shift responsibility for managing past casualty and litigation events to AIGTS. Other units were created to support DBG's small business efforts. The property claim group's ability to handle disaster-related claims promptly and efficiently enabled AIG customers to recover quickly from catastrophes including the Seattle earthquake and Tropical Storm Allison. Its crisis response to the September 11 terrorist attacks included the immediate reestablishment of contact with business partners, the development of temporary claim reporting processes for AIG's customers and brokers, and the formation of dedicated teams to recreate destroyed client claim files. The litigation management group is coordinating emerging risk areas such as mold and eCommerce, including the formation of defense law firm specialist groups to handle these claims.

**AIG Consultants, Inc.** supports AIG's claim and underwriting operations by providing technical consulting services worldwide in environmental, healthcare, safety and property areas. It offers customers professional, practical and cost-effective methods to mitigate losses. In early 2001, AIG Consultants' reputation for providing quality service was recognized as it was awarded ISO9001-2000 certification.