James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY

# UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY,<br><br>Defendants. | CIVIL CASE NO. 02-00008<br><br>DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL AND FOR DISCLOSURE OF CERTAIN PRIVILEGED INFORMATION |
| BIOGENESIS PACIFIC, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10,<br><br>Counter-Defendant. | |

1

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) ) |
| Cross-Claim Defendant. | ) |

COMES NOW, Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"), through counsel, VERNIER & MAHER, LLP, by Louie J. Yanza, and hereby reply to Plaintiff RHINO BUILDERS, INC.'s ("RHINO") Opposition to Motion to Compel ("Opposition Memorandum"), filed on November 7, 2003, as follows:

## REPLY

The issue is the instant motion is whether the Plaintiff has waived the attorney-client and work product privileges by alleging Carlsmith Ball, LLP ("Carlsmith") was "induced" to name AIGTS as the surety. This Court faces the task of deciding this important question as a matter of first impression.

The Defendants request the Court not to lose sight of the fact that RHINO has alleged that during Carlsmith's communications with AMERICAN HOME and AIGTS, Carlsmith was somehow "induced" to believe AIGTS was the surety. This was first raised in the Plaintiff's Amended Complaint immediately after Defendant AIGTS filed its motion to dismiss AIGTS from the lawsuit on September 10, 2002. In the original Complaint, RHINO only named BIOGENESIS PACIFIC, INC. ("BIOGENESIS") and AIGTS as defendants. RHINO's Amended Complaint and Second Amended Complaint relies on its "inducement" claim to avoid the dismissal of AIGTS from the

2

lawsuit and forms a position of RHINO's bad faith claims. This is an estoppel defense. Mobil Oil Guam, Inc. v. Lee, 2003 Guam 15.

RHINO contends the Defendants are estopped from dismissing AIGTS because the Defendants induced Carlsmith to incorrectly name AIGTS as the surety in the original Complaint. RHINO's contention places the state of mind of Carlsmith (that AIGTS was the surety) to the forefront of this litigation.

I. **RHINO HAS IMPLIEDLY WAIVED THE ATTORNEY CLIENT AND WORK PRODUCT PRIVILEGES.**

The Ninth Circuit recognizes an implied waiver of the attorney client and work product privileges when the privileges are placed at issue in the case. Home Indemnity Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995); United States v. Amlani, 169 F.3d 1189 (9th Cir. 1999); see also, Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975).

By referencing the state of mind of its attorneys that they believed AIGTS was the surety, RHINO has waived the privilege. Mitchell v. Superior Court, 37 Cal.3d 591, 605 (Cal. 1985). In RHINO's Opposition, RHINO completely skirts the fact that RHINO placed the Carlsmith attorneys' state of mind at issue. RHINO does not dispute that it has to prove its bad faith claim by reference to the conclusions or mental state of its former counsel Carlsmith that they were led to believe AIGTS was the surety. Case law illustrates that there is a waiver of the privileges when a party has to prove its case by referencing the attorney's state of mind. Walsh v. Seaboard Surety Co., 184 F.R.D. 494 (D. Conn. 1999) (where plaintiff alleges defendant had "manipulated and controlled" its attorney and "imposed coercive economic pressure," plaintiff has injected the issue of its attorneys into the litigation); Handgards, Inc. v.

3

Case 1:02-cv-00008    Document 248    Filed 11/14/2003    Page 3 of 8

Johnson & Johnson, 413 F.Supp. 926, 931 (N.D. Cal. 1976) (where defendants call their former attorneys to express their opinions as to merits of the prior suits and the validity of the underlying patents, there is implied waiver); WLIG-TV, Inc. v. Cablevision Systems Corporation, 879 F.Supp. 229 (E.D. N.Y. 1994) (claiming fraudulent concealment to its attorneys constitutes waiver); and Merritt v. Superior Court, 9 Cal. App.3d 721 (Cal. Ct. App. 1970) (waiver present when party alleges its attorney was confused by insurer's counsel).

RHINO has to call the Carlsmith attorneys to testify that communications with AMERICAN HOME and AIGTS "induced" them to believe AIGTS was in fact the surety, instead of AMERICAN HOME. Since Carlsmith is a witness to testify in support of RHINO's bad faith claim, the Defendants should be permitted to depose Carlsmith on the factual basis of their belief that AIGTS was the surety.[1] Thus, it is not merely the initiation of the lawsuit but rather, the manner of its prosecution, which constitutes waiver.

In an attempt to avoid waiver, RHINO directs the Court's attention to Home Indemnity Co. v. Land Powell Moss and Miller, 43 F.3d 1332 (9th Cir. 1994) as "closely resembling" this case and should be followed. Opposition, p. 14. RHINO's reliance on Home Indemnity is misplaced. The holders of the privileges did not make any allegation concerning their counsel's advice or their counsel's conduct. The court upheld the trial court's ruling that there was no waiver. In fact, Home Indemnity supports the Defendants' position, and held disclosure is required when non-disclosure would be "manifestly unfair" to the opposing party. Home Indemnity, at 1326.

---

[1] The principals of RHINO cannot testify they were induced because the principals did not draft the complaint, nor did the principals have any communications with AMERICAN HOME or AIGTS. The principals' testimonies would be hearsay and speculative.

4

Here, RHINO has affirmatively placed the privileges at issue by <u>alleging</u> in its Amended and Second Amended Complaints its attorneys were induced to name AIGTS as the surety, instead of AMERICAN HOME. Moreover, it would be "manifestly unfair" to the Defendants if disclosure was not permitted. Denying access to the otherwise protected information would impair the defense. RHINO should not be allowed, after disclosing as much as it pleases (that Carlsmith was induced), to withhold as much as it pleases. <u>Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.</u>, 130 F.R.D. 116 (N.D. 1990). RHINO cannot have it both ways. RHINO cannot use the privilege both as a sword and a shield.

Plaintiff RHINO also urges the Court to follow the decision in <u>Rhone-Poulenc Rorer v. Home Indemnity Co.</u>, 32 F.3d 851 (3rd Cir. 1994). RHINO's reliance on <u>Rhone-Poulenc</u> is misplaced. <u>Rhone-Poulenc</u> is not controlling authority. <u>Rhone-Poulenc</u> is from the Third Circuit and does not follow the Hearn Test. The Ninth Circuit clearly follows the Hearn Test and there are no reasons to deviate from Ninth Circuit authority. <u>United States v. Amlani</u>, 169 F.3d 1189 (9th Cir. 1999).

But even considering <u>Rhone-Poulenc</u>, <u>Rhone-Poulenc</u> is inapposite. <u>Rhone-Poulenc</u> does not preclude the discovery the Defendants are currently seeking in this instance. <u>Rhone-Poulenc</u> states that <u>facts are discoverable</u>, while the legal conclusions regarding those facts are not. <u>Rhone-Poulenc</u>, at 864. Defendants are not seeking the legal analysis of Carlsmith, Defendants are seeking the factual basis for Carlsmith's belief that AIGTS was the surety. To what extent Carlsmith conducted an investigation to verify how AIGTS is a surety? What other investigations did the Carlsmith attorneys conduct? What led Carlsmith to believe AIGTS was the surety?

5

These are factual inquiries. According to *Rhone-Poulenc*, these facts are discoverable and that is what the Defendants are seeking.

## CONCLUSION

It is plainly clear by the papers filed with the Court, RHINO has placed the attorney-client and work product privileges at issue. Because RHINO claims that Carlsmith's reliance on the Defendants' communications induced Carlsmith to file suit against AIGTS, Carlsmith's basis for that belief should be disclosed. Without the opportunity to question Carlsmith on why or how they were "induced" to believe AIGTS was the surety would deprive the Defendants their ability to effectively cross-examine Carlsmith and deny the presentation of a strong defense to this bad faith claim. It is also clear the Defendants have no other means of obtaining this information other than through questioning Carlsmith.

Therefore, Defendants respectfully request disclosure, from both RHINO and Carlsmith, for the following:

1. Dismissal of the Plaintiff RHINO's bad faith allegations; or, in the alternative,

2. Compelling production and response of the following information;

    a. What if any investigation Self did to identify the surety, or confirm her conclusion that AIGTS and AMERICAN HOME were part of the same corporation;

    b. What relevance, if any, Self gave to documentation in the files of Carlsmith showing the correct identity of the surety as well as the relationship of AIGTS and AMERICAN HOME to the AIG Group of companies, as well as what follow up investigation was done with regard to the data in these documents;

6

c. What conversations Self had with her Carlsmith attorneys regarding the correct identity of the surety prior to the original complaint being filed;

d. What consideration, if any, was given to simply calling AIGTS and seeking clarification of the identity of the surety;

e. What consideration, if any, was given to simply naming both AIGTS and AMERICAN HOME as the surety in the Complaint Self drafted;

f. Production of un-redacted records, letters, memoranda, notes and documents after an in-camera inspection regarding the basis for Plaintiff and the Carlsmith attorneys' (Self) opinion that AIGTS was the surety;

g. The actions and conduct of the Carlsmith attorneys and RHINO to verify and confirm whether AIGTS was the surety; and

h. Enlargement of time to conduct the deposition of Carlsmith attorneys, Terry E. Thomason and Amy G. Self.

Dated this 14th day of November, 2003.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC.** and
**AMERICAN HOME ASSURANCE COMPANY**

By: _____
LOUIE J. YANZA

## CERTIFICATE OF SERVICE

I, Louie J. Yanza, hereby certify that on or before November 14, 2003, I caused to be sent by personal service or by facsimile a copy of the annexed **Defendants AIG Technical Services, Inc. and American Home Assurance Company's Reply in Support of Motion to Compel and for Disclosure of Certain Privileged Information; Certificate of Service**, to the following parties at their place of business:

Ms. Janalynn M. Cruz
CALVO & CLARK, LLP
Suite 202, First Savings & Loan Building
655 South Marine Drive
Tamuning, Guam 96911

Ms. Catherine M. Bejerana
BERMAN O'CONNOR MANN & SHKLOV
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910

Mr. Antonio L. Cortes
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

Mr. Frederick J. Kerley
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 14th day of November, 2003.

VERNIER & MAHER, LLP
Attorneys for Defendants
AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

By: _____
LOUIE J. YANZA