James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

FILED
DISTRICT COURT OF GUAM
DEC 15 2003
MARY L. M. MORAN
CLERK OF COURT

273

# UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> Vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. <br> BIOGENESIS PACIFIC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendant. | CIVIL CASE NO. 02-00008 <br><br> **DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS** <br><br> [ORAL ARGUMENT REQUESTED] |

**ORIGINAL**

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) ) |
| Cross-Claim Defendant. | ) ) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATUTES ........................................................................................ iii, iv

I. INTRODUCTION ....................................................................... 2

II. PARTIES .................................................................................. 2

III. FACTS RELATING TO PLAINTIFF'S SUBCONTRACT AND WORK ON THE PRIME CONTRACT ................................................. 3

IV. ARGUMENT ............................................................................. 5

    A. UNDER THE MILLER ACT, RHINO CANNOT RECOVER FROM AIGTS BECAUSE AIGTS IS NOT THE SURETY AND DID NOT ISSUE THE PAYMENT BOND. .................................................. 5

    B. PLAINTIFF'S CLAIMS AGAINST DEFENDANT AMERICAN HOME ARE TIME-BARRED BECAUSE RHINO FAILED TO INSTITUTE THIS ACTION WITHIN ONE (1) YEAR OF LAST PROVIDING LABOR AND MATERIALS ......................................... 7

    C. PLAINTIFF CAN ONLY RECOVER COSTS FOR LABOR AND MATERIALS FOR DELIVERY ORDERS 1, 2 AND 7 ........... 9

    D. THERE IS NO RECOVERY FOR ADMINISTRATIVE AND OVERHEAD EXPENSES UNDER THE MILLER ACT ......... 11

V. SUPPLIERS OF CAPITAL EQUIPMENT ARE INELIGIBLE FOR MILLER ACT PROTECTION ............................................................. 12

CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

**CASE**

National State Bank of Newark v. Terminatl Construction Corp., 217 F.Supp. 341, 361 (D.N.J. 1963) ............................................................. 12

United States of America for the Use and Benefit of Balzer Pacific Equipment Company v. Fidelity and Deposit Company of Maryland, 895 F.2d 546 (9th Cir. 1990) ............................................................. 13

United States of America for the Use and Benefit of Bordallo Consolidated, Inc. v. Markowitz Bros. (Delaware), Inc., 249 F.Supp. 610 (D. Guam 1966) ............................................................................................ 11

United States of America for the Use and Benefit of Celanese Coatings Co. v. Gullard, 504 F.2d 466, 468 (9th Cir. 1974) ....................................... 7

United States of America for the Use and Benefit of J.A. Postell v. B. Perini & Sons, 159 F.Supp. 911, 916 (N.D. Fla. 1958) ................................. 11

United States of America for the Use and Benefit of Sun Belt Pipe Corporation v. United States Fidelity and Guaranty Company, 785 F.2d 468 (4th Cir. 1986) ............................................................. 13

## STATUTES

**Federal**

40 USC § 3131(b)(2) ................................................................................. 6,9, 11

40 USC § 3133(b)(1) ................................................................................. 6,9,10

40 USC § 3133(b)(4) ................................................................................. 7

**RULES**

FRCP Rule 54(b).................................................................................... 14

FRCP Rule 56(b).................................................................................... 1

## MOTION

Defendants AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") and AIG TECHNICAL SERVICES, INC. ("AIGTS") move for partial summary judgment on the Plaintiff's Second Amended Complaint pursuant to FRCP Rule 56(b) with respect to only the Plaintiff's Miller Act claims against Defendants AMERICAN HOME and AIGTS, as set forth in Count I of the Second Amended Complaint filed on July 15, 2003.

AMERICAN HOME and AIGTS seek dismissal of the Plaintiff's Miller Act claims. This motion addresses issues of:

1. Whether the Miller Act permits recovery under the payment bond against Defendant AIGTS, an entity that is not a surety nor the entity that issued the payment bond for the federal project at hand;

2. Whether RHINO complied with the one (1) year jurisdictional requirement against Defendant AMERICAN HOME as it was first named as a defendant on September 10, 2002, more than one-year after Plaintiff alleges material or labor was last provided, therefore, recovery is not permitted against Defendant AMERICAN HOME;

3. Whether RHINO's potential recovery against the surety AMERICAN HOME is limited to labor and materials supplied pursuant to Delivery Orders 1, 2 and 7; and

4. Whether capital expenditures, administrative and overhead expenses are recoverable under the Miller Act.

//

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In Count I of its Second Amended Complaint filed on July 15, 2003, Plaintiff seeks recovery upon a Miller Act payment bond based upon an alleged oral subcontract between Plaintiff and Defendant BIOGENESIS; the terms and conditions of which are not evidenced by any contemporaneous writing signed by BIOGENESIS; the exact nature of which is hotly contested by BIOGENESIS; and with respect to which there are questions whether the Plaintiff has properly invoked the jurisdiction of this Court by filing its Miller Act suit within the one-year jurisdictional limitation of the Miller Act.

Defendants AIGTS and AMERICAN HOME denied Plaintiff's Miller Act claim, and Plaintiff filed suit upon the Miller Act payment bond seeking recovery under the Miller Act, and also seeking compensatory and punitive damages based upon the alleged tortuous breach of the implied covenant of good faith and fair dealing by AIGTS and AMERICAN HOME. This Motion seeks summary judgment only as to the Miller Act claim alleged in Count I of the Second Amended Complaint.[1]

## II. PARTIES

Plaintiff alleges that it is a subcontractor to BIOGENESIS with respect to a prime contract between BIOGENESIS and the United States for work to be performed under Navy Contract No. 62766-99-D-0425 (Navy Housing Various Locations On

---

[1] The Defendants AMERICAN HOME and AIGTS have filed a separate motion for summary judgment on December 5, 2003 requesting dismissal of RHINO's bad faith claims. The hearing on that motion will be heard concurrently with this motion.

Guam) (the "Prime Contract"). The Prime Contract was IDIQ, and the relevant task orders in this litigation are 1 thru 18 for roofing repairs. Defendant BIOGENESIS is the prime contractor and the Principal under the Miller Act bond at issue in this case.

AMERICAN HOME is a commercial surety, which issued the Miller Act payment bond for the Prime Contract.

AIGTS is a claims processing company, which among other things, investigates and administers claims arising out of payment and/or performance bonds issued by AMERICAN HOME. AIGTS is not a surety or insurer and does not issue payment or performance bonds or insurance policies. Kahn Declaration, p. 4, ¶s 11-14.

### III. FACTS RELATING TO PLAINTIFF'S SUBCONTRACT AND WORK ON THE PRIME CONTRACT.

Set forth below, in chronological order, are what AIGTS and AMERICAN HOME believe are the facts regarding the subcontract and RHINO's involvement with the Prime Contract.

| Date | Event | Source |
|---|---|---|
| 1999 | BIOGENESIS is awarded an Indefinite Delivery Indefinite Quantity ("IDIQ") contract by the U.S. Navy for roofing repairs. | Yanza Dec., Ex. "A", R. Avilla 4/10/03 depo pp. 135-136. |
| September 29, 1999 | Michael O'Connell and Gerald Lam allegedly agree that BIOGENESIS would subcontract the work to RHINO. The terms of the alleged agreement were:<br><br>1. RHINO and BIOGENESIS would share office space;<br>2. RHINO would supply a project manager, Richard Avilla to BIOGENESIS;<br>3. RHINO would bear the costs up front and be reimbursed; and<br>4. Profits to be equally shared. | Yanza Dec., Ex. "C", M. O'Connell 2/20/03 depo, pp. 100-105. |

3

| | | | |
|---|---|---|---|
| May 2000 | Richard Avilla authorizes RHINO to begin work on Delivery Order No. 1. | Yanza Dec., Ex. "A", R. Avilla depo p. 139. |
| | It is disputed whether BIOGENESIS actually authorized RHINO to begin work, but RHINO worked on delivery orders 1, 2, and 7. | Yanza Dec., Ex. "D" 2/19/03 depo pp. 127-137. |
| June 15, 2000 | RHINO/BIOGENESIS complete Delivery Order No. 1 for Twelve Thousand One Hundred Twenty-Nine and 10/100 Dollars ($12,129.10). | Yanza Dec., Ex. "E". |
| June 29, 2000 | RHINO/BIOGENESIS complete Delivery Order No. 2 for Twenty-Six Thousand Four Hundred Forty-Five and 10/100 Dollars ($26,445.10). | Yanza Dec., Ex. "F". |
| August 21, 2000 | RHINO/BIOGENESIS complete Delivery Order No. 7 for Five Thousand Two Hundred Eighty Dollars ($5,280.00). | Yanza Dec., Ex. "G". |
| Date Unknown | BIOGENESIS makes a single payment to RHINO for Twenty-Five Thousand Dollars ($25,000.00). | Second Amended Complaint, ¶17 and Ex. "1". |
| September / November 2000 | RHINO lays off all its employees because of no work. | Yanza Dec., Ex. "A", R. Avilla depo pp. 150-153; Ex. "B". |
| November 2000 | RHINO employees ceased work on the IDIQ contract with BIOGENESIS. | Yanza Dec., Ex. "C", p. 176 |
| October 22, 2001 | Plaintiff's counsel (Mr. Thomason of Carlsmith Ball-Hawaii) sent a letter dated 10-22-01 to AMERICAN HOME's San Francisco underwriting office, with an attached document entitled "Notice Of Claim On Bond" requesting a Miller Act Proof of Claim form. | Kahn Dec., Ex. "A". |
| October 30, 2001 | Mr. Mark Titherington of AIGTS responded to Plaintiff's counsel by letter of 10-30-01 acknowledging receipt of the claim and | Kahn Dec., Ex. "B" |

| | | |
|---|---|---|
| | transmitting a Proof of Claim form. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | |
| January 9, 2002 | Plaintiff's counsel (Mr. Thomason) transmits the Proof of Claim form. The cover letter is addressed to Mr. Titherington of AMERICAN HOME. | Kahn Dec., Ex. "C". |
| January 17, 2002 | AIGTS' Mr. Bruce Kahn acknowledged receipt of Plaintiff's Proof of Claim. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Kahn Dec., Ex. "D". |
| February 21, 2002 | AIGTS' Mr. Kahn wrote Plaintiff's counsel advising that the Proof Of Claim states that the claim was denied due to the failure to file suit within the one-year limit prescribed by the Miller Act. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Kahn Dec., Ex. "E". |
| March 11, 2002 | Plaintiff's counsel (Mr. Thomason) requests that the 02-21-02 denial be re-examined. | Kahn Dec., Ex. "F". |
| March 20, 2002 | Plaintiff files the Complaint. In the Complaint, Carlsmith named AIGTS as the Miller Act surety. | |
| June 21, 2002 | AIGTS' Kahn advises Thomason that the claim is still denied. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME. | Kahn Dec., Ex. "G". |

## IV. ARGUMENT

### A. UNDER THE MILLER ACT, RHINO CANNOT RECOVER FROM AIGTS BECAUSE AIGTS IS NOT THE SURETY AND DID NOT ISSUE THE PAYMENT BOND.

The Miller Act permits the supplier of labor and materials to bring a civil action against the surety and contractor issuing the payment bond. The Miller Act states:

5

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished . . . and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made <u>may bring a civil action on the payment bond</u> for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 USC §3133(b)(1).

This construction is supported by reading 40 USC §3133(b)(1) with §3131(b)(2):

> A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

On a federal project, a payment bond is issued by the surety for the "protection of all persons supplying labor and material in carrying out the work." Once 90 days has lapsed after the supplier last supplied labor or material, the supplier may then "bring a civil action on the payment bond for the amount unpaid."

Nowhere throughout the Act does the Act permit the supplier to recover from an entity (other than the contractor and surety) who did not issue the payment bond.

Here, RHINO cannot recover from AIGTS because AIGTS is not the surety. Kahn Declaration, p. 4, ¶s 11-14. AIGTS has never issued a payment bond on this or any other project. AIGTS is not licensed to be a surety company. AIGTS is not and

has never been a surety for BIOGENESIS. Id. The payment bond names AMERICAN HOME as the surety, not AIGTS. Kahn Dec., Ex. "H".

Thus, Defendant AIGTS could not be a surety unless it entered into a contract of suretyship, agreeing that it would be responsible for payments in the event BIOGENESIS could not pay RHINO. Defendant AIGTS however, did not do so. AIGTS could not have done so because AIGTS is not a surety. Id.

Therefore, because AIGTS is not a surety that issued the payment bond applicable to the Prime Contract, RHINO cannot recover from AIGTS, and this Court should grant summary judgment and dismiss with prejudice, Count I of the Second Amended Complaint as to AIGTS.

### B. PLAINTIFF'S CLAIMS AGAINST DEFENDANT AMERICAN HOME ARE TIME-BARRED BECAUSE RHINO FAILED TO INSTITUTE THIS ACTION WITHIN ONE (1) YEAR OF LAST PROVIDING LABOR AND MATERIALS.

In actions under the Miller Act, the Plaintiff must institute action within one (1) year of last providing labor and materials. The one-year limitation is jurisdictional and the Plaintiff bears the burden of proof of compliance. <u>United States of America for the Use and Benefit of Celanese Coatings Co. v. Gullard</u>, 504 F.2d 466 (9th Cir. 1974).

The relevant portion of the Miller Act states that: "An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 USC §3133(b)(4).

RHINO's Chief Executive Officer, Mr. Michael O'Connell, initially stated, under oath, in his Proof of Claim that Defendant BIOGENESIS had delivered "roofing

7

installations and repairs and materials to BIOGENESIS" for the period of time "between the dates of May 2000 <u>and December 2000</u>. . ." (emphasis provided). Kahn Declaration, Exhibit "C". However, after the claim was denied by the claims adjuster AIGTS due to the one-year jurisdictional requirement having run (and therefore after RHINO was put on notice that there was a jurisdictional problem with their claim), RHINO filed its initial Complaint on March 20, 2002. In that initial Complaint, the Plaintiff alleged, in paragraph 21, that "the date on which the last labor was performed and equipment supplied to Defendant contractor by Plaintiff was March 20, 2001." Perhaps not by coincidence the initial Complaint was filed on March 20, 2002 - exactly one (1) year after the March 20, 2001 date alleged in paragraph 21 of the initial Complaint as the last date in which RHINO furnished labor or materials. It is important to note the initial Complaint filed on March 20, 2002 did not name AMERICAN HOME as a party defendant.

Almost six (6) months later, RHINO filed an Amended Complaint on September 10, 2002, and named – for the very first time – surety AMERICAN HOME. RHINO attempted to bring AMERICAN HOME into the lawsuit, for the first time, well beyond the one-year jurisdictional requirement.

From the face of paragraph 21 of the Amended Complaint filed September 10, 2002, and paragraph 21 of the subsequently filed Second Amended Complaint of July 15, 2003, and discovery conducted to date, there can be no fact dispute that the one-year jurisdictional requirement has not been met by the Plaintiff to invoke the jurisdiction of this Court in its Miller Act claim against Defendant AMERICAN HOME.

For the above reasons, RHINO is time-barred by the one-year jurisdictional requirement of the Miller Act to bring its claims against AMERICAN HOME

### C. PLAINTIFF CAN ONLY RECOVER COSTS FOR LABOR AND MATERIALS FOR DELIVERY ORDERS 1, 2 AND 7.

Assuming *arguendo* that the Court does not dismiss the Miller Act claim against AMERICAN HOME on the grounds of the one-year jurisdictional requirement, Defendants AIGTS and AMERICAN HOME believe that RHINO can only recover costs for labor and materials actually expended in prosecuting the work in the contract. The Act limits the supplies to actual expenses.

The Defendants' statutory construction is supported by reading 40 USC §3131(b)(2) in conjunction with the provisions of 40 USC §3133(b)(1):

> [a] payment bond with a surety . . . for the protection of all persons <u>supplying labor and material in carrying out the work</u> provided for in the contract for the use of each such person.

40 USC §3131(b)(2) (emphasis added).

40 USC §3133(b)(1) states:

> [e]very person that has <u>furnished</u> labor or material in carrying out work provided for in a contract . . . [who] has not been paid in full within 90 days after the day on which the person <u>did or performed</u> the last of the labor or <u>furnished or supplied</u> the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due. (Emphasis added)

In short, the supplier of labor and materials can only recover the costs for the labor and materials actually supplied to the project.

Here, RHINO supplied labor and materials on only three (3) of the eighteen (18) delivery orders. RHINO supplied labor and materials on delivery orders 1, 2 and 7. Yanza Dec., Ex. "B", Avilla 8-20-03 depo pp. 13-16.

No other delivery orders were worked on by RHINO. After Delivery Order No. 7, RHINO had ceased working on the IDIQ contract by November of 2000. Yanza Dec., Ex. "A", p. 153.

RHINO is entitled to only the "amount unpaid" for furnishing "labor or material in carrying out work provided for in the contract." 40 USC §3133(b)(1). The issue then turns to how much is RHINO due? As will be shown, RHINO is only entitled to Four Thousand Six Hundred Sixty-Seven and 70/100 Dollars ($4,667.70).

The total contract price for the delivery orders were:

| Delivery Order: | Completion Date: | |
|---|---|---|
| Delivery Order No. 1 | June 15, 2000 | $ 12,129.10 |
| Delivery Order No. 2 | August 3, 2000 | 26,445.10 |
| Delivery Order No. 7 | September 20, 2000 | 5,280.00 |
| | TOTAL: | $ 43,854.20 |
| Payment to RHINO | | < $ 25,000.00> |
| | | $ 18,854.20 |

Yanza Dec., Exs. "A", "B", "E", "F", "G" and "J"; and Ex. "1" to Second Amended Complaint.

The total price for the 3 delivery orders was Forty Three Thousand Eight Hundred Fifty-Four and 20/100 Dollars ($43,854.20). Since BIOGENESIS paid RHINO $25,000.00 for labor and materials for delivery orders 1, 2 and 7, the remaining balance is Eighteen Thousand Eight Hundred Fifty-Four and 20/100 Dollars ($18,854.20).

BIOGENESIS' costs for the 3 delivery orders were Fourteen Thousand One Hundred Eighty Six and 50/100 Dollars ($14,186.50). Yanza Dec., Ex. "J". So the maximum "amount due" to RHINO is $4,667.70 ($18,854.20 - $14,186.50 = $4,667.70), if its claim survives summary judgment.

### D. THERE IS NO RECOVERY FOR ADMINISTRATIVE AND OVERHEAD EXPENSES UNDER THE MILLER ACT.

Claims for administrative and overhead expenses are not within the protection of the Miller Act because said expenses were not incurred in "carrying out the work provided for in the contract." 40 USC §3131(b)(2).

Guam is in accord. In <u>United States of America for the Use and Benefit of Bordallo Consolidated, Inc. v. Markowitz Bros (Delaware), Inc.</u>, 249 F.Supp. 610 (D. Guam 1966), an insurance company sought recovery from the Miller Act surety for unpaid worker's compensation insurance premiums. Judge Shriver rejected the insurance company's argument and granted the surety's motion to dismiss, and ruled that worker's compensation premiums were neither "labor nor material" within coverage of the Miller Act. <u>Bordallo Consolidated</u>, at 611-612. Thus, an award for administrative and other miscellaneous expenses does not fall within the language of the Act as it is neither labor nor materials. See also, <u>United States of America for the Use and Benefit of J.A. Postell v. B. Perini & Sons</u>, 159 F.Supp. 911, 916 (N.D. Fla. 1958) (telephone and telegraph costs, travel expenses, engineering time for having drawings approved, administrative costs and attorney's fees are not recoverable in a Miller Act suit).

11

Permitting administrative and overhead expenses to be covered by the bond would mean that the surety would in effect, be a guarantor of the business of the subcontractor. *National State Bank of Newark v. Terminal Construction Corp.*, 217 F.Supp. 341, 361 (D.N.J. 1963). Such results are not contemplated by the statute. Therefore, AMERICAN HOME respectfully requests disallowance of RHINO's administrative and overhead expenses.

These administrative and overhead expenses includes, but not limited to, the following: office rent for RHINO and BIOGENESIS, apartment rental for RHINO's manager George Allen, attending OSHA courses, motor vehicle registration renewal fees, Contractors License Board license renewal, name change fees, employee loans, office utility (i.e., power, water and telephone) expenses, purchase and repair of water blaster, repair costs of VCR to view seminars, computer repairs, office supplies (i.e., paper, soap, toilet paper, paper towels), bed and supplies for office, consulting fees, K&L Driving School fees, cellular phones, internet services, photocopy expenses for RHINO's brochures and business cards, installation of additional telephone lines, internet fees, toilet rental, gas expenses, computer repairs, office yard work, and vehicle safety inspection, etc. See, Yanza Dec., Ex. "H"; and Ex. "1" to Second Amended Complaint.

## V. SUPPLIERS OF CAPITAL EQUIPMENT ARE INELIGIBLE FOR MILLER ACT PROTECTION.

The cost of all capital equipment purchased and used by RHINO on the project is not recoverable under the Miller Act.

12

In *United States of America for the Use and Benefit of Sun Belt Pipe Corporation v. United States Fidelity and Guaranty Company*, 785 F.2d 468 (4th Cir. 1986), Sun Belt supplied a pipe to Merritt, the general contractor on a Navy contract. After the prime contractor defaulted, the supplier Sun Belt then filed suit claiming it was the supplier of materials to the project. On appeal to the Fourth Circuit, Sun Belt argued that because the pipe had depreciated by two-thirds, the pipe was consumed on the project.

The Fourth Circuit flatly rejected Sun Belt's arguments and held that since the pipe was not totally consumed in the project, the pipe is not considered "materials" under the Miller Act. In distinguishing materials and capital equipment, the Court held:

> A thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment, but something which is reasonably expected to have no utility or economic value to the contractor after the completion of the work may be classified as material.

*Sun Belt*, at 471. See also, *United States of America for the Use and Benefit of Balzer Pacific Equipment Company v. Fidelity and Deposit Company of Maryland*, 895 F.2d 546 (9th Cir. 1990).

In the instant case, any claims by RHINO for hard hats, computers, office equipment and safety equipment, which were not consumed by the project and had both utility and economic value after completion of the project, should be stricken from the Plaintiff's prayer for relief.

## CONCLUSION

Based on the above, Defendants AMERICAN HOME and AIGTS respectfully move the Court to enter summary judgment in favor of Defendants AMERICAN HOME

13

and AIGTS and against the Plaintiff, RHINO; and dismiss, with prejudice, Plaintiff's Miller Act claims against Defendants AMERICAN HOME and AIGTS as set forth in Count I of the Second Amended Complaint, on the following grounds:

1. Defendant AIGTS be dismissed as AIGTS is not a surety and did not issue the payment bond;

2. Plaintiff RHINO cannot recover against AMERICAN HOME in this action since it failed to file its Complaint within the one-year jurisdictional requirement of the Miller Act;

In the event the Court does not grant the relief sought in paragraphs 1 and 2 above, Defendants AMERICAN HOME and AIGTS respectfully request the Court grant summary judgment as follows:

3. Plaintiff RHINO is only entitled to costs of labor and materials supplied to Delivery Orders 1, 2 and 7;

4. The cost of capital expenditures, administrative and overhead expenses are not permissible under the Miller Act; and

5. Defendants AMERICAN HOME and AIGTS respectfully request that said judgment be entered as a final judgment, pursuant to FRCP Rule 54(b), as there is no just reason for delay.

Respectfully submitted this 15th day of December, 2003.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY**

By: _____
LOUIE J. YANZA

14