ORIGINAL

James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

# UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendant. | CIVIL CASE NO. 02-00008 <br><br> DECLARATION OF LOUIE J. YANZA RE: FILING OF UNSIGNED COPY OF DECLARATION OF BRUCE KAHN IN SUPPORT OF DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS |

275

FILED
DISTRICT COURT OF GUAM
DEC 15 2003
MARY L. M. MORAN
CLERK OF COURT

| AMERICAN HOME ASSURANCE COMPANY | ) |
| | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| | ) |
| Cross-Claim Defendant. | ) |
| | ) |

I, LOUIE J. YANZA, hereby declare pursuant to 28 U.S.C. §1746, as follows:

1. I make this declaration on personal knowledge, having personal knowledge of the facts herein contained, and am competent to testify if called upon as a witness at trial of the within entitled-action.

2. I am an individual over the age of 18. I am an attorney licensed to practice law within Guam and before the U.S. District Court of Guam.

3. Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"), have retained the law office of VERNIER & MAHER, LLP as counsel in the above-entitled action.

4. As part of such services, I am in receipt of the unsigned declaration of Bruce Kahn, Bond Claims Analyst of AIG TECHNICAL SERVICES, INC. I have attached a true and correct copy of Mr. Kahn's declaration to this Declaration and incorporate it by reference herein. The declaration is "DECLARATION OF BRUCE KAHN IN SUPPORT OF DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS" ("Declaration")

2

filed on this day in support of Defendants AIGTS and AMERICAN HOME's Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims.

5. The original of the Declaration is being sent by mail to be delivered to VERNIER & MAHER, LLP.

6. Due to time constraints and distances, as Mr. Kahn resides in New York, it has not been possible to receive the original executed Declaration in time for the original Declaration to be filed with the Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims ("Motion"), which Motion is being filed concurrently herewith.

7. Upon receipt of the original executed Declaration, I will deliver the Declaration to the Clerk of Court for filing and substitution for the attached photocopy.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of December, 2003, in Hagåtña, Guam.



LOUIE J. YANZA

James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

# UNITED STATES DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) ) | CIVIL CASE NO. 02-00008 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | DECLARATION OF BRUCE KAHN IN SUPPORT OF DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |
| BIOGENESIS PACIFIC, INC., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) ) | |
| Counter-Defendant. | ) ) | |

1

AMERICAN HOME ASSURANCE
COMPANY                          )
                                 )
            Cross-Claimant,      )
                                 )
      vs.                        )
                                 )
BIOGENESIS PACIFIC, INC.         )
                                 )
            Cross-Claim Defendant. )
_____

I, BRUCE KAHN, hereby declare pursuant to 28 U.S.C. §1746, as follows:

1.    I am a U.S. Citizen over the age of eighteen (18).

2.    I am the Bond Claims Analyst for AIG Technical Services, Inc. ("AIGTS"), the claims servicing division of the American International Group ("AIG"), responsible for investigating and handling the claims against the various sureties owned by AIG including the AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"). As such, I have personal knowledge of the facts and circumstances set forth herein, except for those matters herein stated on information and belief, and as to these matters, I believe them to be true. I make this declaration in support of Defendants AMERICAN HOME and AIGTS' Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims.

3.    I am the person responsible for handling the claim filed by RHINO BUILDERS, INC. ("RHINO") against BIOGENESIS PACIFIC, INC. ("BIOGENESIS") and a payment bond issued by its surety, American Home Assurance Company regarding Department of Navy Contract No. N62766-99-D-0425 (Navy Housing Various Locations on Guam).

4.  Attached hereto and marked Exhibit "A" is a true and correct copy of a letter dated October 22, 2001 from Carlsmith Ball, LLP ("Carlsmith"), attorneys for RHINO BUILDERS, INC. ("RHINO"), to AMERICAN HOME providing Notice of Claim on Bond and requesting Miller Act Proof of Claim Form.

5.  Attached hereto and marked Exhibit "B" is a true and correct copy of a letter dated October 30, 2001, from Mr. Mark Titherington of AIGTS specifically directing RHINO to submit a Proof of Claim form for their documentation of their claim against the Bond. The letter calls the reader's attention to "to the above referenced surety" as AMERICAN HOME.

6.  Attached hereto and marked Exhibit "C" is a true and correct copy of a letter dated January 9, 2002 from Terry E. Thomason of Carlsmith Ball, LLP, which enclosed an executed Miller Act Proof of Claim Affidavit signed by Michael O'Connell the CEO of RHINO before a Notary Public in Hawaii regarding a claim on bond No. 000-20-80-88 on Contract No. N62766-99-D-0425. Based on this sworn affidavit, we denied RHINO's claims on the grounds that the 1 year statute of limitations lapsed.

7.  Attached hereto and marked Exhibit "D" is a true and correct copy of a letter dated January 17, 2002 from Bruce Kahn, on behalf of AIGTS, to Mr. Thomason acknowledging receipt of Mr. Michael O'Connell's executed Proof of Claim form. The letter calls the reader's attention to "the above referenced surety" as AMERICAN HOME.

8.   Attached hereto and marked Exhibit "E" is a true and correct copy of a letter dated February 21, 2002 from AIGTS to CARLSMITH denying the claim by RHINO dated January 9, 2002 on Bond No. 000-20-80-88 on behalf of AMERICAN HOME. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME.

9.   Attached hereto and marked Exhibit "F" is a true and correct copy of a letter dated March 11, 2002 from Terry E. Thomason to Bruce Kahn requesting AMERICAN HOME to reconsider its denial of RHINO's claim.

10.  Attached hereto and marked Exhibit "G" is a true and correct copy of a letter dated June 21, 2002 from AIGTS to Carlsmith again denying the claim by RHINO.   The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME.

11.  AIGTS is not a surety company and does not issue payment or performance bonds, nor is AIGTS licensed to be a surety company.

12.  AIGTS is not and has never been a surety for BIOGENESIS.

13.  AIGTS and AMERICAN HOME are two (2) separate entities with separate boards of directors and officers.

14.  The Payment Bond covering claims on Department of Navy Contract N62766-99-D-0425 as Bond No. 000-20-80-88 was issued by AMERICAN HOME and not AIGTS, and therefore AIGTS is not a proper defendant in this case.

15.  Attached hereto and marked as Exhibit "H", is a true and correct copy of the Payment Bond, Bond No. 000-20-80-88, in which AMERICAN

HOME, not AIGTS, contractually obligated itself to be the surety for the

principal, Biogenesis Pacific, Inc.

16.     Attached hereto and marked as Exhibit "I", is a true and correct copy of

the Performance Bond, Bond No. 000-20-80-88, in which AMERICAN

HOME, not AIGTS, contractually obligated itself to be the surety for the

principal, BIOGENESIS.

I, BRUCE KAHN, declare under penalty of perjury that the foregoing is true and

correct.

Dated: New York, New York, December _____, 2003.


_____
**BRUCE KAHN**

C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Pleadings\Declaration of Bruce Kahn in Support of Motion for SJ.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

BOND DEPT.
OCT 2 5 2001



# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

| | | |
|---|---|---|
| DIRECT DIAL NO. | E-MAIL TET@CARLSMITH.COM | OUR REFERENCE NO. |
| (808) 523-2527 | | 053705-00001 |

October 22, 2001

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

American Home Assurance Company
121 Spear Street
San Francisco, California 94105

Re:   Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on
      Contract No. N62766-99-D-0425

Dear Sirs:

On behalf of our client, Rhino Builders, Inc., we are forwarding this enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its rights under the Miller Act. Contrary to your understanding, BioGenesis Pacific, Inc. is the prime contactor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc. provided all labor and materials supporting its claim pursuant to an oral subcontract between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and forward any and all future communications to my attention at the above address.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · KONA · SAIPAN · GUAM · LOS ANGELES · WASHINGTON DC · MEXICO

Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

*Terry E. Thomason*

Terry E. Thomason

Enclosures

cc:  Rhino Builders, Inc.

1433798.1



# NOTICE OF CLAIM ON BOND

## (Miller Act 40 U.S.C. Section 270(a) to 270(e))

| | |
|---|---|
| Public Agency: | Officer in Charge of Construction<br>Ms. Bennett Tefaje, Contracting Officer<br>NAVFACENGCOM Contracts Marianas<br>PSC455, Box 175<br>FPO AP 96540-2200 |
| Bonding Company: | American Home Assurance Company<br>121 Spear Street<br>San Francisco, California 94105 |
| Prime Contractor: | BioGenesis Pacific, Inc.<br>1604 Uluaiana Place<br>Kailua, Hawaii 96734 |

NOTICE IS HEREBY GIVEN, that Rhino Builders, Inc., the undersigned subcontractor to BioGenesis Pacific, Inc. and Claimant, has not been paid in full and is looking to the Prime Contractor for payment of the following claim. This notice is intended as written notice pursuant to 40 U.S.C. Section 270.

Claimant, whose address is: 87-1610 Ulehawa Road, Waianae, Hawaii 96792, has a claim in the amount of $245,664.43 (not including service charges or interest as allowed by law and at the maximum, legal charges or interest as allowed by law and at the maximum legal rate) for labor performed and materials provided for the public work of improvement commonly known as Navy Housing Roofing, Various Locations; Contract No. N62766-99-D-0425, upon which BioGenesis Pacific, Inc. is the Prime Contractor.

## WE ARE LOOKING TO THE PRIME CONTRACTOR FOR PAYMENT OF THESE DEBTS.

1. The total amount of the claim is $245,664.43.

2. The name of the party for whom the labor and materials were provided is: BioGenesis Pacific, Inc.

3. Rhino Builders, Inc. provided such labor and materials directly to BioGenesis Pacific, Inc. pursuant to an oral subcontract between Rhino Builders, Inc. and BioGenesis Pacific, Inc.

In support of its claim, Claimant submits the following documents:

1. Claimant's initial invoice, which includes a breakdown of reimbursable costs and profit share (Exhibit 1);

"Claimant"

_____
Michael O'Connell
Rhino Builders, Inc.

Executed this 2 O day of October, 2001.

I declare under penalty of perjury that the foregoing is true and correct.

To the unpaid balance of $245,664.43 (plus penalties and interest), if not paid, Claimant shall also seek attorneys fees and interest at the maximum legal rate.

4.      A copy of Payment Bond No. 20-80-88 sent to Claimant from Ms. Bennett Terlaje, Contracting Officer in charge of construction for Contract No. N62766-99-D-0425 (Exhibit 4).

3.      A copy of Rhino Builders, Inc.'s Assertion of Nonpayment under FAR 32.112-1 to Ms. Bennett Terlaje, Contracting Officer (Exhibit 3); and

2.      Claimant's final invoice in the amount of $245,664.43 for BioGenesis Pacific, Inc.'s unpaid billings on all work Claimant performed on Contract No. N62766-99-D-0425 with attached mail receipts reflecting BioGenesis Pacific, Inc.'s refusal to accept business mail sent by Rhino Builders, Inc. (Exhibit 2);



**AIG**

**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000
Direct Dial: (212) 458-1282

October 30, 2001

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

| | |
|---|---|
| **Re:** | **Principal:** | BioGenesis Pacific, Inc. |
| | **Bond No.:** | 000-20-80-88 |
| | **Claim No.:** | 388-00S037-001-0001 |
| | **Contract No.** N62766-99-D-0425 - Navy Housing - Guam and various locations |
| | **Project:** | locations |
| | **Surety:** | American Home Assurance Co. |
| | **Claimant:** | Rhino Builders, Inc. |

Dear Mr. or Ms. Thomasen:

This will acknowledge receipt of your client's claim in the amount of $245,664.43 for labor and/or materials furnished in connection with the above referenced project.

You will please find enclosed a Proof of Claim form for your client's use in documenting their claim against the above bond. This form should be completed in as much detail as possible, and include the last date that their company either performed the work or supplied materials claimed for on the above project. The Proof of Claim form should then be photocopied twice (to make three sets). Separate copies of documentation supporting the claim should be annexed to each form. Documentation supporting the claim in this instance would include copies of any subcontracts, signed purchase orders, signed invoices, signed delivery tickets, etc. Upon completion, two (2) of these forms in original (signed and notarized by an authorized representative of your client's company), with copies of supporting documentation annexed to each, should be returned to my attention (the third form is for your own records).

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Truly yours,

Mark Titherington

Enc.

cc:   BioGenesis Pacific, Inc.


A Member Company of
American International Group, Inc.

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200

1001 BISHOP STREET

HONOLULU, HAWAII 96813

TELEPHONE (808) 523-2500    FAX (808) 523-0842

www.carlsmith.com

| DIRECT DIAL NO. | E-MAIL TET@CARLSMITH.COM | OUR REFERENCE NO. |
|---|---|---|
| (808) 523-2517 | | 053705-00001 |

January 9, 2002

RECEIVED

JAN 1 5 2002

Surety Bond Claims

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mark Titherington
American Home Assurance Company
175 Water Street, 6ᵗʰ Floor
New York, New York 10038

Re:    Supplement to Miller Act Claim; Ref. Bond No. 20-80-88 – BioGenesis
       Pacific, Inc., Prime Contractor on Contract No. N62766-99-D-0425

Dear Mr. Titherington:

In behalf of our client, Rhino Builders, Inc. ("Rhino"), we provide the following materials for your consideration and actions as surety for BioGenesis Pacific, Inc. ("BPI") on Navy Contract No. N62766-99-D-0425 ("the Contract").

AIG Technical Services, Inc.'s Proof of Claim form is attached to this letter as Enclosure 1.  Rhino's final Contract Invoice to BPI, dated December 19, 2001, is attached to this letter as Enclosure 2.  BPI's letter in response to Rhino's final Contract Invoice, dated December 22, 2001, is attached to this letter as Enclosure 3.

BPI has failed to pay Rhino for its work as a subcontractor on the Contract. BPI's response to Rhino's final Contract Invoice is a rejection and refusal to pay Rhino. See Enclosure 3.  Specifically, BPI's letter refuses to address payment unless Rhino produces a copy of the executed subcontract, in addition to numerous other irrelevant documents not material to Rhino's subcontract with BPI.  The demand for a copy of the executed subcontract is disingenuous because Gerald Lam, President of BPI, refused to

Mark Titherington
January 9, 2002
Page 2

sign any subcontract with Rhino as he had initially promised. Further, the absence of a written subcontract is meaningless and not required for recovery under the Miller Act. There was, in fact and law, a subcontract between Rhino and BPI. Mr. Lam acknowledges the existence of such subcontract and even reiterates the terms of the subcontract in a letter to Michael O'Connell, President of Rhino, dated January 2, 2001. A copy of Mr. Lam's letter is attached to this letter as Enclosure 4.

Under the circumstances here, BPI's December 22, 2001 letter is nothing more than a frivolous, calculated, and deliberate ploy to avoid paying Rhino. As discussed below, the parties' agreement, and legally binding contract, was that Rhino would receive its costs, plus fifty percent (50%) of profits resulting from Rhino's work on the Contract. See Enclosure 4.

## A.   BPI FAILED TO PAY RHINO FOR WORK PERFORMED

Rhino and BPI entered into an oral subcontract whereby Rhino agreed to perform such Contract work as the Navy might assign to BPI on individual task orders under the Contract. Rhino completed the work on task order numbers 0001 through 0018 of the contract and invoiced BPI for payment. The Navy accepted all of Rhino's work on the Contract and made full payment to BPI. As discussed below, BPI has never paid Rhino for any of the work performed on the Contract, even though all of the work was performed by Rhino employees using Rhino equipment, and BPI received full payment.

### 1.   Terms Of The Subcontract

The subcontract agreement was that BPI would pay Rhino's costs of performance plus 50% of BPI's profit upon completion of each task order. See Enclosure 4. In addition, the oral agreement was necessary initially only because the Contract award date had not afforded BPI sufficient time to establish a written subcontract with Rhino. Both BPI and Rhino agreed that the oral agreement between BPI and Rhino would later be reduced to writing to conform to accepted federal government contract practice.

During the time Rhino was performing work on the Navy's assigned Task Orders 1 through 4, Rhino engaged a consultant experienced in federal procurement to prepare a written subcontract agreement to formalize the relationship between Rhino and

BPI. The consultant drafted a proposed subcontract agreement consistent with the terms under which Rhino accepted BPI's offer to perform subcontract work on the Contract. The consultant provided his initial drafts to BPI for comment and finally submitted the full document to BPI for review on November 17, 2000. A copy of the consultant's facsimile transmittal letter to BPI and the draft subcontract are attached to this letter as Enclosure 5.

At this point, BPI refused to pay for Rhino's work to date on the Contract and refused to enter into a formal written subcontract with Rhino. Under the circumstances, Rhino's Chief Executive Officer ("CEO") informed Rhino's Guam office manager to cease performance on the oral agreement with BPI. Rhino's decision to stop work was due to BPI's failure to fulfill its obligation to pay for work performed and refusal to negotiate an acceptable written subcontract. Subsequently, Rhino's CEO learned that BPI was continuing to use Rhino resources on the Contract without payment. Accordingly, Rhino's CEO issued a December 14, 2000 official company notice forbidding BPI's use of Rhino resources to perform its work on the Contract. A copy of the December 14, 2000 notice is attached to this letter as Enclosure 6.

In response to Rhino's action, BPI wrote the January 2, 2001 letter (Enclosure 4) to Rhino, which states in relevant part:

[Rhino's] subcontract was subject to a verbal agreement which provided that 50% of the net profits would be determined after all actual costs to both [BPI] and Rhino. In return you represented that Rhino was capable and would front all the needed facilities, personnel, financing and bonding through the term of each task order. Furthermore, Rhino was consistently given clear and specific instructions not to cause any task orders to be accepted from the Navy unless Rhino was certain that each specific task order would result in a profit or break even at worst under our said agreement. If there was any doubt, Rhino was not to cause any task order to be accepted. BPI relied upon Rhino for the acceptance of each task order.

BPI has been disappointed by Rhino's affirmative and specific actions to repudiate and breach its subcontract with

Mark Titherington
January 9, 2002
Page 4

BPI. This has been especially damaging since upon Rhino's urgings BPI had wholly relied on Rhino's management and facilities on Guam.

The above quoted BPI letter shows unmistakably that an oral agreement existed and that Rhino was to receive at least 50% of the profit from revenues on each work order. Further, the BPI letter shows that Rhino performed all work on the Contract work orders including "all the needed facilities, personnel, financing, and bonding through the term of each work order." As additional proof that the work was performed by Rhino personnel, attached are copies of Rhino's payroll records as Enclosure 7 to this letter. In effect, BPI envisioned the subcontract as a brokered contract with a *de facto* assignment of the Contract to Rhino. BPI did nothing more than obtain award of the Contract and then attempt to transfer all performance requirements to Rhino while refusing to pay for work performed.

2.  **Rhino's Work Was Accepted By The Navy And BPI Was Paid Without Incurring Any Costs**

All of the work performed by Rhino on task orders 0001 through 0018 of the Contract was accepted by the Navy. The Navy paid BPI a total of ONE MILLION EIGHT HUNDRED FIFTY TWO THOUSAND SEVEN HUNDRED EIGHTY EIGHT AND 38/100 DOLLARS ($1,852,788.38) for all of Rhino's work on the Contract. A break down of the Navy's payments to BPI for each task order and the payments owed by BPI to Rhino is attached to this letter as Enclosure 8. BPI incurred no costs on the Contract because all of the work was performed by Rhino personnel using Rhino's equipment and Rhino's facilities. Rhino, on the other hand, incurred direct costs and overhead costs totaling THREE HUNDRED TEN THOUSAND NINE HUNDRED SEVENTY FIVE AND 23/100 DOLLARS ($310,975.23). See Enclosure 8.

In addition to the parties' agreement, BPI guaranteed payment to Rhino for all completed and accepted work. A copy of an e-mail from BPI to Rhino reflecting BPI's guarantee to pay for all completed and accepted work is attached to this letter as Enclosure 9. Although Rhino completed its work and its work was accepted by the Navy, BPI has yet to pay Rhino anything. All of the Navy documents showing acceptance of Rhino's work, confirming payment to BPI, and supporting the payments owed to Rhino are attached to this letter as Enclosure 10. As a result of BPI's breach of

Mark Titherington
January 9, 2002
Page 5

its subcontract with Rhino, Rhino has incurred an enormous debt that has jeopardized Rhino's financial existence.

    B.    Conclusion.

Rhino provided all labor and materials to perform work orders 0001 through 0018 of the contract pursuant to an oral subcontract between Rhino and BPI. BPI received full payment for the Rhino work the Navy accepted. However, BPI continues to refuse to pay Rhino for its costs plus fifty percent (50%) of BPI's profits on the Contract as agreed between the parties. Therefore, Rhino intends to enforce its rights under the Miller Act. Accordingly, Rhino hereby submits this letter, along with all its enclosures, as a supplement to its Proof of Claim against BPI's surety, AIG Technical Services, Inc.

Your immediate attention to this matter is appreciated.

                          Very truly yours,

                          CARLSMITH BALL LLP

                          Terry E. Thomason
                          Amy G. Self

1441107.1.053705-00001

Enclosures

cc:    Rhino Builders, Inc.

AIG A Member Company of

# AIG

**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

*Proof of Claim : Construction Contract*

AIG Technical Services, Inc.

State of  Territory of Guam

County of

**Bond Number:** 000-20-80-88
**Claim Number:** 388-005037-001-0001

I, __Michael O'Connell,__ the __CEO__ of __Rhino Builders, Inc.__
  (Name of Affiant)    (Position in Firm)    (Name of Claimant)

of __87-1610 Ulehawa Road, Waianae, HI 96792__ on behalf of said firm, hereby state under oath that
    (Address)

said firm, furnished, sold, __ between the dates of __May 2000__ and __December 2000__

and delivered __roofing installation & repairs & materials__ to __BioGenesis Pacific, Inc.__ for the
  (describes services or material)    (Name of contractor or subcontractor if any)

constuction of Contract No. __N62766-99-D- 0425__ in accordance with an oral
    (Identify Contract)

described in ~~Prime~~ Subcontract
  (Prime Contract)

Contractor Letter. Purchase order. Dated __January 2, 2001__, a copy of which is attached hereto, for the agreed
price of __$1,081,881.80__, none of which has been paid except __$0__ and leaving a statement
balance due of __$1,081,881.80__. Attached hereto are __1__ Invoices, __NA__ delivery tickets

showing the deliveries or progress estimates furnished __BioGenesis Pacific, Inc.__
    (Contractor)

and the amount due to claimant therefore; that said firm served notice of said balance due it by Registered Mail dated :
on Surety, __Dec. 20, 2001__, __NA__ on Contractor, __NA__ on Owner, (copies
attached), that there is no just credit nor offset due against said firm and that said balance and that made no assignment of any
part of said balance except to __NA__

and that there are no liens or encumbrances against said balance except that of __NA__
; that said firm has paid in full for all labor and material
furnished and supplied it for said job except the claims of the persons or firms whose names and addresses and amounts
due to them are as follows:

__NA__

_____
_____
_____

The foregoing information is furnished to the surety in support of affiant's claim and it is understood that the furnishing of
this from or the acceptance and/or retention thereof by the surety does not constitute a waiver or any of the terms of the
Surety's bond nor or any defenses the Surety may have, nor admission of liability thereunder.
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal
or civil penalties.

Sworn to and subscribed before me
this __9th__ day of __January__ 20 __02__

_____
Notary Public - State of Hawaii
Shireen Shimizu-KO SHIMizu
My Commission expires: 6/24/02

 (Affiant's Signature)

STATE OF HAWAII

**ENCLOSURE 1**



**AIG** AIG Technical Services, Inc.
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-2001 ~~2001~~
1082

January 17, 2002

<u>VIA REGULAR MAIL</u>

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen, Esq.**

| Re: | **Principal:** | BioGenesis Pacific, Inc. |
|---|---|---|
| | **Bond No.:** | 000-20-80-88 |
| | **Claim No.:** | 388-005037-001-0001 |
| | **Project:** | Contract No. N62766-99-D-0425 – Navy Housing – Guam and various locations |
| | **Surety:** | American Home Assurance Co. |
| | **Claimant:** | Rhino Builders, Inc. |

Dear Mr. Thomasen:

This will acknowledge receipt of your Proof of Claim forms in reference to the above captioned matter.

At this time, I am immediately taking this matter up with the above referenced Principal, in order to ascertain their position on your claim as presented. I will be in contact with you in due course regarding their position on the Proof of Claim as presented by your company on the above referenced bond.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc: BioGenesis Pacific, Inc.
The Sundt Companies, Inc.

**AIG** A Member Company of American International Group, Inc.



**AIG** AIG Technical Services, Inc.
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-2901

February 21, 2002

VIA REGULAR MAIL

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen, Esq.

Re:    Principal:       BioGenesis Pacific, Inc.
       Bond No.:        000-20-80-88
       Claim No.:       388-005037-001-0001
       Claimant:        Rhino Builders, Inc. ("Rhino")
       Project:         Contract No. N62766-99-D-0425 - Navy Housing - Guam and various
                        locations
       Surety:          American Home Assurance Co.

Dear Mr. Thomasen:

The above referenced surety has reviewed the Proof of Claim and supporting documentation (collectively, the "Proof of Claim") which you submitted on or about January 9, 2002 in support of your client's claim against the referenced bond. The Proof of Claim has been reviewed in connection with the relevant bond language, your client's purported Miller Act Notice dated October 22, 2001, and the federal Miller Act, 40 U.S.C. § 270a et seq. which governs claims against payment bonds issued for federal projects such as the above.

Section 270(b) of the Miller Act, among other things, expressly states that a payment bond claimant is time barred from bringing suit to enforce its claim unless such an action is brought within one year of the day on which the last of the labor was performed or material was provided by them.

I note that the sworn affidavit of Michael O'Connell, identified as claimant's chief executive officer, included in the Proof of Claim, admits and conclusively establishes that the last day claimant performed labor or provided material on the above project was on or before December 31, 2000. In order to have been timely, suit to enforce the claim would have had to have been commenced within one year of that date. As such, the above referenced claim appears to be time barred by the statute of limitations contained in 40 U.S.C. § 270b(b). Accordingly, the claim must be denied.

If you have any other documents or information you believe would be helpful for the Surety to review please feel free to provide them to the undersigned.

1

[redacted]

AIG

AIG Technical Services, Inc.
175 Water Street
New York, NY 10038
212.770.7000

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc.: BioGenesis Pacific, Inc.

A Member Company of American International Group, Inc.

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OCR REFERENCE NO.
053705-00001

March 11, 2002

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**RECEIVED**
MAR 1 9 2002
*Surety Bond Claims*

Mr. Bruce Kahn
AIG Technical Services, Inc.
175 Water Street
New York, New York 10038

Re:   Miller Act Claim; Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc.-
      Prime Contractor on Contract No. N62766-D-99-D-0425

Dear Mr. Kahn:

We are in receipt of your letter of February 21, 2002, in which you state the claim submitted by our client, Rhino Builders, Inc. ("Rhino"), is time barred under the Miller Act.

We ask that you reconsider your position. Under the Miller Act, the one year limitation period begins on the last day the claimant provides labor or material for use on the project. As you may recall in our January 9, 2002 supplemental letter to Rhino's claim, we explained that BioGenesis Pacific ("BPI") was continuing to use Rhino resources on the Contract without payment." This use of Rhino materials on the Contract continues even today, even though Rhino's present claim for payment is only for labor and materials supplied to BPI on the Contract through December 2000. See the attached Affidavit of Michael O'Connell. As discussed below, Rhino's claim is well within the Miller Act's one year limitation period.

A. The Ninth Circuit's Interpretation of the Miller Act

The purpose of the Miller Act is "to provide broad protection for persons supplying labor and material for the construction of federal public projects." General Electric Co. v. Southern Construction Co., Inc., 383 F.2d 135, 139 (5th Cir. 1967). See also Taylor Construction Inc. v. ABT Service Corp., Inc., 163 F.3d 1119 (9th Cir. 1998) (explaining that "[t]he policy behind the Act is 'to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material'") (quoting United States ex rel. Sherman v. Carter, 353 U.S. 210, 217 (1957)); United Bonding Ins. Co. v. Catalytic Construction Co., 533 F.2d 469, 473 (9th Cir. 1976) (holding that the "purpose of the Miller Act is to protect those who would have materialmen's and workmen's liens under state law if they were not working on a structure exempt as a federal public work or building"). Thus, courts have traditionally given the Miller Act liberal construction and application in order "to protect those whose labor and materials go into public projects." Taylor Construction, 163 F.3d at 1122 (quoting Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102 (1944)). See also United Bonding, 533 F.2d at 473 (interpreting the Miller Act liberally, in light of its legislative history, to protect laborers and suppliers).

1. Statute of Limitations Under the Miller Act

Section 270(b) of the Miller Act provides in pertinent part that a payment bond action "shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by [the claimant]." 40 U.S.C. § 270(b). The Act's "one-year period begins to run [either] on the day when the labor ceases or when the last material was supplied." J.D. Fields & Co., Inc. v. Gottfried Corp., et al., 272 F.3d 692, 698 (5th Cir. 2001). See, e.g., Interform Co. v. Mitchell, 575 F.2d 1270 (9th Cir. 1978); United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816 (9th Cir. 1961); Mike Bradford & Co. v. F.A. Chastain Const., Inc., 387 F.2d 942 (5th Cir. 1968).

In applying the Act's one-year limitations period to suppliers of equipment, the Ninth Circuit has held that the period begins to run "on the date 'the equipment was last available for use on the project.'" United States for the Use of Pippin v. J.R. Youngdale Construction Co., Inc., 923 F.2d 146 (9th Cir. 1991) (quoting United States ex rel. Miller & Bentley Equip. Co. v. Kelley, 327 F.2d 590, 591 (9th Cir. 1964). See also Campbell, 293 F.2d at 820 (holding that when the claimant provides equipment by lease

Mr. Bruce Kahn
March 11, 2002
Page 3

or rental, the one-year limitations period begins on the date "the equipment was last available for use on the project"); Interform Co., 575 F.2d at 1280 (explaining that under the Miller Act, "a furnisher of rental equipment continues to supply such equipment through the entire rental period; the date of last supply occurs not at the beginning of a job but at the end or at the time the equipment is last available for use on the job").

The court in Youngdale Construction explained that unlike a supplier of materials whose obligation ends upon delivery, a supplier of equipment under lease or rental "must allow the equipment to remain in the hands of the lessee for such time as is specified by the lease arrangement." Youngdale Construction, 923 F.2d at 149 (quoting Campbell, 293 F.2d at 820). Thus, "the lessor continues to supply the equipment until the date that the equipment is no longer available for use by the [contractor] on the project." Id. at 149-150. The Act's one-year limitations period, therefore, begins on the date the equipment was last available for use on the project. Id. at 149.

B.    **Rhino's Miller Act Claim is Not Barred by the One-Year Limitations Period**

Rhino's Miller Act claim is not time barred because Rhino has continued to supply equipment to BPI for use on the project. See attached Affidavit of Michael O'Connell. The time period from May 2000 to December 2000, as entered in the Proof of Claim, is the inclusive period during which Rhino supplied labor and materials to BPI for which Rhino is claiming non-payment by BPI. However, subsequent to December 2000, Rhino continued to supply equipment to BPI as late as January 2002. See attached Affidavit of Michael O'Connell.

Specifically, Rhino supplied a truck leased by Rhino to BPI which was available for use by BPI on the project until March 20, 2001, the date on which the lease expired. See Exhibit A of the Affidavit of Michael O'Connell. Rhino also supplied another truck to BPI which was available for use by BPI on the project until May 2001, the date the truck was returned to Rhino. See attached Affidavit of Michael O'Connell. In addition, Rhino supplied another truck to BPI which was available for use by BPI on the project until January 17, 2002, the date on which Rhino paid to have the truck towed to Rhino's premises. See Exhibit B of the Affidavit of Michael O'Connell. Finally, BPI has continued to use and is presently using Rhino's safety equipment and various other types of equipment. See attached Affidavit of Michael O'Connell. The one-year limitations period will not begin until the date such equipment is no longer available for

Mr. Bruce Kahn
March 11, 2002
Page 4

use by BPI on the project. *See Youngdale Construction supra.* Therefore, Rhino's claim is not time barred under the Miller Act.

        C.    Conclusion.

       The purpose of the Miller Act is to provide broad protection for companies like Rhino that supply labor and material for the construction of federal public works projects. Rhino's claim against BPI under the Miller Act is for all labor and materials it supplied to BPI from May 2000 to December 2000 only, even though Rhino has continued to supply equipment to BPI for the project. Because such equipment is still available to BPI for use on the project, Rhino's claim is not time barred by the Miller Act's statute of limitations.

       Rhino asks for prompt resolution of its claim before it is compelled to bring civil suit.

Very truly yours,

CARLSMITH BALL LLP

Terry E. Thomason
Amy G. Self

14504R0.1.053705-0001

Enclosures

cc:    Rhino Builders, Inc.

Case 1:02-cv-00008    Document 278    Filed 12/15/2003    Page 26 of 30

**RHINO BUILDERS** HUBZone & 8 (a) SBA CERTIFIED

790 North Marine Drive, P. O. Box 959, Tumon, Guam, 96911, (671) 632-7653,
(671) 637-9618 fax, Rhinorwa@ite.net
85-841 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-8878,
(808) 668-7024 fax, Rhino1@Hawaii.rr.com

# INVOICE

TO: BIOGENESIS PACIFIC, INC.
790 NORTH MARINE DRIVE #303
TUMON, GUAM 96911
ATTN: BOBBIE SALAS
TEL: 637-9633/35 FAX 637-9634

NO. 0301-002
DATE: MAR. 21, 2001
SHIP VIA:
YOUR NO.:
CUR NO.:
TERMS: DUE UPON RECEIPT

*This is to bill you as follows:*

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| | ISUZU FLATBED RENTAL | | |
| 1 WEEK | MONDAY-SATURDAY MAR. 12-17, 2001 | 584.00 /WK. | $ 584.00 |
| 2 DAYS | MONDAY-TUESDAY MAR. 19-20, 2001 | 130.00 /DAY | $ 260.00 |
| | | Amount due: | $ 844.00 |

Recieved by: [signature] 3-22-01

RHINO BUILDERS, INC.

By: [signature]

*Please show invoice number on your remittance.*

FILE COPY

EXHIBIT A

**AIG**

**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

JUL 03 2002

Direct Dial: (212) 458-2901

June 21, 2002

VIA REGULAR MAIL

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

| | |
|---|---|
| Re: | **Principal:**       **BioGenesis Pacific, Inc.** |
| | **Bond No.:**       **000-20-80-88** |
| | **Claim No.:**       **388-005037-001-0001** |
| | **Contract No. N62766-99-D-0425 – Navy Housing – Guam and various locations** |
| | **Project:** |
| | **Surety:**       **American Home Assurance Co.** |

Dear Mr. Thomasen:

The Surety has reviewed your letter of March 11, 2002 along with the enclosed documents. The Surety continues to believe that the Miller Act claim asserted by Rhino Builders, Inc. is time barred by the statute of limitations contained in 40 U.S.C. § 270b(b) and, accordingly, we maintain our position denying your client's claim as set forth in our letter dated February 21, 2002.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc:     BioGenesis Pacific, Inc.

**AIG**
A Member Company of
American International Group, Inc.

**Exhibit**

**G**

NOV-13-01 02:51PM FROM-SUNDT ACCTS PAYABLE 5207506262 T-042 P.14/14 F-776

SENT BY: 10-10- 1 ; 1:05PM ; FACD ...

Bond No. 20-80-88

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) October 6, 1999 | OMB No.:900 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching [...] sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate [...] aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, [...] DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| BIOGENESIS PACIFIC, INC.<br>1604 Ulualana Place<br>Kailua, Hawaii 96734 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE [XX] CORPORATION<br>STATE OF INCORPORATION: Hawaii |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | |
|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) |
| AMERICAN HOME ASSURANCE COMPANY<br>121 Spear Street<br>San Francisco, California 94105 | | 250 | 000 |
| | CONTRACT DATE | CONTRACT NO. | |
| | 09/29/99 | N62766-99-D-[...] | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above pen[al sum. For] payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, [where the] Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" [only for the] purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and sever[ally with the] Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the [full amount] of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcon[tractor of] the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any auth[orized] modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | BIOGENESIS PACIFIC, INC.<br>By [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | GERALD NYC LAM<br>President | | | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | | |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC.: New York | LIABILITY LIMIT: $ | |
| SIGNATURE(S) | 1. By [signature] | 2. | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Swan Lee, Attorney in Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-9[...])
Prescribed by GSA-FAR (48 CFR) 53.228(...)

(43)

Exhibit H

H

Bond No. 20-80-88

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) October 6, 1999 | OMB No.: 9000-0 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washin[gton,] DC 20405

PRINCIPAL (Legal name and business address)
BIOGENESIS PACIFIC, INC.
1604 Ulualana Place
Kailua, Hawaii 96734

TYPE OF ORGANIZATION ("X" one)
☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

STATE OF INCORPORATION
Hawaii

SURETY(IES) (Name(s) and business address(es))
AMERICAN HOME ASSURANCE COMPANY
121 Spear Street
San Francisco, California 94105

| PENAL SUM OF BOND | | | |
|---|---|---|---|
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 500 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/29/99 | N62766-99-D-0425 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

PRINCIPAL

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | BIOGENESIS PACIFIC, INC. By [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | GERALD N.C. LAM President | | | |

INDIVIDUAL SURETY(IES)

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | | |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC. New York | LIABILITY LIMIT $ | |
| SIGNATURE(S) | 1. By [signature] | 2. | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Swan Lee, Attorney in Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

EXHIBIT 4

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

(42)

Exhibit I