1 | James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
2 | 707 Richard Street, Suite 600
Honolulu, Hawaii 96813
3 | Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144
4 |
Stephen D. Tom
5 | WHITE & TOM
820 Mililani Street, Suite 711
6 | Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
7 | Facsimile No.: 808 599 4517
8 |
Louie J. Yanza
9 | VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
10 | Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
11 | Facsimile No.: (671) 472-5487

FILED
DISTRICT COURT OF GUAM
DEC 16 2003
MARY L. M. MORAN
CLERK OF COURT

282

12 | Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

13 | UNITED STATES DISTRICT COURT OF GUAM

14 |

| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) CIVIL CASE NO. 02-00008 |
|---|---|
| Plaintiff, | ) **DECLARATION OF BRUCE KAHN IN SUPPORT OF DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS** |
| vs. | |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, | |
| Defendants. | |
| BIOGENESIS PACIFIC, INC., | |
| Plaintiff, | |
| vs. | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | |
| Counter-Defendant. | |

1

ORIGINAL

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) |
| Cross-Claim Defendant. | ) |

I, BRUCE KAHN, hereby declare pursuant to 28 U.S.C. §1746, as follows:

1.  I am a U.S. Citizen over the age of eighteen (18).

2.  I am the Bond Claims Analyst for AIG Technical Services, Inc. ("AIGTS"), the claims servicing division of the American International Group ("AIG"), responsible for investigating and handling the claims against the various sureties owned by AIG including the AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME"). As such, I have personal knowledge of the facts and circumstances set forth herein, except for those matters herein stated on information and belief, and as to these matters, I believe them to be true. I make this declaration in support of Defendants AMERICAN HOME and AIGTS' Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims.

3.  I am the person responsible for handling the claim filed by RHINO BUILDERS, INC. ("RHINO") against BIOGENESIS PACIFIC, INC. ("BIOGENESIS") and a payment bond issued by its surety, American Home Assurance Company regarding Department of Navy Contract No. N62766-99-D-0425 (Navy Housing Various Locations on Guam).

4.  Attached hereto and marked Exhibit "A" is a true and correct copy of a letter dated October 22, 2001 from Carlsmith Ball, LLP ("Carlsmith"), attorneys for

2

RHINO BUILDERS, INC. ("RHINO"), to AMERICAN HOME providing Notice of Claim on Bond and requesting Miller Act Proof of Claim Form.

5. Attached hereto and marked Exhibit "B" is a true and correct copy of a letter dated October 30, 2001, from Mr. Mark Titherington of AIGTS specifically directing RHINO to submit a Proof of Claim form for their documentation of their claim against the Bond. The letter calls the reader's attention to "to the above referenced surety" as AMERICAN HOME.

6. Attached hereto and marked Exhibit "C" is a true and correct copy of a letter dated January 9, 2002 from Terry E. Thomason of Carlsmith Ball, LLP, which enclosed an executed Miller Act Proof of Claim Affidavit signed by Michael O'Connell the CEO of RHINO before a Notary Public in Hawaii regarding a claim on bond No. 000-20-80-88 on Contract No. N62766-99-D-0425. Based on this sworn affidavit, we denied RHINO's claims on the grounds that the 1 year statute of limitations lapsed.

7. Attached hereto and marked Exhibit "D" is a true and correct copy of a letter dated January 17, 2002 from Bruce Kahn, on behalf of AIGTS, to Mr. Thomason acknowledging receipt of Mr. Michael O'Connell's executed Proof of Claim form. The letter calls the reader's attention to "the above referenced surety" as AMERICAN HOME.

8. Attached hereto and marked Exhibit "E" is a true and correct copy of a letter dated February 21, 2002 from AIGTS to CARLSMITH denying the claim by RHINO dated January 9, 2002 on Bond No. 000-20-80-88 on behalf of AMERICAN HOME. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME.

3

9.  Attached hereto and marked Exhibit "F" is a true and correct copy of a letter dated March 11, 2002 from Terry E. Thomason to Bruce Kahn requesting AMERICAN HOME to reconsider its denial of RHINO's claim.

10. Attached hereto and marked Exhibit "G" is a true and correct copy of a letter dated June 21, 2002 from AIGTS to Carlsmith again denying the claim by RHINO. The letter calls the reader's attention "to the above referenced surety" as AMERICAN HOME.

11. AIGTS is not a surety company and does not issue payment or performance bonds, nor is AIGTS licensed to be a surety company.

12. AIGTS is not and has never been a surety for BIOGENESIS.

13. AIGTS and AMERICAN HOME are two (2) separate entities with separate boards of directors and officers.

14. The Payment Bond covering claims on Department of Navy Contract N62766-99-D-0425 as Bond No. 000-20-80-88 was issued by AMERICAN HOME and not AIGTS, and therefore AIGTS is not a proper defendant in this case.

15. Attached hereto and marked as Exhibit "H", is a true and correct copy of the Payment Bond, Bond No. 000-20-80-88, in which AMERICAN HOME, not AIGTS, contractually obligated itself to be the surety for the principal, Biogenesis Pacific, Inc.

16. Attached hereto and marked as Exhibit "I", is a true and correct copy of the Performance Bond, Bond No. 000-20-80-88, in which AMERICAN HOME, not AIGTS, contractually obligated itself to be the surety for the principal, BIOGENESIS.

4

1    I, BRUCE KAHN, declare under penalty of perjury that the foregoing is true and

2  correct.

3       Dated: New York, New York, December  9  , 2003.

4

5                              _____
                              **BRUCE KAHN**
6

7  C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Pleadings\Declaration of Bruce Kahn in
   Support of Motion for SJ.doc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

# CARLSMITH BALL LLP

OCT 2 6 2001
BOND DEPT.

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

October 22, 2001

**BY CERTIFIED MAIL
 RETURN RECEIPT REQUESTED**

American Home Assurance Company
121 Spear Street
San Francisco, California 94105

Re:   Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on
      Contract No. N62766-99-D-0425

Dear Sirs:

On behalf of our client, Rhino Builders, Inc., we are forwarding this enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its rights under the Miller Act. Contrary to your understanding, BioGenesis Pacific, Inc. is the prime contractor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc. provided all labor and materials supporting its claim pursuant to an oral subcontract between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and forward any and all future communications to my attention at the above address.

HONOLULU   ·   KAPOLEI   ·   HILO   ·   KONA   ·   MAUI   ·   GUAM   ·   SAIPAN   ·   LOS ANGELES   ·   WASHINGTON, D.C.   ·   MEXICO





Exhibit
A

Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

Terry E. Thomason

Enclosures

cc:    Rhino Builders, Inc.

1433798.1

(4)

## NOTICE OF CLAIM ON BOND
(Miller Act 40 U.S.C. Section 270(a) to 270(e))

Public Agency:      Officer in Charge of Construction
                    Ms. Bennett Terlaje, Contracting Officer
                    NAVFACENGCOM Contracts Marianas
                    PSC455, Box 175
                    FPO AP 96540-2200

Bonding Company:    American Home Assurance Company
                    121 Spear Street
                    San Francisco, California 94105

Prime Contractor:   BioGenesis Pacific, Inc.
                    1604 Ulualana Place
                    Kailua, Hawaii 96734

NOTICE  IS HEREBY GIVEN, that Rhino Builders, Inc., the undersigned subcontractor
to BioGenesis Pacific, Inc. and Claimant, has not been paid in full and is looking to the
Prime Contractor for payment of the following claim.  This notice is intended as written
notice pursuant to 40 U.S.C. Section 270.

Claimant, whose address is: 87-1610 Ulehawa Road, Waianae, Hawaii 96792, has a
claim in the amount of $245,664.43 (not including service charges or interest as allowed
by law and at the maximum legal charges or interest as allowed by law and at the
maximum legal rate) for labor performed and materials provided for the public work of
improvement commonly known as Navy Housing Roofing, Various Locations; Contract
No. N62766-99-D-0425, upon which BioGenesis Pacific, Inc. is the Prime Contractor.

WE ARE LOOKING TO THE PRIME CONTRACTOR FOR PAYMENT OF THESE
DEBTS.

      1.     The total amount of the claim is $245,664.43.

      2.     The name of the party for whom the labor and materials were
provided is: BioGenesis Pacific, Inc.

      3.     Rhino Builders, Inc. provided such labor and materials directly to
BioGenesis Pacific, Inc. pursuant to an oral subcontract between Rhino Builders, Inc. and
BioGenesis Pacific, Inc.

      In support of its claim, Claimant submits the following documents:
      1.     Claimant's initial invoice, which includes a breakdown of reimbursable
costs and profit share (Exhibit 1);



1433756.1

2.      Claimant's final invoice in the amount of $245,664.43 for BioGenesis Pacific, Inc.'s unpaid billings on all work Claimant performed on Contract No. N62766-99-D-0425 with attached mail receipts reflecting BioGenesis Pacific, Inc.'s refusal to accept business mail sent by Rhino Builders, Inc. (Exhibit 2);

3.      A copy of Rhino Builders, Inc.'s Assertion of Nonpayment under FAR 32.112-1 to Ms. Bennett Terlaje, Contracting Officer (Exhibit 3); and

4.      A copy Payment Bond No. 20-80-88 sent to Claimant from Ms. Bennett Terlaje, Contracting Officer in charge of construction for Contract No. N62766-99-D-0425 (Exhibit 4).

To the unpaid balance of $245,664.43 (plus penalties and interest), if not paid, Claimant shall also seek attorneys fees and interest at the maximum legal rate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 0 day of October , 2001.

Michael O'Connell
Rhino Builders, Inc.

"Claimant"

1433756.1



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000
Direct Dial: (212) 458-1282

October 30, 2001

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

Re: **Principal:** BioGenesis Pacific, Inc.
   **Bond No.:** 000-20-80-88
   **Claim No.:** 388-005037-001-0001
   **Project:** Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations
   **Surety:** American Home Assurance Co.
   **Claimant:** Rhino Builders, Inc.

Dear Mr. or Ms. Thomasen:

This will acknowledge receipt of your client's claim in the amount of $245,664.43 for labor and/or materials furnished in connection with the above referenced project.

You will please find enclosed a Proof of Claim form for your client's use in documenting their claim against the above bond. This form should be completed in as much detail as possible, and include the last date that their company either performed the work or supplied materials claimed for on the above project. The Proof of Claim form should then be photocopied twice (to make three sets). Separate copies of documentation supporting the claim should be annexed to each form. Documentation supporting the claim in this instance would include copies of any subcontracts, signed purchase orders, signed invoices, signed delivery tickets, etc. Upon completion, two (2) of these forms in original (signed and notarized by an authorized representative of your client's company), with copies of supporting documentation annexed to each, should be returned to my attention (the third form is for your own records).

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Truly yours,

Mark Titherington

Enc.

cc: BioGenesis Pacific, Inc.

A Member Company of American International Group, Inc.

1

Exhibit
B

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200

1001 BISHOP STREET

HONOLULU, HAWAII 96813

TELEPHONE (808) 523-2500   FAX (808) 523-0842

www.carlsmith.com

<table>
<tr>
<td>DIRECT DIAL NO.<br>(808) 523-2527</td>
<td>E-MAIL TET@CARLSMITH.COM</td>
<td>OUR REFERENCE NO.<br>053705-00001</td>
</tr>
</table>

## January 9, 2002

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**RECEIVED**

JAN 1 5 2002

**Surety Bond Claims**

Mark Titherington
American Home Assurance Company
175 Water Street, 6th Floor
New York, New York 10038

Re: Supplement to Miller Act Claim; Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on Contract No. N62766-99-D-0425

Dear Mr. Titherington:

In behalf of our client, Rhino Builders, Inc. ("Rhino"), we provide the following materials for your consideration and actions as surety for BioGenesis Pacific, Inc. ("BPI") on Navy Contract No. N62766-99-D-0425 ("the Contract").

AIG Technical Services, Inc.'s Proof of Claim form is attached to this letter as Enclosure 1. Rhino's final Contract Invoice to BPI, dated December 19, 2001, is attached to this letter as Enclosure 2. BPI's letter in response to Rhino's final Contract Invoice, dated December 22, 2001, is attached to this letter as Enclosure 3.

BPI has failed to pay Rhino for its work as a subcontractor on the Contract. BPI's response to Rhino's final Contract Invoice is a rejection and refusal to pay Rhino. See Enclosure 3. Specifically, BPI's letter refuses to address payment unless Rhino produces a copy of the executed subcontract, in addition to numerous other irrelevant documents not material to Rhino's subcontract with BPI. The demand for a copy of the executed subcontract is disingenuous because Gerald Lam, President of BPI, refused to

Exhibit
9

sign any subcontract with Rhino as he had initially promised. Further, the absence of a written subcontract is meaningless and not required for recovery under the Miller Act. There was, in fact and law, a subcontract between Rhino and BPI. Mr. Lam acknowledges the existence of such subcontract and even reiterates the terms of the subcontract in a letter to Michael O'Connell, President of Rhino, dated January 2, 2001. A copy of Mr. Lam's letter is attached to this letter as Enclosure 4.

Under the circumstances here, BPI's December 22, 2001 letter is nothing more than a frivolous, calculated, and deliberate ploy to avoid paying Rhino. As discussed below, the parties' agreement, and legally binding contract, was that Rhino would receive its costs, plus fifty percent (50%) of profits resulting from Rhino's work on the Contract. See Enclosure 4.

A.    **BPI FAILED TO PAY RHINO FOR WORK PERFORMED**

Rhino and BPI entered into an oral subcontract whereby Rhino agreed to perform such Contract work as the Navy might assign to BPI on individual task orders under the Contract. Rhino completed the work on task order numbers 0001 through 0018 of the contract and invoiced BPI for payment. The Navy accepted all of Rhino's work on the Contract and made full payment to BPI. As discussed below, BPI has never paid Rhino for any of the work performed on the Contract, even though all of the work was performed by Rhino employees using Rhino equipment, and BPI received full payment.

1.    Terms Of The Subcontract

The subcontract agreement was that BPI would pay Rhino's costs of performance plus 50% of BPI's profit upon completion of each task order. See Enclosure 4. In addition, the oral agreement was necessary initially only because the Contract award date had not afforded BPI sufficient time to establish a written subcontract with Rhino. Both BPI and Rhino agreed that the oral agreement between BPI and Rhino would later be reduced to writing to conform to accepted federal government contract practice.

During the time Rhino was performing work on the Navy's assigned Task Orders 1 through 4, Rhino engaged a consultant experienced in federal procurement to prepare a written subcontract agreement to formalize the relationship between Rhino and

BPI. The consultant drafted a proposed subcontract agreement consistent with the terms under which Rhino accepted BPI's offer to perform subcontract work on the Contract. The consultant provided his initial drafts to BPI for comment and finally submitted the full document to BPI for review on November 17, 2000. A copy of the consultant's facsimile transmittal letter to BPI and the draft subcontract are attached to this letter as Enclosure 5.

At this point, BPI refused to pay for Rhino's work to date on the Contract and refused to enter into a formal written subcontract with Rhino. Under the circumstances, Rhino's Chief Executive Officer ("CEO") informed Rhino's Guam office manager to cease performance on the oral agreement with BPI. Rhino's decision to stop work was due to BPI's failure to fulfill its obligation to pay for work performed and refusal to negotiate an acceptable written subcontract. Subsequently, Rhino's CEO learned that BPI was continuing to use Rhino resources on the Contract without payment. Accordingly, Rhino's CEO issued a December 14, 2000 official company notice forbidding BPI's use of Rhino resources to perform its work on the Contract. A copy of the December 14, 2000 notice is attached to this letter as Enclosure 6.

In response to Rhino's action, BPI wrote the January 2, 2001 letter (Enclosure 4) to Rhino, which states in relevant part:

> [Rhino's] subcontract was subject to a verbal agreement which provided that 50% of the net profits would be determined after all actual costs to both [BPI] and Rhino. In return you represented that Rhino was capable and would front all the needed facilities, personnel, financing and bonding through the term of each task order. Furthermore, Rhino was consistently given clear and specific instructions not to cause any task orders to be accepted from the Navy unless Rhino was certain that each specific task order would result in a profit or break even at worst under our said agreement. If there was any doubt, Rhino was not to cause any task order to be accepted. BPI relied upon Rhino for the acceptance of each task order.

> BPI has been disappointed by Rhino's affirmative and specific actions to repudiate and breach its subcontract with

BPI. This has been especially damaging since upon Rhino's urgings BPI had wholly relied on Rhino's management and facilities on Guam.

The above quoted BPI letter shows unmistakably that an oral agreement existed and that Rhino was to receive at least 50% of the profit from revenues on each work order. Further, the BPI letter shows that Rhino performed all work on the Contract work orders including "all the needed facilities, personnel, financing, and bonding through the term of each work order." As additional proof that the work was performed by Rhino personnel, attached are copies of Rhino's payroll records as Enclosure 7 to this letter. In effect, BPI envisioned the subcontract as a brokered contract with a *de facto* assignment of the Contract to Rhino. BPI did nothing more than obtain award of the Contract and then attempt to transfer all performance requirements to Rhino while refusing to pay for work performed.

2.    Rhino's Work Was Accepted By The Navy And BPI Was Paid Without Incurring Any Costs

All of the work performed by Rhino on task orders 0001 through 0018 of the Contract was accepted by the Navy. The Navy paid BPI a total of ONE MILLION EIGHT HUNDRED FIFTY TWO THOUSAND SEVEN HUNDRED EIGHTY EIGHT AND .38/100 DOLLARS ($1,852,788.38) for all of Rhino's work on the Contract. A break down of the Navy's payments to BPI for each task order and the payments owed by BPI to Rhino is attached to this letter as Enclosure 8. BPI incurred no costs on the Contract because all of the work was performed by Rhino personnel using Rhino's equipment and Rhino's facilities. Rhino, on the other hand, incurred direct costs and overhead costs totaling THREE HUNDRED TEN THOUSAND NINE HUNDRED SEVENTY FIVE AND .23/100 DOLLARS ($310,975.23). See Enclosure 8.

In addition to the parties' agreement, BPI guaranteed payment to Rhino for all completed and accepted work. A copy of an e-mail from BPI to Rhino reflecting BPI's guarantee to pay Rhino for all completed and accepted work is attached to this letter as Enclosure 9. Although Rhino completed its work and its work was accepted by the Navy, BPI has yet to pay Rhino anything. All of the Navy documents showing acceptance of Rhino's work, confirming payment to BPI, and supporting the payments owed to Rhino are attached to this letter as Enclosure 10. As a result of BPI's breach of

its subcontract with Rhino, Rhino has incurred an enormous debt that has jeopardized Rhino's financial existence.

B.      Conclusion.

Rhino provided all labor and materials to perform work orders 0001 through 0018 of the contract pursuant to an oral subcontract between Rhino and BPI. BPI received full payment for the Rhino work the Navy accepted. However, BPI continues to refuse to pay Rhino for its costs plus fifty percent (50%) of BPI's profits on the Contract as agreed between the parties. Therefore, Rhino intends to enforce its rights under the Miller Act. Accordingly, Rhino hereby submits this letter, along with all its enclosures, as a supplement to its Proof of Claim against BPI's surety, AIG Technical Services, Inc.

Your immediate attention to this matter is appreciated.

Very truly yours,

CARLSMITH BALL LLP

Terry E. Thomason
Amy G. Self

1441107.1.053705-00001
Enclosures

cc:    Rhino Builders, Inc.

# AIG

**AIG Technical Services, Inc.**
175, Water Street
New York, NY 10038
212.770.7000

## *Proof of Claim : Construction Contract*

AIG Technical Services, Inc.

State of ___Territory of Guam___                    **Bond Number:** 000-20-80-88
                                                    **Claim Number:** 388-005037-001-0001

County of _____

I, ___Michael O'Connell___ , the ___CEO___ of ___Rhino Builders, Inc.___
 (Name of Affiant)           (Position in Firm)           (Name of Claimant)
of _87-1610 Ulehawa Road, Waianae, HI 96792_ on behalf of said firm, hereby state under oath that

said firm between the dates of ___May 2000___ and ___December 2000___ furnished, sold,

and delivered ___roofing installation & repairs &___ ^materials^ to ___BioGenesis Pacific, Inc.___ for the
                (describes services or material)  0425      (Name of contractor or subcontractor if any)
construction of ___Contract No. N62766-99-D-___ in accordance with an ___oral___ Subcontract xor
described in Prime  (Identify Contract)

Contractor letter Purchase order. Dated ___January 2, 2001___, a copy of which is attached hereto, for the agreed
price of _$1,081,881.80_, none of which has been paid except ___$0___ and leaving a statement
balance due of $1,081,881.80. Attached hereto are ___1___ Invoices, ___NA___ delivery tickets

showing the deliveries or progress estimates furnished ___BioGenesis Pacific, Inc.___
                                                              (Contractor)
and the amount due to claimant therefore; that said firm served notice of said balance due it by Registered Mail dated :
_____ on Surety, ___Dec. 20, 2001___ on Contractor, ___NA___ on Owner, (copies
attached), that there is no just credit nor offset due against said balance and that said firm made no assignment of any
part of said balance except to ___NA___
and that there are no liens or encumbrances against said balance except that of ___NA___
_____ ; that said firm has paid in full for all labor and material
furnished and supplied it for said job except the claims of the persons or firms whose names and addresses and amounts
due to them are as follows:

___NA___
_____
_____
_____

The foregoing information is furnished to the surety in support of affiant's claim and it is understood that the furnishing of
this from or the acceptance and/or retention thereof by the surety does not constitute a waiver or any of the terms of the
Surety's bond nor of any defenses the Surety may have, nor admission of liability thereunder.
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal
or civil penalties.
Sworn to and subscribed before me
this __9th__ ~~AIKO SHIMA~~ day of ___January___ 20 _02_

_(signature)_
Notary Public for State of Hawaii
~~Signed~~ My commission expires: 6/24/02        (Affiant's Signature) _(signature)_

*(notary seal: STATE OF HAWAII)*

## ENCLOSURE 1

A Member Company
American Information

 **AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-~~2901~~ 2901

January 17, 2002

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen, Esq.**

| Re: | Principal: | **BioGenesis Pacific, Inc.** |
|---|---|---|
| | Bond No.: | **000-20-80-88** |
| | Claim No.: | **388-005037-001-0001** |
| | Project: | **Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations** |
| | Surety: | **American Home Assurance Co.** |
| | Claimant: | **Rhino Builders, Inc.** |

Dear Mr. Thomasen:

This will acknowledge receipt of your Proof of Claim forms in reference to the above captioned matter.

At this time, I am immediately taking this matter up with the above referenced Principal, in order to ascertain their position on your claim as presented. I will be in contact with you in due course regarding their position on the Proof of Claim as presented by your company on the above referenced bond.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc:    BioGenesis Pacific, Inc.
       The Sundt Companies, Inc.

A Member Company of
American International Group, Inc.

Exhibit

**D**

1





**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-2901

February 21, 2002

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen, Esq.

| Re: | Principal: | BioGenesis Pacific, Inc. |
|---|---|---|
| | Bond No.: | 000-20-80-88 |
| | Claim No.: | 388-005037-001-0001 |
| | Claimant: | Rhino Builders, Inc. ("Rhino") |
| | Project: | Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations |
| | Surety: | American Home Assurance Co. |

Dear Mr. Thomasen:

The above referenced surety has reviewed the Proof of Claim and supporting documentation (collectively, the "Proof of Claim") which you submitted on or about January 9, 2002 in support of your client's claim against the referenced bond. The Proof of Claim has been reviewed in connection with the relevant bond language, your client's purported Miller Act Notice dated October 22, 2001, and the federal Miller Act, 40 U.S.C. § 270a et seq. which governs claims against payment bonds issued for federal projects such as the above.

Section 270b(b) of the Miller Act, among other things, expressly states that a payment bond claimant is time barred from bringing suit to enforce its claim unless such an action is brought within one year of the day on which the last of the labor was performed or material was provided by them.

I note that the sworn affidavit of Michael O'Connell, identified as claimant's chief executive officer, included in the Proof of Claim, admits and conclusively establishes that the last day claimant performed labor or provided material on the above project was on or before December 31, 2000. In order to have been timely, suit to enforce the claim would have had to have been commenced within one year of that date. As such, the above referenced claim appears to be time barred by the statute of limitations contained in 40 U.S.C. § 270b(b). Accordingly, the claim must be denied.

If you have any other documents or information you believe would be helpful for the Surety to review please feel free to provide them to the undersigned.

A Member Company of
American International Group, Inc.

1

Exhibit

E



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc.: BioGenesis Pacific, Inc.

A Member Company of
American International Group, Inc.

2

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

March 11, 2002

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**RECEIVED**
**MAR 1 9 2002**
**Surety Bond Claims**

Mr. Bruce Kahn
AIG Technical Services, Inc.
175 Water Street
New York, New York 10038

Re:   Miller Act Claim; Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc.,
Prime Contractor on Contract No. N62766-99-D-0425

Dear Mr. Kahn:

We are in receipt of your letter of February 21, 2002, in which you state the claim submitted by our client, Rhino Builders, Inc. ("Rhino"), is time barred under the Miller Act.

We ask that you reconsider your position. Under the Miller Act, the one year limitation period begins on the last day the claimant provides labor or material for use on the project. As you may recall in our January 9, 2002 supplemental letter to Rhino's claim, we explained that BioGenesis Pacific ("BPI") "was continuing to use Rhino resources on the Contract without payment." This use of Rhino materials on the Contract continues even today, even though Rhino's present claim for payment is only for labor and materials supplied to BPI on the Contract through December 2000. See the attached Affidavit of Michael O'Connell. As discussed below, Rhino's claim is well within the Miller Act's one year limitation period.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

Exhibit
**F**

Case 1:02-cv-00008    Document 285    Filed 12/16/2003    Page 20 of 27

Mr. Bruce Kahn
March 11, 2002
Page 2

    A.    The Ninth Circuit's Interpretation of the Miller Act

        The purpose of the Miller Act is "to provide broad protection for persons supplying labor and material for the construction of federal public projects." General Electric Co. v. Southern Construction Co., Inc., 383 F.2d 135, 139 (5th Cir. 1967). See also Taylor Construction Inc. v. ABT Service Corp. Inc., 163 F.3d 1119 (9th Cir. 1998) (explaining that "[t]he policy behind the Act is 'to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material'") (quoting United States ex rel. Sherman v. Carter, 353 U.S. 210, 217 (1957); United Bonding Ins. Co. v. Catalytic Construction Co., 533 F.2d 469, 473 (9th Cir. 1976) (holding that the "purpose of the Miller Act is to protect those who would have materialmen's and workmen's liens under state law if they were not working on a structure exempt as a federal public work or building"). Thus, courts have traditionally given the Miller Act liberal construction and application in order "to protect those whose labor and materials go into public projects." Taylor Construction, 163 F.3d at 1122 (quoting Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102 (1944)). See also United Bonding, 533 F.2d. at 473 (interpreting the Miller Act liberally, in light of its legislative history, to protect laborers and suppliers).

    1.    Statute of Limitations Under the Miller Act

        Section 270(b) of the Miller Act provides in pertinent part that a payment bond action "shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by [the claimant]." 40 U.S.C. § 270(b). The Act's "one-year period begins to run [either] on the day when the labor ceases or when the last material was supplied." J.D. Fields & Co., Inc. v. Gottfried Corp., et al., 272 F.3d 692, 698 (5th Cir. 2001). See, e.g., Interform Co. v. Mitchell, 575 F.2d 1270 (9th Cir. 1978); United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816 (9th Cir. 1961); Mike Bradford & Co. v. F.A. Chastain Constr., Inc., 387 F.2d 942 (5th Cir. 1968).

        In applying the Act's one-year limitations period to suppliers of equipment, the Ninth Circuit has held that the period begins to run "on the date 'the equipment was last available for use on the project.'" United States for the Use of Pippin v. J.R. Youngdale Construction Co., Inc., 923 F.2d 146 (9th Cir. 1991) (quoting United States ex rel. Miller & Bentley Equip. Co. v. Kelley, 327 F.2d 590, 591 (9th Cir. 1964). See also Campbell, 293 F.2d at 820 (holding that when the claimant provides equipment by lease

Mr. Bruce Kahn
March 11, 2002
Page 3

or rental, the one-year limitations period begins on the date "the equipment was last available for use on the project"); <u>Interform Co.</u>, 575 F.2d at 1280 (explaining that under the Miller Act, "a furnisher of rental equipment continues to supply such equipment through the entire rental period; the date of last supply occurs not at the beginning of a job but at the end or at the time the equipment is last available for use on the job").

      The court in <u>Youngdale Construction</u> explained that unlike a supplier of materials whose obligation ends upon delivery, a supplier of equipment under lease or rental "must allow the equipment to remain in the hands of the lessee for such time as is specified by the lease arrangement." <u>Youngdale Construction</u>, 923 F.2d at 149 (quoting <u>Campbell</u>, 293 F.2d at 820). Thus, "the lessor continues to supply the equipment until the date that the equipment is no longer available for use by the [contractor] on the project." <u>Id.</u> at 149-150. The Act's one-year limitations period, therefore, begins on the date the equipment was last available for use on the project. <u>Id.</u> at 149.

B.    <u>Rhino's Miller Act Claim is Not Barred by the One-Year Limitations Period</u>

      Rhino's Miller Act claim is not time barred because Rhino has continued to supply equipment to BPI for use on the project. See attached Affidavit of Michael O'Connell. The time period from May 2000 to December 2000, as entered in the Proof of Claim, is the inclusive period during which Rhino supplied labor and materials to BPI for which Rhino is claiming non-payment by BPI. However, subsequent to December 2000, Rhino continued to supply equipment to BPI as late as January 2002. See attached Affidavit of Michael O'Connell.

      Specifically, Rhino supplied a truck leased by Rhino to BPI which was available for use by BPI on the project until March 20, 2001, the date on which the lease expired. See Exhibit A of the Affidavit of Michael O'Connell. Rhino also supplied another truck to BPI which was available for use by BPI on the project until May 2001, the date the truck was returned to Rhino. See attached Affidavit of Michael O'Connell. In addition, Rhino supplied another truck to BPI which was available for use by BPI on the project until January 17, 2002, the date on which Rhino paid to have the truck towed to Rhino's premises. See Exhibit B of the Affidavit of Michael O'Connell. Finally, BPI has continued to use and is presently using Rhino's safety equipment and various other types of equipment. See attached Affidavit of Michael O'Connell. The one-year limitations period will not begin until the date such equipment is no longer available for

Mr. Bruce Kahn
March 11, 2002
Page 4

use by BPI on the project.  See Youngdale Construction supra.  Therefore, Rhino's claim
is not time barred under the Miller Act.

     C.    Conclusion.

        The purpose of the Miller Act is to provide broad protection for companies
like Rhino that supply labor and material for the construction of federal public works
projects.  Rhino's claim against BPI under the Miller Act is for all labor and materials it
supplied to BPI from May 2000 to December 2000 only, even though Rhino has
continued to supply equipment to BPI for the project.  Because such equipment is still
available to BPI for use on the project, Rhino's claim is not time barred by the Miller
Act's statute of limitations.

        Rhino asks for prompt resolution of its claim before it is compelled to bring
civil suit.

            Very truly yours,

            CARLSMITH BALL LLP

            Terry E. Thomason
            Amy G. Self

1450480.1.053705-00001
Enclosures

cc:    Rhino Builders, Inc.



# RHINO BUILDERS HUBZone & 3 (s) SBA CERTIFIED

790 North Marine Drive, P. O. Box 959, Tumon, Guam, 96911, (671) 632-7653,
(671) 637-9618 fax, Rhinogws@ite.net
85-341 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-8878,
(808) 668-7024 fax, Rhino1@Hawaii.rv.com

## INVOICE

| | | | |
|---|---|---|---|
| TO | BIOGENESIS PACIFIC, INC. | NO. | 0301-002 |
| | 790 NORTH MARINE DRIVE #303 | DATE | MAR. 21, 2001 |
| | TUMON, GUAM 96911 | SHIP VIA | |
| ATTN | BOBBIE SALAS | YOUR NO. | |
| TEL | 637-9633/35  FAX  637-9634 | CUR NO. | |
| | | TERMS | DUE UPON RECEIPT |

This is to bill you as follows:

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| | ISUZU FLATBED RENTAL | | |
| 1 WEEK | MONDAY-SATURDAY<br>MAR. 12-17, 2001 | 584.00  /WK. | $ 584.00 |
| 2 DAYS | MONDAY-TUESDAY<br>MAR. 19-20, 2001 | 130.00  /DAY | $ 260.00 |
| | | Amount due | $ 844.00 |

*Recieved by* [signature] *3-22-01*

RHINO BUILDERS, INC.

Please show invoice number on your remittance.

By: _____

**FILE COPY**      **EXHIBIT** A



Direct Dial: (212) 458-2901

June 21, 2002

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

| Re: | Principal: | **BioGenesis Pacific, Inc.** |
|---|---|---|
| | Bond No.: | **000-20-80-88** |
| | Claim No.: | **388-005037-001-0001** |
| | Project: | **Contract No. N62766-99-D-0425 - Navy Housing - Guam and various locations** |
| | Surety: | **American Home Assurance Co.** |

Dear Mr. Thomasen:

The Surety has reviewed your letter of March 11, 2002 along with the enclosed documents. The Surety continues to believe that the Miller Act claim asserted by Rhino Builders, Inc. is time barred by the statute of limitations contained in 40 U.S.C. § 270b(b) and, accordingly, we maintain our position denying your client's claim as set forth in our letter dated February 21, 2002.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc.: BioGenesis Pacific, Inc.

A Member Company of
American International Group, Inc.

Exhibit

G

Bond No. 20-80-88

| PAYMENT BOND<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br><br>October 6, 1999 | OMB No.:9000-0 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | |
|---|---|---|---|
| BIOGENESIS PACIFIC, INC.<br>1604 Ulualana Place<br>Kailua, Hawaii  96734 | ☐ INDIVIDUAL | ☐ PARTNERSHIP | |
| | ☐ JOINT VENTURE | ☒ CORPORATION | |
| | STATE OF INCORPORATION<br><br>Hawaii | | |

| SURETY(IES) (Name(s) and business address(es))<br>AMERICAN HOME ASSURANCE COMPANY<br>121 Spear Street<br>San Francisco, California   94105 | PENAL SUM OF BOND | | |
|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S)  CEN |
| | | 250 | 000  00 |
| | CONTRACT DATE<br>09/29/99 | CONTRACT NO.<br>N62766-99-D-04 | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. BIOGENESIS PACIFIC, INC.<br>By [signature] | 2. | 3. <br>(Seal) | (Seal) |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1.<br>GERALD N.Y.C. LAM<br>President | 2. | 3. | Corporate<br>Seal |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2.<br>(Seal) | (Sea |
| NAME(S)<br>(Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| Surety A | NAME &<br>ADDRESS | AMERICAN HOME ASSURANCE<br>COMPANY, San Francisco, CA | STATE OF INC.<br>New York | LIABILITY LIMIT<br>$ |
| | SIGNATURE(S) | 1. By [signature] | 2. | |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1. Swan Lee,<br>Attorney in Fact | 2. | Corporate<br>Seal |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

(43)

Exhibit

H

Bond No. 20-80-88

## PERFORMANCE BOND
(See instructions on reverse)

| | |
|---|---|
| DATE BOND EXECUTED (Must be same or later than date of contract) | OMB No.: 9000-00 |
| October 6, 1999 | |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL (Legal name and business address)

BIOGENESIS PACIFIC, INC.
1604 Ulualana Place
Kailua, Hawaii   96734

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL          ☐ PARTNERSHIP

☐ JOINT VENTURE       ☒ CORPORATION

STATE OF INCORPORATION

Hawaii

SURETY(IES) (Name(s) and business address(es))

AMERICAN HOME ASSURANCE COMPANY
121 Spear Street
San Francisco, California   94105

PENAL SUM OF BOND

| MILLIONS | THOUSANDS | HUNDREDS | CENTS |
|---|---|---|---|
| | 500 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/29/99 | N62766-99-D-0425 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal –

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b)  Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

### PRINCIPAL

| | BIOGENESIS PACIFIC, INC. | | 3. | | | |
|---|---|---|---|---|---|---|
| SIGNATURE(S) | By *(signature)* | 2. | (Seal) | 3. | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | GERALD K.C. LAM President | | | | | |

### INDIVIDUAL SURETY(IES)

| | 1. | | 2. | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | | | (Seal) | | |
| NAME(S) (Typed) | 1. | | 2. | | (Seal) |

### CORPORATE SURETY(IES)

| SURETY A | NAME & ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC. New York | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| | SIGNATURE(S) | By *(signature)* | | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Swan Lee, Attorney in Fact | | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

## EXHIBIT 4

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

(42)

Exhibit