
FILED
DISTRICT COURT OF GUAM
DEC 29 2003
MARY L. M. MORAN
CLERK OF COURT

304

# DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

UNITED STATES OF AMERICA FOR USE
AND BENEFIT OF RHINO BUILDERS, INC.,

    Plaintiff,

v.

BIOGENESIS PACIFIC, INC.,
AIG TECHNICAL SERVICES, INC. AND
AMERICAN HOME ASSURANCE COMPANY,

    Defendant.

---

BIOGENESIS PACIFIC, INC.,

    Counter-Plaintiff,

v.

RHINO BUILDERS, INC., MICHAEL
O'CONNELL, MICHAEL DANFORTH, AND
JOHN DOES 1-10,

    Counter-Defendants.

---

AMERICAN HOME ASSURANCE COMPANY,

    Cross-Claimant,

v.

BIOGENESIS PACIFIC, INC.,

    Cross-Claim Defendant.

Civil Case No. 02-00008

**ORDER**

On November 21, 2003, the Defendants', AIG Technical Services, Inc.'s ("AIG Technical") and American Home Assurance Company's ("Home Assurance"), Motion to Compel Responses for Production of Documents and for Disclosure of Certain Privileged Information came before this Court. Pursuant to Federal Rules of Civil Procedure, Rule 37(a)(2), the defendants request an Order compelling the Plaintiff, Rhino Builders, Inc. ("Rhino"), and the law firm of Carlsmith Ball, LLP, to provide discovery with respect to matters at issue in this litigation and with respect to which Rhino has asserted work-product and attorney-client privileges. After reviewing all relevant documents and hearing argument from counsel and finding satisfactory proof and good cause, the Court GRANTS the Defendants' motion. For the reasons discussed more fully herein, the Court memorializes the basis for its decision granting the motion.

## I. FACTS

This action arises under the Miller Act, United States Code, Title 40, Sections 270a through 270d. On or before May 2000, Defendant contractor, Biogenesis Pacific Inc. ("Biogenesis"), entered into a contract with the United States of America to furnish materials and perform the labor for the installation of U.S. Navy housing roofing at various locations, in accordance with the specifications contained in the underlying contract, for a consideration of $4,926,657 for the period from May 15, 2000 to September 29, 2001. The contract was designated Navy Contract No. N62766-99-D-0425 (the "Contract").

On or before May 2000, Rhino allegedly entered into an oral subcontract with Biogenesis to perform such contract work that the U.S. Navy assigned to Biogenesis on individual task orders under the Contract. Under the terms agreed upon, Biogenesis agreed to pay all of Rhino's actual costs of performance plus 50 percent (50%) of Biogenesis' profit upon completion of each task order under the Contract. While the terms were later recited in a letter from Biogenesis to Rhino, no formal written subcontract was ever executed between the parties.

Pursuant to their agreement Rhino performed labor and provided materials for which Biogenesis allegedly failed to pay. In addition, Rhino claims that Biogenesis did not pay the 50% of the profits due Rhino under the Contract. Therefore, Rhino filed a complaint against Biogenesis and AIG Technical. When if filed its Complaint Rhino believed AIG Technical was

the surety. However, Rhino subsequently became aware that American Home was the actual surety and not AIG Technical. Thus, Rhino amended its complaint to add American Home as a defendant. In the Second Amended Complaint, Rhino also asserted an affirmative claim against the defendants, AIG Technical and American Home, alleging that AIG Technical acted in bad faith by inducing Rhino to file suit against AIG Technical instead of American Home. According to the affidavit of Amy Self,[1] she was led to believe that American Home and AIG Technical were part of the same corporation. See AIG Technical's Motion to Compel, Declaration of Louie J. Yanza ("Yanza Decl."), Exhibit V.

Thereafter, in the course of discovery, American Home deposed Amy Self's supervising attorney Terry E. Thomason ("Mr. Thomason"). Attorney Thomason testified that he always believed that the surety was American Home. However, when he was asked questions regarding the communication between himself and Attorney Self that would have led him to that belief, Rhino directed Attorney Thomason not to answer questions directed into these areas on the basis of work product privilege and attorney-client privilege. AIG Technical now requests an Order compelling Rhino and the law firm of Carlsmith Ball to provide discovery with respect to matters at issue in this litigation and with respect to which Rhino has asserted work product and attorney client privileges

Specifically, pursuant to Federal Rules Of Civil Procedure, Rule 37[2], AIG Technical and American Home now seek discovery regarding the following areas:

---

[1] Amy Self, is plaintiff's former counsel from the law firm of Carlsmith Ball LLP, (Honolulu office).

[2] **Rule 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions**

 **(a) Motion for Order Compelling Disclosure or Discovery.** A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:

 **(2) Motion.**
 (A) If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.
 (B) If a deponent fails to answer a question... the discovering party may move for an order compelling an answer.

i. What if any investigation Attorney Self did to identify the surety, or confirm her conclusions that AIG Technical and American Home were part of the same corporation;

ii. What relevance, if any, Attorney Self gave to documentation in the files of Carlsmith showing the correct identity of the surety as well as the relationship of AIG Technical and American Home to the AIG Technical Group of companies, as well as what follow up investigation was done with regard to the data in these documents;

iii. What conversations Attorney Self had with her Carlsmith attorneys regarding the correct identity of the surety prior to the original complaint being filed;

iv. What consideration, if any, was given to simply calling AIG Technical and seeking clarification of the identity of the surety; and

v. What consideration, if any, was given to simply naming both AIG Technical and American Home as surety in the Complaint Attorney Self drafted.

vi. Production of un-redacted records, letters, memoranda, notes and documents after an in-camera inspection regarding the basis for Plaintiff and Carlsmith attorneys' (Thomason and Self) opinion that AIG Technical was the surety.

vii. The actions and conduct of the Carlsmith attorneys and Rhino to verify and confirm whether AIG Technical was the surety; and

viii. Enlargement of time to conduct the deposition of Carlsmith attorneys, Thomason and Self.

See AIG Technical's Memorandum of Points and Authorities in Support of Motion for Order compelling Discovery, page 12.

## II. ANALYSIS

The question before this Court is whether Rhino has waived the attorney-client privilege and work product privileges by alleging Rhino was "induced" to name AIG Technical as the surety.

The defendants contend that said information is relevant to the issue of whether Attorney

Self's conduct at issue (i.e., assumption or conclusion that AIG Technical and American Home were part of the same corporation) in this litigation was reasonable. The defendants contend that while such information would otherwise be considered privileged, Rhino has waived the privilege by placing the communications at issue. In other words, Rhino has placed the state of mind of its attorneys at issue by claiming that they were led to believe that AIG Technical was the surety instead of Home Assurance.

Rhino states that the allegation that "AIG acted in bad faith and breached these duties by inducing Rhino to make a claim against it" does not constitute a waiver of the attorney-client privilege. Moreover, Rhino states that pursuant to Rule 501 of the Federal Rules of Evidence[3] this matter should be governed by Guam law and that under Guam law the attorney-client privilege is not waived. The Guam statute providing for a waiver of the attorney-client privilege states:

> Except as otherwise provided in 503 (c) (lawyer-client privilege), . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has *disclosed a significant part of the communication* or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege.

6 Guam Code Ann. § 502(a); (emphasis added).

Rhino states that there has been no significant disclosure of communication between counsel and client. In fact, there has been no disclosure of any attorney-client communication. Therefore, under Guam law, the motion should be denied.

The attorney-client privilege protects communications between a client and an attorney. Upjohn Co. V. United States, 449 U.S. 383, 395 (1981). The purpose of this "oldest of privileges" is "to encourage full and frank communications between attorneys and their clients

---

[3]Federal Rule of Evidence, Rule 501 states in pertinent part:

... the privilege of a ... person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.
However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law.

and thereby promote broader public interest in the observance of law and administration of justice." Id. at 389. Under certain circumstances the attorney-client privilege is deemed waived:

> A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes ... Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.

United States v. Blizerian, 926 F.2d 1285, 1292 (2nd Cir. 1991), cert. denied, 502 U.S. 813 (1991).

While there is no discussion of an implied waiver under the Guam statute or Guam law that this Court is aware of, the Ninth Circuit recognizes an implied waiver of the attorney client and work product privileges when the privileges are placed at issue in the case. See Burns v. International Ins. Co., 929 F.2d 1422, 1424 (9th Cir. 1991) (Where the state supreme court has not ruled on a question in issue, "we look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law."). A party is considered as having waived its privilege if "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975); see also, United States v. Amlani, 169 F.3d 1189 (9th Cir. 1999).

Applying the Hearn factors to the instant facts leads this Court to the conclusion that the three prongs have been satisfied. First, Rhino asserts its privilege in response to the discovery concerning its bad faith claim against AIG Technical. Second, by asserting that its attorneys were induced to name AIG Technical as the surety, instead of American Home, it has placed the information at issue. Lastly, the application of the privilege would impair the defense. "Where a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived." See Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992).

Here, Rhino's claim of bad faith requires the disclosure of communications relating to what plaintiff and counsel were told and understood as to which entity was the surety. Attorney

Self stated in her affidavit "everyone I spoke to at American International Companies and AIG Technical Services, Inc. led me to believe that American Home Assurance Company and AIG Technical Services were all part of the same corporation, American International Companies." See Yanza Decl. at Exhibit U. The Court notes that it was counsel's affidavit that discussed the basis for the confusion, and not any principal of Rhino. Understandably, counsel was in discussions with the surety. Therefore, it seems reasonable that it would be counsel that would have to discuss the nature of the confusion.

To defend against this contention, the defendants must have access to communications between counsel and AIG Technical and American Home regarding what "induced" Rhino to believe that AIG Technical was in fact the surety, instead of American Home. It would not be fair for Rhino and its counsel to assert that they were induced to believe certain things by the defendants but then invoke the attorney-client privilege to shield them from discussing the basis of that belief. "The privilege which protects attorney-client communications may not be used both as a sword and a shield." Chevron Corp. v. Pennzoil Co., 974 F.2d at 1162; see also, Handgards, Inc. V. Johnson & Johnson, 413 F.Supp. 926, 929 (N.D. Cal. 1976) (Fairness is an important consideration in assessing the issue of waiver.). Absent Rhino foregoing its right to litigate this claim, this Court finds that the discovery requested is proper and should be permitted as set forth herein.

### III. Conclusion

The Court finds that Rhino has put into issue its counsel's impressions at to its claim of bad faith. If Rhino wishes to litigate this claim, then it must waive its privileges to the extent necessary to give the defendants a fair opportunity to defend against it. Accordingly, the Court grants the defendants' Motion as set forth herein. However, the Court is mindful of not wanting to dilute the privilege more than it should. Accordingly, the Court will order that the questions for which the defendants wish to ask the witnesses be responded to in writing and submitted for this Court's in camera review. Defendants shall confine the questions posed to those as stated in its Reply in a form similar to that of interrogatories and provide them to the deponents. The deponents shall then have thirty days in which to respond and submit to the Court in camera for

its review. Thereafter, to the extent the Court finds the responses are proper for discovery purposes the Court will order that the time for depositions be extended so that counsel may depose the witnesses. Additionally, the request for production of un-redacted records, letters, memoranda, notes and documents after an in-camera inspection regarding the basis for Rhino and Carlsmith attorneys' (Thomason and Self) opinion that AIG Technical was the surety is granted.

IT IS SO ORDERED, this 29th day of December, 2003.

JOHN S. UNPINGCO
District Judge