ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **OPPOSITION TO THE SURETIES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**ORIGINAL**

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Plaintiff") most respectfully presents the following points and authorities to support its request that this honorable Court deny the December 15, 2003 motion of American Home Assurance Corporation ("AHAC") and AIG Technical Services ("AIGTS") for summary judgment dismissing Plaintiff's Miller Act Claims

## Introduction

Plaintiff asserts that the factual allegations of its Second Amended Complaint are true, and disputes the following factual contentions on which the Sureties' motion is based: that the subcontract between Plaintiff and Biogenesis Pacific, Inc. (BPI) was not memorialized in a writing signed by BPI, that the relevant task orders in this litigation are limited to delivery orders 1 through 18, that BPI paid Rhino anything for its labor and materials, that Rhino laid off its employees because of no work, that Rhino employees ceased to work on the IDIQ contract with BPI, and that Rhino only supplied labor and materials for three delivery orders.

Plaintiff submits the following legal authority in response to the Sureties' legal claims.

## I. PLAINTIFF SHOULD NOT BE FOUND TO BE TIME BARRED FROM PROCEEDING AGAINST AHAC AS SURETY.

The sureties request summary judgment granting their affirmative defense that Plaintiff's claim against AHAC is not timely, having been first added by amendment to Plaintiff's complaint on September 10, 2002, more than one year after

Plaintiff last provided the flatbed truck to BPI on March 20, 2001.[1] Judgment on that affirmative defense should be denied because AHAC is estopped to assert it, and because whether or not Rhino continued to supply materials in prosecution of the work through September 10, 2001 is a disputed fact.

### A. The Doctrine of Equitable Tolling Should Be Applied to Estop the Sureties from Asserting the Affirmative Defense that Plaintiff's Claim against AHAC Is Not Timely.

As set forth in the September 10, 2002 Complaint, AHAC, which is 100% owned by AIG, insisted to Rhino that it make its Miller Act Claim through AIGTS, which is also 100% owned by AIG[2]. This led Carlsmith Ball LLP to name AIGTS, rather than AHAC, as the defendant surety in this action. Not only is it undisputed that Carlsmith Ball named AIGTS rather than AHAC as surety in reliance on that circumstance, there is no other conceivable explanation for that circumstance.[3] The best explanation, stated as fairly as possible to AIGTS, AHAC, and Carlsmith Ball, is that because AHAC directed Carlsmith to assert Rhino's claim to AIGTS, Carlsmith, in reliance upon that insistence, mistakenly brought this action against AIGTS rather than AHAC, the named surety.

---

[1] Insofar as the Sureties may intend to assert that Plaintiff's Miller Act claims are untimely under that act as to both of them, Plaintiff incorporates its arguments against such an assertion as set forth in the accompanying opposition to BPI's motion for summary judgment.

[2] See AIGTS and AHAC's responses to Plaintiff's Interrogatory Nos. 4, 5, 7, and 11, Exhibit C to Yanza Declaration filed January 6, 2004.

[3] Unless, of course, Carlsmith Ball, which represents a number of AIG entities and resigned as Rhino's counsel in this case because of that conflict, named the wrong surety on purpose to prevent Rhino from collecting the sums due it under the bond, and Plaintiff does not assert that in this case.

3

In that circumstance, under the doctrine of equitable tolling, AHAC should be, and is, estopped to assert a statute-of-limitations defense against Rhino on the ground that it should have sued AHAC by March 20, 2002, when it did sue AIGTS, the entity to which AHAC directed Carlsmith to make Rhino's claim.

First, it is clearly established that the doctrine of equitable tolling applies to Miller Act sureties who have acted in such a way as to induce the Use Plaintiff not to timely file suit. <u>United States for use of E.E. Black Limited v. Price-McNemar Constr. Co.</u>, 320 F. 2d 663, 666 (9th Cir. 1963) ("a defendant may, if the circumstances warrant, be estopped from defending on the ground that the action was not commenced within the time specified in 40 USC § 270b(b)"); *see also* <u>United States for use and benefit of Bernard Lumber v. Lanier-Gervais Corp.</u>, 896 F.2d 162, 164 (5th Cir. 1990) ("No longer in any dispute in the Fifth Circuit is the fact that this mis-named 'jurisdictional" defense is subject to equitable tolling."); <u>United States for use of Kirchdorfer v. M.J. Kelley Corp.</u>, 995 F.2d 656, 659 (6th Cir. 1993) (270b(b) limitation tolled by timely filing in wrong court); <u>United States for use of Nelson v. Reliance Insurance Company</u>, 436 F. 2d 1336 (10th Cir. 1971) (Surety's assurance of payment tolled § 270b(b) limitation); <u>United States for use and benefit Humble Oil v. Fidelity and Casualty Co.</u>, 402 F.2d 893, 897 (4th Cir. 1968) ("Estoppel arises where one, by his conduct, lulls another into . . . a position that he would not take only because of such conduct.").

4

It does not matter whether or not AHAC and/or AIGTS *intended* to cause Carlsmith Ball to file Rhino's claim against AIGTS rather than AHAC. All that is required is that the conduct of AHAC, referring Plaintiff to make its claim against AIGTS rather than AHAC, actually was the reason Carlsmith mistakenly sued AIGTS rather and AHAC. If so, that conduct tolls the statute. United States for use and benefit of Humble Oil, *supra,* 402 F.2d, at 898 ("To establish estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice.") *and citing* Glus v. Brooklyn E. Dist Term., 359 U.S. 231 (1959) (cited to support the proposition that "deception is not a necessary ingredient to estoppel'). Here, there is no disputing that AHAC directed Plaintiff to file its pre-litigation claim against AIGTS, rather than AHAC, and that this demand eventually let to Rhino's naming AIGTS as the surety in this action. This tolling is especially appropriate because Plaintiff *did* timely file the action against AIGTS. Other cases where equitable tolling was based on mistake, rather than deception, include United States v. Woodbury, 359 F. 2d 370, 375 (9th Cir. 1966) (action tolled by good faith mistake by attorneys who were mistaken regarding whether or not the action had to be brought as a compulsory counterclaim); and United States for use of Kirchdorfer v. M.J. Kelley Corp., *supra*, 995 F.2d at 659 (270b(b) limitation tolled by attorneys' mistaken filing in wrong court).

Notwithstanding the rule that this estoppel exists without any intent of AHAC or AIGTS to confuse Carlsmith in this regard, it should *not* be assumed that

5

AHAC had no such intent. Rhino did serve AHAC with formal discovery calculated to discover whether AHAC has ever asserted to a claimant who sued it instead of AIGTS sued the wrong party, or has otherwise used its dual entity strategy to confuse claimants, but has been denied that information as "not relevant" and unduly burdensome.[4] Based on that refusal, Plaintiff is entitled to a presumption that the withheld information *would* have supported a finding that AHAC intended to confuse Carlsmith, although, again, such an intent is not necessary to the rule that AHAC is estopped to assert the statute of limitation because its acts led Carlsmith to mistakenly sue the wrong party.

### B. Relation Back.

AHAC and AIGTS gave Plaintiff's former counsel reason to think it should bring this action against AIGTS rather than AHAC.[5] They then presumably noticed that this action was brought against AIGTS rather than AHAC. They did keep silent regarding that mistake until an amendment to add AHAC would not relate back to the March 20, 2002 filing date for statute-of-limitations purposes under F.R.Civ. Proc. Rules 15(c)(3) and 4(m).[6] In order to wait that long before responding to the complaint, AIGTS requested, and Rhino granted, an extension of time allowing AIGTS to respond to the complaint after that date. Then, AIGTS responded to the complaint by moving to dismiss Rhino's claim against AIGTS because it is not the

---

[4] See AHAC's responses and objections to Plaintiff's Interrogatory Nos. 12-14, Exhibits B & D to Yanza Declaration filed January 6, 2004.
[5] *See, e.g.,* Affidavit of Amy Self, filed September 4, 2002.

surety.[7] In such circumstances, AHAC and AIGTS, who have always been represented by the same attorneys as each other, should be estopped to assert that it is too late for the amendment adding AHAC to relate back to the March 20, 2002 Complaint for statute-of-limitations purposes.

### C. For All Practical Litigation Purposes, AIGTS *Is* AHAC.

For the purposes of this lawsuit, little if any credence should be given to AIGTS and AHAC's assertion that AIGTS is not the surety for the simple reason that, for the practical purposes of this case, they *are* the same company. They are both 100% owned by American International Group. Half of AIGTS's directors are also directors of AHAC.[8] If you accept their representation that they are separate companies, and that AIGTS is not, therefore, the surety, then Rhino is entitled to a finding that AHAC, the only surety, *never denied or responded to Rhino's claim at all.* They have the same attorneys in this case. Those attorneys file the same briefs, and make the same arguments, for both AIGTS and AHAC. They have filed the same pleadings and motions. And they both, in concert, refuse to answer discovery by Rhino reasonably calculated to discover how, in prior litigation, AHAC and AIGTS may have used the dual entity theory against other bond claimants. For all these reasons, they should be estopped to deny that they are both, for practical purposes, the

---

[6]  120 days after the filing of the complaint was July 18, 2002.
[7]  *See* July 26, 2002 Motion to Dismiss.
[8]  See AIGTS's supplemental responses and objections to Plaintiff's Interrogatory Nos. 8 & 10, Exhibit C to Yanza Declaration filed January 6, 2004, and Exhibits A & B to those interrogatory responses..

7

Surety in this case, and that an action brought against one is, for practical purposes, an action against both.

## II. AIGTS SHOULD BE LIABLE AS THE SURETY.

Because of their common ownership, their common representation, their common defenses in this action, but mostly because of their acts in concert with respect to denying Rhino's claim and leading its previous counsel to mistakenly sue the wrong one of them, and because of AIGTS's efforts to appear to have authority over the granting or denial of Rhino's claims on the surety bond, AIGTS should be estopped to deny that it *is* the surety, and AIGTS should be treated, along with AHAC, as the surety on the Navy Contract for the purposes of this litigation. 18 G.C.A. § 20402(3).

## III. PLAINTIFF IS ENTITLED TO RECOVER FAR MORE THAN THE COSTS OF LABOR AND MATERIALS SUPPLIED FOR DELIVERY ORDERS 1, 2, & 7.

AHAC and AIGTS erroneously assert that Rhino is entitled to no compensation other than compensation for labor and materials provided for three delivery orders it concedes were fully completed by Rhino prior to BPI's takeover of Rhino's Navy Contract activities. That assertion is directly contrary to the express terms of the Miller Act, the United States Supreme Court's declaration of the purpose of that Act, and the holdings of the United States Court of Appeals for the Ninth Circuit regarding what subcontractors may recover under the Miller Act.

8

### A. General Principles of Subcontractor Recovery under the Miller Act.

The Miller Act is a remedial statute that explicitly provides that subcontractors on bonded government projects are entitled to recover all "sums justly due" them under their subcontracts. 40 USC § 270b(a). The sole function of the words "has furnished labor and materials" in that section is to define who is entitled to sue for all "sums justly due" so that he will be "paid in full." *id.* There is no textual basis whatever in that section to support the Sureties' assertion that recovery is limited to "furnished labor and materials." This has been the finding of numerous Courts construing the meaning of these words. *e.g.* <u>Taylor Constr. Inc. v. ABT Service Corporation, Inc.</u>, 163 F. 3d 1119, 1122 (9th Cir. 1998) and cases cited below. Any such limitations, not having textual support in the Act, must be rejected. Similarly, there is not one word in the Act to support the Sureties' position that Rhino cannot recover all "sums justly due" for labor and materials supplied by Rhino in prosecution of the Navy Contract but not in prosecution of Delivery Orders fully completed solely by Rhino. 40 USC § 270b(a).

Further, to read either of those textually-unsupported limitations into § 270b(a) would directly contravene the Congressional policy of the Miller Act as enunciated by the United States Supreme Court. In <u>Clifford MacEvoy Co. v. United States for use and benefit of Calvin Tomkins Co.</u>, 322 U.S. 102, 64 S. Ct. 890 (1944), for example, the Supreme Court held that:

9

> The Miller Act ... is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials to into public projects.

322 U.S. at 107, 64 S. Ct. at 893. Similarly, in <u>Illinois Surety Co. v. John Davis Co.</u>, 244 U.S. 376, 37 S. Ct. 614 (1917, Brandeis, J.), the Court held that:

> The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act.

244 U.S., at 380, 37 S. Ct., at 616. Limiting recovery to compensation for "materials and labor," rather than "sums justly due" and payment "in full" as specifically stated by the Act, is not a liberal construction and application of the Act to protect Rhino.

Consequently, the Court of Appeals for the Ninth Circuit has held that "'Sums justly due' refers back to the term 'paid in full' contained in the earlier part of the same sentence" of 40 USC § 270b(a) and that, consequently, "a provider of labor and materials is entitled to *all sums justly due*, meaning that the provider is entitled *to be paid in full under the subcontract*." <u>Taylor Constr. Inc. v. ABT Service Corporation, Inc.</u>, 163 F. 3d 1119, 1122 (9th Cir. 1998) [emphasis added].

10

B. **Specific Types of "Sums Justly Due" Recoverable the Miller Act.**

The following are just a few examples of items of recovery found by the Courts to be recoverable under the Miller Act as "sums justly due."

1. **Contracted-for Profits.**

As alleged in the Complaint, and as acknowledged by BPI's President in his letter attached as Exhibit "A" to the original complaint, BPI was obligated under the subcontract to pay Rhino for the actual cost of the work, and one half of the profits BPI realized. As set forth above, that share of profits, as well as the cost of the work, is recoverable by Rhino under the Miller Act as one of the "sums justly due" Rhino in order for it "to be paid in full under the subcontract." Taylor Constr. Inc. v. ABT Service Corporation, Inc., 163 F. 3d 1119, 1122 (9th Cir. 1998)

Where part of the amount due a Miller Act subcontractor is a share of the contractor's profits, that profit element is recoverable under the Miller Act as a sum justly due the subcontractor even though it "exceeds the cost of labor, materials, and overhead." United States for the use and benefit of Woodington Electric Co., Inc. v. United Pacific Ins. Co., 545 F. 2d 1381, 1383 (4th Cir. 1976); *accord* Burton v. Frank A. Seifert Plastic Relief Co., 61 S.E. 936, 942 (Va. 1908) (Surety's argument that subcontractor cannot recover "profits and gains" under the act is completely refuted by the "provisions of the act of Congress itself."); United States for use and benefit of Reichenbach v. Montgomery, 155 F. Supp. 384, 386 (E.D. Pa. 1957) ("The surety's contention that it is entitled to judgment because the subcontract, the

11

supplement thereto, and the verdict included subcontractor's profit misconceives both the language and the purpose of the Miller Act and the decisions which the surety cites."); Taylor Constr. Inc. v. ABT Service Corporation, Inc., 163 F. 3d 1119, 1122 (9th Cir. 1998) ("Miller Act clearly requires a surety to pay the entire amount due under the contract with the prime contractor defaults."); *accord*, Central Steel Erection Co. v. Will, 304 F. 2d 548, 555 (9th Cir. 1962) (even when recovering under Miller Act on a *quantum meriut* theory "some allowance for profit is permissible and proper.").

Here, Rhino was entitled under its subcontract with BPI to one-half of the profits realized from the entire Navy Contract – not just the first 18 Delivery Orders. When BPI failed to pay Rhino, Rhino was entitled to stop work on the contract and sue for the profit it would have made if allowed to complete the entire contract as agreed. *See, e.g.,* Acret, *California Construction Law Manual*, 5th ed., § 2.74 ("Subcontractor may stop work if any progress payment in not made when due . . . " and "could also sue for lost profits."); Connell v. Higgens, 150 P. 769, 772 (Cal. 1915) (building contractor prevented from performing was entitled to damages consisting of "the profits he would have made if had had been permitted to complete the work according to the contract."); Restatement of Contracts, Second, § 243(2) ("a breach by non-performance accompanied or followed by a repudiation gives rise to a claim for damages for total breach."); *accord,* Simon, 2 *Construction Law Claims and Liability*, § 15.1. The measure of damages due Rhino for BPI's breach of its

12

promise to pay Rhino includes, but is not limited to "the amount necessary to compensate [Rhino] for all detriment proximately caused by the breach or which, in the ordinary course of things, would be likely to result from the breach." 20 G.C.A. § 2201. BPI admits that, as of the date this action was filed, it had realized profits of $179,557.20 on the Navy Contract.[9] Consequently, just the profit element alone[10] of Plaintiff's recovery should not be less than half of that, and Plaintiff's total recovery should not be limited to $18,854.20, as the Sureties erroneously argue in their motion.

### 2. Overhead.

the Sureties incorrectly argue that expenditures for "overhead" cannot be recovered under the Miller Act. As set forth in the Woodington case, supra, "the cost of . . . overhead" is recoverable under the Miller Act as well as the cost for labor, materials, and contracted-for profits. 545 F. 2d, at 1383.

In this case, BPI agreed to pay Rhino one-half of its Guam overhead, and Rhino therefore seeks to recover that sum as one that is justly due it from BPI and the Surety under the Miller Act. That sum is recoverable from BPI and the Surety under the Miller Act. Taylor Constr. Inc. v. ABT Service Corporation, Inc., 163 F. 3d 1119, 1122 (9th Cir. 1998) ("Miller Act clearly requires a surety to pay the entire amount due under the contract with the prime contractor defaults."); United States for

---

[9] See BPI's accounting of its profits on the Navy Contract through the date this suit was commenced, attached as an Exhibit to the Declaration of Counsel, which will be filed herewith under seal if permitted pursuant to a confidentiality agreement between BPI and Plaintiff..

13

the use and benefit of Woodington Electric Co., Inc. v. United Pacific Ins. Co., 545 F. 2d 1381, 1383 (4th Cir. 1976); United States for use and benefit of D&P Corporation v. Transamerica Insurance Co., 881 F. Supp. 1505, 1509 (D. Kans. 1995) ("the rule in this circuit is that a use plaintiff is entitled to recover for overhead and profit.").

### 3. Use of Capital Equipment.

The Sureties argue that Rhino's claim includes capital equipment but specify only a few items of what they allege is improperly-claimed capital equipment, most not worth the cost of this argument, and most really accounted for by Rhino as overhead, for which it is justly due one-half pursuant to the subcontract with BPI. Since the Sureties do not supply an accounting of items they claim Rhino is claiming as "capital equipment," Rhino will simply note that the *use* or rental of capital equipment "furnished . . . in the prosecution of the work" can be recovered under the Miller Act. 40 USC § 270b(a); United States Navy for benefit of Andrews v. Delta Contractors Corporation, 893 F. Supp. 125 (D. P. R. 1995) (unpaid rent for crane provided by verbal contract recoverable under Miller Act). Further, due to the mandate that the Miller Act be liberally construed and applied to remedy subcontractor losses, "When the question has been whether materials were actually used in a job, it has been held that the claimant need not so prove, but only that in good faith he reasonably believed that the materials were so intended." United States

---

[10] Under the verbal subcontract, Plaintiff is also entitled to recover all of its direct costs and also half of its Guam overhead.

14

<u>for use and benefit of Industrial Lumber Co. v. Rich</u>, 473 F. 2d 720 725 (9th Cir. 1973).

### 4. Consequential Damages Caused by Loss of Bonding.

Rhino also seeks to recover from the Sureties heavy losses it incurred due to the loss of its bonding as a direct result of BPI's and the Sureties' failure to pay Rhino's claim on the payment bond. At trial, Rhino will show that it actually won a number of federal contracts, but could not obtain the bonding necessary to perform those contracts due to those failures of BPI and the Surety. Because the amount of this loss, far in excess of $6.5 million, can be proven with reasonable certainty, and is clearly ascertainable both in its nature and its origin, it is recoverable from BPI under 20 GCA §§ 2201-2202. Because it is due Rhino from BPI as a result of BPI's breach of the subcontract, Rhino should also be found entitled to recover those recoverable consequential damages from the Surety. <u>Benjamin v. Hillard</u>, 64 U.S. 149, 16 L. Ed. 518 (1859) (If the terms of the engagement of a surety are general and unrestricted, and they embrace the entire subject, his liability will be measured by that of the principal and embrace the same *accessories and consequences*); *accord* <u>Gaussen v. U.S.</u>, 97 U.S. 584, 24 L. Ed. 1009 (1878) (Generally, the extent of a surety's obligation is the same as that of the principal); <u>Cage v. Cassidy</u>, 64 U.S. 109, 16 L. Ed. 430 (1859) (the natural limit of the obligation of a surety is found in the obligation of the principal and when that is extinguished the surety is in general liberated). Such losses are recoverable by Plaintiff to the extent it can satisfy this

15

honorable Court that they are "necessary to compensate [Rhino] for all detriment proximately caused by [BPI's] breach or which, in the ordinary course of things, would be likely to result from the breach." 20 G.C.A. § 2201.

### 5. Interest on Past-Due Amounts.

Pre-judgment interest can be recovered at the statutory rate of 6% for construction supplies. 18 G.C.A. § 47106 (in the absence of a written agreement on prejudgment interest, interest is recoverable at rate of 6% for "forbearance of any money" and for "goods or things in action"); Guam United Warehouse v. DeWitt Transportation, 2003 Guam 20, 2003 WL 22715619 (Guam Terr.); Phoenix Engineering & Supply v. Universal Electrical, 882 F. Supp. 956 (D. Guam App. Div. 1995). Such interest is recoverable from the contractor or the surety in an action under the Miller Act from the time demand is made. Sam Macri & Sons v. U.S.A. for the use of Oaks Construction Co., 313 F. 2d 119, 130 (9th Cir. 1963).

In sum, AIGTS and AHAC concede that Plaintiff is entitled to some recovery, but the amount of recovery is in dispute. *See* AIG and AHAC's December 15, 2003 Points and Authorities, at 9-11.

### Conclusion

For the foregoing reasons, Plaintiff United States of America for the use and Benefit of Rhino Builders, Inc. most respectfully requests this honorable Court to deny the December 15, 2003 motion of American Home Assurance Company and

AIG Technical Services, Inc. for Summary Judgment against Plaintiff on its Miller Act claims.

Respectfully submitted this 20th day of January 2004.

_____
Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.