ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.

FILED
DISTRICT COURT OF GUAM
JAN 29 2004
MARY L. M. MORAN
CLERK OF COURT

325

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **MOTION FOR A PROTECTIVE ORDER AND ORDER MODIFYING SUBPOENA** <br><br> **[No Hearing Requested]** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

ORIGINAL

Plaintiff United States of America for use and benefit of Rhino Builders, Inc. ("Plaintiff") most respectfully requests this honorable Court: (1) to modify the Deposition Subpoena filed January 20, 2004; and (2) to issue a Protective Order protecting Plaintiff from the attempt of American Home Assurance Company ("AHAC") and AIG Technical Services, Inc. ("AIGTS") to compel the subpoenaed deponent, Carlsmith Ball LLP, to: (a) produce and disclose privileged information to parties other than the Court as required in the Court's December 29, 2003 Order; and (b) to disclose privileged information for which the privileged has not been waived, as follows:

1.     In its December 29, 2003 Order, the Court granted the motion of AIGTS and AHAC to compel discovery privileged information for which the privilege had been implicitly waived by Plaintiff's allegation that AIGTS and AHAC "induced" Plaintiff to name AIGTS as the defendant in Plaintiff's claim on the surety bond. The motion did not assert that Plaintiff had waived the attorney-client privilege in any manner except by that allegation, or that Plaintiff had waived the attorney-client privilege with respect to matters unrelated to its allegation that AIGTS and AHAC "induced" Plaintiff to name AIGTS.

2.     AIGTS and AHAC did not ask the Court to find a waiver of communications *after* the complaint was filed. Because the theory of the waiver is that Plaintiff waived the privilege with respect to its allegation that AIGTS "acted in

2

bad faith and breached these duties by inducing Plaintiff to make its claim against it" instead of AHAC, the alleged "inducement" necessarily had to have been completed prior to the filing of the complaint.

   3.   AHAC and AIGTS have now subpoenaed Carlsmith Ball to answer written deposition questions providing the following categories of information that would *not* tend to prove whether or not Plaintiff was induced to file a complaint, on March 20, 2002, naming AIGTS and not AHAC as the defendant surety:

   a. "Who drafted the [September 2, 2002] affidavit [of Amy Self] and what role did you have in drafting, revising or reviewing the affidavit?" **Question 8 a.**

   b. "When was this affidavit drafted?" **Question 8 b**.

   c. "Was [AIGTS's June 21, 2000 letter to Carlsmith Ball] forwarded to Mr. Antonio L. Cortes, after Carlsmith withdrew from representing the Plaintiff?" **Question 17 a.**

   d. "Did anyone at Carlsmith advise Mr. Cortes, after Carlsmith's withdrawal and after Mr. Cortes undertook representation of the Plaintiff, that AIGTS was not the correct named defendant in this case?" **Question 17 b.**

   e. "After the Complaint was filed, and before Carlsmith withdrew as counsel for the Plaintiff, describe the date, substance and participants in any discussions among the

3

Carlsmith attorneys regarding the following: a. AIGTS having been named the surety instead of American Home; b. Amending the Complaint to name American Home as the surety; and c. Advising the Plaintiff's new counsel, Antonio L. Cortes, that American Home was not named as a defendant." **Question 29.**

f. "Who advised Antonio L. Cortes, the Plaintiff's present counsel, that Carlsmith was led to believe that AIGTS was the corporate surety?" **Question 31.** Note: Plaintiff also objects that this question assumes a fact that is not in evidence.

g. "When was this brought to Mr. Cortes' attention? **Question 32.** Note: Plaintiff also objects that this question assumes a fact that is not in evidence.

h. "Who brought the matter to Mr. Cortes' attention?" **Question 33.** Note: Plaintiff also objects that this question assumes a fact that is not in evidence.

4. Plaintiff further objects to the following questions insofar as they seek discovery of events that occurred *after* Carlsmith filed the Complaint:

a. Question 24.

b. Question 25.

c. Question 30.

4

5.     As stated by the Court, "The purpose of this 'oldest of privileges' is 'to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." December 29, 2003 Order, *quoting* Upjohn v. United States, 449 U.S. 383, 395 (1981). To achieve that purpose, this Court should not permit discovery of privileged information not within the scope of the implied waiver found to exist in Plaintiff's allegation that AIGTS "acted in bad faith and breached these duties by inducing Plaintiff to make its claim against it" instead of AHAC. Handgards v. Johnson & Johnson, 413 F. Supp. 926, 929 (N.D. Cal 1976, Orrick, J.) (deliberate injection of advice of counsel into lawsuit only "waives the attorney client privilege as to communications and documents *relating to that advice.*" [emphasis added]).

6.     Even more importantly, the deposition questions served by AHAC and AIGTS *do not direct Carlsmith or any official taking the deposition to preserve the confidentiality of Carlsmith's answers pending Court review*, or even direct the deponent and officer to submit the answers directly to the Court, as required in the December 29, 2003 Order, at 7-8 ("the Court will order that the questions for which the defendants wish to ask the witnesses be responded to in writing and submitted for this Court's in camera review" and "The deponents shall then have thirty days in which to respond and submit to the Court in camera for its review. Thereafter, to the extent the Court finds the responses are proper for discovery

5

purposes the Court will order that the time for depositions be extended so that counsel may depose the witnesses."). Instead, the notice of deposition filed January 16, 2004 requires the deponent to provide its answers pursuant to Rule 30(b)(6), which requires the deponent provide answers to "a party." Likewise, the notice of deposition does not in any way mention or attach the Court's December 29, 2003 Order. In the normal course of deposition procedure under Rule 30 or 31, AIGTS and AHAC would be able to view the answers prior to their submission to the Court.

7. Plaintiff is particularly alarmed and sensitive to the foregoing procedural question because AHAC and AIGTS have chosen to pose these questions to a law firm that currently represents other members of the AIG group of companies, rather than to Mr. Thomason and Ms. Self, who actually prepared the Complaint. The deponent, it must be recalled, terminated its representation of Plaintiff is this case *because of* its representation of AIGTS and AHAC's sister companies, and actually sent an attorney who represents such sister companies to "defend" the deposition of Terry Thomason (who no longer is with Carlsmith and who did not have an engagement letter with the AIG attorney ostensibly representing him). In such circumstances, Plaintiff is extremely concerned that Carlsmith have clear instructions from the Court to submit its answers directly to the Court without disclosing them to AIGTS or AHAC or any of their attorneys.

8. F. R. Civ. Proc. Rule 26(c) allows a protective order, upon motion and good cause shown, providing that a protective order may provide: "(4)

6

that certain matters not be inquired into," or "(6) that a deposition, after being sealed, be opened only by order of the court," or "(7) that . . . confidential information . . . not be revealed or be revealed only in a designated way."

9. F. R. Civ. Proc. Rule 45 (3)(A)(iii) allows an order to modify a subpoena, upon motion, if the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies."

Accordingly, pursuant to F.R.Civ. Proc. Rules 26 (c) and 45 (3)(A)(iii), Plaintiff moves this honorable Court

a. to issue a protective order preventing AIGTS and AHAC from seeking answers to questions 8a, 8b, 17a, 17b, 29, 31, and 32, and to seek answers to questions 24, 25, and 30 only as they call for information regarding events prior to the filing of the Complaint,

b. to modify the subpoena so that the deponent is not required to provide that information regarding events that occurred before Carlsmith filed the Complaint, and

c. to require AHAC and AIGTS to give clear instructions to the deponent and the officer taking the deposition to disclose the answers only to the Court.

10. The undersigned counsel for Plaintiff certifies that he has met and conferred in good faith with counsel for AHAC and AIGTS and discussed the subject matter of this motion as required by F.R.Civ. Proc. Rule 26(c) but that counsel

7

did not indicate a willingness to withdraw the questions that are the subject matter of this motion.

Respectfully submitted this 29th day of January 2004.

Antonio L. Cortes, counsel for Plaintiff
United States of America for use and benefit
of Rhino Builders, Inc.