Arthur B. Clark, Esq.
Janalynn M. Cruz, Esq.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96911
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for Defendant/Counter-Plaintiff
BioGenesis Pacific, Inc.

FILED
DISTRICT COURT OF GUAM
JAN 30 2004
MARY L. M. MORAN
CLERK OF COURT

332

IN THE DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC.,

    Plaintiff,

vs.

BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY

    Defendants.

BIOGENESIS PACIFIC INC.,

    Counter-Plaintiff,

vs.

RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10,

    Counter-Defendants.

AMERICAN HOME ASSURANCE COMPANY,

    Cross-Claimant,

vs.

BIOGENESIS PACIFIC INC.,

    Cross-Claim Defendant.

CIVIL CASE NO. 02-00008

**BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC, INC.'S MOTION FOR SUMMARY JUDGEMENT**

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC, INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

ORIGINAL

1

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 1 of 10

Rhino, recognizing that the standard for bringing a summary judgment motion is the lack of any genuine issue of material fact, attempts to obfuscate the applicable standard by referring to factual issues in dispute. (Rhino's Memorandum in Opposition to BioGenesis' Motion for Summary Judgment ("Opp. Memo") at 2-6.) BioGenesis concedes the existence of disputed facts, however, the facts relevant to BioGenesis' summary judgment motion are indisputable. For example, it is undisputed that both parties acknowledge that any arrangement for Rhino to provide labor and materials for the Navy Contract was terminated by December 2000. It is undisputed that except for the alleged flatbed truck rental, Rhino's claim to having provided materials after December 2000 is based on allegations of unreturned capital equipment, not an agreement for the rental of other equipment.[1]

Rhino has failed to offer any admissible facts to dispute the facts offered by BioGenesis as is Rhino's burden in opposing a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986) (The non-moving party must produce at least some "significant probative evidence tending to support the complaint"). Moreover, Rhino's legal arguments in opposition of summary judgment miss the mark.

### Statute of Limitations

With respect to Miller Act limitations period, semantically, there is no distinction between a statute that *requires* an action to be commenced *before* the expiration of one year, or one that *prohibits* an action from being commenced *after* the expiration of one year.[2] The cases to which Rhino cite in support of its opposition are unconvincing. Rhino cites *United States for Use and Benefit of Pre Fab Erectors, Inc. v. A.B.C. Roofing*, 193 F.Supp. 465 (S.D.Cal. 1961). In this case, the district court

---

[1] In its memo, Rhino again reiterates its claim based on capital equipment in its opposition memorandum. *See* fn. 13 to Rhino's Opposition to BioGenesis' Motion for Summary Judgment (listing "containers of tools," "safety equipment," and other "tools" alleged to have been unaccounted for after December 2000.)

[2] The Miller Act was recently re-codified as 40 U.S.C. §3131 *et seq.* (P.L. 107-217 §1 on August 21, 2002). However, since all relevant cases cited refer to the earlier code number, in order to avoid confusion, all references to the Miller Act by BioGenesis (and by Rhino) have been to the Miller Act's earlier statutory citation, 40 U.S.C. §270a *et seq.* In addition, in the event there are any changes or variation in the two versions of the Miller Act, the earlier version should control since that was the version in effect at the time the lawsuit was filed.

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

2

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 2 of 10

cites to an earlier decision in the same district, *United States for Use of Strona v. Bussey*, 51 F.Supp. 996, which it refused to follow. In *Strona*, the court "interpreted the term 'after the expiration of one year' to mean a calendar year and held that where final settlement was on July 9, 1942, a complaint filed on July 9, 1943 was filed too late." *Pre Fab Erectors*, 193 F.Supp. 465. The *Pre Fab* court, however, then refused to follow the *Strona* ruling in favor of applying Fed.R.Civ.P. 6 to compute the limitations period. It is, however, the application of Fed.R.Civ.P. 6 to the computation of limitations periods that is expressly rejected by the Eight Circuit Court of Appeals in *Mattson v. U.S. West Communications, Inc.* 967 F.2d 259 (8th Cir. 1992).

The *Mattson* court noted that Fed.R.Civ.P. 82 ("rules shall not be construed to extend or limit the jurisdiction of the United States district courts") expressly prohibited the application of Fed.R.Civ.P. 6 to the computation of statutes of limitation. The *Mattson* court concluded that Fed.R.Civ.P. 6 cannot apply <u>until</u> the United States district court obtains jurisdiction, which it cannot do if the applicable limitations period has expired. "We note that 'statutes of limitations are not simply technicalities; on the contrary, they have long been respected as fundamental to a well ordered judicial system.' We are not at liberty to disregard the jurisdictional limitations Congress has placed upon the federal courts, however appealing it might be. . . ." *Mattson*, 967 F.2d 262 (citations omitted). Though not expressly addressing the *Mattson* refusal to apply Fed.R.Civ.P. 6, the Ninth Circuit Court of Appeals did adopt and follow the ruling in *Mattson* without any expressed reservation. *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). BioGenesis believes that the adoption of the *Mattson* decision by the Ninth Circuit Court implicitly includes the adoption of the Eight Circuit's refusal to apply Fed.R.Civ.P. 6 to limitations periods.

Even the court in *Bailey v. Faux*, 704 F.Supp. 1051 (D. Utah), cited by Rhino, noted the inappropriateness of applying Fed.R.Civ.P. 6. "Technically, however, the Federal Rules of Civil Procedure apply only to lawsuits once they have been initiated. Because statutory limitation periods precede the institution of suit it is inappropriate to expressly apply [Fed.R.Civ.P.] 6(a) to them." *Bailey*, 704 F.Supp. 1053. The court in *Bailey* also noted that in determining a "one year" period, the courts should follow "the calendar method of calculating a year. . . . Thus, a calendar method of calculating a one year period from any given date results in termination of that period in the next calendar year on

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

3

Case 1:02-cv-00008    Document 336    Filed 01/30/2004    Page 3 of 10

the date one day prior to the starting date." *Id.* The court in *Bailey*, however, then proceeded to note that the Tenth Circuit Court of Appeals applied Fed.R.Civ.P. 6(a) to extend a statute of limitations period that lapsed on a Sunday to the following Monday (not a situation applicable in the Rhino's case). *Citing to Johnson v. Fleming*, 264 F.2d 322 (10th Cir. 1959). The court in *Bailey* then went on to assume essential elements of fact <u>not</u> found in the *Fleming* decision, but acknowledged as absolutely critical to the computation of the limitations period, to reach a confusing and dubious conclusion on the Tenth Circuit's intent on the application of Fed.R.Civ.P. 6(a). Thus, BioGenesis submits to the Court that the *Bailey* decision lacks any sound reasoning to support its conclusion.

Another case cited to by Rhino is *United States Navy v. Delta Contractors*, 893 F.Supp. 125 (D. Puerto Rico 1995), a decision that expressly relies on the *Bailey* decision, which decision is severely flawed for the reasons stated above. The final case cited by Rhino is *Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249 (4th Cir. 1983). However, the court in *Magna* <u>did not</u> render the holding ascribed to it by Rhino. Rhino summarizes the Fourth Circuit Court's holding as "an action filed for labor or materials last supplied on July 23, 1979 was filed one day too late on July 24, 1980." (Rhino's Opp. Memo at 7). In fact, the court held that, "Finding no work done after July 23, 1979, . . . we conclude that the filing of this action on July 24, 1980, was barred by the one year limitations period of 40 U.S.C. §270b(b)." *Magna* 709 F.2d 249, 251. The Fourth Circuit Court <u>did not</u> say that the complaint was filed one day late. It simply said the complaint was filed late. It also said: "[W]e disagree with the application of [Fed.R.Civ.P.] 6(a) to the Miller Act's limitations period. . ."

Rhino further asserts that "[u]nder the Miller Act, suit may be brought one year 'after' the anniversary date of the last date a portion of the cause of action accrued." (Rhino's Opp.Memo at 8) (citing 40 U.S.C. §270b(b)). In fact, 40 U.S.C. §270b(b) provides that no "suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied." The distinction, though subtle, is significant. Under Rhino's above-quoted interpretation of the statute, suit may be brought six months or even six years "after" the anniversary date of the last date materials or labor was provided.

Moreover, Rhino has not refuted the rule in *DeFilippis* and *McGrath*, which cases provide that multiple contracts between contractor and subcontractor have separate statute of limitations

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

4

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 4 of 10

commencement dates. *See Robert Defilippis Crane Service, Inc. v. William L. Crow Const. Co.*, 826 F.Supp. 647 (E.D.N.Y. 1993) and *McGrath v. Travelers Indem. Co.*, 253 F.Supp. 330 (D.C.Az. 1966). Even if we ignore the capital equipment issue, it is undisputed that any alleged subcontract to provide labor or material to the Navy Contract terminated no later than December 2000. Thus, the providing of any other "materials" to the Navy Contract was subject to a later, subsequent contract arrangement. Under *DeFilippis* and *McGrath*, the time to commence any lawsuit for compensation under the bond securing an alleged subcontract commenced when that subcontract terminated, which is undisputedly no later than December 2000.

Finally, Rhino argues that any equitable tolling applicable to AHAC should serve to toll the statutes of limitation period. This argument is wholly without merit. Rhino's equitable tolling argument is based not on representations made by AIGTS on <u>when</u> to file a lawsuit, but representations about against <u>whom</u> the lawsuit should be filed. (Rhino's Opposition to Sureties' Motion for Summary Judgment on Miller Act at 3.) Thus, even if Rhino was aware sooner that it should have named AHAC in its original complaint, the complaint would still have been too late.

Accordingly, at the outside, Rhino should have been filed its complaint by March 19, 2002. Further, Rhino cannot dispute that by December 2000 any arrangement to allow Rhino to provide labor or materials was terminated, thus under *DeFilippis* and *McGrath*, Rhino should have commenced its Miller Act suit no later than some time in December 2001. Rhino's complaint was not timely filed.

**The Measure of Damages Under the Miller Act is Limited to Labor or Materials "Furnished"**

The next faulty interpretation offered by Rhino is its reading that 40 U.S.C. §270b(a) authorizes recovery by a subcontractor for work it never performed. Rhino cites to *Taylor Const. Inc. v. ABT Services Corporation, Inc.*, 163 F.3d 1119 (9thCir. 1998) for support. However, it is clear that the court in *Taylor* reached the conclusion it did because in that case the subcontractor fully performed the subcontract. "Taylor Construction performed the work required in the subcontract. . ." *Taylor*, 163 F.3d 1121. Rhino, on the other hand, did not fully perform the subcontract it alleges it had with BioGenesis, yet its Miller Act claim is for full compensation.

The confusion stems from the use of the word "profit." Rhino has alleged that BioGenesis agreed to pay Rhino one-half of the profit from the Navy Contract. Rhino has extended the

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

5

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 5 of 10

definition of the term "profit" to include breach of contract damages. Breach of contract damages are simply not allowed under the Miller Act. *See United States of America for the Use and Benefit of Moran Towing Corp. v. Hartford Accident & Indemnity Co.*, 204 F.Supp. 353, 356 (D. Rhode Island 1962) ("[W]hile a subcontractor may undoubtedly maintain an action against the prime contractor for loss of profits caused by the latter's breach of his contract, the courts hold that he may not maintain such an action against the surety on the prime contractor's bond furnished under the Miller Act") (citations omitted); *United States, for Use and Benefit of Pertun Constr. Co. v. Harvesters Group, Inc.*, 918 F.2d 915, 917-18 (11th Cir. 1970) ("[A] liberal construction does not mean that the Miller Act establishes an unlimited basis for recovery; courts have held that the Miller Act surety is not liable for damages caused by the prime contractor's breach of contract. Thus, for example, in the present case National Union would not be liable to Pertun for profits lost as the result of Harvester's premature and wrongful termination of the subcontract") (citations omitted).

The measure of damages under the Miller Act is the value of the labor or materials furnished; it does not allow recovery for breach of contract. The First Circuit Court of Appeals, in reversing a trial court decision, succinctly analyzed the very issue before this court:

> Appellant objected to that portion of the charge which permitted the recovery of profit on unperformed work under the basic contract. . . . Appellant argues that by permitting the jury to award profits 'on the remaining unperformed portion of the contract which was not completed by him' the trial judge, in effect, permitted Marino to recover damages for a breach of the contract. It urges that recovery of such damages – by a subcontractor situated as Marino – would be manifestly outside the purview of the Miller Act. We agree with appellant's position in this regard.
> The Miller Act . . . was enacted to give those supplying labor and materials for government construction contracts, protection comparable to that furnished by mechanics' and materialmen's liens where private construction is involved. So far as is relevant here the Miller Act provides: '(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished * * * shall have the right to sue on such payment bond for the * * * balance * * * unpaid at the time of institution of such suit * * *.' 40 U.S.C.A. § 270b(a).
> The Act is a Congressional recognition of the equity in favor of those whose actual expenditure of work or utilization of material has enhanced the value of the property in question. However, since the statute was enacted to confer rights equivalent to those which would accrue under a lien where private construction is involved and since unrealized gain or profit for breach of contract cannot be recovered under such a lien, a subcontractor should not be allowed to recover for loss of profits on the statutory bond under the Miller Act. While the subcontractor may assuredly institute an independent action against the contractor for the unrealized profits stemming from the breach, the courts are uniform in holding that such an action may not be maintained against the surety on the contractor's bond under the Miller Act.

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

6

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 6 of 10

*Arthur Olive Co. v. United States, for the Use and Benefit of Dan C. Marino*, 290 F.2d 70, 71-72 (1st Cir. 1961) (citations omitted); see also *United States, to Use of Watsabaugh v. Seaboard Surety Co.*, 26 F.Supp. 681 (D.C.Mont.1938), *aff'd.*, 106 F.2d 355 (9th Cir. 1939).

BioGenesis has offered indisputable evidence that Rhino only completed Delivery Orders 1, 2 and 7. Moreover, BioGenesis has further offered indisputable evidence that Rhino in fact never started working on either Delivery Order 3 or 4. Thus, Rhino's claim is limited to the profits realized from Delivery Orders 1, 2 and 7, which BioGenesis has already computed.

### Rhino's Bad Faith Claim Is Inadequate to State a Claim

In response to BioGenesis' motion to dismiss Rhino's bad faith claim, Rhino has offered a response recognized by the Ninth Circuit Court of Appeals as inadequate to defeat the motion. "The evidence will show. . ." (Rhino's Opp. Memo at 20). *See T.W. Elec. Service, Inc.*, 809 F.2d 630 (The nonmoving party may not rely on allegations in the pleadings, nor the statement that "it will discredit the moving party's evidence at trial and proceed in the way of evidence to support its claim.") More significantly, however, Rhino now qualifies BioGenesis' bad faith as one based on a denial of the existence of a subcontract. The only case Rhino offers to support the proposition that denying a contract constitutes a tort of bad faith is *Seaman's Direct Buying Service v. Standard Oil Co.*, 686 P.2d 1158 (Cal. 1984), a decision that was expressly overruled by the California Supreme Court on the very point asserted as valid by Rhino. In overruling the *Seaman's* decision, the California Supreme Court held as follows:

> We granted review in this case to resolve some of the widespread confusion that has arisen regarding the application of our opinion in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* We held in that case that a tort cause of action might lie "when, in addition to breaching the contract, defendant seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists. . . ."
>
> In light of certain developments occurring subsequent to *Seaman's* that call into question its continued validity, we find it appropriate to reexamine that decision. As will appear, we have concluded that the *Seaman's* court incorrectly recognized a tort cause of action based on the defendant's bad faith denial of the existence of a contract between the parties. That holding has been widely criticized by legal scholars, has caused considerable confusion among lower courts, and has been rejected by the courts of several other jurisdictions. These critics convincingly argue that the *Seaman's* decision is confusing and ambiguous, analytically flawed, and promotes questionable policy. After careful review of all the foregoing considerations, we conclude that our *Seaman's* holding should be overruled.

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

7

Case 1:02-cv-00008    Document 336    Filed 01/30/2004    Page 7 of 10

*Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 670 (Cal. 1995) (citations omitted). The *Seaman's* decision was so widely and universally criticized that the California Supreme Court spent six pages of its decisions listing all relevant categories of criticism. *Id.* at 674-79.

In addition to offering no credible citation to support its bad faith claim, Rhino has also simply ignored the arguments put forth by BioGenesis that allegations that a company seeking to purchase a minority interest in another company fails to identify any claim of bad faith whatsoever.

### Rhino's Claim For Fraud Lacks Specificity and Is Not Permitted For a Breach of Contract

BioGenesis has asserted that Rhino's fraud claim was not adequately pleaded. Rhino responds that it was. The matter is thus before the Court for its determination. Rhino's only supporting citation is to 27 ALR Fed, which cites to *Meva Corp. v. Northeast Constr. Co.*, (D.C. Ga. 1969). Although the court in *Meva* summarizes the plaintiff's allegations and concludes them to be adequate to satisfy Fed.R.Civ.P. 9(b), that case does not offer any direct quotations of the actual allegations pleaded. Thus, BioGenesis would submit that the conclusion reached in *Meva* is not persuasive.

Rhino's claim that BioGenesis breached a promise to pay is an obligation rising from contract. Rhino's claim that BioGenesis breached a promise to reduce an oral contract to writing is also an obligation arising from contract. Rhino is seeking punitive damages for these alleged breaches, yet Guam law only recognizes a claim for punitive damages "[i]n an action for the breach of an obligation <u>not</u> arising from contract. . ." 20 G.C.A. §2120 (emphasis added). This statute was adopted from California Civil Code §3294(a). California and federal decisions analyzing the California statute have recognized that there is no claim for punitive damages based upon a breach of an obligation arising from contract, even if the defendant's action was fraudulent. "The law governing this subject has been aptly summarized as follows. '[P]unitive or exemplary damages, which are designed to punish and deter statutorily defined types of wrongful conduct, are available only in actions 'for breach of an obligation *not* arising from contract.' In the absence of an independent tort, punitive damages may not be awarded for breach of contract 'even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious.'" *Cates Constr. Inc. v. Talbot Partners*, 86 Cal.Rptr.2d 855, 878 (Cal. 1999) (emphasis in original). "Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. . . . This duty is independent of the

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

8

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 8 of 10

contract. 'An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.'" *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 28 Cal.Rptr.2d 475, 481 (Cal. 1994). "Under California law, '[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.'" *Jerich v. Jerich*, 238 F.3d 1202, 1202 (9th Cir. 2001) (holding that public policy favors prompt payment of wages, which are not considered ordinary debt) *citing Applied Equipment Co.* In addition, *Fireman & Mills*, 900 P.2d 669, also makes it clear that an independent tort claim does not lie for a breach of an obligation.

Moreover, Rhino's claim that failure to reduce an oral contract to writing constitutes a default of the oral contract is illogical because in order for the obligation to reduce a contract to writing to be enforceable, the oral contract itself must be enforceable thus making its reduction to writing a non-substantive breach. Thus, the claim itself simply makes no sense.

Absent any particular statement to support Rhino's claim of fraud, Rhino's allegation is simply one of a breach of obligation, which allegation does not constitute a fraud and for which punitive damages are not warranted.

### Alleged Evidentiary Deficiency

Rhino alleges in its opposition that the December 15, 2003 declaration of Arthur Clark is insufficient to allow the Court to consider the attached documents. Rhino's argument, in addition to being incorrect, is disingenuous. Almost all of the documents challenged by Rhino were produced by Rhino or its agent during discovery. Moore's Federal Practice addresses this issue as follows:

> For purposes of the present section, it makes sense to distinguish between affidavits that primarily give testimony and affidavits that are used primarily to introduce documents so that the court may consider the documents in determining whether material factual matter is genuinely in dispute. . . . If materials such as discovery responses are prepared for the case but not yet placed in the record, counsel can submit them with the summary judgment motion. Theoretically, a covering affidavit should not be necessary here, because these discovery documents, signed by opposing counsel or the opposing party, are in essence self-authenticating. However, some courts may erroneously refuse submission of such materials absent a covering affidavit, and therefore it is advisable that counsel use a covering affidavit to ensure that the court considers the discovery material properly before it.

*Moore's Federal Practice* 3d Ed. §56.10[4][c][i].

Although counsel should have more properly stated that the documents attached are true and correct copies of documents produced in discovery, the declaration itself was unnecessary so any

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

9

Case 1:02-cv-00008    Document 336    Filed 01/30/2004    Page 9 of 10

defect in the declaration should be inconsequential. In any event, counsel has filed an errata of its earlier declaration.

### Conclusion

Based upon the foregoing, and based upon the arguments made in BioGenesis' moving papers, BioGenesis requests that summary judgment be granted in its favor.

DATED this 30th day of January, 2004.

CALVO AND CLARK, LLP
Attorneys at Law
Attorneys for Defendant/Counter-Plaintiff
BioGenesis Pacific, Inc.

By: /s/ Arthur B. Clark
ARTHUR B. CLARK

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040130.327-0001.CT (Reply to Opposition to SJ).wpd

10

Case 1:02-cv-00008   Document 336   Filed 01/30/2004   Page 10 of 10