James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

**UNITED STATES DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br>　　　　Plaintiff,<br><br>vs.<br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY,<br><br>　　　　Defendants. | CIVIL CASE NO. 02-00008<br><br>**DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS** |
| BIOGENESIS PACIFIC, INC.,<br><br>　　　　Counterclaimant,<br><br>vs.<br><br>RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10,<br><br>　　　　Counter-Defendant. | |

**ORIGINAL**

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | )<br>)<br>) |
| Cross-Claimant, | )<br>) |
| vs. | )<br>) |
| BIOGENESIS PACIFIC, INC. | )<br>) |
| Cross-Claim Defendant. | ) |

## I. INTRODUCTION

In its Opposition Memorandum, Plaintiff RHINO BUILDERS, INC. ("RHINO") does not dispute or provide any exhibits to dispute the following facts:

1. AMERICAN HOME was named as a party for the very first time on September 10, 2002, one year and six (6) months after RHINO allegedly last provided labor and materials[1];

2. AIGTS did not issue the Payment Bond and is not a surety nor has AIGTS been licensed to be a surety;

3. RHINO only worked on Delivery Orders 1, 2 and 7;

4. RHINO, though its attorneys, Carlsmith Ball, LLP ("Carlsmith"), knew all along that AMERICAN HOME was the surety, not AIGTS; and

5. Neither AIGTS nor AMERICAN HOME represented to RHINO and its attorney that AIGTS was the surety.

---

[1] In its Opposition Memorandum, RHINO contends it continued to supply materials up until September 10, 2001, despite alleging in its Second Amended Complaint that March 20, 2001 was the date labor and materials were last supplied. Opposition Memorandum, p. 3; and 2nd Am. Complaint, ¶21. These are in direct contradiction to RHINO's earlier affidavit that December 2000 was the date labor and materials were last supplied. Kahn Dec., Ex. "J". RHINO is clearly attempting to create issues of fact, when labor and materials were last supplied, by creating statements contradicting earlier testimony. The statements made after RHINO's January 2001 affidavit are only statements which do not meet the threshold requirement for purposes of defeating a summary judgment motion. Contradicting statements do not create genuine issues. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). And, RHINO cannot rest on its pleadings to create genuine issues. FRCP Rule 56(e).

1

Therefore, with these facts not in dispute, nothing in the Plaintiff's Opposition, in any way, poses an obstacle for entry of partial summary judgment in favor of the Defendants in this matter.

## II. EQUITABLE TOLLING DOES NOT APPLY BECAUSE NO CONDUCT ON THE PART OF DEFENDANTS LED THE PLAINTIFF TO FILE SUIT AGAINST AIGTS.

To overcome RHINO's failure to file suit within one year against AMERICAN HOME, RHINO argues that equitable tolling should be applied. RHINO contends that because AMERICAN HOME and AIGTS are owned by American International Group ("AIG"), and AMERICAN HOME referred the Plaintiff to make a claim against AIGTS, Carlsmith mistakenly sued AIGTS.[2] This is essentially an estoppel claim. To carry its burden, RHINO must show that it was justifiably misled into a good faith belief AMERICAN HOME was the surety. <u>Glus v. Brooklyn Eastern District Terminal</u>, 359 U.S. 231, 235 (1959). RHINO's reliance must be justified or reasonable.

RHINO fails to come forward with sufficiently specific facts that are necessary elements to show it was justifiably misled to believe AIGTS was the surety. <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1222 (9th Cir. 1995).

The cases cited by RHINO have no application since they involve some affirmative act by the surety to mislead or induce a plaintiff to hold off filing suit against the surety. Here, neither AIGTS nor AMERICAN HOME misled RHINO or its lawyers.

There was no misrepresentation or conduct that misled RHINO or its attorneys. The fact that AMERICAN HOME and AIGTS are wholly owned by AIG is of no consequence. AMERICAN HOME and AIGTS are two (2) different and separate companies. Kahn Dec. Besides, RHINO fails to proffer evidence how the ownership of

---

[2] RHINO claims that there is no other explanation for Carlsmith's mistake. To the contrary, RHINO is very wrong, as will be shown below.

2

AIGTS and AMERICAN HOME led Carlsmith to name AIGTS as the surety. RHINO simply cannot rely on bold unsupported statements to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

From the <u>very beginning</u>, Terry E. Thomason, RHINO's lead attorney at Carlsmith, knew all along AMERICAN HOME was the surety. Mr. Thomason testified:

> Q  Do you recall what the name of the surety was that was included in the fax transmission from the contracting officer?
>
> A  My recollection, it was American Home Assurance.

Mr. Thomason further testified:

> Q  Did she [Amy Self] report to you anything that indicated to you at that point in time that she believed the identity of the surety was AIG Technical Services?
>
> A  I never understood that the surety was anyone other than American Home Assurance through that entire time. I do not recall anybody raising the name until we actually – I signed a letter that went to AIG Technical Services requesting reconsideration of their action on the claim.

Yanza Supplemental Dec., Ex. "A", pp. 14-16.

Compounding RHINO's burden is that all the correspondence drafted by the Defendants to Carlsmith pointed out that the "above referenced surety" was AMERICAN HOME. The reference headings of each letter specifically identified the surety:

> Principal:  Biogenesis Pacific, Inc.
> Bond No.:  00-20-80-88
> Claim No.:  388-005037-001-0001
> Project:  Contract No. N62766-99-D-0425 – Navy Housing – Guam and Various Locations.
> → **Surety:  American Home Assurance Company**
> Claimant:  Rhino Builders, Inc.

Each correspondence ended with the following sentence:

3

> Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the <u>above referenced surety</u> or Principal may have in this matter.

Kahn Dec., Exs. "B", "D", "E" and "G" (emphasis added).

None of the exhibits before the Court show that AIGTS and AMERICAN HOME represented that AIGTS was the surety. The only explanation for Carlsmith's mistaken identity of the surety was the result of poor judgment by a young attorney, Ms. Amy Self of Carlsmith, who did not consult with the partner Terry E. Thomason, nor did Ms. Self consult the U.S. Treasury List for approved sureties or AIG's website, nor contacted AIGTS to inquire who the surety was. See, Lawhn Dec., Ex. "7".

RHINO then argues that it is entitled to presumption that AMERICAN HOME intended to confuse Carlsmith simply because the Defendants oppose disclosure of discovery based on relevancy. That this argument is groundless is evidenced by the fact that RHINO found not a single authority to supports its position.

### III. THERE IS NO RELATION BACK BECAUSE CARLSMITH KNEW AMERICAN HOME WAS THE SURETY.

Alternatively, RHINO contends, pursuant to Federal Rules of Civil Procedure, Rule 15, that AIGTS' request for an extension to respond to the Complaint preserved the action against the defendant-surety AHAC even though the defendant-surety was not named in the original Complaint.[3]

Under the FRCP Rule 15(c), an amendment of a pleading relates back to the date of the original pleading and allows the addition of a new party if the party to be brought in

---

[3] AIGTS did indeed request an extension to respond, not for the purposes of delay, but for AIGTS to seek local counsel. Yanza Supp. Dec. Moreover, RHINO's attorneys are charged with knowledge of the jurisdictional requirements of the Miller Act, so RHINO's attorneys should have named AMERICAN HOME rather than AIGTS as a defendant. Besides more than one year passed after RHINO last supplied labor and materials when the original complaint was filed so RHINO's delay argument is misplaced.

4

by amendment, has known about the institution of the action so as not to be prejudiced and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." 15(c)(3)(B). Thus, in order to avail itself of the relation back doctrine of Rule 15(c), RHINO would have to assert that it made a mistake as to the identity of the surety.

However, if RHINO was mistaken as to which entity was <u>liable</u> on the surety bond – as opposed to the identity - then RHINO cannot avail itself of Rule 15 to avoid the operation of the one (1) year statute of limitations. A case in point is <u>Louisiana Pacific Corp. v. ASARCO, Inc.</u>, 5 F.3d 431, 434 (9th Cir. 1993), where the plaintiff sued a company named L-Bar, alleging it was the successor in interest to another company, IMP. L-Bar had bought IMP's assets. The lower court dismissed L-Bar from the case on the grounds that it was not a successor in interest to IMP.

The Ninth Circuit affirmed the trial court's denial of the plaintiff's Rule 15(c) motion to amend its complaint to include IMP as a defendant. The plaintiff argued that pursuant to Rule 15, its amendment to include IMP as a defendant should relate back to the date it initially had named L-Bar as a defendant: that date was within the statute of limitations which applied in the case. The Ninth Circuit quoted the District Court, wherein the District Court stated:

> Asarco didn't make a mistake. It knew who those parties were and made a mistake in who it determined it ought to sue under the circumstances. The mistake in Rule 15(c) has to be as to identity, and there was no mistake as to the identity of IMP.

<u>Id</u>, at 434.

The Ninth Circuit went on and stated:

> [Plaintiff] asserts, however, that it did not know it should have sued IMP. It thought L-Bar was the successor in interest to IMP and was the proper party to sue.

5

Case 1:02-cv-00008   Document 337   Filed 01/30/2004   Page 6 of 11

> This explanation does not change the fact that [plaintiff] knew IMP was the party for whose actions it sought indemnity. There was no mistake of identity, but rather of conscious choice of whom to sue.

Id, at 434.

Just as in Asarco, RHINO made no mistake as to identity between Defendant AIGTS and AHAC. It "[knew AHAC] was the party for whose actions it sought indemnity." Id. Here, RHINO knew quite well that Defendant AHAC was the actual surety. RHINO knew this from the claims form it filled out and from the copy of the bond itself. Kahn Dec., Ex. "C" and "I".

Importantly, Mr. Thomason, RHINO's lead attorney at Carlsmith, was not confused as to the identity of the surety but, knew all along the surety was AMERICAN HOME, not AIGTS. See, Yanza Supplemental Dec., Ex. "A", Thomason Depo. pp. 14-16.

Also, during the initial stages of the claims filing, Mr. Thomason wrote to AMERICAN HOME requesting a Miller Act claim form for claims filing. Kahn Dec., Ex. "A". Subsequent correspondence between Mr. Thomason and AIGTS did not provide any confusion on who the surety was [AMERICAN HOME]. All of AIGTS' letters' reference headings clearly identified the surety [AMERICAN HOME], and the last paragraph of each letter directed the reader's attention "to the above referenced surety" as AMERICAN HOME. Kahn Dec., Exs. "B", "D", "E" and "G". RHINO, therefore, knew all along the identity of the surety [AMERICAN HOME], yet sued the wrong party [AIGTS].

As further evidence of the fact that RHINO made a conscious decision, rather than mistake, naming Defendant AIGTS as a defendant in its initial Complaint, dated March 20, 2002, RHINO stated that it is a "general rule that a surety need not be joined." RHINO's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, fn. 6 at p. 8, filed August 30, 2002. Moreover, in support of its argument as to why an

6

action against Defendant AIGTS, the claims adjuster, is proper, RHINO, in its Memorandum, made an argument that clearly shows that they were well aware that Defendant AIGTS is the adjuster rather than the surety. Beginning on page 7 of their August 30, 2002 Opposition, RHINO stated that an <u>agent</u> [AIGTS] is liable or can be liable on an implied warranty of authority theory. This clearly shows that there was no <u>mistake</u> as to the identity of Defendant AIGTS and the surety Defendant AHAC; instead, it was a conscious choice as the result of poor judgment by Carlsmith to sue the claims adjuster rather than the surety, Defendant AMERICAN HOME. Thus, the Ninth Circuit case of <u>Asarco</u> is directly on point.

Finally, if RHINO had any doubts as to who it could sue, it could have named both the claims adjuster and the surety as the Court stated in <u>Rendall-Speranza v. Nassin</u>, 107 F.3d 913, 919 (U.S. App. D.C. 1997): "Nothing prevented [the plaintiff] from naming both the IFC and Nassin as defendants and pleading alternative theories of liability." RHINO consciously chose not to name both parties but chose, instead, to name only the claims adjuster.

### IV. AIGTS IS NOT A SURETY AND SHOULD NOT BE TREATED AS A SURETY.

RHINO does not dispute AIGTS is not a surety, but strangely urges the Court to treat AIGTS as a surety or as AMERICAN HOME. This argument is misplaced and should be completely rejected.

Construction of the Miler Act permits recovery only from an entity [a surety] that has issued the payment bond for the "protection of all persons supplying labor and materials in carrying out the work." 40 USC §3131(b)(2). The Miller Act does not permit recovery from an entity that did not issue the payment bond.

### V. RHINO IS ONLY ENTITLED TO THE COST OF LABOR AND MATERIALS AND PROFITS FOR LABOR AND MATERIALS ACTUALLY SUPPLIED TO THE PROJECT, I.E., DELIVERY ORDERS 1, 2 AND 7.

7

AMERICAN HOME and AIGTS agree that *Taylor Construction, Inc. v. ABT Service Corporation, Inc.*, 163 F.3d 1119 (9th Cir. 1998), allows for loss of profits as part of the "sums justly due" under the Miller Act. However, notwithstanding this position, Taylor and the Miller Act does not authorize the recovery of lost profits on work that RHINO did not perform on the Navy housing contract. The Miller Act permits RHINO to "bring a civil action on the payment bond for the amount unpaid," but RHINO is entitled only to those delivery orders where RHINO has "supplied labor or material for work described in the contract and payment for the work has not been made." §3133(a). In Taylor, the court permitted savings to be recovered because the plaintiff <u>actually completed</u> 100% of the work required under the contract. The contested issue was what compensation was "sums justly due" with the fully completed work. In this case, RHINO did not complete all the delivery orders and actually pulled all its workers from the project by the end of December 2000.

If the supplier did not furnish all the work required on the contract, he cannot recover his full amount (including lost profits over the entire contract) due under his contract from the payment bond under a Miller Act claim. This is not to say that he cannot seek to recover his entire anticipated lost profits as consequential damages in a common law contract claim that RHINO can bring against BIOGENESIS in a separate cause of action. Because RHINO has "furnished labor or materials in carrying out work" for delivery orders on only 1, 2 and 7, RHINO is entitled to one-half (½) of the profits realized on delivery orders 1, 2 and 7. RHINO is not entitled to profits on other delivery orders where RHINO did not provide labor or materials. *United States of America for the Use and Benefit of Building Rentals Corp. v. Western Casualty and Surety Co.*, 498 F.2d 335, 338 (9th Cir. 1974). Such a result would be unjust enrichment for RHINO.

## VI. THE MILLER ACT DOES NOT PROVIDE RECOVERY FOR ADMINISTRATIVE AND OVERHEAD EXPENSES AND CAPITAL EQUIPMENT EXPENDITURES.

Administrative and overhead expenses, along with capital equipment, are not covered under the Miller Act for reasons stated in the Defendants' opening brief at pages 11-12. Administrative and overhead expenses and capital equipment are neither labor nor materials under the Act.

RHINO's cited cases are not on point. <u>Taylor Construction, Inc. v. ABT Service Corporation, Inc.</u>, 163 F.3d 1119 (9th Cir. 1998), involved profits, not administrative and overhead expenses; and, <u>United States for the Use and Benefit of Woodington Electric Company, Inc. v. United Pacific Insurance Company</u>, 545 F.2d 1381 (4th Cir. 1976); and <u>United States for the Use and Benefit of D & P Corporation v. Trans America Insurance Company</u>, 881 F.Supp. 1505 (D. Kans. 1995), provided for overhead expenses when there was a delay not caused by the subcontractor. In this case, delay is not an issue. Therefore, RHINO's cited cases are not on point.

## VII. RHINO IS NOT ENTITLED TO CONSEQUENTIAL DAMAGES BECAUSE THEY ARE NOT COVERED UNDER THE MILLER ACT AS THEY ARE NEITHER LABOR NOR MATERIALS PROVIDED FOR IN CARRYING OUT THE WORK, AND NOT PART OF THE COMPENSATION AGREED UPON BY BIOGENESIS AND RHINO, NOR ALLEGED IN RHINO'S SECOND AMENDED COMPLAINT.

Consequential damages are not covered under the Miller Act because as they are not part of the compensation agreed upon by BIOGENESIS and RHINO. If consequential damages are permitted, RHINO may recover those only from BIOGENESIS and not from the surety. Also, the exhibits provided to the Court do not show the parties agreed RHINO would be entitled to consequential damages.

Consequential damages are a common law contract claim RHINO is claiming against BIOGENESIS. This claim is not alleged in the Second Amended Complaint, and therefore, RHINO should not be permitted to recover consequential damages.

**VIII. INTEREST ON PAST DUE AMOUNTS.**

The Miller Act does not permit pre-judgment interest on past due amounts. The Defendants agree that after judgment, RHINO may be entitled to interest, but only on a post judgment award, if RHINO prevails and is awarded a judgment at trial.

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully request this Honorable Court to dismiss AMERICAN HOME from the above-entitled action, as it was not named as a party within the jurisdictional requirements of the Miller Act; to dismiss AIGTS since AIGTS is not a surety, nor did AIGTS issue the Payment Bond or has ever been licensed to operate as a surety.

Should the Plaintiff survive summary judgment, the Defendants respectfully request that RHINO be only entitled to labor and materials and profits for those delivery orders worked on, Delivery Orders 1, 2 and 7; and hold that overhead, capital expenses, consequential damages, and pre-judgment interest are not recoverable under the Miller Act.

Therefore, the Defendants respectfully request the Court to enter partial summary judgment on Plaintiff's Miller Act claims.

Dated this 30th day of January, 2004.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC.** and
**AMERICAN HOME ASSURANCE COMPANY**

By: _LOUIE J. YANZA_