James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: 808 547 5151
Facsimile No.: 808 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

**UNITED STATES DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br>Plaintiff, <br><br>vs. <br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br>Defendants. | CIVIL CASE NO. 02-00008 <br><br>SUPPLEMENTAL DECLARATION OF LOUIE J. YANZA IN SUPPORT OF DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MILLER ACT CLAIMS |
| BIOGENESIS PACIFIC, INC., <br><br>Counterclaimant, <br><br>vs. <br><br>RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br>Counter-Defendant. | |

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | )<br>)<br>) |
| Cross-Claimant, | )<br>) |
| vs. | )<br>) |
| BIOGENESIS PACIFIC, INC. | )<br>)<br>) |
| Cross-Claim Defendant. | )<br>)<br>) |

I, LOUIE J. YANZA, hereby declare pursuant to 28 U.S.C. §1746, as follows:

1. I make this declaration on personal knowledge of the facts herein contained, and am competent to testify if called upon as a witness at trial of the within entitled-action.

2. I am an individual over the age of 18. I am an attorney licensed to practice law within Guam and before the U.S. District Court of Guam.

3. Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") have retained the law office of VERNIER & MAHER, LLP as local counsel in the above-entitled action.

4. Attached hereto as Exhibit "A" are true and correct copies of pertinent pages of Terry E. Thomason's transcript of his deposition taken on October 6, 2003 in the above-entitled matter.

5. On or about July 22, 2002, Mr. Stephen D. Tom and I spoke wherein Mr. Tom requested I appear as local counsel for the Defendants. Mr. Tom relayed to me that he requested Antonio L. Cortes for an extension so that Mr. Tom could locate local counsel.

2

6. Before July 22, 2002, it was my understanding that service of process on AMERICAN HOME and AIGTS was at issue, but rather than argue the issue of service, Mr. Cortes agreed to an extension until July 26, 2002 to answer or otherwise respond. We did not request and extension for purposes of delay.

I declare under penalty of perjury under the laws of Guam (6 GCA §4308) that the foregoing is true and correct.

Dated this 30r day of January, 2004, in Hagåtña, Guam.

_____
LOUIE J. YANZA

C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Pleadings\Declaration of LJY (Supplemental) in Support of Mtn for Partial SJ 012604.doc



1

```
 1                UNITED STATES DISTRICT COURT
 2                     DISTRICT OF GUAM
 3
 4   UNITED STATES OF AMERICA FOR   CIVIL CASE NO. 02-00008
     USE AND BENEFIT OF RHINO
 5   BUILDERS, INC.,
 6                Plaintiff,
 7        vs.
 8   BIOGENESIS PACIFIC, INC., AIG
     TECHNICAL SERVICES, INC. and
 9   AMERICAN HOME ASSURANCE
     COMPANY,
10
                 Defendants.
11   _____
12   BIOGENESIS PACIFIC, INC.,
13                Counterclaimant,
14        vs.
15   RHINO BUILDERS, INC., et al.,
16                Counter-Defendant.
17   AMERICAN HOME ASSURANCE COMPANY,
18                Cross-Claimant,
19        vs.
20   BIOGENESIS PACIFIC, INC.,
21                Cross-Claim
                  Defendant.
22   _____
23
24           DEPOSITION OF TERRY E. THOMASON
25
```

RALPH ROSENBERG COURT REPORTERS, INC.
(808) 524-2090

Exhibit A

1     Taken on behalf of Defendants, at the Law Offices of
2     Oliver, Lau, Lawhn, Ogawa & Nakamura, 600 Ocean View Center,
3     707 Richards Street, Honolulu, Hawaii, commencing at 2:00
4     p.m., on Monday, October 6th, 2003, pursuant to Notice.
5
6
7
8         BEFORE:          HEDY COLEMAN, CSR NO. 116
                           Notary Public, State of Hawaii
9                          Certified Shorthand Reporter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

14

1 to have a viable invoice claim, so I asked for a new person,

2 I was assigned Miss Self.

3     Q    Do you remember the month or time frame when this

4 happened?

5     A    No, I'm sorry, I do not.

6     Q    Did you ask Miss Self to contact American Home

7 Assurance Company or AIG Technical Services?

8     A    I asked Miss Self to contact the contracting

9 officer to obtain the surety's name. When circumstances led

10 me to leave that BioGenesis, the prime contractor, was not

11 going to be willing to pay Rhino for the work it performed,

12 so I asked her to contact the contracting officer.

13     Q    Did she do that?

14     A    Yes, she did.

15     Q    And what did she report back to you?

16     A    She received a fax transmission -- transmittal of

17 the -- of the identification of the surety.

18     Q    Did she get a copy of the Miller Act bond as well

19 at that time?

20     A    I never -- I can't recall the timing. The first

21 thing we got was the identification of the surety. At some

22 point soon thereafter, we received the bond documentation.

23     Q    Do you recall what the name of the surety was that

24 was included in the fax transmission from the contracting

25 officer?

1     A     My recollection, it was American Home Assurance.

2     Q     There's a declaration that Amy Self prepared in
3 this case. It might help us short cut this a little bit if
4 I can find it.

5         Did you ask Miss Self to contact the
6 surety and find out what the procedures for making
7 the claim on the bond would be?

8     A     I asked her to contact the surety to obtain a
9 Proof of Claim form and provide -- and any instructions on
10 submission.

11     Q     And to the best of your knowledge, did she do
12 that?

13     A     To the best of my knowledge, she did.

14     Q     Did she report back to you the results of the
15 communications that she had with the surety?

16     A     She -- she reported to me in a series of steps the
17 progression of her efforts to obtain the forms I had asked
18 her to get. Eventually, she told me that she had received
19 the Proof of Claim form and that she was preparing the
20 backup documentation. My recollection, it was fairly quick
21 between when I asked her and when she had actually received
22 the form.

23     Q     And to put this in perspective vis-a-vis the
24 submission claim, was this prior to your preparation of what
25 has been entitled the Notice of Claim as opposed to Proof of

1 Claim form?

2     A    I honestly can't recall. The normal sequence was
3 we would be given a notice, and then we would submit the
4 proof.

5     Q    Did she report to you anything that indicated to
6 you at that point in time that she believed the identity of
7 the surety was AIG Technical Services?

8     A    I never understood that the surety was anyone
9 other than American Home Assurance through that entire time.
10 I do not recall anybody raising the name until we
11 actually -- I signed a letter that went to AIG Technical
12 Services requesting reconsideration of their action on the
13 claim.

14     Q    I found the affidavit.

15     A    Okay.

16     Q    Well, take a second and just peruse it, let me
17 know when you're done.

18     A    I've reviewed it.

19     Q    Have you ever seen --

20     MR. GRIMMER: Wait. Let me just object because it's
21 not complete.

22     (Whereupon, Exhibit 1 was marked
23     for identification.)

24 BY MR. LAWHN:

25     Q    I think we're going to find that throughout a

RALPH ROSENBERG COURT REPORTERS, INC.
(808) 524-2090

Case 1:02-cv-00008   Document 338   Filed 01/30/2004   Page 8 of 10

1   Q    Do you recall receiving Exhibit 8?

2   A    Yes.

3   Q    This is dated June 21st, 2002. Do you see that?

4   A    Yes.

5   Q    By that time the complaint had already been filed?

6   A    Yes.

7           (Whereupon, Exhibit 9 was marked

8           for identification.)

9   BY MR. LAWHN:

10   Q    The Complaint, according to the one that we have, was filed on March 20, Guam time, 2002, and it names AIG Technical Services as the surety. Who drafted Exhibit 9?

13   A    My recollection is that Miss Self and Mr. Calvo worked together to write the complaint.

15   Q    Mr. Calvo's in Guam, isn't he?

16   A    Yes, he is.

17   Q    Was Miss Self in Guam at the time?

18   A    No, she was in Honolulu.

19   Q    How did they communicate with each other, assuming that they did?

21   A    We frequently spoke by telephone and with using e-mail. My understanding was that they were working by telephone and e-mail.

24   Q    Was the Complaint reviewed by you prior to its being filed?

41

1    A    My recollection is that I showed Miss Self Moore's

2    Federal Practice Form for the Miller Act claim.

3    MR. CORTES: Could you just answer the question. I'm

4    sorry, just -- the question was did --

5    A    Did I review the form?

6    MR. CORTES: No. What was your question again, please?

7    BY MR. LAWHN:

8    Q    The question was did you review Exhibit 9 prior to

9    Exhibit 9 being filed in the U.S. District Court of Guam?

10    A    I do not recall.

11    Q    Were you aware at the time that Exhibit 9 was

12    being drafted that AIG Technical Services, Inc. was being

13    named or identified as the surety in the Complaint?

14    MR. CORTES: I'll instruct him not to answer; that's

15    attorney thought process in the course of rendering legal

16    services for the client.

17    BY MR. LAWHN:

18    Q    Did you instruct anybody to name AIG Technical

19    Services, Inc. as a defendant in Exhibit 9?

20    MR. CORTES: Same objection, same instruction.

21    BY MR. LAWHN:

22    Q    When was the first time you became aware that AIG

23    Technical Services, Inc. had been identified as the surety

24    in Exhibit 9?

25    A    I'm going to answer. When I saw the file form.