James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: (808) 547 5151
Facsimile No.: (808) 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> **DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND ORDER MODIFYING SUBPOENA** |
| BIOGENESIS PACIFIC, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendant. | |

**ORIGINAL**

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | )<br>)<br>) |
| Cross-Claimant, | )<br>) |
| vs. | )<br>) |
| BIOGENESIS PACIFIC, INC. | )<br>)<br>) |
| Cross-Claim Defendant. | ) |

## I. INTRODUCTION

The Plaintiff RHINO BUILDERS, INC.'s ("RHINO") is requesting the Court to forbid Carlsmith Ball, LLP's ("Carlsmith") Rule 30(b)(6) designee from testifying on matters that occurred after March 20, 2002, the date the original Complaint was filed.

RHINO reasons that it did not waive the attorney-client and work-product privileges for those matters occurring after March 20, 2002. RHINO forgets that it has alleged that the Defendants somehow induced Carlsmith to name AIGTS as a defendant, rather than AMERICAN HOME. Second Amended Complaint, ¶37. For that reason, Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") (collectively "Defendants") respectfully request the Court to deny RHINO's motion and to permit the Defendants to question the deponent on the events after March 20, 2002 on the grounds that such events are relevant to the issues at hand.

## II. ARGUMENT

The foundation for RHINO's bad faith allegation the Defendants induced Carlsmith to name AIGTS, rests in the correspondence between AIGTS and RHINO's former counsel, Carlsmith. Because RHINO is alleging an estoppel claim, knowledge of the Carlsmith lawyers are the central issue of this dispute. *WLIG-TV v. Cablevision Systems Corp.*, 879 F.Supp. 229 (E.D. N.Y. 1994). However, RHINO's instant motion is

to prevent disclosure of events occurring after March 20, 2002.

To defend against RHINO's bad faith claim, Defendants also require information on facts occurring after March 20, 2002 on the grounds that prejudice would result to the Defendants by their inability to test whether Carlsmith's supposed reliance on supposed representations were reasonable.

Therefore, Carlsmith's knowledge of the misrepresentation is central. In this Court's December 29, 2003 Order, the Court held:

> The Court finds that Rhino has put into issue its counsel's impressions [as] [sic] to its claim of bad faith. If Rhino wishes to litigate this claim, then it must waive its privileges to the extent necessary to give the Defendants a fair opportunity to defend against it.

Order, filed December 29, 2003.

Nothing in the Court's order, or the Defendants' previous moving papers to compel disclosure, limited disclosure to facts occurring before March 20, 2002. Events after March 20, 2002 are equally vital to the Defendants' defense.

RHINO either skirts the issue or forgets that it has to call the Carlsmith lawyers (particularly Amy G. Self) to testify to events before and after March 20, 2002. The Defendants, therefore, are entitled to question the Carlsmith attorneys on the following:

1. How was Carlsmith misled;
2. What actions they undertook before and after the Complaint was filed to verify who the surety was;
3. When did Carlsmith realize they were misled;
4. After (assuming RHINO's allegations are true) Carlsmith discovered they were misled did they (as witnesses) advise RHINO's present counsel they were misled.

The information sought will destroy or considerably weaken the foundation of

RHINO's bad faith allegations. This information is vital because discovery may establish Carlsmith did nothing after the Complaint was filed because they were not misled to believe AIGTS was the surety, or that they made the conscious decision, albeit a poor one, to name AIGTS, and not AMERICAN HOME.

No other means are available in obtaining the information the Defendants seek. RHINO's reliance on Ms. Self's Declaration supports the Defendants' case for discovery. Ms. Self declared only that communications between herself and the Defendants led her to believe that AMERICAN HOME and AIGTS were part of the same company, <u>because they are owned by American International Group</u>. Yanza Dec., Ex. "B". Nothing in the Self Declaration, however, comes even remotely close to have Ms. Self actually say or state that the correspondence between herself and the Defendants, led her to believe that AIGTS was the surety. Yanza Dec., Ex. "B". Thus, if Carlsmith did nothing to verify who the surety was after the Complaint was filed, or did not know they were allegedly misled, then the issue turns to who told and how did Carlsmith know they were misled, and when? Also, the Defendants should be entitled to question whether Ms. Self drafted the declaration herself or, if other persons drafted the declaration. The Declaration will be certainly used at trial by the Defendants to assist the Defendants in cross-examining Ms. Self.

Carlsmith is not RHINO's present counsel's client, so discussions between Carlsmith and Mr. Cortes, only regarding the alleged inducement, Carlsmith's reliance, and actions Carlsmith undertook to verify who the surety was [even after March 20, 2002], should be disclosed.

RHINO then alleges the Defendants have not, and will not, comply with the Court's December 29, 2003 order. Although the Defendants do not agree with RHINO's contentions, this issue is moot as the Defendants have amended their Notice of

Deposition and deposition questions to specifically advise the deponent and the court reporter not to disclose the transcripts to any party, and to file the fully executed deposition transcript, including changes and corrections, if any, for the Court's in camera review.

## CONCLUSION

RHINO has raised the attorney-client and work product privileges at issue as evidence in this case, thereby waiving said privileges. *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). By claiming AIGTS somehow "induced" Carlsmith to name AIGTS as a defendant instead of AMERICAN HOME, RHINO has waived the attorney-client and work product privileges. Discovery of such information extends to events after the March 20, 2002 Complaint was filed.

Therefore, the Defendants respectfully request the Court to deny the Plaintiff's Motion for a Protective Order and Order Modifying Subpoena, and permit the Defendants to proceed with the present questions posed in its Amended Notice for Deposition and Amended Questions for the Rule 30(b)(6) Designee.

Dated this 4th day of February, 2004.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC.** and
**AMERICAN HOME ASSURANCE COMPANY**

By: _____
**LOUIE J. YANZA**

C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS\AIG\Pleadings\Oppo to Rhino Mtn for Protective Order 020204.doc