1  James Lawhn
   **OLIVER LAU LAWHN OGAWA & NAKAMURA**
2  **707 Richard Street, Suite 600**
   **Honolulu, Hawaii 96813**
3  Telephone No.: (808) 533-3999
   Facsimile No.: (808) 533-0144

4

5  Stephen D. Tom
   **WHITE & TOM**
   **820 Mililani Street, Suite 711**
6  **Honolulu, Hawaii 96813-2972**
   Telephone No.: 808 547 5151
7  Facsimile No.: 808 599 4517

8  Louie J. Yanza
   **VERNIER & MAHER, LLP**
9  **115 Hesler Place, Ground Floor**
   **Governor Joseph Flores Building**
10 Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 **Attorney for Defendants AIG TECHNICAL SERVICES, INC. and**
   **AMERICAN HOME ASSURANCE COMPANY**

13

FILED
DISTRICT COURT OF GUAM
FEB 04 2004
MARY L. M. MORAN
CLERK OF COURT

348

## UNITED STATES DISTRICT COURT OF GUAM

14

15 UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
   AND BENEFIT OF RHINO BUILDERS, INC., )
16                                       ) **DECLARATION OF LOUIE J. YANZA IN**
            Plaintiff,                   ) **SUPPORT OF DEFENDANTS AIG**
17          vs.                          ) **TECHNICAL SERVICES, INC. AND**
                                         ) **AMERICAN HOME ASSURANCE**
18 BIOGENESIS PACIFIC, INC., AIG )       **COMPANY'S OPPOSITION TO**
   TECHNICAL SERVICES, INC. and )        **PLAINTIFF'S MOTION FOR**
19 AMERICAN HOME ASSURANCE )             **PROTECTIVE ORDER AND ORDER**
   COMPANY,                              ) **MODIFYING SUBPOENA**
20                                       )
            Defendants.                  )
21 _____)
   BIOGENESIS PACIFIC, INC.,             )
22                                       )
            Counterclaimant,             )
23          vs.                          )
                                         )
24 RHINO BUILDERS, INC., MICHAEL )
   O'CONNELL, MICHAEL DANFORTH, AND )
25 JOHN DOES 1-10,                       )
                                         )
            Counter-Defendant.           )
   _____)

1

**ORIGINAL**

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| Cross-Claim Defendant. | ) |

I, LOUIE J. YANZA, hereby declare pursuant to 28 U.S.C. §1746, as follows:

1.  I make this declaration on personal knowledge of the facts herein contained, and am competent to testify if called upon as a witness at trial of the within entitled-action.

2.  I am an individual over the age of 18. I am an attorney licensed to practice law within Guam and before the U.S. District Court of Guam.

3.  Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") have retained the law office of VERNIER & MAHER, LLP as local counsel in the above-entitled action.

4.  Attached hereto as Exhibit "A" is a true and correct copy of the Amended Notice of Deposition (Pursuant to Rule 30(b)(6) – Carlsmith Ball, LLP) on Written Questions (Fed. R. Civ. P. 31(a)) – Amended Questions for Deposition of Rule 30(b)(6) Designee (Carlsmith Ball, LLP) (Fed. R. Civ. P. 31(a)).

5. Attached hereto as Exhibit "B" is a true and correct copy of the Submission of Affidavit of Amy G. Self, filed in the above-entitled action on September 4, 2002.

I declare under penalty of perjury under that the foregoing is true and correct.

Dated this 4th day of February, 2004, in Hagåtña, Guam.

_____
LOUIE J. YANZA

C:\MarieBackup\My Documents\CLIENTS (NON-GIA)\USA-Rhino v BIOGENESIS-AIG\Pleadings\Declaration of LJY - Oppo to Mtn for Protective Order 020304.doc

FILED
DISTRICT COURT OF GUAM
JAN 29 2004
MARY L. M. MORAN
CLERK OF COURT

1 | James Lawhn
  | OLIVER LAU LAWHN OGAWA & NAKAMURA
2 | 707 Richard Street, Suite 600
  | Honolulu, Hawaii 96813
3 | Telephone No.: (808) 533-3999
  | Facsimile No.: (808) 533-0144
4 |
  | Stephen D. Tom
5 | WHITE & TOM
  | 820 Mililani Street, Suite 711
6 | Honolulu, Hawaii 96813-2972
  | Telephone No.: (808) 547 5151
7 | Facsimile No.: (808) 599 4517
8 | Louie J. Yanza
  | VERNIER & MAHER, LLP
9 | 115 Hesler Place, Ground Floor
  | Governor Joseph Flores Building
10 | Hagåtña, Guam 96910
  | Telephone No.: (671) 477-7059
11 | Facsimile No.: (671) 472-5487
12 | Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
  | AMERICAN HOME ASSURANCE COMPANY
13 |

RECEIVED
JAN 29 2004
CALVO AND CLARK, LLP

Cøpies
RECEIVED 1/27/04 @ 2:51 Pm

### UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | CIVIL CASE NO. 02-00008 |
| Plaintiff, | **AMENDED NOTICE OF DEPOSITION (PURSUANT TO RULE 30(b)(6) – CARLSMITH BALL, LLP) ON WRITTEN QUESTIONS (FED. R. CIV. P. 31(a))** |
| vs. | |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, | |
| | **DATE: FEBRUARY 24, 2004** |
| | **TIME: 10:00 a.m.** |
| Defendants. | |
| BIOGENESIS PACIFIC, INC., | |
| Counterclaimant, | |
| vs. | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | |
| Counter-Defendant. | |

RECEIVED
JAN 29 2004
BERMAN O'CONNOR
MANN & SHKLOV
KERLEY
RECEIVED JAN 29 2004
AOB @ 3:30p

Exhibit A

1

| AMERICAN HOME ASSURANCE COMPANY | ) |
| | ) |
| Cross-Claimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| BIOGENESIS PACIFIC, INC. | ) |
| | ) |
| Cross-Claim Defendant. | ) |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") (collectively referred to as "Defendants") through counsel, VERNIER & MAHER, LLP, by Louie J. Yanza, will take the deposition of CARLSMITH BALL, LLP on the attached written questions.

The deposition will take place on **Tuesday, the 24ᵗʰ day of February, 2004 at 10:00 o'clock a.m.**, at CARLSMITH BALL, LLP, Suite 401, Bank of Hawaii Building, 134 W. Soledad Avenue, Hagåtña, Guam 96910. The deposition will be taken before a certified shorthand reporter who will record the deposition, stenographically.

THIS NOTICE NAMES AS THE DEPONENT Carlsmith Ball, a Limited Liability Partnership. Under the provisions of Rule 30(b)(6), Carlsmith Ball, LLP is required to identify and produce for deposition one or more attorneys, officers, directors, managing agents, or other agents and employees who consent to testify on its behalf and are the officers, directors, agents, or employees most knowledgeable as to the following matters:

1.    The person most knowledgeable concerning the preparation and submission of RHINO BUILDERS, INC.'s claims to AMERICAN HOME

1     ASSURANCE COMPANY on October 22, 2001 and subsequent claims

2     thereafter;

3  2.  The person most knowledgeable concerning legal services performed for

4     RHINO BUILDERS, INC., in RHINO BUILDERS, INC.'s claims against

5     BIOGENESIS PACIFIC, INC., AMERICAN HOME ASSURANCE

6     COMPANY and AIG TECHNICAL SERVICES, INC., prior to

7     CARLSMITH BALL, LLP's withdrawal from representing RHINO

8     BUILDERS, INC.

9
10  3.  The person most knowledgeable concerning letters addressed to RHINO

11     BUILDERS, INC., regarding CARLSMITH BALL, LLP's withdrawal from

12     representing RHINO BUILDERS, INC., on RHINO BUILDERS, INC.'s

13     claims against BIOGENESIS PACIFIC, INC., AMERICAN HOME

14     ASSURANCE COMPANY and AIG TECHNICAL SERVICES, INC.

15  4.  The person most knowledgeable concerning the filing of the Plaintiff

16     RHINO BUILDERS, INC.'s Complaint on March 20, 2002.

17  5.  The person most knowledgeable concerning communications between

18     the Carlsmith Ball, LLP ("Carlsmith") lawyers regarding the correct

19     corporate identity of the surety.

20
21  6.  The person most knowledgeable concerning factual research and activity

22     of identify the correct identity of the surety.

23  7.  The person most knowledgeable concerning the drafting of the

24     Complaint filed on March 20, 2002.

25

8.   The person most knowledgeable concerning direction, guidance, and instructions to Amy G. Self regarding factual research into the correct corporate identity of the surety.

Dated this 29th day of January, 2004.

VERNIER & MAHER, LLP
Attorneys for Defendants
AIG  TECHNICAL  SERVICES,  INC.  and
AMERICAN HOME ASSURANCE COMPANY

By: _____
LOUIE J. YANZA

C:\MarieBackup\My  Documents\CLIENTS  (NON-GIA)\USA-Rhino  v  BIOGENESIS-AIG\Pleadings\Amended  Notice  of
Deposition on Written Questions (Rule 30b6) 012904.doc

1  James Lawhn
   OLIVER LAU LAWHN OGAWA & NAKAMURA
2  707 Richard Street, Suite 600
   Honolulu, Hawaii 96813
3  Telephone No.: (808) 533-3999
   Facsimile No.: (808) 533-0144

4
   Stephen D. Tom
5  WHITE & TOM
   820 Mililani Street, Suite 711
6  Honolulu, Hawaii 96813-2972
   Telephone No.: (808) 547 5151
7  Facsimile No.: (808) 599 4517

8  Louie J. Yanza
   VERNIER & MAHER, LLP
9  115 Hesler Place, Ground Floor
   Governor Joseph Flores Building
10 Hagåtña, Guam 96910
   Telephone No.: (671) 477-7059
11 Facsimile No.: (671) 472-5487

12 Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
   AMERICAN HOME ASSURANCE COMPANY

13            UNITED STATES DISTRICT COURT OF GUAM

14 UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
15 AND BENEFIT OF RHINO BUILDERS, INC., )
                                        )
16            Plaintiff,                )
                                        ) AMENDED      QUESTIONS     FOR
         vs.                            ) DEPOSITION   OF   RULE   30(b)(6)
17                                      ) DESIGNEE (CARLSMITH BALL, LLP)
   BIOGENESIS   PACIFIC,   INC.,    AIG ) (FED. R. CIV. P. 31(a)(3))
18 TECHNICAL    SERVICES,    INC.    and )
   AMERICAN      HOME      ASSURANCE     )
19 COMPANY,                             )
                                        )
20            Defendants.               )
   _____)
                                        )
21 BIOGENESIS PACIFIC, INC.,            )
                                        )
            Counterclaimant,            )
22       vs.                            )
                                        )
23 RHINO   BUILDERS,   INC.,   MICHAEL )
   O'CONNELL, MICHAEL DANFORTH, AND )
24 JOHN DOES 1-10,                      )
                                        )
25            Counter-Defendant.        )
   _____)

                          1

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) |
| Cross-Claimant, | ) ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) |
| Cross-Claim Defendant. | ) |

Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") (collectively referred to as "Defendants") through counsel, VERNIER & MAHER, LLP, by Louie J. Yanza, request the deposition officer to place CARLSMITH BALL, LLP under oath, to pose the following questions, and to record their answers to these questions at the deposition described in the attached Notice of Deposition.

Pursuant to this Court's Order, filed on December 29, 2003, the fully executed deposition transcript, including any changes and/or corrections, must be filed and sealed with the U.S. District Court of Guam, for the Court's in camera review. No party to this action shall be provided a copy of the deposition transcript, including any changes and/or corrections. See, Order regarding disclosure.

If there are two (2) or more persons designated to testify, please place each person under oath, and pose to each person the following questions:

1. Are you the person assigned to testify to those matters in the Notice of Deposition and the Deposition Subpoena pursuant to Rule 30(b)(6)?

2. Please state your full name.

3. What is your residential address?

4. What is your business address?

5. How long have you been employed with Carlsmith Ball, LLP ("Carlsmith")?

2

6. When were you first employed by Carlsmith?

7. When were you first licensed to practice law in the state of Hawaii?

8. Attached hereto as Exhibit "A" is a copy of the Affidavit of Amy G. Self.

   a. Who drafted the affidavit and what role did you have in drafting, revising or reviewing the affidavit?

   b. When was this affidavit drafted?

   c. With regard to paragraph 19 of the affidavit, did you tell Ms. Self that AMERICAN HOME and AIGTS was the same corporation?

   d. Did you tell Ms. Self that AIGTS was the surety for the Plaintiff's claim?

   e. If you did tell Ms. Self that AIGTS was the surety for the Plaintiff's claim, what led you to conclude AIGTS was the surety?

9. Attached hereto as Exhibit "B" is a January 9, 2002 letter from Carlsmith to Mark Titherington of AMERICAN HOME, signed by Ms. Self.

   a. Prior to this letter being sent to Mr. Titherington, did you have the opportunity to review the letter?

   b. Who drafted the letter?

   c. Prior to the letter being sent to Mr. Titherington, did you discuss the contents of the letter with Ms. Self?

   d. On January 9, 2002, what was your understanding as to the identity of the surety?

10. Attached hereto as Exhibit "C" is an August 15, 2001 letter from Mr. Terry E. Thomason to Ms. Bennett Terlaje, the U.S. Naval Contracting Officer.

    a. Who drafted the letter?

3

1

    b.  Was a purpose of the letter to acquire the identity of the surety?

2

    c.  Subsequently, did Ms. Terlaje, or any other U.S. Naval Contracting

3

        Officer, provide you with a copy of the Payment Bond?

4

    d.  Subsequently, did Ms. Terlaje, or any other U.S. Naval Contracting

5

        Officer, inform you that the surety was AMERICAN HOME?

6

    e.  Subsequently, did Ms. Terlaje, or any other U.S. Naval Contracting

7

        Officer, inform you that the surety was AIGTS?

8

    f.  When were you first in possession of the Payment Bond?

9

11. Attached hereto as Exhibit "D" is a copy of the Payment Bond.

10

    a.  Do you recognize this document?

11

    b.  Prior to the Complaint being filed on March 20, 2002, did you have the

12

        opportunity to review the Payment Bond?

13

    c.  Who else in your law firm, Carlsmith, reviewed the Payment Bond,

14

        other than yourself?

15

    d.  Did Ms. Self also review the Payment Bond?

16

    e.  Did you read the terms and conditions of the Payment Bond and who

17

        was named as the surety on the Payment Bond?

18

12. Attached hereto as Exhibit "E" is an October 22, 2001 letter from Carlsmith to

19

AMERICAN HOME.

20

    a.  Do you recognize this document?

21

    b.  Did Mr. Thomason draft this letter?

22

    c.  Why was the letter addressed to AMERICAN HOME?

23

    d.  Who told you the surety was AMERICAN HOME?

24

25

4

13. Attached hereto as Exhibit "F" is an October 30, 2001 letter from AIGTS to Carlsmith.

    a. Do you recognize this document?

    b. Did you review this letter prior to the Complaint being filed on March 20, 2002?

    c. Prior to the Complaint being filed, what relevance, if any, did you attach to AIGTS' specific identification of the surety as AMERICAN HOME on the reference heading sent by AIGTS to Carlsmith?

14. Attached hereto as Exhibit "G" is a January 17, 2002 letter from AIGTS to Carlsmith.

    a. Do you recognize this document?

    b. Did you review this document prior to filing the Complaint?

    c. Did you review this document prior to drafting the Complaint?

    d. What relevance, if any, did you attach to AIGTS' specific identification of the surety as AMERICAN HOME on the reference heading sent by AIGTS to Carlsmith?

15. Attached hereto as Exhibit "H" is a February 21, 2002 letter from AIGTS to Carlsmith.

    a. Do you recognize this document?

    b. Did you review this letter prior to drafting the Complaint?

    c. Did you review this letter prior to filing the Complaint?

d. What relevance, if any, did you attach to AIGTS' specific identification of the surety as AMERICAN HOME on the reference heading sent by AIGTS to Carlsmith?

16. Attached hereto as Exhibit "I" is a March 11, 2002 letter from Carlsmith, signed by Ms. Self, to AIGTS.

    a. Who drafted this letter?

    b. Were the contents of this letter discussed with Mr. Thomason prior to sending the letter to AIGTS?

    c. What were the contents of that discussion?

    d. At that time, was there any confusion as to the identity of the surety?

    e. If so, what led you to believe, or be confused, that the surety was AIGTS?

    f. Did anyone from AIGTS or AMERICAN HOME specifically advise you that AIGTS, not AMERICAN HOME, was the surety?

    g. If so, who advised you?

17. Attached hereto as Exhibit "J" is a June 21, 2002 letter from AIGTS to Carlsmith.

    a. Was this letter forwarded to Mr. Antonio L. Cortes, after Carlsmith withdrew from representing the Plaintiff?

    b. Did anyone in Carlsmith advise Mr. Cortes, after Carlsmith's withdrawal and after Mr. Cortes undertook representation of the Plaintiff, that AIGTS was not the correct named defendant in this case?

1    18. Attached hereto as Exhibit "K" is a copy of the Complaint filed on March 20,

2        2002.

3        a. Did you draft or assist in drafting the Complaint?

4        b. Before the March 20, 2002 Complaint was filed, what documents did

5           you have in your possession, including correspondence and

6           memoranda that led you to conclude that AIGTS was the surety in this

7           matter.

8        c. Please name the individual(s) who provided those documents to you.

9

10        d. What relevance, if any, did you attach to the Payment Bond when the

11           Complaint was drafted?

12        e. What relevance, if any, did you attach to the October 31, 2001, January

13           17, 2002 and February 21, 2002 letters from AIGTS when the

14           Complaint was drafted?

15    19. When was Carlsmith first in possession of the Payment Bond issued in this

16        case?

17    20. Did you ever contact, or have any communications, with AMERICAN HOME

18        or AIGTS?

19    21. If so, please identify the individual(s) you spoke with from AMERICAN HOME

20        or from AIGTS.

21    22. During those conversations or communications with AMERICAN HOME

22

23        and/or AIGTS, did anyone from AMERICAN HOME or AIGTS actually

24        communicate to you that AIGTS was the surety?

25    23. Please identify the individual(s) that advised you AIGTS was the surety.

24. Before the Complaint was filed, did you ever speak with Ms. Amy G. Self regarding the actual identity of the surety?

25. If so, what was discussed between you and Ms. Self?

26. Please state the date and nature of activity and identity of the attorney performing any investigation undertaken to ascertain the correct identity of the surety prior to the Complaint being filed in this matter.

27. Prior to the Complaint being filed, what coordination, if any, was done within the Carlsmith firm to provide Ms. Self, and the Carlsmith attorneys in Guam in charge of causing the Complaint to be filed, naming the correct identity of the surety.

28. Prior to the Complaint being filed, describe the date, substance and participants for any discussions among the Carlsmith attorneys with regard to naming AMERICAN HOME as the surety in the Complaint either alone or along with AIGTS; and calling AIGTS and seeking clarification as to the correct identity of the surety.

29. After the Complaint was filed, and before Carlsmith withdrew as counsel for the Plaintiff, describe the date, substance and participants in any discussions among the Carlsmith attorneys regarding the following:

    a. AIGTS having been named the surety instead of AMERICAN HOME;

    b. Amending the Complaint to name AMERICAN HOME as the surety; and

    c. Advising the Plaintiff's new counsel, Antonio L. Cortes, that AMERICAN HOME was not named as a defendant.

30. Before the Complaint was filed, were there any discussions among the Carlsmith attorneys on the following:

    a. Actually contacting AIGTS and inquiring who was the surety;

    b. Conducting any research on the U.S. Treasury List to determine whether AMERICAN HOME or AIGTS were approved by the U.S. Treasury to issue Miller Act bonds;

    c. Was there any research on American International Group's website to determine what AMERICAN HOME or AIGTS was; and

    d. Was there any research conducted in Guam, and/or in Hawaii, to determine whether AMERICAN HOME or AIGTS were licensed sureties in Guam and/or Hawaii.

    e. With regard to questions 30 (a) – (d) above, please identify those attorneys involved.

31. Who advised Antonio L. Cortes, the Plaintiff's present counsel, that Carlsmith was led to believe that AIGTS was the corporate surety?

32. When was this brought to Mr. Cortes' attention?

33. Who brought the matter to Mr. Cortes' attention?

Dated this 29th day of January, 2004.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY**

By: LOUIE J. YANZA

ANTONIO L. CORTÉS
THEODORE S. CHRISTOPHER
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

*F I L E D*
DISTRICT COURT OF GUAM

SEP 04 2002

MARY L. M. MORAN
CLERK OF COURT

Attorneys for Plaintiff Rhino Builders, Inc.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> BIOGENESIS PACIFIC, INC. and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **SUBMISSION OF AFFIDAVIT OF AMY G. SELF** |

Plaintiff Rhino Builders, Inc. submits herewith the original of the

Affidavit of Amy G. Self attached as Exhibit E to the Declaration of Ann D. Borja

filed on August 30, 2002.

Respectfully submitted this 3rd day of September 2002.

LAW OFFICE OF ANTONIO L. CORTÉS
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
THEODORE S. CHRISTOPHER

R E C E I V E D

McKEOWN . VERNIER .
PRCE. MAHER
DATE: 9/10/02
TIME: 3:25 pm
BY: _____

Exhibit
A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC.<br><br>       Plaintiff,<br><br>vs.<br><br>BIOGENESIS PACIFIC, INC.; AIG TECHNICAL SERVICES, INC.,<br><br>       Defendants. | CIVIL NO. 02-00008<br><br>AFFIDAVIT OF AMY G. SELF |

## AFFIDAVIT OF AMY G. SELF

| | | |
|---|---|---|
| STATE OF HAWAII | ) | |
| | ) | SS: |
| CITY AND COUNTY OF HAWAII | ) | |

AMY G. SELF, being first duly sworn on oath, deposes and says:

1.    All statements made in this affidavit are based on my personal knowledge unless otherwise expressly stated.

2.    I am an attorney with Carlsmith Ball LLP, and I am one of the attorneys who previously assisted RHINO BUILDERS, INC. ("Rhino") in pursuing payment for work performed on Rhino's subcontract with Biogenesis Pacific, Inc.

3.    Pursuant to our assistance to Rhino, on or about October 2001, I called long distance directory assistance to obtain the telephone number for American Home Assurance Company, the company named as Surety on United States Navy Payment Bond No. 20-80-88.

2020166.1.053705-00001

4. The telephone number given to me by the operator for the American Home Assurance Company listing was (415) 836-2700.

5. When I dialed the telephone number for American Home Assurance Company, the person answered "American International Companies."

6. When I explained that I was calling for American Home Assurance Company, the person assured me that American Home Assurance Company was part of American International Companies.

7. After establishing that I had in fact dialed the correct number, I requested a Miller Act Claim Form and was transferred to American International Companies' legal department.

8. After being connected to various people, one of whom was an individual by the name of Joe Mauler, I was told that their office in New York, AIG Technical Services, Inc., handled all of the claims against surety bonds for American International Companies and was given the following telephone number: (212) 458-1264.

9. After dialing the telephone number given to me by American International Companies for its office, AIG Technical Services, Inc., I was again connected to various people in response to my request for a Miller Act Claim form.

10. Finally, I was connected to Mark Titherington, a claims analyst for AIG Technical Services, Inc., who indicated that he was the person who would handle a claim against the surety for Biogenesis Pacific, Inc.

11. Mr. Titherington informed me that before he would send us a Miller Act Proof of Claim form, we would first have to send a Notice of Nonpayment to all parties.

12. Pursuant to the Miller Act 40 U.S.C. Section 270(a) to 270(e) and Mr. Titherington's instructions, on or about October 22, 2001, we sent a Notice of Claim On Bond (naming American Home Assurance Company as the bonding company) to Mr. Titherington, BioGenesis Pacific, Inc., and Bennett Terlaje, the U.S. Navy Contracting Officer, via certified mail, return receipt requested.

13. Prior to sending the Notice of Claim On Bond to Mr. Titherington, I prepared a letter for Terry E. Thomason's signature, addressed to Mark Titherington at American Home Assurance Company, 175 Water Street, 6th Floor, New York, New York 10038, to which we attached the Notice of Claim On Bond.

14. A true and correct copy of the letter to Mark Titherington, with the attached Notice of Claim On Bond and Certified Mail Receipt, is attached hereto and incorporated herein as Exhibit 1.

15. On or about November 6, 2001, we received a Proof of Claim form from Mr. Titherington, attached to a letter from Mr. Titherington.

16. On or about January 9, 2002, we sent the completed Proof of Claim form, executed by Michael O'Connell, President of Rhino Builders, Inc., to Mr. Titherington via certified mail, return receipt requested.

17. On or about the last week of February, 2002, we received notice from Mr. Titherington that Rhino Builders, Inc.'s Miller Act Claim had been denied by AIG Technical Services, Inc.

18. On or about March 20, 2002, we filed a Complaint against BioGenesis and AIG Technical Services, Inc. in the United States District Court, District of Guam.

19.    Throughout the foregoing process, Mr. Titherington and everyone I spoke to at American International Companies and AIG Technical Service, Inc. led me to believe that American Home Assurance Company and AIG Technical Services were all part of the same corporation, American International Companies.

20.    On or about August 23, 2002, I called the original number I was given for American Home Assurance Company and again, the person who answered verified that American Home Assurance and AIG Technical Service, Inc. are owned by American International Companies.

FURTHER AFFIANT SAYETH NAUGHT.


_____
AMY G. SELF


Subscribed and sworn to before me this
21st day of ___August___, 2002.


_____
Natalie A. Pacheco
Notary Public, State of Hawaii
My Commission expires: _1-24-06_

NATALIE PACHECO
NOTARY
PUBLIC
STATE OF HAWAII

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500    FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL  TET@CARLSMITH.COM

OUR REFERENCE NO.
053785-00001

## October 22, 2001

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mark Titherington
American Home Assurance Company
175 Water Street, 6th Floor
New York, New York 10038

Re:  Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on
Contract No. N62766-99-D-0425

Dear Mr. Titherington:

On behalf of our client, Rhino Builders, Inc., we are forwarding this enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its rights under the Miller Act. Contrary to your understanding, BioGenesis Pacific, Inc. is the prime contractor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc. provided all labor and materials supporting its claim pursuant to an oral subcontract between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and forward any and all future communications to my attention at the above address.

## EXHIBIT 1

Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

Terry E. Thomason

Enclosures

cc:   Rhino Builders, Inc.

## NOTICE OF CLAIM ON BOND
### (Miller Act 40 U.S.C. Section 270(a) to 270(e))

| | |
|---|---|
| **Public Agency:** | Officer in Charge of Construction<br>Ms. Bennett Terlaje, Contracting Officer<br>NAVFACENGCOM Contracts Marianas<br>PSC455, Box 175<br>FPO AP 96540-2200 |
| **Bonding Company:** | American Home Assurance Company<br>121 Spear Street<br>San Francisco, California 94105 |
| **Prime Contractor:** | BioGenesis Pacific, Inc.<br>1604 Ulualana Place<br>Kailua, Hawaii 96734 |

NOTICE IS HEREBY GIVEN, that Rhino Builders, Inc., the undersigned subcontractor to BioGenesis Pacific, Inc. and Claimant, has not been paid in full and is looking to the Prime Contractor for payment of the following claim. This notice is intended as written notice pursuant to 40 U.S.C. Section 270.

Claimant, whose address is: 87-1610 Ulehawa Road, Waianae, Hawaii 96792, has a claim in the amount of $245,664.43 (not including service charges or interest as allowed by law and at the maximum legal charges or interest as allowed by law and at the maximum legal rate) for labor performed and materials provided for the public work of improvement commonly known as Navy Housing Roofing, Various Locations; Contract No. N62766-99-D-0425, upon which BioGenesis Pacific, Inc. is the Prime Contractor.

## WE ARE LOOKING TO THE PRIME CONTRACTOR FOR PAYMENT OF THESE DEBTS.

1. The total amount of the claim is $245,664.43.

2. The name of the party for whom the labor and materials were provided is: BioGenesis Pacific, Inc.

3. Rhino Builders, Inc. provided such labor and materials directly to BioGenesis Pacific, Inc. pursuant to an oral subcontract between Rhino Builders, Inc. and BioGenesis Pacific, Inc.

In support of its claim, Claimant submits the following documents:

1. Claimant's initial invoice, which includes a breakdown of reimbursable costs and profit share (Exhibit 1);

2.       Claimant's final invoice in the amount of $245,664.43 for BioGenesis Pacific, Inc.'s unpaid billings on all work Claimant performed on Contract No. N62766-99-D-0425 with attached mail receipts reflecting BioGenesis Pacific, Inc.'s refusal to accept business mail sent by Rhino Builders, Inc. (Exhibit 2);

3.       A copy of Rhino Builders, Inc.'s Assertion of Nonpayment under FAR 32.112-1 to Ms. Bennett Terlaje, Contracting Officer (Exhibit 3); and

4.       A copy Payment Bond No. 20-80-88 sent to Claimant from Ms. Bennett Terlaje, Contracting Officer in charge of construction for Contract No. N62766-99-D-0425 (Exhibit 4).

To the unpaid balance of $245,664.43 (plus penalties and interest), if not paid, Claimant shall also seek attorneys fees and interest at the maximum legal rate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _2 0_ day of _October_, 2001.

_[signature]_
Michael O'Connell
Rhino Builders, Inc.

"Claimant"



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mark Titherington
American Home Assurance Co.
175 Water Street, 6th Floor
New York, New York  10038

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
RECEIVED

C. Signature
X                                        ☐ Agent
                                         ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number

PS Form



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

AGS/TET (053705-00001) 10

Postage          $   241
Certified Fee        210
Return Receipt Fee   150
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $   601

Recipient's Name (Please Print Clearly) (To be completed by mailer)
Mark Titherington

Street, Apt. No.; or PO Box No.
175 Water Street, 6th Floor
City, State, ZIP+4
New York, New York  10038

PS Form 3800, February 2000        See Reverse for Instructions

7000 0520 0021 3314 1184

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200

1001 BISHOP STREET

HONOLULU, HAWAII 96813

TELEPHONE (808) 523-2500    FAX (808) 523-0842

www.carlsmith.com

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

**January 9, 2002**

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**RECEIVED**

JAN 1 5 2002

**Surety Bond Claims**

Mark Titherington
American Home Assurance Company
175 Water Street, 6th Floor
New York, New York 10038

Re:    Supplement to Miller Act Claim; Ref. Bond No. 20-80-88 - BioGenesis
       Pacific, Inc., Prime Contractor on Contract No. N62766-99-D-0425

Dear Mr. Titherington:

In behalf of our client, Rhino Builders, Inc. ("Rhino"), we provide the
following materials for your consideration and actions as surety for BioGenesis Pacific,
Inc. ("BPI") on Navy Contract No. N62766-99-D-0425 ("the Contract").

AIG Technical Services, Inc.'s Proof of Claim form is attached to this letter
as Enclosure 1. Rhino's final Contract Invoice to BPI, dated December 19, 2001, is
attached to this letter as Enclosure 2. BPI's letter in response to Rhino's final Contract
Invoice, dated December 22, 2001, is attached to this letter as Enclosure 3.

BPI has failed to pay Rhino for its work as a subcontractor on the Contract.
BPI's response to Rhino's final Contract Invoice is a rejection and refusal to pay Rhino.
See Enclosure 3. Specifically, BPI's letter refuses to address payment unless Rhino
produces a copy of the executed subcontract, in addition to numerous other irrelevant
documents not material to Rhino's subcontract with BPI. The demand for a copy of the
executed subcontract is disingenuous because Gerald Lam, President of BPI, refused to

Exhibit

sign any subcontract with Rhino as he had initially promised. Further, the absence of a written subcontract is meaningless and not required for recovery under the Miller Act. There was, in fact and law, a subcontract between Rhino and BPI. Mr. Lam acknowledges the existence of such subcontract and even reiterates the terms of the subcontract in a letter to Michael O'Connell, President of Rhino, dated January 2, 2001. A copy of Mr. Lam's letter is attached to this letter as Enclosure 4.

Under the circumstances here, BPI's December 22, 2001 letter is nothing more than a frivolous, calculated, and deliberate ploy to avoid paying Rhino. As discussed below, the parties' agreement, and legally binding contract, was that Rhino would receive its costs, plus fifty percent (50%) of profits resulting from Rhino's work on the Contract. See Enclosure 4.

A.  ## BPI FAILED TO PAY RHINO FOR WORK PERFORMED

Rhino and BPI entered into an oral subcontract whereby Rhino agreed to perform such Contract work as the Navy might assign to BPI on individual task orders under the Contract. Rhino completed the work on task order numbers 0001 through 0018 of the contract and invoiced BPI for payment. The Navy accepted all of Rhino's work on the Contract and made full payment to BPI. As discussed below, BPI has never paid Rhino for any of the work performed on the Contract, even though all of the work was performed by Rhino employees using Rhino equipment, and BPI received full payment.

1.  ### Terms Of The Subcontract

The subcontract agreement was that BPI would pay Rhino's costs of performance plus 50% of BPI's profit upon completion of each task order. See Enclosure 4. In addition, the oral agreement was necessary initially only because the Contract award date had not afforded BPI sufficient time to establish a written subcontract with Rhino. Both BPI and Rhino agreed that the oral agreement between BPI and Rhino would later be reduced to writing to conform to accepted federal government contract practice.

During the time Rhino was performing work on the Navy's assigned Task Orders 1 through 4, Rhino engaged a consultant experienced in federal procurement to prepare a written subcontract agreement to formalize the relationship between Rhino and

BPI. The consultant drafted a proposed subcontract agreement consistent with the terms under which Rhino accepted BPI's offer to perform subcontract work on the Contract. The consultant provided his initial drafts to BPI for comment and finally submitted the full document to BPI for review on November 17, 2000. A copy of the consultant's facsimile transmittal letter to BPI and the draft subcontract are attached to this letter as Enclosure 5.

At this point, BPI refused to pay for Rhino's work to date on the Contract and refused to enter into a formal written subcontract with Rhino. Under the circumstances, Rhino's Chief Executive Officer ("CEO") informed Rhino's Guam office manager to cease performance on the oral agreement with BPI. Rhino's decision to stop work was due to BPI's failure to fulfill its obligation to pay for work performed and refusal to negotiate an acceptable written subcontract. Subsequently, Rhino's CEO learned that BPI was continuing to use Rhino resources on the Contract without payment. Accordingly, Rhino's CEO issued a December 14, 2000 official company notice forbidding BPI's use of Rhino resources to perform its work on the Contract. A copy of the December 14, 2000 notice is attached to this letter as Enclosure 6.

In response to Rhino's action, BPI wrote the January 2, 2001 letter (Enclosure 4) to Rhino, which states in relevant part:

> [Rhino's] subcontract was subject to a verbal agreement which provided that 50% of the net profits would be determined after all actual costs to both [BPI] and Rhino. In return you represented that Rhino was capable and would front all the needed facilities, personnel, financing and bonding through the term of each task order. Furthermore, Rhino was consistently given clear and specific instructions not to cause any task orders to be accepted from the Navy unless Rhino was certain that each specific task order would result in a profit or break even at worst under our said agreement. If there was any doubt, Rhino was not to cause any task order to be accepted. BPI relied upon Rhino for the acceptance of each task order.
>
> BPI has been disappointed by Rhino's affirmative and specific actions to repudiate and breach its subcontract with

BPI. This has been especially damaging since upon Rhino's urgings BPI had wholly relied on Rhino's management and facilities on Guam.

The above quoted BPI letter shows unmistakably that an oral agreement existed and that Rhino was to receive at least 50% of the profit from revenues on each work order. Further, the BPI letter shows that Rhino performed all work on the Contract work orders including "all the needed facilities, personnel, financing, and bonding through the term of each work order." As additional proof that the work was performed by Rhino personnel, attached are copies of Rhino's payroll records as Enclosure 7 to this letter. In effect, BPI envisioned the subcontract as a brokered contract with a *de facto* assignment of the Contract to Rhino. BPI did nothing more than obtain award of the Contract and then attempt to transfer all performance requirements to Rhino while refusing to pay for work performed.

2. <u>Rhino's Work Was Accepted By The Navy And BPI Was Paid Without Incurring Any Costs</u>

All of the work performed by Rhino on task orders 0001 through 0018 of the Contract was accepted by the Navy. The Navy paid BPI a total of ONE MILLION EIGHT HUNDRED FIFTY TWO THOUSAND SEVEN HUNDRED EIGHTY EIGHT AND .38/100 DOLLARS ($1,852,788.38) for all of Rhino's work on the Contract. A break down of the Navy's payments to BPI for each task order and the payments owed by BPI to Rhino is attached to this letter as Enclosure 8. BPI incurred no costs on the Contract because all of the work was performed by Rhino personnel using Rhino's equipment and Rhino's facilities. Rhino, on the other hand, incurred direct costs and overhead costs totaling THREE HUNDRED TEN THOUSAND NINE HUNDRED SEVENTY FIVE AND .23/100 DOLLARS ($310,975.23). See Enclosure 8.

In addition to the parties' agreement, BPI guaranteed payment to Rhino for all completed and accepted work. A copy of an e-mail from BPI to Rhino reflecting BPI's guarantee to pay Rhino for all completed and accepted work is attached to this letter as Enclosure 9. Although Rhino completed its work and its work was accepted by the Navy, BPI has yet to pay Rhino anything. All of the Navy documents showing acceptance of Rhino's work, confirming payment to BPI, and supporting the payments owed to Rhino are attached to this letter as Enclosure 10. As a result of BPI's breach of

its subcontract with Rhino, Rhino has incurred an enormous debt that has jeopardized Rhino's financial existence.

**B.** <u>Conclusion</u>.

Rhino provided all labor and materials to perform work orders 0001 through 0018 of the contract pursuant to an oral subcontract between Rhino and BPI. BPI received full payment for the Rhino work the Navy accepted. However, BPI continues to refuse to pay Rhino for its costs plus fifty percent (50%) of BPI's profits on the Contract as agreed between the parties. Therefore, Rhino intends to enforce its rights under the Miller Act. Accordingly, Rhino hereby submits this letter, along with all its enclosures, as a supplement to its Proof of Claim against BPI's surety, AIG Technical Services, Inc.

Your immediate attention to this matter is appreciated.

Very truly yours,

CARLSMITH BALL LLP

*Amy D. Self*

Terry E. Thomason
Amy G. Self

1441107.1.053705-00001
Enclosures

cc:    Rhino Builders, Inc.



# AIG Technical Services, Inc
175 Water Street
New York, NY 10038
212.770.7000

## _Proof of Claim : Construction Contract_

AIG Technical Services, Inc.

State of ___Territory of Guam___

**Bond Number: 000-20-80-88**
**Claim Number: 388-005037-001-0001**

County of_____

I, ___Michael O'Connell___, the ___CEO___ of ___Rhino Builders, Inc.___
  (Name of Affiant)      (Position in Firm)      (Name of Claimant)

of ___87-1610 Ulehawa Road, Waianae, HI 96792___ on behalf of said firm, hereby state under oath that
      (Address)

said firm between the dates of ___May 2000___ and ___December 2000___ furnished, sold,

and delivered ___roofing installation & repairs & materials___ to ___BioGenesis Pacific, Inc.___ for the
    (describes services or material)    0425    (Name of contractor or subcontractor if any)

construction of ___Contract No. N62766-99-D-___ in accordance with an ___oral___ Subcontractxx
described in Prime (Identify Contract)

Contractor letter Purchase order. Dated ___January 2, 2001___, a copy of which is attached hereto, for the agreed

price of ___$1,081,881.80___, none of which has been paid except ___$0___ and leaving a statement

balance due of ___$1,081,881.80___. Attached hereto are ___1___ Invoices, ___NA___ delivery tickets

showing the deliveries or progress estimates furnished ___BioGenesis Pacific, Inc.___
      (Contractor)

and the amount due to claimant therefore; that said firm served notice of said balance due it by Registered Mail dated :

_____ on Surety, ___Dec. 20, 2001___ on Contractor, ___NA___ on Owner, (copies

attached), that there is no just credit nor offset due against said balance and that said firm made no assignment of any

part of said balance except to ___NA___

and that there are no liens or encumbrances against said balance except that of ___NA___

_____ ; that said firm has paid in full for all labor and material

furnished and supplied it for said job except the claims of the persons or firms whose names and addresses and amounts

due to them are as follows:

___NA___

_____

_____

The foregoing information is furnished to the surety in support of affiant's claim and it is understood that the furnishing of
this from or the acceptance and/or retention thereof by the surety does not constitute a waiver or any of the terms of the
Surety's bond nor of any defenses the Surety may have, nor admission of liability thereunder.
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal
or civil penalties.

Sworn to and subscribed before me

his ___9th___ day of ___January___ 20 ___02___

Notary Public, State of Hawaii
Signed: My commission expires: 6/24/02    (Affiant's Signature)

MIYAKO SHIMILO
Notary Public, State of Hawaii
My commission expires: 6/24/02

STATE OF HAWAII

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TTHOMASON@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

## August 15, 2001

Officer in Charge of Construction
ATTN:  Ms. Bennett Terlaje, Contracting
Officer
NAVFACENGCOM Contracts Marianas
PSC455, Box 175
FPO AP 96540-2200

Re:   Subcontractor Assertion of Non-Payment Under FAR 32.112-1: Contract
No. N62766-99-D-0425; Navy Housing Roofing, Various Locations

Dear Ms. Terlaje:

This is to follow up on our telephone conversation of August 7, 2001
concerning our client, Rhino Builders, Inc. ("Rhino") and its assertion of non-payment by
BioGenesis Pacific, Inc. ("BPI"), the prime contractor on the subject contract.

A.     Requested Actions.

Pursuant to Federal Acquisition Regulation ("FAR") 32.112-1, Rhino
asserts that it has not been paid $245,664.43 for work performed as a subcontractor to
BPI on the Contract No. N62766-99-D-0425; Navy Housing Roofing, Various Locations
(the "Contract"). Accordingly, Rhino requests that the contracting officer do the
following:

1.     Address BPI's failure to make payment and assist to the extent possible to
ensure BPI fulfills its contractual obligations; and

2.     In accordance with FAR 28.106-6, provide the following information to
Rhino if BPI fails to provide proof of full payment to Rhino by September
14, 2001:

Exhibit

a.  The name and address of the surety on this contract;

b.  The penal amount of the bond for this contract; and

c.  A copy of the payment bond for this contract.[1]

B.  Additional Background Information.

As you requested, we provide the following information to assist you in addressing BPI's failure to pay Rhino's invoiced amounts for work performed. We have also included information on other issues you asked us to cover. Please contact me directly at the above phone and facsimile numbers if you have further questions.

1.  Rhino's Status as a Small and Disadvantaged Contractor Under Section 8(a) of the Small Business Act.

This portion of our letter is to respond to your concerns about Rhino's separate contract with the Navy and the information you received concerning Rhino's status as an 8(a) contractor. For your information and reference, I have attached as Enclosure 1 a copy of the Small Business Administration ("SBA") regulations governing minority ownership of a business to qualify as an 8(a) Program participant. The regulations provide for 8(a) Program participation by small businesses owned by an individual disadvantaged person or a group of disadvantaged persons. Ownership as described in the SBA regulations is satisfied if the individual disadvantaged person or group of disadvantaged persons owns 51% or more of the small business. The regulations state that an 8(a) Program participant must be "at least 51% unconditionally and directly owned by one or more socially and economically disadvantaged individuals who are citizens of the United States." [13 CFR § 124.105; attached as Enclosure 1].

In Rhino's case, the SBA has determined that Mr. Michael O'Connell is a disadvantaged citizen of the United States who is of Hawaiian descent. Further the corporate records also show that he owns unconditionally and directly 51% of the shares of Rhino. Based upon SBA's determination that Mr. O'Connell is a qualified disadvantaged individual who owns unconditionally 51% of Rhino, the SBA certified Rhino as an 8(a) contractor.

As I mentioned in our conversation, there is a current question of the ownership of the remaining 49% of Rhino's shares. The question concerning ownership

---

[1]  Rhino agrees to pay reasonable copying costs for the reproduction of the bond in this matter.

of the 49% interest in Rhino arose because the record owner of these shares may have transferred his 49% interest in a manner contrary to the controlling Shareholder Agreement. The Shareholder Agreement required the owner of the 49% interest to affording Rhino a "right of first refusal" to purchase these shares before the shares could be transferred to another person. Accordingly, the only open question about ownership in Rhino relates to a minority shareholder and does not affect Rhino's status as an 8(a) Program participant. Mr. O'Connell remains the 51% owner of the shares of Rhino and no action related to the questioned transfer of 49% interest alters that fact or can in any way deprive Rhino of its status as a qualified 8(a) contractor.

In the event anyone raises this question again, we request you require them to provide documentation to demonstrate a reasonable basis for questioning Rhino's status as an 8(a) contractor. In addition, we request that you inform us so that we may take appropriate action with the individuals involved to resolve the matter.

2. <u>BPI's Failure To Pay Rhino For Work Performed</u>.

Rhino and BPI entered into an informal, oral subcontract whereby Rhino agreed to perform such Contract work as the Navy might assign to BPI on individual task orders under the Contract. The subcontract agreement was that BPI would pay Rhino's costs of performance plus 50% of BPI's profit upon completion of each task order. In addition, the oral agreement was necessary initially only because the Contract award date had not afforded BPI sufficient time to establish a written subcontract with Rhino. Both BPI and Rhino agreed that the oral agreement between BPI and Rhino would later be reduced to writing to conform to accepted federal government contract practice.

Rhino has insufficient information or knowledge to address any Navy concerns that BPI may have failed to disclose Rhino as its subcontractor or that, at the time, BPI may not have had adequate manpower, equipment, or financial resources to be a responsible contractor eligible for award of the contract. Based upon the information available to Rhino at the time, the subcontract BPI offered in this case was solely a business opportunity, and Rhino expected that BPI (as the prime contractor through SBA) would fulfill all contract administration responsibilities it had with the Navy.

Rhino performed the Navy assigned Task Orders 1 through 4, and on November 16, 2000, Rhino forwarded its initial invoice for its work on the first four Navy assigned work orders. Rhino's invoice included a breakdown of reimbursable costs and profit share. I have attached a copy of Rhino's November 16, 2000 invoice as Enclosure 2 to this letter.

During the time Rhino was performing work on the Navy's assigned Task Orders 1 through 4, Rhino engaged a consultant experienced in federal procurement to prepare a written subcontract agreement to formalize the relationship between Rhino and BPI. The consultant drafted a proposed subcontract agreement consistent with the terms under which Rhino accepted BPI's offer to perform subcontract work on the Contract. The consultant provided his initial drafts to BPI for comment and finally submitted the full document to BPI for review on November 17, 2000. I have attached a copy of the consultant's facsimile transmittal letter to BPI and the draft subcontract as Enclosure 3 to this letter.

At this point, BPI failed to pay for Rhino's work to date on the Contract. BPI also refused to enter into a formal written subcontract with Rhino. Under the circumstances, Rhino's Chief Executive Officer ("CEO") informed Rhino's Guam office manager to cease performance on the oral agreement with BPI. Rhino's decision to stop work was due to BPI's failure to fulfill its obligation to pay for work performed and refusal to negotiate an acceptable written subcontract. Subsequently, Rhino's CEO learned that BPI was continuing to use Rhino resources on the Contract without payment. Accordingly, Rhino's CEO issued a December 14, 2000 official company notice forbidding BPI's use of Rhino resources to perform its work on the Contract. I have attached a copy of the December 14, 2000 notice as Enclosure 4 to this letter.

In response to Rhino's action, BPI wrote a January 2, 2001 letter to Rhino which I have attached for your review as Enclosure 5 to this letter. In the January 2 letter, BPI stated in relevant part:

> [Rhino's] subcontract was subject to verbal agreement which provided that 50% of the net profits would be determined after all actual costs to both [BPI] and Rhino. In return you represented that Rhino was capable and would front all the needed facilities, personnel, financing and bonding through the term of each task order. Furthermore, Rhino was consistently given clear and specific instructions not to cause any task orders to be accepted from the Navy unless Rhino was certain that each specific task order would result in a profit or break even at worst under our said agreement. If there was any doubt, Rhino was not to cause any task order to be accepted. BPI relied upon Rhino for the acceptance of each task order.

BPI has been disappointed by Rhino's affirmative and specific actions to repudiate and breach its subcontract with BPI. This has been especially damaging since upon Rhino's urgings BPI had wholly relied on Rhino's management and facilities on Guam.

The above quoted BPI letter shows unmistakably that an oral agreement existed and that Rhino was to receive at least 50% of the profit from revenues on each work order. Further, the BPI letter shows that Rhino performed all work on the Contract work orders including "all the needed facilities, personnel, financing, and bonding through the term of each work order." In effect, BPI envisioned the subcontract as a brokered contract with a *de facto* assignment of the Contract to Rhino. BPI did nothing more than obtain award of the Contract and then attempt to transfer all performance requirements to Rhino while refusing to pay for work performed.

3. **BPI's Description of Subcontract Terms Is Contrary To Federal Contracting Procedures.**

BPI's above description of the subcontract was contrary to Rhino's understanding of the relationship. Instead of affirming a valid subcontractor relationship, BPI's own letter shows that BPI was attempting, after the fact, to shift full responsibility for all contract work to Rhino. Apparently through inexperience in government contracting, BPI was also demanding that Rhino reject any potentially unprofitable Navy assignments of task orders. Based upon the BPI letter, it is apparent that BPI was insisting on shifting all Contract risks and demanding that Rhino "not . . . cause any [potentially unprofitable] task order to be accepted" even though such an act would thereby breach the Navy Contract. If Rhino fulfilled the Navy's assigned work order requirements on any task order BPI found unprofitable, BPI was seeking to require that Rhino shoulder all costs without reimbursement while BPI received full payment from the Navy for Rhino's work.

BPI's efforts to evade all Contract work obligations are further confirmed where BPI's letter states that "BPI relied upon Rhino for the acceptance of each task order" and that BPI "had wholly relied upon Rhino's management and facilities in Guam." In effect, BPI did nothing to accomplish the Contract work, and "relied" on Rhino to do everything the Navy required. BPI sought to establish its role in the venture. solely as the collector of Navy contract payments with no responsibility to perform Contract work or to pay its subcontractor for performance of the Navy Contract.

BPI's January 2, 2001 letter is clear evidence of an improper effort to assign all Contract responsibilities to a subcontractor without providing notice and obtaining approval of the contracting agency. BPI's letter also improperly demands that the subcontractor work for free or purposely breach the Navy Contract to prevent any loss of profit to BPI. BPI's contention that Rhino "repudiated or breached" the subcontract is patently absurd. Rhino was unwilling to continue work after BPI breached the contract by failing to make payments due. Rhino was also unwilling to remain in the relationship when BPI breached its duty to act in good faith by refusing to commit to a written contract that defined the rights and obligations of the parties.

4.    BPI Continues To Act In Bad Faith.

Rhino asks that you review carefully BPI's January 2, 2001 letter and consider whether BPI's view of the oral agreement with Rhino is reasonable or consistent with public contract law practice. We believe that the letter itself demonstrates that BPI does not meet the minimum standards of FAR 9.104-1. Although BPI's actions are probably based upon ignorance or inexperience in federal government contracting, BPI's treatment of Rhino here must be corrected.

BPI has continued its failure to pay on any of Rhino's invoices. To resolve BPI's failure to pay Rhino for work Rhino performed, Rhino forwarded its final consolidated invoice by U.S. mail to BPI's headquarters on July 21, 2001. However, BPI refused to accept the mailed invoice, and the invoice was returned as unclaimed.

Rhino also attempted to hand deliver its final invoice to BPI's Guam office. BPI officials there informed Rhino's Guam office manager that they were not authorized to accept the Rhino invoice and that Rhino must submit its invoice to the BPI headquarters address from which the earlier mailed invoice was returned unclaimed. The BPI Guam office also refused to accept delivery of the Rhino mailed invoice.

Attached as Enclosure 6 to this letter is Rhino's final invoice in the amount of $245,664.43 for BPI's unpaid billings on all work Rhino performed on the Contract. Also at Enclosure 6 are the relevant mail receipts reflecting BPI's failure to claim its business mail.

C.    Conclusion.

Because BPI refuses to accept mailed invoices and fails to respond to calls to discuss BPI's failure to make payment, Rhino asks that you address this matter with

BPI. We also ask that you assist in referring the matter to BPI's surety if BPI continues to fail to pay for work Rhino performed on the Navy Contract. Please call me directly if you have any questions of further requirements.

Very truly yours,

Terry E. Thomason

TET:shl
Enclosures
1424206-1

cc:    Rhino Builders, Inc.

Bond No. 20-80-88

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same as later than date of contract)<br>October 6, 1999 | OMB No.:90 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| BIOGENESIS PACIFIC, INC.<br>1604 Ulualana Place<br>Kailua, Hawaii    96734 | ☐ INDIVIDUAL            ☐ PARTNERSHIP<br>☐ JOINT VENTURE      ☒ CORPORATION |

STATE OF INCORPORATION
Hawaii

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | |
|---|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY<br>121 Spear Street<br>San Francisco, California   94105 | MILLION(S) | THOUSAND(S)<br>250 | HUNDRED(S)<br>000 |
| | CONTRACT DATE<br>09/29/99 | CONTRACT NO.<br>N62766--99-D- | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as cosureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of these modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. BIOGENESIS PACIFIC, INC.<br>By *[signature]* (Seal) | 2. (Seal) | 3. (Seal) | | Corporate Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1. GERALD NYC LAM<br>President | 2. | 3. | | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | |
| NAME(S)<br>(Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| Surety A | NAME &<br>ADDRESS | AMERICAN HOME ASSURANCE COMPANY, San Francisco, CA | STATE OF INC.<br>New York | LIABILITY LIMIT<br>$ |
| | SIGNATURE(S) | 1. By *[signature]* | 2. | Corporate Seal |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1. Swan Lee,<br>Attorney in Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-9)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

(43)

Exhibit
D

OCT 2 6 200
BOND DEPT

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.                    E-MAIL  TET@CARLSMITH.COM                    OUR REFERENCE NO.
(808) 523-2527                                                                   053705-00001

October 22, 2001

**BY CERTIFIED MAIL**
 **RETURN RECEIPT REQUESTED**

American Home Assurance Company
121 Spear Street
San Francisco, California 94105

> Re:   Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on
> Contract No. N62766-99-D-0425

Dear Sirs:

On behalf of our client, Rhino Builders, Inc., we are forwarding this
enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be
sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its
rights under the Miller Act.  Contrary to your understanding, BioGenesis Pacific, Inc. is
the prime contractor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc.
provided all labor and materials supporting its claim pursuant to an oral subcontract
between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American
Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and
forward any and all future communications to my attention at the above address.

HONOLULU   ·   KAPOLEI   ·   HILO   ·   KONA   ·   MAUI   ·   GUAM   ·   SAIPAN   ·   LOS ANGELES   ·   WASHINGTON, D.C.   ·   MEXICO

(3)

Exhibit



Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

Terry E. Thomason

Enclosures

cc:    Rhino Builders, Inc.

1433798.1

## NOTICE OF CLAIM ON BOND
### (Miller Act 40 U.S.C. Section 270(a) to 270(e))

Public Agency:       Officer in Charge of Construction
                     Ms. Bennett Terlaje, Contracting Officer
                     NAVFACENGCOM Contracts Marianas
                     PSC455, Box 175
                     FPO AP 96540-2200

Bonding Company:     American Home Assurance Company
                     121 Spear Street
                     San Francisco, California 94105

Prime Contractor:    BioGenesis Pacific, Inc.
                     1604 Ulualana Place
                     Kailua, Hawaii 96734

NOTICE IS HEREBY GIVEN, that Rhino Builders, Inc., the undersigned subcontractor to BioGenesis Pacific, Inc. and Claimant, has not been paid in full and is looking to the Prime Contractor for payment of the following claim. This notice is intended as written notice pursuant to 40 U.S.C. Section 270.

Claimant, whose address is: 87-1610 Ulehawa Road, Waianae, Hawaii 96792, has a claim in the amount of $245,664.43 (not including service charges or interest as allowed by law and at the maximum legal charges or interest as allowed by law and at the maximum legal rate) for labor performed and materials provided for the public work of improvement commonly known as Navy Housing Roofing, Various Locations; Contract No. N62766-99-D-0425, upon which BioGenesis Pacific, Inc. is the Prime Contractor.

## WE ARE LOOKING TO THE PRIME CONTRACTOR FOR PAYMENT OF THESE DEBTS.

      1.     The total amount of the claim is $245,664.43.

      2.     The name of the party for whom the labor and materials were provided is: BioGenesis Pacific, Inc.

      3.     Rhino Builders, Inc. provided such labor and materials directly to BioGenesis Pacific, Inc. pursuant to an oral subcontract between Rhino Builders, Inc. and BioGenesis Pacific, Inc.

      In support of its claim, Claimant submits the following documents:
      1.     Claimant's initial invoice, which includes a breakdown of reimbursable costs and profit share (Exhibit 1);

(5)

1433756.1

2.      Claimant's final invoice in the amount of $245,664.43 for BioGenesis Pacific, Inc.'s unpaid billings on all work Claimant performed on Contract No. N62766-99-D-0425 with attached mail receipts reflecting BioGenesis Pacific, Inc.'s refusal to accept business mail sent by Rhino Builders, Inc. (Exhibit 2);

3.      A copy of Rhino Builders, Inc.'s Assertion of Nonpayment under FAR 32.112-1 to Ms. Bennett Terlaje, Contracting Officer (Exhibit 3); and

4.      A copy Payment Bond No. 20-80-88 sent to Claimant from Ms. Bennett Terlaje, Contracting Officer in charge of construction for Contract No. N62766-99-D-0425 (Exhibit 4).

To the unpaid balance of $245,664.43 (plus penalties and interest), if not paid, Claimant shall also seek attorneys fees and interest at the maximum legal rate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 0 day of October , 2001.

Michael O'Connell
Rhino Builders, Inc.

"Claimant"

1433756.1

⑥



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000
Direct Dial: (212) 458-1282

October 30, 2001

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen

Re:  Principal:        **BioGenesis Pacific, Inc.**
     Bond No.:         **000-20-80-88**
     Claim No.:        **388-005037-001-0001**
     Project:          **Contract No. N62766-99-D-0425 – Navy Housing - Guam and various
                       locations**
     Surety:           **American Home Assurance Co.**
     Claimant:         **Rhino Builders, Inc.**

Dear Mr. or Ms. Thomasen:

This will acknowledge receipt of your client's claim in the amount of $245,664.43 for labor and/or materials furnished in connection with the above referenced project.

You will please find enclosed a Proof of Claim form for your client's use in documenting their claim against the above bond. This form should be completed in as much detail as possible, and include the last date that their company either performed the work or supplied materials claimed for on the above project. The Proof of Claim form should then be photocopied twice (to make three sets). Separate copies of documentation supporting the claim should be annexed to each form. Documentation supporting the claim in this instance would include copies of any subcontracts, signed purchase orders, signed invoices, signed delivery tickets, etc. Upon completion, two (2) of these forms in original (signed and notarized by an authorized representative of your client's company), with copies of supporting documentation annexed to each, should be returned to my attention (the third form is for your own records).

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Truly yours,

*Mark Titherington*

Mark Titherington

Enc.

cc:   BioGenesis Pacific, Inc.

A Member Company of
American International Group, inc.

1





**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-~~2001~~ 2901

January 17, 2002

<u>**VIA REGULAR MAIL**</u>

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen, Esq.

| | | |
|---|---|---|
| Re: | **Principal:** | **BioGenesis Pacific, Inc.** |
| | **Bond No.:** | **000-20-80-88** |
| | **Claim No.:** | **388-005037-001-0001** |
| | **Project:** | **Contract No. N62766-99-D-0425 - Navy Housing – Guam and various locations** |
| | **Surety:** | **American Home Assurance Co.** |
| | **Claimant:** | **Rhino Builders, Inc.** |

Dear Mr. Thomasen:

This will acknowledge receipt of your Proof of Claim forms in reference to the above captioned matter.

At this time, I am immediately taking this matter up with the above referenced Principal, in order to ascertain their position on your claim as presented. I will be in contact with you in due course regarding their position on the Proof of Claim as presented by your company on the above referenced bond.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc:    BioGenesis Pacific, Inc.
       The Sundt Companies, Inc.

A Member Company of

Exhibit



**AIG Technical Services, Inc**
175 Water Street
New York, NY 10038
212.770.7000

Direct Dial: (212) 458-2901

---

February 21, 2002

**VIA REGULAR MAIL**

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Attention: Terry E. Thomasen, Esq.

Re:    Principal:    **BioGenesis Pacific, Inc.**
       Bond No.:     **000-10-80-88**
       Claim No.:    **388-005037-001-0001**
       Claimant:     **Rhino Builders, Inc. ("Rhino")**
       Project:      **Contract No. N62766-99-D-0425 – Navy Housing – Guam and various locations**
       Surety:       **American Home Assurance Co.**

Dear Mr. Thomasen:

The above referenced surety has reviewed the Proof of Claim and supporting documentation (collectively, the "Proof of Claim") which you submitted on or about January 9, 2002 in support of your client's claim against the referenced bond. The Proof of Claim has been reviewed in connection with the relevant bond language, your client's purported Miller Act Notice dated October 22, 2001, and the federal Miller Act, 40 U.S.C. § 270a et seq. which governs claims against payment bonds issued for federal projects such as the above.

Section 270b(b) of the Miller Act, among other things, expressly states that a payment bond claimant is time barred from bringing suit to enforce its claim unless such an action is brought within one year of the day on which the last of the labor was performed or material was provided by them.

I note that the sworn affidavit of Michael O'Connell, identified as claimant's chief executive officer, included in the Proof of Claim, admits and conclusively establishes that the last day claimant performed labor or provided material on the above project was on or before December 31, 2000. In order to have been timely, suit to enforce the claim would have had to have been commenced within one year of that date. As such, the above referenced claim appears to be time barred by the statute of limitations contained in 40 U.S.C. § 270b(b). Accordingly, the claim must be denied.

If you have any other documents or information you believe would be helpful for the Surety to review please feel free to provide them to the undersigned.

Exhibit



**AIG Technical Services, Inc**
175 Water Street
New York, NY 10038
212.770.7000

Please be advised that this action is taken at this time without waiver of or prejudice to any of the right and defenses, past or present, known or unknown which either the above referenced Surety or Principa may have in this matter.

Very truly yours,

Bruce Kahn

cc.: BioGenesis Pacific, Inc.

2

A Member Company of American International Group, Inc

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500   FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

March 11, 2002

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**RECEIVED**

MAR 1 9 2002

**Surety Bond Claims**

Mr. Bruce Kahn
AIG Technical Services, Inc.
175 Water Street
New York, New York 10038

Re:    Miller Act Claim; Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc.,
Prime Contractor on Contract No. N62766-99-D-0425

Dear Mr. Kahn:

We are in receipt of your letter of February 21, 2002, in which you state the claim submitted by our client, Rhino Builders, Inc. ("Rhino"), is time barred under the Miller Act.

We ask that you reconsider your position. Under the Miller Act, the one year limitation period begins on the last day the claimant provides labor or material for use on the project. As you may recall in our January 9, 2002 supplemental letter to Rhino's claim, we explained that BioGenesis Pacific ("BPI") "was continuing to use Rhino resources on the Contract without payment." This use of Rhino materials on the Contract continues even today, even though Rhino's present claim for payment is only for labor and materials supplied to BPI on the Contract through December 2000. See the attached Affidavit of Michael O'Connell. As discussed below, Rhino's claim is well within the Miller Act's one year limitation period.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

Mr. Bruce Kahn
March 11, 2002
Page 2

### A.    The Ninth Circuit's Interpretation of the Miller Act

The purpose of the Miller Act is "to provide broad protection for persons supplying labor and material for the construction of federal public projects." General Electric Co. v. Southern Construction Co., Inc., 383 F.2d 135, 139 (5th Cir. 1967). See also Taylor Construction Inc. v. ABT Service Corp. Inc., 163 F.3d 1119 (9th Cir. 1998) (explaining that "[t]he policy behind the Act is 'to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material'") (quoting United States ex rel. Sherman v. Carter, 353 U.S. 210, 217 (1957); United Bonding Ins. Co. v. Catalytic Construction Co., 533 F.2d 469, 473 (9th Cir. 1976) (holding that the "purpose of the Miller Act is to protect those who would have materialmen's and workmen's liens under state law if they were not working on a structure exempt as a federal public work or building"). Thus, courts have traditionally given the Miller Act liberal construction and application in order "to protect those whose labor and materials go into public projects." Taylor Construction, 163 F.3d at 1122 (quoting Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102 (1944)). See also United Bonding, 533 F.2d. at 473 (interpreting the Miller Act liberally, in light of its legislative history, to protect laborers and suppliers).

#### 1.    Statute of Limitations Under the Miller Act

Section 270(b) of the Miller Act provides in pertinent part that a payment bond action "shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by [the claimant]." 40 U.S.C. § 270(b). The Act's "one-year period begins to run [either] on the day when the labor ceases or when the last material was supplied." J.D. Fields & Co., Inc. v. Gottfried Corp., et al., 272 F.3d 692, 698 (5th Cir. 2001). See, e.g., Interform Co. v. Mitchell, 575 F.2d 1270 (9th Cir. 1978); United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816 (9th Cir. 1961); Mike Bradford & Co. v. F.A. Chastain Constr., Inc., 387 F.2d 942 (5th Cir. 1968).

In applying the Act's one-year limitations period to suppliers of equipment, the Ninth Circuit has held that the period begins to run "on the date 'the equipment was last available for use on the project.'" United States for the Use of Pippin v. J.R. Youngdale Construction Co., Inc., 923 F.2d 146 (9th Cir. 1991) (quoting United States ex rel. Miller & Bentley Equip. Co. v. Kelley, 327 F.2d 590, 591 (9th Cir. 1964). See also Campbell, 293 F.2d at 820 (holding that when the claimant provides equipment by lease

Mr. Bruce Kahn
March 11, 2002
Page 3

or rental, the one-year limitations period begins on the date "the equipment was last available for use on the project"); Interform Co., 575 F.2d at 1280 (explaining that under the Miller Act, "a furnisher of rental equipment continues to supply such equipment through the entire rental period; the date of last supply occurs not at the beginning of a job but at the end or at the time the equipment is last available for use on the job").

The court in Youngdale Construction explained that unlike a supplier of materials whose obligation ends upon delivery, a supplier of equipment under lease or rental "must allow the equipment to remain in the hands of the lessee for such time as is specified by the lease arrangement." Youngdale Construction, 923 F.2d at 149 (quoting Campbell, 293 F.2d at 820). Thus, "the lessor continues to supply the equipment until the date that the equipment is no longer available for use by the [contractor] on the project." Id. at 149-150. The Act's one-year limitations period, therefore, begins on the date the equipment was last available for use on the project. Id. at 149.

B.     Rhino's Miller Act Claim is Not Barred by the One-Year Limitations
       Period

Rhino's Miller Act claim is not time barred because Rhino has continued to supply equipment to BPI for use on the project. See attached Affidavit of Michael O'Connell. The time period from May 2000 to December 2000, as entered in the Proof of Claim, is the inclusive period during which Rhino supplied labor and materials to BPI for which Rhino is claiming non-payment by BPI. However, subsequent to December 2000, Rhino continued to supply equipment to BPI as late as January 2002. See attached Affidavit of Michael O'Connell.

Specifically, Rhino supplied a truck leased by Rhino to BPI which was available for use by BPI on the project until March 20, 2001, the date on which the lease expired. See Exhibit A of the Affidavit of Michael O'Connell. Rhino also supplied another truck to BPI which was available for use by BPI on the project until May 2001, the date the truck was returned to Rhino. See attached Affidavit of Michael O'Connell. In addition, Rhino supplied another truck to BPI which was available for use by BPI on the project until January 17, 2002, the date on which Rhino paid to have the truck towed to Rhino's premises. See Exhibit B of the Affidavit of Michael O'Connell. Finally, BPI has continued to use and is presently using Rhino's safety equipment and various other types of equipment. See attached Affidavit of Michael O'Connell. The one-year limitations period will not begin until the date such equipment is no longer available for

Mr. Bruce Kahn
March 11, 2002
Page 4

use by BPI on the project. <u>See</u> <u>Youngdale Construction</u> <u>supra</u>. Therefore, Rhino's claim
is not time barred under the Miller Act.

    C.   <u>Conclusion</u>.

       The purpose of the Miller Act is to provide broad protection for companies
like Rhino that supply labor and material for the construction of federal public works
projects. Rhino's claim against BPI under the Miller Act is for all labor and materials it
supplied to BPI from May 2000 to December 2000 only, even though Rhino has
continued to supply equipment to BPI for the project. Because such equipment is still
available to BPI for use on the project, Rhino's claim is not time barred by the Miller
Act's statute of limitations.

       Rhino asks for prompt resolution of its claim before it is compelled to bring
civil suit.

          Very truly yours,

          CARLSMITH BALL LLP

          Terry E. Thomason
          Amy G. Self

1450480.1.053705-00001
Enclosures

cc:   Rhino Builders, Inc.



# RHINO BUILDERS HUB2me & 3 (a) SBA CERTIFIED

790 North Marine Drive, P. O. Box 959, Tamon, Guam, 96911, (671) 632-7633,
(671) 637-9618 fax, Rhinogwn@ite.net
85-841 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-3878,
(808) 668-7024 fax, Rhino1@Hawaii.rr.com

## INVOICE

TO  BIOGENESIS PACIFIC, INC.

790 NORTH MARINE DRIVE #303

TUMON, GUAM 96911

ATTN  BOBBIE SALAS

TEL  637-9633/35  FAX  637-9634

NO.  0301-002
DATE  MAR. 21, 2001
SHIP VIA
YOUR NO.
OUR NO.
TERMS  DUE UPON RECEIPT

This is to bill you as follows:

| QUANTITY | DESCRIPTION | UNIT PRICE | | TOTAL | |
|---|---|---|---|---|---|
| | ISUZU FLATBED RENTAL | | | | |
| 1 WEEK | MONDAY-SATURDAY MAR. 12-17, 2001 | 584.00 | /WK. | $ | 584.00 |
| 2 DAYS | MONDAY-TUESDAY MAR. 19-20, 2001 | 130.00 | /DAY | $ | 260.00 |
| | | Amount due | | $ | 844.00 |

*Recieved by [signature] 3-22-01*

RHINO BUILDERS, INC.

Please show invoice number on your remittance.

By  _____

FILE COPY
EXHIBIT A

MAR 20 '02 10:48 FR 00     212+458+16.. TO 919085994517    P.07/07
                                          T-573   P.03/05   F-987
Mar-07-92   01:11pm   From-CARL .TR

# RELIABLE
# TOWING SERVICES   2655

P.O. Box 8455, Tamuning, GU 96931 • Tel: 648-2TOW (2569) • Fax: 649-46

| DATE 01/17/02 | TIME 2:00 | REQUESTED BY SAME | | P.O. NO. |
|---|---|---|---|---|
| NAME RHINO ROOFING & REPAIRS | | | | PHONE 632-765 |

| ADDRESS | | | |
|---|---|---|---|
| CITY | | STATE | ZIP |

**LOCATION OF VEHICLE** BOAT

| YEAR/MAKE/MODEL 95 NISSAN 4x4 | COLOR Black | DRIVER KEN L.G |
|---|---|---|
| STATE | LIC. PLATE NO. 1877-77 | VEH. I.D. NO. | REGISTERED OWNER |

| MILEAGE | SERVICE TIME | EXTRA PERSON |
|---|---|---|
| FINISH _NO KEY_ | FINISH _____ | FINISH _____ |
| START _____ | START _____ | START _____ |
| TOTAL _____ | TOTAL _____ | TOTAL _____ |

**REASON FOR TOW**
- ☐ ACCIDENT
- ☐ ARREST
- ☐ UNREGISTERED
- ☐ TOW ZONE
- ☐ SNOW REMOVAL

- ☐ ABANDONED
- ☐ STOLEN CAR
- ☑ BREAK DOWN
- ☐ LOCK OUT
- ☐ START

- ☐ FLAT TIRE
- ☐ OUT OF GAS
- ☐ IMPOUNDED   ☑ Key.
- ☐

**SPECIAL EQUIPMENT**
- ☐ SINGLE LINE WINCHING
- ☐ DOUBLE LINE WINCHING
- ☐ SNATCH BLOCKS
- ☐ SCOTCH BLOCKS
- ☐ DOLLY

**TYPE OF TOW**
- ☐ SLING/HOIST TOW
- ☐ FLAT BED/RAMP
- ☑ WHEEL LIFT
- ☐

**TOWED PER ORDER OF**
- ☐ STATE POLICE
- ☐ LOCAL POLICE
- ☐ OTHER
- ☐ DEALER

**VEHICLE TOWED TO**
FIRST TOW _Stolen 7860_
SECOND TOW _____

| STORAGE FROM _____ TO _____ DAYS @ _____ | | TOWING CHARGE | $65 | 00 |
|---|---|---|---|---|
| PAID BY | | MILEAGE CHARGE | | |
| ☑ CASH ☐ CHECK   DRIVERS NAME/NO. Carl 1419 | | EXTRA PERSON | | |
| $65.00   #35 | | SPECIAL EQUIPMENT | | |
| ☐ CREDIT CARD ☐ MC ☐ VISA ☐ AMEX   EXP. DATE _____ | | LABOR CHARGE | | |
| CC NO. | | STORAGE | | |
| OPERATOR'S SIGNATURE _____ DATE 01/17/02 | | | | |
| TRUCK NO. | | SUB-TOTAL | | |
| AUTHORIZED SIGNATURE _____ DATE _____ | | TAX | | |
| ⊗ VEHICLE RELEASED TO Mario Cruz DATE 1/17/02 | | TOTAL | $65. | 00 |

*Not responsible for loss or damage to vehicle
in case of fire, theft or any other cause beyond our control*

**Thank You**

# EXHIBIT B

2/2



**AIG Technical Services, Inc.**
175 Water Street
New York, NY 10038
212.770.7000

JUL 0

Direct Dial: (212) 458-2901

June 21, 2002

<u>VIA REGULAR MAIL</u>

Carlsmith Ball LLP
Pacific Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
**Attention: Terry E. Thomasen**

Re:   **Principal:**   **BioGenesis Pacific, Inc.**
      **Bond No.:**    **000-20-80-88**
      **Claim No.:**   **388-005037-001-0001**
      **Project:**     **Contract No. N62766-99-D-0425 - Navy Housing - Guam and various
                       locations**
      **Surety:**      **American Home Assurance Co.**

Dear Mr. Thomasen:

The Surety has reviewed your letter of March 11, 2002 along with the enclosed documents. The Surety continues to believe that the Miller Act claim asserted by Rhino Builders, Inc. is time barred by the statute of limitations contained in 40 U.S.C. § 270b(b) and, accordingly, we maintain our position denying your client's claim as set forth in our letter dated February 21, 2002.

Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety or Principal may have in this matter.

Very truly yours,

Bruce Kahn

cc.:   BioGenesis Pacific, Inc.

# COPY

CARLSMITH BALL LLP

DONALD V. CALVO
DANA A. GUTIERREZ
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

**F I L E D**
DISTRICT COURT OF GUAM

**MAR 2 0 2002**

MARY L.M. MORAN
CLERK OF COURT

Attorneys for Plaintiff
RHINO BUILDERS, INC.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | CIVIL CASE NO. **02-00008** |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| BIOGENESIS PACIFIC, INC. and AIG TECHNICAL SERVICES, INC., | |
| Defendants. | |

COMES NOW, Plaintiff RHINO BUILDERS, INC. ("Plaintiff"), by and through

its attorneys Carlsmith Ball LLP, and hereby files its Complaint against Defendant BIOGENESIS

PACIFIC, INC. ("Defendant Contractor") and Defendant AIG TECHNICAL SERVICES, INC.

("Defendant Surety"), and alleges and avers as follows:

> 1.       Plaintiff is a corporation organized and existing under the laws of the State

of Hawaii, with its principal office and place of business located at the City of Waianae, County

of Honolulu, State of Hawaii. Plaintiff is engaged in the business of roofing installation and

repairs.

Exhibit
K

2. At all times relevant to this claim Plaintiff was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

3. To the best of Plaintiff's knowledge, Defendant Contractor is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Kailua, County of Honolulu, State of Hawaii.

4. To the best of Plaintiff's knowledge, Defendant Contractor is also a corporation organized and existing under the laws of the Territory of Guam, with its principal office and place of business located in Dedodo, Guam.

5. To the best of Plaintiff's knowledge, Defendant Surety is a corporation duly authorized to engage in the business of executing surety bonds in the State of New York, with its principal office and place of business located at the City of New York, State of New York.

6. This action arises, and the court has jurisdiction, under the Miller Act, United States Code, Title 40, Sections 270a through 270 d.

7. To the best of Plaintiff's knowledge, on or before May 2000, Defendant Contractor entered into a contract in writing with the United States of America to furnish the materials and perform the labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in the contract, for a consideration of $4,926,657 for the period from May 15, 2000 to September 29, 2001. The contract was designated Navy Contract No. N62766-99-D-0425. Navy Contract No. N62766-99-D-0425 has been continued and remains in effect.

-2.-

8. To the best of Plaintiff's knowledge, at the time Defendant Contractor entered into and began performance under such contract with the United States of America, Defendant Contractor was not licensed to do business in the Territory of Guam.

9. To the best of Plaintiff's knowledge, Defendant Contractor did not become licensed to do business in the Territory of Guam until January 2, 2001.

10. To the best of Plaintiff's knowledge, on October 6, 1999 pursuant to the terms of Contract No. N62766-D-0425, Defendant Contractor, as principal, and Defendant Surety, as surety, executed and delivered to the United States their bond, Bond No. 20-80-88, conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in Navy Contract No. N62766-99-D-0425.

11. On or before May 2000, use Plaintiff entered into an oral subcontract with Defendant Contractor whereby use Plaintiff agreed to perform such contract work as the U.S. Navy might assign to Defendant Contractor on individual task orders under the U.S. Navy Contract No. N62766-99-D-0425, between Defendant Contractor and the United States of America.

12. Under the terms of the oral subcontract between Defendant Contractor and use Plaintiff, Defendant Contractor agreed to pay all of use Plaintiff's actual costs of performance plus fifty percent (50%) of Defendant Contractor's profit upon completion of each task order under Contract No. N62766-99-D-0425. A copy of a letter from Defendant Contractor to use Plaintiff reiterating the terms of the oral subcontract between Defendant Contractor and use Plaintiff is attached hereto as Exhibit "A," and incorporated by reference.

13. The oral subcontract between Defendant Contractor and use Plaintiff was necessary initially only because the contract award date for Contract No. N62766-99-D-0425 had

-3.-

not afforded Defendant Contractor sufficient time to establish a written subcontract with use Plaintiff.

14.     Both Defendant Contractor and use Plaintiff agreed that the oral subcontract between Defendant Contractor and use Plaintiff would later be reduced to writing to conform to accepted federal government contract practice.

15.     Defendant Contractor later refused to enter into a formal written subcontract with use Plaintiff.

16.     Plaintiff then entered into the performance of its oral subcontract and furnished labor and equipment in the prosecution of the work provided for in the contract between Defendant Contractor and the United States of America.

17.     Plaintiff performed labor and provided materials as agreed under the oral subcontract as follows:  Plaintiff provided all of the needed labor, materials, equipment, facilities, financing and bonding to Defendant Contractor in the prosecution of the work provided for in Contract No. N62766-99-D-0425.  The reasonable and agreed value of Plaintiff's actual costs for such performance under the oral subcontract was and is $310,975, none of which has been paid by Defendant Contractor to date, leaving a balance due of $310,975.

18.     In addition to Plaintiff's actual costs, Defendant Contractor agreed to pay Plaintiff a fifty percent (50%) share of Defendant Contractor's profit under Contract No. N62766-99-D-0425.  The reasonable and agreed fifty percent (50%) share of Defendant Contractor's profit therefor was and is $770,906, none of which has been paid by Defendant Contractor to date, leaving a balance due of $770,906.

19.     Notwithstanding Plaintiff's several demands for payment, such balances have not been paid and there is now justly due and owing to use Plaintiff the sum of $1,081,881,

-4.-

the same being the reasonable value of use Plaintiff's performance under the oral subcontract between Defendant Contractor and use Plaintiff.

20.    Defendant Contractor breached its contract with Plaintiff in that it failed and refused to pay Plaintiff the moneys due it for labor performed and equipment furnished, as above set forth, and Plaintiff was then forced to terminate its performance of the contract.

21.    The date on which the last labor was performed and equipment supplied to Defendant Contractor by Plaintiff was March 20, 2001. A period of more than 90 days has elapsed since such date, and Plaintiff has not been paid anything for the labor performed and equipment furnished.

22.    All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

WHEREFORE, the United States of America on behalf and to the use of Plaintiff prays judgment against Defendant Contractor and Defendant Surety as follows:

1.    For the sum of $1,081,881, together with interest from March 20, 2001;

2.    For costs of this action; and

3.    For further relief as the Court may deem just and proper.

DATED: Hagåtña, Guam, March 20, 2002.

CARLSMITH BALL LLP

DONALD V. CALVO
DANA A. GUTIERREZ
Attorneys for Plaintiff
RHINO BUILDERS, INC.

-5.-

ANTONIO L. CORTÉS
THEODORE S. CHRISTOPHER
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

F I L E D
DISTRICT COURT OF GUAM
SEP 04 2002
MARY L. M. MORAN
CLERK OF COURT

Attorneys for Plaintiff Rhino Builders, Inc.

### IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> BIOGENESIS PACIFIC, INC. and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **SUBMISSION OF AFFIDAVIT OF AMY G. SELF** |

Plaintiff Rhino Builders, Inc. submits herewith the original of the

Affidavit of Amy G. Self attached as Exhibit E to the Declaration of Ann D. Borja

filed on August 30, 2002.

Respectfully submitted this 3rd day of September 2002.

LAW OFFICE OF ANTONIO L. CORTÉS
Attorneys for Plaintiff Rhino Builders, Inc.

By: _____
THEODORE S. CHRISTOPHER

R E C E I V E D

McKEOWN . VERNIER.
PR C.I. MAHER
DATE: 9/10/02
TIME: 3:25 pm
BY: poor

**Exhibit B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC. | CIVIL NO. 02-00008 |
| Plaintiff, | AFFIDAVIT OF AMY G. SELF |
| vs. | |
| BIOGENESIS PACIFIC, INC.; AIG TECHNICAL SERVICES, INC., | |
| Defendants. | |

## AFFIDAVIT OF AMY G. SELF

STATE OF HAWAII      )
                           )   SS.
CITY AND COUNTY OF HAWAII  )

AMY G. SELF, being first duly sworn on oath, deposes and says:

1.    All statements made in this affidavit are based on my personal knowledge unless otherwise expressly stated.

2.    I am an attorney with Carlsmith Ball LLP, and I am one of the attorneys who previously assisted RHINO BUILDERS, INC. ("Rhino") in pursuing payment for work performed on Rhino's subcontract with Biogenesis Pacific, Inc.

3.    Pursuant to our assistance to Rhino, on or about October 2001, I called long distance directory assistance to obtain the telephone number for American Home Assurance Company, the company named as Surety on United States Navy Payment Bond No. 20-80-88.

2020166.1.053705-00001

4. The telephone number given to me by the operator for the American Home Assurance Company listing was (415) 836-2700.

5. When I dialed the telephone number for American Home Assurance Company, the person answered "American International Companies."

6. When I explained that I was calling for American Home Assurance Company, the person assured me that American Home Assurance Company was part of American International Companies.

7. After establishing that I had in fact dialed the correct number, I requested a Miller Act Claim Form and was transferred to American International Companies' legal department.

8. After being connected to various people, one of whom was an individual by the name of Joe Mauler, I was told that their office in New York, AIG Technical Services, Inc., handled all of the claims against surety bonds for American International Companies and was given the following telephone number: (212) 458-1264.

9. After dialing the telephone number given to me by American International Companies for its office, AIG Technical Services, Inc., I was again connected to various people in response to my request for a Miller Act Claim form.

10. Finally, I was connected to Mark Titherington, a claims analyst for AIG Technical Services, Inc., who indicated that he was the person who would handle a claim against the surety for Biogenesis Pacific, Inc.

11. Mr. Titherington informed me that before he would send us a Miller Act Proof of Claim form, we would first have to send a Notice of Nonpayment to all parties.

12. Pursuant to the Miller Act 40 U.S.C. Section 270(a) to 270(e) and Mr. Titherington's instructions, on or about October 22, 2001, we sent a Notice of Claim On Bond (naming American Home Assurance Company as the bonding company) to Mr. Titherington, BioGenesis Pacific, Inc., and Bennett Terlaje, the U.S. Navy Contracting Officer, via certified mail, return receipt requested.

13. Prior to sending the Notice of Claim On Bond to Mr. Titherington, I prepared a letter for Terry E. Thomason's signature, addressed to Mark Titherington at American Home Assurance Company, 175 Water Street, 6th Floor, New York, New York 10038, to which we attached the Notice of Claim On Bond.

14. A true and correct copy of the letter to Mark Titherington, with the attached Notice of Claim On Bond and Certified Mail Receipt, is attached hereto and incorporated herein as Exhibit 1.

15. On or about November 6, 2001, we received a Proof of Claim form from Mr. Titherington, attached to a letter from Mr. Titherington.

16. On or about January 9, 2002, we sent the completed Proof of Claim form, executed by Michael O'Connell, President of Rhino Builders, Inc., to Mr. Titherington via certified mail, return receipt requested.

17. On or about the last week of February, 2002, we received notice from Mr. Titherington that Rhino Builders, Inc.'s Miller Act Claim had been denied by AIG Technical Services, Inc.

18. On or about March 20, 2002, we filed a Complaint against BioGenesis and AIG Technical Services, Inc. in the United States District Court, District of Guam.

2020166.1.053705-00001

19. Throughout the foregoing process, Mr. Titherington and everyone I spoke to at American International Companies and AIG Technical Service, Inc. led me to believe that American Home Assurance Company and AIG Technical Services were all part of the same corporation, American International Companies.

20. On or about August 23, 2002, I called the original number I was given for American Home Assurance Company and again, the person who answered verified that American Home Assurance and AIG Technical Service, Inc. are owned by American International Companies.

FURTHER AFFIANT SAYETH NAUGHT.

_____
AMY G. SELF

Subscribed and sworn to before me this
28th day of _____August_____, 2002.

_____
Natalie X. Pacheco
Notary Public, State of Hawaii
My Commission expires: _1-24-06_

2020166.1.053705-00001

# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

PACIFIC TOWER, SUITE 2200
1001 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE (808) 523-2500    FAX (808) 523-0842
WWW.CARLSMITH.COM

DIRECT DIAL NO.
(808) 523-2527

E-MAIL TET@CARLSMITH.COM

OUR REFERENCE NO.
053705-00001

## October 22, 2001

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mark Titherington
American Home Assurance Company
175 Water Street, 6th Floor
New York, New York 10038

Re:    Ref. Bond No. 20-80-88 - BioGenesis Pacific, Inc., Prime Contractor on
Contract No. N62766-99-D-0425

Dear Mr. Titherington:

On behalf of our client, Rhino Builders, Inc., we are forwarding this enclosed matter for your consideration and action.

Enclosed with this letter is a Miller Act Notice which this firm caused to be sent to your attention, whereby Rhino Builders, Inc. gives notice it intends to enforce its rights under the Miller Act. Contrary to your understanding, BioGenesis Pacific, Inc. is the prime contractor on Contract No. N62766-99-D-0425, and Rhino Builders, Inc. provided all labor and materials supporting its claim pursuant to an oral subcontract between Rhino Builders Inc. and BioGenesis Pacific, Inc.

As the attorneys for Rhino Builders, Inc., we hereby request that American Home Assurance Company provide us a copy of its Miller Act Proof of Claim form, and forward any and all future communications to my attention at the above address.

## EXHIBIT 1

Your immediate attention to this matter is appreciated.

Very truly yours,
Carlsmith Ball L.L.P.

Terry E. Thomason

Enclosures

cc:    Rhino Builders, Inc.

## NOTICE OF CLAIM ON BOND
### (Miller Act 40 U.S.C. Section 270(a) to 270(e))

**Public Agency:**    Officer in Charge of Construction
Ms. Bennett Terlaje, Contracting Officer
NAVFACENGCOM Contracts Marianas
PSC455, Box 175
FPO AP 96540-2200

**Bonding Company:**    American Home Assurance Company
121 Spear Street
San Francisco, California 94105

**Prime Contractor:**    BioGenesis Pacific, Inc.
1604 Ulualana Place
Kailua, Hawaii 96734

NOTICE IS HEREBY GIVEN, that Rhino Builders, Inc., the undersigned subcontractor to BioGenesis Pacific, Inc. and Claimant, has not been paid in full and is looking to the Prime Contractor for payment of the following claim. This notice is intended as written notice pursuant to 40 U.S.C. Section 270.

Claimant, whose address is: 87-1610 Ulehawa Road, Waianae, Hawaii 96792, has a claim in the amount of $245,664.43 (not including service charges or interest as allowed by law and at the maximum legal charges or interest as allowed by law and at the maximum legal rate) for labor performed and materials provided for the public work of improvement commonly known as Navy Housing Roofing, Various Locations; Contract No. N62766-99-D-0425, upon which BioGenesis Pacific, Inc. is the Prime Contractor.

WE ARE LOOKING TO THE PRIME CONTRACTOR FOR PAYMENT OF THESE DEBTS.

1.    The total amount of the claim is $245,664.43.

2.    The name of the party for whom the labor and materials were provided is: BioGenesis Pacific, Inc.

3.    Rhino Builders, Inc. provided such labor and materials directly to BioGenesis Pacific, Inc. pursuant to an oral subcontract between Rhino Builders, Inc. and BioGenesis Pacific, Inc.

In support of its claim, Claimant submits the following documents:
1.    Claimant's initial invoice, which includes a breakdown of reimbursable costs and profit share (Exhibit 1);

2. Claimant's final invoice in the amount of $245,664.43 for BioGenesis Pacific, Inc.'s unpaid billings on all work Claimant performed on Contract No. N62766-99-D-0425 with attached mail receipts reflecting BioGenesis Pacific, Inc.'s refusal to accept business mail sent by Rhino Builders, Inc. (Exhibit 2);

3. A copy of Rhino Builders, Inc.'s Assertion of Nonpayment under FAR 32.112-1 to Ms. Bennett Terlaje, Contracting Officer (Exhibit 3); and

4. A copy Payment Bond No. 20-80-88 sent to Claimant from Ms. Bennett Terlaje, Contracting Officer in charge of construction for Contract No. N62766-99-D-0425 (Exhibit 4).

To the unpaid balance of $245,664.43 (plus penalties and interest), if not paid, Claimant shall also seek attorneys fees and interest at the maximum legal rate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 0 day of October , 2001.

Michael O'Connell
Rhino Builders, Inc.

"Claimant"

1433756.1



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mark Titherington
American Home Assurance Co
175 Water Street, 6th Floor
New York, New York 10038

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

RECEIVED

C. Signature

X ☐ Agent ☐ Addressee

OCT 2 3 2001

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811

102595-01-M-1424

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

AGS/TET (053705-00001) 10

| | |
|---|---|
| Postage | $ 241 |
| Certified Fee | 210 |
| Return Receipt Fee (Endorsement Required) | 150 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 601 |

Recipient's Name (Please Print Clearly) (To be completed by mailer)
Mark Titherington

Street, Apt. No.; or PO Box No.
175 Water Street, 6th Floor

City, State, ZIP+4
New York, New York 10038

7000 0520 0021 3311 1181

PS Form 3800, February 2000    See Reverse for Instructions