ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorney for Plaintiff Rhino Builders, Inc.



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO.02-00008 <br><br> **AFFIDAVIT OF EUGENE PATTEN** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**ORIGINAL**

I, Eugene O'Connell, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the accountant for Rhino Builders, Inc. (hereinafter "Rhino"), I am competent to testify herein, and I make this affidavit based on personal knowledge and would so testify.

2. Attached hereto as Exhibit 1 is a true accounting of the amounts Rhino is due from BPI as contracted amounts under its subcontract with Biogenesis Pacific, Inc. (BPI).

3. I am informed and believe that Rhino is due more than these numbers but cannot quantify those amounts for several reasons. One reason I cannot quantify additional sums due is that BPI, with the assistance of Mr. Avilla and Mr. Garthe, have appropriated necessary records, including personnel payroll records, belonging to Rhino. Another reason is that some amounts include equipment converted by BPI, which also took the equipment lists to prevent Rhino from quantifying this loss. I note that BPI has not produced any records documenting its own purchase of equipment for use on the first 18, and later, delivery orders.

4. I am convinced that BPI used Rhino's construction equipment on all its task orders, and continues to do so at this time. Rhino had over $40,000 worth of depreciable construction equipment on Guam when Mr. Avilla and Mr. Garthe, who had control over this equipment, went to work for BPI. BPI has failed to produce documentation showing that it purchased its own equipment when it started its Guam operations in December 2000 or January 2001. BPI did return a damaged roof scraper

2

(a $5,000 machine) to Rhino in 2003. Then, in his deposition, which I attended, Mr. Avilla testified that the only equipment he was award of BPI purchasing was a new roof scraper. I firmly believe that, were it not for the equipment BPI took from Rhino, it would not have been able to perform its work on the Navy Contract.

5. Prior to Rhino's work on the Navy Contract, Rhino had a commitment letter from a bonding company named Island Insurance Company to provide bonding for Rhino on federal contracts Rhino was bidding on or planned to bid on, to the aggregate limit of $20 million per project. Because of Mr. Lam's attempt to acquire Mr. Garthe's shares in Rhino, because Rhino's finances were negatively affected by its inability to collect from BPI, and because Rhino had to bring this action to collect from BPI, Rhino lost that bonding commitment.

6. On or about March or April 2001, Rhino won an IDIQ sole source contract similar to the one at issue in this case, to provide roofing for Travis Air Force Base in California. We performed on this contract for the first of its five-year term, but we were unable to perform on the first option year because of our loss of bonding due to BPI's attempt to take us over and its refusal to pay us. The value of the first year was a little over $1 million. Our margin of profit was 20%. Before we could complete that work, however, we had to give up the contract due to our loss of bonding due to Mr. Lam's actions. We consequently lost over $100,000 for that first year. There were also four option years were worth about $1 million each. Accordingly, Rhino lost about $800,000 on this contract alone as a direct result of its loss of bonding. In addition, as the incumbent on that contract, had Rhino not lost its

3

bonding, Rhino would, in 2002, have had the advantage in bidding for an additional five-year IDIQ competitive contract for a larger roofing project at Travis. The additional contract would have been worth about $20 million. We would have made over $3.5 million had we gotten that contract, and as the incumbent on the IDIQ sole source contract, we would have won it had we not lost our bonding.

7. Rhino has recently completed a Solution Order Contract, or SOC, for the Navy in Guam that it began performing while doing the work on the Navy Contract at issue in this case. That was a $30 million contract with over $7 million share allocated to Rhino. Rhino's margin of profit was 18% on the work it did on the SOC contract. There was an additional $1.6 million of work won that required bonding that we were not allowed to perform due to our loss of bonding, which represents a loss of about $288,000 profits for work awarded to Rhino that it was not allowed to complete on that contract. Also, as the incumbent, Rhino would have been able to extend for another five years for another $7 million, but it could not do so due to its loss of bonding, which damaged Rhino by more than $1.4 million.

8. In mid-2001, Rhino won a Basic Order Agreement, or BOA, contract with the Navy in Hawaii. A true and correct copy of the award letter is attached hereto as Exhibit 2. This contract was initially for $30 million but was quickly increased by the Navy to $52 million to be shared among four contractors including Rhino. The consultant assisting Rhino through the bid process, Mr. Charles Strickland, estimated that Rhino would have been allocated between 25% and 30% of the $52 million based on the fact that we were the only SBA 8(a) minority-owned

4

participant among the successful bidders and, in addition, we were qualified as a historically underutilized business development zone, or HUB-Zone, company. We were then in a position to realize a minimum of $2.3 million on the BOA contract. However, due to our loss of bonding through BPI's actions, we were not allowed to start work. We tried many options to obtain bonding, but were unable to obtain it because Rhino felt a duty to disclose to the insurer that it was preparing to sue BPI, which made the insurer raise the collateral requirements to levels Rhino could not afford, because Mr. Garthe's cooperation was needed to solve this problem for Rhino, and he was under BPI's influence and control as its employee by that time, and because Citibank would not reissue Rhino's line of credit until Rhino was able to recover funds from BPI used for the Navy Contract, which Rhino is seeking to do in this lawsuit. Rhino's line of credit had been frozen because Rhino had used it to support BPI's project before Mr. Lam would sign the written subcontract in reliance upon his promise to do so.

> I declare under penalty of perjury that the foregoing is true and correct.
>
> EXECUTED this 30 day of January 2004.

_____
EUGENE PATTEN

_____ )
                            ) ss:
STATE OF HAWAII.    )

SUBSCRIBED and SWORN on this 29th day of January, 2004, in Honolulu, Hawaii, before me, Darlyn M. Silva, a Notary Public, in and for the State of Hawaii, by EUGENE PATTEN, known to me to be the person whose name is subscribed to the foregoing Declaration, who acknowledged to me that he executed the same as his free and voluntary act for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

) S E A L (

Darlyn M. Silva
Notary Public in and for the State of Hawaii
My Commission Expires May 14, 2004

# RHINO BUILDERS, INC.
# BPI COST BREAKDOWN

Direct Expense

| | | | |
|---|---|---|---|
| 50001 | Material | 21,117.98 | |
| 50003 | Equipment Lease/Rental (b) | 14,836.12 | Truck lease for 10 mos. @ 902 |
| 50004 | Subcontracted | 2,459.22 | |
| 50005 | Other Job Expense ( c ), (j) | 51,461.66 | |
| 50007 | Bonding | - | None |
| 50010 | Guam GRT (g) | - | See end of sheet |
| 50400 | Direct Labor w/Burden | 20,787.87 | |
| 50600 | Richard Avilla's Labor w/fringe | 41,089.42 | (e) |
| 50600 | Alfred Garthe @ 75% | 24,528.81 | (e) |

Total BPI Contract Costs: 176,281.08

176,281.08

Overhead Expense

| | | |
|---|---|---|
| 60000 | Rent | 13,100.00 |
| 60010 | Office Supplies | 2,477.80 |
| 60020 | Utilities | 2,493.38 |
| 60030 | Communications | 9,089.41 |
| 60050 | Postage & Freight | 822.73 |
| 60120 | Other Outside Serv. | 2,450.14 |
| 60150 | Consulting Fees | 4,200.00 |
| 60190 | Gov't License Fees | 728.14 |
| 60200 | Travel Expense | 4,806.51 |
| 60250 | Dues & Subscript'n | 560.00 |
| 60300 | Maintenance & Rep | 325.00 |
| 61000 | Insurance | 19,290.00 |
| 61500 | Equip. Rental/Lease | 1,736.35 |
| 62000 | Plan Fees | 622.00 |
| 64000 | Overhead Labor w/Burden (f) | 34,322.33 | Need to recheck numbers
| 65000 | Vehicle Maint | 7,248.28 |
| 65100 | Vehicle Fees | 83.50 |
| 65200 | Fuel | 2,813.05 |
| 65300 | Vehicle Repair | 5,133.64 |
| 66000 | Small Tools ( c ) | |
| 68100 | Vehicle Dep'n Exp (d) | 9,425.76 |
| 68300 | Tools Dep'n Exp (i) | 1,550.01 |
| 68400 | Office Dep'n Exp | 2,034.32 |
| 77010 | Interest Expense (h) | |
| 77020 | Bank Service Fees | 373.33 |
| 77100 | Advertisement | 271.10 |
| 77200 | Donations & Contrib. | 750.00 |

Total Overhead Expense: 126,706.78

50%      63,353.39

BPI Cost before burden      239,634.47
Less: Payment received      (25,000.00)

EXHIBIT J

# RHINO BUILDERS, INC.
# BPI COST BREAKDOWN

|  |  |  |  |
|---|---|---|---|
| 50500 Interest Rate (a) | 14% | 214,634.47 |  |
| Total months since 7/00 to 5/03 | 34.00 | 85,138.34 |  |
|  |  | 324,772.81 |  |
| Hawaii Overhead Rate applied | 5% | 16,238.64 |  |
|  |  | 341,011.45 |  |
| Profit | 15% | 51,151.72 |  |
| Cost of Contract before GRT |  | 392,163.17 |  |
| GRT (g) | 4% | 15,686.53 |  |
|  |  | 407,849.70 |  |

General Note: RB SOC contract cost are not included in totals above

(a) 50500 - Interest - @ 14% for 1 year. 10.5% bank interest 2% admin fee 1.5% SBA Security Fee.
(b) 50003 - Equipment Lease - does not include rental usage of 5 P/U trucks
(c) 50005 - Other Direct Cost - includes non-returned equipment and 66000 - Small Tools
(d) Half year depreciation of Vehicles. See 50003 - Equipment Lease for other charges.
(e) Richard and Al's BPI cost needs to be rechecked.
(f) 64000 - Overhead Labor includes both Overhead (64000) and Admin (74000) Labor.
(g) GRT applied to end of cost sheet to enhance readability and understanding.
(h) 77010 - Interest Exp. - Amount of interest was removed to promote fairness with 50500 - Interest rate being applied.
(i) 68300 - Tools Dep'n Exp - Does not include tools shipped from Hawaii. Need to reverify items and cost.
(j) 50005 - Other Direct Cost - Does not include tools shipped from Hawaii and not returned by BPI. Need to verify items and cost.