James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: (808) 547-5151
Facsimile No.: (808) 599-4517

Louie J. Yanza b
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

FILED
DISTRICT COURT OF GUAM
FEB 13 2004
MARY L. M. MORAN
CLERK OF COURT

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br><br><br> NOTICE OF SUPPLEMENTAL AUTHORITY |
| BIOGENESIS PACIFIC, INC., <br><br> Counterclaimant, <br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendant. | |

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY | ) ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC. | ) ) |
| Cross-Claim Defendant. | ) |

COMES NOW, Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") (collectively "Defendants"), through counsel, VERNIER & MAHER, LLP, by Louie J. Yanza, and hereby gives notice of their intent to rely and refer to, and submit supplemental authority in support of their Motion for Dismissal of Plaintiff's Bad Faith Cause of Action for Failure to State a Claim; or, in the Alternative, for Summary Judgment, filed on December 31, 2003.

This supplemental authority consists of:

1. *Castro v. Peck*, 1998 Guam 2 (1998). A copy of said authority is attached hereto for the Court's reference.

2. *GHURA v. Murphy Enterprises, Inc.*, Superior Court of Guam, Civil Case No. CV2642-99. A copy of said authority is attached hereto for the Court's reference.

Respectfully submitted this 13th day of February, 2004.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

## CERTIFICATE OF SERVICE

I, Louie J. Yanza, hereby certify that on or before February 13, 2004, I will cause to be sent by personal service or by facsimile a copy of the annexed **Notice of Supplemental Authority**, to the following parties at their place of business:

Ms. Janalynn M. Cruz
**CALVO & CLARK, LLP**
Suite 202, First Savings & Loan Building
655 South Marine Drive
Tamuning, Guam 96911

Ms. Catherine M. Bejerana
**BERMAN O'CONNOR MANN & SHKLOV**
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910

**Mr. Antonio L. Cortes**
Attorney At Law
233 Julale Center
424 West O'Brien Drive
Post Office Box BV
Hagåtña, Guam 96932-8973

**Mr. Frederick J. Kerley**
Reflection Center Building, Suite 202
222 Chalan Santo Papa
Hagåtña, Guam 96910

Executed this 13th day of February, 2004.

**VERNIER & MAHER, LLP**
Attorney for Defendants
**AIG TECHNICAL SERVICES, INC.** and
**AMERICAN HOME ASSURANCE COMPANY**

BY: _____
LOUIE J. YANZA

# IN THE SUPREME COURT OF GUAM

| | |
|---|---|
| GERTRUDE CASTRO, )<br>)<br>Plaintiff-Appellant, )<br>)<br>)<br>vs. )<br>)<br>ROBERT PECK, dba B.B.H.S. )<br>CONTRACTING, AND STANDARD )<br>PLYTRADE CORPORATION, )<br>)<br>Defendant-Appellee, )<br>) | SUPREME COURT NO. CVA97-003<br>SUPERIOR COURT NO. CV0094-94<br><br><br>OPINION |

Filed April 7, 1998

Cite as: **1998 Guam 2**

Appeal from the Superior Court of Guam.

Argued and Submitted on 20 August 1997

Agana, Guam

Appearing for the Plaintiff-Appellant:
William C. Bischoff, Esq.
134 Chalan Santo Papa, Ste. 202
Agana, Guam 96910


Appearing for the Defendant-Appellee:
Terry E. Timblin, Esq.
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Agana, Guam 96910

BEFORE: JANET HEALY WEEKS, Acting Chief Justice; JOAQUIN C. ARRIOLA and EDUARDO CALVO, Associate Justices.

WEEKS, J.:

[1]     This is an appeal from a grant of summary judgment dismissing Plaintiff-Appellant Gertrude Castro's ("Castro") complaint against Defendant-Appellee Standard Plytrade Corporation ("Standard Plytrade"). The trial court determined that Standard Plytrade was exonerated from guarantor liability due to an unapproved material alteration of a construction contract guaranteed by Standard Plytrade. Based upon a review of the applicable law, the record and the briefs presented, this Court affirms the decision of the trial court for the reasons set forth below.

I.

[2]     Plaintiff-Appellant Gertrude Castro ("Castro") contracted with Robert Peck, dba BBHS ("BBHS"), to renovate Castro's home for $81,000.00 (the "Construction Contract"). On 18 October 1991, Standard Plytrade, as guarantor; Castro as the obligee, and BBHS, as the principal, entered into an Indemnity and Supply Agreement under which BBHS agreed to buy all supplies needed for the Construction Contract from Standard Plytrade and to guarantee BBHS's performance of the Construction Contract (the "Performance Guaranty").

[3]     On 6 February 1992, Castro executed a "change order" authorizing BBHS to install security windows at an additional cost of $2,447.20. A second "change order" was executed on 13 March 1992. Both resulted in an increase of the contract price. Standard Plytrade did not preapprove either one. In May of 1992, BBHS defaulted on the Construction Contract and work on Castro's house ceased. Castro demanded that Standard Plytrade comply with the Performance Guaranty and complete the Construction Contract, including the alterations provided by the change orders. Standard Plytrade refused to finish the project and Castro filed suit against both BBHS and Standard Plytrade. The trial court subsequently dismissed the suit against Standard Plytrade based upon the defense of exoneration and the present appeal followed.

II.

[4]     This Court has jurisdiction over the final judgment entered by the Superior Court under 48 U.S.C. §1424-3(d) and 7 GCA §§ 3107 and 3108. This Court will conduct a de novo review of the trial court's decision to grant summary judgment. *Iizuka Corp. v. Kawasho Int'l Inc., et al.*, Guam S.Ct. Case No. CVA 96-009 (June 24, 1997). Under Rule 56 of the Guam Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must view the evidence and draw inferences in the light most favorable to the nonmovant. *E.E.O.C. v. Local 350, Plumbers and Pipefitters*, 982 F.2d 1305, 1307 (9th Cir. 1992). The "court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Electrical Inc. v. Pac. Electrical Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

[5]     There is no material dispute as to the existence of an unapproved material alteration to the Construction Contract. The issues presented upon appeal are: (1) whether preapproval by the surety of a material alteration to the Construction Contract is required; and (2) whether an unapproved material alteration to the Construction Contract exonerates Standard Plytrade from liability.

[6]     Appellant Castro concedes the 6 February 1992 change order in the amount of $2,447.20 was a

material alteration of the Construction Contract[1]; nonetheless, she contends: (1) the owner was not required to seek prior written approval of the change order from the surety; (2) an ambiguity exists as to the extent of the exoneration available to the surety; and (3) California case law should not be relied upon in determining the issue of exoneration.

[7]     Appellee Standard Plytrade argues: (1) the Performance Guaranty requires prior approval of alterations and that any alteration is a material alteration resulting in complete exoneration of Standard Plytrade and (2) the $2,447.20 change order materially altered the Construction Contract. Appellee also asserts that *Roberto v. Aguon*, 519 F.2d 754 (9th Cir. 1975) remains controlling law and California cases interpreting California surety law should govern the decision of this case[2].

### III.

[8]     The statutory provisions allowing for the complete or *pro tanto* exoneration of a surety are set forth at 18 GCA § 32205(1)-(3) and are almost identical to early California provisions. Furthermore, the contractual provisions of the Construction Contract and Performance Guaranty also set forth the grounds for exoneration of the surety's obligation.

18 GCA § 32205 provides for the exoneration of a surety as follows:

1. In a like manner with a guarantor[3];

2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security[4]; or,

3. To the extent to which he is prejudiced by an omission of the creditor to do anything when required by the surety, which it is his duty to do[5].

18 GCA § 31601 provides for the complete exoneration of a guarantor and states:

> A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto are in any way impaired or suspended.

18 GCA § 31601, formerly Guam Civil Code § 2819, was modeled after California Civil Code §2819 and operates to completely exonerate a surety where a material alteration was made to the obligation of the principal. *See, Alcatraz*, 85 P. 156; *First Congregational Church of Christ in Corona v. Lowrey*, (Cal. 1917), 165 P. 440; *Michelin Tire Co. v. Bentel*, 193 P. 770, 773 (Cal. 1920); *People v. Fidelity & Deposit Co. Of Maryland*, 82 P.2d 495 (Cal. Ct. App.. 1938); *Verdugo Highlands, Inc. v. Security Ins. Co. of New Haven*, 240 CA.2d 527 (Cal. Ct. App. 1966); *Texaco Refining & Marketing v. Aetna Cas. & Sur. Co. Inc.*, 895 F.2d 637 (9th Cir. 1990). As stated in *Alcatraz*,:

> There is no principle of law better settled than that a surety has the right to stand on the very terms of his contract, and that any alteration in the terms of the principal's contract, made by the parties thereto without his assent, will have the effect to discharge him of all liability. By such alteration the contract ceases to be the one for which he became surety, and the extent of such alteration, or whether his liability will be increased or diminished thereby, is immaterial.

Case 1:02-cv-00008    Document 367    Filed 02/13/2004    Page 6 of 15

85 P.2d at 157.

[9] The plain language of 18 GCA § 31601 permits exoneration when the original obligation of the guarantor is altered in any respect. This reading is supported by California case authority. Although California courts have imputed a requirement that such alterations be material, increases in obligations by $315.00 or $577.35, respectively, have been held to be sufficiently material to warrant exoneration of the guarantor. *See, Alcatraz,* 85 P. 156; *Lowrey,* 165 P. 440.

[10] In *Alcatraz,* the owner and contractor entered into a $16,300.00 construction contract which was bonded by a surety company. 85 P. at 156. The owner and contractor subsequently agreed to an alteration of the construction contract which increased the total cost by $315.00. *Id.* at 157. The surety was not notified of the changes and the trial court entered a judgment completely exonerating the surety due to the unapproved change. *Id.* at 158.

[11] In *Lowrey,* the California Supreme Court determined that changes increasing a construction contract by over $500.00 was material and that complete exoneration of the surety was justified. 165 P. at 440. In that case, the California Supreme Court reiterated that no injury or prejudice to the surety needs to be established. *Id.* at 441. The Court refused to conduct a review of decisions from other jurisdictions noting that:

> It would serve no profitable purpose to analyze these decisions, nor to search the laws of the states which have rendered them to determine whether or not the courts were, as this court is, bound by positive statutory declaration upon the subject, for in view of our own Code provisions such a discussion could have no value. . . . Our Code speaks with absolute finality upon the subject. . . .Our decisions construing these sections uniformly hold that, if there has been such a change in the contract in any (material) respect, the inquiry there ends and the guarantor is exonerated, and that it is not a subject of inquiry whether the alteration has or has not been to his injury.

*Id.* The Appellant cites several cases in support of their argument that complete exoneration should not be allowed. However such cases do not involve a material alteration of the principal's obligation (governed by 18 GCA § 31601), but instead, relate to acts (§ 32205(2)) or omissions (§ 32205(3)) of the creditor which cause prejudice or harm to the surety. *See, Gibbs v. Hartford Acc. & Indem. Co.,* 62 So.2d 599 (Fla. 1952); *Talbert v. Bounds & Allen,* 123 So.2d 815 (La. Ct. App. 1960); *Metropolitan Casualty Ins. Co. of New York v. Koelling,* 57 So.2d 562 (Miss. 1952); *Corporation of President of Church of Jesus Christ of Latter Day Saints v. Hartford Acc. & Indem. Co.,* 96 P.2d 736 (Utah 1939). In those situations which involve acts or omissions, the surety is exonerated, *pro tanto,* that is, only to the extent of the prejudice suffered. However, where the surety contract is materially altered, the exoneration is complete. The cases cited above are all distinguishable on that ground alone.

[12] Appellant further argues that this Court should judicially recognize a distinction between compensated and uncompensated sureties and that Standard Plytrade is a compensated surety. Standard Plytrade received an exclusive supply agreement with BBHS as consideration for issuing the Performance Guaranty for the Castro home improvement project. As a compensated surety, Standard Plytrade would only be permitted exoneration to the extent of the prejudice suffered. The public policy reasons for drawing the distinction between a compensated and voluntary surety are based on principles of equity, because "to allow compensated surety companies to collect and retain premiums for their services, graded according to the nature and extent of the risk, and then to repudiate their obligations on slight pretexts which have no relation to the risk, would be most unjust and immoral, and would be a perversion of the wise and just rules designed for the protection of voluntary sureties." 74 Am.Jur.2d *Suretyship,* § 259 (1974). As a compensated surety, Standard Plytrade would need to establish a material alteration of the contract and prejudice from such an

alteration. Furthermore, exoneration would be limited to the extent of the prejudice suffered by the surety.

[13]     However, to accept Appellant's contention that Standard Plytrade should be exonerated only to the extent of the prejudice, this Court must first be willing and able to draw a distinction between compensated and gratuitous sureties. *Chapman v. Hoage*, 296 U.S. 526, 531 (1936). In *Hoage*, the United States Supreme Court recognized that a compensated surety is released by a modification of the principal's obligation to the extent that the surety is prejudiced. *Id.* at 531. However, the Hoage court stated that general principles of suretyship would apply. *Id.* at 334. Hoage did not involve a statute which provides complete exoneration in certain situations (i.e., the material alteration of the obligation) and *pro tanto* relief in others (i.e., an act or omission of creditor which prejudices the surety). *See*, 18 GCA §§ 31601, 32205.

[14]     Under relevant case law interpreting statutory provisions similar to ours, a surety is exonerated not only in the absence of prejudice or injury but also when an alteration benefits the surety. *See, Boteler v. Conway*, 56 P.2d 587, 589 (Cal. Ct. App. 1936); *see also, Alcatraz*, 85 P. 156, 157 (Cal Ct. App. 1906); *Lowrey*, 165 P. 440, 441; *Michelin Tire Co.* 193 P. 770; 773. And while this Court does not feel bound by such decisions, we also do not feel it necessary to deviate from the clear path that has already been drawn. *People v. Quenga*, 1997 Guam 6 ¶13, n.4.

[15]     The California Supreme Court, in rejecting the idea of judicially modifying Cal. Civil Code § 2840 to treat compensated sureties differently stated: "[t]o impose such distinctions, while sections 2819 and 2840, Civil Code, read as they now read upon the books, would not be to interpret and to enforce the written law, but to make new law in hostility to it. It is for the Legislature, and not for the courts, to modify our statutory law..." *Lowrey*, 165 P. 440 at 441.[6] The California decisions are guided by the plain language of CAL. CIV. CODE § 2840 (repealed 1939) which provides for complete exoneration when the contract is altered, and *pro tanto* exoneration when the creditor acts or fails to act in a way which prejudices the surety. The Guam statute is identical to the California provisions in this instance and no statutory distinction exists between gratuitous and compensated sureties. This Court cannot now create one in circumvention of legislative policy.

[16]     As the law now stands, neither 18 GCA § 31601 nor § 32205 requires a showing of prejudice when a contract alteration materially changes the principal's obligation. Nor does the Performance Guaranty itself suggest that *pro tanto* exoneration is an affordable relief. 18 GCA §§ 32205(2) and (3) already provide *pro tanto* exoneration where the prejudice suffered by the surety is caused by an act or omission of the creditor. If this Court were to impute a *pro tanto* exoneration for material alterations of the contract, it would be reading into the statute a provision which the Legislature could have provided, but did not. Since the Guam Legislature did not provide for *pro tanto* exoneration when a construction contract is materially altered, this Court cannot impute such relief. As a matter of law, a material alteration completely exonerates the surety.

[17]     The Construction Contract, Performance Guaranty and Indemnity Agreement also provide remedies where the Construction Contract is altered without the surety's consent. The Construction Contract, Performance Guaranty and Indemnity Agreement were all executed as part of a single transaction. Such documents are construed as an entire contract. *Conway*, 56 P.2d 587 at 588. Various provisions within each of the three documents discuss alterations and the effect of such alterations on the Construction Contract and Performance Guaranty. Specifically: (1) Paragraph 8 of the Construction Contract permits Castro to make changes to the plans without voiding the Construction Contract; (2) however, paragraph 8 of the Performance Guaranty requires that all material changes to the plans and Construction Contract be approved by the surety; and (3) the Indemnity and Supply Agreement places the duty of informing Standard Plytrade of any changes or alterations on the contractor, BBHS. Paragraph 8 of the Performance Guaranty states specifically:

>  this Performance Guaranty guarantees the Contractor's performance of the Contract set forth above, **any modification, alteration or change in that Contract, its drawings or**

**specifications must be agreed to in writing by the Guarantor, or this Guaranty is void and the Guarantor's obligation exonerated.** (*Emphasis added.*)

It states further, "[a]ny and all modifications of the Contract are hereby deemed to be materials [sic] and will cause the exoneration of the Guarantor's obligations hereunder if not expressly agreed to in writing by the Guarantor." Under the terms of the Construction Contract and Performance Guaranty, the $2,447.20 change order was an unapproved material alteration of the Construction Contract for which the remedy is exoneration. 18 GCA §32201 also limits the surety's obligation to the express term of the contract. In case of a breach of the contract, the surety cannot be held to more than the contract prescribes as a penalty. *Id.* The Construction Contract provided for complete exoneration as the penalty for an unapproved material alteration and the law requires that such penalty be enforced.

[18]     It is also clear that such exoneration should be complete, and not *pro tanto*. Paragraph 7 of the Performance Guaranty permits *pro tanto* exoneration to the extent that the Owner interferes with the prompt performance of the Contractor, but in no other situations is *pro tanto* exoneration provided for in the Construction Contract or Performance Guaranty. Paragraph 8 of the Performance Guaranty does not limit exoneration to the extent of prejudice suffered by the surety.

[19]     Both the statutes and the contractual provisions are clear and unambiguous in requiring that preapproval of a material alteration of the Construction Contract must be obtained from the surety, Standard Plytrade.

Conclusion

[20]     There was a material alteration of the Construction Contract. Both Guam law and the provisions of the Construction Contract and Performance Guaranty operate to exonerate Standard Plytrade from liability due to the material alteration. Such exoneration, either under Guam law or the contractual provisions is complete. The Guam Legislature has not altered the surety statutes to allow for the exoneration of compensated sureties to the extent of prejudice suffered by a material alteration of the contract. As there is no genuine issue of any material fact, and the trial court correctly applied the relevant law, the summary judgment in favor of Standard Plytrade is AFFIRMED.

1. The Appellant also agreed that a material alteration prejudices the surety.

2. This case provides a poor vehicle to consider *Roberto v. Aguon's* vitality as precedent. Appellant's concessions, that the changes ordered amounted to a material alteration of the Construction Contract and that a material alteration prejudices the surety, in conjunction with the terms of the contractual agreements requiring complete exoneration, would compel us to the legal conclusion required by California's case law even if we were to find that it was not forced upon us by *Roberto*.

3. § 32205(1) applies where the principal's obligation is changed by an unapproved material alteration, regardless of prejudice suffered. *See e.g., Alcatraz Masonic Hall Ass'n v. U.S. Fidelity & Guaranty Co.*, 85 P. 156 (Cal. Ct. App.. 1906) (alteration resulting in a $315 increase in contractual cost is material enough to warrant complete exoneration.)

4. § 32205(2) applies in those situations where there is an injurious act by the creditor, for example, in the case involving a premature payment to a subcontractor. *See, e.g., Burr v. Gardella* 200 P. 493 (Cal. Ct. App.. 1921) (premature payments result in *pro tanto* exoneration); *see also*, The American

Ins. Company v. Heritage Constr. Corp., 268 F.Supp. 336 (N.D. Cal. 1965) (Under California law, a premature payment is not an alteration of the contract, but an act injurious to the rights of the surety and exoneration is limited to the extent of the injury.).

5. § 32205(3) is applicable where the creditor has a duty to act and fails to do so. *See, e.g., Fuqua v. Tulsa Masonic Bldg Ass'n*, 263 P. 660 (Okla. 1928) (failure to withhold percentage of value of work done is an omission which results in *pro tanto* exoneration).

6. At the same time, the California Court has imputed the requirement that alterations be material before justifying exoneration. *See, Lowrey*, 165 P.2d 440, 441.

Territorial Law Library
RECEIVED
AUG 24 2001
GUAM LAW LIBRARY

IN THE SUPERIOR COURT
OF GUAM

GUAM HOUSING AND URBAN
RENEWAL AUTHORITY (GHURA),

Plaintiff,

vs.

MURPHY ENTERPRISES, INC., a Guam
Corporation, GULF INSURANCE
COMPANY, a foreign corporation and
DOES 1 - 5,

Defendants.

CIVIL CASE NO. CV2642-99

DECISION AND ORDER

## INTRODUCTION

This matter came before the HONORABLE MICHAEL J. BORDALLO on the 4th day of April, 2001 on Defendant Gulf Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Bad Faith claim. Mark Smith represented the Plaintiff. Jon A. Visosky represented Defendant Gulf Insurance Company. Thomas Tarpley was represented Murphy Enterprises Inc.. Defendant Murphy Enterprises Inc. takes no position on the Motion. The Court took the matter under advisement. The Court now issues the Following Decision and Order.

## BACKGROUND

On March 17, 1998, the Plaintiff, Guam Housing and Urban Renewal Authority ("GHURA") and the Defendant, Murphy Enterprises, Inc. ("Murphy") entered into a contract for the construction of a retaining wall in Asan, Guam. Defendant Gulf Insurance Company ("Gulf") executed a performance bond in favor of GHURA wherein Gulf guaranteed Murphy's performance under the agreement. A dispute arose between GHURA and Murphy. GHURA alleges that Murphy failed to complete the project pursuant to the contract, and Gulf failed to honor the performance bond.

On December 17, 1999, GHURA filed a complaint in order to recover the amount necessary to complete the project, and other damages including punitive damages. GHURA claims that Gulf had a duty of good faith and fair dealing toward GHURA in processing its claim under the performance bond. Gulf breached its duty of good faith and fair dealing because Gulf failed to conduct a

reasonable investigation of the claim and did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. Therefore, GHURA is seeking compensation for damages it incurred as a result of Gulf's bad faith.

## DISCUSSION

The Defendant, Gulf Insurance Company ("Gulf") requests this Court to grant partial summary judgment against Guam Housing and Urban Renewal Authority's ("GHURA") claim for bad faith. Before addressing the merits of the case, a determination must be made on whether or not GHURA, the obligee, can sue Gulf, the surety, in tort for refusing in bad faith to effectuate a prompt, fair and equitable settlement of its claim.

It has long been recognized that a cause of action does exist in tort when an insurer refuses to pay a valid claim submitted by its insured in bad faith. Dodge v. Fidelity and Deposit Company of Maryland, 161 Ariz. 344, at 344 (Ariz. 1989). In the insurance policy setting, an insured may recover damages not otherwise available in a contract action, such as emotional distress damages resulting from the insurer's bad faith conduct and punitive damages if there has been oppression, fraud, or malice by the insurer. Cates Construction, Inc. v. Talbot Partners, 21 Cal.4th 28, at 42 (Cal. 1999).

In Cates, the surety company disputed liability claiming that it did not guarantee the principal's prompt performance but merely assured completion of the condominium project in the event of the principal's default. There the court held that the issue was one of contract interpretation and then went on to discuss the availability of a claim for breach of the covenant of good faith and fair dealing in tort. Id. According to the court in Cates, a separate tort action is not available to the obligee because the Insurance Code defines "insurance" to mean "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Whereas a surety bond is a contract whereby one promises to answer for the debt, default, or miscarriage of another. Therefore, a surety's posture as to an obligee on a performance bond is not necessarily one of indemnitor. Id. at 51. In addition, the court determined that obligees generally possess ample bargaining power to negotiate for favorable bond terms unlike the insured who must accept insurance

on the insurer's terms. The court also stated that sureties do not owe a fiduciary duty to an obligee because insurance regulations exempt sureties from many of the fair claims settlement standards applicable to issuers of insurance polices. Finally, the Court in <u>Cates</u> concluded that since obligees are in the position to specify the terms of the bond requirement then it should be limited to the remedies available under the contract and this will provide adequate compensation for breach of the bond. <u>Id</u>. at 56. Therefore, Gulf claims that GHURA cannot sue for bad faith in tort because that cause of action is not available in the commercial surety context.

In <u>International Fidelity Insurance Company v. Delarva Systems Corporation</u>, 2001 WL 541469 (Del. Super. 2001), the contractor breached the construction contract by abandoning performance at the work site and the surety refused to perform its obligations under the performance bond to the owner. In <u>Fidelity</u>, the Court disagreed with the holding in <u>Cates</u> stating that it was not persuaded by the reasoning in <u>Cates</u> that the inclusion of sureties in the Insurance Code did not require its classification as insurance for other purposes. <u>Id</u> at 9. There is no basis to substantiate that the Legislature only included surety under the insurance statutes to allow for regulatory supervision or limited its application in an insurance context. The Court concluded that it will not ignore what appears to be the clear will of the Legislature. <u>Id</u>.

Similarly, GHURA points out that under Guam Law surety companies are included as a class of insurance under Title 22 of the Guam Code Annotated § 18106. Title 22 of the Guam Coded Annotated §18101 states that an insurer authorized to do business in Guam may only write classes of insurance authorized by this article and by the insurer's certificate of authority. 22 G.C.A.§18101. Listed under 22 G.C.A. §18106 as one of the classes of insurance is Fidelity and Surety Insurance. 22 G.C.A. §18106. Clearly, the Legislature intended to include surety as a type of insurance covered under the Insurance Laws of Guam.

As insurers, sureties have a duty to act in good faith. <u>Dodge v. Fidelity and Deposit Company of Maryland</u>, 161 Ariz. 344, at 345 (Ariz. 1989). There, the Court identified factors that create a relationship in which the law implies special duties not imposed on other contractual

- 3 -

relationships. The two most important factors are (1) whether the plaintiff contracted for security or protection rather than for profit or commercial advantage, and (2) whether permitting tort damages will "provide a substantial deterrence against breach by the party who derives a commercial benefit from the relationship. Id. In Dodge, the obligee claimed that the principal contractor failed to provide labor and materials to complete the home. The obligees then declared the contractor in default and made demand upon Fidelity to remedy the default. Id. Similarly, in this case Murphy failed to build the retaining wall, GHURA declared Murphy to be in default and submitted a claim to Gulf honor its obligation under the performance bond.

In Dodge, the court determined that the purpose of a construction performance bond is not for commercial advantage but to protect the obligee from calamity. A contractor's default has the potential for creating great financial and personal hardship to a homeowner. Surety insurance is obtained with the hope of avoiding such hardships. Imposing tort damages on a surety who in bad faith refuses to pay a valid claim will deter such conduct. Id. The defendant in Dodge did not dispute that a surety owes a duty to the obligee on a performance bond. However, defendant contends that a surety agreement requires the surety to divide its loyalty between the principal and the obligee. The Court in Dodge did not dispute that a surety has an enforceable obligation of good faith toward its principal. However, the duty imposed on a surety to deal in good faith with its obligee does not require it to act in bad faith with its principal. Id. at 346.

Similarly, in this case, Gulf claims that by imposing tort damages on the surety in this situation it will conflict with the duties it owes to the principal. However, so long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability. Id.

To allow the surety to purposely delay or intentionally manipulate payment to their benefit would undermine the primary purpose of insulating the obligee from risk of default. Permitting a bad faith claim in the surety context would conceivably deter such action. International Fidelity Insurance Company v. Delmarva Systems Corporation, 2001 WL 541469, at 8 (Del. Super. 2001). The Court in Fidelity was not convinced that the Insurance Code provided the necessary and appropriate

sanctions for a surety's bad faith breach or that merely recovering the contract amount sufficiently remedies the potentially catastrophic losses related to the surety's bad faith delay. *Id.*

## CONCLUSION

Based on the foregoing, the Court finds that a cause of action may exist in tort when a surety company refuses to settle claims from the obligee in bad faith. Therefore, the Court denies Defendant's Motion for Partial Summary Judgment.

SO ORDERED this 20th day of August, 2001.

Honorable Michael J. Bordallo
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam Dated at Hagatna, Guam

AUG 2 2 2001