ORIGINAL

FILED
DISTRICT COURT OF GUAM
APR 15 2004
MARY L. M. MORAN
CLERK OF COURT
408

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. | Civil Case No. 02-00008 <br><br><br><br><br><br><br><br><br><br> **ORDER** |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendants. | |
| AMERICAN HOME ASSURANCE COMPANY, <br><br> Cross-Claimant, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

This matter came before the Court on Rhino Builders, Inc.'s Motion for Judgment on Punitive Damages. Upon consideration of the record, oral arguments, and relevant case law, the Court DENIES the motion for the following reasons:

**I. BACKGROUND.**

Plaintiff Rhino Builders, Inc. ("Rhino")[1] brings this action under the Miller Act, 40 U.S.C. §§ 3131 et seq. Around September 1999, Defendant contractor BioGenesis Pacific, Inc. ("BioGenesis")[2] entered into a contract with the United States of America to furnish materials and perform labor for the installation of U.S. Navy housing roofing, for a consideration of $4,926,657.00. BioGenesis was to perform under the contract, designated Navy Contract No. N62766-99-D-0425 (the "Navy Contract"), during the period from May 15, 2000, to September 29, 2001. The Navy Contract was continued and, as of June 30, 2003, when BioGenesis filed its Answer to the Second Amended Complaint, was in effect.

Around May 2000, Rhino allegedly entered into an oral subcontract with BioGenesis. Rhino agreed to perform such contract work that the U.S. Navy might assign to BioGenesis on individual task orders under the Navy Contract. Under the terms agreed upon, BioGenesis was to pay all of Rhino's actual costs of performance plus fifty percent (50%) of BioGenesis' profit upon completion of each task order. While the terms were later recited in a letter from BioGenesis to Rhino, no formal written subcontract was ever executed between the parties.

On July 30, 2003, BioGenesis filed an Answer to Rhino's Second Amended Complaint and a Counterclaim, in which BioGenesis raises two causes of action, including fraud, against Rhino. BioGenesis claims that Rhino and Michael O'Connell ("O'Connell"), Rhino's chief executive officer, committed fraud by falsely communicating to Richard Avilla ("Avilla"), Rhino's Guam operations manager and BioGenesis' representative with respect to the Navy, that BioGenesis had entered into a subcontract with Rhino to perform work under the Navy

---

[1] Rhino is a Hawaii corporation engaged in the business of roofing installation and repairs. At all relevant times, Rhino was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

[2] BioGenesis is a Hawaii corporation.

2

Contract and that BioGenesis had authorized Avilla to begin accepting delivery orders under the Navy Contract and to begin assigning them to Rhino. BioGenesis claims that this false communication caused Avilla to accept, on behalf of BioGenesis, eighteen delivery orders from the Navy under the Navy Contract. BioGenesis claims that Rhino and O'Connell lied to Avilla in order to defraud BioGenesis and force it into a subcontract with Rhino to avoid termination by default of the Navy Contract, since at that time BioGenesis had not yet mobilized any workforce or hired any employees in Guam.

BioGenesis states that, as a result of this fraud, it agreed to allow Rhino to complete Delivery Order Nos. 1, 2, and 7, and paid Rhino $25,000 for materials and supplies allegedly purchased by Rhino to complete said delivery orders. BioGenesis further states that it continued to negotiate with Rhino regarding a subcontract, but that, due to Rhino's repeated bad faith and tortious conduct, BioGenesis refused to enter into a formal subcontract with Rhino. BioGenesis claims that it started and completed all the work on the fifteen remaining delivery orders.

BioGenesis claims that, in committing said acts, Rhino and O'Connell acted maliciously and willfully and with the intent to defraud BioGenesis and force it into a subcontract with Rhino. Thus, BioGenesis requests an award of $43,854.20 in actual damages and $7,029,328.94 in punitive damages against Rhino and O'Connell for their fraudulent acts.

On December 15, 2003, Rhino filed the present motion for judgement on punitive damages, to which BioGenesis filed an opposition on January 23, 2004. Rhino filed a reply on January 30, 2004. The Court heard oral arguments on the motion on February 25, 2004.

## II. ANALYSIS.

Rhino moves for summary judgment on BioGenesis' prayer for punitive damages. For a party seeking summary judgment to succeed, he must show that there exists "no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material is determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). If the fact might affect the outcome, then it is material. Id. If a party moves for summary judgment on a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden by

offering affirmative, admissible evidence. But, when the nonmoving party has the burden of proving the claim or defense, the movant can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The movant is not required to disprove the other party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

If the movant meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). When evaluating whether the non-movant's assertions raise a genuine issue, the court must believe the non-movant's evidence and draw all justifiable inferences in the non-movant's favor. Anderson, 477 U.S. at 255.

Here, Rhino claims that BioGenesis' prayer for $7,029,328.94 in punitive damages on an alleged claim of $43,854.20 in actual damages is unconstitutional, violates Rhino's civil rights, and constitutes a vexatious and oppressive litigation tactic.

As for the constitutionality of punitive damages, the United States Supreme Court has very recently stated that

> few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In [Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 113 L. Ed. 2d 1, 111 S. Ct. 1032 (1991)], in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.... Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 ... or ... of 145 to 1....
> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages." ... The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.
> [C]ourts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S. Ct. 1513, 1524, 155 L. Ed. 585 (2003).

In this case, BioGenesis prays for an award having a ratio of about 160 to 1[3] between punitive and compensatory damages. Although this ratio certainly exceeds what is normally considered kosher by the courts, the Court finds it necessary to first determine the facts and circumstances of Rhino's conduct, the harm, if any, Rhino inflicted upon BioGenesis, and how much BioGenesis should be compensated. See id. Only after such a determination is made will the Court evaluate the reasonableness of the punitive damages award sought by BioGenesis.

Rhino also claims that BioGenesis lacks entitlement to any punitive damages because BioGenesis alleges only economic harm and not harm to health or safety. Rhino further states that the allegation that Rhino acted as though a subcontract existed, which is the gravamen of BioGenesis' counterclaim, cannot be deemed "reprehensible" in light of BioGenesis' written and signed acknowledgment that it did have a subcontract with Rhino. First of all, Rhino is mistaken in its assertion that economic injuries do not warrant punitive damages. In Boyle v. Lorimar Prods., Inc., the Ninth Circuit found no error in awarding punitive damages, as long as it was not an excessive award, for breach of contract and fraud, absent injury to health or safety. 13 F.3d 1357 (9th Cir. 1993).[4] The appropriate inquiry is not what kind of harm is suffered, but whether a tort occurred and whether the enormity of the tortious act warrants an award of punitive damages. See Day v. Woodworth, 54 U.S. 363, 371, 14 L. Ed. 181 (1852) ("It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff."). As BioGenesis bases its prayer for punitive damages on Rhino's alleged fraud, which is a tort, the Court is not foreclosed from awarding punitive

---

[3] This is $7,029,328.94 in punitive damages to $43,854.20 in compensatory damages.

[4] Perhaps Rhino is thinking of the rule in products liability cases, where recovery of punitive damages can only be had in cases of personal injury and not for economic injury. See Barnes v. Logan, 122 F.3d 820, 823 (9th Cir. 1997). As this is not a products liability case, the Court may award punitive damages even though only pecuniary loss has been suffered.

5

damages. As for Rhino's claim that it did not act reprehensibly, the Court declines to rule on this issue until after the facts and circumstances of this case have been fully fleshed out. See State Farm, 123 S. Ct. at 1524.

Thirdly, Rhino claims that BioGenesis' request for such a high punitive damage award amounts to a vexatious litigation tactic, especially in light of BioGenesis' alleged threat to bankrupt Rhino and in light of Rhino's claimed success at already proving its case. The Court rejects Rhino's argument, as the Court has yet to determine Rhino's conduct and the amount of any harm suffered by BioGenesis.

In sum, the Court declines to summarily rule against BioGenesis' prayer for $7,029,328.94 in punitive damages, as the facts and circumstances of this case have not yet been fully determined.

In the alternative, Rhino moves the Court to rule that any punitive damages due to BioGenesis from Rhino shall not have more than a single-digit ratio to any actual damages proved by BioGenesis to have resulted from Rhino's alleged tortious activity. However, for the reasons discussed above, the Court declines to decide the parameters of any punitive damages that may be awarded to BioGenesis until after the facts and circumstances of Rhino's conduct and the harm allegedly suffered by BioGenesis have been determined. See State Farm, 123 S. Ct. at 1524.

## III. CONCLUSION.

For all the above reasons, Rhino Builders, Inc.'s Motion for Judgment on Punitive Damages is ORDERED DENIED.

**IT IS SO ORDERED** this 15th day of April, 2004.

_____
JOHN S. UNPINGCO
Chief Judge, District Court of Guam

Notice is hereby given that this document was entered on the docket on 04/15/04.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 04/15/04
Deputy Clerk      Date

6