FILED
DISTRICT COURT OF GUAM
APR 27 2004
MARY L. M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC. | Civil Case No. 02-00008 |
| Plaintiff, | |
| vs. | |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, | |
| Defendants. | |
| BIOGENESIS PACIFIC, INC., | |
| Counter-Plaintiff, | |
| vs. | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | |
| Counter-Defendants. | |
| AMERICAN HOME ASSURANCE COMPANY, | |
| Cross-Claimant, | |
| vs. | |
| BIOGENESIS PACIFIC, INC., | |
| Cross-Claim Defendant. | |

**ORDER**

Before the Court comes Plaintiff Rhino Builders, Inc.'s Motion to Compel Discovery Responses from Defendants AIG Technical Services, Inc. and American Home Assurance Company. Upon consideration of the record and relevant case law, the Court orders as follows:

## I. BACKGROUND.

Plaintiff Rhino Builders, Inc. ("Rhino")[1] brings this action against Defendants BioGenesis Pacific, Inc. ("BioGenesis")[2], American Home Assurance Company ("AHAC")[3], and AIG Technical Services, Inc. ("AIGTS")[4]. Rhino claims to be an obligee of a payment bond issued pursuant to the Miller Act, 40 U.S.C. §§ 270a et seq.[5], and therefore seeks payment. Rhino alleges that AHAC and AIGTS breached the duty of good faith owed to Rhino, and AIGTS breached the implied warranty of authority. In addition, Rhino alleges that BioGenesis, in bad faith, prevented Rhino's ability to realize the benefits of the subcontract agreement, and BioGenesis committed fraud.

Around September 1999, BioGenesis entered into a contract with the United States of America to furnish materials and perform the labor for the installation of U.S. Navy housing roofing, for a consideration of $4,926,657.00. BioGenesis was to perform under the contract, designated Navy Contract No. N62766-99-D-0425 (the "Navy Contract"), during the period from May 15, 2000, to September 29, 2001. The Navy Contract was continued and, as of June 30, 2003, when BioGenesis filed its answer to the second amended complaint, was in effect.

Around May 2000, Rhino allegedly entered into an oral subcontract with BioGenesis. Rhino agreed to perform such contract work that the U.S. Navy might assign to BioGenesis on

---

[1] Rhino is a Hawaii corporation engaged in the business of roofing installation and repairs. At all relevant times, Rhino was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

[2] BioGenesis is a Hawaii corporation.

[3] AHAC is a surety licensed to conduct business in New York and Guam, and is owned by the American International Group ("AIG").

[4] AIGTS is the claims servicing entity of AIG and has the authority to investigate and respond to claims on behalf of the various sureties owned by AIG, including AHAC. AIGTS claims that it is neither a surety nor an insurer, as it does not issue bonds or insurance policies of any type.

[5] These sections have been amended. The Miller Act is now at 40 U.S.C. §§ 3131-3133 (2004).

2

individual task orders under the Navy Contract. BioGenesis agreed to pay all of Rhino's actual costs of performance plus fifty percent (50%) of BioGenesis' profit upon completion of each task order. While the terms were later recited in a letter from BioGenesis to Rhino, no formal written subcontract was ever executed between the parties.

Rhino claims it performed labor and provided materials at a cost of $310,975.00, which BioGenesis has failed to fully pay. In addition, Rhino contends that BioGenesis owes Rhino fifty percent of the profits under the Navy Contract, which amounts to $770,906.00.[6] Rhino claims that the date on which Rhino last performed labor and supplied equipment to BioGenesis was not earlier than March 20, 2001. (S. Am. Compl. ¶ 21.)

Around October 2001, after BioGenesis' refusal to pay, Rhino contacted AHAC, the surety which executed the payment bond, to initiate the claims process. AHAC referred Rhino to AIGTS to handle its claim against AHAC. On about October 22, 2001, Rhino sent AHAC a letter regarding its claim, to which AIGTS responded by providing Rhino with a claim form. On about January 9, 2002, Rhino sent a Proof of Claim to AIGTS, which denied the claim around February 21, 2002, due to statute of limitations concerns. Thus, Rhino commenced this action.[7]

On July 18, 2003, Plaintiff's Second Set of Interrogatories to AIG Technical Services, Inc. and Plaintiff's Second Set of Interrogatories to American Home Assurance Co. were served upon AIGTS and AHAC, respectively. On November 14, 2003, Rhino filed the present motion to compel, to which Defendants filed an opposition on January 6, 2004.

## II. ANALYSIS.

### A. Legal Standard.

Federal Rule of Civil Procedure 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ....

---

[6] Rhino claims that it is owed over $1,264,694.47 for Rhino's performance under the oral subcontract with BioGenesis. (S. Am. Compl. ¶ 19.)

[7] Rhino's original complaint names only BioGenesis and AIGTS as defendants, for Rhino claims that its then-belief was that AIGTS was the surety. Rhino claims that it later became aware that AHAC was the actual surety and not AIGTS, and so it amended the complaint to add AHAC as a defendant.

3

1 Relevant information need not be admissible at the trial if the discovery appears reasonably
2 calculated to lead to the discovery of admissible evidence." Courts should construe the scope of
3 discovery liberally so as to provide the parties with the information needed for proper litigation
4 of the disputed facts. Richlin v. Sigma Design West, Ltd., 88 F.R.D. 634, 637 (E.D. Cal. 1980);
5 see also Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D.
6 Cal. 1997) (citing Jones v. Commander, Kansas Army Ammunitions Plant, 147 F.R.D. 248, 250
7 (D. Kan. 1993)) (stating that Rule 26(b) "'is liberally interpreted to permit wide-ranging
8 discovery of all information reasonably calculated to lead to discovery of admissible evidence;
9 but the discoverable information need not be admissible at trial"). The party objecting to
10 discovery bears the burden of proving why discovery should not be permitted, and the burden of
11 explaining and supporting its objections. Richlin, 88 F.R.D. at 637. The objector's burden of
12 proof will not be met simply by submitting "'boilerplate' objections that the discovery is vague,
13 ambiguous, overbroad, unduly burdensome, etc. … without specifying how each request for
14 production is deficient and without articulating the particular harm that would accrue if they
15 were to respond to [the] discovery requests." St. Paul Reinsurance Co. v. Commercial Fin.
16 Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000); see also Collins v. JC Penney Life Ins. Co.,
17 No. 02cv0674-L(LAB), 2003 U.S. Dist. LEXIS 8455, at *5 (S.D. Cal. May 5, 2003) ("'Bare
18 assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are
19 ordinarily insufficient, standing alone, to bar production.' The burden is on the responding party
20 to justify its objections or its failure to provide complete answers to interrogatories.") (quoting
21 Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684 (D. Kan. 1991)).
22 Where a party fails to respond to a discovery request or responds evasively or
23 incompletely, Rule 37 of the Federal Rules of Civil Procedure allows the discovering party to
24 file a motion to compel discovery. Equal Employment Opportunity Comm'n v. Klockner H &
25 K Machs., Inc., 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citing Fed. R. Civ. P. 37(a)(2),(3)). It is
26 in the sound discretion of the trial court whether to grant a motion to compel discovery pursuant
27 to Rule 37(a). Id.

4

**B. Application.**

Rhino moves for an order compelling Defendants to produce full and complete responses to Nos. 3, 4, 5, 7, 8, 10, 11, 13, 14, and 16, of Plaintiff's Second Set of Interrogatories to AIG Technical Services, Inc.[8], and to Nos. 1, 6-13, 15, and 16, of Plaintiff's Second Set of Interrogatories to American Home Assurance Co.[9] Defendants protest against answering these

---

[8]The relevant interrogatories requested of AIGTS are:

3. Identify every subsidiary of each member of AIG Inc.
4. Identify every affiliate of each member of AIG Inc.
5. Identify any parent or holding company of AIGTS.
7. Identify any parent or holding company of AHAC.
8. Identify the control group or control person of AIGTS.
10. Identify the control group or control person of AHAC.
11. Identify every entity owning 5% or more of the voting securities of AHAC.
13. Identify every entity owning 5% or more of the voting securities of AHAC.
14. For each entity identified in any of the foregoing interrogatory Nos. 1 through 13 that is a partnership or a joint venture, separately identify every partner or joint venturer.
16. For each and every entity that would be identified in a correct response to any of the foregoing interrogatory Nos. 1 through 14, or named in any of those interrogatories, that owns any shares in AIGTS, state how many shares it owns and what percentage of AIGTS's shares that holding represents.

(Mot. at 3-4.)

[9]The relevant interrogatories requested of AHAC are:

1. Identify each and every contact or communication between, on the one hand, any officer, employee, control person, and attorney of any entity that would be correctly listed or identified in response to any of the interrogatories served upon AIGTS concurrently with these interrogatories ("the AIGTS interrogatories"), and, on the other hand, Carlsmith Ball LLP, regarding this litigation, at any time.
6. Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?
7. Has AHAC had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?
8. If AIGTS [or] AHAC, ... has had an attorney-client relationship with Carlsmith Ball LLP since March 2002, identify each and every Carlsmith attorney with whom AIGTS [or] AHAC, ... communicates or has communicated in the course of that representation.
9. For each and every entity that would correctly be identified as having some sort of relationship with Carlsmith Ball LLP in response to Interrogatory Nos. 15 and 16 in the AIGTS interrogatories, identify each and every Carlsmith attorney with whom that entity communicates or has communicated in the course of that representation.
10. Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance for AIGTS, AHAC, or AI Marine since March 2001.
11. Identify each and every civil action in Guam, Hawaii, or California in which Carlsmith Ball has made an appearance, since March 2001, for any entity that would be identified in a correct response to Interrogatory Nos. 1 through 14 of the AIGTS interrogatories.
12. Identify all civil actions brought since January 1998 in which a claim was made upon a

5

interrogatories, offering mostly unsupported boilerplate objections.[10] Because the party resisting production of discovery requests bears the burden of proving, through more than boilerplate objections, why discovery should not be allowed, see St. Paul, 198 F.R.D. at 511-12, the Court rejects such mere protestations by Defendants. However, as Defendants discuss, at length, irrelevancy as grounds for preventing discovery, a discussion of the merits of this objection ensues.

### Relevance

Parties may discover anything that is "relevant to the claim or defense of any party," FED. R. CIV. P. 26(b)(1). For information to be relevant during pretrial discovery, it need not be admissible at trial but should appear "reasonably calculated to lead to the discovery of admissible evidence." Id. Relevant discoverable information also is not limited to things

---

[10]For example, insufficient boilerplate objections are found in Defendants' response to No. 12 of Plaintiff's Second Set of Interrogatories to AHAC:

> Objection. This interrogatory requires a response that is not relevant to any of Plaintiff RHINO's claims and thus is not material and not subject to discovery, nor likely to lead to the discovery of admissible evidence. In addition, this interrogatory requires a response that is overly broad and burdensome.

(Opp'n at 4.) Of all the above objections, Defendants only explain further their concerns about relevancy. (See id. at 2-3.) Thus, the naked protests of immateriality, overbreadth, undue burden, and unreasonable calculation fail to assist Defendants in overcoming their burden of proof as to why discovery should not be permitted.

surety bond issued by AHAC.

13. For each such action, (a) state whether or not an affirmative defense was asserted based upon a statute of limitations; (b) state whether AIGTS was named as a defendant; (c) state whether AHAC was named as defendant; (d) state whether AIG Claim Services, Inc. ("AIGCS"); [sic] was named as a defendant; (e) list any other entities that would be identified in a correct responses [sic] to Interrogatory Nos. 1 through 13 of the AIGTS Interrogatories that was named as a defendant; (f) state whether, prior to the litigation, the claimant was directed to make its claim through AIGTS or AIGCS; (g) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to them, denied a pre litigation claim on the basis of a statute of limitations; (h) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on any other basis; and (i) identify Plaintiff's counsel.

15. State the percentage of AIGTS's voting securities owned by AIG Inc. at all times between March 2001 and the present.

16. State each and every fact that allows Vernier & Maher to represent both AIGTS and you in this action despite the provisions of Rules 1.6 and 1.7 of the ABA Model Rules of Professional Conduct.

(Mot. at 4-6.)

6

related to a party's case in chief but may also be information sought for other purposes like cross-examination of the other party's witnesses. Kerr v. United States Dist. Court for N. Dist. of Cal., 511 F.2d 192, 197 (9th Cir. 1975). Courts are to determine relevancy more loosely at the discovery stage than at the trial. Id. (citing 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008 at 41 (1970)).

As Defendants bear the burden of demonstrating why these interrogatories should not be answered, see Richlin, 88 F.R.D. at 637, the Court first considers Defendants' reasons for blocking discovery due to irrelevancy, rather than Rhino's reasons for why they are relevant[11]. Defendants claim that discovery of this information should not occur because Rhino only "makes general allegations of relevancy" which are "insufficient to overcome the Defendants' specific objection that an item is not discoverable because it is not relevant to the subject matter of the action." (Opp'n at 3.) To support this objection, Defendants cite Home Ins. Co. v. Ballenger Corp., 74 F.R.D. 93 (D. Ga. 1977). However, Defendants misunderstand the ruling of Ballenger, as that case requires that such a "specific objection" to discovery be articulated and supported with case law showing that the information sought is not discoverable. See Williams v. AMF Inc., 512 F. Supp. 1048, 1061 (S.D. Ohio 1981). Here, Defendants articulate no reason for the information being undiscoverable and cite no supporting case law. Instead, Defendants support their irrelevancy objection simply by stating that Rhino cannot specifically prove that its requests are relevant to its claims. In effect, Defendants are trying to carry their burden of proof by shifting the burden to Rhino. Thus, Defendants have failed to meet their burden of proof as to why these interrogatory requests should not be answered. Accordingly, the Court GRANTS Rhino's Motion to Compel.

---

[11] Rhino seeks answers to these interrogatories for the purpose of discovering whether Defendants "operate as the same company, are owned by the same company, or operate as a joint venture." (Mot. ¶ 3.) Apparently, Rhino also seeks these answers in support of its claim that Defendants wrongfully interfered with Carlsmith Ball LLP's representation of Rhino in this action. For example, No. 6 of Plaintiff's Second Set of Interrogatories to AHAC asks: "Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?" (Mot. at 4.)

7

## III. CONCLUSION.

For the foregoing reasons, Plaintiff Rhino Builders, Inc.'s Motion to Compel Discovery Responses from Defendants AIG Technical Services, Inc. and American Home Assurance Company is GRANTED. Defendants shall have fourteen (14) days from the date of entry of this Order to produce the discovery responses to Plaintiff.

**SO ORDERED** this 27th day of April, 2004.

/s/ John S. Unpingco
**JOHN S. UNPINGCO**
Chief Judge, District Court of Guam

Notice is hereby given that this document was entered on the docket on APR 2 7 2004. No separate notice of entry on the docket will be issued by this Court.

Mary L. M. Moran
Clerk, District Court of Guam

By: /s/ _____ APR 2 7 2004
    Deputy Clerk    Date

8