ORIGINAL

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

FILED
DISTRICT COURT OF GUAM
APR 27 2004
MARY L. M. MORAN
CLERK OF COURT

(412)

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br>Plaintiff, <br><br>vs. <br><br>BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, <br><br>Defendants. | Civil Case No. 02-00008 <br><br><br><br><br><br><br><br><br><br>**ORDER** |
| BIOGENESIS PACIFIC, INC., <br><br>Counter-Plaintiff, <br><br>vs. <br><br>RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br>Counter-Defendants. | |
| AMERICAN HOME ASSURANCE COMPANY, <br><br>Cross-Claimant, <br><br>vs. <br><br>BIOGENESIS PACIFIC, INC., <br><br>Cross-Claim Defendant. | |

This matter came before the Court on Defendants AIG Technical Services, Inc.'s and American Home Assurance Company's Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims. Upon consideration of the record, oral arguments, and relevant case law, the Court orders as follows:

# I. BACKGROUND.

Plaintiff Rhino Builders, Inc. ("Rhino")[1] brings this action against Defendants BioGenesis Pacific, Inc. ("BioGenesis")[2], American Home Assurance Company ("AHAC")[3], and AIG Technical Services, Inc. ("AIGTS")[4], under the Miller Act, 40 U.S.C. §§ 3131 et seq. Rhino also claims that AHAC and AIGTS breached the duty of good faith owed to Rhino, AIGTS breached the implied warranty of authority, BioGenesis, in bad faith, prevented Rhino's ability to realize the benefits of the subcontract, and BioGenesis committed fraud.

Around September 1999, BioGenesis entered into a contract with the United States of America to furnish materials and perform labor for the installation of U.S. Navy housing roofing, for a consideration of $4,926,657.00. BioGenesis was to perform under the contract, designated Navy Contract No. N62766-99-D-0425 (the "Navy Contract"), during the period from May 15, 2000, to September 29, 2001. The Navy Contract was continued and, as of June 30, 2003, when BioGenesis filed its Answer to the Second Amended Complaint, was in effect.

Around May 2000, Rhino entered into an oral subcontract with BioGenesis. Rhino agreed to perform such contract work that the U.S. Navy might assign to BioGenesis on individual task orders under the Navy Contract. BioGenesis agreed to pay all of Rhino's actual

---

[1] Rhino is a Hawaii corporation engaged in the business of roofing installation and repairs. At all relevant times, Rhino was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

[2] BioGenesis is a Hawaii corporation.

[3] AHAC is a surety licensed to conduct business in New York and Guam, and is owned by the American International Group ("AIG").

[4] AIGTS is the claims servicing entity of AIG and has the authority to investigate and respond to claims on behalf of the various sureties owned by AIG, including AHAC. AIGTS claims that it is neither a surety nor an insurer, as it does not issue bonds or insurance policies of any type.

costs of performance plus fifty percent (50%) of BioGenesis' profit upon completion of each task order. While the terms were later recited in a letter from BioGenesis to Rhino, no formal written subcontract was ever executed between the parties.

Rhino asserts that it performed labor and provided materials at a cost of $310,975.00, which BioGenesis has failed to fully pay. In addition, Rhino contends that BioGenesis owes Rhino fifty percent of the profits under the Navy Contract, which amounts to $770,906.00.[5] Rhino claims that the date on which Rhino last performed labor and supplied equipment to BioGenesis was not earlier than March 20, 2001. (S. Am. Compl. ¶ 21.) Following BioGenesis' refusal to pay, Rhino contacted surety AHAC to initiate the claims process. AHAC referred Rhino to AIGTS to handle its claim against AHAC. In October 2001, Rhino sent AHAC a letter regarding its claim, to which AIGTS responded by providing Rhino with a claim form. Around January 9, 2002, Rhino sent a Proof of Claim to AIGTS, which denied the claim on about February 21, 2002, due to statute of limitations concerns. Rhino then commenced this action on March 20, 2002.[6]

On December 15, 2003, Defendants AIGTS and AHAC (collectively "Defendants") filed the present motion, to which Rhino filed an opposition on January 23, 2004. Defendants filed a reply on January 30, 2004. The Court heard oral arguments on February 25, 2004.

## II. ANALYSIS.

### A. Summary Judgment Standard.

Defendants move for partial summary judgment on Rhino's Miller Act claim. For a party seeking summary judgment to succeed, he must show that there exists "no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material is determined by the governing substantive law. Anderson v.

---

[5] Rhino claims that it is owed over $1,264,694.47 for Rhino's performance under the oral subcontract with BioGenesis. (S. Am. Compl. ¶ 19.)

[6] Rhino's original complaint names only BioGenesis and AIGTS as defendants, for Rhino claims that its then-belief was that AIGTS was the surety. Rhino claims that it later became aware that AHAC was the actual surety and not AIGTS, and so it amended the complaint to add AHAC as a defendant.

3

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the fact might affect the outcome, then it is material. Id. If a party moves for summary judgment on a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden by offering affirmative, admissible evidence. But, when the non-moving party has the burden of proving the claim or defense, the movant can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The movant is not required to disprove the other party's case. Khachikian v. Devry Inst. of Tech., No. CV 01-05935 NM, 2002 U.S. Dist. LEXIS 3216, at *13 (C.D. Cal. Jan. 14, 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986)).

If the movant meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). When evaluating whether the non-movant's assertions raise a genuine issue, the court must believe the non-movant's evidence and draw all justifiable inferences in the non-movant's favor. Anderson, 477 U.S. at 255.

**B. Merits of Defendants' Motion.**

Defendants argue that Rhino's Miller Act cause of action, as stated in Count I[7] of the Second Amended Complaint, should be summarily adjudicated in favor of Defendants for the following reasons: (1) under the Miller Act, Rhino cannot recover from AIGTS because AIGTS is not the surety and did not issue the payment bond; (2) Rhino's Miller Act claim against AHAC is time-barred because Rhino failed to institute this action within one year of Rhino last providing labor and materials for the Navy Contract; (3) Rhino can only recover costs for labor and materials for Delivery Orders 1, 2, and 7; (4) there is no recovery for administrative and overhead expenses under the Miller Act; and (5) suppliers of capital equipment are ineligible for Miller Act protection.

---

[7] In Count I, Rhino claims that the defendants' "acts and omissions entitle [Rhino] to recovery against all Defendants under the Miller Act." (S. Am. Compl. ¶ 9.)

4

**1. The Miller Act.**

The Miller Act requires a contractor who is awarded a federal construction project to furnish to the United States a performance bond and a payment bond. 40 U.S.C. § 3131(a)-(b). The contractor must provide a payment bond, executed by a surety, for the protection of

> all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines ... that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond.

40 U.S.C. § 3131(b)(2).

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished ... and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is being made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1).

**2. Whether the Miller Act allows Rhino to recover from AIGTS.**

Defendants argue that the Miller Act does not allow Rhino to recover from AIGTS because AIGTS is neither the contractor nor the surety that issued the payment bond. Defendants assert that AIGTS is not licensed to be a surety and has never issued a payment bond, but rather that AIGTS is a claims processing entity. (Mot. at 6.) The Miller Act states that anyone who has provided labor or material for a Miller Act contract "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." 40 U.S.C. § 3133(b)(1). Thus, the Miller Act is silent on whether a surety's claims processor, which AIGTS claims itself to be, may be sued on a payment bond executed pursuant to the Act. While the Court is unaware of any cases authorizing a subcontractor to sue a surety's claims processor for recovery under a Miller Act payment bond, the Court is equally unaware of any case law barring such an entity to be sued by a subcontractor for payment under a bond. As the Ninth Circuit has stated that "[i]nterstices in federal law may be filled by incorporating state law," United States ex rel. Bldg. Rentals Corp. v. W. Cas. & Sur. Co., 498 F.2d 335, 338 n.4

5

(9th Cir. 1974) (citing <u>United States ex rel. Astro Cleaning & Packaging Corp. v. Jamison Co.</u>, 425 F.2d 1281, 1282 n.1 (6th Cir. 1970)), the Court may look to state or territorial law for guidance. Under California law, "non-insurer defendants may be held liable under insurance[8] contracts if they are joint ventures with the insurance company, rather than agents or employees. Where there is a joint venture, all members of a joint venture are liable for contracts executed by another member in furtherance of the joint venture." <u>Forest v. Equitable Life Assur. Soc'y</u>, No. C 99-5173 SI, 2001 U.S. Dist. LEXIS 22694, at *12 (N.D. Cal. June 11, 2001). Thus, AIGTS, a non-surety, may be liable on the payment bond if the Court determines it to be a joint venture with AHAC.

"A joint venture is 'an undertaking by two or more persons jointly to carry out a single business enterprise for profit.'" <u>Id.</u> (quoting <u>Nelson v. Abraham</u>, 29 Cal. 2d 745, 749, 177 P.2d 931 (1947)). A joint venture will be found if the following elements are present: "(1) an intent to become partners; (2) a community of interest in the undertaking; (3) an understanding to share profits and losses; and (4) equal authority and right to direct and control the conduct of all co-venturers with respect to the joint venture." <u>Id.</u> at *12-13. "Joint ventures can exist by virtue of explicit agreement or through 'reasonable deduction from the acts and declarations of the parties.'" <u>Id.</u> (quoting <u>Nelson</u>, 29 Cal. 2d at 749-50).

In the Second Amended Complaint, Rhino asserts that Defendants "are owned by the same company and operate either as the same company or as a joint venture." (S. Am. Compl. ¶ 31.) However, whether Defendants are a joint venture is not clear, as Rhino has been unable to possess discovery responses from Defendants that would shed light on the exact relationship between Defendants.[9] Since the material fact of Defendants' relationship is disputed by the

---

[8]Since the Superior Court of Guam held that sureties are subject to the insurance laws of Guam, see <u>Guam Hous. & Urban Renewal Auth. v. Murphy Enters., Inc.</u>, No. CV2642-99, at 3 (Super. Ct. Guam Aug. 22, 2001), the Court may look for guidance to the more developed law of insurance.

[9]On April 26, 2004, the Court issued an Order granting Rhino's Motion to Compel Discovery Responses from Defendants AIGTS and AHAC. Therein, the Court ordered Defendants to produce the responses to Rhino no later than fourteen (14) days from the date of entry of that Order. The Court compelled Defendants to answer several interrogatories probative of the relationship between Defendants. For example, the Court compelled AIGTS to answer the following interrogatory requests:

6

parties, and Rhino has only now been provided information regarding that relationship, it is improper for the Court, at this time, to summarily adjudicate Rhino's Miller Act claim in favor of AIGTS. Accordingly, the Court DEFERS ruling on Rhino's Miller Act claim against AIGTS. Rhino shall have forty-five (45) days from the date of entry of this Order to supplement the record on this issue.

### 3. Whether Rhino's Miller Act claim against AHAC is time-barred.

Defendants contend that Rhino's Miller Act claim against AHAC, the surety that issued the payment bond, is time-barred due to Rhino's failure to comply with the jurisdictional requirement that an action brought under the Act be instituted within one year of last providing labor and materials. See 40 U.S.C. § 3133(b)(4). Rhino added AHAC as a defendant to the action on September 20, 2002. Assuming that Rhino last provided labor and equipment on March 20, 2001[10], Rhino brought this action against AHAC more than one year after that date. Thus, it appears that Rhino's Miller Act claim against AHAC is foreclosed by the Act's statute of limitations provision.

However, Rhino suggests that Federal Rule of Civil Procedure 15(c)(3) allows Rhino to bring the Miller Act claim against AHAC, arguing that the September 20, 2002, addition of

---

> 3. Identify every subsidiary of each member of AIG Inc.
> 4. Identify every affiliate of each member of AIG Inc.
> 5. Identify any parent or holding company of AIGTS.
> 7. Identify any parent or holding company of AHAC.
> 8. Identify the control group or control person of AIGTS.
> 10. Identify the control group or control person of AHAC.
> 11. Identify every entity owning 5% or more of the voting securities of AHAC.
> 13. Identify every entity owning 5% or more of the voting securities of AHAC.
> 14. For each entity identified in any of the foregoing Interrogatory Nos. 1 through 13 that is a partnership or a joint venture, separately identify every partner or joint venturer.

(Pl.'s Mot. Compel Disc. Resps. at 3-4.)

[10]The parties disagree on the actual date Rhino last provided labor and materials. Defendants argue that the date is around December 2000, since this was the date given on Rhino's Proof of Claim. (See Kahn Decl. Ex. C.) However, Rhino asserts that the date is March 20, 2001. As there is a dispute regarding the date on which Rhino last furnished labor and materials and as the Court must believe a non-movant's evidence and draw all justifiable inferences in the non-movant's favor, the Court accepts Rhino's March 20, 2001, date for summary judgment purposes. But, even giving Rhino this benefit, Rhino's claim is still late.

AHAC as a defendant to the action relates back to Rhino's March 20, 2002, filing of the original complaint. In order for an amendment adding parties to relate back to the filing of an original pleading pursuant to Rule 15(c), four criteria must be met:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

Kilkenny v. Arco Marine Inc., 800 F.2d 853, 856 (9th Cir. 1986) (quoting Schiavone v. Fortune, aka Time, Inc., 106 S. Ct. 2379, 2384, 477 U.S. 21, 91 L. Ed. 2d 18 (1986)). Defendants only dispute criterion (3), asserting that Rhino's then-counsel knew all along that AHAC is the surety. For support, Defendants submit the deposition testimony of Rhino's former lead attorney at Carlsmith Ball LLP, Terry E. Thomason ("Thomason"). (See Reply at 6.) When asked whether a fellow attorney at Carlsmith indicated a belief that the surety was AIGTS, Thomason replied: "I never understood that the surety was anyone other than American Home Assurance through that entire time." (Yanza Suppl. Decl. Ex. A at 16.) Although mistaken as to whom to sue, Rhino's former counsel clearly was not mistaken as to the identity of the surety. Thus, Rule 15(c) does not allow the September 20, 2002, addition of AHAC as a defendant to relate back to the March 20, 2002, filing of the original complaint.

Despite the foregoing, AHAC can still be a defendant if AHAC and AIGTS were a joint venture. As previously stated, Rhino has only recently been given the opportunity to discover whether AIGTS and AHAC were a joint venture. Thus, the Court DEFERS ruling on Rhino's Miller Act claim against AHAC until after Rhino informs the Court on the relationship between Defendants.

### 4. Whether Rhino can only recover for labor and materials for Delivery Orders 1, 2, and 7

Defendants claim that Rhino only provided labor and materials on Delivery Orders 1, 2,

1 and 7, and so it can only recover on those orders. Defendants state that the total price for the
2 three delivery orders is $43,854.20, but the balance due to Rhino is only $4,667.70.[11] However,
3 Rhino claims that it "provided all of the needed labor, materials, equipment, facilities, financing
4 and bonding to [BioGenesis] in the prosecution of the work provided for in [the Navy
5 Contract]." (S. Am. Compl. ¶ 17.) Rhino claims that the actual cost for such work is no less
6 than $239,694.47. (Id.) Since BioGenesis paid $25,000.00 so far, the balance due to Rhino is
7 not less than $214,694.47, according to Rhino. (Id.) As there exists a genuine issue as to these
8 material facts, the Court will refrain from determining what services Rhino provided and any
9 recovery due to Rhino, until trial.[12] Accordingly, the Court DENIES Defendants' motion as to
10 the issue of Rhino's recovery under the Miller Act.

## III. CONCLUSION.

For the foregoing reasons, Defendants AIG Technical Services, Inc.'s and American Home Assurance Company's Motion for Partial Summary Judgment on Plaintiff's Miller Act Claims is ORDERED DENIED IN PART and DEFERRED IN PART. Plaintiff shall have forty-five (45) days from the date of entry of this Order to supplement the record regarding the relationship between Defendants AIG Technical Services, Inc. and American Home Assurance Company.

IT IS SO ORDERED this 21st day of April, 2004.

JOHN S. UNPINGCO
Chief Judge, District Court of Guam

Notice is hereby given that this document was entered on the docket on APR 2 7 2004.
No separate notice of entry on the docket will be issued by the Court.
Mary L. M. Moran
Clerk, District Court of Guam

By:_____
Deputy Clerk    Date    APR 2 7 2004

---

[11]Defendants state that, since BioGenesis paid Rhino $25,000.00 for its work on the subcontract, the remaining balance is $18,854.20. But, because Biogenesis' costs for the three delivery orders were $14,186.50, the maximum amount due to Rhino is $4,667.70. (Opp'n at 10-11.)

[12]Defendants also contend that Rhino cannot recover administrative and overhead expenses and costs for capital equipment. However, the Court declines to resolve this matter since there exist genuine issues of material fact regarding what labor and materials Rhino provided and how Rhino provided some materials, e.g., via sale or rental agreement.

9