**FILED**
DISTRICT COURT OF GUAM
APR 3 0 2004
MARY L. M. MORAN
CLERK OF COURT

417

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC. | Civil Case No. 02-00008 |
| Plaintiff, | |
| vs. | |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, | |
| Defendants. | **ORDER** |
| BIOGENESIS PACIFIC, INC., | |
| Counter-Plaintiff, | |
| vs. | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | |
| Counter-Defendants. | |
| AMERICAN HOME ASSURANCE COMPANY, | |
| Cross-Claimant, | |
| vs. | |
| BIOGENESIS PACIFIC, INC., | |
| Cross-Claim Defendant. | |

This matter came before the Court on Defendants AIG Technical Services, Inc.'s and American Home Assurance Company's Motion for Dismissal of Plaintiff's Bad Faith Cause of Action for Failure to State a Claim, or, in the Alternative, for Summary Judgment. Upon consideration of the record, oral arguments, and relevant case law, the Court orders as follows:

## BACKGROUND

Plaintiff Rhino Builders, Inc. ("Rhino")[1] brings this action against Defendants BioGenesis Pacific, Inc. ("BioGenesis")[2], American Home Assurance Company ("AHAC")[3], and AIG Technical Services, Inc. ("AIGTS")[4], under the Miller Act, 40 U.S.C. §§ 3131 et seq. Rhino also claims that AHAC and AIGTS breached the duty of good faith owed to Rhino, AIGTS breached the implied warranty of authority, BioGenesis prevented Rhino's ability to realize the benefits of the subcontract agreement in bad faith, and BioGenesis committed fraud.

Around September 1999, BioGenesis entered into a contract with the United States of America to furnish materials and perform labor for the installation of U.S. Navy housing roofing, for a consideration of $4,926,657.00. BioGenesis was to perform under the contract, designated Navy Contract No. N62766-99-D-0425 (the "Navy Contract"), during the period from May 15, 2000, to September 29, 2001. The Navy Contract was continued and, as of June 30, 2003, when BioGenesis filed its Answer to the Second Amended Complaint, was in effect.

Around May 2000, Rhino entered into an oral subcontract with BioGenesis. Rhino agreed to perform such contract work that the U.S. Navy might assign to BioGenesis on individual task orders under the Navy Contract. BioGenesis agreed to pay all of Rhino's actual

---

[1] Rhino is a Hawaii corporation engaged in the business of roofing installation and repairs. At all relevant times, Rhino was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

[2] BioGenesis is a Hawaii corporation.

[3] AHAC is a surety licensed to conduct business in New York and Guam, and is owned by the American International Group ("AIG").

[4] AIGTS is the claims servicing entity of AIG and has the authority to investigate and respond to claims on behalf of the various sureties owned by AIG, including AHAC. AIGTS claims that it is neither a surety nor an insurer, as it does not issue bonds or insurance policies of any type.

costs of performance plus fifty percent (50%) of BioGenesis' profit upon completion of each task order. While the terms were later recited in a letter from BioGenesis to Rhino, no formal written subcontract was ever executed between the parties.

Rhino asserts that it performed labor and provided materials at a cost of $310,975.00, which BioGenesis has failed to fully pay. In addition, Rhino contends that BioGenesis owes Rhino fifty percent of the profits under the Navy Contract, which amounts to $770,906.00.[5] Rhino claims that the date on which Rhino last performed labor and supplied equipment to BioGenesis was not earlier than March 20, 2001. Following BioGenesis' refusal to pay, Rhino contacted AHAC to initiate the claims process. AHAC referred Rhino to AIGTS to handle its claim against AHAC. In October 2001, Rhino sent AHAC a letter regarding its claim, to which AIGTS responded by providing Rhino with a claim form. Around January 9, 2002, Rhino sent a Proof of Claim to AIGTS, which denied the claim on about February 21, 2002, due to statute of limitations concerns. Rhino then commenced this action.[6]

On December 5, 2003, Defendants filed the present motion, to which Rhino filed an opposition on January 23, 2004. Defendants filed a reply on January 30, 2004. The Court heard oral arguments on February 25, 2004.

## ANALYSIS

Defendants move to dismiss Rhino's bad faith cause of action in Count II of the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, move for summary judgment on this cause of action.

---

[5] Rhino claims that it is owed over $1,264,694.47 for Rhino's performance under the oral subcontract with BioGenesis.

[6] Rhino's original complaint names only BioGenesis and AIGTS as defendants, for Rhino claims that its then-belief was that AIGTS was the surety. Rhino claims that it later became aware that AHAC was the actual surety and not AIGTS, and so it amended the complaint to add AHAC as a defendant.

## I. MOTION TO DISMISS.

"It is axiomatic that '[the Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" Hall v. City of Santa Barbara, 813 F.2d 198, 201, (9th Cir. 1986) (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, CIVIL § 1357, at 598 (1969)). Courts must take as true all the non-moving party's allegations of material fact and must construe these allegations in the light most favorable to the non-movant. Id.

Defendants argue that Rhino's bad faith claims against them should be dismissed because Guam does not recognize such a cause of action against a surety arising out of a Miller Act payment bond. The question of whether a bad faith cause of action against a surety exists is an issue of state or territorial law. See K-W Indus. v. Nat'l Surety Corp., 855 F.2d 640, 643 (9th Cir. 1988). If territorial case law fails to address whether a subcontractor can sue a surety for bad faith, the federal district court must predict how the territory's highest court would settle the issue. United States ex rel. Don Siegel Constr. Co. v. Atul Constr. Co., 85 F. Supp. 2d 414, 416 (D.N.J. 2000).

While Guam has not yet decided the specific question of whether a surety may be sued for bad faith in the specific context of a Miller Act payment bond, the Superior Court of Guam, in Guam Hous. & Urban Renewal Auth. v. Murphy Enters., Inc., held that "a cause of action may exist in tort when a surety company refuses to settle claims from the obligee in bad faith." No. CV2642-99, at 5 (Super. Ct. Guam Aug. 22, 2001). In that case, a surety executed a performance bond in favor of a government agency. When the private contractor failed to perform under the contract, the agency filed a claim with the surety, but was denied relief. The court found that the agency, as obligee of the bond, could sue the surety for bad faith in processing its claim under the performance bond. The fact that this action involves a private subcontractor as obligee and a payment bond does not diminish the importance of the Superior Court's finding, for, in arriving at its decision, the court did not draw distinctions between a government obligee and a private subcontractor obligee, or a performance bond and a payment bond. Therefore, the Court finds the Superior Court's holding dispositive to the issue raised by this motion.

4

However, Defendants argue that existing Guam law evidences no legislative intent to subject sureties to this type of tort liability, which is usually attached to insurers, nor do the public policy concerns applicable to an insurer-insured relationship compel extension of tort liability in the context of a Miller Act payment bond. Since bad faith tort liability is usually attached to insurers, it is important to determine whether Guam law equates sureties with insurers. In United States ex rel. Getz Bros. & Co. v. Markowitz Bros., (Delaware), Inc., the Ninth Circuit stated that "[i]t is expressly recognized in section 43305 of Guam's Government Code that 'fidelity and surety insurance' does not include 'insurance policies.' ... Surely, then, it was not intended that a surety contract should be a 'policy' or that a surety company should be an 'insurer' under the quoted terms as they are employed in the penalty statute." 383 F.2d 595, 599 (9th Cir. 1967). However, as that particular penalty statute is not at issue, the Ninth Circuit's exposition of the nuances between a surety and insurer does not control.

The Court finds the issue settled by the Superior Court of Guam in Murphy. In that 2001 decision, the territorial court pointed out that "under Guam Law [,] surety companies are included as a class of insurance under Title 22 of the Guam Code Annotated § 18106." No. CV2642-99, at 3. Thus, the court stated, "[c]learly, the Legislature intended to include surety as a type of insurance covered under the Insurance Laws of Guam." Id. After this, the court proceeded to allow an obligee to sue a surety for bad faith in settling a claim under a performance bond.

The Court also considers the "highly remedial" nature of the Miller Act. Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co., 322 U.S. 102, 107, 64 S. Ct. 890, 88 L. Ed. 1163 (1944). The Miller Act "is entitled to a liberal construction and application in order properly [sic] to effectuate the Congressional intent to protect those whose labor and materials go into public projects." Id.

Thus, considering Guam case law in conjunction with the highly remedial nature of the Miller Act, the Court finds that Guam recognizes a bad faith cause of action by a subcontractor against a surety in the context of a Miller Act payment bond. Accordingly, the Court DENIES Defendants' motion to dismiss Rhino's bad faith cause of action against Defendants.

## II. MOTION FOR SUMMARY JUDGMENT.

In the alternative, Defendants move for summary judgment on Rhino's bad faith cause of action in Count II of the Second Amended Complaint. For a party seeking summary judgment to succeed, he must show that there exists "no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material is determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the fact might affect the outcome, then it is material. Id. If a party moves for summary judgment on a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden by offering affirmative, admissible evidence. But, when the non-moving party has the burden of proving the claim or defense, the movant can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The movant is not required to disprove the other party's case. Khachikian v. Devry Inst. of Tech., No. CV 01-05935 NM, 2002 U.S. Dist. LEXIS 3216, at *13 (C.D. Cal. Jan. 14, 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986)).

If the movant meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). When evaluating whether the non-movant's assertions raise a genuine issue, the court must believe the non-movant's evidence and draw all justifiable inferences in the non-movant's favor. Anderson, 477 U.S. at 255.

Count II of the Second Amended Complaint states that (1) AIGTS acted in bad faith by denying Rhino's claim, (2) AIGTS acted in bad faith by inducing Rhino to make its claim against AIGTS instead of AHAC, (3) AIGTS acted in bad faith by moving to dismiss this action because it was not brought against AHAC, (4) AIGTS acted in bad faith by citing the Superior Court of Guam decision Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Braga as a case on point, even though it is distinguishable and even though the subsequent Nevada decision in Albert H. Wohlers and Co. v. Bartgis allows the Court to hold AIGTS liable for policy-based contractual

claims as well as for bad faith in these circumstances, (5) AHAC acted in bad faith by referring Rhino to AIGTS, and (6) Defendants wrongfully interfered with Carlsmith Ball LLP's legal representation of Rhino in this action.

**A. AIGTS' Bad Faith Denial of Rhino's Claim.**

Rhino claims that AIGTS acting in bad faith by denying its claim. "[A] surety has a duty to act in good faith in responding to its obligee's claims that the principal has defaulted. Breach of this duty entitles the obligee to maintain a tort action and recover tort damages." Dodge v. Fidelity & Deposit Co., 161 Ariz. 344, 348, 778 P.2d 1240 (1989). The Ninth Circuit has held that "a court can conclude as a matter of law that an insurer's[7] denial of a claim is not unreasonable, even if the court concludes the claim is payable under the policy terms, so long as there existed a genuine issue as the insurer's liability." Franceschi v. Am. Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988) (citing Safeco Ins. Co. of Am. v. Guyton, 692 F.2d 551, 557 (9th Cir. 1982) (applying California law)).[8] Defendants argue that, at the time Rhino's claim was denied, there existed genuine issues as to liability, such as whether Rhino's claim was filed timely[9], (see Mot. Kahn Decl. Ex. J at 6, Ex. M, Ex. N, Ex. O), what the terms and conditions of the alleged oral subcontract between Rhino and BioGenesis really were, whether Rhino performed its part of the bargain, and how much, if anything, Rhino is entitled to under the Miller Act.

Here, Rhino sent AIGTS a Proof of Claim, which stated that Rhino "between the dates of May 2000 and December 2000 furnished, sold, and delivered roofing installation & repairs &

---

[7]Since the Superior Court of Guam held that sureties are subject to the insurance laws of Guam, see Murphy, No. CV2642-99, at 3, the Court may look to the elements of a bad faith cause of action against insurers for guidance on the issue as applied to sureties.

[8]Also, "'bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.'" Dodge, 161 Ariz. at 348 (quoting Noble v. Nat'l Am. Life Ins., 128 Ariz. 188, 190, 624 P.2d 866 (1981)).

[9]40 U.S.C. § 3133(b)(4) requires that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action."

7

materials to Biogenesis Pacific, Inc. for the construction of [the Navy Contract] in accordance with an oral Subcontract ...." (Mot. Kahn Decl. Ex. J at 6.) This Proof of Claim also reveals that it was notarized on January 9, 2002. (Id.) Also, attached to the Proof of Claim was Rhino's "Final Invoice" and BioGenesis' letter of refusal to pay under the invoice since BioGenesis had "no record of [Rhino's] contract provisos on the stated Project ...." (Id. at 7-11.) On January 17, 2002, AIGTS sent a letter to Rhino notifying it that AIGTS was "immediately" taking Rhino's claim up with BioGenesis, "in order to ascertain their position" on Rhino's claim. (Id. Ex. K.) AIGTS then notified Rhino about the fact that the Proof of Claim seems to show that Rhino filed its claim more than one year after it last provided labor or material for the Navy Contract, and so Rhino's claim must be denied. (Mot. Kahn Decl. Ex. M.) [10] Under these facts, the Court can clearly see that when AIGTS denied Rhino's claim, it was aware of uncertainties regarding the timeliness of Rhino's filing of its claim, the terms of Rhino's and BioGenesis' oral contract, if any, whether BioGenesis actually owed any money, and, if so, how much. Thus, the Court finds that, at the time AIGTS denied Rhino's claim, there existed genuine issues as to BioGenesis' and, hence, surety AHAC's liability. Once AIGTS understood that a genuine dispute over liability existed, it had every right to deny payment on the bond until Rhino and BioGenesis resolved the dispute. See Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc., 971 F.2d 272, 283 (9th Cir. 1992). Accordingly, the Court GRANTS Defendants' motion for summary judgment as to this allegation.

**B. AIGTS' Bad Faith Inducement of Rhino to Make Its Claim against AIGTS instead of AHAC.**

Rhino asserts that AIGTS acted in bad faith by inducing Rhino to make its claim against AIGTS instead of AHAC, the surety. Rhino claims that Defendants gave Rhino "reason to think it should bring this action against AIGTS rather than AHAC" and references the Affidavit of

---

[10] Rhino responded by pointing out that its January 9, 2002, supplemental letter to Rhino's claim explains that Biogenesis "'was continuing to use Rhino resources on the [Navy] Contract without payment.'" (Mot. Kahn Decl. Ex. N (quoting Jan. 9, 2002, Rhino letter).) BioGenesis responded to Rhino's claim by denying that it had an oral contract with Rhino or that it "used any safety equipment or equipment owned by Rhino Builders on the project except for the flat bed truck rented separately from Rhino Builders in March 2001." (Id. Ex. O.)

8

Amy Self, filed on September 4, 2002. (Opp'n at 2.) Amy Self ("Self") is an attorney at Carlsmith Ball LLP ("Carlsmith Ball"), Rhino's former counsel, and was one of the attorneys who previously assisted Rhino in this litigation. (Mot. Lawhn Decl. Ex. 7 ¶ 2.) In her affidavit, Self states that AHAC was named as surety on the payment bond. (Id. ¶ 3.) In fact, Self states that she tried to obtain a Miller Act claim form from AHAC. However, when Self dialed the phone number for AHAC, the person who answered said "American International Companies," (id. ¶ 5), and then assured Self that AHAC was part of American International Companies, (id. ¶ 6). Self states that one of the many people she spoke to informed her that AIGTS, their office in New York, handled all of the claims against surety bonds for American International Companies. (Mot. Lawhn Decl. Ex. 7 ¶ 7.) Self was then given a New York phone number, which she called. (Id.) After being connected to various people in response to her request for a Miller Act claim form, Self was finally connected to Mark Titherington ("Titherington"), a claims analyst for AIGTS, who indicated that he was the person who would handle a claim against the surety for BioGenesis. (Id. ¶¶ 9-10.) Then, pursuant to the Miller Act and Titherington's instructions, Rhino sent a Notice of Claim on Bond, naming AHAC as the bonding company, to Titherington, BioGenesis, and the U.S. Navy Contracting Officer. (Id. ¶ 12.) Around November 2001, Rhino received a proof of claim form from Titherington. (Id. ¶ 15.) Around January 9, 2002, Rhino sent the completed proof of claim form to Titherington. (Id. ¶ 16.) Then, in February 2002, Rhino received notice from Titherington that Rhino's Miller Act claim had been denied by AIGTS. (Id. ¶ 17.) Self claims that employees of American International Companies and AIGTS and Titherington "led me to believe that [AHAC] and [AIGTS] were all part of the same corporation, American International Companies," and that, as a result, Rhino filed a complaint against BioGenesis and AIGTS only. (Id. ¶¶ 18-19.)

    Defendants argue against a finding of bad faith inducement, stating that Rhino, even before submitting a proof of claim, possessed documents showing AHAC as surety. (See id. ¶ 3.) Although the Court must believe the evidence of non-movant Rhino and draw all justifiable inferences in the non-movant's favor, Anderson, 477 U.S. at 255, the parties do not dispute Rhino's possession of documents clearly revealing the surety to be AHAC and Rhino has never

claimed it was told that AIGTS was the surety and not AHAC. Nonetheless, the Court finds that there are genuine issues of material fact for trial. Accordingly, the Court DENIES Defendants' motion for summary judgment as to this allegation.

### C. AIGTS' Bad Faith Motion to Dismiss.

Rhino contends that AIGTS acted in bad faith by moving to dismiss the action because it was not brought against AHAC the surety. This allegation offers no support for Rhino's bad faith cause of action because it instead alleges a violation of Federal Rule of Civil Procedure 11[11]. Rule 11 does not create new causes of action. See Hochen v. Bobst Group, Inc., 198 F.R.D. 11, 14 (D. Mass. 2000) ("Rule 11 does not provide an independent basis for bringing a suit seeking sanctions.") (citing Port Drum Co. v. Umphrey, 852 F.2d 148, 149 (5th Cir. 1988)). Thus, to remedy this allegation, Rhino must separately move for Rule 11 sanctions or the Court may, on its own initiative, impose sanctions. See FED. R. CIV. P. 11(c)(1). Accordingly, the Court GRANTS Defendants' motion for summary judgment as to this allegation.

### D. AIGTS' Bad Faith Citation of Braga.

Rhino argues that AIGTS acted in bad faith by citing the Superior Court of Guam decision Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Braga as a case on point, even though it is distinguishable and even though the subsequent Nevada decision in Albert H. Wohlers & Co. v. Bartgis allows the Court to hold AIGTS liable for policy-based contractual claims as well as

---

[11]Rule 11(b) states the following:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b).

for bad faith in these circumstances. Like Rhino's bad faith claim against AIGTS for moving to dismiss the action, this claim asserts a violation of Rule 11, which, as previously stated, is remediable by separately moving for such sanctions. Thus, the Court GRANTS Defendants' motion for summary judgment as to this allegation.

### E. AHAC's Bad Faith Referral of Rhino to AIGTS.

Rhino contends that AHAC acted in bad faith by referring Rhino to AIGTS for settlement of Rhino's claim on the payment bond executed by AHAC. Defendants assert that such a referral was proper since AIGTS serves as the claims processor for AHAC. The Court finds no bad faith in such a referral since it is standard industry practice for a claims adjustor to handle claims on bonds executed by sureties. See, e.g., United States Fidelity & Guaranty Co. v. Craig County Bank, 227 F.2d 799, 802 (10th Cir. 1955); Standard Accident Ins. Co. v. St. Romain, 224 La. 382, 386, 69 So. 2d 508 (1953). Accordingly, the Court GRANTS Defendants' motion for summary judgment as to this allegation.

### F. Defendants' Tortious Interference.

Rhino contends that Defendants wrongfully interfered with Carlsmith Ball's legal representation of Rhino in this action by citing a conflict of interest. Defendants argue that they never questioned whether Carlsmith Ball's representation of Rhino created a conflict of interest, but that it was Carlsmith Ball itself that raised the issue.[12] Also, Defendants state that, even if they did broach the conflict of interest issue with Carlsmith Ball, their status as former clients entitled them to question the propriety of Carlsmith Ball's legal representation of Rhino. However, on April 27, 2004, the Court granted Rhino's motion to compel Defendants to answer interrogatory requests, some of which address this very issue.[13] Since Rhino has only recently

---

[12] Although this is not actually a bad faith claim, but a tortious interference with contractual relationship claim, Defendants seek summary judgment on this claim in their motion. Since this claim is lumped with Rhino's bad faith claims in Count II of the Second Amended Complaint, the Court will consider whether this claim survives summary judgment.

[13] The Court ordered AHAC to answer interrogatory requests, such as the following:

1. Identify each and every contact or communication between, on the one hand, any officer, employee, control person, and attorney of any entity that would be correctly

11

been given the opportunity to discover the content of any communications between Defendants and Carlsmith Ball regarding this litigation and whether Defendants were former clients of Carsmith Ball, the Court DEFERS ruling on this issue until after Rhino informs the Court about any communications between Defendants and Carlsmith Ball regarding this litigation, as well as Defendants' attorney-client relationship with Carlsmith Ball, if any. Rhino shall have forty-five days from the date of entry of this Order to so inform the Court.

## CONCLUSION

For the foregoing reasons, Defendants AIG Technical Services, Inc.'s and American Home Assurance Company's Motion for Dismissal of Plaintiff's Bad Faith Cause of Action for Failure to State a Claim, or, in the Alternative, for Summary Judgment is ORDERED DENIED IN PART, GRANTED IN PART, and DEFERRED IN PART. Plaintiff Rhino Builders, Inc. shall have forty-five (45) days from the date of entry of this Order to supplement the record regarding the content of any communications between Defendants AIG Technical Services, Inc. and American Home Assurance Company and Carlsmith Ball LLP dealing with this litigation, as well as Defendants' attorney-client relationship with Carlsmith Ball LLP.

IT IS SO ORDERED this 30th day of April, 2004.

JOHN S. UNPINGCO
Chief Judge, District Court of Guam

Notice is hereby given that this document was entered on the docket on MAY 0 3 2004. No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____
Deputy Clerk     MAY 0 3 2004
                 Date

---

listed or identified in response to any of the interrogatories served upon AIGTS concurrently with these interrogatories ("the AIGTS interrogatories"), and, on the other hand, Carlsmith Ball LLP, regarding this litigation, at any time.
6. Has AIGTS had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?
7. Has AHAC had an attorney-client relationship with Carlsmith Ball LLP at any time since March 2001?

(Order, Apr. 27, 2004.)