James Lawhn
OLIVER LAU LAWHN OGAWA & NAKAMURA
707 Richard Street, Suite 600
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
Facsimile No.: (808) 533-0144

Stephen D. Tom
WHITE & TOM
820 Mililani Street, Suite 711
Honolulu, Hawaii 96813-2972
Telephone No.: (808) 547 5151
Facsimile No.: (808) 599 4517

Louie J. Yanza
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants AIG TECHNICAL SERVICES, INC. and
AMERICAN HOME ASSURANCE COMPANY

FILED
DISTRICT COURT OF GUAM
JUN 30 2004
MARY L. M. MORAN
CLERK OF COURT
429

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC. and AMERICAN HOME ASSURANCE COMPANY, <br><br> Defendants. | CIVIL CASE NO. 02-00008 <br><br> DEFENDANTS AIG TECHNICAL SERVICES, INC. AND AMERICAN HOME ASSURANCE COMPANY'S AMENDED OPPOSITION TO RHINO'S MOTION TO ESTABLISH FACT PER FRCP 37(b)(2)(A) |
| BIOGENESIS PACIFIC, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, <br><br> Counter-Defendant. | |

ORIGINAL

| | AMERICAN HOME ASSURANCE | ) |
|---|---|---|
| 1 | COMPANY | ) |
| 2 | Cross-Claimant, | ) |
| 3 | vs. | ) |
| 4 | BIOGENESIS PACIFIC, INC. | ) |
| 5 | Cross-Claim Defendant. | ) |

**INTRODUCTION**

Defendant AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") has in good faith responded to the Plaintiff's Second Set of Interrogatories to AMERICAN HOME. RHINO BUILDERS, INC. ("RHINO"), has presented no facts showing that Defendants have acted in defiance of the Federal Rules and the Court's ruling, and certainly has failed to show that Defendants have acted with such malice and contempt as would justify the extreme sanction requested by Plaintiff against Defendants AIG TECHNICAL SERVICES, INC. ("AIGTS") and AMERICAN HOME and order that Defendants AIGTS and AMERICAN HOME are joint venturers.

Rather, RHINO devotes its Motion and Supplementation of the Record to making conclusory arguments without establishing how AMERICAN HOME has not responded to the Plaintiff's Second Set of Interrogatories, and how AIGTS and AMERICAN HOME are joint venturers. As more fully set forth, RHINO's arguments are not supported by the facts or the law.

I.    **THE DEFENDANTS HAVE COMPLIED WITH THE COURT'S APRIL 27, 2004 ORDER.**

RHINO argues that Interrogatory Nos. 12 and 13 directed to Defendant AMERICAN HOME have not been answered. RHINO is wrong.

Interrogatory No. 12 asks:

Interrogatory No. 12: Identify all civil actions brought since January 1998 in which a claim was made upon a surety bond issued by AHAC.

In response, AMERICAN HOME answered no independent records are kept of this data. In order to provide the best information reasonably possible within the time frame available (14 days from the date the Court's April 27, 2004 Order), AMERICAN HOME looked to secondary data to see if a response could be compiled from the secondary data. AMERICAN HOME found that as process was served upon AMERICAN HOME it was received by the surety claims office of AIGTS and logged into a computer file. This file was downloaded resulting in the CD designated as Exhibit "A" to AMERICAN HOME's Supplemental Responses (hereinafter "Exhibit A CD"), which consists of the process/service log independently maintained by the surety claims office of AIGTS in the regular course of business. Presently the log is maintained by one of AIGTS' administrative assistants. This log contains the papers received by AIGTS' office that have been served upon any AIG domestic surety during the time the log has been maintained (2000 to Present). See, Kahn Declaration. These sureties would include American Home Assurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Insurance Company of the State of Pennsylvania, Granite State Insurance Company of Pittsburgh, PA, Insurance Company of the State of Pennsylvania, Granite State Insurance Company. As such, Exhibit A CD should substantially reflect receipt by AIGTS of summons and complaints served on these sureties, as well as other papers that may have been formally served (e.g., notices of claim that may have been served through a state's insurance commissioner). Exhibit A CD contains approximately 12,000 cases and is printed and attached as **Exhibit "A"** to Yanza

Declaration.

Since the process/summons log (Exhibit A CD) contains data relating to multiple sureties, and only covers the years 2000 to the present, AMERICAN HOME sought assistance from the information technology department in order to determine whether the information could be developed for the years 1998 and 1999, and whether a list could be sorted to produce a report dealing only with AMERICAN HOME. The result was the list contained in the CD attached as Exhibit "B" to AMERICAN HOME's Supplemental Responses (hereinafter "Exhibit B CD") contains data derived by the information technology/systems people from AIGTS' eToolkit claims database (and its predecessor systems) which is used by multiple AIGTS claims offices (Surety, Fidelity, D&O, E&O, etc.) in the ordinary course of business to track claims. eToolkit is a separate system from the surety claims office's process/service log. Exhibit B CD is a report of all claims against AMERICAN HOME surety bonds derived from information entered into eToolkit indicating that a litigation had been commenced on the bond, and includes the years 1998 and 1999 as well as some years prior (see "Suit Receipt DT" column). See, Kahn Declaration.

A full printout of Exhibit B CD to AMERICAN HOME's Supplemental Responses is attached as **Exhibit "B"** to Yanza Declaration, and as the court will see, it contains 2,151 discrete files in which litigation has been commenced on bonds issued by AMERICAN HOME. Eliminating the pre-1998 files yields 1,512 claim files relating to actions brought on bonds issued by AMERICAN HOME for the years 1998 through the present.

As for Interrogatory No. 13:

> Interrogatory No. 13: For each such action, (a) state whether or not an affirmative defense was asserted based on a statute

of limitations; (b) state whether AIGTS was named as a defendant; (c) state whether AHAC was named as a defendant; (d) state whether AIG Claim Services, Inc. ("AIGCS"); was named as a defendant; (e) list any other entities that would be identified in a correct responses to Interrogatory Nos. 1 though 13 of the AIGTS interrogatories that was named as a defendant; (f) state whether, prior to the litigation, the claimant was directed to make its claim through AIGTS or AIGCS; (g) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on the basis of a statute of limitations; (h) state whether, prior to the commencement of the civil action, AIGTS, AHAC, AIGCS or any entity related to any of them, denied a pre litigation claim on any other basis; and (i) identify Plaintiff's counsel.

This interrogatory starts off with "For each such action" which refers to the actions described in Interrogatory No. 12 and listed on Exhibit B CD.

Interrogatory No.13 asks for data which is not compiled in the ordinary course of business and in order to respond to Interrogatory No. 13, one must examine and compile the data contained in the 1,512 claim files identified in Exhibit B CD. Obviously this could not be done in the time allowed by the discovery order irrespective of whether it was done by AMERICAN HOME or RHINO. Nor, is there anything in the Record, or in the court's discovery order which suggests that the court intended to impose the economic burden of searching and compiling data from some 1,500 files in order to answer Interrogatory No. 13 on AMERICAN HOME. The simple truth is that neither the court nor the parties were aware of the magnitude of the task at the time the discovery motions were briefed and the court entered its order. Therefore, in responding to the court's discovery order, AMERICAN HOME looked to records which could be obtained with reasonable effort and expense, and where possible, AMERICAN HOME provided answers to Interrogatory No. 13 to the

1  extent information was obtainable through inquiries to employees [No. 13(b)] or
2  based upon normal business practices [No. 13(f)(g)&(h)]. In addition, with regard to
3  these subsections as well as the remainder of the subsections of Interrogatory No.
4  13, AMERICAN HOME offered to make the claim files listed in Exhibit B CD
5  available to RHINO for RHINO's inspection.

6  As RHINO points out, AMERICAN HOME did not answer 13 (c) or 13 (d). This
7  was an oversight of counsel which was promptly cured when the omission was pointed
8  out. The supplemental responses are attached as **Exhibit "C"** to Yanza Declaration.

9  RHINO contends that the answers to Interrogatory No. 13 are non-responsive in
10  that they merely direct RHINO to business records in which the requested data might
11  be found, but fail to identify the specific records, their location, or state specifically that
12  the requested data will, in fact be found in the records.

13
14  The alleged printout of a portion of Exhibit B CD provided by RHINO to the
15  court is incomplete. As the court will see from the printout of **Exhibit "B"** (attached
16  to Yanza Declaration), it identifies the internal case number, insured (Principal),
17  defendant, plaintiff and bond number, among other things. This is sufficient for
18  AMERICAN HOME to identify and locate each file so that it can be made available
19  for RHINO's examination. RHINO's contention that the file's location is not specified
20  is also incorrect. As AMERICAN HOME has stated, the files will be made available
21  to RHINO at AMERICAN HOME's office in New York, in accordance with FRCP Rule
22  33(d).

23  RHINO's contention that AMERICAN HOME has not said that the requested
24  data will, in fact, be found in the records is technically correct because AMERICAN
25  HOME has not reviewed each of the 1,500 files in the context of Interrogatory No. 13.
26

However, AMERICAN HOME has certified that in the ordinary course of business, each claim file listed in Exhibit B CD (printed and attached hereto as **Exhibit "B"** attached to Yanza Declaration) should contain (i) the complaint filed in the action which will show the names of all parties; (ii) the name of plaintiff's counsel; and (iii) correspondence to and from AIGTS and plaintiff or its counsel setting forth the grounds for denial of the claim. See, Kahn Declaration.

AMERICAN HOME is not objecting to RHINO obtaining the data requested in Interrogatory No. 13. AMERICAN HOME is objecting to being required to bear the cost of the research and compilation necessary to develop the data. In keeping with the spirit and intent of Rules 26(b)(2) and 33(d), AMERICAN HOME has offered to assemble and make available to RHINO the source documents from which the requested data might be ascertained.

Therefore, AMERICAN HOME submits that it has responded to Interrogatory No. 13 in good faith and in keeping with the intent and spirit of the rules and the court's ruling.

## II. INTERROGATORY NO. 13 DOES NOT INVOLVE FACTS TO THE PENDING JOINT VENTURE ISSUE.

However, although AMERICAN HOME has no objection to making the files available to RHINO for its examination, AMERICAN HOME does not believe that the data requested in Interrogatory No. 13 is relevant to the pending joint venture issue and should not serve as grounds for delay or sanctions.

Interrogatories No. 13(d) and (e) do not seem to have any relationship to any remaining issue in this case. There is absolutely nothing in the case linking AIG Claim Services Inc. ("AIGCS") to any claim or defense (No. 13(d)); nor is there

7

anything in the case linking AIG or any of the AIG subsidiaries to any claim or defense (No. 13(e)) in this case. There are no letters, no documents, no allegations of conversations, absolutely nothing. What this data might have to do with the joint venture issue which would justify further delay in ruling upon the joint venture issue is unexplained by RHINO in its motion.

Interrogatory Nos. 13(a)(g) and (h) involve defenses to claims. Again, the relevance to the joint venture issue is unexplained by RHINO. AMERICAN HOME will stipulate that AIGTS has denied claims on its behalf on the basis of timeliness when the facts so warrant; and that AIGTS has denied claims on its behalf on other grounds when the facts so warrant. In the context of this case, the court has ruled that, "Once AIGTS understood that a genuine dispute over liability existed, it had every right to deny payment on the bond until RHINO and BIOGENESIS resolved the dispute." April 30, 2004 Order, p. 8 (citing Brinderson-Newberg Joint Venture v. Pac Erectors, Inc., 971 F.2d 272, 283 (9th Cir. 1992)). Whether AMERICAN HOME or AIGTS denied claims in other cases is of no relevance. The court has ruled that it acted properly in this case and it would seem that this line of discovery has been rendered moot by the Court's Order. These questions have no relevance to the pending joint venture issue and should not be a basis for sanctions or delay in ruling on the issue.[1]

With regard to No. 13(c) AMERICAN HOME stipulates that it was named as a defendant in each action brought on a bond issued by it. Again, this has no relevance to the pending joint venture issue and should not be a basis for any request for delay in ruling on the issue or sanctions.

In response to No. 13(b) AMERICAN HOME has stated that based upon interviews with current employees, it believes that AIGTS may have been named as a defendant maybe twice in the past, but that it maintains no independent records of this data. AMERICAN HOME has answered the question and If RHINO wants to try to impeach the answer, then RHINO can look at the 1,512 files to see exactly how often this might have occurred. However, to serve as a basis for delay in ruling upon the pending joint venture motion, Rhino must explain the relevance of the data to the pending joint venture issue.

In response to No. 13(f) AMERICAN HOME has stated that under its normal business practice, claimants would be directed to make claims under bonds issued by it through AIGTS. Therefore, for purpose of ruling upon the pending joint venture motion, the inference would be that in all of the 1,512 cases listed on Exhibit B CD (printed and attached as **Exhibit "B"** to Yanza Declaration), the claimants were directed to make their claims through AIGTS. There is therefore no need for delay in ruling upon the motion.

In response to No. 13(i) AMERICAN HOME has stated that it maintains no record of the identity of Plaintiff's counsel in the ordinary course of business, but this data would be contained in the various files listed on Exhibit B CD (printed and attached as **Exhibit "B"** to Yanza Declaration). Exactly what RHINO hopes to glean from the identity of Plaintiffs' counsel regarding the joint venture issue is unexplained. Therefore, because the data requested in Interrogatory No. 13 is not

---

[1] All the questions posed by RHINO regarding joint venture were answered by AIGTS in its Supplemental Responses to RHINO's Second Set of Interrogatories to AIGTS. AIGTS' Responses to Rhino's Second Set of Interrogatories are not at issue here.

1  relevant to the pending joint venture issue, the Court should not impose sanctions or

2  delay its ruling on that issue.

3
4
5
6

III.   **THE COURT SHOULD RECONSIDER AMERICAN HOME'S OBJECTION TO INTERROGATORY NO. 13 AND ENTER AN ORDER PROTECTING AMERICAN HOME FROM THE EXPENSE AND BURDEN OF COMPILING THE DATA REQUESTED BY INTERROGATORY NO. 13.**

7  In its previous answers and objections, AMERICAN HOME had objected on

8  the grounds that Interrogatory No. 13 was overly broad and burdensome. The court

9  rejected this objection upon the assumption that it was boilerplate.   However,

10 AMERICAN HOME's efforts to comply with the court's discovery order has shown

11 beyond a doubt that the requested data is not data kept in the ordinary course of

12 business, and that the requested data can only be obtained through the examination

13 and compilation of data which might be contained in approximately 1,500 claim files.

14 In the context of Rule 33 and interrogatories which are alleged to be burdensome or

15 oppressive, the Federal Civil Rules Handbook states at page 577:

16

17          Burdensome and oppressive: In general, the responding party
            must produce the information available without undue effort or
18          expense.   Thus, questions that require extensive research,
            compilation of data, or evaluation of data may be
19          objectionable.   The responding party is not required to
            prepare the adverse party's case.  The reasonableness of an
20          interrogatory is within the court's discretion.

21 The magnitude of this task was not known to the court or AMERICAN HOME

22 at the time the court issued its discovery order, and was discovered when

23 AMERICAN HOME attempted to comply with the court's discovery order.

24 AMERICAN HOME believes that the facts, as they are now known, show that

25 AMERICAN HOME's original objection to Interrogatory No. 13 on the grounds that it

26

10

1 is overly broad and oppressive has merit and should be reconsidered by the court.

2 For example, in order for AMERICAN HOME to furnish the data requested in the

3 various subsections of Interrogatory No. 13, a paralegal or litigation support service

4 would have to examine each of the approximate 1,500 claim files listed in Exhibit B

5 CD.

6 Depending on how many files could be examined on a given working day, at a

7 rate of $75 per hour, the approximate cost would be $19,000.00 to $25,000.00 to

8 obtain data which has little or no relevance to the joint venture issue pending before

9 the court. See, Kahn Declaration. Even if one or more of the subsections of

10 Interrogatory No. 13 are arguably relevant to the pending joint venture issue (or any

11 other issue raised by RHINO), the economic burden of compiling this data should be

12 borne by Rhine and not AMERICAN HOME. AMERICAN HOME therefore requests

13 that the court invoke its discretion under Rule 26(b)(2) to relieve AMERICAN HOME

14 from the expense and burden of compiling the data. Under Rule 26(b) the court may

15 act upon its own initiative after reasonable notice or pursuant to a motion under Rule

16 26(c).

17

18 In any event, RHINO's request that the court order the fact of a joint venture

19 as being established is not warranted and is contrary to Ninth Circuit guidelines in

20 discovery disputes. The existence or non-existence of a joint venture is not one of

21 the discrete facts inquired into in Interrogatory No. 13. To the contrary, it is an

22 ultimate fact which is dispositive on a major issue in this case. It would be

23 tantamount to granting summary judgment in RHINO's favor. RHINO has made no

24 showing that even if one takes all of the facts inquired into in Interrogatory No. 13 as

25 true, that it would result in a finding of a joint venture relationship between

26

11

AMERICAN HOME and AIGTS as a matter of law. The Ninth Circuit has ruled that such a harsh sanction is justified only in extreme circumstances, and to justify the imposition of such a harsh sanction, the district court must find the violations were due to willfulness, bad faith, or fault of the party, *Commodity Futures Trading Commission v. Noble Metals et.al.*, 67 F.3d 766 (9thCir. 1995). The facts of this case do not warrant such a finding. Also see *Valley Engineers Inc. et.al. v. Electric Engineering Company et.al.*, 158 F.3d 1051 (9th.Cir 1998) (discussing the availability of less drastic sanctions as a decisive element in determining whether or not to dismiss a claim). There are various alternatives to meet RHINO's legitimate discovery needs on the joint venture issue.

To the extent that discrete subsections of Interrogatory No. 13 may be relevant, it would seem that RHINO's legitimate discovery needs could be satisfied by one or a combination of the following alternatives:

1. RHINO could review the files;

2. RHINO could designate a small sample (not in excess of 25) to be reviewed at AMERICAN HOME's expense, reserving RHINO's right to review further files upon a showing of good cause.

3. RHINO could rely upon the answers and proposed stipulations set forth above.

Any of these alternatives, or perhaps a combination of #2 and #3, should allow RHINO to develop sufficient information to test whether or not summary judgment should be granted against it on the joint venture issue.

AMERICAN HOME has acted in good faith, and responded to the best of its ability within the 14 days allowed by the court's order and there is no evidence of the

12

type of behavior which the Ninth Circuit says must exist in order to justify the type of sanction RHINO requests.

### CONCLUSION

This case is ripe for summary adjudication. RHINO has failed to make any showing on the record that a joint venture exists between AIGTS and AMERICAN HOME.

The allegations set forth in RHINO's Motion, its Supplementation of Record and counsel's Declaration do not support a finding the Defendants have defied the spirit of the Federal Rules and the Court's April 27, 2004 Order. Moreover, AMERICAN HOME's Interrogatory Nos. 12 and 13 have no bearing on facts to establish a joint venture between AIGTS and AMERICAN HOME, nor has RHINO made any showing AIGTS and AMERICAN HOME are joint venturers. The mere fact that AIGTS and AMERICAN HOME share common directors and officers does not establish a joint venture.

The Defendants respectfully request to deny RHINO's Miller Act claim against AIGTS, as AIGTS is not a joint venture with AMERICAN HOME and dismiss AIGTS and AMERICAN HOME from the instant lawsuit and rule that there is no just reason for delay and enter final judgment pursuant to FRCP Rule 54(b).

Dated this 30th day of June, 2004.

**VERNIER & MAHER, LLP**
Attorneys for Defendants
**AIG TECHNICAL SERVICES, INC. and**
**AMERICAN HOME ASSURANCE COMPANY**

By: _____
     **LOUIE J. YANZA**

13