LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP2101
Attorney *for* Plaintiff

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> v. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | **PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR SUMMARY PARTIAL JUDGMENT** |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> v. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

**POSTURE OF THE CASE**

On December 15, 2003, BioGenesis filed its motion for summary judgment seeking summary adjudication on five arguments:

1. Rhino failed to commence the action timely under the Miller Act;

2. Rhino's Miller Act claim should be limited to $4,667.70;

3. Rhino cannot recover lost profits and costs for capital equipment under the Miller Act;

4. Rhino's bad faith claim fails to state a cause of action; and

5. Rhino's claim of fraud lacks the particularity required by FRCP 9(b).

*See BPI's motion for summary judgment filed herein on December 15, 2003.*

Rhino filed its opposition, including affidavits of Michael O'Connell and Eugene Patten, and a Declaration of Counsel Antonio Cortes. Oral arguments were heard on February 25, 2004. This Court, Honorable John S. Unpingco, Presiding, issued its written decision dated April 27, 2004, finding, *inter alia*, that BioGenesis failed to prove that Plaintiff's Miller Act claim was untimely; that questions of fact exist for trial concerning the quantum of Plaintiff's entitlement under the Miller Act; that Plaintiff's claim for lost expectation of profits on work unperformed were not allowed under the Miller Act; that Plaintiff's claim for bad faith breach of contract should be dismissed for failing to state a cognizable claim; and, lastly, that Plaintiff's fraud allegations lacked particularity in only one element (the "place of BioGenesis'

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-C0008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

**Page 2 of 10**

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 2 of 10

fraudulent activity"). The Court therefore dismissed the fraud count without prejudice, granting Plaintiff leave to amend the fraud allegations.

Also, on April 16, 2004, Anthony Cortez withdrew as counsel for Plaintiff due to relocating to the mainland. On June 7, 2004, Thomas M. Tarpley, Jr., filed his Notice of Appearance as Plaintiff's new counsel, who on June 14 filed Plaintiff's Motion to Establish Fact per FRCP 37(b)(2)(A) because Defendant sureties failed to comply with this Court's discovery order. That motion is scheduled to be heard on October 6, 2004.

Plaintiff's new counsel also notes that while Plaintiff's complaint(s) contained factual allegations regarding the verbal subcontract between Rhino and BioGenesis and that BioGenesis breached said agreement causing Rhino to suffer economic damages, Rhino's original attorney omitted to include a separate count for BioGenesis' breach of contract. Mr. Cortez apparently lumped the breach of contract claim in with Count I, alleging that all Defendants (including BioGenesis) were liable to Plaintiff "under the Miller Act". Plaintiff therefore will be bringing a motion to amend the complaint to clarify that there is a separate cause of action for breach of contract against BioGenesis.

Discovery has been completed. The trial date was vacated and has not been reset.

BioGenesis renewed its motion for partial summary judgment regarding the quantum of Rhino's recoverable Miller Act damages on August 17, 2004, which is scheduled to be heard on September 24, 2004. For the reasons stated herein, BioGenesis' renewed motion

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

Page 3 of 10

Case 1:02-cv-00008  Document 446  Filed 09/10/2004  Page 3 of 10

for partial summary judgment should be denied because questions of material fact remain for trial.

**ARGUMENT**

In the Court file is the Affidavit of Michael Nawaiki O'Connell, the President and CEO of Rhino Builders, filed on February 5, 2004. In paragraph 3 Mr. O'Connell testifies as follows:

> "3. On behalf of Rhino I did agree with Mr. Lam [of BioGenesis] that Rhino would perform the Navy work as BPI's subcontractor. The terms of the subcontract were: That Rhino would forward the cost of doing the work, that BPI would reimburse Rhino for that cost, that BPI would pay Rhino half of its Guam overhead costs, that BPI would supply safety plans and quality control plans and other contract documentation, that BPI and Rhino would split the profits derived from the contract on a 50/50 basis."

A specific breakdown of the reimbursable costs Rhino incurred on the project for which BioGenesis must pay per the agreement is attested by Rhino's accountant, Eugene Patten, in his affidavit filed herein on February 5, 2004 in opposition to BioGenesis' original summary judgment motion. This breakdown lists direct expenses of $176,281.08, and overhead expenses totaling $126,706.78 (for which BioGenesis owes fifty percent [$65,353.39]). BioGenesis is then credited with the $25,000 payment received, leaving a principal balance of $214,634.47 to which Rhino adds interest, overhead, profit, and gross receipt taxes, for a total claim of $407,849.70. *See Affidavit of Eugene Patten and Exhibit 1 thereto, dated January 30, 2004 and filed herein on February 5, 2004.* Even

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

**Page 4 of 10**

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 4 of 10

if Mr. Patten's addition of a plug 20% markup for overhead and profit is not in accord with the parties' verbal understanding, Mr. Patten's affidavit is competent evidence that at least $214,634.47 are reimbursable costs due under their agreement.

Rhino also claimed that BioGenesis owed Plaintiff for potential lost profits in the amount of $770,906, which raises the total claim to over $1,264,694.47. *See Order of April 27, 2004, p.3.* Rhino argued that "Rhino was entitled under its subcontract with BPI to one-half of the profits realized from the entire Navy Contract - not just the first 18 Delivery Orders. When BPI failed to pay Rhino, Rhino was entitled to stop work on the contract and sue for the profit it would have made if allowed to complete the entire contract as agreed."[1] Judge Unpingco has already ruled that this portion of Rhino's claim is unavailable under the Miller Act (although Rhino will continue to assert this claim as consequential damages for which BioGenesis remains liable on Rhino's breach of contract claim). Accordingly, that portion of BioGenesis' renewed motion is moot.

Nothing that BioGenesis has submitted to this Court disproves as a matter of law the itemized breakdown of costs incurred on the entire project in the amount of $239,634.47 for which BioGenesis has only paid $25,000, as sworn to by Eugene Patten. Instead, through a patchwork of arithmetic gymnastics, BioGenesis argues "it is undisputed" that Plaintiff is really only entitled to $4,667.70 as a matter of law. Because the parties are still squabbling over

---

[1] Opposition to BioGenesis Pacific, Inc.'s Motion for Summary Judgment, p.13.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

Page 5 of 10

Case 1:02-cv-00008    Document 446    Filed 09/10/2004    Page 5 of 10

the amounts owed, legitimate questions of fact exist for trial. BioGenesis' motion should therefore be denied.

First, it would be absurd to believe that the parties have engaged in this expensive, extended litigation over only $4,667! In making this argument, BioGenesis focuses on a disputed issue as to how many "task orders" Rhino worked on. Although BioGenesis acknowledges that Michael Danforth testifies that Rhino worked on task orders 1, 2, 3, 4 and 7,[2] BioGenesis wants this Court to instead accept the testimony of Richard Avilla that Rhino only worked on task orders 1, 2 and 7.[3] This is the same Richard Avilla who is described in one of the documents submitted by BioGenesis as follows:

> "I would like to see him gone now. As much as I have tried to make things as pleasant as possible under the circumstances, Richard does not seem incline to do so. I am getting more than a little tired of the crap. In my estimation, Rhino is taking a big risk keeping him around, having him in our offices and as a signatory on our bank accounts. He has been dishonest and has shown a complete disloyalty to Rhino in favor of his loyalty to BPI. He communicated things with BPI that could have seriously damaged Rhino in our efforts to negotiate. He has constantly thrown a monkeywrench into my efforts to get things done and get things organized around here and has gotten us into trouble on the SOC contract. I have no doubt from the reactions I have seen that

---

[2]
Renewed Motion for Summary Judgment, p.5. Danforth also indicates that Rhino worked on Task Order 5 as well. See Danforth Exhibit 3 attached to Exhibit 11 of the Second Clark Declaration.

[3]
Id.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

he has done a lot of harm to my standing with other employees."[4]

If there is disparity in the testimony as to which task orders were worked upon, or questions as to a witness's credibility, these must be resolved at trial, not on a motion.

BioGenesis then refers to Danforth Deposition Exhibit No. 3 in Exhibit 11 to the Second Clark Declaration as supporting BioGenesis' argument, but it does not. Danforth Exhibit 3 is a survey by Danforth of work performed on the project by Rhino as of October 2000. This survey lists work performed on task orders 1, 2, 3, 4, 5, and 7, of which "3 are finished but I do not have the Contracting Officers [sic] acceptance."

BioGenesis seems to be arguing that there can be no entitlement under the Miller Act until a project is absolutely completed and accepted by the government. The Miller Act contains no such restriction. The Miller Act authorizes recovery of the reasonable value of work performed and materials furnished on a breached subcontract, regardless of whether the project as a whole has been completed or "accepted". *40 USC §3131 (formerly 40 USC §270a)*; St. Paul-Mercury Indem. Co. v. United States, 238 F.2d 917 (10th Cir. 1956).

BioGenesis next points out that Rhino's invoice #1313 dated November 14, 2000 (which incidentally is further evidence that Rhino performed on task orders 3 and 4, contrary to BioGenesis' position) stated that the amount owed was only $106,765.53.

---

[4] Email of George Allen to Michael Danforth dated November 18, 2000, p.35 of Michael Danforth's Deposition Exhibit No. 5 attached as Exhibit 11 to the Second Declaration of Arthur B. Clark.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

Page 7 of 10

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 7 of 10

(Exhibit K to the first Clark Declaration). BioGenesis overlooks the fact that this invoice was not a final billing, but an interim billing for work performed up to October 31, 2000. Rhino stayed on the project until November 17, 2000. [5] Rhino continued to furnish tools and rent equipment to BioGenesis for on the project along with items such as gas and cellphones. [6] See also Deposition of George Allen, at 60:17-21 and Exhibit 7 thereto attached as exhibits to the Declaration of Counsel (Antonio L. Cortes) filed on January 23, 2004 (Rhino supplied GMC truck for BioGenesis' use on the Navy Contract until early July 2001); *Id.*, @ 63:21 to 65:9 (Rhino supplied containers full of tools that continued to be used on the Navy Contract in 2001); *Id.*, @ 66:7 to 67:6 and at 83:15-84:20 (BioGenesis used Rhino's safety equipment through April 2001 and charged materials used on the Navy Contract to Rhino's account at Ace Hardware as late as April or May 2001); *Id.*, @ 79:7-13 (BioGenesis continued to use Rhino's tools through December 2001; Deposition of Eugene O'Connell, 92:13-104:3 attached to the same declaration of counsel (BioGenesis continued to use Rhino's power scraper for roofs into 2002, as well as a white Isuzu Flatbed vehicle and other equipment of Rhino's).

Although BioGenesis argues that at the time of submitting Rhino invoice #1313 Rhino's accountant "did not have all the

---

[5]
George Allen Deposition Exhibit 3 attached to the Declaration of Thomas M. Tarpley, Jr. filed contemporaneously herewith.

[6]
George Allen Deposition Exhibits 5 and 6, attached to the Declaration of Thomas M. Tarpley, Jr.

George Allen Deposition P108-109 attached to the Tarpley Declaration.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT
**Page 8 of 10**

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 8 of 10

documentation to verify that Rhino had completed delivery orders 3 and 4", actually what the accountant stated was "I don't recall", but he did have the certified payroll and job costing printouts, and information provided by either Mr. Garthe or Mr. O'Connell. (Exhibit 14 to the Second Clark Declaration at p.162-163). So BioGenesis' argument is misleading on this point. More importantly, the accounting sworn to by Eugene Patten and filed with this Court on February 5, 2004, is more reliable and accurate than an interim billing submitted before all costs had been accounted for.

BioGenesis also argues, without citing any authority either contractual or legal, that "it is impossible for Rhino's claim to exceed the actual contract value of these three delivery orders." The agreement was for BioGenesis to reimburse Rhino for all its costs incurred on the project. There is no showing that reimbursable costs would be limited to the task order values. Therefore, which specific task orders Rhino worked on or completed does not challenge the veracity of Eugene Patten's affidavit stating that the reimbursable costs Rhino is entitled to under the projects total $239,634.47.[1]

Lastly, BioGenesis argues that Rhino's claim includes capital equipment costs, but not rental value. BioGenesis made this same argument in its first motion for summary judgment. As it failed to do then, BioGenesis does not specify what that equipment is or how much of Rhino's claim is for "capital equipment". Thus, on this

---

[1] Exhibit 1 to the Affidavit of Eugene Patten filed on February 5, 2004.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

Page 9 of 10

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 9 of 10

issue Rhino will simply note that the *use* or *rental* of capital equipment "furnished...in the prosecution of the work" can be recovered under the Miller Act. <u>United States Navy for the benefit of Andrews v. Delta Contractors Corporation</u>, 893 F.Supp.125 (USDC Puerto Rico, 1995). In Eugene Patten's job costs breakdown, he lists "equipment Lease/Rental" as part of the direct expenses, as well as "Equip. Rental/Lease" in the overhead expenses.[8/] BioGenesis does not identify where in these $239,634.47 job costs is there any claim for the sale-retail value of any capital equipment.

**CONCLUSION**

As the Honorable John S. Unpingco found on BioGenesis' first motion for summary judgment, "[s]ince Rhino and Biogenesis quarrel over what work and materials Rhino provided under the subcontract, as well as the terms of the oral subcontract, there exists genuine issues as to these material facts." BioGenesis' renewed motion for partial summary judgment should be denied.

Respectfully submitted this 10th day of September, 2004.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Plaintiff

---

[8/] Exhibit 1 to Eugene Patten's Affidavit filed February 5, 2004.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-C0008
PLAINTIFF'S OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT

Page 10 of 10

Case 1:02-cv-00008   Document 446   Filed 09/10/2004   Page 10 of 10