LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP2105
Attorney for Plaintiff

FILED
DISTRICT COURT OF GUAM
SEP 10 2004
MARY L. M. MORAN
CLERK OF COURT

442

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | CIVIL CASE NO. 02-00008 |
| BIOGENESIS PACIFIC, INC., <br><br> Counter-Plaintiff, <br><br> v. <br><br> RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, <br><br> Counter-Defendants. | **DECLARATION OF THOMAS M. TARPLEY, JR. IN OPPOSITION TO BIOGENESIS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| AMERICAN HOME ASSURANCE CO., <br><br> Cross-Claimant, <br><br> v. <br><br> BIOGENESIS PACIFIC, INC., <br><br> Cross-Claim Defendant. | |

I, Thomas M. Tarpley, Jr., hereby declare under penalty of perjury under the laws of Guam that the following statements are true and correct:

ORIGINAL

1. I am the attorney of record for Plaintiff herein.

2. Attached are true and correct copies of excerpts and deposition exhibits from the Deposition of George W. Allen taken on October 6, 2003, specifically the following:

Allen Deposition Exhibit 3, authenticated by Mr. Allen at p.35-36 of the transcript.

Allen Deposition Exhibit 5, authenticated by Mr. Allen at p.51 of the transcript.

Allen Deposition Exhibit 6, authenticated by Mr. Allen at p.54-56 of the transcript.

Pages 108-109 of the George Allen Deposition transcript.

Executed this 10th day of September, 2004 in Hagatna, Guam.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Plaintiff

Rhino Builders, Inc. v. BioGenesis Pacific, Inc., et. al.,
CIVIL NO. 02-00008
DECLARATION OF THOMAS M. TARPLEY, JR., IN OPPOSITION OF
BIOGENESIS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

**Page 2 of 2**

Case 1:02-cv-00008   Document 447   Filed 09/10/2004   Page 2 of 17

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) CIVIL CASE NO. 02-00008 ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) |
| Defendants. | ) DEPOSITION OF ) GEORGE W. ALLEN |
| BIOGENESIS PACIFIC INC., | ) October 6, 2003 ) |
| Counter-Plaintiff, | ) ) |
| vs. | ) ) |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) ) ) |
| Counter-Defendants. | ) ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| BIOGENESIS PACIFIC INC., | ) ) |
| Cross-Claim Defendant. | ) |

RALPH ROSENBERG COURT REPORTERS,
Honolulu, HI (808) 524-2090

1  A   There were various summary letters, and I
2  can't tie these two together.
3  Q   Do you know if -- okay. Just to clarify,
4  you don't recall which letter you are referring to in
5  this E-mail?
6  A   I'm sorry?
7  Q   Just to clarify, you do not recall which
8  letter you are referring to in this E-mail?
9  A   I would probably have to tie letters to the
10 dates so that I could be absolutely sure.
11         MS. CRUZ:  Okay.  If I can have the
12 court reporter mark document No. 4 as Exhibit 3.
13         (Exhibit No. 3 was marked for
14         identification.)
15 BY MS. CRUZ:
16 Q   Mr. Allen, do you have in front of you what
17 looks like a letter on Rhino Builder's letterhead?
18 A   Yes.
19 Q   Dated November 9, 2000 to Gerald Lam?
20 A   Yes.
21 Q   And just for reference, the Bates numbers
22 on the bottom I believe were marked by Mr. Danforth,
23 Mr. Tuhy, just by Mr. Tuhy?
24         MR. TUHY:  That's our Bates stamp.
25         MS. CRUZ:  Okay.

BY MS. CRUZ:

Q   And Mr. Allen, if you could just read through this letter, please, and let me know when you've read the letter.

A   Okay.  Kind of long winded.

Q   Is this letter familiar to you?

A   Yes.

Q   Okay.  Did you prepare this letter?

A   I'm sorry?

Q   Did you prepare this letter?

A   Prepared this letter in consultation with Mr. O'Connell and Mr. Danforth.

Q   Okay.  Now that you've read the letter and if you can refer back to Exhibit 2, do you know if this is the letter that you were referring to in the E-mail?

A   I don't know if this is the final version of the letter referred to in the E-mail.

Q   Okay.

A   My signature is not on it for one thing; so I don't know if that's still a draft.

Q   Okay.

A   Or the final version or not.

Q   Okay.  So do you know if this letter was ever sent to Mr. Lam?

1  Biogenesis's projects probably less than $1,000 was
2  ever transferred to where Rhino could use that money.
3      Q    Okay.  Thank you.  I'm going to refer you
4  to document No. 15.
5              (Exhibit No. 5 was marked for
6              identification.)
7  BY MS. CRUZ:
8      Q    Mr. Allen?
9      A    Yes.
10     Q    Do you have Exhibit No. 5?
11     A    Yes, I do.
12     Q    And just so I know we're looking at the
13 same thing it's invoice -- it's a Rhino Builders
14 invoice.  It's invoice No. 0201-001?
15     A    Correct.
16     Q    Are you familiar with this invoice?
17     A    Yeah, I recall that there was a rental of
18 the Isuzu flatbed, and it's got my signature on it.
19     Q    That was my next question.  Is that your
20 signature on the bottom?
21     A    Yes, it is.
22     Q    It is?
23     A    Yes.
24     Q    Okay.  Can you explain to me what this
25 invoice is for?

1    Q    And did they return the key with the
2 vehicle?
3    A    Yes.
4    Q    On February 23, 2001?
5    A    Yes.  To the best of my recollection, they
6 did.  If they returned the vehicle, I wrote them an
7 invoice, I'm sure I had the key back.
8    Q    And this invoice was paid by Biogenesis?
9    A    It's stamped as paid, and it's got a check
10 number on it.  I believe it was paid.
11              MS. CRUZ:  Okay.  Can we go to
12 document No. 16.
13              (Exhibit No. 6 was marked for
14                   identification.)
15 BY MS. CRUZ:
16    Q    This is invoice, Rhino Builders invoice
17 0301-002 dated March 21, 2001?
18    A    Yes.
19    Q    Okay.  To the best of your recollection,
20 who, from Biogenesis, approached you on this
21 particular occasion?
22    A    I can't really say.
23    Q    Okay.  Do you recall when the request was
24 first made to rent the Isuzu flatbed whether the
25 agreement was to rent for one week and two days or

1 was it on a day-by-day basis?

2     A    I had established a weekly rental rate with
3 them and a daily rental rate. The daily rental rate
4 was greater than the weekly rate if you know what I
5 mean.

6     Q    But do you recall --

7     A    I don't recall.

8     Q    Do you recall who gave possession of the
9 keys of the vehicle to?

10     A    I'm a little bit unsure of which invoice
11 this is. One of these rentals -- and it may have
12 been the two days on this invoice. I'm not sure --
13 but one of these rentals was made without me giving
14 the keys to anyone at Biogenesis. We had reached a
15 point where I said no, I'm not renting it to you
16 anymore. You haven't paid me, and I came to work on
17 a Monday morning, the truck was gone. I called
18 Mr. Garthe. Mr. Garthe said he was using it to do
19 some work at his church.

20     Later that morning my superintendent on our
21 swimming pool project at the big Navy base called me
22 and told me he saw Biogenesis people delivering
23 materials on that flatbed truck to a barracks job
24 they had right up the street from our swimming pool
25 job.

When I confronted Mr. Garthe with his lie, he said yeah, well, Biogenesis is using it and that they would pay rental for it, and I told him I wanted it back, and I wanted the second set of keys back as well.

Q   You don't recall when that was?

A   It would be the last time they rented it because I refused to rent it again. That was the first time I ever had two sets of keys to the flatbed truck.

Q   From March 12 to 17 -- on March 17, did Biogenesis return the keys to you?

A   I have no idea. Again, I don't know if this entire period of time was done, and I don't know if this was the last one. All I know is that the last one, if this is the last one, was done -- it started initially with a midnight requisition of the vehicle. I don't know if that was the last two days of this in which case they would have returned it to me the previous Friday or if the entire one week and two days was done under those circumstances.

Q   Okay. Just so I'm clear, there's at least one occasion where you invoiced Biogenesis for a rental and you found that the truck was no longer parked in the parking lot, in Rhino's parking lot?

1  Biogenesis project manager, who would have been the
2  person responsible for that.
3      Q    Okay.  If you can remember, did Rhino
4  Builders supply subcontractor daily reports to
5  Mr. Avilla after he left the Rhino Builder payroll?
6      A    I do not recall whether they did or not.
7      Q    Okay.
8           MR. TOM:  Okay.  That's all the
9  questions I have.  Janalynn, if you have follow-up.
10          MS. CRUZ:  I think I only have one
11 follow-up question.
12                FURTHER EXAMINATION
13 BY MS. CRUZ:
14     Q    Mr. Allen, you stated earlier that after
15 December, 2000 there were materials that were charged
16 to Rhino vendor accounts and a cell phone listing and
17 gas card bill outstanding?  Do you recall that
18 statement?
19     A    I'm sorry?
20          MR. CRUMPTON:  Do you recall that
21 statement?
22 BY MS. CRUZ:
23     Q    After December --
24     A    Oh, yes, I recall that statement in
25 general.

1  Q    Okay. And you said that occurred from
2  about January through April, 2001?
3  A    Again, to the best of my recollection, some
4  of these ran into and as late as April of 2001. Some
5  of these charges being made on Rhino accounts by
6  Biogenesis employees.
7  Q    Okay. To your knowledge, was Biogenesis
8  ever invoiced or billed for those charges?
9  A    I seem to recall initiating billings. I
10 don't know if they were ever billed out by Hawaii or
11 not. And I haven't seen it in the exhibits here, but
12 I sent communications back and forth with Biogenesis
13 about these.
14 Q    Biogenesis or to Rhino Hawaii?
15 A    Biogenesis. I sent copies of the invoices
16 and asked them to stop doing it and asked them to do
17 something about reimbursing us.
18 Q    But you don't know if the Hawaii office
19 invoiced Biogenesis?
20 A    I don't know if they did.
21       MS. CRUZ: Okay. Thank you. I don't
22 have any further questions.
23       MR. TOM: All right. Thank you very
24 much, Mr. Allen, for coming down. I think you're
25 done.

# GEORGE ALLEN DEPOSITION

# DOCUMENT NO. 4

EXHIBIT 3



# RHINO BUILDERS  HUBZone & 8(a) SBA CERTIFIED

? 790 North Marine Drive, P. O. Box 959, Tumon, Guam, 96911, (671) 632-7653,
(671) 637-9618 fax, Rhinogum@ite.net
? 85-841 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-8878,
(808) 668-7024 fax, Rhinol@Hawaii.rr.com

November 9, 2000

Gerald Lam  
BIOGENESIS PACIFIC, INC.  
1604 Uluaiana Place  
Kailua, HI 96734  
(808)263-0002 fax

Certified Mail: xxxxx xxxxx xxxxx xxxx xxxx  
Advanced Copy via Fax _____ hrs. Guam Time

Dear Mr. Lam;

Rhino Builders, Inc herby notifys you that as of November 17, 2000 at close of business, Rhino Builders, Inc. (Rhino) previous know as Rhino Roofing and Repairs shall cease expending resources and performing work for BioGenesis Pacific, Inc. We will not perform any work, direct or indirect, for BPI unless or until a written subcontract agreement is in place and payments made by BPI to Rhino for past work as outlined in our the proposed agreement presented to you by Michael Danforth. The following actions are or will be taken as set forth herein. The date of 17 November 200 is set as a reasonabledead line, in which, BioGenesis Pacific, Inc. will act in good fatih to 1) resolve unpaid expendurtures incurred by Rhino Builders, Inc. in behalf of BioGenesis Pacific, Inc., 2) make current all work-in-place performed todate and 3) execute a bi-ateral Subcontract Agreement inlcuding 17 Orders of work.

- Richard Avilla will be terminated by Rhino effective November 11, 2000.
- Rhino will terminate the lease and vacate the building at 245B Perez where Mr. Avilla is now living and where BPI is sharing office space with Rhino no later than 30 November, 2000. Rhino will not be obligate for any rents or other payments beyond 17 November 2000, except as may be required under the lease agreement with the landlord. All Rhino owned furniture, equipment, office supplies and incidentals will be removed on or before November 17, 2000 and utilities and phone services for which Rhino is obligated will be terminated as of November 17, 2000. If Rhino is unable to terminate the lease and continues to be obligate to pay rent, Rhino will continue to occupy the premesis and BPI will be required to vacate the premesis on November 17, 2000.
- Beginning immediately, no Rhino employee will be utilized to do any work, direct or indirect, for BPI. All Rhino employees will be informed that they are not authorized to work full or part time for BPI. Any calls received for BPI at the Rhino phone number will be referred to the BPI phone number. No messages will be taken for nor given to BPI.
- Mr Avilla will be allowed to occupy living space at 245B Perez until Rhino vacates on November 17, 2000. Upon termination by Rhino, Mr. Avilla will no longer be allowed to use any Rhino office equipment, materials, supplies or utilities, except as incidental to his domestic use through November 17, 2000. Upon termination from Rhino, Mr. Avilla will no longer be allowed to use any property, materials, equipment or supplies owned by Rhino, including, but not limited to vehicles, telephones, utility services, telephone services, Internet service, etc.
- Effective immediately, 9 November 2000, Mr. Avilla's signatory authority will be removed from all Rhino bank accounts and all vendors, subcontractors and suppliers will be informed that Mr Avilla no longer has authonty to act on the behalf of Rhino or to obligate Rhino in any way.
- On the first business day after Mr. Avilla's termination, Rhino will inform all government employees and officials with whom he has had contact on behalf of Rhino that he is no longer employed by Rhino and is not authorized to act in Rhino's behalf.

If you have any questions in this regard, please contact either myself or Michael Danforth.

007854

# GEORGE ALLEN DEPOSITION

# DOCUMENT NO. 15

EXHIBIT S



# RHINO BUILDERS HUBZone & 8(a) SBA CERTIFIED

790 North Marine Drive, P. O. Box 959, Tumon, Guam 96911, (671) 632-7653,
(671) 637-9618 fax, Rhinogwa@ite.net
85-841 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-8678,
(808) 668-7024 fax, Rhino1@Hawaii.rr.com

## INVOICE

| | | | |
|---|---|---|---|
| TO | BIOGENESIS PACIFIC, INC | NO. | 0201-001 |
| | 790 NORTH MARINE DRIVE #303 | DATE | FEB. 26, 2001 |
| | TUMON, GUAM 96911 | SHIP VIA | |
| ATTN | BOBBIE SALAS | YOUR NO. | |
| TEL | 637-9633/35  FAX  637-9634 | OUR NO. | |
| | | TERMS | DUE UPON RECEIPT |

This is to bill you as follows:

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| | **ISUZU FLATBED RENTAL** | | |
| 4 DAYS | MONDAY~THURSDAY FEB. 12-15, 2001 | 130.00 /DAY | $ 520.00 |
| 1 DAY | FRIDAY FEB. 23, 2001 | 130.00 /DAY | $ 130.00 |

Recieved by: Bobbie Salas
*[signature]*
8-5-01

**PAID**
ck-1008

| | Amount due | $ 650.00 |

RHINO BUILDERS, INC.

By: *[signature]*

*[Pl]ease show invoice number on your remittance.*

# GEORGE ALLEN DEPOSITION

# DOCUMENT NO. 16

EXHIBIT 6



# RHINO BUILDERS HUBZone & 8(a) SBA CERTIFIED

790 North Marine Drive, P. O. Box 959, Tumon, Guam, 96911, (671) 632-7653,
(671) 637-9618 fax, Rhinogwa@ite.net
85-841 B Farrington Highway, Waianae, Hawaii, 96792, (808) 668-8878,
(808) 668-7024 fax, Rhino1@Hawaii.rr.com

## INVOICE

| TO | BIOGENESIS PACIFIC, INC. | NO. | 0301-002 |
|---|---|---|---|
|  | 790 NORTH MARINE DRIVE #303 | DATE | MAR. 21, 2001 |
|  | TUMON, GUAM 96911 | SHIP VIA |  |
| ATTN | BOBBIE SALAS | YOUR NO. |  |
| TEL | 637-9633/35  FAX  637-9634 | OUR NO. |  |
|  |  | TERMS | DUE UPON RECEIPT |

This is to bill you as follows:

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
|  | **ISUZU FLATBED RENTAL** |  |  |
| 1 WEEK | MONDAY-SATURDAY<br>MAR. 12-17, 2001 | 584.00 /WK. | $ 584.00 |
| 2 DAYS | MONDAY-TUESDAY<br>MAR. 19-20, 2001 | 130.00 /DAY | $ 260.00 |
|  |  | Amount due | $ 844.00 |

*Recieved by* [signature] *3-22-01*

RHINO BUILDERS, INC.

Please show invoice number on your remittance.

By _____[signature]_____

**FILE COPY**