| 1  | Arthur B. Clark, Esq. |
|----|------------------------|
| 2  | Janalynn M. Cruz, Esq. |
|    | CALVO AND CLARK, LLP |
| 3  | Attorneys at Law |
|    | 655 South Marine Drive, Suite 202 |
| 4  | Tamuning, Guam 96911 |
|    | Telephone: (671) 646-9355 |
| 5  | Facsimile: (671) 646-9403 |
| 6  | Attorneys for Defendant/Counter-Plaintiff BioGenesis Pacific, Inc. |



FILED
DISTRICT COURT OF GUAM
SEP 17 2004
MARY L. M. MORAN
CLERK OF COURT

444

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR USE AND BENEFIT OF RHINO BUILDERS, INC., | ) ) ) | CIVIL CASE NO. 02-00008 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC, INC.'S RENEWED MOTION FOR SUMMARY JUDGEMENT** |
| BIOGENESIS PACIFIC, INC., AIG TECHNICAL SERVICES, INC., and AMERICAN HOME ASSURANCE COMPANY | ) ) ) ) ) | |
| Defendants. | ) | |
| BIOGENESIS PACIFIC INC., | ) ) | |
| Counter-Plaintiff, | ) ) | |
| vs. | ) ) | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, AND JOHN DOES 1-10, | ) ) ) ) | |
| Counter-Defendants. | ) | |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) | |
| Cross-Claimant, | ) ) | |
| vs. | ) ) | |
| BIOGENESIS PACIFIC INC., | ) ) | |
| Cross-Claim Defendant. | ) ) | |

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

**ORIGINAL**

1

In its Opposition, Rhino simply reincorporates alleged costs that the Court has already ruled are not permitted under the Miller Act. Recognizing that the standard for bringing a summary judgment motion is the lack of any genuine issue of *material* fact, Rhino's references to immaterial factual issues in dispute is inadequate to prevent summary judgment. In explaining the standard for summary judgment, the United States Supreme Court stated as follows:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original) (citations omitted). In short, summary judgment is proper despite the existence of factual disputes when the disputed matters are not material to the resolution of legal issues presented in the case. *See* 11 Moore's Fed. Prac., § 56.13[2] (Matthew Bender 3d ed. 2004).

In its Opposition to BioGenesis' Renewed Motion for Summary Judgement ("Opposition") Rhino presents to the Court purported disputed facts that are immaterial to the legal issues in this case. For example, Rhino cites to the Affidavit of Eugene Patten (aka Eugene O'Connell) (filed February 5, 2004) ("Patten Affidavit") as "competent evidence" that at least $214,634.47 ($239,634.39 in costs minus the $25,000 payment by BioGenesis) is recoverable under the Miller Act. However, Mr. Patten's Affidavit attaches a cost breakdown that only lists $21,117.89 for materials and $20,787.87 for direct labor. *See* Ex. 1 Patten Affidavit. The balance of his accounting is related to unrecoverable overhead and capital expenses.

For example, Mr. Patten's affidavit includes a separate category for overhead expenses totaling $126,706.78. In the Direct Expense section, Mr. Patten's charges also include ten months of truck lease, which Mr. Patten testified under oath was a direct pass through of 100% of Rhino's lease expense dating all the way back to February 2000, even though Rhino only worked on the Navy Project
BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

2

between July and September or October 2000. *(See* Item 50003 of Ex. 1 to Patten Affidavit. Ex.14 to Second Clark Decl. at pp. 193-198.)[1]

---

[1]
Q. Can you tell me what periods we're talking about that the flatbed was being rented?
A. I believe I started off from February when we first was contacted, or second contact by Gerald Lam, and that Richard Avilla was starting to inspect the job sites for him.
Q. This is February, 2000?
A. Yes.
Q. So all the costs associated with your lease, with Rhino's lease of the flatbed from February, 2000 through when?
A. I'm not sure. That might be to December.
Q. Of 2000?
A. Yes.
Q. Is this 50 percent of the lease price or 100 percent?
A. 100 percent. And there's some other equipment leases that they made during that time as well.
Q. I thought you stated that you guys were going to be splitting the cost, so why did you pass 100 percent of the lease expense on to BioGenesis?
A. Because most of the usage was by BioGenesis.
Q. Okay.
A. So I decided to reallocate the cost back up there.
Q. Did BioGenesis use the vehicle in February, 2000?
A. I don't know.
Q. Did they use it in March of 2000?
A. I don't know.
Q. Was Rhino working on the project in March of 2000?
A. They were inspecting the different job sites.
Q. And they were using the vehicle every work day eight hours a day, to the best of your knowledge, in the month of March, 2000?
A. I don't know.
Q. April of 2000?
A. I don't know.
Q. Then how do you know they were using the vehicle then?
A. I don't.
Q. So what prompted you to put that number in your invoice, or who prompted you?
A. Actually, I did it myself.
Q. Nobody instructed you to pass that cost on?
A. No.
Q. You prepared the payroll reports, certified payroll reports, so you know that the field laborers were working on the project from maybe as early as June of 2000, but at least from July of 2000 through September or October of 2000, right?
A. Yes.
Q. Outside of those months, July through October of 2000, do you have any reason to believe that BioGenesis was using this flatbed Isuzu pickup truck?

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd                                    3

Case 1:02-cv-00008   Document 449   Filed 09/17/2004   Page 3 of 7

Mr. Patten also includes a charge under Direct Expenses for Other Job Expenses, totaling $51,461.66. (*See* Item 50005 of Ex. 1 to Patten Affidavit.) The footnote to this item states that it "includes non-returned equipment and . . . small tools." In addition, at page 8 of its Opposition, Rhino sets forth a laundry list of items it claims to have supplied to the project (e.g., tools, power scraper, safety equipment, items purchased at Ace Hardware, gas, cell phones, and other equipment). However, as well-establish under the Miller Act, capital equipment is *not* recoverable. As BioGenesis already established in its moving papers, Rhino's accountant Mr. Patten testified at his deposition that Rhino's $239,000 claim includes the *full retail value* of the capital equipment used on the project, not its rental value. (Ex. 8, p.23 to the First Clark Decl.) This Court has already held "'[t]he supplying by sale to the contractor of equipment which should last over several jobs is not covered by the bond." Court's Order at p. 11. Similarly, the supplying of equipment, not by contract or agreement but by conversion, which is what Rhino is alleging, would also not be recoverable under the Miller Act. *See also Ibex Indust. Inc. v. Coast Line Waterproofing*, 563 F.Supp. 1142 (D.C. D.C. 1983) (holding that wheelbarrows, goss

---

    **A.**    I'm sorry, can you rephrase that question or ask it again?
    **Q.**    Okay. You prepared payroll reports to show that Rhino's laborers were working on the Navy contract in the months of July through September of 2000, maybe as early as June, maybe as late as October. In the year 2000, except for those periods where you had field laborers getting paid, and we're talking February, March, April, May, parts of June, parts of October, November, and December of 2000, that's nine months out of the year where your employees, or eight months out of the year where your employees were not getting paid at least, there was no payroll reports to show them working on the BioGenesis project, so how can you tell me that during these eight months out of the year, BioGenesis was using the flatbed pickup truck for the project?
    [Objections and Discussion Between Counsels Omitted]
**BY MR. CLARK: (Continuing)**
    **Q.**    My question is, if your laborers are only going to the job site from the months of July through October of 2000, how did you get the impression or where did you get the idea that you were going to charge rental for the flatbed truck or the leased price for the flatbed truck for the entire year?
    [Objections and Discussion Between Counsels Omitted]
    **A.**    I believe that based upon the fact that we were supposed to split the costs, that they should be sharing the cost as well.
**BY MR. CLARK: (Continuing)**
    **Q.**    But you just told me that you weren't splitting or sharing the cost, but you were charging 100 percent of the cost to BioGenesis, at least that's the number that's reflected in this item here "Equipment Rental"; is that right?
    **A.**    Yes.

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

4

Case 1:02-cv-00008    Document 449    Filed 09/17/2004    Page 4 of 7

burner, ladder vator, gravel hopper, tolls, brush and hose, axes, hoses, goggles, hammer, and mop handle constitute equipment which could not be claimed under the Miller Act); *Transamerica Premier Ins. Co. v. Ober*, 894 F.Supp. 47 (D.C.Me.1995) (capital equipment not recoverable under Miller Act); *Kirchdorfer, Inc. v. Aegis/zublin J.V.*, 869 F.Supp. 387 (E.D.Va. 1994) (same) *citing United States ex rel. Sunbelt Pipe Corp. v. United States Fidelity and Guaranty Co.*, 785 F.2d 468, 470 (4th Cir.1986). (Ex. 4, pp. 193-197, 208-210 to the Clark Decl.)

Rhino also attempts to raise as a basis to deny summary judgment the "disparity in the testimony as to which task orders were worked upon" (Opposition at p. 7), yet offers no competent evidence to illustrate any such disparity. In fact, Rhino points out additional evidence that actually supports BioGenesis' position that Rhino only completed three delivery orders. Rhino points out that Michael Danforth's status report lists work performed on the delivery orders of which "3 are finished but I do not have the Contracting Officers acceptance." (Opposition at p. 7, referring to Ex. 11 to the Second Clark Decl. at Depo. Ex. 3) Rhino misinterprets Mr. Danforth's statement as meaning that Rhino had also completed delivery order number 3, when in fact, Mr. Danforth did not say that "3 *is* done," but that "3 *are* done." When read in context, it is clear that Mr. Danforth is summarizing the status of all seventeen delivery orders, *three* of which he confirms *are* done. Both parties agree that Rhino completed delivery orders 1 and 2. The only other delivery order referenced in Mr. Danforth's status report as being completed is delivery order 7. (*See id.*) This is exactly what BioGenesis has admitted in its Answer and has been saying from the beginning. It is now further undisputed that Rhino *only* completed delivery orders 1, 2, and 7.

Rhino further contends that it is irrelevant which delivery orders Rhino worked on or completed since the "agreement was for BioGenesis to reimburse Rhino for all its costs incurred on the project." (Opposition at p. 9.) Rhino's argument is seriously flawed and illustrates Rhino's misunderstanding of the Miller Act and the summary judgment standard. Rhino's exaggerated claim is a claim for expectation damages, which is *not* allowed under the Miller Act. Under the Miller Act, Rhino is only entitled to recover the cost of the labor and materials it provided to the Navy Project. In this regard, the Court has already held that: "[T]he Miller Act *does not* entitle Rhino to lost profits." Court's Order at p. 11. *See also Arthur Olive Co. v. United States, for the Use and Benefit of Dan C.*

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

5

Case 1:02-cv-00008   Document 449   Filed 09/17/2004   Page 5 of 7

*Marino*, 290 F.2d 70, 71-72 (1st Cir. 1961) ("The Miller Act . . . was enacted to give those supplying labor and materials for government construction contracts, protection comparable to that furnished by mechanics' and materialmen's liens where private construction is involved. . . . The Act is a Congressional recognition of the equity in favor of those whose *actual* expenditure of work or utilization of material has enhanced the value of the property in question.") (emphasis added) (citations omitted).

Although Rhino's claim for other damages may be relevant to a breach of contract claim, which Rhino admits it has not brought (*See* Opposition at p. 3), BioGenesis' summary judgment is focused on the claim that Rhino did bring, which is a claim under the Miller Act. Under this federal statute, Rhino's claim should be limited to the value of the work and materials that actually went into the Navy Project, which does not include lost profits, expectation damages, or the full retail value of unreturned capital equipment. Rhino offers nothing in the way of competent evidence that creates a disputed issue of *material* fact, and it cannot defeat a motion for summary judgment by "squabbling" over the factual issues, as Rhino suggests in its Opposition.

Based upon the foregoing, and based upon the arguments made in BioGenesis' moving papers, BioGenesis requests that this Court grant summary judgment in BioGenesis' favor. Initially, BioGenesis suggested that partial summary judgment be granted, however, in light of the computation provided to the Court in footnote 14 of its memorandum in support of this motion, there may be a basis for full summary judgment on this issue. To recap, the total contract price of the three delivery orders that Rhino worked on is $43,854.20. Based on Rhino's computations, the gross contract price includes a profit component of 38.8%. When applied to the total value of delivery orders 1, 2 and 7, the profit for those three delivery orders should have been: $43,854.20 x 38.8% = $17,015.43. If Rhino and BioGenesis were to split this profit per the alleged oral subcontract, BioGenesis and Rhino would have each been entitled to half that amount or $8,507.72. Thus, under the alleged subcontract Rhino should only have received: $43,854.20 (total contract price for D.O. 1, 2 and 7) - $14,186.50 (cost of materials)[2] - $8,507.72 (BioGenesis' half of the profits) = ***$21,159.98***. Since BioGenesis paid Rhino

---

[2] *See* Ex. X to First Clark Decl.

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

6

Case 1:02-cv-00008   Document 449   Filed 09/17/2004   Page 6 of 7

| | |
|---|---|
| 1 | $25,000, it appears that Rhino was *overpaid* by $3,840.02. Even if full summary judgment is not |
| 2 | granted, at the very least, BioGenesis respectfully submits that partial summary judgment is appropriate. |
| 3 | RESPECTFULLY SUBMITTED this 17th day of September, 2004. |

CALVO AND CLARK, LLP
Attorneys at Law
Attorneys for Defendant/Counter-Plaintiff
BioGenesis Pacific, Inc.

By: /s/ Arthur B. Clark
ARTHUR B. CLARK

BIOGENESIS PACIFIC, INC.'S REPLY TO PLAINTIFF RHINO
BUILDERS, INC.'S OPPOSITION TO BIOGENESIS PACIFIC,
INC.'S MOTION FOR SUMMARY JUDGEMENT
B040917.327-0001.CT (Reply to Opposition to Renewed SJ).wpd

7

Case 1:02-cv-00008  Document 449  Filed 09/17/2004  Page 7 of 7