LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP3005
Attorney for Plaintiff

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| RHINO BUILDERS, INC., | CIVIL CASE NO. 02-00008 |
| Plaintiff, | |
| v. | |
| BIOGENESIS PACIFIC, INC., | |
| Defendant. | |
| BIOGENESIS PACIFIC, INC., | |
| Counter-Plaintiff, | **PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| v. | |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, | **[NO ORAL ARGUMENT REQUESTED]** |
| Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., | |
| Cross-Claimant, | |
| v. | |
| BIOGENESIS PACIFIC, INC., | |
| Cross-Claim Defendant. | |

**MOTION**

Plaintiff brings its motion pursuant to Rule 15(a) Fed. R. Civ. P. for an order granting leave to file the Third Amended

Complaint (attached to this memorandum) for the reasons stated below.

## PROCEDURAL HISTORY

On April 27, 2004 and on April 30, 2004, this Court, Honorable John S. Unpingco, Presiding, issued its written decisions regarding various dispositive cross motions filed by the parties. The Court decided that "Count IV" of Plaintiff's Second Amended Complaint for bad faith breach of contract should be dismissed for failing to state a cognizable claim, and that Plaintiff's fraud allegations against BioGenesis lacked particularity in only one element (the "place of BioGenesis' fraudulent activity"). The Court therefore dismissed the fraud count without prejudice, granting Plaintiff leave to amend the fraud allegations. Since that time the Plaintiff has settled its claims against the surety Defendants, AIG Technical Services Inc. and American Home Assurance Company, thus those claims have been dismissed from this action as well.

Plaintiff's original attorney, Anthony Cortes, withdrew as counsel for Plaintiff due to relocating to the mainland. Plaintiff's new counsel notes that while the Second Amended Complaint drafted by Attorney Cortes contained the factual allegations regarding the verbal subcontract between Rhino and BioGenesis and that BioGenesis breached that agreement causing Rhino to suffer economic damages,[1] Mr. Cortes omitted to include a separate count for BioGenesis breach of contract. Mr. Cortes apparently lumped the breach of contract claim in with Count I,

---

[1] See paragraphs 11-20 and 39 of the Second Amended Complaint.

Rhino Builders, Inc. v. BioGenesis Pacific, Inc.
Civil Case No. 02-00008
PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT [NO ORAL ARGUMENT REQUESTED]

Page 2 of 3

Case 1:02-cv-00008   Document 463   Filed 11/19/2004   Page 2 of 11

alleging that all Defendants (including BioGenesis) were liable to Plaintiff "under the Miller Act".

Because Plaintiff has already been granted leave to amend its complaint with regard to its fraud allegations, and because of the narrowing of the issues as a result of dispositive motions and the dismissal of the claims against the sureties, it is appropriate as a matter of housekeeping to amend the overall complaint to a pared down version reflecting only the claims Plaintiff has remaining. These are the claims for breach of contract and fraud against BioGenesis, as alleged in the proposed Third Amended Complaint attached to this memorandum.

Rule 15(a) Fed. R. Civ. P. provides that leave of Court to amend the complaint "shall be freely given when justice so requires." For the reasons stated above, Plaintiff submits that this motion is made in good faith and will not prejudice any party hereto. The last trial date has been vacated and has yet to be reset.

**CONCLUSION**

For the above-stated reasons, Plaintiff requests leave of Court to file and serve its Third Amended Complaint in the form attached hereto.

Dated this ___18th___ day of November, 2004.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Plaintiff

Rhino Builders, Inc. v. BioGenesis Pacific, Inc.
Civil Case No. 02-00008
PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED
COMPLAINT [NO ORAL ARGUMENT REQUESTED]
Page 3 of 3

Case 1:02-cv-00008    Document 463    Filed 11/19/2004    Page 3 of 11

LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP3000
Attorney for Plaintiff

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| RHINO BUILDERS, INC., | CIVIL CASE NO. 02-00008 |
| Plaintiff, | |
| v. | |
| BIOGENESIS PACIFIC, INC., | |
| Defendant. | |
| BIOGENESIS PACIFIC, INC., | |
| Counter-Plaintiff, | |
| v. | **THIRD AMENDED COMPLAINT** |
| RHINO BUILDERS, INC., MICHAEL O'CONNELL, MICHAEL DANFORTH, and JOHN DOES 1-10, | |
| Counter-Defendants. | |
| AMERICAN HOME ASSURANCE CO., | |
| Cross-Claimant, | |
| v. | |
| BIOGENESIS PACIFIC, INC., | |
| Cross-Claim Defendant. | |

Plaintiff alleges:

### COUNT I - BREACH OF CONTRACT

1.   Plaintiff is a corporation organized and existing under the laws of the State of Hawaii, engaged in the business of roofing installation and repairs.

2. At all times relevant to this claim Plaintiff was also a corporation organized and existing under the laws of Guam, with its principal office and place of business located in Tamuning, Guam.

3. To the best of Plaintiff's knowledge, Defendant Contractor is a corporation organized and existing under the laws of the State of Hawaii, with its principal office and place of business located at the City of Kailua, County of Honolulu, State of Hawaii.

4. To the best of Plaintiff's knowledge, Defendant Contractor is also a corporation organized and existing under the laws of the Territory of Guam, with its principal office and place of business located in Dededo, Guam.

5. This action originally arose, and the Court acquired jurisdiction of this action, under the Miller Act, United States Code, Title 40, Sections 270a through 270d, now codified at 40 USC §3131 et. seq.

6. To the best of Plaintiff's knowledge, on or before May 2000, Defendant Contractor entered into a contract in writing with the United States of America to furnish the materials and perform the labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in the contract, for a consideration of $4,926,657 for the period from May 15, 2000 to September 29, 2001. The contract was designed Navy Contract No. N62766-99-D-0425. Navy Contract No. N62766-99-D-0425 has been continued and remains in effect.

7. On or before May 2000, Plaintiff entered into an oral subcontract with Defendant Contractor whereby Plaintiff agreed to

Rhino Builders, Inc. v. BioGenesis Pacific, Inc.
CIVIL CASE NO. 02-0C008
THIRD AMENDED COMPLAINT

Page 2 of 7

Case 1:02-cv-00008   Document 463   Filed 11/19/2004   Page 6 of 11

perform such contract work as the U.S. Navy might assign to Defendant Contractor on individual task orders under the U.S. Navy Contract No. N62766-99-D-0425, between Defendant Contractor and the United States of America.

8. Under the terms of the oral subcontract between Defendant Contractor and Plaintiff, Defendant Contractor agreed to pay all of Plaintiff's actual costs of performance plus fifty percent (50%) of Defendant Contractor's profit upon completion of each task order under Contract No. N62766-99-D-0425. A copy of a letter from Defendant Contractor to Plaintiff reiterating the terms of the oral subcontract between Defendant Contractor and Plaintiff is attached to Plaintiff's First Amended Complaint as Exhibit A, and incorporated herein by reference.

9. The oral subcontract between Defendant Contractor and Plaintiff was necessary initially only because the contract award date for Contract No. N62766-99-D-0425 had not afforded Defendant Contractor sufficient time to establish a written subcontract with Plaintiff.

10. Both Defendant Contractor and Plaintiff agreed that the oral subcontract between Defendant Contractor and Plaintiff would later be reduced to writing to conform to accepted federal government contract practice.

11. Defendant Contractor later refused to enter into a formal written subcontract with Plaintiff.

12. Plaintiff entered into the performance of its oral subcontract and furnished labor and equipment in the prosecution of

the work provided for in the contract between Defendant Contractor and the United States of America.

13. Plaintiff performed labor and provided materials as agreed under the oral subcontract as follows: Plaintiff provided labor, materials, equipment, facilities, financing and bonding to Defendant Contractor in the prosecution of the work provided for in Contract No. N62766-99-D-0425. The reasonable and agreed value of Plaintiff's actual costs for such performance under the oral subcontract was and is not less than $239,694.47, no more than $25,000.00 of which has been paid by Defendant Contractor to date, leaving a balance due of not less than $214,694.47.

14. In addition to Plaintiff's actual costs, Defendant Contractor agreed to pay Plaintiff a fifty percent (50%) share of Defendant Contractor's profit under Contract No. N62766-99-D-0425, none of which has been paid by Defendant Contractor to date.

15. Notwithstanding Plaintiff's several demands for payment, such balances have not been paid and there is now justly due and owing to Plaintiff.

16. Defendant Contractor breached its contract with Plaintiff in that it failed and refused to pay Plaintiff the monies due it for labor performed and equipment furnished, as above set forth, and Plaintiff was then forced to terminate its performance of the contract.

17. All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

## COUNT II - FRAUD

18. Plaintiff realleges paragraphs 1 through 17 herein as if set forth fully.

19. In or around September 1999, Defendant Contractor through its President, Gerald Lam, contacted Plaintiff through its President, Michael O'Connell, and proposed that, because Defendant Contractor had no business license, facilities, equipment, materials, and employees on Guam with which it could perform Navy Contract No. N62766-99-D-0425, and because Plaintiff had such license, facilities, equipment, materials, and employees on Guam, that it would subcontract performance of Navy Contract No. N62766-99-D-0425 to Plaintiff on the terms described above. These communications took place over the telephone in Hawaii, where Mr. O'Connell was located, and where Plaintiff is informed and believes Mr. Lam was located at the time of the call. Their substance was reaffirmed by telephone on a number of later occasions, by Mr. Lam during which times he is believed to have been in Hawaii.

20. At the time Defendant Contractor made that proposal to Plaintiff, it intended not to honor any agreement to compensate Plaintiff for providing the performance of Navy Contract No. N62766-99-D-0425 that Defendant Contractor was unable to provide.

21. Defendant Contractor concealed from Plaintiff, from the very outset, that it intended not to honor its agreement to reimburse Plaintiff its actual costs of performance and that it intended not to honor its agreement to pay Plaintiff half of Defendant Contractor's profit realized from Navy Contract No. N62766-99-D-0425.

22. Because Defendant Contractor concealed from Plaintiff that it intended not to reimburse Plaintiff its actual costs of performance and that it intended not to pay Plaintiff half of its profits, Plaintiff believed that, if it used its business license, facilities, equipment, materials, and employees on Guam to perform Navy Contract No. N62766-99-D-0425, it would realize one half of the profits therefrom, net of its cost of performance.

23. In reliance upon Defendant Contractor's representations that it would reimburse Plaintiff's costs of performance and half of Defendant Contractor's profits realized from Navy Contract No. N62766-99-D-0425, Plaintiff did use its license, facilities, equipment, materials, and employees on Guam to perform Navy Contract No. N62766-99-D-0425 until Defendant Contractor prevented it from doing so.

24. Plaintiff's reliance upon Defendant Contractor's representations that it would reimburse Plaintiff its actual costs of performance and pay Plaintiff half of Defendant Contractor's profit realized from Navy Contract No. N62766-99-D-0425 have injured Plaintiff in the following ways:

    a. Plaintiff has expended over $214,634,47 to perform Navy Contract No. N62766-99-D-0425;

    b. Plaintiff has been deprived of its share of the profits from Navy Contract No. N62766-99-D-0425;

    c. Plaintiff was damaged in the amount of $198,000 in lost profits due to a loss of credit and bonding directly caused by Defendant Contractor's failure

to reimburse Plaintiff for its performance of Navy
                    Contract No. N62766-99-D-0425; and

          d.        Plaintiff was damaged in an amount exceeding $4.5
                    million because it became unable to perform other
                    federal contracts due to a loss of credit and
                    bonding directly caused by Defendant Contractor's
                    failure to reimburse Plaintiff for its performance
                    of Navy Contract No. N62766-99-D-0425.

     25.  Plaintiff is entitled to judgment against Defendant Contractor in all those amounts.

     26.  Plaintiff is entitled to an award of exemplary or punitive damages against Defendant Contractor for its fraud.

     WHEREFORE, Plaintiff most respectfully prays this honorable Court to render judgment against Defendant as follows:

     1.   For Count I, Plaintiff prays for judgment in an amount to be proven at trial, together with interest from March 20, 2001;

     2.   For Count II, Plaintiff prays for judgment for all of Plaintiff's actual and consequential damages in an amount to be proven at trial, plus punitive damages and exemplary damages as determined by this Court;

     3.   For costs of this action; and

     4.   For further relief as this honorable Court may deem just and proper.

          Dated this _____ day of November, 2004.

                              TARPLEY & MORONI, LLP


                              By:_____
                                   THOMAS M. TARPLEY, JR.,
                                   Attorney for Plaintiff