Arthur B. Clark, Esq.
Janalynn C. Damian, Esq.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96911
Telephone:   (671) 646-9355
Facsimile:   (671) 646-9403

Attorneys for Defendant/Counter-Plaintiff
BioGenesis Pacific, Inc.

FILED
DISTRICT COURT OF GUAM
MAR 18 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA FOR USE ) CIVIL CASE NO. 02-00008
AND BENEFIT OF RHINO BUILDERS, INC., )
)
              Plaintiff, )
) **ANSWER TO THIRD AMENDED**
    vs. ) **COMPLAINT AND COUNTERCLAIM**
)
BIOGENESIS PACIFIC, INC., )
)
             Defendant. )
_____)
)
BIOGENESIS PACIFIC INC., )
)
             Counter-Plaintiff, )
)
    vs. )
)
RHINO BUILDERS, INC., MICHAEL )
O'CONNELL, AND JOHN DOES 1-10, )
)
             Counter-Defendants. )
_____)

        COMES NOW, Defendant Biogenesis Pacific, Inc. ("Biogenesis"), by and through its counsel Calvo & Clark, LLP, and answers the Third Amended Complaint as follows:

        1.     As to paragraph 1 and 3 of the Complaint, Biogenesis admits said allegations.

        2.     As to paragraph 2, 4, 7-10, 12-17, 19-26, of the Complaint, Biogenesis denies said allegations.

        3.     As to paragraph 5 of the Complaint, Biogenesis admits that the Court had jurisdiction over the original action under the Miller Act. Biogenesis denies that the Court has current jurisdiction over this action after the dismissal of Rhino's Miller Act claim.

4. As to paragraph 6 of the Complaint, Biogenesis admits that it entered into a contract in writing with the United States of America to furnish materials and perform labor for the installation of U.S. Navy housing roofing in various locations, in accordance with the specifications contained in Navy Contract No. N62766-99-D-0425. Biogenesis denies all other allegations contained in paragraph 6.

5. As to paragraph 11, the allegation contained therein is vague and ambiguous as it refers to a "later" refusal to enter into a formal written subcontract with Plaintiff. Biogenesis admits that it refused to enter into a formal written subcontract with Plaintiff. To the extent that Plaintiff's paragraph 11 implies that there was an "earlier" agreement to do so, Plaintiff denies this allegation.

6. As to paragraph 18, Biogenesis realleges and incorporates by this reference its responses to paragraphs 1 through 17.

7. As to all other paragraphs and allegations not herein specifically admitted, Biogenesis herein generally and specifically denies said allegations.

## AFFIRMATIVE DEFENSES

Plaintiff's claims against Defendant are barred by the following affirmative defenses: lack of subject matter jurisdiction; debt not due; statute of limitations; unclean hands; lack of privity of contract; laches; set-off; bad faith; fraud and misrepresentation; estoppel; failure to mitigate; failure to plead fraud with particularity; lack of business license; failure to mitigate; unconstitutionality of punitive damages; if an oral contract existed, breach of contract, breach of covenant of good faith and fair dealing, termination of contract, conditions not satisfied; statute of frauds; duress.

WHEREFORE, Defendant Biogenesis Pacific, Inc. prays that Plaintiff takes nothing by its Complaint.

## COUNTERCLAIM OF BIOGENESIS PACIFIC INC. AGAINST RHINO BUILDERS, INC., AND MICHAEL O'CONNELL (Collectively "Counter-Defendants")

COMES NOW Defendant and Counter-Plaintiff Biogenesis Pacific, Inc. ("Biogenesis"), by and through its attorney of record Calvo & Clark, LLP, and for its counterclaim herein alleges as follows:

1. Pursuant to Fed. R. Civ. Proc. Rule 8(a), Biogenesis alleges that this Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367.

2. Counter-Defendant Rhino Builders, Inc. ("Rhino") is and at all times relevant herein was a Hawaii corporation.

3. Counter-Defendant Michael O'Connell ("Mr. O'Connell") is, and at all times relevant herein was, a resident of Hawaii.

4. Biogenesis is, and at all times relevant herein was, a Hawaii corporation. Biogenesis became licensed and was authorized to transact business in Guam on or around January 2001.

5. On or about September 29, 1999, Biogenesis was awarded Navy Contract No. N62766-99-D-0425 (the "Contract") by the United States of America through the Department of the Navy (the "Navy"). Pursuant to the Contract, Biogenesis was to furnish materials and perform the labor for the installation and repair of U.S. Navy housing roofing in various locations on Guam.

6. On or about September 29, 1999, Rhino was informed by the Navy's Contracting Officer that Biogenesis was selected to receive the Contract award. A copy of the letter from the Navy to Rhino informing Rhino that Biogenesis was selected is attached as Exhibit "A" and incorporated herein by reference.

7. Around September 1999, Mr. O'Connell approached Biogenesis and attempted to solicit sub-contract work under the Contract. Mr. O'Connell represented that Rhino had or would be able to provide bonding, surety, project insurance, project plans, trained and licensed personnel, specific work plans, building materials, and financing prior to commencing any work.

8. Biogenesis informed Mr. O'Connell that Biogenesis would consider sub-contracting work to Rhino upon Rhino first putting in place or arranging to have in place before commencing work certificates of insurance, project payment and performance bonding, project safety, accident and quality control plans, financial assurances, a detailed work plan for each proposed delivery order, and specific proposals with pricing breakdown and total.

9. In order to allow Rhino to attend the initial site visit with the Navy so that Rhino could prepare a subcontract proposal, Biogenesis needed to have a representative available on Guam

to sign documents required by the Navy to allow Rhino on the project sites. Mr. O'Connell informed Biogenesis that Rhino's Guam operations manager Mr. Richard Avilla ("Mr. Avilla") would be available as an individual for hire by Biogenesis for this purpose.

10. On or about Feburary 2000, at Mr. O'Connell's and Rhino's suggestion, Biogenesis agreed to submit, and did submit, Mr. Avilla's name to the Navy as Biogenesis' representative, provided that Mr. Avilla would remain an employee of Rhino until Biogenesis was ready to mobilize on Guam and to formulate delivery orders under the Contract, at which time Biogenesis would formally hire Mr. Avilla and reimburse Rhino for a portion of Mr. Avilla's salary. At the time that Mr. Avilla's name was submitted to the Navy as Biogenesis' representative, Mr. Avilla was an employee of Rhino and remained as such through November 2000.

11. On or around February 2000, Biogenesis allowed Rhino to enter the project site at its own risk and cost for the limited purpose of investigating potential delivery orders under the Contract in order to provide a subcontract proposal to Biogenesis.

### Fraud

12. From May through September 2000, unbeknownst to Biogenesis, without prior authorization from Biogenesis and without satisfying the above-said conditions precedent, Rhino and Mr. O'Connell, from Hawaii, caused Mr. Avilla to accept eighteen (18) delivery orders under the Contract from the Navy on behalf of Biogenesis by falsely communicating to Mr. Avilla that Biogenesis had entered into a subcontract with Rhino to perform work under the Contract and that Biogenesis had authorized Mr. Avilla to begin accepting delivery orders under the Contract and to begin assigning them to Rhino.

13. At the time Mr. O'Connell and Rhino made these representations to Mr. Avilla, Mr. O'Connell and Rhino knew them to be false.

14. Mr. O'Connell and Rhino knew that prior to September 2000, Mr. Avilla had never received any direct instructions from Biogenesis concerning the Contract and that in fact, Mr. Avilla had never even spoken to anyone at Biogenesis, and that because of Mr. O'Connell's position as the Chief Executive Officer at Rhino and Rhino's relationship with Mr. Avilla as his employer, Mr. Avilla would accept as true Mr. O'Connell's false representations concerning the formation of a

ANSWER TO THIRD AMENDED COMPLAINT AND COUNTERCLAIM
CIVIL CASE NO. 02-00008
G0000128.WPD;3

4

Case 1:02-cv-00008    Document 493    Filed 03/18/2005    Page 4 of 16

subcontract between Biogenesis and Rhino and concerning instructions from Biogenesis to accept delivery orders from the Navy and to assign them to Rhino.

15. At the time Mr. O'Connell and Rhino first caused Mr. Avilla to accept the delivery orders and Rhino started work on said delivery orders, Biogenesis had not yet mobilized any workforce nor hired any employees on Guam because of a pending bid protest against the awarding of the Contract.

16. Mr. O'Connell and Rhino made the above-said false representations to Mr. Avilla for the purpose of defrauding and forcing Biogenesis into a subcontract agreement with Rhino. By having Mr. Avilla accept the delivery orders on Biogenesis' behalf and by having Rhino begin work on the Contract at a time when Biogenesis had not mobilized any employees on Guam nor made any arrangements to commence work on the Contract because of a pending bid protest, Mr. O'Connell and Rhino knew and intended that Biogenesis would become immediately obligated to complete performance of the accepted delivery orders by the deadline imposed by the Navy, otherwise Biogenesis would likely face the termination of the Contract by the Navy for default.

17. Mr. O'Connell and Rhino knew and intended that Biogenesis would only be able to complete the delivery orders and avoid termination of the Contract for default by allowing Rhino to complete the work, thus defrauding and forcing Biogenesis into allowing Rhino to perform work on certain delivery orders already commenced.

18. Despite accepting the delivery orders as early as May 2000, Rhino and Mr. O'Connell failed to inform Biogenesis that Rhino had caused said delivery orders to be accepted from the Navy under the Contract or that Rhino had commenced work on said delivery orders.

19. Biogenesis did not first discover that work had commenced on the Contract until September 2000, when Biogenesis was contacted by certain suppliers of materials requesting payment.

20. In response to these inquiries from materials suppliers, Biogenesis spoke to Mr. Avilla for the very first time in September 2000 and was told by Mr. Avilla that he had accepted the delivery orders on Biogenesis' behalf because he was instructed to do so by Mr. O'Connell, who represented to Mr. Avilla that Rhino had entered into a subcontract agreement with Biogenesis.

21. As a result of the fraudulent acts of Mr. O'Connell and Rhino, Biogenesis had no choice but to allow Rhino to complete certain delivery orders in order to avoid defaulting on the Contract. Biogenesis agreed to allow Rhino to complete Delivery Order Nos. 1, 2 and 7. Delivery Order Nos. 1, 2 and 7 are attached as Exhibit "B," "C" and "D," respectively and incorporated herein by reference.

22. Rhino informed Biogenesis that it would place a lien or file a claim on the project unless Biogenesis paid Rhino $25,000. Biogenesis paid Rhino $25,000 for the materials and supplies Rhino allegedly purchased for the project and requested a full accounting of all supplies ordered for the project. Rhino never provided Biogenesis with such an accounting.

23. Biogenesis continued to negotiate with Rhino to see whether it could agree to a subcontract agreement, but because of Rhino's repeated bad faith and tortious conduct, Biogenesis refused to enter into a subcontract agreement with Rhino.

24. All work on the remaining fifteen (15) delivery orders were commenced and completed by Biogenesis.

<u>Tortious Interference with Contract</u>

25. In or about September 2000, Mr. O'Connell requested of Mr. Avilla that Mr. Avilla fail to show up at scheduled meetings with the Navy related to the delivery orders and to stop all work on the above-said delivery orders in order to cause Biogenesis to breach the Contract, to suffer liquidated damages because of delays in performance of delivery orders accepted under the Contract, and to interfere with Biogenesis' rights under the Contract so that Biogenesis would fail under the Contract and Rhino would be awarded the Contract.

26. On or about September 2000, Mr. O'Connell told Mr. Alfred Garthe ("Mr. Garthe"), an employee of Rhino, to stop all work on the above-said delivery orders in order to cause Biogenesis to breach the Contract, to suffer liquidated damages because of delays in performance of delivery orders accepted under the Contract, and to interfere with Biogenesis' rights under the Contract so that Biogenesis would fail under the Contract and Rhino would be awarded the Contract.

27. On or about October or November 2000, Rhino contacted Biogenesis and advised it that Rhino would have its workers cease work on the accepted delivery orders causing

Biogenesis to suffer liquidated damages under the Contract unless Biogenesis executed a written exclusive five year subcontract with Rhino.

28. After Biogenesis refused to execute the subcontract, Rhino caused its workers to cease working on the delivery orders in order to further bring about a breach of the Contract and the Navy's termination of the Contract.

## FIRST CAUSE OF ACTION
## FRAUD

29. Biogenesis realleges and incorporates by reference the allegations contained in paragraphs 1 through 24.

30. In doing all things alleged above, Rhino and Mr. O'Connell falsely represented to Biogenesis' authorized manager, Mr. Avilla, that Biogenesis had subcontracted with Rhino to perform the Contract and to accept delivery orders under the Contract when in fact there was no subcontract agreement with Rhino and Biogenesis had not authorized the acceptance of delivery orders.

31. In doing all things alleged above, Rhino and Mr. O'Connell caused Mr. Avilla to rely on Rhino and Mr. O'Connell's false representations in order to induce Mr. Avilla to accept delivery orders in the name of Biogenesis and to assign them to Rhino, all without the consent of Biogenesis.

32. In doing all things alleged above, Rhino and Mr. O'Connell's fraudulent acts forced Biogenesis to allow Rhino to complete work on delivery orders 1, 2, and 7 causing Biogenesis damages in an amount to be proven at trial of not less than $43,850.20.

33. In doing all things alleged above, Rhino and Mr. O'Connell acted maliciously and willfully and with the intent of defrauding and forcing Biogenesis into a subcontract agreement with Rhino in order to avoid a default of the Contract, and Biogenesis is, therefore, entitled to compensatory damages, and exemplary or punitive damages in an additional sum to be proven at trial.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

34. Biogenesis realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

35. In doing all things alleged above, Counter-Defendants caused Biogenesis to suffer liquidated damages under the Contract in an amount not less than $3,820.00, and Biogenesis is therefore entitled to compensatory damages in said amount.

36. In doing all the things alleged above, Counter-Defendants acted maliciously and willfully and for the purpose of causing Biogenesis to breach the Contract in order for Rhino to take over the Contract, and Biogenesis is, therefore, entitled to exemplary or punitive damages in an additional sum to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Biogenesis respectfully requests judgment against all Counter-Defendants as follows:

1. Damages for fraud in an amount to be proven at trial to be not less than $43,854.20;

2. Exemplary or punitive damages for fraud in an amount to be proven at trial;

3. Damages for tortious interference of contract in an amount to be proven at trial to be not less than $3,820.00;

4. Exemplary or punitive damages for tortious interference with contract in an amount to be proven at trial;

5. Reasonable attorneys' fees and costs;

6. Such other and further relief as the Court deems just and proper.

Dated this 18th day of March, 2005.

CALVO & CLARK, LLP
Attorneys At Law
Attorneys for Defendant Biogenesis Pacific, Inc.

By: _____
JANALYNN C. DAMIAN

# EXHIBIT "A"



DEPARTMENT OF THE NAVY
U.S. NAVY PUBLIC WORKS CENTER
PSC 455, BOX 195
FPO AP 96540-1937
OFFICER IN CHARGE OF CONSTRUCTION
PSC 455, BOX 175
FPO AP 96540-0300

IN REPLY REFER TO:

42CK

29 SEP 1999

Phone: (808) 668-4878
Fax: (808) 668-7024

Rhino Roofing and Repairs, Inc., dba
RHINO BUILDERS
Attn: Michael N. O'Connell, President
790 N. Marine Drive – Box 959
Tamon, Guam 96911

SUBJ: SOLICITATION N62766-99-R-0425, INDEFINITE DELIVERY INDEFINITE QUANTITY CONTRACT FOR ROOFING SYSTEMS INSTALLATION AND REPAIR, GUAM

Thank you for submitting a proposal in response to our Request for Proposal (RFP) for the above Solicitation. We appreciate the time and effort of your company in preparing an offer for this project.

The Government selected the firm BIOGENESIS PACIFIC INC., PROGRAMS & CONTROL DIVISION, 1604 Ulualana Place, Kailua, Hawaii, to receive the contract award. The successful offer, considering base year and four option years, was $14,991,963.50. The Government Estimate was $20,167,114.00.

Your technical proposal was rated *Highly Acceptable*; however, your proposal did not represent the best value to the Government.

We wish you success in your future endeavors, and we hope you will continue to submit bids and proposals on our projects that are in the area of your expertise. Should you desire a debriefing, please notify this office in writing within three (3) days of receiving this letter. You may fax a written request to Julia Taitano at (671) 339-4248 / 7023.

JAMES B. POWERS
Contracting Officer

"SAFETY FIRST"

# EXHIBIT "B"

# ORDER FOR SUPPLIES OR SERVICES
(Contractor must submit four copies of invoice.)



PAGE 1 OF 1

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER | 4. REQUISITION/PURCH REQUEST NO. | 5. CERTIFIED FOR NATIONAL DEFENSE UNDER DMS REG 1 |
|---|---|---|---|---|
| N62766-99-D-0425 | 0001 | 5/15/00 | | DO |

| 6. ISSUED BY | CODE | C2766 | 7. ADMINISTERED BY (if other than 6) | CODE | | 8. DELIVERY FOB |
|---|---|---|---|---|---|---|

Officer in Charge of Construction
NAVFACENGCOM Contracts, Marianas
PSC 455, Box 175
FPO AP 96540-2200

☒ DEST.
☐ OTHER (See Schedule if other)

| 9. CONTRACTOR | CODE | | FACILITY CODE | | 10. DELIVER TO FOB POINT (Date) | 11. MARK IF BUSINESS IS |
|---|---|---|---|---|---|---|

NAME AND ADDRESS:
BioGenesis Pacific, Inc.
Corporate & Programs Control
1604 Ulualana Place
Kailua, HI 96734
(TEL: 637-9426 Richard Avilla)

B(a) Contractor

15 JUN 2000

12. DISCOUNT TERMS
NET 30

13. MAIL INVOICES TO
SEE BLOCK 6

☐ SMALL
☐ SMALL DISADVANTAGED
☐ WOMEN-OWNED

| 14. SHIP TO | CODE | | 15. PAYMENT WILL BE MADE BY | CODE | |
|---|---|---|---|---|---|

Defense Finance & Accounting Service
Operating Location Oakland, Code FPV
P. O. Box 23870
Oakland, CA 94623-3870

MARK ALL PACKAGES AND PAPERS WITH CONTRACT OR ORDER NUMBER

| 16. TYPE OF ORDER | |
|---|---|
| ☐ DELIVERY | This delivery order is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract. |
| ☒ PURCHASE | Reference your ... ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME. |

BioGenesis — NAME OF CONTRACTOR
Richard Avilla — SIGNATURE
Richard Avilla, Operations Manager — TYPED NAME AND TITLE
5/16 — DATE SIGNED

If this box is marked, supplier must sign Acceptance and return the following number of copies.

## ACCOUNTING AND APPROPRIATION DATA

| 17. ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB ALLOT | AUTHR ACCTG ACTY | TRANS TYPE | PROPERTY ACCT ACTY | COUNTRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804.70FA | 250 | 61755 | 0 | 045924 | 2D | COM109 | | 61755046M71Q | $12,129.10 |

| 18. ITEM | 19. SCHEDULE OF SUPPLIES/SERVICE | 20. QUANTITY ORDERED/ACCEPTED | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | W/R 31973, COMNAVMAR | | | | |
| 0001 | Roof Repairs at BQ1 through BQ20, COMNAVMAR, Guam | 4,080 | LF | $ 0.98 | $ 3,998.40 |
| 0002AD | Reseal Construction Joints | 140 | LF | $ 13.26 | $ 1,856.40 |
| 0002AE | Replace Expansion Joint Assembly, To 2" Space, Stainless Steel | 4,080 | SF | $ 0.15 | $ 612.00 |
| 0015AA | Miscellaneous Items: Waterblast Roof Surface in Accordance with Section 07672 | 4,080 | LF | $ 0.56 | $ 2,284.80 |
| 0017AA | Seal Joints and Penetrations 6" Wide | 850 | SF | $ 3.69 | $ 3,136.50 |
| 0021AA | Re-secure Metal Flashing (Spot Repair) | 100 | LF | $ 2.41 | $ 241.00 |
| 0022AA | Trim/Dispose Tree Branches Obstructing Roofing Operation | | | | |

25. TOTAL $ 12,129.10

24. UNITED STATES OF AMERICA
L.A. Guzman
BY: L. A. GUZMAN
Contracting Officer ; Tel: 339-5120
guzmanl@pwcguam.navy.mil

26. DIFFERENCES

| 30. QUANTITY IN COLUMN 20 HAS BEEN | 31. SHIP NO. | 32. D.O. VOUCHER NO. | 33. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| ☐ INSPECTED ☐ RECEIVED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED | ☐ PARTIAL ☐ FINAL | 32. PAID BY | |
| | 31. PAYMENT ☐ COMPLETE ☐ PARTIAL ☐ FINAL | | 34. CHECK NUMBER |
| DATE — SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | | 35. BILL OF LADING NO. |
| 36. I certify this account is correct and proper for payment. | | | |
| DATE — SIGNATURE AND TITLE OF CERTIFYING OFFICER | | | |
| 37. RECEIVED AT | 38. RECEIVED BY | 39. DATE RECEIVED | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |

DD Form 1155 (BPT), MAY 90 — Previous editions are obsolete
S/N 0102-LF-011

# EXHIBIT "C"

# ORDER FOR SUPPLIES OR SERVICES

*(Contractor must submit four copies of invoice.)*

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0187), Washington, DC 20503. Please DO NOT RETURN your form to either of these addresses. Send your completed form to the procurement official located in item 6.

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER | 4. REQUISITION/PURCH REQUEST NO. | 5. CERTIFIED FOR NATIONAL DEFENSE UNDER DMS REG 1 |
|---|---|---|---|---|
| N62766-99-D-0425 | 0002 | 29 JUNE 2000 | W/R 31036 | |

6. ISSUED BY CODE C2766
Officer in Charge of Construction
NAVFACENGCOM Contracts, Marianas
PSC 455, Box 175
FPO AP 96540-2200

7. ADMINISTERED BY (if other than 6) CODE

9. CONTRACTOR — NAME AND ADDRESS
BioGenesis Pacific, Inc.
Corporate & Programs Control
1604 Ulualana Place
Kailua, HI 96734
(TEL: 637-9426 Richard Avilla)

10. DELIVER TO FOB POINT BY: 03 AUGUST 2000
12. DISCOUNT TERMS:
13. MAIL INVOICES TO: SEE BLOCK 6

15. PAYMENT WILL BE MADE BY
Defense Finance & Accounting Service
Operating Location Oakland, Code FPV
P. O. Box 23870
Oakland, CA 94623-3870

16. TYPE OF ORDER: [X] DELIVERY

Reference your ____. ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

BioGenesis — NAME OF CONTRACTOR
Richard Avilla (signature) — Operations Manager — 6-30-00

## ACCOUNTING AND APPROPRIATION DATA

| ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB ALLOT | AUTHN ACCTG ACTY | TRANS TYPE | PROPERTY ACCT ACTY | COUN-TRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804.70FA | 250 | 61755 | 0 | 043924 | 2D | COM118 | | 61755046M59Q | $26,445.10 |

| ITEM | SCHEDULE OF SUPPLIES/SERVICE | QUANTITY ORDERED/ACCEPTED | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Roof Repairs to Bldg. 4433, Racquetball Court at Polaris Pt., COMNAVMAR, Guam | 790 | SF | $6.99 | $5,522.10 |
| 0002AC | Repair Concrete Roof Deck Surface Per Section 03930 and 07920: Grout Depressed Areas | 6,300 | BF | $1.89 | $11,907.00 |
| 0005AC | Install Roof Insulation in Accordance with Section 03220: Tapered Insulation 1/16, 1/8, ¼ Per Ft. | 400 | LF | $2.74 | $1,096.00 |
| 0013AA | Install Roofing System Accessories: Treated Wood Cants, Nailers and Fasteners for Line Item 0006 Through 0012 Above | 2,200 | SF | $0.15 | $330.00 |
| 0015AA | Miscellaneous Items: Water blast Roof Surface in Accordance with Section 07572 | 2,200 | SF | $3.45 | $7,590.00 |
| 0017AC | Fluid Applied Roofing Membrane in Accordance with Section 07540: 60 Mils Thick Roof Membrane | | | | |

Attached is Statement of Work dated 30 May 2000

29. TOTAL: $26,445.10

24. UNITED STATES OF AMERICA
BY: BRIAN M. GILLIGAN
Contracting Officer
(671) 339-2365
gilligan@mcpgua.navy.mil

DD Form 1155 (EPT), MAY 90  Previous editions are obsolete.  S/N 0102-LF-011-4700

Case 1:02-cv-00008   Document 493   Filed 03/18/2005   Page 14 of 16

# EXHIBIT "D"

# ORDER FOR SUPPLIES OR SERVICES
(Contractor must submit four copies of invoice.)

| Field | Value |
|---|---|
| 1. CONTRACT/PURCH ORDER NO. | N62766-99-D-0425 |
| 2. DELIVERY ORDER NO. | 0007 |
| 3. DATE OF ORDER | 21 AUG 2000 |
| 4. REQUISITION/PURCH REQUEST NO. | W/R 31029 |
| 7. ADMINISTERED BY CODE | C2766 |
| 11. DELIVER TO FOB POINT BY | 20 SEP 2000 |

**6. ISSUED BY**
Officer in Charge of Construction
NAVFACENGCOM Contracts, Marianas
PSC 455, Box 175
FPO AP 96540-2200

**9. CONTRACTOR**
BioGenesis Pacific, Inc.
Corporate & Programs Control
1604 Ulualana Place
Kailua, HI 96734
(Tel: 632-7653 Richard Avilla)
Email: rbinogum@ite.net

**13. PAYMENT WILL BE MADE BY**
Defense Finance & Accounting Service
Operating Location Oakland, Code FPV
P. O. Box 23870
Oakland, CA 94623-3870

**15. TYPE OF ORDER:** DELIVERY [X]

BioGenesis Pacific, Inc.  /s/ Richard Avilla  Richard Avilla, Operations Manager  5-25-00

## ACCOUNTING AND APPROPRIATION DATA

| ITEM NO. | APPROPRIATION SYMBOL AND SUBHEAD | OBJECT CLASS | BUREAU CONT. NO. | SUB-ALLOT | AUTH'N ACCT'G ACTY | TRANS TYPE | PROPERTY ACCT ACTY | COUNTRY | COST CODE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| AA | 1701804 70FA | 250 | 61755 | 0 | 045924 | 2D | CON129 | | 61755046M110 | $5,280.00 |

## SCHEDULE OF SUPPLIES/SERVICES

| ITEM | DESCRIPTION | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Roof repair at Bldg. 631, DRMO southeast corner of office spaces | | | | |
| 0001AA | Demolish and dispose roofing system per Sections 02220, 13281, and 13282: Single or multi-ply membrane without insulation | 500 | SF | $.51 | $255.00 |
| 0002AC | Repair concrete roof deck surface per Section 03930 and 07920: Grout depressed areas | 500 | SF | $6.99 | $3,495.00 |
| 0015AA | Miscellaneous items: Waterblast roof surface in accordance with Section 07572 | 500 | SF | $.15 | $75.00 |
| 0017AB | Fluid applied roofing membrane in accordance with Section 07540: 45 mils thick roof membrane | 500 | SF | $2.91 | $1,455.00 |
| | **25. TOTAL** | | | | **$5,280.00** |

BY: /s/ Johanna M. Mendiola
JOHANNA G. MENDIOLA
Contracting Officer
TEL: (671) 339-8098
mendiolj@pwcpusm.navy.mil

DD Form 1155 (8PT), MAY 90   Previous editions are obsolete.   S/N 0102-LF-011-4700